**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MIDAMERICA C2L, INC. and SECURE ENERGY, INC.,

Plaintiffs,

v. Case No: 6:17-cv-171-Orl-40KRS

SIEMENS ENERGY, INC.,

Defendant.

---

**ORDER**

This cause comes before the Court on Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) and Memorandum of Law in Support Thereof (Doc. 16), filed September 20, 2016. Plaintiffs responded in opposition on November 4, 2016. (Doc. 24). Upon consideration, the Court will grant in part and deny in part Defendant's Motion to Dismiss.

## I. BACKGROUND[1]

This lawsuit arises out of a contract dispute between Plaintiffs, Secure Energy, Inc. ("Secure") and its subsidiary, MidAmerica C2L, Inc. ("C2L"), and Defendant, Siemens Energy, Inc. ("Siemens"). On December 21, 2007, Secure and Siemens executed a contract (the "2007 Contract") wherein Siemens agreed to sell certain equipment to Secure for use at a coal gasification plant located in Decatur, Illinois, where Secure would convert coal into natural gas. (Compl. ¶¶ 5–7). Secure paid Siemens approximately $40 million for the equipment. (*Id.* ¶ 9). Secure and Siemens later executed an

---

[1] This account of the facts is taken from Plaintiffs' Complaint (Doc. 1-2), the factual allegations of which the Court accepts as true when considering Defendant's Motion to Dismiss. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992).

agreement terminating the 2007 Contract, acknowledging that both had fulfilled their contractual obligations to each other thereunder. (*Id.* ¶ 10).

On July 18, 2012, C2L and Siemens executed a License and Service Agreement (the "2012 License Agreement") whereby Siemens granted C2L a license to use certain of its patented technologies for the development, construction, and operation of a coal gasification plant located in West Paducah, Kentucky, where C2L would convert coal into methanol. (*Id.* ¶ 14). In exchange, C2L agreed to pay a license fee to Siemens. (*Id.*). The 2012 License Agreement also required Siemens to supply C2L with the patented technologies and provide C2L with all necessary engineering services, technical field assistance, and training. (*Id.* ¶ 15). Siemens further agreed to guarantee the performance of the equipment C2L would use at the West Paducah plant, which would be the same equipment Secure previously purchased from Siemens under the 2007 Contract. (*Id.* ¶¶ 15, 16). At all relevant times, Siemens promised to honor its obligations and guarantees contained within the 2012 License Agreement. (*Id.* ¶ 18). Due to Siemens' promises, Secure and C2L entered into contracts with third parties to purchase coal to use at the West Paducah plant. (*Id.* ¶ 17).

At some point in 2014, Secure and C2L claim that Siemens made the decision to begin winding down its coal gasification division with the intent to eventually withdraw from the coal gasification market entirely, but that Siemens did not disclose this decision to either Secure or C2L. (*Id.* ¶¶ 19, 21). In fact, in July 2015, Siemens assured Secure and C2L that it would continue to provide support for the equipment to be used at the West Paducah plant and would continue to abide by the terms of the 2012 License Agreement. (*Id.* ¶ 33).

Then, on February 2, 2016, Siemens notified Secure and C2L that it was indeed closing its coal gasification division. (*Id.* ¶ 20). Siemens further advised that it would no longer provide the support promised in the 2012 License Agreement and would no longer guarantee the performance of the equipment purchased under the 2007 Contract. (*Id.*). Secure and C2L believe that Siemens knew all along that it would be withdrawing from the coal gasification market, but concealed that information. (*Id.* ¶¶ 21, 34). This lawsuit ensued.

