## IN THE UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

MIDAMERICA C2L INCORPORATED,    )
et al.,    )
    )
    Plaintiffs,    )    **CASE NO.**    **6:17-CV-171-Orl-18KRS**
    )
v.    )
    )
SIEMENS ENERGY, INC.,    )
    )
Defendant.    )

### FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

COME NOW plaintiffs **MidAmerica C2L Incorporated** and **Secure Energy, Inc.**, for their First Amended Complaint against **Siemens Energy, Inc.**, state:

1.    MidAmerica C2L Incorporated is a Nevada corporation with its principal place of business in the State of Missouri. MidAmerica C2L Incorporated is a wholly owned subsidiary of Secure Energy, Inc.

2.    Secure Energy, Inc. is a Nevada corporation with its principal place of business in the State of Missouri.

3.    Siemens Energy, Inc. is a corporation formed under the laws of the State of Delaware, with its principal place of business in the State of Florida, and is authorized to do business in the State of Illinois. Siemens Energy, Inc. is a wholly-owned subsidiary of Siemens AG, a German stock corporation with headquarters in Berlin, Germany and Munich, Germany. Prior to October 1, 2008, defendant Siemens Energy, Inc. was known as Siemens Power Generation, Inc.

4.    Jurisdiction and venue are proper in this Court in that the matter was transferred to this Court on the motion of the defendant.

5.      In 2006, Secure Energy, Inc. and its subsidiary Secure Energy Decatur, LLC began the process of development and construction of a plant in Decatur, Illinois for the conversion of coal into natural gas using coal gasification technology.

6.      In its effort to build the plant in Decatur, Secure Energy, Inc. and Secure Energy Decatur, LLC, entered into discussions with a number of corporations for the purchase of coal gasification technology, including equipment, engineering services, technical field assistance and training.  Among the corporations Secure Energy, Inc. and Secure Energy Decatur, LLC, approached in seeking the aforementioned coal gasification technology, equipment, engineering services, technical field assistance and training for use in the Decatur plant was Siemens Power Generation, Inc.

7.      On July 24, 2007, Secure Energy, Inc. entered into a Memorandum of Understanding with Siemens Power Generation, Inc. memorializing the parties' desire to enter a contract for the sale of two 500 MWth gasifiers, associated equipment and engineering services and a contract for a process license.  In connection with the Memorandum of Understanding, it was agreed that Siemens would begin described work on the equipment and engineering in exchange for payments totaling € 9,600,000.

8.      On December 24, 2007, Secure Energy Decatur, LLC, and Siemens Power Generation, Inc. entered into a contract entitled the "Contract Between Secure Energy Decatur, LLC and Siemens Power Generation, Inc. for the Provision of Engineering Services and the Supply of Equipment Related to the Coal to SNG Conversion Project for the Decatur, Illinois Plant" (hereinafter, the "2007 Contract.")  In the 2007 Contract, Siemens agreed to supply Secure Energy Decatur, LLC with two Siemens SFG-500 gasifiers, two Siemens feeder vessels, four burners, approximately one-hundred seven crates of Siemens proprietary equipment and recommended

spare parts, the Basic Engineering Design Package, and technical field assistance and training (hereinafter referred to as the "Siemens Equipment and Technology") in exchange for payment by Secure Energy Decatur, LLC of € 27,715,000 plus $1,717,000.00.

9.      On December 31, 2007, Secure Energy Decatur, LLC, and Siemens Power Generation, Inc. entered into a Project License Agreement whereby Siemens Power Generation, Inc. granted Secure Energy Decatur, LLC a license "to use the Technology and under any Patents therefore, in order to build, have built, use and operate" the Decatur plant in exchange for payment of a license fee.

10.      Pursuant to the 2007 Contract, Secure Energy Decatur, LLC paid all sums due for the Siemens Equipment and Technology and Siemens delivered the Siemens Equipment and Technology purchased by Secure Energy Decatur, LLC with the exception of the Fuel Measurement System and the SIS. Based on the exchange rate between the U.S. Dollar and the Euro at the time of payment, Secure Energy paid $40,298,436.00 for the Siemens Equipment and Technology and an additional $228,531.00 for customs and delivery fees related to the two 500MWth gasifiers, which were both 60 feet by 14 feet and weighed 220 tons each for a total cost of $40,526,967.00.

