UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| MIDAMERICA C2L INCORPORATED, a Nevada corporation; and SECURE ENERGY, INC., a Nevada corporation, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 6:17-cv-171-Orl-18KRS |
| v. | ) ) | |
| SIEMENS ENERGY, INC., a Delaware corporation, | ) ) ) | |
| Defendant. | ) ) ) | |

**DEFENDANT SIEMENS ENERGY, INC.'S MOTION FOR PARTIAL
DISMISSAL OF FIRST AMENDED COMPLAINT AND
MEMORANDUM OF LAW IN SUPPORT THEREOF**

**MOTION**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Siemens Energy, Inc. ("Siemens") moves this Court for dismissal of Counts III, IV, V, and VI in Plaintiffs MidAmerica C2L Incorporated's ("C2L") and Secure Energy, Inc.'s ("Secure") (collectively, "Plaintiffs") First Amended Complaint and Demand for Jury Trial (Dkt. No. 63) for failure to state a claim upon which relief can be granted.

**MEMORANDUM OF LAW**

**I.     INTRODUCTION**

This lawsuit arises from a 2012 License and Service Agreement between C2L and Siemens (attached to Plaintiffs' First Amended Complaint as Exhibit 1), which is the last in a series of contracts under which Siemens agreed to provide support for Plaintiffs' coal gasification equipment. Secure Energy Decatur, LLC (not a party here, but apparently a

subsidiary of Secure Energy, Inc.) originally purchased the coal gasification equipment from Siemens in December 2007, under the terms of a different contract. Plaintiffs failed in the five years from 2007-2012 to fund or build a viable coal gasification plant in which to operate their equipment, and have likewise not gotten their plant off the ground in the five years since entering into the 2012 License and Service Agreement.

In their First Amended Complaint, Plaintiffs bring six counts against Siemens, all of which center on and arise out of the allegation that Siemens failed to provide the contracted-for operable coal gasification equipment and technology support. Four of six counts must be dismissed as a matter of law for failure to state a claim.

Counts III, IV, and V in the First Amended Complaint improperly restate the contract dispute in the form of fraud, without the requisite elements of a viable fraud claim. A party may not seek to obtain a better bargain than it made by turning a breach of contract into a tort. That principle is well-established, whether the law that applies is New York (as Siemens contends), Florida, or Kentucky (the only other two states' laws which may plausibly apply under applicable choice-of-law rules). Here, all of Plaintiffs' tort claims arise out of and are indistinct from an alleged breach of contract. In Count III, Plaintiffs allege that Siemens falsely represented in July 2015 that it would "continue to support plaintiffs' project," which is nothing more than a promise to continue to perform the 2012 License and Service Agreement. Dkt. No. 63 ¶36. In Count IV, Plaintiffs allege that Plaintiffs failed to disclose alleged defects between October 31, 2010 and January 2016 which violated the terms of a then-operative 2010 License and Service Agreement and induced Plaintiffs to enter into the 2012 License and Service Agreement. Dkt. No. 63

¶¶43-44. In other words, Plaintiffs allege that Siemens breached its contractual obligations to deliver non-defective gasification equipment and technology. And in Count V, Plaintiffs seeks rescission of the 2012 License and Service Agreement based on its allegations that Siemens failed to tell Plaintiffs that Siemens could not provide technically sufficient gasification equipment as Siemens had contractually promised. Dkt. No. 63 ¶79. These allegations are part and parcel of Siemens' obligations in the underlying contracts, and they cannot support a fraud claim.

Count VI in the First Amended Complaint must be dismissed because it improperly seeks to rescind for "failure of consideration" the initial 2007 Contract between Secure Energy Decatur, LLC and Siemens (along with all subsequent contracts), even though Plaintiffs expressly agreed that the 2007 Contract had been terminated by mutual consent and that no party to the contract has "ground for any claim under the [contract] and/or any theory of law." Daire Decl. Ex. C §2.[1]

There exists no plausible basis for Plaintiffs to amend any of these four counts. Plaintiffs cannot fashion a legally viable fraud theory from what is, simply stated, a dispute over Siemens' ability to perform its contractual obligations. Likewise, Plaintiffs cannot seek to rescind for failure of consideration a contract that they terminated and agreed was fully performed and the subject of mutual releases. For these reasons, Siemens seeks dismissal of Counts III, IV, V, and VI with prejudice.

