## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

|  |  |  |
|---|---|---|
| **MIDAMERICA C2L INC., et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| **v.** | ) | Case No. 6:17-cv-171-Orl-18KRS |
| | ) | |
| **SIEMENS ENERGY, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## DEFENDANT SIEMENS ENERGY, INC.'S MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF DR. HERBERT KOSSTRIN

Defendant Siemens Energy, Inc. ("Siemens"), by and through undersigned counsel, submits the following motion (the "Motion") to exclude the opinions and testimony of Dr. Herbert Kosstrin ("Kosstrin"), an expert offered by Plaintiffs MidAmerica C2L Incorporated ("C2L") and Secure Energy, Inc. ("Secure") (collectively, "Plaintiffs").  In support thereof, Siemens respectfully states as follows.

### I.     INTRODUCTION

Plaintiffs have brought fraud and contract claims seeking over $86 million in damages stemming from allegations that the gasifier equipment and Basic Engineering Design Package ("BEDP") Siemens delivered to Plaintiffs was defective and unfit for their intended purpose—namely, gasifying coal to raw gas utilizing Illinois coal.  In support of their claims, Plaintiffs offer a thirteen page expert report from Kosstrin, who parrots Plaintiffs' allegations and opines that the Siemens gasifiers and BEDP had material design

defects.  Kosstrin's opinions are bereft of any analysis or evaluation of the equipment and the BEDP that Siemens delivered to Secure for the plant that Secure intended to build in Illinois. Indeed, Kosstrin did not even inspect the equipment, let alone run simulations or computer modeling.  Instead, Kosstrin rests his opinions exclusively on his observations concerning documentation about a different plant in China where a different Siemens customer (Shenhua Ningxia Coal Industry Group ("Shenhua")) used gasifiers to process different coal using different fuel gas to produce a different product under different operating conditions.  Worse yet, as Kosstrin concedes, the coal used in the China project was outside the design specification that Siemens had provided for that project—a fact that he ignores without explanation in his report or opinions.  Kosstrin also ignores entirely the undisputed facts that Shenhua certified its acceptance of the Siemens gasifiers in July 2013 as being compliant with all contractual performance guarantees, and ordered 24 more.

An expert's opinion is only as good as the foundation underneath it and Kosstrin's opinion—that is, his attempt to extrapolate from the China project defect opinions for the gasifiers and the BEDP Siemens delivered to Secure—has no foundation at all.  It is untethered to any scientific literature or peer review, has not been generally accepted, and cannot be adequately tested under cross-examination.

Kosstrin similarly opines, without any foundation or analysis, that Siemens was incapable of performing the parties' 2012 license agreement.  A classic example of *ipse dixit*, Kosstrin arrives at this conclusion based solely on the fact that "Siemens exited the gasification business in 2016."  This opinion is in blind contradiction to the documentary evidence that plainly illustrates that Siemens was, and is, willing honor its contractual

obligations.[1]  Kosstrin offers no further explanation or analysis beyond his conclusion itself.

Next, Kosstrin—who is not an appraiser (certified or otherwise) and has never appraised any industrial equipment—opines that the Secure equipment is "worthless, except for scrap value."  At the threshold, Kosstrin is not qualified to offer this opinion.  Moreover, Kosstrin's opinion is again devoid of any appraisal analysis or evaluation and thus unreliable and immune from cross-examination.

Finally, Kosstrin offers related improper opinions as to (1) the meaning of provisions of the parties' 2012 license agreement between Siemens and Secure and (2) Secure's state of mind, including its "expectations" and "reliance", that improperly tread into the exclusive province of the Court and the jury, respectively.

The flaws in Kosstrin's opinions expose the unreliability of his approach and his conclusions.  When expert testimony crosses the line into unreliability, as Kosstrin's opinions most assuredly do here, Eleventh Circuit case law, in keeping with *Daubert's* most basic gatekeeping principle, speaks with one voice: his opinions must be excluded and do not belong in front of a jury.  Siemens urges this Court to grant this Motion and exclude Kosstrin's unfounded and unsubstantiated opinions, some of which he is without qualification to provide.

