**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| **MIDAMERICA C2L INC., et al.,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| **v.** ) | Case No. 6:17-cv-171-Orl-18KRS |
| ) | |
| **SIEMENS ENERGY, INC.,** ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |

<u>**DEFENDANT SIEMENS ENERGY, INC.'S OPPOSITION TO PLAINTIFFS'**</u>
<u>**MOTION TO CONTINUE TRIAL SETTING**</u>

Defendant Siemens Energy, Inc. ("Siemens") opposes Plaintiffs MidAmerica C2L

Incorporated ("C2L") and Secure Energy, Inc.'s ("Secure") (collectively, "Plaintiffs")

Motion to Continue Trial Setting (D.N. 145). The Court should deny Plaintiffs' motion

because: (1) it is really a motion for reconsideration of the Court's denial of Plaintiffs'

motion for leave to file a Second Amended Complaint for which there are no grounds—

Plaintiffs do not even attempt the showing; (2) Plaintiffs were not diligent in seeking to

amend their complaint; and (3) the continuance Plaintiffs propose is insufficient to cure

the prejudice to Defendants if Plaintiffs were permitted to amend their complaint.

## I.    INTRODUCTION

Reconsideration is an extraordinary measure. The Court recognizes just three

grounds that warrant reconsideration of an order: (1) an intervening change in controlling

law, (2) the availability of new evidence, and (3) the need to correct clear error or

manifest injustice.[1]   In the interests of finality and conservation of scare judicial resources, parties should not use motions for reconsideration to re-argue old ground or raise argument which could have been previously made.[2]

On January 17, 2019, this Court denied Plaintiffs' motion for leave to file a Second Amended Complaint, finding that Plaintiffs had not demonstrated good cause under Federal Rule of Civil Procedure 16(b)(4).   (D.N. 137.)   Nonetheless, now, Plaintiffs return with a "motion to continue trial setting" that is predicated on alleviating the prejudice that would befall Defendants as a result of Plaintiffs' Second Amended Complaint—the same Second Amended Complaint that the Court has already refused Plaintiffs leave to file.  Indeed, despite what Plaintiffs call this most recent motion, they are asking the Court to reconsider its Order denying their motion for leave to file a Second Amended Complaint—continuing trial setting is just their newly attempted means to the same end.  (Daire Decl. Ex. 9.)  And instead of calling their motion what it is, they have tried for an end-run around the Court's strict standards for reconsideration and done exactly what they are prohibited from doing—re-argued old ground and raised argument that could have been made previously related to their own lack of diligence.

The Court should summarily deny Plaintiffs' motion as an improper motion for reconsideration.  Plaintiffs do not mention, let alone grapple with, the only three grounds for a motion for consideration.   And there has been no intervening change in the law since the January 17, 2019 Court Order (D.N. 137), no new evidence since Plaintiffs filed

---

[1] *Fla. Coll. of Osteopathic Med., Inc. v. Dean Witter Reynolds, Inc.*, 12 F. Supp. 2d 1306, 1308 (M.D. Fla. 1998).

[2] *Ruvel Alfred Smith, Jr. v. United States*, 2016 WL 5933396, at *2 (M.D. Fla. Oct. 12, 2016).

their first motion on December 28, 2018 (D.N. 133), and no clear error or manifest injustice in the Court Order. The Court's inquiry need go no further.

Regardless, the Court should deny Plaintiffs' motion because Plaintiffs still cannot show diligence sufficient to meet the good cause standard under Rule 16(b)(4). The dispositive fact (which Plaintiffs cannot contest) remains the same: Plaintiffs have had the documents they contend forms the basis of their proposed Second Amend Complaint since at least December 2017, but they did not move for leave until a year later, in December 2018. (D.N.s 135-3, 135-4.)

In Plaintiffs' motion for continuance, they argue that they had to wait until December 2018 to file because of "information" they did not learn until the December 11-12, 2018 deposition of German Siemens AG employee Frank Hannemann. This is improper argument on a motion for reconsideration since it could have been raised in the first motion, and it is also false. Tellingly, Plaintiffs failed to so much as mention the Hannemann deposition in (1) the meet and confer that preceded their first motion for leave to file a Second Amended Complaint, or (2) their first motion itself, let alone describe the Hannemann deposition as they do now—namely, as some sort of Rosetta stone that led Plaintiffs to heretofore undiscovered fraud theories. Further, each example of "new information" Plaintiffs identify in their motion to continue is either not new information or a distortion of Hannemann's testimony. Nothing prevented Plaintiffs from seeking leave to amend their complaint well before the Hannemann deposition and a diligent litigant would have done so if the litigant believed the December 2017 document production created any non-futile fraud theories.

