UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

|  |  |
|---|---|
| MIDAMERICA C2L INCORPORATED, a Nevada corporation; and SECURE ENERGY, INC., a Nevada corporation,<br><br>        Plaintiffs/Counter-Defendants,<br><br>v.<br><br>SIEMENS ENERGY, INC., a Delaware corporation,<br><br>        Defendant/Counter-Plaintiff. | Case No. 6:17-cv-171-Orl-40LRH<br><br>**Dispositive Motion** |

**SIEMENS ENERGY, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION**

In a last-ditch effort to keep their infirm claims alive, Plaintiffs' Opposition to Siemens' Motion for Summary Judgment distorts material facts and mischaracterizes Plaintiffs' actual claims.  In their operative First Amended Complaint, Plaintiffs plead fraud only as to the parties' 2012 contracts.  Plaintiffs allege only that Siemens knew of four alleged defects in Plaintiffs' gasification between October 31, 2010 and September of 2011 because of operations at the NCPP project but failed to disclose those alleged defects to Plaintiffs.  Each of the unsupported and non-pleaded assertions Plaintiffs make in their Opposition—including as to alleged misrepresentations from 2006-October 31, 2010, alleged fraud in the inducement in 2007, and alleged fraud in the inducement in 2010—is irrelevant noise.[1]

---

[1] Siemens objects to Plaintiffs' attempt in its Opposition to, again, raise non-pleaded claims and allegations.  The Court should summarily reject those efforts since, as a matter of law, they cannot create triable issues.

Plaintiffs also submit another declaration from their Chairman, President and Chief Executive Officer, Jack Kenny, which—like the Opposition itself—is unhinged from the operative claims and facts. In addition, the latest Kenny declaration is at odds with Plaintiffs' prior admissions and unsupported by the evidence.

Siemens' Reply is intended to correct the facts and address the claims that Plaintiffs actually plead and to respond to issues that could not have been addressed in Siemens' Motion. Plaintiffs' attempt to confuse through self-serving, unsupported testimony should be rejected and Siemens' Motion should be granted.

## II.     THE KEY DISTORTED FACTS

### A.     Plaintiffs requested each of the 2010 and 2012 license agreements because Plaintiffs could not pay Siemens the license fees on time.

Plaintiffs—not Siemens—were the impetus for each of the 2010 and 2012 contracts. Plaintiffs wanted and needed a new license agreement to extend payment deadlines, restructure license terms, or change geographic restrictions. To enter into a new license agreement, the old one had to be terminated. Each of the Completion Agreements in 2010 and 2012 was the result of Plaintiffs asking Siemens to enter into a new license. Plaintiffs admit as much.

For example, as to the 2010 contracts, Kenny now claims "Plaintiffs entered into the 2010 Completion Agreement at Siemens' request." (D.N. 161-2 at 2.) In response to requests for admission, however, Plaintiffs admitted they asked Siemens to enter the 2010 Completion Agreement and 2010 License and Service Agreement to extend the license fee payment deadlines, to extend the expiration date of the equipment warranties and performance guarantees, and to document their latest "project concept" in West Paducah, Kentucky. (D.N. 149-22 at 5.) Similarly, as to the 2012 contracts, Plaintiffs admitted that they asked Siemens

to enter the 2012 Completion Agreement and 2012 License and Service Agreement to extend the license fee payment deadlines and expiration date of the performance guarantees. (*Id.* at 7.) Plaintiffs' attempt to re-write the record fails and cannot stand in the way of summary judgment in Siemens' favor. *See Hamilton v. Sheridan Healthcorp Inc.*, 602 F. App'x 485, 489 (11th Cir. 2015) (citation omitted).

The documentary evidence is in accord with Plaintiffs' binding admissions that the 2010 and 2012 contracts arose, and were entered, at their request. The minutes from an annual shareholder meeting in December 2011 describe Plaintiffs' "major accomplishment" of obtaining Siemens' agreement to extend the performance guarantee and license fee payment deadlines (later memorialized in the 2012 License and Service Agreement). (D.N. 149-2 at 140–141.) Plaintiffs' Consolidated Financial Statements also call out that the parties entered into the 2012 License and Service Agreement to extend the guarantees and license fee payment deadlines. (D.N. 149-5 at 5.)

