## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | | |
|---|---|---|
| **MIDAMERICA C2L INC., et al.**, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| **v.** | ) | Case No. 6:17-CV-171-Orl-40LRH |
| | ) | |
| **SIEMENS ENERGY, INC.**, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MOTION IN LIMINE AND MEMORANDUM OF LAW IN SUPPORT**

---

### MOTION

Plaintiffs Secure Energy, Inc. and MidAmerica C2L, Inc. respectfully request, pursuant to the Amended Case Management and Scheduling Order [Doc. 89], this honorable Court issue an Order ruling *in limine* that counsel and witnesses are precluded, while in the presence of the jury, from referring to in any way or offering evidence of certain topics set forth below. Plaintiffs offer the following Memorandum in Support of this Motion.

### MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE

**I.      Evidence Regarding the Extinguishment of Secure's Debt to Arc Financial, that an Arc Financial Manager sat on Secure's Board of Directors, and that Arc Financial was one of Secure's Shareholders Must be Excluded as Irrelevant, Unduly Prejudicial, Confusing, and Misleading.**

Secure respectfully requests this Court rule *in limine* that counsel and witnesses are precluded, in the presence of the jury, from referring to in any way or offering evidence that Secure extinguished its debt to Arc Financial, a private equity firm, that Arc Financial had a manager on Secure's board of directors, and that Arc Financial held shares of Secure. Such evidence must be excluded because it is irrelevant, and any references to such evidence would be highly prejudicial to Secure.

**Introduction**

Plaintiffs Secure Energy, Inc. and MidAmerica C2L, Inc., (collectively referred to hereinafter as "Secure"), anticipate that Siemens will attempt to introduce evidence at trial that Secure settled a debt of approximately $65 Million (in U.S. currency) to a Canadian private equity management firm, Arc Financial, for $500,000.00 and that this fund, not Secure, paid for Secure's gasifiers. In addition, Secure anticipates that Siemens will try to introduce evidence at trial regarding Arc's ownership of Secure stock and the membership on Secure's board of directors. These issues are absolutely irrelevant and misinterpret facts so badly that they will only serve to confuse jurors, potentially unfairly prejudicing them against Secure. The information Siemens would seek to introduce is contrary to all the documentation in this case that Arc loaned money to or made an investment in Secure. Despite this, Siemens continues to assert that Arc paid for Secure's equipment and technology. This will only confuse the jury. Furthermore, the issues surrounding Arc's investment in Secure and the membership and resignation of an Arc manager from Secure's board are irrelevant as to the question of whether Siemens' gasifiers work, whether Siemens committed fraud, fraudulent inducement, and fraudulently omitted material facts, and whether Siemens breached its contract with Secure.

**A.**     **Evidence that Secure Retired its Debt to Arc Financial at a Discount, that Arc Financial held Shares of Secure's Stock, and that an Arc Manager was on Secure's Board of Directors is Irrelevant and Should be Excluded under Rule 402.**

Irrelevant information is inadmissible. Fed. R. Evid. 402. The Federal Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; see also *Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1068 (11th Cir. 2014). This case involves Secure's action for damages

resulting from Siemens' fraudulent inducement, omission of material facts, and breach of contract in failing to disclose to Secure the existence of material defects in the coal gasification equipment and technology it sold to Secure. Secure's extinguishment of its debt to Arc Financial at a discount has nothing to do with whether Siemens fraudulently induced Secure to enter into contracts and failed to inform Secure about defects in its coal gasification equipment and technology, of which it knew well in advance of this litigation. Neither will the makeup of Secure's board of directors, or that Arc Financial held shares of Secure's stock. Moreover, such information will not make it more or less likely that Secure will be successful in proving any elements of its claims. It has no bearing on the jury's determination of how to resolve the disputed claims for breach of contract, fraud and fraudulent inducement, and may lead to confusion of the issues by the jury. Accordingly, whether Secure retired the debt owed to Arc Financial, and whether Arc Financial held shares of Secure and had a manager on Secure's board of directors are irrelevant under Rule 401, and evidence regarding the same should not be allowed.

