**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MIDAMERICA C2L INCORPORATED
and SECURE ENERGY, INC.,

           Plaintiffs,

v.                                            Case No: 6:17-cv-171-Orl-40LRH

SIEMENS ENERGY, INC.,

           Defendant.
_____/

## **ORDER**

This cause is before the Court without oral argument on the parties' cross-motions for summary judgment (Docs. 146, 149), and the responses (Docs. 161, 163) and replies (Docs. 166, 167, 197, 199, 202) thereto. Upon consideration and review of the record as cited by the parties in their respective briefs, Defendant's motion (Doc. 146) is due to be granted in part, and Plaintiffs' motion (Doc. 149) is due to be denied.

**I.    BACKGROUND**

This lawsuit arises out of a contract dispute between Plaintiffs, Secure Energy, Inc., ("**Secure**") and its subsidiary, MidAmerica C2L, Inc. ("**C2L**"), (collectively, "**Plaintiffs**"), and Defendant, Siemens Energy, Inc. ("**Siemens**"). (Doc. 63, ¶¶ 5–8). On December 24, 2007, Secure and Siemens executed a contract (the "**2007 Contract**") requiring Siemens to sell certain equipment to Secure for use at a coal gasification plant located in Decatur, Illinois, where Secure planned to operate an industrial facility for the conversion of coal into natural gas. (Doc. 146-17; Doc. 169, p. 19, ¶¶ 1, 2). Secure paid Siemens approximately $40 million for the equipment. (Doc. 146-1, ¶ 7). On March 31,

2010, Secure and Siemens executed a contract stating that both parties had fulfilled their obligations to each other under the 2007 Contract ("**2010 Completion Agreement**"). (Doc. 146-14; Doc. 169, p. 19, ¶ 4). On the same day, Secure and Siemens entered into a License and Service Agreement ("**2010 License Agreement**") whereby Siemens granted Secure a license to use certain of its patented technologies for the development, construction, and operation of the Decatur, Illinois, coal gasification plant. (Doc. 146-14; Doc. 169, p. 20, ¶ 5).

On July 18, 2012, the 2010 License Agreement was terminated by mutual agreement, and on the same day, C2L and Siemens entered into a new License and Service Agreement ("**2012 License Agreement**") whereby Siemens granted C2L a license to use certain of its technologies for a coal gasification plant in West Paducah, Kentucky, where C2L would convert coal into methanol.[1] (Docs. 146-9, 146-10, 146-11, 146-12; Doc. 169, p. 20, ¶ 6). In both the 2010 and 2012 License Agreements, Siemens agreed to provide technology, engineering services, technical field assistance, training, and performance guarantees relating to the equipment conveyed in the 2007 Contract in exchange for a license fee. (Docs. 146-9, 146-10, 146-11, 146-12, 146-14). The 2007 Contract, as well as both License Agreements, guaranteed the equipment would meet certain performance standards.

---

[1] Secure's attempt to operate a coal gasification plant in Decatur, Illinois, did not come to fruition, and in July 2012, Secure's focus turned to the operation of a plant in West Paducah, Kentucky, to convert coal into methanol. (Doc. 63, ¶ 16; Docs. 146-9, 146-10, 146-11, 146-12; Doc. 169, p. 20, ¶ 6). Secure also attempted to employ coal gasification to manufacture gasoline and fertilizer. The Kentucky plant never materialized.

On February 2, 2016, Siemens informed Secure that Siemens would be closing the fuel gasification division of its business. (Doc. 169, p. 20, ¶ 8). On February 11, 2016, Secure demanded rescission of the 2007 Contract and return of all monies paid by Secure under the 2007 Contract. (Doc. 149-7, pp. 66–69; Doc. 169, p. 20, ¶ 9). In response, on February 17, 2016, Siemens informed Secure that Siemens will not violate any contractual obligation by its strategic exit from the coal gasification business. (Doc. 149-7, pp. 70–71; Doc. 169, p. 20, ¶ 10). The parties met on March 2, 2016. (Doc. 169, p. 20, ¶ 11). Thereafter, on March 18, 2019, Siemens offered to extend deadlines for completion of its performance tests as defined by the 2012 License Agreement from December 31, 2015, to December 31, 2021, if Plaintiffs paid the full remaining balance of the fee required under the 2012 License Agreement on or before July 1, 2016. (Doc. 149-7, pp. 72–73; Doc. 169, p. 20, ¶ 12). Plaintiffs rejected Siemens' offer on March 31, 2016. (Doc. 149-7, p. 74; Doc. 149-8, pp. 2–3; Doc. 169, p. 20, ¶ 13). On April 14, 2016, Siemens revoked its offer and demanded payment of a termination fee pursuant to the 2012 License Agreement. (Doc. 149-8, pp. 4–6). On April 19, 2019, Siemens invoiced C2L for the termination fee. (Doc. 169, p. 20, ¶ 15). In May 2018, Siemens closed its coal gasification division. (*Id.* ¶ 16).