In their Complaint, Secure and C2L allege four claims against Siemens. In Count I, Plaintiffs allege that Siemens breached the 2012 License Agreement by repudiating its obligations. In Count II, Plaintiffs allege that Siemens breached the warranty of fitness for particular purpose by selling equipment and licensing technologies which were unfit for building and operating the coal gasification plant in West Paducah. In Count III, Plaintiffs allege that Siemens fraudulently misrepresented that it would honor its obligations under the 2012 License Agreement. And in Count IV, Plaintiffs allege that Siemens fraudulently misrepresented that its coal gasification equipment and technologies were suitable for use at the West Paducah plant. Siemens now moves to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. In order to survive the motion, the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiff alleges enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009). The mere recitation of the elements of a claim is not enough, and the district court need not give any credence to legal conclusions that are unsupported by sufficient factual material. *Id.* District courts must accept all well-pleaded allegations within the complaint and any documents attached thereto as true and must read the complaint in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

## III. DISCUSSION

### A. Count I: Breach of Contract

Siemens moves to dismiss Plaintiffs' breach of contract claim on the ground that Plaintiffs fail to sufficiently allege recoverable damages. Specifically, Siemens contends that the damages Secure and C2L seek in their Complaint are barred by a limitation of liability provision contained within the 2012 License Agreement. Plaintiffs dispute that the limitation of liability provision acts in the way Siemens suggests.

In order to state a claim for breach of contract under New York law,[2] a plaintiff must allege sufficient facts demonstrating (1) the existence of a contract, (2) performance of the contract, (3) the defendant's breach of the contract, and (4) damages resulting from the defendant's breach. *Int'l Gateway Exch., LLC v. W. Union Fin. Servs., Inc.*, 333 F. Supp. 2d 131, 141 (S.D.N.Y. 2004). With respect to damages, a breach of contract claim must be dismissed if the contract on which the claim is based clearly shows that the plaintiff is not entitled to the damages it seeks. *See DynCorp. v. GTE Corp.*, 215 F. Supp. 2d 308, 315 (S.D.N.Y. 2002).

---

2 The Court and the parties agree that the 2012 License Agreement contains a choice of law provision which mandates that New York law governs Plaintiffs' breach of contract and breach of warranty claims. (2012 Lease Agreement § 22.8).

The limitation of liability provision Siemens relies on states as follows:

> THE REMEDIES EXPRESSED, INCLUDING THE PAYMENT OF ANY LIQUIDATED DAMAGES AS PROVIDED IN SECTION 7.10 FOR PERFORMANCE SHORTFALLS, ARE C2L'S SOLE AND EXCLUSIVE REMEDIES, WHETHER THE CLAIMS OF C2L ARE BASED IN CONTRACT, IN TORT (INCLUDING NEGLIGENCE AND STRICT LIABILITY) OR OTHERWISE.

(2012 Lease Agreement § 7.12).[3] However, as Plaintiffs aptly observe, this provision seems to only apply to uncured deficiencies in the performance of Siemens' equipment and technologies relative to the output of methanol during the coal gasification process, which appears to not be the sole issue in this case. (*See id.* §§ 7.5–7.10.2). It is therefore entirely unclear how, if at all, this limitation of liability clause precludes Plaintiffs from recovering **all** of the damages they seek in their breach of contract claim, since those damages are also alleged to arise, at least in part, out of Siemens' repudiation of the 2012 Lease Agreement. The Court is additionally reluctant to dismiss portions of Plaintiffs' claimed damages at the pleadings stage, even assuming that the limitation of liability provision cited acts to preclude some of those damages. The Court will therefore not dismiss Plaintiffs' breach of contract claim.

### B. Count II: Breach of Warranty of Fitness for Particular Purpose

Siemens similarly moves to dismiss Plaintiffs' claim for breach of the warranty of fitness for particular purpose due to a provision contained within the 2012 Lease Agreement disclaiming all warranties not expressly provided by the contract. Plaintiffs,

---

3 Plaintiffs attached the 2012 Lease Agreement as an exhibit to their Complaint; the Court is therefore permitted to consider the contents of the document when reviewing Siemens' Rule 12(b)(6) motion to dismiss.

however, submit that the disclaimer is unconscionable, thus rendering the clause ineffective.

The disclaimer provision at issue states as follows:

> THE WARRANTIES AND GUARANTEES PROVIDED ARE IN LIEU OF ALL OTHER WARRANTIES AND GUARANTEES, WHETHER STATUTORY, EXPRESSED OR IMPLIED, INCLUDING ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PURPOSE, AND ALL WARRANTIES ARISING FROM COURSE OF DEALING OR USAGE OF TRADE.