11.      On March 31, 2010, Secure Energy, Inc., the parent company of Secure Energy Decatur, LLC, entered into a Completion Agreement (the "2010 Completion Agreement") with Siemens Energy, Inc., formerly known as Siemens Power Generation, Inc. In the 2010 Completion Agreement, the parties agreed that Siemens had delivered, and Secure Energy Decatur had paid for, the Siemens Equipment and Technology. The parties further agreed that the 2007 Contract and the 2007 Project License Agreement were terminated.

12.      On March 31, 2010, the same day that the 2010 Completion Agreement was

entered, Secure Energy, Inc., and Siemens Energy, Inc., formerly known as Siemens Power Generation, Inc., entered into a License and Service Agreement (the "2010 License and Service Agreement") whereby Siemens Energy, Inc. granted Secure Energy, Inc. a license "to use the Technology and under any Patents therefore, in order to build, have built, use and operate" the Decatur plant to convert coal into gasoline in exchange for payment of a license fee against Siemens' submission of one original and one copy of a commercial invoice indicated the amount to be paid.

13.     Siemens agreed in the 2010 License and Service Agreement to provide engineering services, technical field assistance, training, and performance guarantees related to the Siemens Equipment and Technology sold to the plaintiffs.

14.     On information and belief, based on the experience of a plant in China that used identical gasifiers and related gasification equipment and technology, Siemens became aware of multiple material design defects in the Siemens Equipment and Technology between October 31, 2010 and September of 2011, including but not limited to:

      a.      The burners are improperly engineered and designed;

      b.      The design of the raw gas (syngas) outlet and the black water outlet is defective because the level of the black water will rise above the raw syngas outlet and prevent syngas from exiting the gasifier, greatly increasing the risk of catastrophic explosion;

      c.      The Basic Engineering Design Package (BEDP) is defective and needs to be modified to make changes to multiple components, including, but not limited to, the coal handling system, the slag handling system, piping

design, valve design, the syngas cleaning system, and the black water

system; and

d.      Siemens' design of the Fuel Measurement System is defective and does not

work.

15.     On July 18, 2012, Siemens Energy, Inc. and Secure Energy, Inc. entered into a

Completion Agreement (the "2012 Completion Agreement") terminating the 2010 License and

Service Agreement.

16.     On July 18, 2012, the same day that the 2012 Completion Agreement was entered,

MidAmerica C2L Incorporated, a subsidiary of Secure Energy, Inc., and Siemens Energy, Inc.,

entered into a License and Service Agreement (the "2012 License and Service Agreement")

whereby Siemens Energy, Inc. granted MidAmerica C2L a license "to use the Technology and

under any Patents therefore, in order to build, have built, use and operate" a plant in West Paducah,

Kentucky to convert coal into methanol in exchange for payment of a license fee against Siemens'

submission of one original and one copy of a commercial invoice indicating the amount to be paid.

A partial copy of the 2012 License and Service Agreement is attached as Exhibit 1.

17.     Siemens agreed in the 2012 License and Service Agreement to provide coal

gasification technology, including engineering services, technical field assistance and training,

and performance guarantees related to the Siemens Equipment and Technology sold pursuant to

the 2007 Contract in exchange for payment by Secure Energy, Inc.

18.     The 2007 Contract, the 2010 License and Service Agreement and the 2012 License

and Service Agreement each contained provisions in which Siemens Energy guaranteed that the

Siemens Equipment and Technology sold under the 2007 Contract would meet certain

performance standards.

19.     Based on its dealings with Siemens Energy and Siemens' representations concerning the Siemens Equipment and Technology, Secure Energy and MidAmerica C2L entered into contracts with third parties concerning the design, engineering, construction and operation of the above-mentioned plants, including a supply agreement with Murray Energy, whereby Murray Energy would supply coal from its New Era Mine in Galatia, Illinois for use in the plant.

20.     At all times throughout its course of dealing with Secure Energy, Inc. and MidAmerica C2L, Siemens represented that it would continue to stand by its performance guarantees and representations related to the Siemens Equipment and Technology.

21.     Upon information and belief, as early as 2014, Siemens Energy, Inc. had made the strategic decision to shutter its coal gasification division and to exit the coal gasification business.