---

[1] Plaintiffs fail to attach the 2007 Contract it seeks to rescind, but Siemens submits it, along with the 2010 Completion Agreement, in support of its motion to dismiss. Daire Decl. Exs. A, C. The Court should consider those contracts since: (1) the contracts are central to Plaintiffs' claim at paragraphs 8, 10, 11, 18, and 81-99 of the First Amended Complaint; and (2) the authenticity of the contracts is not in dispute. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999).

## II.     PROCEDURAL HISTORY

On July 18, 2016, Plaintiffs filed their initial Complaint in the Circuit Court of St. Clair County, Illinois, in which they asserted two contract counts and two fraudulent misrepresentation counts against Siemens. Siemens removed the case to the Southern District of Illinois on August 26, 2016 based on diversity jurisdiction. On February 1, 2017, the Southern District of Illinois transferred the case to this District. On April 7, 2017, the Court granted-in-part and denied-in-part Siemens' motion to dismiss Plaintiffs' Complaint. Dkt. No. 62. The Court dismissed Plaintiffs' counts for fraudulent misrepresentation, with leave to amend, for failure to plead with particularity under Rule 9(b) and denied Siemens' motion as to the remaining counts. *Id.* The Court also stated that it was not convinced New York law applied to Plaintiffs' fraudulent misrepresentation claims and instructed the parties in future motions "to explain which state's substantive law controls these [fraudulent misrepresentation] claims and why." *Id.* at 8. On April 21, 2017, Plaintiffs filed their First Amended Complaint.

## III.     ALLEGATIONS IN THE COMPLAINT

Plaintiffs' First Amended Complaint provides an overview of their attempts to build and then operate a coal gasification energy plant, during which they intended to produce different products at shifting locations over time. The project started in 2006 when Secure Energy Decatur, LLC, a Secure subsidiary, "began the process of development and construction of a plant in Decatur, Illinois for the conversion of coal into natural gas using coal gasification technology." Dkt. No. 63 ¶5. In 2007, in furtherance of Plaintiffs' initial plans, Secure Energy Decatur, LLC bought from Siemens

coal gasification equipment to operate the planned Decatur plant under the terms of a "2007 Contract." *Id.* ¶8. Secure Energy Decatur, LLC also entered into a 2007 Project License Agreement to use Siemens' technology and product support "in order to build, have built, use and operate" the Decatur plant. *Id.* ¶9.

By 2010, construction on Plaintiffs' Decatur-based project had yet to begin. The parties entered into a Completion Agreement on March 31, 2010, in which they acknowledged that they had each fulfilled their respective obligations under the 2007 Contract and the 2007 Project License Agreement, terminated those same contracts, and released each other from any claims. *Id.* ¶11; Daire Decl. Ex. C §§2-3. Simultaneously with the 2010 Completion Agreement, Secure and Siemens entered into a new 2010 License and Service Agreement. Plaintiffs would continue to have the benefit of Siemens' technology licenses and engineering support services to further their continuing intention to secure the necessary funding and engineering, procurement, and construction ("EPC") contracts to proceed with their planned Decatur energy plant. *Id.* ¶¶12-13.