## II.     LEGAL STANDARDS

Because expert testimony can be "both powerful and quite misleading," federal judges have the duty to act as gatekeepers by admitting expert testimony only if it "both rests on a reliable foundation and is relevant to the task at hand."  *Daubert v. Merrell Dow*

---

[1] Kosstrin never even considered any of Siemens' depositions exhibits in forming his opinions.  (*See* Kosstrin Rep. at 1.)  Kosstrin considered only the BEDP, certain deposition transcripts, and "Plaintiffs' exhibits that have been employed in this case or are intended to be employed by Secure in the prosecution of this matter."  (*Id.*)

*Pharms., Inc.*, 509 U.S. 579, 595 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); *see also Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005), cert. denied, 546 U.S. 935 (2005).  This gatekeeping obligation applies equally to both scientific and non-scientific experts.  *Kumho*, 526 U.S. at 147.  When applying *Daubert*, the court's task "is to analyze not what the experts say, but what basis they have for saying it."  *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995).  Expert testimony must rest on "more than subjective belief or unsupported speculation" to be reliable, *Daubert*, 509 U.S. at 590, and may be excluded if "there is simply too great an analytical gap between the data and the opinion proffered," *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Federal Rule of Civil Procedure 702 and the *Daubert* line of cases permit an expert to testify in the form of an opinion where three criteria are met: (1) the expert is qualified to offer the opinion he intends to offer, (2) the expert applied reliable methods and principles in forming his opinion, and (3) the expert's opinion will assist the jury in deciding a disputed fact or issue.  *Rink*, 400 F.3d at 1291-92.  District courts are obligated to rigorously examine each of the three criteria in order to "'ensure that speculative, unreliable expert testimony does not reach the jury' under the mantle of reliability that accompanies the appellation 'expert testimony.'"  *Id*. at 1291 (quoting *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002)).  Notwithstanding, this list of factors is non-exhaustive, and district courts exercise substantial discretion in determining an expert's reliability.  *See Kumho Tire*, 526 U.S. at 151.

An expert is permitted to form conclusions by extrapolating from existing data.  *Butler v. First Acceptance Ins. Co.*, 652 F. Supp. 2d 1264, 1272 (N.D. Ga. Aug. 17, 2009)

(citing *Joiner*, 522 U.S. at 146).  However, "[a]n expert's opinion becomes inadmissible . . . where it is connected to existing data only by the *ipse dixit* of the expert." *Id*. at 1271-72 (quoting *Joiner*, 522 U.S. at 146); *see also Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1113 (11th Cir. 2005).  When an expert relies primarily on experience, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id*. at 1272 (quoting *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004)).  This is because "[a]n expert's qualification and experience alone are not sufficient to render his opinions reliable," and expert testimony that is nothing more than what lawyers can argue in closing does not help the trier of fact. *Id*.

It is ultimately the burden of the party who offers the expert to show that the expert's opinion is admissible, and the party must do so by a preponderance of the evidence. *Rink*, 400 F.3d at 1292.

## III.    BACKGROUND

In support of their $86 million claim, Plaintiffs offer a thirteen page, double-spaced expert report from Kosstrin.  Kosstrin offers opinions concerning the License and Service Agreement dated July 3, 2012 between Siemens and Secure (the "2012 License and Service Agreement") and alleged design defects in the equipment and the BEDP that Siemens delivered to Secure.  But Kosstrin does not base his opinions concerning the equipment and the BEDP on the actual equipment and the BEDP that Siemens delivered to Secure—which Secure has had possession of for over nine years, since 2009.  Instead, as the exclusive basis for his opinions regarding the equipment and the BEDP delivered to Secure, Kosstrin draws

upon his observations concerning documents about the operation of a plant in China that utilized Siemens fuel gasification technology to process different coal than specified for the Secure project.

In particular, Kosstrin looks to a Siemens fuel gasification technology plant that was licensed to Shenhua.  Shenhua built the Ningxia Coal to Polypropylene ("NCPP") facility using five 500 $MW_{th}$ Siemens gasifiers and other basic design information from Siemens. (Kosstrin Rep. at 2.)  But there is no similarity between the NCPP plant and Plaintiffs' hoped-for project in Illinois and later Kentucky.  Shenhua used different coal, under different conditions, with a different BEDP.  And Shenhua actually operated their gasifiers.  Indeed, today, Shenhua's gasifiers are still in commercial operation and being used to produce polypropylene.  Plaintiffs, on the other hand, never built or operated any plant.