Plaintiffs also complain about the timing of Rolf Ruesseler's second deposition, which was rescheduled because of an emergency Siemens business need. Ruesseler, another German Siemens AG employee, was deposed twice over a total of four days: October 17-18, 2018 and the again, in a 30(b)(6) capacity, on January 23-24, 2019. The timing of Ruesseler's depositions is irrelevant to Plaintiffs' motion, since the depositions were not any part of the purported basis for Plaintiffs' proposed Second Amended Complaint.[3]

Turning to the ostensible object of Plaintiffs' motion, they float another trial continuance—after the Court already granted Plaintiffs' request for a 13 month trial continuance at the end of 2017—but enough is enough. Plaintiffs claim they want to file a Second Amended Complaint "to conform to proof"—but a motion to conform to proof is a trial motion based on testimony that creates a new, similar claim to what a plaintiff has already pleaded. A fraud claim, like the one Plaintiffs raise here, is supposed to be pleaded in particularity at the beginning of a case so that a defendant can meet the claim on the merits. One of the reasons plaintiffs are held to the heightened pleading standard is to prevent fishing expeditions to uncover unknown alleged wrongs.[4] Plaintiffs' motion turns that notion on its head because they seek to fundamentally and futilely change their

---

[3] And Siemens (without being asked) ameliorated the rescheduling inconvenience to Plaintiffs by paying for Plaintiffs' international flight change fees and arranging for Ruesseler to fly to St. Louis (Plaintiffs' location) at Siemens' expense for his second deposition in January.

[4] *NCR Credit Corp. v. Reptron Elecs., Inc.*, 155 F.R.D. 690, 692 (M.D. Fla. 1994) (pleading with specificity necessary to "prevent fishing expeditions to uncover unknown wrongs"); *Fla. Coll. of Osteopathic Med., Inc. v. Dean Witter Reynolds Inc.*, 982 F. Supp. 862, 867 (M.D. Fla. 1997) (same); *Cent. Fla. Sterilization, LLC v. Synergy Health Ast, LLC*, 2016 WL 11457768, at *3 (M.D. Fla. Feb. 10, 2016) (same).

fraud theories at the end of discovery based on nothing more than the fact that their existing theories ought to fail as a matter of law, as set forth in Siemens' accompanying motion for summary judgment. The Court should deny Plaintiffs' motion.

## II. RELEVANT BACKGROUND

### A. The Court denied Plaintiffs' motion for leave to file a Second Amended Complaint based on Plaintiffs' lack of diligence.

**The operative First Amended Complaint.** In the operative First Amended Complaint, Plaintiffs allege that the parties entered into a series of contracts between July 2007 and July 2012 concerning first the purchase of and then the provision of licensing and technical support for Siemens-designed gasifiers. (D.N. 63 at 2-5.) Each time the parties entered a new license and service contract (due to Plaintiffs' constantly shifting plans and projects and inability to pay for the license on the contractual due dates), they also entered a Completion Agreement which provided that neither party had ground for any claim under their contracts and/or any theory of law against the other. (D.N. 67-4 at 3, D.N. 67-6 at 2.)

Plaintiffs claim that fraud occurred in late 2010 when, as Plaintiffs' allege, Siemens knew of four specific alleged design defects in Plaintiffs' gasification equipment between "October 31, 2010 and September of 2011" because of operations at a Chinese project but failed to disclose those alleged defects to Plaintiffs—a very specific period for discovery of alleged fraud and the parties' knowledge of alleged facts. D.N. 63 at pp. 11-19. According to Plaintiffs, Siemens' alleged failure to disclose these design defects induced them to enter into the 2012 License and Service Agreement (Counts IV and V). D.N. 63 at pp. 11-19. This was the entirety of Plaintiffs' fraud claims—inducement of

the 2012 License and Service Agreement, seeking recession and/or damages.  Plaintiffs did not allege fraud as to any of the other preceding contracts in 2007 and 2010.

**Plaintiffs' proposed Second Amended Complaint**.  At the close of discovery and with summary judgment motions imminent,[5] Plaintiffs brought a motion for leave to a file a Second Amended Complaint that sought to inject more fraud/rescission claims to this action—based on brand-new, futile, and heretofore undiscovered theories.  In Counts III-VI of their proposed Second Amended Complaint, Plaintiffs attempted to entirely re-set the clock on their fraud claims: all the way back to unspecific dates "when Plaintiffs negotiated the 2007 Contracts with Siemens," at a time Plaintiffs allege certain Siemens agents made unspecific allegations about whether the Siemens technology was mature and proven.  D.N. 133-1 at p. 15.  Plaintiffs next tried to allege that the fraud continued on unspecific dates "prior to the execution of the 2010 Contract." *Id.* at p. 21.  Therefore, according to Plaintiffs, all of the parties' contracts ought to be set aside for alleged fraud—a total departure from the operative First Amendment Complaint now under scrutiny for summary judgment.  (Plaintiffs also tried to add a new theory for rescission of all contracts based on an alleged "mutual mistake" under the "fraud or omission" count.)  Each of these new theories failed (and still fail) the Rule 9 test.  Each would have also injected new facts and witnesses and theories of defense—and all on the eve of discovery close (which has since closed).  Siemens had not taken any discovery on these new theories because they were not part of the case.