Finally, Plaintiffs' attempt to portray Siemens as the driver for the 2010 contracts (which replaced the 2007 contracts) and the 2012 contracts (which replaced the 2010 contracts) makes no sense. In each case, the principal differences between the new contracts and their earlier iterations were: (1) extensions of Plaintiffs' deadlines to pay Siemens license fees; and (2) new license and support terms to accommodate Plaintiffs' evolving plans for their process plant. (D.N. 149-4 at 73; D.N. 149-7 at 63–65; D.N. 149-6 at 4; D.N. 149-5 at 12.) Those payment extensions and new support terms benefited Plaintiffs, not Siemens.

**B.     Siemens demanded that Plaintiffs pay their past-due license fees before Plaintiffs attempted to rescind the 2012 License and Service Agreement.**

Plaintiffs also miss the mark in their attempt to claim that they rescinded the 2012

License and Service Agreement before their license fees were due to Siemens.  (D.N. 161 at 25.)  Kenny states in his declaration that "on or about February 11, 2016, Secure demanded rescission of *its agreements* with Siemens."  (D.N. 161-2 at 4–5, ¶10 (emphasis added).)  However, the only agreement for which Plaintiffs demanded rescission was the *2007 Equipment Supply Agreement* ("ESA") on February 11, 2016—this is undisputed.  (D.N. 162 at 2, ¶9; D.N. 149-7 at 66–69.)  Indeed, before seeking rescission in their complaint in this lawsuit in July 2016, Plaintiffs had never attempted to rescind the 2012 License and Service Agreement.  (D.N. 1.)  Again, Plaintiffs are simply wrong on the facts.

Plaintiffs cannot attempt to escape liability by arguing they had no obligations to pay past due license fees until "invoiced."  The 2012 License and Service Agreement states that payments shall be due by dates certain, with the last payment due by December 31, 2015.  (D.N. 149-5 at 56.)  Plaintiffs received a signed letter from Siemens on February 17, 2016 invoicing them for the amount due as of December 31, 2015 and demanding payment—before Plaintiffs made any attempt to rescind the 2012 License and Service Agreement.  (D.N. 149-7 at 70-71.)  Plaintiffs failed to pay.  (D.N. 149-2 at 52.)  Accordingly, Plaintiffs' attempt to manufacture an excuse for their failure to pay—*i.e.*, that they were not invoiced prior to their attempt to rescind—defies the undisputed record and should be rejected.

### III.   THE DISTORTED CLAIMS

Plaintiffs continue to mischaracterize, and attempt to change, the claims they allege in their First Amended Complaint in the hope that something will stick, but nothing does.

#### A.   Plaintiffs fraud claims (Counts IV and V)
**Kentucky law applies (and the application of Missouri law makes no difference).**

As detailed in Siemens' Motion, Kentucky has the strongest nexus with the 2012 License and

Service Agreement because it was the place where Siemens' services were to be provided, the alleged injury was felt, and performance would have occurred (if Plaintiffs had paid). Kenny's new declaration provides further reason why Kentucky law ought to apply. Kenny details the vast connection to Kentucky, describing the financing that was procured for the Kentucky project and stating that Plaintiffs "entered into a contract for construction for the foundation at the **West Paducah, Kentucky** plant site, contracts regarding obtaining public and private funding, permit (kept valid), zoning approval, and all permits necessary to enter into a contract for the engineering, procurement, and construction (an 'EPC contract') of the plant and for project financing." (D.N. 161-2 at 3, ¶5 (emphasis added).)