**B.      Evidence that Secure Retired its Debt to Arc Financial at a discount, and that Arc Financial Held Shares of Secure and one of its Managers was on Secure's Board of Directors would be Unduly Prejudicial to Secure, and would Confuse and Mislead the Jury, and Should be Excluded under Rule 403.**

Even if evidence regarding Secure's retirement of its debt to Arc Financial, Arc's ownership of shares of Secure, and that one of Arc's managers was on Secure's board of directors were somehow relevant, that evidence should still be excluded from the jury due to its prejudicial effect. Federal Rule of Evidence 403 requires the exclusion of evidence, even if relevant, if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Fed. R. Evid. 403. Under Rule 403, the court balances the probative value of the evidence against the risk of unfair prejudice. *U.S. v. Knowles*,

889 F.3d 1251, 1256 (11th Cir. 2018). "Unfair prejudice means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. U.S.*, 519 U.S. 172, 180 (1997); Advisory Committee's Notes on Fed. R. Evid. 403. Courts often exclude evidence when it leads to a so-called mini-trial on purely collateral issues. *U.S. v. Evans*, 469 F.Supp.2d 1112, 1115 (M.D. Fla. 2006).

References to the Arc Financial debt buyout and the investment of Arc Financial in Secure, including membership on Secure's board of directors, have no bearing upon whether Siemens committed the wrongs Secure alleges. It has nothing to do with whether Siemens breached its contract with Secure, engaged in fraudulent conduct, or sold defective coal gasification equipment and technology to Secure. These are the heart of this case, not whether and how a Canadian private equity firm invested in, and its debt was retired at a discount. Admission of evidence about these topics will only lead to an irrelevant mini-trial about the collateral matter of Secure's project financing. Not only will such evidence confuse and distract the jury from the issues at hand, but it also has the potential to unfairly bias the jury against Secure by making it appear that Secure did not purchase its coal gasification equipment and technology from Siemens, and that Secure did not suffer any damages. None of Secure's claims or Siemens' counter-claim turn on how Secure's financing was raised, debts were settled, shares were apportioned, and board of directors was comprised.

The risk present in this case is similar to that in cases involving the collateral source rule. Under the "collateral source rule," compensation for injuries from a source wholly independent of the tortfeasor is not deducted from the damages recovered against the tortfeasor. *Southern v. Plumb Tools, A Div. of O'Ames Corp.*, 696 F.2d 1321, 1323 (11th Cir. 1983) (applying Alabama law). Allowing a defendant to introduce evidence that a plaintiff has received benefits from his

employer or from collateral sources like an insurance company is considered unquestionably prejudicial to the plaintiff's case. See, e.g., *Eichel v. N.Y. Cent. R.R.*, 375 U.S. 253, 255 (1963); *Tipton v. Socony Mobil Oil Co*., 375 U.S. 34, 37 (1963)). Accordingly, as any mention of Secure's retirement of its debt to Arc Financial would be unquestionably prejudicial in this case, the Court should exclude this evidence. In fact, under the collateral source doctrine, it would be impermissible for Siemens to submit evidence of the same.

Siemens would likely respond that the evidence of this debt extinguishment is relevant and admissible to show that Secure did not incur monetary loss, and to show that Arc Financial, not Secure, paid for the Siemens coal gasification equipment and technology. However, when evidence is inadmissible pursuant to the collateral source rule, the purpose of introducing the evidence is irrelevant. *Bourque v. Diamond M. Drilling Co*., 623 F.2d 351, 354 (5th Cir. 1980). Such evidence is inadmissible "because of the danger that the jury might consider it in calculating damages. Thus, the analogous collateral source rule bars both evidence directly bearing on damages and evidence which might be considered by the jury in assessing damages." *Id*. The same reasoning should follow here. As in *Tipton*, where admitting evidence that the plaintiff received worker's compensation benefits was reversible error even though the evidence was only offered to establish that the plaintiff was a seaman within the meaning of the Jones Act, (*Tipton*, 375 U.S. at 37), and *Eichel*, where evidence of disability payments was inadmissible for impeachment purposes, (*Eichel*, 375 U.S. at 254-55), evidence of the retirement of Secure's debt to Arc would be prejudicial here even if only admitted to show the relationship between Secure, Arc Financial, and Siemens.

In this case, it is undisputed that Secure paid Siemens, via wire transfers, over $43 Million for the coal gasification equipment and technology. How Secure raised the capital to run

its company, or the fact that Secure retired debt is wholly irrelevant to any issues in this case. The absurd result of permitting such evidence to be presented to the jury is that Siemens will get to keep the $43 Million it was paid for defective equipment and technology because Secure was able to reorganize debt acquired in order to develop a facility. Such an outcome makes no sense and would result in Siemens' unjust enrichment. The principle in this case is analogous to a collateral source, only in a collateral source case, Secure would have been paid by a third party and Siemens may nonetheless be responsible for injuries sustained. Unlike a collateral source rule case, Secure simply requests to be reimbursed for money already paid to Siemens, and is not attempting to obtain a double recovery (which is allowed under the collateral source doctrine).