Plaintiffs maintain that Siemens' notification to Plaintiffs in February 2016 that Siemens intended to close the fuel gasification of its business constitutes a repudiation of the 2012 License Agreement. (Doc. 63, ¶ 26; Doc. 169, p. 2). Plaintiffs further aver that Siemens became aware of material design defects in the equipment sold to Secure at some time between October 31, 2010, and September 2011 "based on the experience of a plant in China that used identical" equipment. (Doc. 63, ¶ 14). Plaintiffs argue that

the design defects in the equipment and technology prevented Secure from obtaining an Engineering, Procurement, and Construction ("**EPC**") contractor, which is a prerequisite to obtaining financing. The Complaint identifies the following design defects:

> a. The burners are improperly engineered and designed;
>
> b. The design of the raw gas (syngas) outlet and the black water outlet is defective because the level of the black water will rise above the raw syngas outlet and prevent syngas from exiting the gasifier, greatly increasing the risk of catastrophic explosion;
>
> c. The Basic Engineering Design Package ("**BEDP**") is defective and needs to be modified to make changes to multiple components, including, but not limited to, the coal handling system, the slag handling system, piping design, valve design, the syngas cleaning system, and the black water system; and
>
> d. Siemens' design of the Fuel Measurement System is defective and does not work.

(*Id.* ¶¶ 14, 33, 44, 62, 82)

Plaintiffs allege five Counts against Siemens:[2] Breach of Contract (Count I); Breach of Warranty of Fitness for Particular Purpose (Count II); Fraudulent Misrepresentation – Failure to Disclose Defects in Technology (Count IV); Rescission – Fraud (Count V); and Rescission – Lack of Consideration (Count VI). (*Id.*). Siemens counter-sued Plaintiffs for breach of contract arising from Plaintiffs' failure to render payment for the License and Service Agreement as required. (Doc. 75, pp. 20–21). Both parties moved for summary judgment. (Docs. 146, 149).

---

[2] On September 29, 2017, the Court dismissed Count III after it was voluntarily waived by Secure. (Doc. 74).

4

On June 7, 2019, the Court granted Siemens' *Daubert* Motion and excluded the testimony of Plaintiffs' expert, Dr. Herbert Kosstrin. (Doc. 188). In the absence of expert testimony from Dr. Kosstrin, the Court directed the parties to file supplemental briefing advising "the Court whether there are any remaining issues to be resolved relating to summary judgment or if this case should be disposed of." (Doc. 190). The parties subsequently filed their respective supplemental briefing. (Docs. 197, 199, 202).

## II. STANDARD OF REVIEW

A court may only "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. Fed. R. Civ. P. 56(c)(1)(A). "The burden then shifts to the non-moving party, who must go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). "The court need consider only the cited materials" when resolving a motion for summary judgment. Fed. R. Civ. P. 56(c)(3); *see also HRCC, LTD v. Hard Rock Café Int'l (USA), Inc.*, 703 F. App'x 814, 816–17 (11th Cir. 2017) (per curiam) (holding that a district court does not err by limiting its review to the evidence cited by the parties in their summary judgment briefs).[3]

---

[3] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine dispute of material fact exists, the Court must read the evidence and draw all factual inferences therefrom in the light most favorable to the non-moving party and must resolve any reasonable doubts in the non-movant's favor. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1136 (11th Cir. 2007). Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

### A. Defect-Dependent Claims (Counts II, IV, V, VI)

Four of Plaintiffs' claims[4] are defect-dependent because each claim relies on the same "material design defects" allegations concerning the gasification equipment. (Doc. 63, ¶¶ 33, 44, 62, 82). Specifically, each claim repeats the following allegations:

> a. The burners are improperly engineered and designed;
>
> b. The design of the raw gas (syngas) outlet and the black water outlet is defective because the level of the black water will rise above the raw syngas outlet and prevent syngas from exiting the gasifier, greatly increasing the risk of catastrophic explosion;
>
> c. The Basic Engineering Design Package ("**BEDP**") is defective and needs to be modified to make changes to multiple components, including, but not limited to, the coal handling system, the slag handling system, piping design, valve design, the syngas cleaning system, and the black water system; and

---

[4] Plaintiffs' claims for: breach of implied warranty (Count II); fraudulent misrepresentation (Count IV); rescission-fraud (Count V); and rescission-lack of consideration (Count VI).

> d. Siemens' design of the Fuel Measurement System is defective and does not work.

(*Id.* ¶¶ 14, 33, 44, 62, 82). Accordingly, the claims rely on the premise that the equipment Siemens provided is defective.