(2012 Lease Agreement § 7.12). While New York law permits parties to a contract for the sale of goods to disclaim the warranty of fitness for particular purpose, *see* N.Y.U.C.C. §§ 2-316(2), 2-316(3)(c), New York law also permits a party to challenge such a disclaimer as unconscionable based on the circumstances at the time the contract was made, *see id.* § 2-302(1). When a party claims that a contract or a clause contained therein is unconscionable, "the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination." *Id.* § 2-302(2). Consequently, dismissal of Plaintiffs' breach of warranty claim is inappropriate at the pleadings stage.

**C. Counts III and IV: Fraudulent Misrepresentation**

Siemens moves to dismiss Plaintiffs' fraudulent misrepresentation claims for two reasons. First, Siemens contends that the claims cannot stand on their own because they emanate from Siemens' alleged breach of its obligations under the 2012 Lease Agreement. Second, Siemens argues that Plaintiffs' claims are not pled with the amount of particularity required by Federal Rule of Civil Procedure 9(b).

As for Siemens' latter argument, Rule 9(b) requires that all claims sounding in fraud "must state with particularity the circumstances constituting fraud." "Particularity means

that a plaintiff must plead facts as to time, place and substance of the defendant's alleged fraud, specifically the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them." *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006) (quoting *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002)) (internal quotation marks omitted). In other words, the plaintiff must identify: (1) the allegedly fraudulent statement, document, representation, or omission made; (2) the time, place, and person responsible for each misrepresentation; (3) the manner in which each misrepresentation misled the plaintiff; and (4) what the defendant gained from the alleged fraud. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

The Court agrees with Siemens that Plaintiffs' fraudulent misrepresentation claims wholly fail to satisfy Rule 9(b)'s heightened pleading requirements. While Plaintiffs indicate the general nature of the misrepresentations they attribute to Siemens, Plaintiffs do not identify the specific statements or representations made, where the statements or representations were made and by whom, how Plaintiffs were misled by the statements or representations, or what Siemens gained from the alleged fraud. And while Plaintiffs sufficiently allege a particular time of the misrepresentation in Count IV—July 18, 2012—Plaintiffs' claim in Count III that the misrepresentation occurred at some point in July 2015 is not enough to placate Rule 9(b). Accordingly, the Court will dismiss Counts III and IV with leave to amend.

As a final matter, the Court briefly addresses Siemens' first argument that Plaintiffs' fraudulent misrepresentation claims cannot stand on their own because they emanate from the same acts alleged to constitute breaches of Siemens' contractual obligations.

While the parties assumed in their briefs that Plaintiffs' claims arise under New York law, the Court is not so convinced. Although the 2012 License Agreement contains a choice of law provision directing that New York law governs the "validity, construction, and performance" of the contract, that clause does not appear on its face to apply to non-contract claims. Therefore, as a federal court sitting in diversity, the Court presumes that it would be required by *Erie* and its progeny to apply the choice of law rules of the forum state, Florida, to divine the substantive law governing the fraudulent misrepresentation claims. Since Florida employs the Second Restatement's "most significant relationship test" for determining the substantive law for claims based in tort, the Court would need to engage in a fact-intensive inquiry. *See Hendricks v. Smartvideo Techs., Inc.*, 511 F. Supp. 2d 1219, 1226 (M.D. Fla. 2007). Given the limited facts currently available to the Court, the substantive law of any number of states could conceivably apply to Plaintiffs' fraudulent misrepresentation claims, including Nevada, Missouri, Illinois, Kentucky, New York, and Florida. The parties should be mindful in future motions to explain which state's substantive law controls these claims and why.

## IV. CONCLUSION

For the aforementioned reasons it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss (Doc. 16) is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted as to Counts III and IV, which are **DISMISSED WITHOUT PREJUDICE** for failing to satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements. The motion is otherwise denied.

2. Plaintiffs have until and including **April 21, 2017** to file an Amended Complaint to re-assert the claims which are dismissed by this Order. Should Plaintiffs not file an Amended Complaint within the time provided, Defendant shall answer Plaintiff's Complaint by **May 5, 2017**.

**DONE AND ORDERED** in Orlando, Florida on April 7, 2017.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record