22.     On February 2, 2016, in a phone conference, a representative of Siemens Energy, Inc. informed MidAmerica C2L and Secure Energy for the first time that Siemens was shuttering its coal gasification division, that Siemens would not honor the guarantees made in 2007 Contract, the 2010 License and Service Agreement and the 2012 License and Service Agreement and that Siemens would not provide the technical field assistance and training under the 2012 License and Service Agreement.

23.     In spite of the fact that it had made the decision years earlier, Siemens did not advise MidAmerica C2L, or its parent company Secure Energy, Inc., of its decision to shutter its coal gasification division and to exit the coal gasification business at any point prior to February 2, 2016.

24.     Plaintiffs did not become aware of the material design defects in the Siemens Equipment and Technology or the problems experienced in the Chinese plant until March of 2016.

## COUNT I
## BREACH OF CONTRACT

COME NOW plaintiffs **MidAmerica C2L Incorporated** and **Secure Energy, Inc.**, for Count I of their First Amended Complaint against **Siemens Energy, Inc.**, state:

25.     Plaintiffs replead and incorporate by reference the allegations set forth in paragraphs 1 through 24 of this complaint as if the same were herein fully set forth.

26.     In making the strategic decision to exit the coal gasification market, Siemens has engaged in conduct that demonstrates to MidAmerica C2L and Secure Energy that Siemens will not honor its obligations under the 2012 License and Service Agreement.  Because Siemens has repudiated its obligations under the 2012 License and Service Agreement, Siemens has breached the 2012 License and Service Agreement.

27.     As a direct and proximate result of Siemens' aforesaid breach of the 2012 License and Service Agreement, plaintiffs have been damaged in the following respects:

a.      The Siemens Equipment and Technology purchased under the 2007 Memorandum of Understanding and the 2007 Contract can no longer be incorporated into any gasification plant and have, therefore, decreased in value from the $40,298,436.00 paid to $0.00;

b.      Plaintiffs have been forced to abandon the development, design and engineering of the West Paducah plant, which was based on the Siemens Equipment and Technology that plaintiffs can no longer use, and for which plaintiff expended an additional amount in excess of $46,000,000.00.

28.     Plaintiffs have performed, or are excused from performance of, all conditions precedent under the 2012 License and Service Agreement.

WHEREFORE, plaintiffs MidAmerica C2L, Incorporated and Secure Energy, Inc.

respectfully pray this Court to enter judgment against Siemens Energy, Inc. in a fair and reasonable amount in excess of $86,000,000.00, to award MidAmerica C2L, Incorporated and Secure Energy, Inc. their attorneys' fees and costs, and for such further relief as this Court deems just.

## COUNT II
## BREACH OF WARRANTY OF FITNESS FOR PARTICULAR PURPOSE

COME NOW plaintiffs **MidAmerica C2L Incorporated** and **Secure Energy, Inc.**, for Count II of their First Amended Complaint against **Siemens Energy, Inc.**, state:

29.     Plaintiffs replead and incorporate by reference the allegations set forth in paragraphs 1 through 28 of this complaint as if the same were herein fully set forth.

30.     The grant of the license to use the Siemens Equipment and Technology under the 2012 License and Service Agreement constitutes a sale of goods under the Uniform Commercial Code as it is enacted in the State of New York.

31.     At the time the 2012 License and Service Agreement was entered, Siemens knew that the License to use the Siemens Equipment and Technology was to be used to build, have built, use and operate a coal to methanol conversion plant in Paducah, Kentucky.

32.     At the time the 2012 License and Service Agreement was entered, Siemens knew that plaintiffs relied on Siemens' skill and judgment in selecting the licensed Siemens Equipment and Technology and in choosing to enter the 2012 License and Service Agreement.

33.     The Siemens Equipment and Technology licensed to plaintiffs was unfit for the purpose of building, having built, using and operating a coal to methanol conversion plant in Paducah, Kentucky in that the Siemens Equipment and Technology upon which the licensed technology was based contained material design defects, including but not limited to:

        a.      The burners are improperly engineered and designed;

b.    The design of the raw gas (syngas) outlet and the black water outlet is defective because the level of the black water will rise above the raw syngas outlet and prevent syngas from exiting the gasifier, greatly increasing the risk of catastrophic explosion;

c.    The Basic Engineering Design Package (BEDP) is defective and needs to be modified to make changes to multiple components, including, but not limited to, the coal handling system, the slag handling system, piping design, valve design, the syngas cleaning system, and the black water system; and

d.    Siemens' design of the Fuel Measurement System is defective and does not work.

34.    As a direct and proximate result of the unfitness of the licensed Siemens Equipment and Technology for the purpose of building, having built, using and operating a coal to methanol conversion plant in Paducah, Kentucky, plaintiffs have been damaged in the following respects:

a.    The Siemens Equipment and Technology purchased under the 2007 Memorandum of Understanding and the 2007 Contract can no longer be incorporated into any gasification plant and have, therefore, decreased in value from the $40,298,436.00 paid to $0.00;

b.    Plaintiffs have been forced to abandon the design and engineering of the West Paducah plant, which was based on the Siemens Equipment and Technology that plaintiffs can no longer use, and for which plaintiff expended an amount in excess of $46,000,000.00.

WHEREFORE, plaintiffs MidAmerica C2L, Incorporated and Secure Energy, Inc.

respectfully pray this Court to enter judgment against Siemens Energy, Inc. in a fair and reasonable amount in excess of $86,000,000.00, to award MidAmerica C2L, Incorporated and Secure Energy, Inc. their attorneys' fees and costs, and for such further relief as this Court deems just.

## COUNT III
## FRAUDULENT MISREPRESENTATION – SIEMENS' SUPPORT OF PROJECT

COME NOW plaintiffs **MidAmerica C2L Incorporated** and **Secure Energy, Inc.**, for Count III of their First Amended Complaint against **Siemens Energy, Inc.**, state:

35.     Plaintiffs replead and incorporate by reference the allegations set forth in paragraphs 1 through 34 of this complaint as if the same were herein fully set forth.

36.     In July of 2015, Siemens, through its agent Guido Schuld, represented to plaintiffs in an email to Jack Kenny that Siemens would continue to support plaintiffs' project.

37.     At the time of its representation in July of 2015, Siemens knew the representation was false in that Siemens had already made the strategic decision to exit the gasification business, had begun the process of closing down its gasification division and that, as a result, it would be unable to provide the services and guarantees described in the 2012 License and Service Agreement.

38.     In making the representation in July of 2015, Siemens intended that plaintiffs rely on the truth of the representation.

39.     Plaintiffs detrimentally relied on Siemens' continued representations and continued to pursue the project based on the use of the Siemens Equipment and Technology.

40.     As a direct and proximate result of its detrimental reliance on Siemens' representations, plaintiffs have been damaged in the following respects:

    a.     The Siemens Equipment and Technology purchased under the 2007

Memorandum of Understanding and the 2007 Contract can no longer be

incorporated into any gasification plant and have, therefore, decreased in

value from the $40,298,436.00 paid to $0.00;

b.      Plaintiffs have been forced to abandon the development, design and

engineering of the West Paducah plant, which was based on the Siemens

Equipment and Technology that plaintiffs can no longer use, and for which

plaintiff expended an amount in excess of $46,000,000.00.

41.    The above-described conduct of Siemens was outrageous and exhibited a willful

and wanton disregard for the rights of the plaintiffs, thereby warranting the imposition of punitive

damages in order to punish defendant and to deter like conduct on the part of others in the future.

WHEREFORE, plaintiffs MidAmerica C2L, Incorporated and Secure Energy, Inc.

respectfully pray this Court to enter judgment against Siemens Energy, Inc. in a fair and reasonable

amount in excess of $86,000,000.00, to award plaintiffs punitive damages in an amount sufficient

to punish defendant and to deter like conduct on the part of others in the future, to award

MidAmerica C2L, Incorporated and Secure Energy, Inc. their attorneys' fees and costs, and for

such further relief as this Court deems just.

## COUNT IV
## FRAUDULENT MISREPRESENTATION –
## FAILURE TO DISCLOSE DEFECTS IN TECHNOLOGY

COME NOW plaintiffs **MidAmerica C2L Incorporated** and **Secure Energy, Inc.**, for

Count IV of their First Amended Complaint against **Siemens Energy, Inc.**, state:

42.    Plaintiffs replead and incorporate by reference the allegations set forth in

paragraphs 1 through 41 of this complaint as if the same were herein fully set forth.

43.     Prior to July 18, 2012, plaintiffs and Siemens were parties to a License and Service Agreement dated March 31, 2010, whereby Siemens Energy, Inc. granted Secure Energy, Inc. a license "to use the Technology and under any Patents therefore, in order to build, have built, use and operate" a coal gasification plant.  The March 31, 2010 License and Service Agreement included a warranty on the Siemens Equipment and Technology sold to plaintiffs.

44.     Prior to July 18, 2012, Siemens was aware of multiple material design defects in the Siemens Equipment and Technology provided by Siemens in that a plant in China using identical gasification equipment and related technology provided by Siemens had to be substantially redesigned after only a brief period of operation.  Between October 31, 2010 and September of 2011, Siemens became aware of multiple material design defects, including but not limited to:

a.     The burners are improperly engineered and designed;

b.     The design of the raw gas (syngas) outlet and the black water outlet is defective because the level of the black water will rise above the raw syngas outlet and prevent syngas from exiting the gasifier, greatly increasing the risk of catastrophic explosion;

c.     The Basic Engineering Design Package (BEDP) is defective and needs to be modified to make changes to multiple components, including, but not limited to, the coal handling system, the slag handling system, piping design, valve design, the syngas cleaning system, and the black water system; and

d.     Siemens' design of the Fuel Measurement System is defective and does not work.

45.     Siemens had demonstrably superior knowledge of the material defects in the

Siemens Equipment and Technology y revealed in the plant in China in that Siemens was engaged in a joint venture with, and providing technical field assistance and engineering to, the Chinese company that developed the plant in China at which and when the material defects in the Siemens Equipment and Technology were first revealed to Siemens.

46.     The existence of the material defects in the Siemens Equipment and Technology were not within the fair and reasonable reach of plaintiffs.

47.     Plaintiffs were unable to discover the existence of the material defects in the Siemens Equipment and Technology in spite of their reasonable diligence in questioning Siemens about the progress of the Chinese project and in questioning Siemens about plaintiffs' plant in Paducah, Kentucky.

48.     Siemens had a duty to disclose to plaintiffs the existence of material design defects discovered in a plant using identical equipment and related technology to the Siemens Equipment and Technology sold to plaintiffs by Siemens.

49.     Between October 31, 2010 and January of 2016, plaintiffs received verbal and written communications from multiple employees of Siemens who had knowledge of the above-mentioned material defects, including but not limited to Harry Morehead, Guido Schuld, Rolf Ruessler, George Lamonettin, Mark Confer, Wolfgang Streer and Bob Schulte.  At no point during these communications did any employee of Siemens disclose the above-mentioned material defects in the Siemens Equipment and Technology to plaintiffs.

50.     For example, on October 31, 2012, at a meeting in Washington, DC, attended by Jack Kenny and Lars Scott on the part of plaintiffs and Harry Morehead, Rolf Ruessler, Bob Schulte, Guido Schuld, Mark Confer and George Lamonettin on the part of Siemens, Mr. Ruessler stated that "lessons learned" from the Chinese plant were to be incorporated into the Basic

Engineering Design Package that included optimization of the plant arrangement, but did not disclose the above-mentioned material design defects in the Siemens Equipment and Technology.

51.     To date, Siemens has continued to fail to disclose the existence of the above described material design defects in the Siemens Equipment and Technology.

52.     The discovery and existence of material design defects in the Siemens Equipment and Technology sold to plaintiffs is a material fact.

53.     Siemens knew or should have known that the existence of material design defects in the Siemens Equipment and Technology sold to plaintiffs was a material fact that should be disclosed to plaintiffs.

54.     Siemens' failure to disclose the discovery and existence of said material design defects in the Siemens Equipment and Technology constitutes misrepresentation by omission and fraudulent concealment.

55.     In failing to disclose the discovery and existence of the material design defects, Siemens intended to deceive the plaintiffs and knew its failure to disclose the material design defects would induce the plaintiffs to act to their detriment.

56.     Based on plaintiffs' relationship with Siemens and Siemens' financial capacity, longevity and reputation, plaintiffs detrimentally relied on Siemens' misrepresentation by omission, entered the 2012 License Agreement, which unlike prior agreements contained no equipment or technology warranty, and continued to develop the project based on the use of the materially defective Siemens Equipment and Technology.

57.     Plaintiffs did not become aware of the material design defects in the Siemens Equipment and Technology or the material problems experienced in the Chinese project until March of 2016.

58.     As a direct and proximate result of their detrimental reliance on Siemens' misrepresentation by omission, plaintiffs have been damaged in the following respects:

a.     The Siemens Equipment and Technology purchased under the 2007 Memorandum of Understanding and the 2007 Contract can no longer be incorporated into any gasification plant and have, therefore, decreased in value from the $40,298,436.00 paid to $0.00;

b.     Plaintiffs have been forced to abandon the development, design and engineering of the West Paducah plant, which was based on the Siemens Equipment and Technology that plaintiffs can no longer use, and for which plaintiff expended an amount in excess of $ 86,000,000.00.

59.     The above-described conduct of Siemens was outrageous and exhibited a willful and wanton disregard for the rights of the plaintiffs, thereby warranting the imposition of punitive damages in order to punish defendant and to deter like conduct on the part of others in the future.

WHEREFORE, plaintiffs MidAmerica C2L, Incorporated and Secure Energy, Inc. respectfully pray this Court to enter judgment against Siemens Energy, Inc. in a fair and reasonable amount in excess of $86,000,000.00, to award plaintiffs punitive damages in an amount sufficient to punish defendant and to deter like conduct on the part of others in the future, to award MidAmerica C2L, Incorporated and Secure Energy, Inc. their attorneys' fees and costs, and for such further relief as this Court deems just.

## COUNT V
## RESCISSION – FRAUD

COME NOW plaintiffs **MidAmerica C2L Incorporated** and **Secure Energy, Inc.**, for Count V of their First Amended Complaint against **Siemens Energy, Inc.**, state:

60.     Plaintiffs replead and incorporate by reference the allegations set forth in paragraphs 1 through 59 of this complaint as if the same were herein fully set forth.

61.     Prior to July 18, 2012, Plaintiffs and Siemens were parties to a License and Service Agreement dated March 31, 2010, whereby Siemens Energy, Inc. granted Secure Energy, Inc. a license "to use the Technology and under any Patents therefore, in order to build, have built, use and operate" a coal gasification plant.  The March 31, 2010 License and Service Agreement included a warranty on the Siemens Equipment and Technology sold to plaintiffs.

62.     Prior to July 18, 2012, Siemens was aware of several material design defects in the Siemens Equipment and Technology in that a plant in China using identical gasification equipment and related technology provided by Siemens had to be substantially redesigned after only a brief period of operation.  Between October 31, 2010 and September of 2011, Siemens became aware of multiple material design defects, including but not limited to:

      a.     The burners are improperly engineered and designed;

      b.     The design of the raw gas (syngas) outlet and the black water outlet is defective because the level of the black water will rise above the raw syngas outlet and prevent syngas from exiting the gasifier, greatly increasing the risk of catastrophic explosion;

      c.     The Basic Engineering Design Package (BEDP) is defective and needs to be modified to make changes to multiple components, including, but not limited to, the coal handling system, the slag handling system, piping design, valve design, the syngas cleaning system, and the black water system; and

      d.     Siemens' design of the Fuel Measurement System is defective and does not

work.

63.     Siemens had demonstrably superior knowledge of the material defects in the Siemens Equipment and Technology revealed in the plant in China in that Siemens was engaged in a joint venture with and providing technical field assistance and engineering to the Chinese company that developed the plant in China at which and when the material defects in the Siemens Equipment and Technology were first revealed to Siemens.

64.     The existence of the material defects in the Siemens Equipment and Technology were not within the fair and reasonable reach of plaintiffs.

65.     Plaintiffs were unable to discover the existence of the material defects in the Siemens Equipment and Technology in spite of their reasonable diligence in questioning Siemens about the progress of the Chinese project and in questioning Siemens about plaintiffs' plant in Paducah, Kentucky.

66.     Siemens had a duty to disclose to plaintiffs the existence of material design defects discovered in a plant using identical equipment and related technology to the Siemens Equipment and Technology sold to plaintiffs.

67.     Between October 31, 2010 and July 18, 2012 and in the course of negotiating the 2012 License and Service Agreement, plaintiffs received verbal and written communications from multiple employees of Siemens who had knowledge of the above-mentioned material defects, including but not limited to Harry Morehead, Guido Schuld, Rolf Ruessler, George Lamonettin, Mark Confer, Wolfgang Streer and Bob Schulte.  At no point between October 31, 2010 and July 18, 2012 or during the negotiation of the 2012 License and Service Agreement did any employee of Siemens disclose the above-mentioned material defects to plaintiffs.

68.     For example, on October 31, 2012, at a meeting in Washington, DC, attended by

Jack Kenny and Lars Scott on the part of plaintiffs and Harry Morehead, Rolf Ruessler, Bob Schulte, Guido Schuld, Mark Confer and George Lamonettin on the part of Siemens, Mr. Ruessler stated that "lessons learned" from the Chinese plant were to be incorporated into the Basic Engineering Design Package that included optimization of the plant arrangement, but did not disclose the above-mentioned material design defects in the Siemens Equipment and Technology.

69. To date, Siemens has failed to disclose the existence of the above described material design defects discovered in a plant using identical equipment and related technology to the Siemens Equipment and Technology sold to plaintiffs.

70. The discovery and existence of material design defects in the Siemens Equipment and Technology sold to plaintiffs is a material fact.

71. Siemens knew or should have known that the existence of material design defects in the Siemens Equipment and Technology sold to plaintiffs was a material fact that should be disclosed to plaintiffs.

72. Siemens' failure to disclose the discovery and existence of material design defects constitutes misrepresentation by silence and fraudulent concealment.

73. In failing to disclose the discovery and existence of the material design defects, Siemens intended to deceive the plaintiffs and knew its failure to disclose the material design defects would induce the plaintiffs to act to their detriment.

74. Based on plaintiffs' relationship with Siemens and Siemens' financial capacity, longevity and reputation, plaintiffs detrimentally relied on Siemens' misrepresentation by omission, entered the 2012 License Agreement, which unlike prior agreements contained no equipment or technology warranty, and continued to develop the project based on the use of the materially defective Siemens Equipment and Technology.

75.    Plaintiffs did not become aware of the material design defects or the material problems experienced in the Chinese project until March of 2016.

76.    As a direct and proximate result of their detrimental reliance on Siemens' misrepresentation by omission, plaintiffs have been damaged in that they were induced to enter the 2012 License and Service Agreement, which, unlike previous agreements with defendant, contained no equipment or technology warranty and the 2012 Completion Agreement, which terminated the agreement that included the equipment and technology warranty.

77.    Siemens fraudulently induced plaintiffs to enter the 2012 License Agreement containing no equipment or technology warranty in spite of the fact that Siemens was aware of the defects in the Siemens Equipment and Technology.

78.    Plaintiffs have no adequate remedy at law.

79.    As a result of Siemens' fraudulent conduct, the 2012 License Agreement and the 2012 Completion Agreement must be rescinded.

WHEREFORE, plaintiffs MidAmerica C2L, Incorporated and Secure Energy, Inc. respectfully pray this Court to enter judgment against Siemens Energy, Inc. rescinding the 2012 License Agreement and the 2012 Completion Agreement, to award MidAmerica C2L, Incorporated and Secure Energy, Inc. reimbursement of all monies paid to Siemens at the exchange rate on the date on which such payments were made, prejudgment interest, their attorneys' fees and costs, and for such further relief as this Court deems just.

## COUNT VI
## RESCISSION – FAILURE OF CONSIDERATION

COME NOW plaintiffs **MidAmerica C2L Incorporated** and **Secure Energy, Inc.**, for Count VI of their First Amended Complaint against **Siemens Energy, Inc.**, state:

80.     Plaintiffs replead and incorporate by reference the allegations set forth in paragraphs 1 through 79 of this Complaint as if the same were herein fully set forth.

81.     On December 21, 2007, Secure Energy Decatur, LLC, and Siemens Power Generation, Inc. entered into contract entitled the "Contract Between Secure Energy Decatur, LLC and Siemens Power Generation, Inc. for the Provision of Engineering Services and the Supply of Equipment Related to the Coal to SNG Conversion Project for the Decatur, Illinois Plant" (hereinafter, the "2007 Contract.")  In the 2007 Contract, Secure Energy Decatur, LLC agreed to pay Siemens the sum of € 27,715,000 plus $1,717,000.00 as consideration for Siemens' provision of the Siemens Equipment and Technology.

82.     The Siemens Equipment and Technology that is the consideration of the 2007 Contract contains multiple material design defects, including but not limited to:

   a.     The burners are improperly engineered and designed;

   b.     The design of the raw gas (syngas) outlet and the black water outlet is defective because the level of the black water will rise above the raw syngas outlet and prevent syngas from exiting the gasifier, greatly increasing the risk of catastrophic explosion;

   c.     The Basic Engineering Design Package (BEDP) is defective and needs to be modified to make changes to multiple components, including, but not limited to, the coal handling system, the slag handling system, piping design, valve design, the syngas cleaning system, and the black water system; and

   d.     The design of the Fuel Measurement System is defective and does not work.

83.     The material defects in the Siemens Equipment and Technology were known to

Siemens as early as October of 2010 when identical equipment and related technology provided by Siemens to a plant in China had to be substantially redesigned by the Chinese after only a brief period of operation.

84.     To date, Siemens has failed to disclose the existence of the material defects in the Siemens Equipment and Technology discovered by the operators of the Chinese plant and has failed to disclose the method by which those material defects were corrected.

85.     Upon information and belief, the material defects in the Siemens Equipment and Technology provided to plaintiffs cannot be corrected such that the Siemens Equipment and Technology could be used in a plant in the United States.

86.     Because of the material design defects in the Siemens Equipment and Technology, the Siemens Equipment and Technology that was the consideration of the 2007 Contract are rendered useless.

87.     Because the Siemens Equipment and Technology that was the consideration of the 2007 Contract has been rendered useless by the uncorrectable material defects in the design, plaintiffs have received little or nothing of value in consideration for the payment to Siemens of the sum of € 27,715,000 plus $1,717,000.00.

88.     The consideration for plaintiffs' payment under the 2007 Contract has failed and plaintiffs have failed to receive the benefit of the payment under the 2007 Contract.

89.     Because the consideration for the 2007 Contract has failed, plaintiffs have the right to rescind the 2007 Contract and to return the parties to their positions prior to the 2007 Contract.

90.     Plaintiffs notified Siemens that it had rescinded the 2007 Contract on February 11, 2016.

91.     Plaintiffs have no adequate remedy at law.

92.     As a result of the failure of the consideration for the 2007 Contract, the 2007

Contract, and all the subsequent contracts arising from plaintiffs' course of dealing with Siemens

must be rescinded.

WHEREFORE, plaintiffs MidAmerica C2L, Incorporated and Secure Energy, Inc.

respectfully pray this Court to enter judgment against Siemens Energy, Inc. rescinding the 2007

Contract Between Secure Energy Decatur, LLC and Siemens Power Generation, Inc. for the

Provision of Engineering Services and the Supply of Equipment Related to the Coal to SNG

Conversion Project for the Decatur, Illinois Plant, the 2007 Project License Agreement, the 2010

Completion Agreement, the 2010 License and Service Agreement, the 2012 Completion

Agreement and the 2012 License and Service Agreement, to award MidAmerica C2L,

Incorporated and Secure Energy, Inc.,  reimbursement of all monies paid to Siemens at the

exchange rate on the date on which such payments were made, prejudgment interest, their

attorneys' fees and costs, and for such further relief as this Court deems just.


## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury.

**DANNA MCKITRICK, P.C.**

BY:   /s/ John F. Cooney           
        **John F. Cooney**, admitted pro hac vice
        **Robert L. Devereux**, admitted pro hac vice
        7701 Forsyth Blvd., Suite 800
        St. Louis, Missouri  63105-3907
        Phone:   (314) 726-1000
        Fax:       (314) 725-6592
        E-mail:  jcooney@dmfirm.com
        E-mail:  rdevereux@dmfirm.com

        Walter A. Ketcham, Jr.
        Florida Bar No. 156630
        Grower, Ketcham, Eide, Telan & Meltz, P.A.
        901 North Lake Destiny Road, Suite 450
        Maitland, FL 32751
        Tel:  (407) 423-9545
        Fax:  (407) 425-7104
        Email:  waketcham@growerketcham.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned certifies that, on the 21st day of April, 2017, a true copy of the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

**Scott D. Baker**
Email: sbaker@reedsmith.com
**James A. Daire**
Email: jdaire@reedsmith.com
**Christopher J. Pulido**
Email: cpulido@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA  94105-3659

**ATTORNEYS FOR DEFENDANT
SIEMENS ENERGY, INC.**

**P. Anthony Quimby**
Baker & Hostetler LLP
2300 SunTrust Center
200 South Orange Avenue
Post Office Box 112
Orlando, FL 32802
Email: aquimby@bakerlaw.com

               /s/ John F. Cooney