In 2012, Plaintiffs abandoned their plans to build a coal-to-natural gas plant in Decatur. Instead, Plaintiffs told Siemens that they planned to produce methanol from coal at a site in West Paducah, Kentucky. So the parties entered into a 2012 Completion Agreement in which they again acknowledged that that they had each fulfilled their respective obligations under the 2010 License and Service Contract and terminated that earlier contract, with  mutual releases. *Id.* ¶15; Daire Decl. Ex. E §2. Simultaneously with the 2012 Completion Agreement, C2L and Siemens entered into a new 2012 License and Service Agreement to further Plaintiffs' stated intention to secure the necessary funding

and EPC contracts to proceed with a plant in West Paducah, Kentucky. *Id.* ¶16. The complete and fully integrated 2012 License and Service Agreement is the entire and only relevant operative contract between the parties, since it provides that "[the 2012 License and Service Agreement] contains the entire agreement and understanding between [C2L and Siemens] as to the subject matter of this Contract, and merges and supersedes all prior agreements, commitments, representations, writings, and discussions between them." Dkt. No. 63-1, §23.

By the beginning of 2016, Plaintiffs were still unable to secure the necessary funding or EPC contracts to proceed with the plant in West Paducah, Kentucky. In February 2016, over eight years after Siemens first sold the coal gasification equipment to Secure's subsidiary, Plaintiffs claim that Siemens told them that Siemens "would not honor" its existing 2012 License and Service Agreement with C2L. Dkt. No. 63 ¶22. Despite their consistent and continuous failures to make any meaningful progress in their long-planned energy plant enterprise, Plaintiffs claim that Siemens, through its business decision, is responsible for those failures.

New to the First Amended Complaint, Plaintiffs allege that Siemens misrepresented or concealed Siemens' ability to perform its contractual obligations. Specifically, Plaintiffs allege on information and belief that, based on the experience of a plant in China, Siemens "became aware of multiple design defects in the Siemens Equipment and Technology between October 31, 2010 and September of 2011" which adversely affected Siemens' ongoing and continuing obligations to perform for Secure under the contracts. *Id.* ¶¶14, 18. According to Plaintiffs, these alleged design defects

conflict with the provisions of "[t]he 2007 Contract, the 2010 License and Service Agreement, and the 2012 License and Service Agreement," which each "guaranteed that the Siemens Equipment and Technology sold under the 2007 Contract would meet certain performance standards." *Id.* ¶18. Plaintiffs further allege that, in July 2015 and while Siemens was already contractually obligated to perform the 2012 License and Service Agreement, Siemens' agent Guido Schuld fraudulently represented to Plaintiffs that Siemens "would continue to support" Plaintiffs' project. *Id.* ¶36. Plaintiffs allege that certain additional unidentified misrepresentations or concealments about the material defects where made during the terms of the contracts, "from October 31, 2010 to January of 2016." *Id.* ¶49. Plaintiffs allege without explanation that they did not become aware of the alleged design defects or the experiences of the Chinese plant until March 2016. *Id.* ¶24.

## IV.    LEGAL STANDARD

It is a plaintiff's burden to plead sufficient factual matter to state a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. "Mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, and a plaintiff cannot rely on naked assertions devoid of further factual enhancement." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*,

693 F.3d 1333, 1337 (11th Cir. 2012). "The plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556).

The Eleventh Circuit's prior decisions also make clear that a document need not be physically attached to a pleading to be incorporated by reference into it. If the document's contents are central to a complaint and no party questions the document's contents, the Court should consider the document. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

## V.     ARGUMENTS AND AUTHORITIES

### A.     Plaintiffs' fraud counts fail since they each merely allege that Siemens failed to perform under the contracts.

Plaintiffs state three counts for fraud: (1) fraudulent misrepresentation – Siemens' support of project (Count III); (2) fraudulent misrepresentation – failure to disclose defects in technology (Count IV); and (3) rescission – fraud (Count V). Each of these claims fails because Plaintiffs cannot allege any duty separate from or in addition to the duties imposed by Siemens' contractual obligations. Siemens believes that New York state law should apply to Plaintiffs' fraud claims since Plaintiffs allege matters of contract performance and validity. But the result – that Plaintiffs' claims cannot survive as a matter of law – is the same regardless of which state law applies.

#### 1.     New York law applies to the alleged issues of contract performance and validity.

In determining whether a choice-of-law clause contained in a contract between two parties also governs tort claims between those parties, a court must first examine the

- 8 -

scope of the provision. *See Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1162 (11th Cir. 2009); *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1300–01 (11th Cir. 2003). The 11th Circuit differentiates along a spectrum of choice-of-law provisions – ranging from those that are construed narrowly to those that are construed broadly. On one end, a provision stating that "[t]his release shall be governed and construed in accordance with the laws of the State of [X]" will be construed narrowly, and not apply to related torts. *Green Leaf Nursery*, 341 F.3d at 1300. On the other end, a provision stating that "all disputes arising out of or in connection with" the agreement "shall be construed in accordance with and shall be governed by" the State of [X] will be construed broadly, and apply to related torts. *Cooper*, 575 F.3d at 1162.

In this case, the choice-of-law provision in the 2010 and 2012 License and Service Agreements lies in the middle of that spectrum. Section 22.8 of the 2012 License and Service Agreement provides that the "***validity***, construction, ***and performance*** of the contract shall be in accordance with the laws of the State of New York, without application of its choice-of-law rules." Dkt. No. 63-1, §22.8 (emphasis added). The 2010 License and Service Agreement provides the same. Daire Decl. Ex. D §22.8. Although the provision does not apply to "all disputes" as in *Cooper*, it is also broader than the provision at issue in *Green Leaf Nursery,* since it refers to the performance of the contract, in addition to contract construction and validity.

Since the choice-of-law provision includes contract performance, it is sufficiently broad to encompass Plaintiffs' pleaded tort claims here, which allege that Siemens misrepresented or concealed its alleged inability to perform the contracts. In Count III,

Plaintiffs allege that Siemens falsely represented that it would "continue to support" Plaintiffs' project in a July 2015 email – at a time Siemens was contractually obligated to do just that (subject to receipt of Plaintiffs' license and service payments). Dkt No. 63 ¶36. In Count IV, Plaintiffs allege that Siemens failed to disclose material design defects before July 18, 2012, also at a time when Siemens was contractually obligated to perform by delivering equipment "guaranteed" to "meet certain performance standards," as Siemens was contractually obligated to do under the 2010 License and Service Agreement (as in every contract from 2007 onward). *Id.* ¶¶18, 43-44. In Count V, Plaintiffs allege that Siemens fraudulently induced Plaintiffs to replace the 2010 License and Service Agreement, which contained "a warranty on the Siemens Equipment and Technology," with the 2012 License and Service Agreement, "which contained no equipment or technology warranty." [2] *Id.* ¶¶61, 74.

New York law should also govern for the additional reason that the choice-of-law provision in the 2012 License and Service Agreement encompasses contract validity. Dkt. No. 63-1, §22.8. Since Count V seeks rescission of the 2012 License and Service Agreement, Plaintiffs' tort claims directly assail the validity of the 2012 License and

---

[2] The 2012 License and Service Agreement (Exhibit 1 to the First Amended Complaint) itself compels dismissal of Count V, since it flatly contradicts Plaintiffs' allegation that it "contained no equipment or technology warranty." *See, e.g., Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) ("when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern"). In Section 7.4 of the 2012 License and Service Agreement, Siemens provides C2L an "Engineering Services and [Technical Field Assistance] Warranty" which broadly covers "any engineering work performed under this Contract." Dkt. No. 63-1 at §§1.0, 7.4.1, 7.4.2, 7.4.3. Further, in Section 7.9, Siemens provides performance guarantees for syngas output of the equipment, coal consumption of the equipment, and oxygen consumption of the equipment. *Id.* at 7.9.1. But, even accepting the allegation at face value, it simply reinforces that this action is a dispute about Siemens' contractual performance.

Service Agreement.

Although there does not appear to be any 11th Circuit authority dealing with this precise issue – i.e., the scope of a choice-of-law clause which includes contract performance – courts from other Circuits would conclude that New York law applies. *See Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1392 (8th Cir. 1997) (tort claims were issues of contract performance and governed by contractual choice-of-law provision); *In re Allegheny International, Inc.*, 954 F.2d 167, 178 (3d Cir. 1992) (law chosen in contract applied to a claim of fraudulent inducement based on contract language stating that the agreement was to be "governed by, and construed in accordance with, the laws" of the chosen state). For example, in *Corestates Bank, N.A. v. Signet Bank*, No. CIV. A. 96-3199, 1996 WL 482909, at *5 (E.D. Pa. Aug. 26, 1996), the court held that a provision stating "[t]his Agreement and the rights and obligations of the parties hereunder shall in all respects be governed by, and construed in accordance with, the internal laws of the Commonwealth of Virginia …including all matters of construction, validity and performance" also governed plaintiffs' related tort claims. Key to the *Corestates* decision was plaintiff's request for rescission based on fraud, a form of relief that would directly affect the underlying contract which contained the choice-of-law provision. *Id.* at fn. 3.

Here, Plaintiffs have made the exact same request for rescission based on fraud. For similar reasons, New York law should govern Plaintiffs' fraud counts.

### 2.     Plaintiffs cannot allege a duty separate from Siemens' contractual obligations.

Under New York law, "a contract action cannot be converted to one for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations." *Rocanova v. Equitable Life Assurance Society Of The United States,* 83 N.Y.2d 603, 614, (1994); *Sudul v. Computer Outsourcing Services,* 868 F.Supp. 59, 62 (S.D.N.Y. 1994) ("where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract"). A false promise can support a claim of fraud only where that promise is "collateral or extraneous" to the terms of an enforceable agreement in place between the parties. *Int'l Cabletel Inc. v. Le Groupe Videotron LTEE*, 978 F.Supp. 483, 487–489 (S.D.N.Y. 1997). If an alleged promise is not independent of or in addition to the duties imposed by contract, the fraud claim fails. *See Telecom International America, Ltd., v. AT&T Corp.*, 67 F.Supp.2d 189, 208 (S.D.N.Y. 1999) (citations omitted) (granting 12(b)(6) motion because the alleged fraudulent promise was not independent of the buyer's duties to abide by the terms of the sales contract executed by the parties).

In this case, the breaches of duty that Plaintiffs allege in Counts III, IV, and V are one and the same with Siemens' alleged contractual obligations. In Count III, Plaintiffs allege a breach of Siemens' duty "to continue to support the project" in July 2015 – a duty which is the same as Siemens' contractual obligation to perform. Dkt. No. 63 ¶36. In Counts IV and V, Plaintiffs allege that, from October 31, 2010 to January of 2016,

Siemens had a duty to disclose "material design defects discovered in a plant using identical equipment and related technology to the Siemens Equipment and Technology sold to plaintiffs by Siemens" – another complaint that Siemens allegedly failed to perform the contractual obligations it owed to Plaintiffs. *Id.* ¶¶48-49.

Siemens does not owe any duties to the general public "to continue support" for Plaintiffs' project or to disclose alleged "design defects" in gasification equipment discovered in a Chinese plant. To the contrary, Siemens' duties only arise as a result of contractual obligations between it and specific entities – Plaintiffs. As Plaintiffs alleged, the parties entered into a series of contracts in which Siemens "guaranteed" that the Siemens equipment and technology "would meet certain performance standards." Id ¶18. Siemens' failure to perform under the contracts cannot equate to a claim in tort because the "duties" that the Defendant allegedly breached are interwoven into the contracts.

Siemens anticipates that Plaintiffs will argue in opposition, as they did in earlier briefing, that Siemens' alleged misrepresentations or concealments as to material defects are alone enough to save Plaintiffs' fraud claims. The Court should reject that argument since the alleged misrepresentations or concealments must still be "extraneous to the contract and involve a duty separate from or in addition to that imposed by the contract." *The Hawthorne Group, LLC v. RRE Ventures*, 776 N.Y.S.2d 273, 276 (1st Dep't 2004). "[I]n order to sustain the fraud cause of action, there must be a breach of a duty separate from or in addition to the contract duty." *Wyle Inc. v. ITT Corp.*, 130 A.D.3d 438, 439 (N.Y. App. Div. 2015); *see also Hawthorne*, 776 N.Y.S.2d at 276 ("In a fraudulent inducement claim, the alleged misrepresentation should be one of then-present fact,

which would be extraneous to the contract and involve a duty separate from or in addition to that imposed by the contract ...."); *Savasta & Co. v. Interactive Planet Software Motion Inc*., 2008 WL 2563485 (Sup.Ct. N.Y. Cnty. June 12, 2008) (where alleged "misrepresentations of ... present fact ... fall exactly within the warranties," they "are not extraneous to the Agreement" and cannot support a fraud claim.).

Here, the duties alleged in Counts III, IV, and V are the same imposed by Siemens' contractual allegations. They cannot be sustained as separate from or in addition to the contract and Counts III, IV, and V should be dismissed without leave to amend.

### 3.   Plaintiffs' fraud claims should be dismissed regardless of which law applies since Florida and Kentucky law compel the same result.

The Court should likewise dismiss Plaintiffs' claims if it concludes that Florida or Kentucky law applies (the only other two states with a plausible connection to Plaintiffs' tort claims), since those states' laws enforce similar common law principles against transmogrifying a contract dispute into tort claims.

A federal court sitting in diversity must apply the choice-of-law rules of the forum state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). But when a defendant moves successfully for a transfer to a more convenient forum under 28 U.S.C. § 1404(a), the transferee court must apply the same state law that the transferor court would have applied. *7 Roofing & Sheet Metal Services, Inc. v. La Quinta*, 689 F.2d 982, 991 (11th Cir. 1982). "A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms." *Id.* (quoting *Van Dusen*

*v. Barrack*, 376 U.S. 612, 638 (1982)).

Because this diversity action was transferred from the Southern District of Illinois, this Court would apply the choice-of-law principles on which that District would have relied – i.e., Illinois law. *Acme Circus Operating Co., Inc. v. Kuperstock*, 711 F.2d 1538, 1540 (11th Cir. 1983). For tort claims, Illinois' choice-of-law principles follow "the most significant relationship" test and balance a number of factors, including the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile or place of business of each party; and the place where the relationship between the parties is centered. *W. Side Salvage, Inc. v. RSUI Indem. Co*., No. 15-CV-0442-MJR, 2016 WL 6124637, *4 (S.D. Ill. Oct. 17, 2016) (citations omitted). Applying these factors, the court is to evaluate the relative importance of the facts with respect to the particular issue. After determining the most significant relationship pursuant to the factors, the court considers policy factors including: the relevant policies of the forum; the relevant policies of other interested states, the protection of justified expectations, and the predictability and uniformity of the result. *Id.*

In this case, the allegedly fraudulent misrepresentations and concealments took place in Florida. In fact, the Southern District of Illinois court already concluded that "as to the fraud-based claims, the situs of material events would be where the alleged fraudulent misrepresentations were made, and that again is Siemens' Orlando office, where the personnel negotiating and handling the deal (other than one Siemens' employee in Germany, Rolf Ruesseler) were located." Dkt. No. 31 at 8. Siemens' allegedly fraudulent misrepresentations and concealments were directed to Plaintiffs'

hoped-for gasification plant in West Paducah, Kentucky. The place of business for Siemens is Florida; the place of business for Plaintiffs is Missouri. The place where the relationship between the parties is centered is either Florida – where Siemens engaged in the contracting process that was the vehicle for Siemens' alleged fraud – or Kentucky, where Plaintiffs' anticipated building their gasification plant.

Since Plaintiffs' fraud claims allege matters of contract performance and validity, the New York choice-of-law provisions in the underlying contracts should govern those claims. But if the Court concludes otherwise and applies traditional choice-of-law principles, than the states with the most significant relationship to the alleged frauds are Florida and Kentucky. Nor are there any policy considerations to compel the application of another state's law. The Southern District of Illinois court expressly concluded that: (1) "there is no significant connection between [the Southern District of Illinois] and this litigation;" and (2) the only connection between Illinois and the litigation extinguished five years ago, in 2012, when Plaintiffs scuttled its Decatur plant. Dkt. No. 31 at 6, 8. And the only "connection" to Missouri is that Plaintiffs happen to have their principal place of business there.  For present purposes, the Court need not resolve which of Florida or Kentucky's states laws applies to Plaintiffs' fraud counts, since those counts should be dismissed under either state's law.

**Florida law:** Misrepresentations relating to the breaching party's performance of the contract do not give rise to an independent cause of action in tort. *See Monsoon, Inc. v. Bizjet Int'l Sales & Support, Inc.*, No. 16-80722-CIV, 2017 WL 747555, at *10 (S.D. Fla. Feb. 27, 2017) (granting-in-part Rule 12(b)(6) motion and dismissing fraud and

misrepresentation claims because the alleged misrepresentations "concern the heart of the parties' agreement"); *S. Wind Aviation, LLC v. Cessna Aircraft Co*., No. 612CV1376ORL22DAB, 2014 WL 12570958, at *6 (M.D. Fla. July 15, 2014) (dismissing misrepresentation claims "inextricably intertwined with the performance of the agreement"). The facts alleged in *Moonson* are remarkably similar to the facts alleged here. There, plaintiffs alleged that defendant intentionally "misrepresented material information throughout the process of the mid-life inspection before, during, and after the contract was signed, upon which [p]laintiffs relied, in order to get [p]laintiffs' business and to keep [their] business." *Monsoon, Inc.*, 2017 WL 747555, at *10. The court dismissed plaintiffs' fraud claims because the alleged pre- and post-contract misrepresentations – including that defendant (i) "misrepresent[ed] its ability" to do the work and (ii) "with[held] information as to the quality of its work" – related exclusively to performance of the contract. *Id.* Here, Plaintiffs allege that Siemens intentionally misrepresented its intentions and abilities to perform and withheld information about the design of its equipment to keep Plaintiffs' business. Plaintiffs' fraud claims here are the same as the fraud claims the court rejected in *Monsoon* and they too should be dismissed.

**Kentucky law:** "The failure to perform a contractual obligation typically does not give rise to a cause of action in tort." *Mims v. W.-S. Agency, Inc.*, 226 S.W.3d 833, 836 (Ky. Ct. App. 2007). A plaintiff can maintain an action in tort even though the acts complained of also constitute a breach of contract if the plaintiff "can establish the existence of an independent legal duty." *Id.; see Lewis v. Ceralvo Holdings, LLC*, No. 4:11-CV-00055-JHM, 2012 WL 32607, at *5 (W.D. Ky. Jan. 6, 2012) (granting-in-part

12(b)(6) motion and dismissing trespass claim because it is "born from [defendant's] failure to accurately perform the contract, and is not based on the existence of an independent legal duty"). Here, Plaintiff cannot establish the existence of any such independent legal duty for the reasons stated above, and their fraud claims should be dismissed under Kentucky law.

### B. Plaintiffs cannot rescind the 2007 Contract because Plaintiffs expressly acknowledged they have no ground for any claim under the 2007 Contract and/or under any theory of law and releases all claims.

In Count VI, Plaintiffs seek to rescind the 2007 Contract (and "all the subsequent contracts arising from plaintiffs' course of dealing") for "failure of the consideration for the 2007 Contract." Plaintiffs' request for rescission of the 2007 Contract must be dismissed because the 2010 Completion Agreement includes a mutual release of all claims under the 2007 Contract "and/or under any theory of law" and a declaration that both sides "fulfill[ed] all contractual obligations regarding the Equipment supply" under the 2007 Contract. Daire Decl. Ex. C §§2-3. Indeed, the Southern District of Illinois court has already concluded that "the parties executed a [2010 Completion Agreement] containing a mutual release of all claims against the other for that series of transactions." Dkt. No. 31 at 8.

Under New York law[3], a release is governed by principles of contract law and a court should enforce a valid release by its clear terms. *See Mangini v. McClurg*, 249 N.E.2d 386, 389–90 (1969). The existence of a valid release warrants dismissal of a claim

---

[3] New York law governs Count VI. Section 24.7 of the 2007 Contract provides that the "validity, construction, and performance of the contract shall be in accordance with the laws of the State of New York, without application of its choice-of-law rules." Daire Decl. Ex. A, §24.7. Section 5 of the 2010 Completion Agreement provides the same. *Id.* Ex. C §5.

that is clearly encompassed by the release. *See Goldberg v. Manufacturer's Life Ins. Co.*, 672 N.Y.S.2d 39, 44 (1st Dep't 1998). However, if a party is fraudulently induced to execute a release, the release is a voidable contract and may be voided by the defrauded party. *See Kamerman v. Curtis*, 33 N.E.2d 530, 532 (1941).

Here, Plaintiffs' claim for rescission of the 2007 Contract is clearly encompassed by the mutual release to which the parties agreed in the 2010 Completion Agreement. And Plaintiffs cannot salvage their claim for rescission of the 2007 Contract by claiming that they were fraudulently induced to execute the 2010 Completion Agreement, since all of Siemens' alleged frauds post-date the 2010 Completion Agreement. Specifically, the effective date of the 2010 Completion Agreement was March 31, 2010. Daire Decl. Ex. C. The first time that Siemens allegedly defrauded Plaintiffs was seven months later, in "October of 2010 when identical equipment and related technology provided to a plant in China had to be substantially redesigned." Dkt. No. 63 ¶83. Even accepting that all of Plaintiffs' allegations are true, there is no possible way that Siemens' alleged fraud in October 2010 could have induced Plaintiffs to enter into the March 2010 Completion Agreement, which extinguishes their claim for rescission of the 2007 Contract.

## VI.    CONCLUSION

Counts III, IV, and V of the First Amended Complaint fail as a matter of law because they cannot be reconciled with common law principles under New York, Florida, or Kentucky law. Count VI is legally insufficient because there is a binding and valid mutual release that encompasses any claim for rescission of the 2007 Contract. Accordingly, Siemens' motion to dismiss should be granted with prejudice.

Dated:  May 5, 2017

Respectfully submitted,

By: _/s/ James A. Daire_
    P. Alexander Quimby
    Florida Bar No. 099954
    Baker & Hostetler LLP
    SunTrust Center, Suite 2300
    200 South Orange Avenue
    Orlando, FL 32801-3432
    Telephone: 407.649.4000
    Facsimile: 407.841.0168
    Email: aquimby@bakerlaw.com
    and
    Scott D. Baker (admitted pro hac vice)
    Email:      sbaker@reedsmith.com
    James A. Daire (admitted pro hac vice)
    Email:      jdaire@reedsmith.com
    Christopher J. Pulido (admitted pro hac vice)
    Email:      cpulido@reedsmith.com
    REED SMITH LLP
    101 Second Street
    Suite 1800
    San Francisco, CA  94105-3659
    Telephone: +1 415 543 8700
    Facsimile: +1 415 391 8269

    _Counsel for Siemens Energy, Inc._

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 5, 2017, a true and correct copy of the foregoing was submitted to the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to the following listed counsel:

**Walter A. Ketcham , Jr., Esq.**
Grower, Ketcham, Eide, Telan & Meltz, P.A.
P.O. Box 538065
Orlando, FL 32853-8065
Email:  enotice@growerketcham.com; lsase@growerketcham.com;
　　　  mbryan@growerketcham.com
Counsel for Plaintiffs

**John F. Cooney**
**Robert L. Devereux**
Danna McKitrick, PC
7701 Forsyth Blvd., Suite 800
St. Louis, MO 63105
Email:  jcooney@dmfirm.com; rdevereux@dmfirm.com
Counsel for Plaintiffs


DATED:  May 5, 2017.


　　　　　　　　　　　　　　　　　　　/s/ James A. Daire
　　　　　　　　　　　　　　　　　　　James A. Daire
　　　　　　　　　　　　　　　　　　　.