In his report, under the headings below, Kosstrin provides the following opinions, and states the basis for each as tied exclusively to the operation of the NCPP plant—not Plaintiffs' gasifiers:

- **"Material Design Defects in the License"**

  **Opinion:**  "[T]he equipment and the BEDP delivered by Siemens to [Secure] had material design defects and the equipment delivered to Secure in 2009 required significant modifications and a new burner in order for the TBL [i.e., the Siemens technology or technology battery limits] to operate as intended." (Kosstrin Rep. at 4.)

  o  **Basis:**  "The basis for this opinion is a review of exhibits and information concerning the NCPP plant's operations up to the signing of the 2012 License

Agreement."  (Kosstrin Rep. at 4; see also Kosstrin Depo. at 70:9-71:14.)

- **"The Equipment and the Design Package Required Substantial Revisions"**

    **Opinion:**  "[T]he BEDP delivered to Secure in February 2008 required substantial revision and Siemens did not know all revisions that could be required.  Furthermore, each item of the equipment delivered to Secure in 2009 needed replacement or significant modification, some of which could not have been implemented."  (Kosstrin Rep. at 8.)

    o  **Basis:**  "The basis for this opinion is the specific information in Plaintiffs' Exhibits 69, 69-2, 76, and 85."  (Kosstrin Rep. at 8; see also Kosstrin Depo. at 70:9-71:14.)  (Pl. Ex. 69 [improvements from NCPP plant to be implemented in the project of another Siemens customer, Texas Clean Energy Project]; Pl. Ex. 69-2 [cover letter and attachment regarding same]; Pl. Ex. 76 [email comparing performance of SFG-500 reactor for NCPP plant]; Pl. Ex. 85 [PowerPoint presentation prepared by Shenhua].)

- **"Inability to Finance the Secure Project"**

    **Opinion:**  "Secure needed to obtain and engineering, procurement, and construction ('EPC') contract" and "the operation of the NCPP plant and the required fixes established that the equipment and technology provided to Secure was not viable, thus making it impossible for Secure to obtain project financing for its contemplated facility."  (Kosstrin Rep. at 10.)

    o  **Basis:**  "[T]he operation of the NCPP plant and the required fixes established

that the equipment and technology provided to Secure was not viable."
(Kosstrin Rep. at 10.)

Kosstrin also opines, without any foundation or analysis whatsoever, that Siemens was incapable of performing the 2012 License and Service Agreement. (Kosstrin Rep. at 11.) And, although he has no appraisal experience, let alone expertise, Kosstrin opines that the Siemens gasifiers are "worthless, except for scrap value." (Kosstrin Depo. 13:4-22; Kosstrin Rep. at 12.) Finally, Kosstrin offers improper opinions concerning (1) what is required under the 2012 License and Service Agreement; (2) Secure's expectations; and (3) Secure's reliance on information from Siemens that was not in the 2012 License and Service Agreement. (Kosstrin Rep. at 2-3.)

Each of Kosstrin's opinions are unreliable, improper, and subject to *Daubert*—the Court should exclude these opinions.

## IV. THE COURT SHOULD EXCLUDE KOSSTRIN'S OPINIONS

### A. Kosstrin's "design defect" opinions are unreliable and lack foundation.

Kosstrin opines that (1) the equipment and the BEDP that Siemens delivered to Secure had material design defects; (2) the BEDP required substantial revisions unknown to Siemens and the equipment required replacement or substantial modification that could not be implemented; and (3) because of the defects and the required fixes, the equipment and technology Siemens provided to Secure was not viable and therefore it was impossible for Secure to obtain project financing for its contemplated facility. (Kosstrin Rep. 4-13.) Each of these opinions is without any trustworthy foundation and is unreliable.

At the threshold, Kosstrin's opinions are fatally flawed because he did not base them

on his assessment of the actual equipment and BEDP that Siemens delivered to Secure for its project.   Indeed, Kosstrin did not even inspect or look at the equipment that Siemens delivered to Secure, let alone attempt to model it, or simulate its performance.   (Kosstrin Depo. at 77:14-18, 79:17-80:2.)   Instead, each of Kosstrin's opinions are grounded exclusively on documents regarding the NCPP project in China for Shenhua—Kosstrin did no analysis of his own.   (*See* Kosstrin Rep. at 4-13; Kosstrin Depo. at 70:9-71:14.)   This alone renders his opinions inherently unreliable and subject to exclusion.

But the flaws in his methodology run deeper, only compounding the unreliability of his opinions.   Indeed, to the extent Secure tries to salvage Kosstrin's opinions by arguing that the gasifiers for the NCPP project are in the same class as those that Plaintiffs purchased from Siemens, that is not a reliable proxy.   Although gasifiers operating in the same class may be capable of handling a variety of different feedstocks, the gasifiers must still be configured and optimized for the design parameters of each individual project—that is why there is always a period for start-up and commissioning at each project.   Indeed, the operation of the gasifiers depends upon factors independent of the equipment itself, including the feedstock that is input into the gasifiers.   And Kosstrin concedes that the NCPP plant used coal that was "outside the range" of the coal for which the NCPP gasifiers were designed.   (Kosstrin Depo. 70:20-72:4.)   That fact alone eliminates any possible foundation for Kosstrin's opinion that the actual outside the design range experiences at NCPP can be used to conclude that the Secure gasifiers—which Secure has still never operated—are defective.   Demonstrating that the use of "outside the range" coal is material, the 2012 License and Service Agreement disclaims Siemens' warranties and performance guarantees

in the event off-specification coal is used.  Both the original December 2007 contract between the parties and the 2012 License and Service Agreement state:  "Operating the plant with coal that does not meet the Fuel Specification shall void Siemens' Warranties and Performance Guarantees."  (Def. Exs. 5, 29.)  Kosstrin admitted that this limitation is "standard" in the industry because sellers want to make sure that the operator of the plant is on notice that operating the plant with coal that is outside the design range voids whatever guarantees or warranties exist.  (Kosstrin Depo. 124:20-126:20.)  Although he relies on outside the design range coal experiences from the NCPP project, Kosstrin fails to account for, let alone address, the impact of the warranty and performance guarantee disclaimers in arriving at his opinions.

Kosstrin's extrapolation of the operational issues of the NCPP plant as the sole basis for rendering defect "opinions" for the gasifiers and BEDP delivered to Secure for its project is also flawed for two additional reasons.  First, Kosstrin concedes that the coal used for the NCPP project was outside the design parameters that Siemens and Shenhua had specified for that project.  (Kosstrin Depo. at 71:15-72:4.)  As a result, Kosstrin's observations regarding the NCPP project are unsound, even as applied to the NCPP project.  Indeed, Kosstrin admits he conducted no root cause of analysis of the alleged issues on the NCPP project.  (Kosstrin Depo. at 89:11-90:3.)  In other words, Kosstrin undertakes no scientific- or engineering-based independent analysis as to the cause of the operational issues at the NCPP plant.  So even if the variables of coal and fuel and operating conditions were identical for both projects (which they are decidedly not), the observations are based solely on hearsay and create no reliable foundation.

Second, Kosstrin concedes that he made no attempt to evaluate the off-specification coal used for the NCPP project versus the coal that was design-specified for the Secure project.[2]  (Kosstrin Depo. at 40:4-7: "Q. Are there any errors or omissions in your report that you need to correct?   A. Based on the documentation I have seen, I think the report is complete."   Kosstrin Depo. at 72:16-22:  "Q.  Yeah and did you do any -- for purposes of your opinions in this report did you do any comparisons of the data that was available as to the coal that was used and the design coal at the NCPP plant?  A.  We didn't have this data for the report."  Kosstrin Depo. at 77:2-5:  "Q.  Now, your report contains no opinions on how the coal at the NCPP plant compared to the design coal for the Secure project, correct?  A.  It does not.")

Unsurprisingly, Kosstrin's approach—namely, rendering design defect opinions about coal gasification equipment for one facility with design-specified coal based on experience with that equipment at a different facility using different and off-specification coal—has not been generally accepted in the scientific community or otherwise endorsed or approved by his peers or in the professional literature.  (Kosstrin Depo. 81:5-13.)  As this Court has explained, "[t]hese are deficits that cannot be cured on cross-examination."  *See Omega Patents, LLC v. Calamp Corp.*, No. 6:13-cv-1950-Orl-40DAB, 2015 WL 12830496, at *10 (M.D. Fla. Dec. 23, 2015) (citing *Daubert*, 509 U.S. at 593-94) (excluding expert opinion because "there is no way for the Court to determine reliability as to this portion of [the expert's] opinion.  [The expert's] methodology cannot be tested, has not been subjected

---

[2] At deposition, Kosstrin suggested he had not reviewed the specifications for the NCPP project until the day before his deposition because it was his understanding Siemens had not produced them earlier in the case.  This is incorrect.  Siemens produced the specifications for the NCPP project on December 13, 2017.  *See* Dkt. No. 135-4.  Plaintiffs' counsel decided not to share the NCPP specifications with Kosstrin prior to submission of his Report, and then did so only one day prior to his deposition.

to peer review, has no known error rate, and, as far as the Court is aware, has not been generally accepted in the relevant scientific community.").

Stripped of his improper reliance on observations concerning the NCPP project—where off-specification coal was used—Kosstrin's opinions stand on nothing. To be sure, Kosstrin offers no opinions as to any alternative design Siemens should have deployed for the BEDP or any of the equipment Secure purchased from Siemens. (Kosstrin Depo. 110:17-111:15.) *See McCorvey v. Baxter Heathcare Corp.*, 298 F.3d 1253, 1256-57 (11th Cir. 2002) (affirming district court's exclusion of expert's testimony because the expert "did not test alternative designs for the catheter; did not talk to medical personnel; was unable to cite scientific literature in support of his theories; and did not consider or test possibilities for failure that would have come from sources outside the product, such as the effect of improper storage conditions, contaminant, or human error.") Instead, Kosstrin defines a "design defect" in the Secure gasifiers as any issue—no matter how small or correctable—that, in Kosstrin's view, would prevent the gasifiers from achieving the contractual performance guarantees in the 2012 License and Service Agreement.[3] (Kosstrin Depo. 110:10-118:25.)

The burden to prove a design defect in the Secure gasifiers lies with Plaintiffs, and the only testimony they proffer in support of their theories is from Kosstrin. Kosstrin, though, ignored the Secure gasifiers—not so much as a model, computer simulation, or even visual inspection. The sole basis of his opinion is the alleged experiences of a different project (NCPP) using coal that Kosstrin concedes was "outside the range" of the design specification for the NCPP project and was also different from the coal that Plaintiffs promised to use for

---

[3] As described in Siemens' accompanying motion for summary judgment, Kosstrin's opinions reinforce that Plaintiffs' fraud claims are coextensive with their contract claims and fail as a matter of law.

their project.  There is no foundation for Kosstrin to use the experiences at NCPP to try to show design defects as to the Secure gasifiers.  (In fact, there is no foundation for his view that the experiences at NCPP show any "design defect" as to the NCPP gasifiers either.) And since the Secure project never got to the point of start-up or commissioning, there is no basis to look to NCPP as a comparable.  Kosstrin's "design defect" opinions should be excluded.

> **B.**     **Kosstrin's opinion concerning Siemens' alleged inability to perform the 2012 License and Service Agreement is without foundation and improper.**

Kosstrin's opinion that Siemens was incapable of performing the 2012 License and Service Agreement should similarly be excluded.  (Kosstrin Rep. at 12.)  Kosstrin opines that Siemens is unable to "stand up to the guarantees in the License" and cannot provide "technical assistance during starting up of the [Secure] plant" required under the 2012 License and Service Agreement.  (*Id.*)  Kosstrin's opinion stands on nothing but the fact that "Siemens exited the gasification business in 2016."  (*Id.*)  This conclusory *ipse dixit* opinion—lacking any foundation or analysis whatsoever—should be excluded.

Indeed, although an expert is permitted to form conclusions by extrapolating from existing data, his opinion "becomes inadmissible . . . where it is connected to existing data only by the *ipse dixit* of the expert."  *Butler*, 652 F. Supp. 2d at 1271-72 (citing *Joiner*, 522 U.S. at 146); *see also Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1113 (11th Cir. 2005).  The Committee Note to the 2000 Amendments of Rule 702 states that, "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.  The

trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Fed. R. Evid. 702. To perform its gatekeeping function, the court is allowed to "conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Joiner*, 522 U.S. at 146.

Here, there is too great of an analytical gap between Kosstrin's opinion that Siemens was unable perform the 2012 License and Service Agreement and the sole fact that Siemens decided to exit the business of selling gasifiers. Kosstrin offers no further explanation for his opinion, and fails to identify, let alone analyze, any factors that would measure Siemens' ability to perform the contract. Moreover, Kosstrin ignores the documentary evidence that directly contradicts his opinion. For example, Kosstrin does not take into account the undisputed fact that Siemens informed Plaintiffs that "Siemens will not violate any contractual obligation by its strategic exit from [the coal gasification] business." (Def. Ex. 49.) These contractual obligations would specifically include any technical assistance and performance guarantees required under the 2012 License and Service Agreement. (*See* Def. Ex. 29, Appx. 7.) Siemens even offered in writing to extend the deadline for its own performance guarantees to Plaintiffs until 2021, as long as Plaintiffs paid Siemens the outstanding license fees they owed Siemens. (Def. Ex. 50.) Kosstrin admits he never looked at the document. (Kosstrin Depo. 167:3-168:10.) In addition, the Secure project itself was purely hypothetical. By 2015 (eight years after Plaintiffs purchased the gasifiers from Siemens), Plaintiffs had done very little to advance the project, had no money to build the estimated $1.98 billion plant, and had asked for Siemens' help to try to sell the gasifiers on the secondary market.

Kosstrin's *ipse dixit* opinion—lacking any analysis whatsoever and in clear contradiction to the documentary evidence—is unreliable and should be excluded as it will not assist the trier of fact.

**C.    Kosstrin is unqualified to testify about the value of Plaintiffs' gasifiers, and his valuation method is flawed and unreliable.**

Kosstrin's opinion that Plaintiffs' gasifiers are only worth scrap value should be excluded since he is not qualified to appraise the value of gasifiers.  An expert must have some skill, experience, or training to opine on a question of valuation.  *See Sparger v. Newmar Corp.*, No. 12-81347-CIV, 2014 WL 3928556, at *4 (S.D. Fla. Aug. 12, 2014) (excluding expert testimony that RV could only be sold for scrap value because proffered expert held no certifications and had no experience appraising vehicles); *Storie v. Duckett Truck Ctr., Inc.*, No. 4:06 CV 1238, 2007 U.S. Dist. LEXIS 92083, 21-22 (E.D. Mo. Dec. 14, 2007) (excluding expert testimony on value of car, stating "In this case, Carmon's expertise extends to bodywork and mechanics, and the cost of repairing damaged vehicles, but not to valuing used and damaged vehicles.  He is not an automobile dealer and has not indicated he has any experience in pricing used truck tractors—either by buying or selling them.").

In this case, Kosstrin has no skill, experience or training that would qualify him to appraise the value of Plaintiffs' gasifiers.  Kosstrin's professional work is limited to being an "independent engineer" who performs due diligence on projects that banks are interested in financing and helps developers design facilities.  (Kosstrin Depo. 21:10-23:13.)  He is not a certified appraiser.  (Kosstrin Depo. 13:4-22.)  Prior to this case, he has never appraised any industrial equipment, in either a litigation or a non-litigation context.  (*Id.*)  Notably, in the few instances where his non-litigation project management work has required appraisals, he

has always outsourced the appraisals to others.  (*Id.*)  Kosstrin concedes he has never, during his 30 year career, done any appraisal analysis himself.  Put simply, Kosstrin is an engineer who disclaims experience valuing, appraising, and marketing/selling of industrial equipment. He is no different from the unqualified expert excluded in *Sparger*, and should therefore be precluded from testifying about the purported "scrap value" of Plaintiffs' gasifiers.

Even if Kosstrin was qualified to offer an opinion on the value of the gasifiers (which he is not), his opinion should still be excluded because his methodology is flawed and unreliable.  Notably, Kosstrin does no actual appraisal of the gasifiers, and fails to apply any standards or generally-accepted principles to reach his "scrap value" conclusion.  Again, Kosstrin's opinion rests on nothing other than *ipse dixit*.

Comparing Kosstrin's method to that of Siemens' appraisal expert, Dr. Williams, is illustrative.  In Dr. Williams' 71-page report, Dr. Williams performed the following analysis: (1) outlined the standards and definitions used in appraisal, (2) provided a market analysis for gasification technology, (3) appraised the gasifiers using the Cost Approach, (4) appraised the gasifiers using the Sales Comparison Approach, (5) considered and discarded the Income Approach, (6) reconciled the appraisal to account for Fair Market Value, (7) analyzed the impact the alleged material defects had on the appraisal, and (8) accounted for expenses directly related to the West Paducah activity and Siemens contract fees.

Kosstrin, on the other hand, performs no such analysis or appraisal.  Instead, on a single paragraph of his Report, Kosstrin simply concludes that "[w]ithout knowledge of all the modifications to complete the BEDP and with Siemens unwilling to provide process guarantees that are in the License, Secure Energy could not obtain an EPC contract and

- 16 -

finance or build their project.  Thus, the equipment delivered to Secure in 2009 is worthless, except for scrap value."[4]  (Kosstrin Rep. at 9.)  That is not any analysis at all—it is totally conclusory.[5]  Federal Rule of Civil Procedure 702 and the *Daubert* line of cases plainly reject this type of opinion that was formed without using reliable methods and principles.  *Rink*, 400 F.3d at 1291-92; *see also Omega Patents*, 2015 WL 12830496, at *10 (excluding expert opinion because "there is no way for the Court to determine reliability as to this portion of [the expert's] opinion").

Because Kosstrin is not qualified to offer this opinion and his report is devoid of any appraisal analysis or evaluation, the Court should preclude Kosstrin from testifying about the purported "scrap value" of Plaintiffs' gasifiers.

> **D.    Kosstrin's opinions concerning what is required under the 2012 License and Service Agreement are improper legal opinions.**

Kosstrin also improperly opines on the meaning of the 2012 License and Service Agreement and what is required thereunder, asserting: "the License Agreement required Siemens to deliver key gasifier equipment and guarantee the performance of the gasifier island (the Siemens technology or technology battery limits ('TBL')) based on the BEDP." (Kosstrin Rep. at 2.)  Kosstrin's testimony will not assist the trier of fact because he merely seeks to interpret the terms of the 2012 License and Service Agreement and tell the Court how to do so.

---

[4] Kosstrin's opinion is further flawed because he fails to take into account that Plaintiffs' list price for the gasifiers in 2015 was in excess of $22 million.

[5] Kosstrin never even considers that Siemens could have gone to other engineering and design providers to perform all or part of the 2012 License and Service Agreement.  (Kenny Depo. Ex. 29 at §1.0 (definition of "Subcontractor(s)" or "Supplier(s)" as "any licensor, subcontractor or supplier of any tier supplying material, equipment, labor, goods or services to Siemens in connection with the obligations of Siemens under the Contract")).

An expert is not permitted to testify as to legal conclusions, the legal implications of a party's contract or conduct, or offer an opinion that merely tells the jury which result it should reach.  *See Montgomery v. Aetna Cas. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (trial court erred in admitting expert testimony that insurance company had contractual duty to hire tax counsel, explaining that an expert may not "merely tell the jury which result to reach" and "also may not testify to the legal implications of conduct; the court must be the jury's only source of law"); *Asokan v. American General Life Ins. Co.*, No. 6:15-cv-2048-Orl-40KRS, 2017 WL 4542889, at *2 (M.D. Fla. Aug. 29, 2017) (Byron, J.) (excluding expert testimony concerning the construction of terms of a contract or what the law requires).

Courts routinely exclude expert testimony offered as to the meaning of an agreement and the parties' obligations thereunder.  *See, e.g.*, *McMahan Sec. Co. L.P. v. FB Foods, Inc.*, No. 8:04-cv-1791-T-24TGW, 2007 WL 473666 (M.D. Fla. Feb. 8, 2007) (excluding expert's opinions regarding the parties' agreement and performance thereof) (citing *DEC Elec., Inc. v. Raphael Const. Corp.*, 558 So.2d 427, 428 (Fla. 1990) ("Generally speaking, interpretation of a written contract is a matter of law to be determined by the court.")).

The substance of Kosstrin's proffered testimony makes clear that he offers only legal opinions construing the 2012 License and Service Agreement and what is required thereunder.  But this is the purview of the Court, not an expert witness.  Thus, the Court should exclude his opinions.

**E.     Kosstrin's opinions about Plaintiffs' alleged "expectations" and "reliance" is improper state of mind testimony.**

Kosstrin also improperly opines about Plaintiffs' "expectations" and what Plaintiffs relied upon.  (Kosstrin Rep. at 3.)  As to Plaintiffs' expectations, Kosstrin opines, "Secure

had every expectation that Siemens could deliver what was stated in the License [Agreement] and that the stated guarantees could be achieved." (*Id.*)  As to Plaintiffs' reliance, Kosstrin states, "Siemens personnel (Harry Morehead, Siemens Energy, Inc. Director of Gasification IGCC Sales and Marketing) in a presentation to SK Engineering and Construction [] stated that the availability of the gasification system (the TBL) should be 91.5 percent and a reliability of 95.3 percent after commissioning and a ramp-up period." (*Id.*)  Kosstrin opines that "Secure relied on this information for their project." (*Id.*)

Under Rule 702, expert testimony must be helpful to the jury.  And it is well-settled that expert opinion on a party's state of mind, including its expectations and its reliance, is not helpful to the jury and inadmissible. *See Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1326-27 (M.D. Fla. 2015) ("to the extent the [experts] offer opinions on [the company's] intent, state of mind, or motivations, this testimony is outside the bounds of appropriate expert testimony"); *In re Seroquel Prods. Liab. Litig.*, No. 6:06–md–1769–Orl–22DAB, 2009 WL 3806436, at *5 (M.D. Fla. July 20, 2009) (same).

Kosstrin's opinion is simply unhelpful fact testimony disguised as expert opinion, which is improper and must be excluded.

## V.    CONCLUSION

Wherefore, for each of the foregoing reasons, Siemens respectfully requests that the Court grant Siemens' Motion and exclude Kosstrin's opinions in their entirety.

Dated:  February 19, 2019

Respectfully submitted,

By: */s/ James A. Daire*
     Robert W. Thielhelm, Jr.

Florida Bar No. 889679
P. Alexander Quimby
Florida Bar No. 099954
Baker & Hostetler LLP
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Telephone: 407.649.4000
Facsimile: 407.841.0168
Email: rthielhelm@bakerlaw.com
Email: aquimby@bakerlaw.com

and

Scott D. Baker (admitted *pro hac vice*)
Email: sbaker@reedsmith.com
James A. Daire (admitted *pro hac vice*)
Email: jdaire@reedsmith.com
Christopher J. Pulido (admitted *pro hac vice*)
Email: cpulido@reedsmith.com
REED SMITH LLP
101 Second Street
Suite 1800
San Francisco, CA  94105-3659
Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

*Counsel for Siemens Energy, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 19, 2019, a true and correct copy of the foregoing was submitted to the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to the following listed counsel:

Michael R. Cherba
Robert L. Devereux
Jeffrey R. Schmitt
**Danna McKitrick, P.C.**
7701 Forsyth Blvd., Suite 800
St Louis, MO 63105
Telephone: (314) 726-1000
Fax: (314) 725-6592
Email: mcherba@dmfirm.com
Email: rdevereux@dmfirm.com
Email: jschmitt@dmfirm.com

Walter A. Ketcham , Jr.
**Grower, Ketcham, Eide, Telan & Meltz, PA**
901 N Lake Destiny Rd., Suite 450
PO Box 538065

Orlando, FL 32853-8065
Telephone: (407) 423-9545
Fax: (407) 425-7104
Email: enotice@growerketcham.com

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 3.01(g), on February 4, 2019, Defendant's counsel conferred with Plaintiffs' counsel via telephone regarding this Motion. Plaintiffs' counsel stated his opposition to the filing of this Motion.

DATED:  February 19, 2019.

*/s/ James A. Daire*
James A. Daire