---

[5] Plaintiffs later asked for Siemens' consent to extend the summary judgment deadline to February 19, 2019, which Siemens agreed not to oppose.  The Court granted Plaintiffs' unopposed motion and set February 19, 2019 as the new summary judgment deadline.

**The Court Order**. On January 17, 2019, the Court denied Plaintiffs' Motion for Leave to file their Second Amended Complaint. (D.N. 137.) In its Order, the Court held that Plaintiffs have not shown the diligence required to satisfy the good cause standard under Rule 16(b)(4). (*Id*. at 3-5.) (The Court also considered Plaintiffs' unauthorized reply brief, which contains much of the same argument they try again in this motion, before issuing its Order.[6] (D.N. 136.)) The Court's analysis in the Order remains equally applicable today, since Plaintiffs have been in possession of the "information" they relied upon in seeking their proposed amended complaint—namely, nine specific documents Plaintiffs cited in their draft Second Amended Complaint—since at least December 2017. (D.N. 135-3, D.N. 135-4.)

In their new motion, Plaintiffs invite the Court to ignore this dispositive fact and its prior Order and seek to re-litigate what was previously argued and denied. Plaintiffs could have explained to the Court when they discovered the nine specific documents cited in their draft Second Amended Complaint, and why Plaintiffs waited until the end of discovery to try to inject brand-new futile fraud theories against Siemens. But Plaintiffs did not do any of this. Instead, Plaintiffs seek excuse for their own lack of diligence with false discovery delay accusations against Siemens—for which Plaintiffs either filed a motion to compel 15 months ago[7] which was denied in material part or never filed any motion at all.

---

[6] Section II.G of Court's Case Management and Scheduling Order (Dkt. No. 69 at p. 7) and Local Rule 3.01(d) provide that a motion for leave to file a reply cannot exceed three pages, shall specify the length of the proposed filing, and shall not include the proposed reply. Plaintiffs ignored the Court Order and the Local Rules and filed their entire six-page reply brief under the guise of a "motion for leave."

[7] *See* D.N.s 96, 99, 101-116.

**B.      In their second attempt to show diligence, Plaintiffs mischaracterize the discovery record and still fail to show diligence.**

**1.      Plaintiffs cannot blame Siemens for Plaintiffs' failure to act on information available to Plaintiffs since December 2017.**

In their second attempt to show diligence, Plaintiffs mischaracterize the nature and scope of the parties' discovery, starting from the very first "relevant fact" that Plaintiffs try to advance:

- Plaintiffs contend that "[o]n or about January 13, 2017 [before the Southern District of Illinois transferred the case to this District], Defendants responded to Plaintiffs' First Requests for Production by objecting to every request and claiming privilege to every request." (D.N. 145 at 3.) But Plaintiffs fail to mention that Siemens also agreed to produce documents as to 90 of Plaintiffs' 127 broad requests in the same responses—even though Plaintiffs had not pleaded any fraud claims with any particularity yet (as the Court later found).[8] (D.N. 96-1 pp. 35-128.)

- Plaintiffs contend that Siemens' production of approximately 100,000 documents, which largely took place in June and August 2017, "did not respond to the vast majority of Plaintiffs' requests." (D.N. 145 at 4.) Siemens showed how its production was responsive to Plaintiffs' requests in connection with Plaintiffs' earlier motion to compel—with a chart showing the various requests along with search results, executed in Siemens' production database, for terms

---

[8] Siemens asserted general objections in those responses because that is the practice in the Southern District of Illinois. After the case transferred to this District, where general objections are not allowed, Siemens amended its responses and dropped all general objections in its April 18, 2017 amended responses. (D.N. 96-2.)

taken from Plaintiffs' requests.  (D.N. 99-3).  More importantly for purpose of this motion, over just two and a half months (between August-October 17, 2017), Plaintiffs were able to (1) review these 100,000 documents, (2) determine (from their perspective) that the documents were largely unresponsive to their requests, and (3) prepare a letter "regarding what Plaintiffs considered insufficient responses."    (D.N. 145 at 4.)    This alone shows Plaintiffs are capable of reviewing large swaths of documents when they are motivated to do so and belies their claim that they needed over a year to review the second major batch produced in December 2017.

•       Plaintiffs contend that Siemens intentionally delayed its production of the next tranche of documents until December 2017.  That is false.  The documents Siemens produced in December 2017 did not belong to Siemens Energy, Inc.— they belong to non-party Siemens AG, which retained most of the relevant technical and engineering documents relevant to the merits.  Siemens Energy agreed to seek the documents requested from Siemens AG, without Plaintiffs having to go through the time, expense, or difficulties of using the Hague Convention[9]—and was transparent with Plaintiffs that the process would take several months because the then-applicable German data protection laws had to

---

[9] Plaintiffs also contend that Siemens stated on October 20, 2017 "that if Plaintiffs wanted additional documents, they would need to subpoena them."  This too is false.  (Notably, Plaintiffs fail to submit or cite to Siemens' letter.)  Siemens stated in the October 20, 2017 letter that Siemens AG is collecting its own data responsive to the request and would transfer it to Siemens after compliance with German laws could be assured.  (D.N. 76-2 at 2.)  Siemens did advise Plaintiffs that if Plaintiffs wanted discovery from other third party German or Chinese entities (i.e., non-Siemens entities like customers or subcontractors), Plaintiffs would need to proceed through the Hague since Siemens had no possession, custody, or control over any of those materials.  (*Id.*)  Plaintiffs never pursued any such discovery.

be observed before any data transfer occurred. (D.N. 99.) The Siemens AG documents arrived on schedule and the parties sought and received from the Court a new case management order putting them on Track 3, with a June 2019 trial date, to give Plaintiffs ample time to review the Siemens AG documents among other things. (D.N. 89.)

- Plaintiffs are right that the parties met and conferred several times in the summer and fall of 2017. One of Siemens' objectives during those discussions was to limit the scope of Plaintiffs' 127 requests for production—most of which asked for "any and all documents" on a given topic. But Plaintiffs refused to budge and therefore Siemens produced what Plaintiffs asked for—the documents it had located (or had transferred to it from Siemens AG) responsive to Plaintiffs' original broad requests.

In the end, Plaintiffs' claim that it took them "approximately a year" to complete review of the December 2017 Siemens AG documents strains credulity given that it only took them between three and five months to review, assess, and judge inadequate the first 100,000 Siemens Energy documents. But even assuming it took Plaintiffs over a year to review the Siemens AG documents, that was an issue entirely of Plaintiffs' own making—caused by their own broad requests and subsequent refusal to narrow them. "When a party asks for voluminous information, it must assign the necessary personnel to review the responsive information so that it may complete the review in time to comply with deadlines established by the Court." (D.N. 137 at 3-4.) Again, Plaintiffs have had the information they contend forms the basis of their Second Amend Complaint since at

least December 2017, but they did not move for leave until December 2018.  (D.N.s 135-3, 135-4.)

> ### 2. The timing of the most recent depositions are irrelevant since the depositions did not form the basis of Plaintiffs' motion for leave to amend.

Plaintiffs also make much ado about scheduling issues in the depositions of two non-party Siemens AG witnesses, Rolf Ruesseler and Frank Hannemann.[10]  Those depositions are irrelevant to Plaintiffs' lack of diligence because the depositions were not and are not any part of the alleged basis of Plaintiffs' proposed Second Amended Complaint.  Plaintiffs did not mention or cite any specific deposition testimony in (1) Plaintiffs' motion for leave to file their Second Amendment Complaint, or (2) Plaintiffs' meet and confer correspondence that preceded their motion.  (D.N.s 133, 133-1; Daire Decl. Exs. 1, 2.)  Instead, Plaintiffs based their draft Second Amended Complaint on nine documents that Plaintiffs claimed support their new allegations.[11]  And each of those nine documents are either English language documents that Siemens produced in December 2017 or Plaintiffs' own documents. (D.N.s 135-3, 135-4.)

Moreover, even voluntary depositions of German citizens take significant time to arrange, because the witness must be able and willing to travel to a more deposition-friendly country, or the deposition must be preapproved by the German Ministry of Justice and take place on U.S. consulate grounds.  *See* Harkness, Timothy P. et

---

[10] In this motion, Plaintiffs argue that certain information was not available to them before the deposition of Hannemann on December 11-12, 2018, but they fail to submit any testimony from Hannemann with their moving papers.  Siemens submits excerpts from Hannemann's testimony with its opposition, which shows the significant liberties Plaintiffs take in characterizing Hannemann's testimony.  (Daire Decl. Ex. 6.)

[11] In the Second Amended Complaint Plaintiffs filed with the Court on December 28, they removed reference to the document citations, but the allegations are the same.

al., Discovery in International Civil Litigation: A Guide for Judges at p. 69 (2015). Plaintiffs knew this as well (since Siemens told them several times) and planned accordingly by taking dozens of hours of testimony of the domestic Siemens Energy witnesses earlier in the case, eliciting the same "information" Plaintiffs now claim in pages 13-16 of their most recent motion was not available to them until the deposition of Hannemann on December 11-12, 2018:

- **Schwarze Pump/Future Energy**. Plaintiffs have known the facts regarding Siemens' acquisition of technology from Future Energy/Sustec—which they mischaracterize in their motion—for over a decade, since at least 2008, when they requested and were provided from Siemens the complete history of Siemens' commercial gasification history so that an engineering consultant at R.W. Beck (Dr. Herbert Kosstrin) could prepare a report in aid of Plaintiffs' funding application to the U.S. Department of Energy (which denied Plaintiffs' application). Plaintiffs themselves have produced multiple documents from the 2008 timeframe on this very topic. (Daire Exs. 3, 4.)

- **The acquisition of assets.** Plaintiffs have known exactly what Siemens acquired as part of the Future Energy/Sustec acquisition since at least August 29, 2018, when they deposed the former CEO of the Siemens Fuel Gasification Technology GmbH, Guido Schuld. (Daire Ex. 5 (Schuld Depo. 44:13-16): "Q. Okay. And with the Sustec acquisition did Siemens acquire any technology or intellectual property? A. Both. So…") Further, Plaintiffs never alleged any facts about asset acquisition from Future/Sustec in their Second Amended Complaint.

(D.N. 133-1.)  Plaintiffs never even mention "Future Energy" or "Sustec" in their Second Amended Complaint.[12]  (*Id*.)

- **"Representations" in unspecified marketing materials.**  Plaintiffs' allegations are unspecific here (a problem that infects much of their proposed Second Amended Complaint), but they mischaracterize Hannemann's testimony—which was that Siemens did not have gasification technology "that it was advancing"—not, as Plaintiffs mischaracterize in their motion, that Siemens had no technology or experience at all.  (Daire Decl. Ex. 6 (Hannemann Depo. 137:6-20.))  Plaintiffs should know this because they deposed Harry Morehead (a retired Siemens employee) on July 10-11, 2018, who testified that Siemens also had gasification experience and technology through its acquisition of Westinghouse in the late 1990s.  (Daire Decl. Ex. 7 (Morehead Depo. 21:18-23:13.))  Morehead himself was one of the former Westinghouse engineers with gasification experience.  (*Id*., 27:17-31:23.)

- **Siemens' "executive" experience with gasification.**  It is hard to fathom Plaintiffs' assertion that no Siemens "executive" had experience with gasification, unless they are making some artificial and undefined distinction between Siemens "executives" and Siemens engineers.  In any event, Morehead testified that he was an engineer with substantial experience with coal gasification (along with many others).  (*Id*.)

---

[12] Plaintiffs' assertion that Siemens acquired "no operational data" from Sustec between 1984-1989 is also false.  Siemens had relevant operating records information and that information was disclosed to Plaintiffs no later than 2008 as part of the RW Beck work, as evidenced by Plaintiffs' own document production. (Daire Ex. 4.)

• **Three burners versus one burner.** Plaintiffs had available information about the differences between Siemens gasifiers with one burner (like the Secure gasifers) and those with three burners since at least December 2017, when documents were produced showing which classes of gasifers had one burner and which had three. (Daire Decl. Ex. 8 (Plf. Ex. 21.)) Plaintiffs' claim that they did have access to information about these differences until Hannemann's deposition in December 2018 is false.

• **The burner modification program.** Plaintiffs had available information about the burner modification program (an immaterial pre-commission adjustment to the burners for a different project for a different customer in China ("the NCPP project")—not Secure's burners) since at least December 2017, when Siemens produced documents about its burner modification program. (Daire Decl. Ex. 8 (Plf. Ex. 26.)) Plaintiffs also included it in the December 4, 2018 report of their expert, Kosstrin. Plaintiff did not learn about it for the first time during the December 11-12, 2018 Hannemann deposition.

• **Performance tests versus acceptance certification.** There were no false or misleading claims here, and in any event, Plaintiffs had the information about the claims Siemens made since December 2017, well before the Hannemann deposition. Siemens gasifiers passed their performance test at the NCPP project in September 2011. That is documented in the Siemens production from December 2017 and in Siemens' marketing material from even earlier. (Daire Decl. Ex. 8 (Def. Ex. 63).) An acceptance certificate is a different document,

provided by the customer after they are willing to start the warranty period for the equipment. The customer at the NCPP project provided one in July 2013, affirming that the equipment was fit for its intended purpose and achieved all of Siemens' performance guarantees. (Daire Decl. Ex. 8 (Plf. Ex. 47.)) Both documents show that the Siemens gasifiers at the NCPP project worked as intended.

- **The alleged "manufacturing error" of pins in a cooling screen.** Plaintiffs' meritless theory here is based on a single German-language email that Siemens produced to Plaintiffs in December 2017. Plaintiffs prepared an uncertified translation of the email in early 2018, well before they moved for leave to file a Second Amended Complaint. (Daire Decl. Ex. 8 (Plf. Ex. 112-3.)) The email (dated June 1, 2015) relates to the prospect of helping Plaintiffs sell its gasifiers to a third party (Adani) and what changes to the Secure gasifiers might be required to retrofit them for use in a different project with different feedstock and operational conditions.[13] One change under consideration for the Adani project was to change pin length in the cooling screen of the gasifier (from 12 mm to 15 mm in length). There is no "manufacturing error" described in the document and Hannemann did not admit to one during his deposition. He testified that the pins delivered to Plaintiffs were appropriate for the Secure project. (Daire Decl. Ex. 6 (Hannemann Depo. 214:8:-217:16.))

In sum, each of the eight pieces of "information" Plaintiffs claim they learned

---

[13] Plaintiffs had no money and no prospects for new investment, so were looking for a way to liquidate the gasifiers, which together with the Siemens technology license is Plaintiffs' only assets of any value.

about for the first time during the Hannemann deposition are irrelevant, since they never cited or mentioned the Hannemann deposition testimony in their first motion for leave to file a Second Amended Complaint. But the record also shows that in each instance, Plaintiffs had the "information" available to them months and sometimes years before Plaintiffs filed their motion for leave to file a Second Amended Complaint.

## III. ARGUMENTS AND AUTHORITIES

The Court should deny Plaintiffs' motion for any one of three independent reasons. First, Plaintiffs' motion really seeks reconsideration of the Court's order denying their motion for leave to file a Second Amended Complaint. (D.N. 137.) Plaintiffs fail to apply the standard for a motion for reconsideration, and there is no evidence to support any reconsideration in any event. Second, the evidence establishes that Plaintiffs have not been diligent in seeking leave to amend. Third, the two-to-four month continuance Plaintiffs propose does not cure the undue prejudice that would inure to Siemens.

### A. Plaintiffs' motion really seeks reconsideration for which there are no grounds.

Plaintiffs' motion is really an effort to get the Court to reconsider its denial of Plaintiff's motion for leave to file a Second Amended Complaint. Plaintiffs tie their request to continue the trial date to their proposed Second Amended Complaint in their pre-motion correspondence and in the motion itself, which they style as a request "to Amend the Scheduling Order by Continuing the Trial Setting so as to Permit Amendment of the Pleadings." (Daire Ex. 9, D.N. 145 at 10.) Plaintiffs dedicate 14 pages of their 17 page motion to attempting to justify their lack of diligence under Federal Rule of Civil

Procedure 16 and improperly shift blame to Siemens. And Plaintiffs seek leave to file the same Second Amended Complaint that they sought leave to file in their motion for leave to file a Second Amended Complaint.

Reconsideration is an extraordinary remedy which will only be granted upon a showing of one of the following: (1) an intervening change in law, (2) the discovery of new evidence which was not available at the time the Court rendered its decision, or (3) the need to correct clear error or manifest injustice. *Fla. Coll. of Osteopathic Med., Inc.*, 12 F. Supp. 2d at 1308; *see also Prieto v. Storer Commc'ns, Inc.,* 152 F.R.D. 654, 655 (M.D. Fla. 1994) (evidence available to a party during the pendency of a motion may not later be introduced on a motion for reconsideration); *Schmidt v. Washington Newspaper Publ'g Co., LLC*, No. 18-80614-CIV, 2018 WL 6422705, at *2 (S.D. Fla. Dec. 6, 2018) (noting that federal courts rely upon the Black's Law Dictionary definition of "manifest injustice," which states that it is "an error in the trial court that is direct, obvious, and observable ... patently unfair" and "apparent to the point of being indisputable").

Court opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulf co Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988). "The burden is upon the movant to establish the extraordinary circumstances supporting reconsideration." *Mannings v. Sch. Bd. of Hillsborough Cnty.*, 149 F.R.D. 235, 235 (M.D. Fla. 1993). The party moving for reconsideration ultimately must set forth "strongly convincing" reasons for the Court to change its prior decision. *Local Access, LLC v. Peerless Network, Inc.*, 2017 WL 951651, at *1 (M.D. Fla. Mar. 10, 2017) (citing *Madura v. BAC Home Loans Servicing*

*L.P.*, 2013 WL 4055851, at *1 (M.D. Fla. Aug. 12, 2013)).  Motions for reconsideration are not vehicles to raise arguments which could, and should, have been previously made.  *Prudential Securities, Inc. v. Emerson,* 919 F.Supp. 415 (M.D. Fla. 1996)).

In this case, Plaintiffs fail to address the extraordinary reconsideration standard, but they could not make any of the requisite showings even if they had tried.  There has been no intervening change in the law since January 17, 2019, when the Court denied their motion for leave to file a Second Amended Complaint.  (D.N. 137.)  None of the alleged "relevant facts" Plaintiffs identify is new evidence—each was known to Plaintiffs when they filed their first motion for leave to file a Second Amended Complaint.  And there is no error or manifest injustice that Plaintiffs identify in the first Court Order, because none exists.  The Court should summarily deny Plaintiffs' motion as the ill-disguised motion for reconsideration it is.

      **B.**        **Plaintiffs were not diligent in seeking leave to amend.**

          **1.**      **The documents cited in Plaintiffs' Second Amended Complaint were available to them for one year or more before they filed their motion.**

Even with this second bite at the apple, Plaintiffs have not shown that they were diligent in seeking leave to amend.  Courts have identified three factors in assessing diligence: "1) the plaintiff failed to ascertain facts prior to filing the complaint and to acquire information during the discovery period; 2) the information supporting the proposed amendment was available to the plaintiff; and 3) even after acquiring information, the plaintiff delayed in asking for amendment."  *Lord v. Fairway Elec. Corp.*, 223 F. Supp. 2d 1270, 1273 (M.D. Fla. 2002) (citing *Sosa*, 133 F.3d at 1418).

The record is the same as it was when Plaintiffs filed their motion for leave to file a Second Amended Complaint, and shows that Plaintiff were aware of the information alleged to support amendment but delayed in seeking leave to file their proposed Second Amended Complaint. The following chart, which Plaintiffs cannot contest, lists the documents Plaintiffs cited in support of their new allegations and their respective dates of production:

| Plaintiffs Ex. | Bates No. | "New" Basis for Allegation in SAC | Date Produced | English language document? |
|---|---|---|---|---|
| Ex. 29 | SECURE000486 | ¶ 56 | 8/24/2017 (by Plaintiffs) | Yes |
| Ex. 30 | SIEMENS_DEU_0642480 | ¶ 57 | 12/13/2017 | Yes |
| Ex. 47 | SIEMENS_DEU_0268034 | ¶ 58 | 12/13/2017 | Yes |
| Ex. 28 | SIEMENS_DEU_0642537 | ¶ 60(a); ¶ 60(b) | 12/13/2017 | Yes |
| Ex. 28-3 | SIEMENS_DEU_0638440 | ¶ 60(c) | 12/13/2017 | Yes |
| Ex. 28-4 | SIEMENS_DEU_0459821 | ¶ 60(d) | 12/13/2017 | Yes |
| Ex. 29-3 | SIEMENS_DEU_0363289 | ¶ 60(e) | 12/13/2017 | Yes |
| Ex. 33 | SIEMENS_DEU_0345373 | ¶ 60(f) | 12/13/2017 | Yes |
| Ex. 35 | SIEMENS_DEU_0323089 | ¶ 60(g) | 12/13/2017 | Yes |

(D.N.s 135-3, 135-4.)

Plaintiffs have had the "new discovery" they claim justifies their belated Second Amended Complaint for over a year (in the case of Siemens' documents) or before they filed this action (in the case of their own documents). Plaintiffs fail to offer the Court any credible reason why it took so long for them to seek leave to amend. Plaintiffs' assertion that it took time and effort to review the approximately 159,000 documents Siemens produced (in response to 127 broad document requests from Plaintiffs) fails to establish: (a) when Plaintiffs first reviewed the specific documents cited in their draft Second Amended Complaint or (b) why Plaintiffs delayed any disclosure of their new fraud theories until the very end of discovery. Plaintiffs are still silent on each of these issues.

### 2. The Frank Hannemann deposition was not the "light bulb" moment that Plaintiffs now claim.

In Plaintiffs' motion to continue trial setting, they now point to "information" they claim was not available to them before the December 11-12, 2018 deposition of Frank Hannemann—only after the Court noted in its Order denying leave to amend that Plaintiffs had failed to point to even a single specific piece of testimony from any deposition as the reason for their request to amend their complaint. (D.N. 137 at 4.) The Court has reason to be dubious of Plaintiffs' assertion on its face, and the discovery Plaintiffs took earlier in the case shows that the "information" Plaintiffs rely upon was available to them well before the December 11-12, 2018 deposition of Mr. Hannemann.

Indeed, Plaintiffs never mentioned the Hannemann deposition as the purported basis of their motion for leave to file a Second Amended Complaint, or in any of the meet and confer correspondence that preceded the motion. (Daire Exs. 1, 2; D.N. 133.) It was not until after the Court denied their motion for lack of diligence that Plaintiffs placed primary importance on the Hannemann deposition in their "information" gathering.

Even if Plaintiffs could clear that hurdle, another unsurmountable one exists. In each instance in which Plaintiffs claimed they learned something during the Hannemann deposition, the information was actually available to them well before they filed their motion for leave in December 2018:

- **Schwarze Pump/Future Energy**. Since at least 2008. (Daire Decl. Exs. 3, 4.)

- **The acquisition of assets.** Since at least August 29, 2018 (Daire Decl. Ex. 5.)

- **"Representations" in unspecified marketing materials.** Since at least July 10-11, 2018. (Daire Decl. Exs. 6, 7.)

- **Siemens' "executive" experience with gasification.** Since at least July 10-11, 2018. (Daire Decl. Ex. 7.)

- **Three burners versus one burner.** Since at least December 13, 2017. (Daire Decl. Ex. 8.)

- **The burner modification program.** Since at least December 13, 2017. (*Id.*)

- **Performance tests versus acceptance certification.** Since at least December 13, 2017. (*Id.*)

- **The alleged "manufacturing error" of pins in a cooling screen.** Since at least December 13, 2017. (*Id.*)

In short, even considering Plaintiffs' improper new argument that they could have raised in connection with their first motion for leave to amend, Plaintiffs still fail to show the diligence required to upend the case schedule at the eleventh hour.

### C. Plaintiffs' proposed trial continuance does not cure the prejudice to Siemens.

Motions for summary judgment are now pending based on the operative First Amended Complaint, yet Plaintiffs seek a two-to-four month continuance to attempt to mitigate the undue prejudice a Second Amendment Complaint would cause Siemens. A two-to-four month continuance is inadequate. Plaintiffs' proposed Second Amended Complaint is not pleaded with particularity, and Siemens would need to challenge the

inadequacy of the allegations under Rule 12(b)(6)[14], complete discovery of Plaintiffs'

new claims, and seek to dispose of them on a motion for summary judgment. With the

possibility of still other iterations of Plaintiffs' operative complaint (assuming a Rule

12(b)(6) motion is granted at least in part) and responsive pleadings, a trial in October on

still undefined fraud claims would not be possible. Plaintiffs are also silent on the effect

of their proposed continuance on expert discovery, which has already been completed.

Moreover, Siemens has a pending motion to exclude plaintiffs' proffered expert Dr.

Kosstrin. But presumably, Plaintiffs' would argue for the opportunity to have a "redo"

on its expert discovery to try to support Plaintiffs' eleventh hour fraud theories. There is

no basis for any such redo and it is another reason why the Court should deny Plaintiffs'

motion.

## IV.    CONCLUSION

Wherefore, for each of the foregoing reasons, Siemens respectfully requests that

the Court deny Plaintiffs' Motion to Continue Trial Setting.

.

Dated:  February 19, 2019

Respectfully submitted,

---

[14] Plaintiffs' proposed new allegations date to pre-2007, trying to undo the 2007 and 2010 contracts that they acknowledged were performed by Siemens and terminated multiple times. (D.N. 67-4 at 3, D.N. 67-6 at 2.) Plaintiffs fail to allege any specifics as to when the alleged new statements were made, except to reference the dates of the contracts. For example, Plaintiffs do not provide any date(s) as to alleged statements about the maturity of the Siemens gasification technology, other than to allege Siemens agents made statements before the execution of the parties' 2007 contracts. (D.N. 133-1 at p. 15.)

By: */s/ James A. Daire*
    Robert W. Thielhelm, Jr.
    Florida Bar No. 889679
    P. Alexander Quimby
    Florida Bar No. 099954
    Baker & Hostetler LLP
    SunTrust Center, Suite 2300
    200 South Orange Avenue
    Orlando, FL 32801-3432
    Telephone: 407.649.4000
    Facsimile: 407.841.0168
    Email: rthielhelm@bakerlaw.com
    Email: aquimby@bakerlaw.com

    and

    Scott D. Baker (admitted *pro hac vice*)
    Email: sbaker@reedsmith.com
    James A. Daire (admitted *pro hac vice*)
    Email: jdaire@reedsmith.com
    Christopher J. Pulido (admitted *pro hac vice*)
    Email: cpulido@reedsmith.com
    REED SMITH LLP
    101 Second Street
    Suite 1800
    San Francisco, CA  94105-3659
    Telephone: +1 415 543 8700
    Facsimile: +1 415 391 8269

    *Counsel for Siemens Energy, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 19, 2019, a true and correct copy of the foregoing was submitted to the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to the following listed counsel:

Michael R. Cherba
Robert L. Devereux
Jeffrey R. Schmitt
**Danna McKitrick, P.C.**
7701 Forsyth Blvd., Suite 800
St Louis, MO 63105
Telephone: (314) 726-1000
Fax: (314) 725-6592
Email: mcherba@dmfirm.com
Email: rdevereux@dmfirm.com
Email: jschmitt@dmfirm.com

Walter A. Ketcham , Jr.
**Grower, Ketcham, Eide, Telan & Meltz, PA**
901 N Lake Destiny Rd., Suite 450
PO Box 538065
Orlando, FL 32853-8065
Telephone: (407) 423-9545
Fax: (407) 425-7104
Email: enotice@growerketcham.com


DATED:  February 19, 2019.


*/s/ James A. Daire*
James A. Daire