Plaintiffs argue instead that Missouri law should apply (the parties agree that Florida law does not apply).[2] But Plaintiffs ignore the fact that the initial 2007 ESA (where the location of Plaintiffs' potential plant had yet to be determined) is not the relevant agreement for purposes of Counts IV and V—the 2012 License and Services Agreement is at issue in those counts. For purposes of Plaintiffs' fraud allegations, Kentucky was the only designated location for the project and the parties' efforts to develop that project (such as they were) were all Kentucky-based.

Regardless, Counts IV and V also fail under Missouri law.[3] The economic loss rule as

---

[2] Plaintiffs' assertion that Missouri law should apply to Count V scuttles their own Motion for Partial Summary Judgment—Plaintiffs fail to do any analysis of Missouri law in their Motion, opting instead to only address Florida and New York. (D.N. 146.)

[3] Federal district courts applying Missouri law have repeatedly addressed the application of the economic loss rule to fraud claims. *See, e.g.*, *Flynn v. CTB, Inc.*, 2015 WL 5692299, at *11 (E.D. Mo. Sept. 28, 2015); *Compass Bank v. Eager Rd. Assocs.*, LLC, 922 F. Supp. 2d 818, 827 (E.D. Mo. 2013); *Inspired Pharma Sols., LLC v. 5mRx LLC*, 2018 WL 659205, at *3 (E.D. Mo. Feb. 1, 2018).

adopted under Missouri law bars fraudulent misrepresentation and inducement claims where, as here, the alleged fraud concerns the quality, character, or safety of the goods sold since the alleged fraud is redundant with warranty claims. *Flynn*, 2015 WL 5692299 at *12.

**Plaintiffs' fraud claims derive from contract**. Plaintiffs' Opposition makes it clear their fraud claims derive from, and are governed by, contractual duties. First, the "duty" Plaintiffs claim Siemens breached is purely contractual. Plaintiffs claim Siemens had an "ongoing duty to disclose to Plaintiffs the existence of material defects in the technology and equipment, including a duty to disclose modifications made" and to keep them informed of the NCPP project. (D.N. 161 at 17.) This "duty," however, derives from Section 5 of the 2012 License and Services Agreement, which specifies Siemens' obligations to inform Plaintiffs of all improvements, modifications, and developments to Siemens' gasification technology, including those at other plants. (D.N. 149-5 at 58, §5; D.N. 146 at 21, fn. 3.) Plaintiffs admit as much elsewhere in their Opposition, stating "Defendant ignores in its Motion for Summary Judgment that the 2007, 2010, and 2012 contracts contain, and Defendant failed to meet, an obligation to inform Plaintiffs of all upgrades and improvements to the Siemens coal gasification technology." (D.N. 161 at 13.) The Court's inquiry need go no further.

Second, the alleged "design defects" are measured against the standards set by the contract. Each of Plaintiffs' design defect theories entirely depends upon the performance guarantees that Siemens made to C2L in the 2012 License and Service Agreement. (D.N. 149-14 at 30–32.) Plaintiffs admit (as they must) that their expert, Dr. Kosstrin, defined "design defect" as any shortfall in Siemens' contractual performance guarantees in the 2012 License and Service Agreement. (D.N. 161 at 16.) In other words, the contract defines what is to be

considered a "design defect."

Because the duty and standard for design defects upon which Plaintiffs predicate their fraud claims are coextensive with their contract claims, and they only claim economic losses as a result of those, Counts IV and V are barred by the economic loss rule and summary judgment for Siemens should be granted on those counts. (*See* D.N. 161 at 12 (Plaintiffs allege they are entitled to damages because Siemens breached its duty by "concealing facts [that] include[d] the difficulties experienced at the NCPP plant in China.").)

**Plaintiffs' newly minted rescission claim is barred by the merger doctrine.** Plaintiffs' newest attempt at a rescission claim based on alleged facts they never pleaded with particularity (*e.g.,* omissions relating to the 2010 Completion Agreement) similarly fails. Again, Plaintiffs un-pleaded claims should be disregarded altogether. Moreover, as noted above, Plaintiffs concede Section 5 of the 2010 License and Service Agreement specifies Siemens' obligations to inform Plaintiffs of all improvements, modifications, and developments to Siemens' gasification technology, including those at other plants. (D.N. 149-5 at 23, §5; D.N. 146 at 21, fn. 3.) Plaintiffs' new claim is therefore barred by the merger doctrine, as further detailed in Siemens' opposition to Plaintiffs' motion for summary judgment. (D.N. 163 at 20–21); *S & B Investments, LLC v. Motiva Enterprises, L.L.C.,* 2004 WL 3250306, at *4 (S.D. Fla. Dec. 6, 2004) (collecting cases). Accordingly, summary judgment on Count V should be granted.

### B. Plaintiffs' breach of contract/implied warranty claims (Counts I and II)

**Plaintiffs were never ready, willing, and able to perform.** Plaintiffs admit they were never ready, willing, or able to perform their end of the 2012 License and Service Agreement

which is dispositive of their anticipatory repudiation claim.  But Plaintiffs now argue that their "readiness to perform their obligation is irrelevant."  (D.N. 161 at 18.)  As explained in Siemens' Motion, the law is clear that Plaintiffs must be ready, willing, an able to perform before they can declare "repudiation."  Further, Plaintiffs did not even attempt to declare Siemens as being in "anticipatory repudiation" of the 2012 License and Service Agreement until *after* Plaintiffs refused to pay their past-due license fees.  And Plaintiffs concede they were not willing to pay unless and until they had a functioning, revenue producing plant—a condition inconsistent with both the contract and the facts.

**No parol agreement to extend payment deadlines exists.**  Plaintiffs' newest excuse for non-payment is that there was some sort of oral agreement to extend Plaintiffs' payment deadlines. (D.N. 161-2 at 3–4 ¶¶4, 7.)   There was no such agreement and this excuse fails as a matter of law because it violates the parol evidence rule and lacks any evidentiary support.  Each of the parties' contracts is fully-integrated and no parol evidence may be used to interpret the contract.  (D.N. 149-5 at 46 §23; D.N. 149-6 at 10, §23); *see Leo v. Stevens,* 307 A.D.2d 453, 454 (3d Dep't 2003) (New York law).

**Plaintiffs' continued attempt to add new claims should be rejected.**  Plaintiffs continue to try to introduce new claims.  Among the others addressed above, Plaintiffs try to transmogrify their contract claim from repudiation of the contract to a breach of contract based on failure to deliver certain components to the gasification island in 2009 (*i.e.*, the SIS and Fuel Measurement System). (D.N. 161-2 at 2, ¶3.)[4]  But this theory was not pleaded and should

---

[4] Siemens objects to Paragraph 3 of the Kenny Declaration on foundation and hearsay grounds as to what "Siemens admits knowingly providing" and what "is considered by Siemens' employees to be mandatory."

be discarded for that reason alone. Moreover, this new claim would be time-barred under controlling New York law.[5] Lastly, in the 2010 Completion Agreement—where the parties agreed that neither had any claim under the 2007 ESA, the 2007 Project License Agreement and/or any theory of law against the other—Plaintiffs explicitly recognized that Siemens did not deliver the SIS and Fuel Measurement System required under the 2007 ESA. (D.N. 149-4 at 73.) Plaintiffs cannot now concoct an entirely new, futile, and time-barred claim.

**No unconscionability**. The evidence shows that the disclaimer of any implied warranty, including for fitness for purpose, was not unconscionable. Plaintiffs admit that they had ample choice as to the gasifier supplier (*i.e.*, no procedural unconscionability) and that there is nothing in any of the parties' contracts that is unconscionable (*i.e.*, no substantive unconscionability). (D.N. 149-13 at 15; D.N. 149-2 at 45–47; D.N. 149-22 at 5–7.) In an attempt to get around their admissions, Plaintiffs merely repeat their improper new fraud allegations. (D.N. 161 at 22.) However, the single case Plaintiffs cite in support is easily distinguishable. *M&T Mortg. Corp. v. Miller*, 323 F.Supp.2d 405 (E.D.N.Y. 2004). In *M&T*, a mortgage company preyed on consumers by forcing them to enter into predatory sales and lending agreements and steering them to use corrupt attorneys. Here, Plaintiffs are sophisticated businesses and were represented by counsel throughout contract negotiations.

Therefore, summary judgment on Plaintiffs' breach of contract claim (Count I) and breach of implied warranty claim (Count II) should be granted.

### C. Plaintiffs' claim for rescission of all 2007-onward contracts (Count VI)

If Missouri law applies to the 2007 ESA, as Plaintiffs now contend (D.N. 161 at 11),

---

[5] New York law is the agreed choice of law in the 2007 ESA. The limitations period under New York law is six years. *See Rubin v. Rubin*, 275 A.D.2d 404, 405 (2000); CPLR 213[1].

Count VI fails because failure of consideration is not grounds for rescission. (D.N. 74 at 14-15.) Further, Plaintiffs failed to rebut Siemens' statute of limitations argument in its Motion (D.N. 149 at 23-24). Thus, summary judgment should be granted on Plaintiffs' Count VI.

### IV.     CONCLUSION

Summary judgment in favor of Siemens is the right result as a matter of law. It is also the expected outcome given the undisputed facts. Plaintiffs bought gasification equipment from Siemens in 2007 (which, to this day, remains in the same crates and packaging in which it was delivered) and took a technology license for which they did not and could not pay. Plaintiffs failed to achieve financing or make any meaningful progress in building a plant. At Plaintiffs' request, Siemens effectively deferred payment of the license fees for over six years as part of the serial License Agreements and Completion Agreements (which terminated the earlier agreements and included releases and waivers of claims). Then Siemens told Plaintiffs that Plaintiffs would need to finally pay the past-due license fees in order for Siemens to continue to support Plaintiffs, since Siemens intended to wind down its gasification division. But Plaintiffs still could not and would not pay Siemens, which triggered this litigation. Plaintiffs' misguided effort to gin up a case that the 2007 ESA lacked consideration, their foundationless attempt to turn NCPP project experiences into "evidence" comparable to their own hypothetical operations, and their most recent gambit to make this case about anything other than their pleaded claims do not create any dispute as to the material facts, and warrant summary judgment in Siemens' favor.

Dated: April 2, 2019

Respectfully submitted,

By: */s/ James A. Daire*
Robert W. Thielhelm, Jr.
Florida Bar No. 889679
P. Alexander Quimby
Florida Bar No. 099954
**Baker & Hostetler LLP**
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Telephone: 407.649.4000
Facsimile: 407.841.0168
Email: rthielhelm@bakerlaw.com
Email: aquimby@bakerlaw.com

Scott D. Baker (admitted pro hac vice)
James A. Daire (admitted pro hac vice)
Christopher J. Pulido (admitted pro hac vice)
**Reed Smith LLP**
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone: 415.543.8700
Facsimile: 415.391.8269
Email: sbaker@reedsmith.com
Email: jdaire@reedsmith.com
Email: cpulido@reedsmith.com

*Counsel for Siemens Energy, Inc.*

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on April 2, 2019, a true and correct copy of the foregoing was submitted to the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to the following listed counsel:

Michael R. Cherba
Robert L. Devereux
Jeffrey R. Schmitt
**Danna McKitrick, P.C.**
7701 Forsyth Blvd., Suite 800
St Louis, MO 63105
Telephone: (314) 726-1000
Fax: (314) 725-6592
Email: mcherba@dmfirm.com
Email: rdevereux@dmfirm.com
Email: jschmitt@dmfirm.com

Walter A. Ketcham , Jr.
**Grower, Ketcham, Eide, Telan & Meltz, PA**
901 N Lake Destiny Rd., Suite 450
PO Box 538065
Orlando, FL 32853-8065
Telephone: (407) 423-9545
Fax: (407) 425-7104
Email: enotice@growerketcham.com


  DATED:  April 2, 2019.


               */s/ James A. Daire*
               James A. Daire