The jurors in this case may not be able to maintain the necessary distinctions described above. The only way to protect Secure against such risk of jury confusion is to preclude all references to the investment of Arc Financial in Secure, including but not limited to, debt reduction, stock ownership, and membership of an Arc Financial manager on Secure's board of directors in the presence of the jury. Such evidence bears no probative value and it should therefore be excluded.

II.   **Evidence that Secure did not Obtain the Entire $2 Billion or Build its Planned Project Prior to Siemens' Exit of the Gasification Business Must be Excluded as Irrelevant, Unduly Prejudicial, Confusing, and Misleading.**

Secure respectfully requests this Court rule *in limine* that counsel and witnesses are precluded, in the presence of the jury, from referring to in any way or offering evidence that Secure did not obtain the entire $2 Billion necessary to build its facility and that Secure did not build its facility, prior to Siemens' exit of the gasification business. Such evidence must be excluded because it is irrelevant, and any references to such evidence would be highly prejudicial to Secure.

# INTRODUCTION

Secure anticipates that Siemens will attempt to introduce evidence at trial that Secure did not obtain the entire $2 Billion necessary to build its project and did not build its project prior to Siemens' exit from the gasification business. In fact, Siemens has already argued as much in its Motion for Summary Judgment, in a misguided attempt to shift the Court's focus from the fact that its coal gasification equipment and technology were flawed and that it engaged in fraudulent conduct with regard to Secure. Secure is not on trial in this lawsuit, however, and such evidence is both irrelevant and its probative value would be outweighed by creating unfair prejudice, confusing issues, or misleading the jury. Moreover, such assertions are false in that Secure invested over $86 Million in furtherance of its project. Whether Secure obtained sufficient financing or built its facility prior to Siemens' exit of the gasification business does not make it any less likely that Siemens committed fraud or that Siemens' coal gasification equipment and technology contained design defects. Therefore, the Court should prevent Siemens from offering any evidence regarding Secure not obtaining the necessary financing or building its facility prior to Siemens' exiting the gasification business.

A.    **Evidence that Secure did not Obtain the Entire $2 Billion Necessary to Build its Project and did not Build its Project Prior to Siemens' Exit of the Gasification Business is Irrelevant and Should be Excluded under Rule 402.**

Irrelevant information is inadmissible. Fed. R. Evid. 402. The Federal Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; see also *Aycock*, 769 F.3d at 1068. This case involves Secure's action for damages resulting from Defendant's fraudulent conduct in failing to disclose to Secure the existence of material defects in the coal gasification equipment and

technology it sold to Secure. The fact that Secure did not obtain the entire $2+ Billion necessary to build a coal-to-chemicals plant prior to Siemens' exit of the gasification business has absolutely nothing to do with whether Siemens' coal gasification equipment and technology will work. It has nothing to do with whether Siemens fraudulently induced Secure to enter into contracts and failed to inform Secure about the design defects in its coal gasification equipment and technology, of which it knew well in advance of this litigation. Moreover, whether Secure obtained funding or built a facility prior to Siemens' exit of the gasification business will not make it any less likely that Secure will be successful in proving any elements of its claims. Such evidence will have no bearing on the jury's determination of how to resolve the disputed claims for breach of contract, fraud and fraudulent inducement, and may lead to confusion of the issues by the jury. Therefore, whether Secure obtained the entire $2 Billion necessary to finance and build its plant prior to Siemens' exit of the gasification business, are irrelevant under Rule 401, and evidence regarding the same should not be allowed.

**B.** **Evidence that Secure did not Obtain the Entire $2 Billion Necessary to Build its Project and did not Build its Project Prior to Siemens' Exit of the Gasification Business would be Unduly Prejudicial to Secure, and would Confuse and Mislead the Jury, and Should be Excluded under Rule 403.**

Even if evidence that Secure did not obtain full financing to build its project before Siemens announced its exit of the gasification business were somehow relevant, that evidence should still be excluded from the jury due to its prejudicial effect. Federal Rule of Evidence 403 requires the exclusion of evidence, even if relevant, if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Fed. R. Evid. 403. Under Rule 403, the court balances the probative value of the evidence against the risk of unfair prejudice. *Knowles*, 889 F.3d at 1256. "Unfair prejudice means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an

emotional one." *Old Chief*, 519 U.S. at 180; Advisory Committee's Notes on Fed. R. Evid. 403.

Courts often exclude evidence when it leads to a so-called mini-trial on purely collateral issues.

*Evans*, 469 F.Supp.2d at 1115.

References that Secure did not obtain full financing and did not build its plant prior to

Siemens' exit of the gasification business have no bearing upon whether Siemens committed the

wrongs Secure alleges. It has nothing to do with whether Siemens breached its contract with

Secure, engaged in fraudulent conduct, or sold defective coal gasification equipment and

technology to Secure. These are the heart of this case, not whether Secure did enough to deserve

reimbursement in the form of damages. Admission of evidence about these topics will lead to an

irrelevant mini-trial about whether Secure sufficiently advanced its project. Not only will such

evidence confuse and distract the jury from the issues at hand, but it also has the potential to

unfairly bias the jury against Secure by inserting the narrative of victim-blaming. None of

Secure's claims or Siemens' counter-claim turn on whether Secure obtained sufficient financing

to build a plant to convert coal to chemicals prior to Siemens' exit of the gasification business, or

whether it built such a plant. The jurors may not be able to maintain these distinctions. The only

way to protect Secure against such risk of jury confusion is to preclude all references that Secure

did not obtain full financing and that it did not build the plant prior to Siemens' exit from the

gasification business in front of the jury. Such evidence bears no probative value and it should

therefore be excluded.

III.    **Evidence Regarding John J. Kenny's History with the SEC Must be Excluded as**
        **Irrelevant, Improper Character Impeachment Evidence, Unduly Prejudicial,**
        **Confusing, and Misleading.**

Secure respectfully requests this Court rule *in limine* that counsel and witnesses are

precluded, in the presence of the jury, from referring to in any way or offering evidence of John

J. Kenny's administrative proceeding before the Securities and Exchange Commission ("SEC"), and the result thereof. Such references and evidence must be excluded because it is irrelevant, amounts to improper character evidence, and any references to the evidence would be highly prejudicial to Secure.

**BACKGROUND**

Secure brought this case against Siemens to recover for damages suffered as a result of Siemens' breach of contract, fraudulent inducement, and fraudulent misrepresentations. In establishing its case in chief, Secure plans to call as a witness its co-founder and CEO, John J. Kenny (hereinafter "Kenny"). Secure expects Mr. Kenny to testify extensively in this matter.

Before founding Secure, Kenny worked for 22 years as a licensed securities broker. In connection with that securities work, Kenny was an account executive for Robert Wilson, a money manager, who advised clients, pursuant to a power of attorney or other written authorizations. The trading activity in question took place over twenty years ago, between June 1994 and January 1995. When the decision was made to transfer the accounts to a new brokerage firm, Kenny was instructed to transfer funds to the account of Wilson's clients and he complied with those requests. After the accounts were transferred, Robert Wilson embezzled the transferred funds. The extent of this embezzlement was millions of dollars and, as a result, Robert Wilson became a convicted felon who was sentenced to a 57-month prison term.

The Wilson transactions spawned three major pieces of litigation and/or administrative proceedings involving Kenny. The first proceeding was instituted in 1995, when the SEC initiated a proceeding in the U.S. District Court for the District of Colorado identifying Kenny only as a nominal defendant, asserting no claims against Kenny, and merely indicating (incorrectly) that Kenny received money misappropriated by Wilson. Extensive discovery and

depositions were undertaken and on May 28, 1998, some two and a half years after instituting the proceeding, it was dismissed after the SEC voluntarily dismissed the Kenny defendants.

In 1995, the Florida Department of Insurance, as a receiver to the U.S. Employer Consumer Funds of Florida (USEC) (one of Wilson's clients) also instituted proceedings against Kenny and other stockbrokers and brokerage firms who handled the Wilson-controlled accounts, in the U.S. District Court for the Middle District of Florida. In this matter, after a five-week jury trial in September and October 1998, the jury returned a verdict in Kenny's favor on all counts for claims including Rule 10b-5 violations, common law fraud, conversion, breach of fiduciary duty, civil conspiracy and violations of Florida Securities Laws.

The SEC subsequently filed an administrative proceeding, arising out of the subject matter of the Florida and Colorado proceedings, against Kenny. In August 1999, the SEC determined that Kenny violated certain securities laws and issued an administrative decision barring Kenny from associating with any broker, dealer or investment advisor, revoked his investment advisor registration, and imposed civil monetary penalties. On September 27, 2006, the SEC issued the Kenny Defendants a Form 1099-C to Kenny, cancelling the $1,833,000.00 debt.

Secure anticipates that Siemens may try to cross-examine Kenny about his SEC history in an attempt to impugn Kenny's credibility and to embarrass him. Similarly, Siemens may try to offer witnesses or extrinsic evidence regarding Kenny's history with the SEC. For the reasons set forth herein, all such evidence and any reference to it in front of the jury should be excluded from this case.

<u>**ARGUMENT**</u>

**A.**     **Evidence Regarding Kenny's SEC History is Irrelevant to the Disputed Issues in this Case and Should be Excluded under Rule 402.**

Irrelevant information is inadmissible. Fed. R. Evid. 402. The Federal Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; see also *Aycock*, 769 F.3d at 1068. This case involves Secure's action for damages resulting from Siemens' fraudulent conduct in failing to disclose to Secure the existence of material defects in the coal gasification equipment and technology it sold to Secure. It is impossible to see how Kenny's SEC history has any connection to the facts of this case. Specifically, Kenny's SEC history will not make it any more or less likely that Secure will be successful in proving any elements of its claims. In addition, Kenny's SEC history will have no bearing on the jury's determination of how to resolve the disputed claims for breach of contract, fraud and fraudulent inducement. Accordingly, Kenny's SEC history, and any reference to it, is irrelevant under Rule 401, and should not be allowed.

**B.**     **Even if Kenny's SEC History were Relevant, it should be Excluded because it Amounts to Improper Character Impeachment Evidence that would be Highly Prejudicial to Secure.**

Secure anticipates that Siemens will argue that Kenny's SEC history is relevant as character impeachment evidence. However, Kenny's SEC history constitutes neither proof of conviction of a crime under Rule 609, nor allowable evidence of specific instances of conduct under Rule 608(b). Furthermore, Kenny's SEC history would be highly prejudicial to Secure and would require Secure to painstakingly address a matter nearly three decades old to maintain Kenny's credibility notwithstanding the fact that this case is not about Kenny's credibility but

rather whether Siemens deceived Secure and breached its contract with them. As such, this Court should preclude any reference to such evidence in this case.

1. **Kenny's SEC History is not Permissible Impeachment Evidence Under Federal Rule of Evidence 609 Because it does not Constitute Evidence of Conviction of a Crime.**

Kenny's SEC history is not evidence of conviction of a crime, and as such, is not admissible under Fed. R. Evid. 609. Rule 609 permits the admission of evidence that a witness has been convicted of a crime, but only when that crime was punishable by death or imprisonment in excess of one year. Fed. R. Evid. 609. The SEC's revocation of Kenny's brokerage license and assessment of an administrative penalty does not amount to a criminal conviction. Judgments in administrative proceedings are not admissible under Rule 609. *U.S. v. Benson*, 487 F.2d 978, 982 (3d Cir. 1973). In addition, there is no evidence that any of the wrongs of which Kenny was determined to have committed by the SEC were punishable by more than one year of imprisonment. 15 U.S.C. § 77h-1; 15 U.S.C. §§ 78o(b)(6), 78s(h), 78u-2, 78u-3; 15 U.S.C. § 80b-3. In fact, all three of the statutes applied by the SEC in Kenny's administrative proceeding require that any criminal proceedings be referred to the Attorney General. 15 U.S.C. § 77t(b); 15 U.S.C. § 78u(d)(1); 15 U.S.C. § 80b-9(d). Because there was no referral to the Attorney General in Kenny's case, it is clear that criminal charges were never at issue. Finally, there is nothing in the administrative proceeding that bears on Kenny's character and propensity for truthfulness. Rule 609 simply does not permit the admissibility of the evidence in question.

Finally, Kenny's SEC history is far outside the time frame contemplated by Rule 609. Rule 609(b) creates a rebuttable presumption against admissibility of crimes more than ten years old. Fed. R. Evid. 609(b); see also *Knight through Kerr v. Miami-Dade County*, 856 F.3d 795, 816 (11th Cir. 1998). The SEC's administrative proceeding against Kenny ended nearly twenty

years ago and began long before that. Because more than ten years have passed since the

conclusion of Kenny's SEC matters, this Court should preclude any reference to Kenny's SEC

history in this case.

> **2.** **Kenny's SEC History is Impermissible as Impeachment Evidence Under Federal Rule of Evidence 608(b).**

Federal Rule of Evidence 608(b) precludes Siemens from introducing any extrinsic

evidence regarding Kenny's SEC history. Federal Rule of Evidence 608(b) governs the

admissibility of specific acts by a witness in order to impeach the witness' credibility. Fed. R.

Evid. 608(b). Rule 608(b) provides that specific instances of the conduct of a witness, for

purposes of attacking truthfulness, may not be proved by extrinsic evidence. Fed. R. Evid.

608(b). The purpose of this exclusion is "to avoid mini-trials on peripherally related or irrelevant

matters." *U.S. v. Martz*, 964 F.2d 787, 789 (8th Cir. 1992); see also *Evans*, 469 F.Supp.2d at

1115. Pursuant to this rule, Siemens may not offer any extrinsic evidence of Kenny's SEC

history, even for purposes of attacking Kenny's truthfulness as a witness.

Siemens should also be precluded from questioning Kenny regarding his SEC history on

cross-examination. Rule 608(b) provides that specific instances of conduct concerning the

witness' character for truthfulness may be inquired into on cross-examination, but only "in the

discretion of the Court." Fed. R. Evid. 608(b). Specifically, such cross-examination is subject to

the limitations of Rule 403. *Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories

Corp.*, 37 F.3d 1460, 1464 (11th Cir. 1994) (reversing District Court's inclusion of testimonial

evidence of forgery accusation and a 25 year-old sanction for overreliance on partner's work as

too weakly probative to survive Rule 303 balancing test). As outlined in more detail below,

Kenny's SEC history bears no relationship to the jurors' questions of whether Siemens

committed the wrongs Secure allege. It is also unclear how Kenny's history with the SEC

concerns the truthfulness of his testimony in this case. Questions about Kenny's SEC history would likely distract the jury, and could bias the jury against Secure. Because of the risk that jurors might not be able to distinguish Kenny and his SEC history from Secure, which had no connection to Kenny's SEC history and was not even formed at the time of the SEC matters, this Court should prohibit Siemens from questioning Kenny about his SEC history.

### 3. Any Reference to Kenny's SEC History would be Unduly Prejudicial, Confusing, and Misleading, and Should be Excluded under Rule 403.

Even if evidence referring to Kenny's SEC history were somehow relevant in this case, that evidence should still be excluded from the jury due to its prejudicial effect. Federal Rule of Evidence 403 requires the exclusion of evidence, even if it is relevant, if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Fed. R. Evid. 403. Under Rule 403, the court balances the probative value of the evidence against the risk of unfair prejudice. *Knowles*, 889 F.3d at 1256. "Unfair prejudice means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief*, 519 U.S. at 180; Advisory Committee's Notes on Fed. R. Evid. 403. Courts often exclude evidence when it leads to a so-called mini-trial on purely collateral issues. *Evans*, 469 F.Supp.2d at 1115.

References to Kenny's SEC history have no bearing upon whether Siemens committed the wrongs Secure alleges or upon the accuracy of Kenny's testimony in this case. Admission of any testimony or evidence about this topic would lead to an irrelevant mini-trial about Kenny's SEC history. Not only would this evidence likely confuse and distract the jury from the case at hand, but it also has the potential to unfairly bias the jury against Secure, which was founded in part by Kenny. Secure has absolutely no connection to Kenny's SEC proceedings and the company was not even formed at the time. The jurors may not be able to maintain the

distinctions between Kenny, his SEC history, and Secure. The only way to protect Secure against such risk of jury confusion is to preclude any reference to Kenny's SEC history in front of the jury.

Courts in the Eleventh Circuit have excluded similar evidence on grounds that it would unfairly confuse and prejudice the jury. *Green v. Croft*, 347 F.Supp.3d 1156, 1162 (S.D. Fla. 2018) (evidence regarding arrestee's prior convictions inadmissible for impeachment purposes); *U.S. v. Gonzalez*, 718 F.Supp.2d 1341, 1349 (S.D. Fla. 2010) (excluding testimony of federal district judge in trial of defendants accused of committing perjury).

Finally, the fact that Kenny's SEC history is over ten years old weighs heavily in favor of precluding its use in this case. Temporal remoteness depreciates the probity of the extrinsic evidence, thus a conviction may be too remote for proper consideration. *U.S. v. Perrier*, 619 Fed. Appx. 792, 797 (11th Cir. 2015). The events giving rise to the loss of Kenny's brokerage license transpired nearly 30 years ago. As such, this evidence has lost any probative value it may have had and should therefore be excluded.

## IV. Evidence Regarding the use of Off-Specification Coal and Liquid Propane Gas at the NCPP Plant in China Must be Excluded as Irrelevant, Unduly Prejudicial, Confusing, and Misleading.

Secure respectfully requests this Court rule *in limine* that counsel and witnesses are precluded, in the presence of the jury, from referring to in any way or offering evidence that the owner of the NCPP plant used off-specification coal in its gasifiers and used off-specification liquid propane gas in starting up its pilot burners. Such evidence must be excluded because it is irrelevant, and any references to such evidence would be highly prejudicial to Secure.

## INTRODUCTION

Secure anticipates that Siemens will attempt to introduce evidence at trial that the reason the NCPP plant in China had so much difficulty is because the coal and liquid propane gas ("LPG") used there was off-specification as compared to the agreed-upon design fuels. Siemens argued as much in its Motion for Summary Judgment, in an attempt to blame everyone and everything other than Siemens' flawed coal gasification equipment and technology. Regardless, Siemens' literature is replete with references that its gasifiers will work on a wide variety of coals, and evidence in the case demonstrates that Siemens' senior managers acknowledged that the NCPP plant worked just fine using off-specification coal. Siemens' argument about the quality of coal and LPG used at NCPP is merely a red herring. It has nothing to do with whether Siemens' coal gasification equipment and technology were flawed and whether it engaged in fraudulent conduct with regard to Secure. It is simply another instance of Siemens' habit of blaming customers and anyone other than itself, however such evidence is both irrelevant and its probative value would be outweighed by creating unfair prejudice, confusing issues, or misleading the jury. Whether the coal and LPG used at the NCPP plant were off-specification does not make it any less likely that Siemens committed fraud or that Siemens' coal gasification equipment contained design defects. Therefore, the Court should prevent Siemens from offering any evidence regarding the NCPP coal and LPG being off-specification.

**A.      Evidence the NCPP Plant used Off-Specification Coal and Liquid Propane Gas is Irrelevant and Should be Excluded under Rule 402.**

Irrelevant information is inadmissible. Fed. R. Evid. 402. The Federal Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; see also *Aycock*, 769 F.3d at 1068. This case

involves Secure's action for damages resulting from Defendant's fraudulent conduct in failing to disclose to Secure the existence of material defects in the coal gasification equipment and technology it sold to Secure. This equipment was identical to that used at the NCPP plant in China, the first plant in the world to put Siemens' 500 MWth coal gasification equipment and technology to commercial use. It is undisputed that the coal to be used by Secure at its plant differed from the NCPP plant's coal. The fuels used at the NCPP plant have nothing to do with whether Siemens' coal gasification equipment and technology will work. It has nothing to do with whether Siemens fraudulently induced Secure to enter into contracts and failed to inform Secure about design defects in its coal gasification equipment and technology of which it knew well in advance of this litigation. Moreover the use of off-specification coal and LPG at the NCPP plant does not make it any more or less likely that Secure will be successful in proving any elements of its claims. Such evidence will have no bearing on the jury's determination of how to resolve the disputed claims for breach of contract, fraud and fraudulent inducement, and may lead to confusion of the issues by the jury. Accordingly, whether or not the owners of the NCPP plant used off-specification coal and LPG is irrelevant under Rule 401, and evidence regarding the same should not be allowed.

**B.** **Evidence that Off-Specification Coal and Liquid Propane Gas were used at the NCPP Plant would be Unduly Prejudicial to Secure, and would Confuse and Mislead the Jury, and Should be Excluded under Rule 403.**

Even if evidence regarding the use of off-specification coal and LPG at the NCPP plant were somehow relevant, that evidence should still be excluded from the jury due to its prejudicial effect. Federal Rule of Evidence 403 requires the exclusion of evidence, even if relevant, if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Fed. R. Evid. 403. Under Rule 403, the court balances the

probative value of the evidence against the risk of unfair prejudice. *Knowles*, 889 F.3d at 1256. "Unfair prejudice means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief*, 519 U.S. at 180; Advisory Committee's Notes on Fed. R. Evid. 403. Courts often exclude evidence when it leads to a so-called mini-trial on purely collateral issues. *Evans*, 469 F.Supp.2d at 1115.

References to the use of off-specification coal and LPG at the NCPP plant have no bearing upon whether Siemens committed the wrongs Secure alleges. It has nothing to do with whether Siemens breached its contract with Secure, engaged in fraudulent conduct, or sold defective coal gasification equipment to Secure. These are the heart of this case, not whether the owners of the NCPP plant used off-specification fuels. Admission of evidence regarding these topics will lead to an irrelevant mini-trial about the collateral issue of fuel quality. This would be pointless, as Secure did not even build its plant yet. Not only will such evidence confuse and distract the jury from the issues at hand, but it also has the potential to unfairly bias the jury against Secure by giving Siemens yet another opportunity to blame its customers in an effort to save itself, and completely ignores the evidence that Siemens' coal gasification equipment and technology worked with the NCPP coal and LPG. None of Secure's claims or Siemens' counter-claim turn on whether the NCPP plant operated on off-specification coal or LPG. The jurors may not be able to maintain these distinctions. The only way to protect Secure against such risk of jury confusion is to preclude all references to the use of off-specification coal and LPG in the presence of the jury. Such evidence bears no probative value and it should therefore be excluded.

## CONCLUSION

For the foregoing reasons, this Court should issue its Order precluding counsel and witnesses, while in the presence of the jury, from referring in any way to: testimony and

documents regarding the retirement of Secure's debt to Arc Financial, Arc Financial's ownership

of Secure stock, and membership of an Arc Financial manager on Secure's board of directors;

testimony and documents that Secure never raised the entire $2 Billion necessary to build its

planned gasification plant or build said plant prior to Siemens' exit of the gasification business;

John J. Kenny's SEC history; and testimony and documents that the coal and LPG used at the

NCPP plant were off-specification; and grant such other and further relief that is just and proper.

## CERTIFICATION

Pursuant to Local Rule 3.01(g), on April 8, 2019, Plaintiffs' counsel conferred in person

with Defendant's counsel regarding this Motion, at which time Defendant's counsel stated his

opposition to the filing of this Motion. Counsel will discuss potential areas of agreement later.

Respectfully submitted,

**DANNA McKITRICK, P.C.**

Date: April 30, 2019        BY:    /s/ Robert L. Devereux
**Robert L. Devereux**, admitted pro hac vice
**Jeffrey R. Schmitt**, admitted pro hac vice
**Michael R. Cherba**, admitted pro hac vice
7701 Forsyth Blvd., Suite 800
St. Louis, Missouri 63105-3907
Telephone: (314) 726-1000
Facsimile: (314) 725-6592
E-Mail: rdevereux@dmfirm.com
      jschmitt@dmfirm.com
      mcherba@dmfirm.com

and

Walter A. Ketcham, Jr.
Florida Bar No. 156630
Grower, Ketcham, Eide, Telan & Meltz, P.A.
901 N. Lake Destiny Rd., Suite 450
Maitland, Florida 32751
Telephone: (407) 423-9545
Facsimile: (407) 425-7104
E-Mail: waketcham@growerketcham.com

**ATTORNEYS FOR PLAINTIFFS**

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that, on the thirtieth day of April, 2019, a true and accurate copy of the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

**Scott D. Baker**
E-Mail: sbaker@reedsmith.com
**James A. Daire**
E-Mail: jdaire@reedsmith.com
**Jonah D. Mitchell**
E-Mail: jmitchell@reedsmith.com
**William R. Overend**
E-Mail: woverend@reedsmith.com
**Christopher J. Pulido**
E-Mail: cpulido@reedsmith.com
Reed Smith, LLP
101 Second Street, Suite 1800
San Francisco, CA  94105-3659

**P. Alexander Quimby**
E-Mail: aquimby@bakerlaw.com
**Robert W. Thielhelm**
E-Mail: rthielhelm@bakerlaw.com
Baker & Hostetler, LLP
2300 SunTrust Center
200 South Orange Avenue
Post Office Box 112
Orlando, FL  32802

**ATTORNEYS FOR DEFENDANT**
**SIEMENS ENERGY, INC.**

_____/s/ Michael R. Cherba_____