Proof of a design defect requires expert testimony. *Humphreys v. Gen. Motors. Corp.*, 839 F. Supp. 822, 826–27 (N.D. Fla. 1993), *aff'd.* 47 F.3d 430 (11th Cir. 1995). "[A plaintiff]'s failure to offer expert evidence forecloses any claim based on a design defect." *Cooper v. Old Williamsburg Candle Corp.*, 653 F. Supp. 2d 1220, 1225 (M.D. Fla. 2009) (quotation omitted). Courts frequently grant summary judgment against a plaintiff who fails to offer expert testimony to prove a design defect. *Alexander v. Danek Med. Inc.*, 37 F. Supp. 2d 1346, 1349 (M.D. Fla. 1999) (granting summary judgment in the absence of an expert because "[t]o prove a defective product, a defect must be proven by expert testimony."); *Savage v. Danek Med., Inc.*, 31 F. Supp. 2d 980, 983–85 (M.D. Fla. 1999), *aff'd.* 202 F.3d 288 (11th Cir. 1999) (granting summary judgment because "[a] defect must be proven by expert testimony"); *Humphreys*, 839 F. Supp. at 826 (granting summary judgment where the plaintiff had no expert to testify as to defect).

Plaintiffs sought to prove the material design defects through Dr. Kosstrin's testimony comparing Plaintiffs' equipment to the NCPP project in China. (Doc. 150-2, p. 4). However, in its *Daubert* Order, the Court excluded Dr. Kosstrin's opinions on this point. (Doc. 188). Dr. Kosstrin was the only expert offered on the alleged defects, and therefore, Secure has no expert who can testify at trial on the question of whether the equipment is defective. Accordingly, Plaintiffs' failure to offer expert evidence forecloses any claim based on a design defect and summary judgment is due to be granted. *See Chapman v. Proctor & Gamble Distrib., LLC*, 766 F.3d 1296, 1316 (11th Cir. 2014) (affirming summary

judgment where the plaintiff's only expert failed to meet the *Daubert* standards and the plaintiff had no other expert to testify).[5]

Furthermore, this is not a case where the defect is patent. Rather, Plaintiffs claim the equipment is defective because the NCPP plant equipment was defective. (Doc. 150-2, p. 4). Proving this hypothetical defect requires proving the sets of equipment are "substantially similar." *See Hessen v. Jaguar Cars*, 915 F.2d 641 (11th Cir. 1990). This entails a complicated, multi-step analysis which would require jurors to understand the operation of the gasification equipment and the chemical and combustion engineering principles affecting its use. Simply put, evaluating this relationship is "beyond the capacity of lay persons and requires expert testimony." *See Humphreys*, 839 F. Supp. at 826–27; *see also Small v. Amgen, Inc.*, 723 F. App'x 722, 726 (11th Cir. 2018) (per curiam) (affirming summary judgment and holding that "in complex cases where a jury is asked to assess complex medical or scientific issues outside the scope of a layperson's knowledge, an expert's testimony is required"). Therefore, the Court finds that the Counts

---

[5] Plaintiffs maintain that the inclusion of the words "material design defect" in the Complaint "does not transform counts for fraud into counts for products liability." (Doc. 202, p. 5). Plaintiffs go on to assert that because these claims are not product liability claims, they need not prove a design defect to survive. In other words, this would mean the allegation of a "material design defect"—language which forms the basis of the Complaint and is repeated five times within—is irrelevant to proving the claims. This argument is unpersuasive for two reasons: (i) it is devoid of legal support, and (ii) the claims explicitly and repeatedly rely on the premise that the equipment is defective. To the extent Plaintiffs attempt to assert non-plead theories of fraud that do not rely on the existence of a defect, they are foreclosed from doing so. (Docs. 137, 154). Plaintiffs are limited to claims set forth in the Complaint. *Wilcox v. Green Tree Serv. LLC*, No. 8:14-cv-1681-T-24TGW, 2015 WL 2092671, at *1 (M.D. Fla. May 5, 2015) (citing *Coon v. Ga. Pac. Corp.*, 829 F.2d 1563, 1569 (11th Cir. 1987)) ("[T]he Court can only consider the claims and theories of liability that Plaintiff actually pled in her complaint.").

require expert testimony to link the issues experienced at the NCPP plant to any alleged hypothetical defect in Plaintiffs' gasifiers.

Plaintiffs lack the expert testimony necessary to prove a "material design defect," and thus fail to meet the burden necessary to survive summary judgment on this issue. Accordingly, summary judgment is due to be granted for Siemens on Counts II, IV, V, and VI.

### B. Count I and Siemens' Counterclaim

Plaintiffs assert that Siemens is in breach of contract under a theory of anticipatory repudiation. Specifically, Plaintiffs claim that "[i]n making the strategic decision to exit the coal gasification market, Siemens has engaged in conduct that demonstrates to [Plaintiffs] that Siemens will not honor its obligations under" the 2012 License Agreement. (Doc. 63, ¶ 26). The Court requires supplemental briefing on this issue to be requested by a separate Order, and therefore, will defer ruling.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Siemens' Motion for Summary Judgment (Doc. 149) is **GRANTED in part** as follows:

    a. Siemens' Motion for Summary Judgment as to Count II, IV, V, and VI is **GRANTED**.

    b. The Court defers ruling on Siemens' Motion for Summary Judgment as to Count I and its Counterclaim.

2. Plaintiffs' Motion for Partial Summary Judgment (Doc. 146) is **DENIED**.

3. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant Siemens Energy, Inc., as to Counts II, IV, V, and VI.

**DONE AND ORDERED** in Orlando, Florida on July 26, 2019.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties