Exhibit A

**N.Y. Pattern Jury Instr.--Civil 4:1**

**New York Pattern Jury Instructions--Civil**  December 2018 Update
Committee on Pattern Jury Instructions Association of Supreme Court Justices

**Division 4. Contracts**

**A. Generally**

**1. Elements**

PJI 4:1 Contracts—Elements

As you have heard, the plaintiff AB seeks to recover damages for breach of contract. AB claims that (he, she, it) had a contract with the defendant CD requiring that CD [*state nature of defendant's alleged contractual promise(s)*], that AB did what (he, she, it) was required to do under the contract and that CD breached the contract by [*state nature of plaintiff's claim of breach*]. CD claims that [*state defendant's claims and the factual contentions on which they are based, such as:* (he, she, it) did not agree to the contract, there was no agreement on an essential term of the contract, (he, she, it) did what (his, her, its) was required to do under the contract, (he, she, it) was excused from performing, plaintiff did not do what (he, she, it) was required to do under the contract].

AB has the burden of proving, by a preponderance of the evidence, that (he, she, it) had a contract with CD requiring that CD [*state nature of defendant's alleged contractual promise(s)*], that AB did what (he, she, it) was required to do under the contract, that CD breached the contract by not doing what (he, she, it) was required to do under the contract and that AB sustained damages because of CD's breach.

If you decide that AB had a contract with CD [*state nature of defendant's alleged contractual promise(s)*], and that AB did what (he, she, it) was required to do under the contract, and that CD breached the contract by [*state nature of plaintiff's claim of breach*], you will find for AB [*state where appropriate*: on (his, her, its) breach of contract claim] and you will go on to consider AB's damages. If you decide that [*state as appropriate*: AB did not have a contract with CD, AB did not do what (he, she, it) was required to do under the contract, CD did not breach the contract, or CD's performance was excused], you will find for CD [*state where appropriate*: on AB's breach of contract claim] [*state where appropriate*: and you will report to the court].

**Comment**

**Caveat 1:** The pattern charge addresses only the basic elements of a common-law breach of contract cause of action. As is discussed in the Comment, infra, some cases involve one or more sub-issues, such as whether there was a meeting of the minds on particular material terms or whether an offer was made, which are not addressed in the charge.

**Caveat 2:** The charge and comment relate to common-law breach of contract claims. Breach of contract claims that do not arise from the common law, such as those covered by the New York Uniform Commercial Code, may be governed by somewhat different rules and may require application of relevant statutes.

Based on Palmetto Partners, L.P. v AJW Qualified Partners, LLC, 83 AD3d 804, 921 NYS2d 260 (2d Dept 2011); Harris v Seward Park Housing Corp., 79 AD3d 425, 913 NYS2d 161 (1st Dept 2010); JP Morgan Chase v J.H. Elec. of New York, Inc., 69 AD3d 802, 893 NYS2d 237 (2d Dept 2010); Clearmont Property, LLC v Eisner, 58 AD3d 1052, 872 NYS2d 725 (3d

Dept 2009); see Kowalchuk v Stroup, 61 AD3d 118, 873 NYS2d 43 (1st Dept 2009) (plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound in order to establish an enforceable agreement).

## I. Elements of Breach of Contract

The elements of a cause of action for breach of contract are (1) formation of a contract between plaintiff and defendant, (2) performance by plaintiff, (3) defendant's failure to perform, (4) resulting damage, Palmetto Partners, L.P. v AJW Qualified Partners, LLC, 83 AD3d 804, 921 NYS2d 260 (2d Dept 2011); JP Morgan Chase v J.H. Elec. of New York, Inc., 69 AD3d 802, 893 NYS2d 237 (2d Dept 2010); Furia v Furia, 116 AD2d 694, 498 NYS2d 12 (2d Dept 1986); see Dee v Rakower, 112 AD3d 204, 976 NYS2d 470 (2d Dept 2013); Ascoli v Lynch, 2 AD3d 553, 769 NYS2d 567 (2d Dept 2003) (citing PJI); see also Jefferson v Onondaga Development, LLC, 151 AD3d 1793, 59 NYS3d 203 (4th Dept 2017), amended on reargument, 162 AD3d 1602, 74 NYS3d 923 (4th Dept 2018) (performance by plaintiff); Krigsfeld v Feldman, 115 AD3d 712, 982 NYS2d 487 (2d Dept 2014) (citing PJI). To plead a breach of contract claim, the claimant must allege the provisions of the contract upon which the claim is based, Sud v Sud, 211 AD2d 423, 621 NYS2d 37 (1st Dept 1995); Atkinson v Mobil Oil Corp., 205 AD2d 719, 614 NYS2d 36 (2d Dept 1994). There is no requirement, however, that a breach of contract action be pleaded with the same particularity as a fraud claim, Vandashield Ltd. v Isaacson, 146 AD3d 552, 46 NYS3d 18 (1st Dept 2017). The elements of a cause of action for breach of contract, as well as the defenses and other issues that arise in common-law breach of contract cases, are discussed in detail, infra.

## II. Contract Formation

The requirements for the formation of a contract are (1) at least two parties with legal capacity to contract, (2) mutual assent to the terms of the contract, and (3) consideration, see Restatement, Second, Contracts §§ 9, 12, 23; 1 Williston, Contracts (4th Ed) 200-09, § 3:2; 2 Williston, Contracts (4th Ed) 15-82, §§ 6:3- 6:10; see also UCC 1-201 (3), (11). In considering whether a binding contract exists, the first step is to determine whether there is a sufficiently definite offer such that its unequivocal acceptance will give rise to an enforceable contract, Kolchins v Evolution Markets, Inc., 31 NY3d 100, 73 NYS3d 519, 96 NE3d 784 (2018); Express Industries and Terminal Corp. v New York State Dept. of Transp., 93 NY2d 584, 693 NYS2d 857, 715 NE2d 1050 (1999). Intent to contract is determined objectively; the manifestation of a party's intention rather than his or her actual, real or secret intent is controlling, Stonehill Capital Management, LLC v Bank of the West, 28 NY3d 439, 45 NYS3d 864, 68 NE3d 683 (2016); Brown Bros. Elec. Contractors, Inc. v Beam Const. Corp., 41 NY2d 397, 393 NYS2d 350, 361 NE2d 999 (1977); Ahern v South Buffalo Ry. Co., 303 NY 545, 104 NE2d 898 (1952), aff'd, 344 US 367, 73 SCt 340 (1953); Porter v Commercial Casualty Ins. Co., 292 NY 176, 54 NE2d 353 (1944); State Bank of Albany v Hickey, 29 AD2d 993, 288 NYS2d 980 (3d Dept 1968), aff'd, 23 NY2d 910, 298 NYS2d 312, 246 NE2d 164 (1969); Ahlstrom Machinery Inc. v Associated Airfreight Inc., 272 AD2d 739, 708 NYS2d 497 (3d Dept 2000). No single act, phrase or other expression is determinative; instead the court should look to the totality of all of these factors, given the attendant circumstances, the situation of the parties, and the objectives they were striving to attain, Kolchins v Evolution Markets, Inc., supra; Stonehill Capital Management, LLC v Bank of the West, supra; Brown Bros. Elec. Contractors, Inc. v Beam Const. Corp. supra. With respect to auctions, the general rule is that a seller's acceptance of an auction bid forms a binding contract, unless the bid is contingent on future conduct, Stonehill Capital Management, LLC v Bank of the West, supra; New York v Union News Co., 222 NY 263, 118 NE 635 (1918).

A contract may consist of separate writings or documents if the writings make it clear that they are to be read in conjunction with other writings to determine the intent of the parties, Perl v Smith Barney Inc., 230 AD2d 664, 646 NYS2d 678 (1st Dept 1996). A binding contract may also be formed by the oral acceptance of a written contract, Tymon v Linoki, 16 NY2d 293, 266 NYS2d 357, 213 NE2d 661 (1965); Mor v Fastow, 32 AD3d 419, 819 NYS2d 560 (2d Dept 2006); Morton's of Chicago/Great Neck LLC v Crab House, Inc., 297 AD2d 335, 746 NYS2d 317 (2d Dept 2002).

## A. Mutual Assent

Mutual assent is often referred to as "a meeting of the minds" of the parties on all essential terms of the contract, Express Industries and Terminal Corp. v New York State Dept. of Transp., 93 NY2d 584, 693 NYS2d 857, 715 NE2d 1050 (1999);

Farago v Burke, 262 NY 229, 186 NE 683 (1933); Grossman v Schenker, 206 NY 466, 100 NE 39 (1912); Langer v Dadabhoy, 44 AD3d 425, 843 NYS2d 262 (1st Dept 2007). The manifestation of mutual assent must be sufficiently definite to assure that the parties are truly in agreement with respect to all material terms, Express Industries and Terminal Corp. v New York State Dept. of Transp., supra; Aiello v Burns Intern. Sec. Services Corp., 110 AD3d 234, 973 NYS2d 88 (1st Dept 2013); Thome v Alexander & Louisa Calder Foundation, 70 AD3d 88, 890 NYS2d 16 (1st Dept 2009); see Dee v Rakower, 112 AD3d 204, 976 NYS2d 470 (2d Dept 2013).

The manifestation of assent may take the form of written or spoken words (express contract) or conduct manifesting an agreement (contract implied-in-fact), Miller v Schloss, 218 NY 400, 113 NE 337 (1916); John William Costello Associates, Inc. v Standard Metals Corp., 99 AD2d 227, 472 NYS2d 325 (1st Dept 1984). As a matter of law, there is no contract when it is clear that the words relied upon as an offer were written in jest, Graves v Northern N.Y. Pub. Co., 260 App Div 900, 22 NYS2d 537 (4th Dept 1940). Further, a forged signature renders a contract void ab initio, because there can be no meeting of the minds when a forgery has been perpetrated, Orlosky v Empire Sec. Systems, Inc., 230 AD2d 401, 657 NYS2d 840 (3d Dept 1997); see Kwang Hee Lee v ADJMI 936 Realty Associates, 46 AD3d 629, 847 NYS2d 234 (2d Dept 2007).

Ordinarily, whether writings exchanged by the parties constitute a contract is a question of law for the court, New Hampshire Ins. Co. v Wellesley Capital Partners, Inc., 200 AD2d 143, 612 NYS2d 407 (1st Dept 1994). However, when a finding of whether a contract actually exists is dependent on facts from which differing inferences may be drawn, a question of fact arises, Kolchins v Evolution Markets, Inc., 31 NY3d 100, 73 NYS3d 519, 96 NE3d 784 (2018); Brown Bros. Elec. Contractors, Inc. v Beam Const. Corp., 41 NY2d 397, 393 NYS2d 350, 361 NE2d 999 (1977); Daughters of Sarah Nursing Home Co., Inc. v Frisch, 170 AD2d 752, 565 NYS2d 532 (3d Dept 1991); Russell v Raynes Associates Ltd. Partnership, 166 AD2d 6, 569 NYS2d 409 (1st Dept 1991); see Robison v Sweeney, 301 AD2d 815, 753 NYS2d 583 (3d Dept 2003); Lehrer McGovern Bovis, Inc. v New York Yankees, 207 AD2d 256, 615 NYS2d 31 (1st Dept 1994). Where there is a question of fact as to whether one of the parties intended to be bound by the alleged contract, the pattern charge should be augmented by the following supplemental instruction:

## PJI 4:1.1 Contracts—Elements [Supplemental Instruction]

AB claims that CD [*state words or conduct on which plaintiff relies*] and that those (words, conduct) show that CD intended to be obligated by (his, her, its) (words, conduct). CD claims that (he, she, it) did not [*state as appropriate:* say those words, engage in that conduct, intend to be obligated by (his, her, its) (words, conduct)].

The intent of the parties is determined by considering their relationship, what they said and what they did and all of the surrounding circumstances. A person's secret intent has no bearing; only the intent indicated by (his, her) (words, conduct) may be considered.

If you decide that CD did not [*state words or conduct on which plaintiff relies*] or that CD's (statements, actions) do not show an intention to be obligated by (his, her, its) (words, conduct), you will find for CD [*state as appropriate*: on this issue] and report your verdict to the court. If you decide that CD did [*state words or conduct on which plaintiff relies*] and that CD's (statements, actions) show an intention to be obligated by (his, her, its) (words, conduct), you will find for AB [*state as appropriate*: on this issue] and you will go on to consider [*set forth next issue to be considered*].

## B. Unilateral and Bilateral Contracts/Conduct as Acceptance

If the proposal is for a bilateral contract, a reciprocal promise is required and an act in response is not sufficient, Cortland Asbestos Products, Inc. v J. & K. Plumbing & Heating Co., 33 AD2d 11, 304 NYS2d 694 (3d Dept 1969). It is essential in any bilateral contract that the fact of acceptance be communicated to the offeror, Gyabaah v Rivlab Transp. Corp., 102 AD3d 451, 958 NYS2d 109 (1st Dept 2013), aff'd, 22 NY3d 1018, 981 NYS2d 349, 4 NE3d 359 (2013); Agricultural Ins. Co. v Matthews, 301 AD2d 257, 749 NYS2d 533 (1st Dept 2002). The promises of each party to a bilateral contract must be supported by consideration and cannot be illusory, Curtis Properties Corp. v Greif Companies, 212 AD2d 259, 628 NYS2d 628 (1st Dept 1995). The consideration for a bilateral contract in which promises are exchanged consists of the acts mutually promised, see Kowalchuk v Stroup, 61 AD3d 118, 873 NYS2d 43 (1st Dept 2009).

A contract consists of an offer by one party and an acceptance by the other. Acceptance of an offer is effective upon dispatch, and the contract comes into being at the time of its mailing, Morton's of Chicago/Great Neck LLC v Crab House, Inc., 297 AD2d 335, 746 NYS2d 317 (2d Dept 2002); Buchbinder Tunick & Co. v Manhattan Nat. Life Ins. Co., 219 AD2d 463, 631 NYS2d 148 (1st Dept 1995). Absent a provision to the contrary, a contract does not need to be physically delivered in order to be binding, Morgan Services, Inc. v Abrams, 21 AD3d 1284, 801 NYS2d 457 (4th Dept 2005).

An acceptance must comply with the terms of the offer, Woodward v Tan Holding Corp., 32 AD3d 467, 820 NYS2d 126 (2d Dept 2006), and be clear, unambiguous and unequivocal, Kowalchuk v Stroup, 61 AD3d 118, 873 NYS2d 43 (1st Dept 2009); King v King, 208 AD2d 1143, 617 NYS2d 593 (3d Dept 1994). If the acceptance is qualified with conditions, it is treated as a rejection and a counteroffer, Solartech Renewables, LLC v Vitti, supra; Roer v Cross County Medical Center Corp., 83 AD2d 861, 441 NYS2d 844 (2d Dept 1981), which the original offeror is free to accept or reject, see Woodward v Tan Holding Corp., supra.

A unilateral contract is not binding until it is acted upon by the offeree, Papa v New York Telephone Co., 72 NY2d 879, 532 NYS2d 359, 528 NE2d 512 (1988); see Kentucky Fried Chicken of Middletown, Inc. v Rockland Lease Funding Corp., 173 AD2d 1066, 570 NYS2d 404 (3d Dept 1991). An offer that made acceptance conditional upon publication and allowed for unilateral cancellation is a mere offer to make a unilateral contract, Papa v New York Telephone Co., supra. The fact that the offer was made on preprinted form does not transform it into a bilateral contract, id.

Under GOL § 5-1109, a signed written offer stating that it is irrevocable during a specified period or until a time fixed is not rendered revocable because of the absence of consideration for the assurance of irrevocability. Where the writing states that the offer is irrevocable but does not state a period of irrevocability, the irrevocability period is deemed to be a "reasonable" time, id; see Parcside Equity, LLC v Freedman, 96 AD3d 635, 947 NYS2d 461 (1st Dept 2012).

An End User License Agreement contained in a computer software program is a binding contract where the terms are prominently displayed on the computer screen, the user has the opportunity to view the agreement terms and the user accepts the terms by clicking on the "I agree" icon before downloading the software, Moore v Microsoft Corp., 293 AD2d 587, 741 NYS2d 91 (2d Dept 2002); see Jesmer v Retail Magic, Inc., 55 AD3d 171, 863 NYS2d 737 (2d Dept 2008). Similarly, where computers and software products are shipped with the seller's Standard Terms and Conditions, stating that the buyer accepts the Terms and Conditions by keeping the computer system beyond 30 days after delivery, the contract is formed by the buyer's retention of the merchandise for more than 30 days, Brower v Gateway 2000, Inc., 246 AD2d 246, 676 NYS2d 569 (1st Dept 1998); see also Ballas v Virgin Media, Inc., 60 AD3d 712, 875 NYS2d 523 (2d Dept 2009) (no contract for cellular phone services until subscribers chose a particular service plan and activated their phones.)

Where a credit card issuer sends the credit card agreement to the cardholder, use of the card by the cardholder after receipt of the agreement constitutes consent to its terms, Matter of FIA Card Services, N.A. (Polley), 68 AD3d 1759, 890 NYS2d 859 (4th Dept 2009); Tsadilas v Providian Nat. Bank, 13 AD3d 190, 786 NYS2d 478 (1st Dept 2004).

The rules of a contest constitute an offer, and a participant's entry into the contest constitutes an acceptance of that offer, including all of its terms and conditions, Sargent v New York Daily News, L.P., 42 AD3d 491, 840 NYS2d 101 (2d Dept 2007); see also Johnson v New York Daily News, 97 AD2d 458, 467 NYS2d 665 (2d Dept 1983), aff'd, 61 NY2d 839, 473 NYS2d 975, 462 NE2d 152 (1984).

An advertisement for the sale of goods generally does not constitute an offer, unless it is plain and clear enough to establish the intended terms of the proposed contract, Amalfitano v NBTY Inc., 128 AD3d 743, 9 NYS3d 352 (2d Dept 2015); Thome v Alexander & Louisa Calder Foundation, 70 AD3d 88, 890 NYS2d 16 (1st Dept 2009). Thus, an online promotion that promised website visitors coupons if they provided their email addresses constituted an "invitation for offers" rather than an "offer" in light of a disclaimer stating that the supply of coupons was limited, Amalfitano v NBTY Inc., supra.

For transactions in goods governed by Article 2 of the Uniform Commercial Code, the effect of an acceptance with terms in addition to or different from the offer is determined under section 2-207, see Marlene Industries Corp. v Carnac Textiles, Inc., 45 NY2d 327, 408 NYS2d 410, 380 NE2d 239 (1978).

**C. Consideration**

Consideration is some right, interest, profit or benefit accruing to one party or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other, Hamer v Sidway, 124 NY 538, 27 NE 256 (1891); see Apfel v Prudential-Bache Securities Inc., 81 NY2d 470, 600 NYS2d 433, 616 NE2d 1095 (1993); Spaulding v Benenati, 57 NY2d 418, 456 NYS2d 733, 442 NE2d 1244 (1982); Dee v Rakower, 112 AD3d 204, 976 NYS2d 470 (2d Dept 2013); Hollander v Lipman, 65 AD3d 1086, 885 NYS2d 354 (2d Dept 2009); Halliwell v Gordon, 61 AD3d 932, 878 NYS2d 137 (2d Dept 2009); Restatement, Second, Contracts § 79. Where the claimed consideration is a decision by plaintiff to refrain from hiring a particular third-party vendor and hiring a vendor recommended by defendant instead, it must be alleged that the purported detriment was actually required by defendant as a condition to defendant's performance, Vista Food Exchange, Inc. v BenefitMall, 138 AD3d 535, 31 NYS3d 9 (1st Dept 2016). Furthermore, in such a situation, defendant must have received a direct benefit, monetary or otherwise, as a result of plaintiff's forbearance, and a payment to defendant from the recommended third party is too remote to constitute consideration, id.

The adequacy of the consideration is not a proper subject for judicial scrutiny absent fraud or unconscionability, Apfel v Prudential-Bache Securities Inc., 81 NY2d 470, 600 NYS2d 433, 442 NE2d 1244 (1982); Von Bing v Mangione, 309 AD2d 1038, 766 NYS2d 131 (3d Dept 2003); see Daniel Goldreyer, Ltd. v Van de Wetering, 217 AD2d 434, 630 NYS2d 18 (1st Dept 1995). It is enough that something of "real value in the eye of the law" was exchanged, Mencher v Weiss, 306 NY 1, 114 NE2d 177 (1953); Wood Realty Trust v N. Storonske Cooperage Co., Inc., 229 AD2d 821, 646 NYS2d 410 (3d Dept 1996).

Parties to a contract may make a bargain as they see fit even if the consideration exchanged is "grossly unequal or of dubious value," Apfel v Prudential-Bache Securities Inc., 81 NY2d 470, 600 NYS2d 433, 616 NE2d 1095 (1993), as long as the promised consideration is acceptable to the promisee, Weiner v McGraw-Hill, Inc., 57 NY2d 458, 457 NYS2d 193, 443 NE2d 441 (1982); Hollander v Lipman, 65 AD3d 1086, 885 NYS2d 354 (2d Dept 2009); Goldston v Bandwidth Technology Corp., 52 AD3d 360, 859 NYS2d 651 (1st Dept 2008). The adequacy of consideration is a matter for the parties rather than the court to determine, Mencher v Weiss, 306 NY 1, 114 NE2d 177 (1953); Rubin v Dairymen's League Co-op. Ass'n, 284 NY 32, 29 NE2d 458 (1940); Restatement, Second, Torts § 911 comment i. The adequacy of the consideration, however, is relevant to the issue of unconscionability, which is a question for the court rather than the jury, Blake v Biscardi, 62 AD2d 975, 403 NYS2d 544 (2d Dept 1978). For a discussion of the principles governing unconscionability, see I., infra.

Whether in a given case the claimed consideration is legally sufficient (as distinguished from factually adequate) has been treated as a question of law, see McRay v Citrin, 270 AD2d 191, 706 NYS2d 27 (1st Dept 2000); Zellner v Stephen D. Conrad, M.D., P.C., 183 AD2d 250, 589 NYS2d 903 (2d Dept 1992); Kastil v Carro, 145 AD2d 388, 536 NYS2d 63 (1st Dept 1988). There is, therefore, no need to define consideration for the jury, or submit to the jury any question concerning consideration except whether in fact the claimed benefit was given or the claimed detriment was suffered.

The consideration for a bilateral contract, in which promises are exchanged, is the acts that are mutually promised, Kowalchuk v Stroup, 61 AD3d 118, 873 NYS2d 43 (1st Dept 2009). When the contract is bilateral, the contract is lacking in consideration unless both parties are bound, so that either can sue the other for breach, Oscar Schlegel Mfg. Co. v Peter Cooper's Glue Factory, 231 NY 459, 132 NE 148 (1921); Dorman v Cohen, 66 AD2d 411, 413 NYS2d 377 (1st Dept 1979). When the contract is unilateral, the promisee is not bound at inception to perform, but when he or she does perform, that performance constitutes consideration for the promise and makes it obligatory, Grossman v Schenker, 206 NY 466, 100 NE 39 (1912); Bisbing v Sterling Precision Corp., 34 AD2d 427, 312 NYS2d 305 (3d Dept 1970).

While the discontinuance of a pending action, execution of a release, or a promise to forego future litigation can constitute valid consideration, Wood Realty Trust v N. Storonske Cooperage Co., Inc., 229 AD2d 821, 646 NYS2d 410 (3d Dept 1996); Williamsville Cent. School Dist. v New York State Urban Development Corp., 142 AD2d 981, 530 NYS2d 402 (4th Dept 1988); see All Terrain Properties, Inc. v Hoy, 265 AD2d 87, 705 NYS2d 350 (1st Dept 2000), the mere fact that plaintiff did not bring suit for a period of time is insufficient, absent evidence that plaintiff's forbearance was given in exchange for defendant's promise to do some act or provide some benefit, Wood Realty Trust v N. Storonske Cooperage Co., supra. The settlement of a doubtful claim constitutes valid consideration for a promise to pay a stipulated sum, Admae Enterprises, Ltd. v Smith, 222 AD2d 471, 634 NYS2d 750 (2d Dept 1995); see Jemzura v Jemzura, 36 NY2d 496, 369 NYS2d 400, 330 NE2d 414 (1975); Nolfi Masonry Corp. v Lasker-Goldman Corp., 160 AD2d 186, 553 NYS2d 156 (1st Dept 1990).

The fact that sellers may not have had a property right in what they sold does not, by itself, render the contract void for lack

of consideration, Apfel v Prudential-Bache Securities Inc., 81 NY2d 470, 600 NYS2d 433, 616 NE2d 1095 (1993); see Wahl v Barnum, 116 NY 87, 22 NE 280 (1889) (relinquishment of disputed claim valid consideration even if claim ultimately invalid). Novelty is not required for an idea to constitute consideration so long as the idea has value, Apfel v Prudential-Bache Securities Inc., supra.

### 1. Past Consideration and Pre-existing Legal Duties

A promise to comply with a pre-existing legal duty is not legally sufficient consideration, Nam Tai Electronics, Inc. v UBS PaineWebber Inc., 46 AD3d 486, 850 NYS2d 11 (1st Dept 2007); Von Bing v Mangione, 309 AD2d 1038, 766 NYS2d 131 (3d Dept 2003); Fafoutis v Lyons, 149 AD2d 565, 540 NYS2d 20 (2d Dept 1989). Likewise, subject to General Obligations Law § 5-1105, past consideration generally is not adequate consideration because the detriment of the past consideration did not induce the promise and therefore cannot be said to have been bargained for in exchange for the promise, Korff v Corbett, 155 AD3d 405, 65 NYS3d 498 (1st Dept 2017); Gutman v Gutman, 31 AD3d 709, 819 NYS2d 771 (2d Dept 2006); Umscheid v Simnacher, 106 AD2d 380, 482 NYS2d 295 (2d Dept 1984). However, an employee's performance of his or her job constitutes consideration that relates back to the making of an earlier promise by the employer to pay a bonus, rendering that promise obligatory, Ryan v Kellogg Partners Institutional Services, 19 NY3d 1, 945 NYS2d 593, 968 NE2d 947 (2012).

General Obligations Law § 5-1105 permits enforcement of contracts based on past consideration so long as the consideration is adequately expressed in the writing, is proved to have been given, and would have been valid consideration but for the time when it was given, see Korff v Corbett, 155 AD3d 405, 65 NYS3d 498 (1st Dept 2017) (explicitly recited); Gutman v Gutman, 31 AD3d 709, 819 NYS2d 771 (2d Dept 2006); Gruber v McCarthy, 289 AD2d 915, 735 NYS2d 638 (3d Dept 2001). Where a contract is based solely on past consideration, GOL § 5-1105 bars a party from presenting evidence of consideration not stated in the writing, Korff v Corbett, supra; Pfeiff v Kelly, 213 AD2d 916, 623 NYS2d 965 (3d Dept 1995); see Clark v Bank of New York, 185 AD2d 138, 585 NYS2d 749 (1st Dept 1992); Umscheid v Simnacher, 106 AD2d 380, 482 NYS2d 295 (2d Dept 1984).

### D. Contracts Implied-in-Fact

### 1. In General

An implied-in-fact contract arises from the inference of agreement that may be drawn from the facts and circumstances of the case and the intention of the parties as indicated by their conduct, Matter of Boice, 226 AD2d 908, 640 NYS2d 681 (3d Dept 1996); see Jemzura v Jemzura, 36 NY2d 496, 369 NYS2d 400, 330 NE2d 414 (1975); Anesthesia Group of Albany, P.C. v State, 309 AD2d 1130, 766 NYS2d 448 (3d Dept 2003). An agreement by conduct does not differ from an express agreement except in the manner by which its existence is established, Matter of Boice, supra. An implied-in-fact contract arises from conduct rather than assurances, Parsa v State, 64 NY2d 143, 485 NYS2d 27, 474 NE2d 235 (1984); Zimmer v Brookhaven, 247 AD2d 109, 678 NYS2d 377 (2d Dept 1998). A party's assent may be implied when the party "has conducted himself in such a manner that his assent may fairly be inferred," Miller v Schloss, 218 NY 400, 113 NE 337 (1916); see S. Kornblum Metals Co. v Intsel Corp., 38 NY2d 376, 379 NYS2d 826, 342 NE2d 591 (1976).

Contracts implied in fact must be distinguished from contracts implied-in-law (quasi contracts), which are not contracts at all but obligations imposed by law through the legal fiction of a contract, Bradkin v Leverton, 26 NY2d 192, 309 NYS2d 192, 257 NE2d 643 (1970); Miller v Schloss, 218 NY 400, 113 NE 337 (1916); Super v Abdelazim, 139 AD2d 863, 527 NYS2d 591 (3d Dept 1988). For charges and comments on contracts implied-in-law, see PJI 4:2, PJI 4:3, PJI 4:4.

A contract cannot be implied in fact where there is an unexpired express contract covering the subject matter, SAA-A, Inc. v Morgan Stanley Dean Witter & Co., 281 AD2d 201, 721 NYS2d 640 (1st Dept 2001); Wilmoth v Sandor, 259 AD2d 252, 686 NYS2d 388 (1st Dept 1999); Unisys Corp. v Hercules Inc., 224 AD2d 365, 638 NYS2d 461 (1st Dept 1996); Foss v American Tel. and Tel. Co., 199 AD2d 668, 605 NYS2d 143 (3d Dept 1993); Watts v Columbia Artists Management Inc., 188 AD2d 799, 591 NYS2d 234 (3d Dept 1992) (rule inapplicable where express contract expired), or where an express contract would be contrary to law, Carmine v Murphy, 285 NY 413, 35 NE2d 19 (1941); Scotto v Mei, 219 AD2d 181, 642 NYS2d 863 (1st Dept 1996), or where the facts are inconsistent with its existence, or where an implied contract would be

inconsistent with the declaration of the party to be charged or contrary to the parties' understanding, Miller v Schloss, 218 NY 400, 113 NE 337 (1916); Nixon Gear and Mach. Co., Inc. v Nixon Gear Inc., 86 AD2d 746, 447 NYS2d 779 (4th Dept 1982), or where the parties intended to be bound only by a formal written agreement, Valentino v Davis, 270 AD2d 635, 703 NYS2d 609 (3d Dept 2000). Whether an implied-in-fact contract was established and, if so, the extent of its terms involve factual issues regarding the intent of the parties and the surrounding circumstances, see Moak v Raynor, 28 AD3d 900, 814 NYS2d 289 (3d Dept 2006).

## 2. Implied-in-Fact Contracts for Services

A party asserting a claim for breach of an implied contract to pay for personal services generally must prove that the services were performed and accepted with the understanding on both sides that there was an obligation to pay, Sivin-Tobin Associates, LLC v Akin Gump Strauss Hauer & Feld LLP, 68 AD3d 616, 892 NYS2d 71 (1st Dept 2009). Thus, acceptance of services rendered voluntarily creates no implied obligation to pay for them, Estate of Argersinger, 168 AD2d 757, 564 NYS2d 214 (3d Dept 1990); Super v Abdelazim, 139 AD2d 863, 527 NYS2d 591 (3d Dept 1988), even where they were rendered with the hope of compensation, Arden v Freydberg, 9 NY2d 393, 214 NYS2d 400, 174 NE2d 495 (1961), or rendered as part of the usual duties of a corporate director, see Fox v Arctic Placer Min. & Mill. Co., 229 NY 124, 128 NE 154 (1920), or at the request of someone other than the recipient of the services, unless the recipient has a relationship to the person requesting the services that imports a legal obligation on the requester's part to pay for them, Shapira v United Medical Service, Inc., 15 NY2d 200, 257 NYS2d 150, 205 NE2d 293 (1965); McGuire v Hughes, 207 NY 516, 101 NE 460 (1913); Crouse Irving Hospital v Syracuse, 283 App Div 394, 128 NYS2d 433 (4th Dept 1954), aff'd, 308 NY 844, 126 NE2d 179 (1955); Tender Loving Care Agency, Inc. v Hladun, 111 AD2d 162, 488 NYS2d 790 (2d Dept 1985); Homemakers, Inc., of Long Island v Williams, 100 AD2d 505, 472 NYS2d 711 (2d Dept 1984). However, when services are rendered at the request of the recipient or under circumstances from which it can fairly be inferred that both parties expected that the services would be compensated, there is a contract implied-in-fact to pay for them, Fox v Arctic Placer Min. & Mill. Co., supra; see Shapira v United Medical Service, Inc., supra.

While ordinarily a promise to pay for services rendered will not be implied where the services are rendered by one family member for another, an implied contract will be found when the services are extensive and not those ordinarily performed without expectation of payment, Short v Short, 142 AD2d 947, 531 NYS2d 155 (4th Dept 1988). The presumption that services for a family member were performed out of affection and without expectation of payment must be rebutted by clear and convincing evidence, Matter of Estate of Barr, 252 AD2d 875, 676 NYS2d 323 (3d Dept 1998); see Matter of Adams' Estate, 1 AD2d 259, 149 NYS2d 849 (4th Dept 1956), aff'd, 2 NY2d 796, 159 NYS2d 698, 140 NE2d 549 (1957).

## 3. Other Implied-in-Fact Contracts

An implied-in-fact contract will not be found as against a governmental entity where no official had the authority to bind the entity, by words or conduct, to enter into a contract, Zimmer v Brookhaven, 247 AD2d 109, 678 NYS2d 377 (2d Dept 1998). Thus, a town councilman's attempt to establish an implied contract for reimbursement from the Town for legal fees he incurred in defending against a criminal prosecution was unsuccessful, id.

Courts have spoken of an "implied contract" between an educational institution and its student, promising that if the student complies with the terms prescribed by the institution, the student will obtain the degree sought, Carr v St. John's University, New York, 17 AD2d 632, 231 NYS2d 410 (2d Dept 1962), aff'd, 12 NY2d 802, 235 NYS2d 834, 187 NE2d 18 (1962); Downey v Schneider, 23 AD3d 514, 806 NYS2d 657 (2d Dept 2005); see Olsson v Board of Higher Ed., 49 NY2d 408, 426 NYS2d 248, 402 NE2d 1150 (1980). Where an education institution's decision to deny a student a degree is based purely on financial considerations, the student may seek redress in a breach of contract action, see Eidlisz v New York University, 15 NY3d 730, 906 NYS2d 520, 932 NE2d 876 (2010); Kickertz v New York University, 110 AD3d 268, 971 NYS2d 271 (1st Dept 2013). However, as to academic decisions, the courts have "exercised the utmost restraint applying traditional legal rules to disputes within the academic community," Olsson v Board of Higher Ed., supra; Flomenbaum v New York University, 71 AD3d 80, 890 NYS2d 493 (1st Dept 2009), aff'd, 14 NY3d 901, 903 NYS2d 339, 929 NE2d 403 (2010); Downey v Schneider, supra. As a result, in such cases, judicial review is limited to "whether the institution has acted in good faith or its action was arbitrary or irrational," Tedeschi v Wagner College, 49 NY2d 652, 427 NYS2d 760, 404 NE2d 1302 (1980); see Olsson v Board of Higher Ed., supra; Carr v St. John's University, New York, supra; Flomenbaum v New York

University, supra. As to nonacademic disputes between an educational institution and its student, the courts have looked more closely at the actions of the institution, and where the institution has adopted a rule or guideline establishing the procedure to be followed in relation to suspension or expulsion, that procedure must be followed, Tedeschi v Wagner College, supra. Also, where the institution fails to provide any educational services or specific promised services, a contract remedy might be available, Paladino v Adelphi University, 89 AD2d 85, 454 NYS2d 868 (2d Dept 1982); see Bader v Siegel, 238 AD2d 272, 657 NYS2d 28 (1st Dept 1997).

## E. Indefinite/Incomplete Contracts

A court cannot enforce a contract unless it is able to determine what the parties actually agreed to, 166 Mamaroneck Ave. Corp. v 151 East Post Road Corp., 78 NY2d 88, 571 NYS2d 686, 575 NE2d 104 (1991); Aiello v Burns Intern. Sec. Services Corp., 110 AD3d 234, 973 NYS2d 88 (1st Dept 2013). If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract, Kolchins v Evolution Markets, Inc., 31 NY3d 100, 73 NYS3d 519, 96 NE3d 784 (2018); Cobble Hill Nursing Home, Inc. v Henry and Warren Corp., 74 NY2d 475, 548 NYS2d 920, 548 NE2d 203 (1989); Joseph Martin, Jr., Delicatessen, Inc. v Schumacher, 52 NY2d 105, 436 NYS2d 247, 417 NE2d 541 (1981).

The definiteness requirement, however, has not been applied rigidly, 166 Mamaroneck Ave. Corp. v 151 East Post Road Corp., 78 NY2d 88, 571 NYS2d 686, 575 NE2d 104 (1991). In determining whether a contract is sufficiently definite to be enforceable, courts apply a flexible standard, varying with the subject of the agreement, its complexity, the purpose for which the contract was made, the circumstances under which it was made and the relation of the parties, Cobble Hill Nursing Home, Inc. v Henry and Warren Corp., 74 NY2d 475, 548 NYS2d 920, 548 NE2d 203 (1989); Hamburg v American Ref-Fuel Co. of Niagara, L.P., 284 AD2d 85, 727 NYS2d 843 (4th Dept 2001); see Aiello v Burns Intern. Sec. Services Corp., 110 AD3d 234, 973 NYS2d 88 (1st Dept 2013). Courts should endeavor to hold parties to their bargain, and contracts should be held too indefinite for enforcement only as a last resort, 166 Mamaroneck Ave. Corp. v 151 East Post Road Corp., supra; Res Exhibit Services, LLC v Genesis Vision, Inc., 155 AD3d 1515, 64 NYS3d 786 (4th Dept 2017); Aiello v Burns Intern. Sec. Services Corp., supra; Cappelli Enterprises, Inc. v F & J Continental Food Corp., 16 AD3d 609, 792 NYS2d 553 (2d Dept 2005); see Korff v Corbett, 18 AD3d 248, 794 NYS2d 374 (1st Dept 2005). Where it is clear from the language of an agreement that the parties intended to be bound and there exists an objective method for supplying the missing term, including the parties' course of conduct, or commercial practice or other usage or custom, the court should ordinarily hold the parties to their bargain, see 166 Mamaroneck Ave. Corp. v 151 East Post Road Corp., supra; Metro-Goldwyn-Mayer, Inc. v Scheider, 40 NY2d 1069, 392 NYS2d 252, 360 NE2d 930 (1976); Res Exhibit Services, LLC v Genesis Vision, Inc., supra; Aiello v Burns Intern. Sec. Services Corp., supra; Edelman v Poster, 72 AD3d 182, 894 NYS2d 398 (1st Dept 2010); Marder's Nurseries, Inc. v Hopping, 171 AD2d 63, 573 NYS2d 990 (2d Dept 1991); see Stein v Anderson, 123 AD3d 1322, 999 NYS2d 579 (3d Dept 2014) (where oral loan agreement did not specify loan term, loan deemed payable on demand). On the other hand, there is a direct correlation between the number of terms omitted from the parties' writing and the likelihood that the parties agreed to be bound, Argent Acquisitions, LLC v First Church of Religious Science, 118 AD3d 441, 990 NYS2d 1 (1st Dept 2014). Thus, even where the omitted material terms can be supplied by common-law precepts, an agreement can be deemed too indefinite to enforce where so many material terms are absent that no meeting of the minds can be inferred, id (declining to enforce purported letter agreement where letter omitted specific terms of escrow arrangement, specific closing date, financing terms, allocation of risk of loss during sale period, time and terms of payment of purchase price, specific description of property, identity of parties who signed term sheet and seller's correct name).

## 1. Intent to Be Bound Only After Execution of Formal Written Agreement

A mere agreement to agree, in which a material term is left for future negotiations, is unenforceable, Kolchins v Evolution Markets, Inc., 31 NY3d 100, 73 NYS3d 519, 96 NE3d 784 (2018); 166 Mamaroneck Ave. Corp. v 151 East Post Road Corp., 78 NY2d 88, 571 NYS2d 686, 575 NE2d 104 (1991); Joseph Martin, Jr., Delicatessen, Inc. v Schumacher, 52 NY2d 105, 436 NYS2d 247, 417 NE2d 541 (1981); 410 BPR Corp. v Chmelecki Asset Management, Inc., 51 AD3d 715, 859 NYS2d 209 (2d Dept 2008); Clifford R. Gray, Inc. v LeChase Const. Services, LLC, 31 AD3d 983, 819 NYS2d 182 (3d Dept 2006) (agreement to later agree upon nature of work to be subcontracted, price and manner of payment, and time of performance). If the parties contemplate a formal written contract and that they will not be bound until such contract is signed, there is no binding agreement absent such a contract, Kolchins v Evolution Markets, Inc., supra; Patrolmen's Benev. Ass'n of City of New York, Inc. v New York, 27 NY2d 410, 318 NYS2d 477, 267 NE2d 259 (1971); Scheck v Francis, 26 NY2d 466, 311

NYS2d 841, 260 NE2d 493 (1970); Matter of Meister's Will, 39 AD2d 857, 333 NYS2d 41 (1st Dept 1972), aff'd, 32 NY2d 626, 342 NYS2d 658, 295 NE2d 385 (1973); Amcan Holdings, Inc. v Canadian Imperial Bank of Commerce, 70 AD3d 423, 894 NYS2d 47 (1st Dept 2010); ADCO Elec. Corp. v HRH Const., LLC, 63 AD3d 653, 880 NYS2d 188 (2d Dept 2009); Jordan Panel Systems, Corp. v Turner Const. Co., 45 AD3d 165, 841 NYS2d 561 (1st Dept 2007). However, a letter agreement containing all the essential terms of the contract is enforceable despite the fact that the parties intended to negotiate a fuller agreement, Conopco, Inc. v Wathne Ltd., 190 AD2d 587, 593 NYS2d 787 (1st Dept 1993); see Bed Bath & Beyond Inc. v IBEX Construction, LLC, 52 AD3d 413, 860 NYS2d 107 (1st Dept 2008); Hajdu Nemeth v Zachariou, 309 AD2d 578, 765 NYS2d 597 (1st Dept 2003); Lo Cascio v James V. Aquavella, M.D., P.C., 206 AD2d 96, 619 NYS2d 430 (4th Dept 1994).

The law distinguishes between preliminary agreements that are contingent on—and not intended to be binding without—formal documentation and binding agreements that are nevertheless to be further documented, Kowalchuk v Stroup, 61 AD3d 118, 873 NYS2d 43 (1st Dept 2009). When a party gives forthright, reasonable signals that it means to be bound only by written agreement, that intent is honored, Stonehill Capital Management, LLC v Bank of the West, 28 NY3d 439, 45 NYS3d 864, 68 NE3d 683 (2016); Kowalchuk v Stroup, supra; see Res Exhibit Services, LLC v Genesis Vision, Inc., 155 AD3d 1515, 64 NYS3d 786 (4th Dept 2017). Thus, a binder relating to a proposed sale of real property is not enforceable where the parties did not have a meeting of the minds with respect to material and essential terms and the parties contemplated the execution of a formal mutually binding contract, Simmonds v Marshall, 292 AD2d 592, 740 NYS2d 362 (2d Dept 2002); Behar v Mawardi, 268 AD2d 400, 702 NYS2d 326 (2d Dept 2000); see Ross v Wu, 27 AD3d 237, 811 NYS2d 26 (1st Dept 2006); Scordus v Route Brokers, Inc., 298 AD2d 573, 749 NYS2d 58 (2d Dept 2002). In contrast, where the parties had clearly reached agreement on the terms of a settlement and none of the correspondence indicated an intent not to be bound until a written agreement was executed, the contract was deemed binding and defendant could not thereafter assert the absence of a formal writing as a basis for avoiding the contract, Kowalchuk v Stroup, supra; see PMJ Capital Corp. v PAF Capital, LLC, 98 AD3d 429, 949 NYS2d 385 (1st Dept 2012) (on pre-answer motion to dismiss, despite absence of fully executed writing, question of fact as to defendant's intent to be bound where all terms were allegedly negotiated and agreed upon through parties' attorneys, plaintiff executed written agreement and wired down payment, and defendant retained down payment for more than two weeks without communicating further with plaintiff).

Parties may enter into a binding settlement agreement under which the obligations of the parties are conditioned on the negotiation of a future agreement, IDT Corp. v Tyco Group, S.A.R.L., 23 NY3d 497, 991 NYS2d 574, 15 NE3d 329 (2014). The negotiation and execution of the future agreement serves as a condition precedent to the parties' obligations under the settlement agreement; if the future agreement is not consummated despite good faith efforts by the parties, the parties are not obliged to perform promises made in the settlement agreement, IDT Corp. v Tyco Group, 13 NY3d 209, 890 NYS2d 401, 918 NE2d 913 (2009). In such a case, by virtue of the settlement agreement, the parties are contractually obligated to negotiate a future agreement in good faith, but the remaining obligations under the settlement agreement do not arise unless the future agreement is reached, id. In Northern Stamping, Inc. v Monomoy Capital Partners, L.P., 129 AD3d 448, 11 NYS3d 29 (1st Dept 2015), the court noted that New York does not recognize "Type II" agreements, which, as discussed in the federal case law, require the parties in certain proposed transactions to exercise good faith in attempting to reach a binding agreement (citing IDT Corp. v Tyco Group, S.A.R.L., 23 NY3d 497, 991 NYS2d 574, 15 NE3d 329 (2014)).

In the context of auctions, a forthright, reasonable signal that a party intends to be bound only after the agreement is reduced to a writing is not manifested by the mere inclusion in an auction bid form of formulaic language that the parties are "subject to" some future act or event, Stonehill Capital Management, LLC v Bank of the West, 28 NY3d 439, 45 NYS3d 864, 68 NE3d 683 (2016). Less ambiguous and more certain language is necessary to remove any doubt of the parties' intent not to be bound absent a further writing, id; see Emigrant Bank v UBS Real Estate Securities, Inc., 49 AD3d 382, 854 NYS2d 39 (1st Dept 2008).

As to the enforceability of settlement agreements under CPLR 2104, see 2104 discussion, infra.

## 2. Missing Price Term

An agreement may be deemed too indefinite for enforcement where there has been no agreement on the price, Joseph Martin, Jr., Delicatessen, Inc. v Schumacher, 52 NY2d 105, 436 NYS2d 247, 417 NE2d 541 (1981); Mary Matthews Interiors, Inc. v Levis, 208 AD2d 504, 617 NYS2d 39 (2d Dept 1994) (impossible to infer price term where services involve exercise of

subjective aesthetic judgments); see DerOhannesian v Albany, 110 AD3d 1288, 975 NYS2d 188 (3d Dept 2013) (price is a material term of contract). However, where the parties have indicated their intent to be bound, the contract lacking a price term will not fail for indefiniteness if the amount can be determined objectively without the need for new expressions by the parties, 166 Mamaroneck Ave. Corp. v 151 East Post Road Corp., 78 NY2d 88, 571 NYS2d 686, 575 NE2d 104 (1991); Cobble Hill Nursing Home, Inc. v Henry and Warren Corp., 74 NY2d 475, 548 NYS2d 920, 548 NE2d 203 (1989); Omar v Rozen, 55 AD3d 705, 867 NYS2d 458 (2d Dept 2008); Marshall v Khan, 53 AD3d 765, 860 NYS2d 693 (3d Dept 2008); Emigrant Bank v UBS Real Estate Securities, Inc., 49 AD3d 382, 854 NYS2d 39 (1st Dept 2008); see Belmont Elec. Co., Inc. v Flushing Development Corp., 107 AD2d 653, 484 NYS2d 24 (2d Dept 1985) (where agreement fully executed, promise of "agreeable settlement" for work done held enforceable promise to pay reasonable compensation).

For example, a price term of "fair market value" may be sufficiently precise, since fair market value can generally be determined objectively, Bernstein v 1995 Associates, 185 AD2d 160, 586 NYS2d 115 (1st Dept 1992). Thus, a contract that called for a price of fair market value to be determined by a particular method was upheld even though the designated method lent itself to stalemate, where fair market value was capable of being determined through other objective means, Marder's Nurseries, Inc. v Hopping, 171 AD2d 63, 573 NYS2d 990 (2d Dept 1991). However, in the context of a sale of shares in a closely-held corporation, an agreement by the parties to later agree on a procedure for determining the fair market value of the shares was not a complete and binding contract, since any assessment of fair market value would involve a degree of inexact valuation and subjectivity and, consequently, specification of the procedure was of particular importance, Teutul v Teutul, 79 AD3d 851, 912 NYS2d 664 (2d Dept 2010).


### 3. Best Efforts Clauses

As a general rule, a clause in an agreement providing that a party is to use its "best efforts" but failing to contain objective criteria or clear guidelines against which to measure such efforts is not enforceable, Timberline Development LLC v Kronman, 263 AD2d 175, 702 NYS2d 237 (1st Dept 2000); Strauss Paper Co., Inc. v RSA Executive Search, Inc., 260 AD2d 570, 688 NYS2d 641 (2d Dept 1999); see Brown v Business Leadership Group, 57 AD3d 212, 868 NYS2d 55 (1st Dept 2008); see also Richbell Information Services, Inc. v Jupiter Partners, L.P., 309 AD2d 288, 765 NYS2d 575 (1st Dept 2003). However, the courts have enforced some express "best efforts" clauses even in the absence of contract provisions defining that obligation, Van Valkenburgh, Nooger & Neville, Inc. v Hayden Pub. Co., 30 NY2d 34, 330 NYS2d 329, 281 NE2d 142 (1972) (court implied agreement to use "reasonable efforts"); Roxbury v Rodrigues, 277 AD2d 866, 716 NYS2d 814 (3d Dept 2000); Foster Wheeler Broome County, Inc. v Broome, 275 AD2d 592, 713 NYS2d 92 (3d Dept 2000); Lexington 360 Associates v First Union Nat. Bank of North Carolina, 234 AD2d 187, 651 NYS2d 490 (1st Dept 1996); see Wood v Lucy, Lady Duff-Gordon, 222 NY 88, 118 NE 214 (1917) (implied agreement to use "reasonable" best efforts). For example, in Kroboth v Brent, 215 AD2d 813, 625 NYS2d 748 (3d Dept 1995), the court construed "best efforts" to mean the pursuit of "all reasonable methods" for obtaining subdivision approval. The Kroboth court also noted that an express "best efforts" provision requires more than "good faith," which is an implied covenant in all contracts, see Allen v Williamsburgh Sav. Bank, 69 NY 314 (1877) ("best efforts" requires greater care and diligence than ordinary care and diligence); Shree Shiv Shakti Corp. v Khalid Properties, LLC, 106 AD3d 1434, 967 NYS2d 151 (3d Dept 2013). The issue of "best efforts" "almost invariably" poses questions of fact, Shree Shiv Shakti Corp. v Khalid Properies, LLC, supra; Kroboth v Brent, supra.


### 4. Other Material Missing Terms

A contract is not rendered unenforceable merely because it does not specify a closing date, Savasta v 470 Newport Associates, 82 NY2d 763, 603 NYS2d 821, 623 NE2d 1171 (1993), or a date for performance, Parker v Booker, 33 AD3d 602, 822 NYS2d 156 (2d Dept 2006); Pfuntner v Lyons, 294 AD2d 947, 742 NYS2d 462 (4th Dept 2002). In such cases, the law implies an agreement to perform within a reasonable time, Savasta v 470 Newport Associates, supra; Miller v Moore, 68 AD3d 1325, 890 NYS2d 712 (3d Dept 2009) (citing PJI); Omar v Rozen, 55 AD3d 705, 867 NYS2d 458 (2d Dept 2008). What constitutes a reasonable time for performance depends upon the facts and circumstances of the particular case, Zev v Merman, 73 NY2d 781, 536 NYS2d 739, 533 NE2d 669 (1988).

An agreement that left for future negotiation several essential terms—the location of the facilities to be built, the area of the building to be leased, the duration of the lease and the nature and cost of the project—was a mere agreement to agree and therefore was not enforceable, Uniland Partnership of Delaware L.P. v Blue Cross of Western New York Inc., 27 AD3d

1131, 811 NYS2d 517 (4th Dept 2006). Other examples of agreements deemed too vague to be enforced are found in Warwick v Black Bear Campgrounds, 95 AD3d 1002, 943 NYS2d 608 (2d Dept 2012) (stipulation agreeing to bring campground "up to snuff" and to obtain "the necessary town and county health department approvals which is part of site plan approval process" where parties had not agreed as to which zoning regulations were applicable); 180 Water Street Associates, L.P. v Lehman Bros. Holdings, Inc., 7 AD3d 316, 776 NYS2d 278 (1st Dept 2004) (lease term of "approximately twenty years"); F & K Supply Inc. v Willowbrook Development Co., 288 AD2d 713, 732 NYS2d 734 (3d Dept 2001) (settlement agreement providing that plaintiff was relinquishing "some claims" against "defendant et al"); Lowinger v Lowinger, 287 AD2d 39, 733 NYS2d 33 (1st Dept 2001) (promises to provide employment for life, to treat someone as part of family, and to provide unspecified amount of financial support); Glanzer v Keilin & Bloom LLC, 281 AD2d 371, 722 NYS2d 540 (1st Dept 2001) (employment agreement describing plaintiff's rights with terms such as "substantial income," "market rate," and "equity interest"); Freedman v Pearlman, 271 AD2d 301, 706 NYS2d 405 (1st Dept 2000) (promise to provide "fair compensation" and to "equitably" divide draw).

In contrast, a lease provision requiring a landlord's approval of a tenant's plans for alterations does not constitute an unenforceable agreement to agree, Melbourne Leasing Co. v Jack LaLane Fitness Centers, Inc., 211 AD2d 765, 621 NYS2d 682 (2d Dept 1995).

## F. Promissory Estoppel

Where the existence of a valid contract cannot be established, plaintiffs sometimes seek recovery under the doctrine of promissory estoppel. Although there is no decision from the Court of Appeals adopting the doctrine, there is Appellate Division authority for the proposition that promissory estoppel is a legally cognizable cause of action, Castellotti v Free, 138 AD3d 198, 27 NYS3d 507 (1st Dept 2016); Zuley v Elizabeth Wende Breast Care, LLC, 126 AD3d 1460, 6 NYS3d 830 (4th Dept 2015); Thome v Alexander & Louisa Calder Foundation, 70 AD3d 88, 890 NYS2d 16 (1st Dept 2009); Clifford R. Gray, Inc. v LeChase Const. Services, LLC, 31 AD3d 983, 819 NYS2d 182 (3d Dept 2006); Bunkoff General Contractors, Inc. v Dunham Elec., Inc., 300 AD2d 976, 753 NYS2d 156 (3d Dept 2002) (construction contract bids); Fleet Bank v Pine Knoll Corp., 290 AD2d 792, 736 NYS2d 737 (3d Dept 2002) (loan approval); Scott v KeyCorp, 247 AD2d 722, 669 NYS2d 76 (3d Dept 1998) (loan commitment); Rogers v Islip, 230 AD2d 727, 646 NYS2d 158 (2d Dept 1996) (continued employment); R. Freedman & Son Inc. v A.I. Credit Corp., 226 AD2d 1002, 641 NYS2d 429 (3d Dept 1996) (equipment lease).

Where the doctrine has been recognized, it requires a showing of a clear and unambiguous promise, reasonable and foreseeable reliance by the party to whom the promise is made and an injury sustained in reliance on the promise, Castellotti v Free, 138 AD3d 198, 27 NYS3d 507 (1st Dept 2016); Schroeder v Pinterest Inc., 133 AD3d 12, 17 NYS3d 678 (1st Dept 2015); Zuley v Elizabeth Wende Breast Care, LLC, 126 AD3d 1460, 6 NYS3d 830 (4th Dept 2015); Rock v Rock, 100 AD3d 614, 953 NYS2d 165 (2d Dept 2012); AHA Sales, Inc. v Creative Bath Products, Inc., 58 AD3d 6, 867 NYS2d 169 (2d Dept 2008); Williams v Eason, 49 AD3d 866, 854 NYS2d 477 (2d Dept 2008); Clifford R. Gray, Inc. v LeChase Const. Services, LLC, 31 AD3d 983, 819 NYS2d 182 (3d Dept 2006); Fleet Bank v Pine Knoll Corp., 290 AD2d 792, 736 NYS2d 737 (3d Dept 2002); Rogers v Islip, 230 AD2d 727, 646 NYS2d 158 (2d Dept 1996); see Webb v Greater New York Auto. Dealers Ass'n. Inc., 144 AD3d 1136, 43 NYS3d 91 (2d Dept 2016) (at-will employee could not reasonably rely on alleged misrepresentation regarding continued employment); DerOhannesian v Albany, 110 AD3d 1288, 975 NYS2d 188 (3d Dept 2013) (promissory estoppel claim dismissed because plaintiff did not rely on alleged promise); Thome v Alexander & Louisa Calder Foundation, 70 AD3d 88, 890 NYS2d 16 (1st Dept 2009) (promissory estoppel claim dismissed due to absence of detrimental reliance); Skillgames, LLC v Brody, 1 AD3d 247, 767 NYS2d 418 (1st Dept 2003) (employer's reliance on at-will employee's representation that he was "committed to continued employment" unreasonable, but reliance on representation concerning loss of stock option not unreasonable as matter of law). Additionally, where the doctrine is invoked to avoid the bar of the statute of frauds, the injured party must demonstrate that application of the statute would be unconscionable, Matter of Estate of Hennel, 29 NY3d 487, 58 NYS3d 271, 80 NE3d 1017 (2017); D & N Boening, Inc. v Kirsch Beverages, Inc., 99 AD2d 522, 471 NYS2d 299 (2d Dept 1984), aff'd, 63 NY2d 449, 483 NYS2d 164, 472 NE2d 992 (1984); see Castellotti v Free, supra; Fleet Bank v Pine Knoll Corp., supra; Melwani v Jain, 281 AD2d 276, 722 NYS2d 145 (1st Dept 2001); Steele v Delverde S.R.L., 242 AD2d 414, 662 NYS2d 30 (1st Dept 1997); Ginsberg v Fairfield-Noble Corp., 81 AD2d 318, 440 NYS2d 222 (1st Dept 1981). Promissory estoppel does not lie where plaintiff does not allege a violation of a legal duty independent of a contract, Vista Food Exchange, Inc. v BenefitMall, 138 AD3d 535, 31 NYS3d 9 (1st Dept 2016).

## G. Effect of a Party's Failure to Read Contract Documents

A party who signs a document without any valid excuse for having failed to read it is conclusively bound by its terms, Gillman v Chase Manhattan Bank, N.A., 73 NY2d 1, 537 NYS2d 787, 534 NE2d 824 (1988); Patterson v Somerset Investors Corp., 96 AD3d 817, 946 NYS2d 217 (2d Dept 2012); see M & T Bank v HR Staffing Solutions, Inc., 106 AD3d 1498, 964 NYS2d 847 (4th Dept 2013). A party's failure to read a document that he or she executed does not excuse that party from performing, Huang v Cheng, 182 AD2d 600, 583 NYS2d 370 (1st Dept 1992); Sofio v Hughes, 162 AD2d 518, 556 NYS2d 717 (2d Dept 1990); see Tsadilas v Providian Nat. Bank, 13 AD3d 190, 786 NYS2d 478 (1st Dept 2004); Sorenson v Bridge Capital Corp., 52 AD3d 265, 861 NYS2d 280 (1st Dept 2008). Further, a party's failure to read a contract precludes him or her from establishing the justifiable reliance element of fraud, Bontempts v Aude Const. Corp., 98 AD3d 1071, 951 NYS2d 561 (2d Dept 2012); Sorenson v Bridge Capital Corp., supra; Daniel Gale Associates, Inc. v Hillcrest Estates, Ltd., 283 AD2d 386, 724 NYS2d 201 (2d Dept 2001) (fraud in the execution). Where a party was presented only with a signature page and there were alleged misrepresentations as to the nature of the body of the document, the party who signed the signature page cannot avoid the obligations set forth in the document if the words appearing on the signature page were inconsistent with the claimed misrepresentations, M & T Bank v HR Staffing Solutions, Inc., supra.

A person who is illiterate in English and could not read the contract that he or she executed was not automatically excused from compliance, Holcomb v TWR Express, Inc., 11 AD3d 513, 782 NYS2d 840 (2d Dept 2004); Shklovskiy v Khan, 273 AD2d 371, 709 NYS2d 208 (2d Dept 2000). A person who cannot read a contract because of illiteracy or lack of knowledge of the English language must make a reasonable effort to have the contract read to him or her, Holcomb v TWR Express, Inc., supra; Shkolovskiy v Khan, supra; see Flusserova v Schnabel, 92 AD3d 464, 938 NYS2d 66 (1st Dept 2012). A sophisticated businessperson who was evidently capable of expressing his intent could not avoid being bound by an agreement he signed because of his purported inability to read it, Huang v Cheng, 182 AD2d 600, 583 NYS2d 370 (1st Dept 1992).

## H. Minors' Contracts

In New York, eighteen is the age of majority, General Obligations Law § 3-101(1). Minors under that age are not precluded from entering into contracts, Continental Nat. Bank v Strauss, 137 NY 148, 32 NE 1066 (1893). A contract entered into by a minor is not void, Sternlieb v Normandie Nat. Securities Corporation, 263 NY 245, 188 NE 726 (1934). Rather, under common-law principles, such contracts are voidable at the minor's election, Sternlieb v Normandie Nat. Securities Corporation, supra; see Shields v Gross, 58 NY2d 338, 461 NYS2d 254, 448 NE2d 108 (1983). However, until such contracts are disaffirmed by the minor, they are binding on the other contracting party, DeVito v Mechanicville, 251 App Div 514, 297 NYS 935 (3d Dept 1937).

Where the contract is executory, a minor who has reached the age of majority may disaffirm at any time short of the statute of limitations period, provided that he or she has not ratified the contract through his or her act, Sternlieb v Normandie Nat. Securities Corporation, 263 NY 245, 188 NE 726 (1934). Where the contract has been executed, the minor must disaffirm within a reasonable time after coming of age, id. A minor who disaffirms after reaching majority may recover any payments made under the voidable contract, provided that he or she returns and pays for the use of, or wear and tear on, any property he or she obtained under the contract, id; see Casey v Kastel, 237 NY 305, 142 NE 671 (1924). One who furnishes necessaries to an infant cannot recover from the infant if his parents are financially able to pay for them, but the infant may be held liable for necessaries furnished to him if his parents or the persons standing in loco parentis are unable to pay for them, International Text Book Co. v Connelly, 206 NY 188, 99 NE 722 (1912); Siegel v Hodges, 15 AD2d 571, 222 NYS2d 989 (2d Dept 1961).

The remedy of disaffirmance is available to a person who entered into a contract as a minor even if the minor induced the contract by making a fraudulent misrepresentation that he or she was of age, Sternlieb v Normandie Nat. Securities Corporation, 263 NY 245, 188 NE 726 (1934); International Text Book Co. v Connelly, 206 NY 188, 99 NE 722 (1912); Wyatt v Lortscher, 217 App Div 224, 216 NYS 571 (4th Dept 1926); New York Building, Loan & Banking Co. v Fisher, 23 App Div 363, 48 NYS 152 (1st Dept 1897). In such situations, no cause of action may be maintained against the infant for fraud, Sternlieb v Normandie Nat. Securities Corporation, supra; Collins v Gifford, 203 NY 465, 96 NE 721 (1911).

The common-law right of minors to disaffirm has also been modified by various statutes, Shields v Gross, 58 NY2d 338, 461 NYS2d 254, 448 NE2d 108 (1983). For example, Civil Rights Law § 51 renders contracts consenting to the use of minor's name or image for advertising purposes fully enforceable where the minor, his or her parent or his or her guardian has executed the contract, see Shields v Gross, supra. Other statutory provisions abrogating a minor's right to disaffirm include GOL § 3-101(3) (minors' contracts to borrow money to purchase a home); GOL § 3-102 (obligation incurred by married minor for hospital, medical and surgical treatment and care for such minor or such minor's children); Education Law § 281 (contract by a person over sixteen for college loan involving education at State University of New York); Arts and Culture Law § 35.03 (Supreme Court approval of minors' contracts for actors, dancers and professional athletes).

## I. Incompetent Parties

A person who has not been adjudicated incompetent is presumed to be competent at the time he or she entered into the contract, Sears v First Pioneer Farm Credit, ACA, 46 AD3d 1282, 850 NYS2d 219 (3d Dept 2007). One seeking to void a contract on behalf of an incompetent has the burden of proving that fact and must demonstrate that the individual's mind was so affected as to render him or her wholly and absolutely unable to comprehend and understand the nature of the transaction at the time the contract was executed, id.

## J. Unconscionable Contracts

An unconscionable contract is one that is so grossly unreasonable as to be unenforceable because of the absence of a meaningful choice on the part of one of the parties (procedural unconscionability) and terms that are unreasonably favorable to the other (substantive unconscionability), King v Fox, 7 NY3d 181, 818 NYS2d 833, 851 NE2d 1184 (2006); Emigrant Mortg. Co., Inc. v Fitzpatrick, 95 AD3d 1169, 945 NYS2d 697 (2d Dept 2012); see Gillman v Chase Manhattan Bank, N.A., 73 NY2d 1, 537 NYS2d 787, 534 NE2d 824 (1988) (grossly unreasonable or unconscionable in the light of mores and business practices of the time and place).

The substantive element of the unconscionability inquiry refers to the content of the contract, while the procedural element is determined by reference to the contract formation process, Emigrant Mortg. Co., Inc. v Fitzpatrick, 95 AD3d 1169, 945 NYS2d 697 (2d Dept 2012); see Gillman v Chase Manhattan Bank, N.A., 73 NY2d 1, 537 NYS2d 787, 534 NE2d 824 (1988). Examples of the substantive element of unconscionability are unreasonably inflated prices, unfair termination clauses, unfair limitations on consequential damages and improper warranty disclaimers, Emigrant Mortg. Co., Inc. v Fitzpatrick, supra; Simar Holding Corp. v GSC, 87 AD3d 688, 928 NYS2d 592 (2d Dept 2011). Examples of the procedural element include high pressure commercial tactics, inequality of bargaining power, deceptive practices, deceptive contract language and imbalance in the understanding and acumen of the parties, Emigrant Mortg. Co., Inc. v Fitzpatrick, supra; Simar Holding Corp. v GSC, supra. The two elements operate together on a sliding scale, so that the more substantively imbalanced the contract is the less procedural imbalance is required and vice versa, State v Wolowitz, 96 AD2d 47, 468 NYS2d 131 (2d Dept 1983); Emigrant Mortg. Co., Inc. v Fitzpatrick, supra. Absent a showing of inequality in bargaining power between the parties, price alone is not sufficient to establish substantive unconscionability, Wachovia Securities, LLC v Joseph, 56 AD3d 269, 866 NYS2d 651 (1st Dept 2008).

The determination of unconscionability is for the court and may be made without a hearing if the significant facts germane to the inquiry are not disputed, Emigrant Mortg. Co., Inc. v Fitzpatrick, 95 AD3d 1169, 945 NYS2d 697 (2d Dept 2012); see Simar Holding Corp. v GSC, 87 AD3d 688, 928 NYS2d 592 (2d Dept 2011). Where there is doubt as to whether a contract is fraught with elements of unconscionability, there must be a hearing into the circumstances of the contract's execution and the disputed terms, setting, purpose and effect, Simar Holding Corp. v GSC, supra. As to unconscionability in the sale of goods, see UCC 2-302 and Industralease Automated & Scientific Equipment Corp. v R.M.E. Enterprises, Inc., 58 AD2d 482, 396 NYS2d 427 (2d Dept 1977); Zicari v Joseph Harris Co., 33 AD2d 17, 304 NYS2d 918 (4th Dept 1969).

## III. Contracting Parties

## A. Agents

In a breach of contract action, an agent for an undisclosed principal is liable on a contract entered into on behalf of the principal, Ell Dee Clothing Co. v Marsh, 247 NY 392, 160 NE 651 (1928); Ardwin v Englert, 81 AD2d 960, 439 NYS2d 720 (3d Dept 1981), aff'd, 56 NY2d 936, 453 NYS2d 608, 439 NE2d 324 (1982); J.P. Endeavors v Dushaj, 8 AD3d 440, 778 NYS2d 531 (2d Dept 2004); see Anderson v Pods, Inc., 70 AD3d 820, 896 NYS2d 88 (2d Dept 2010). In contrast, an agent for a disclosed principal will not be bound unless there is clear and explicit evidence of the agent's intention to substitute or add its personal liability for that of the principal, Savoy Record Co. v Cardinal Export Corp., 15 NY2d 1, 254 NYS2d 521, 203 NE2d 206 (1964); Mencher v Weiss, 306 NY 1, 114 NE2d 177 (1953); Weinreb v Stinchfield, 19 AD3d 482, 797 NYS2d 521 (2d Dept 2005); Tobron Office Furniture Corp. v King World Productions, Inc., 161 AD2d 355, 555 NYS2d 315 (1st Dept 1990). Whether a principal is "disclosed" depends upon whether, at the time of the underlying transaction, the other party to the contract (a) had notice that the agent was acting for a principal and (b) knew of the principal's identity, Winer v Valentino, 121 AD3d 1264, 995 NYS2d 256 (3d Dept 2014).

A contract between a third party and an individual who is acting on behalf of a principal that does not exist at the time the contract is entered into generally remains valid and enforceable between the third party and the individual who executed the contract on behalf of the non-existent principal, Metro Kitchenworks Sales, LLC v Continental Cabinets, LLC, 31 AD3d 722, 820 NYS2d 79 (2d Dept 2006). However, the principal cannot be bound by the contract unless the obligation is assumed in some manner after the principal comes into existence by adopting, ratifying, or accepting the contract, id. A principal that did not exist at the time the contract was executed may sue upon a contract made for it where it adopted or ratified the contract after coming into legal existence, id.

An agent known to be acting for himself or known to have an interest adverse to his principal cannot bind the principal, Manhattan Life Ins. Co. v Forty-Second & G. St. Ferry R. Co., 139 NY 146, 34 NE 776 (1893); Genger v Genger, 120 AD3d 1102, 993 NYS2d 297 (1st Dept 2014). Further, where a fiduciary acting on behalf of a principal has a conflict of interest in relation to a transaction that has not been disclosed to the principal, the resulting contract is voidable at the option of the principal, Wendt v Fischer, 243 NY 439, 154 NE 303 (1926); Genger v Genger, supra.

## B. Attorneys

At common law, the prevailing view was that, absent an agreement to the contrary, an attorney, as agent for the client, is not personally liable for services requested on the client's behalf, Bonynge v Field, 81 NY 159 (1880); see Elisa Dreier Reporting Corp. v Global Naps Networks, Inc., 84 AD3d 122, 921 NYS2d 329 (2d Dept 2011). However, in Urban Court Reporting, Inc. v Davis, 158 AD2d 401, 551 NYS2d 235 (1st Dept 1990), the First Department adopted the principle that an attorney who obtains goods or services in connection with litigation on a client's behalf is personally liable unless the attorney expressly disclaims liability. In 2005, the Legislature adopted General Business Law § 399-cc, which provides that an attorney who engages a reporting service in connection with a judicial proceeding is responsible for paying the service's fee unless (a) payment is otherwise provided for by law, (b) the attorney is providing representation through a not-for-profit provider of legal services or (c) the attorney has disclaimed responsibility in writing at the time the reporter's service was ordered. The enactment of the statute does not preclude a reporter's recovering directly from the client, Elisa Dreier Reporting Corp. v Global Naps Networks, Inc., supra.

## C. Corporate Directors and Officers

A corporate president or other general officer is presumed to have authority to enter into contracts in the ordinary course of the corporation's business and his or her acts are binding on the corporation against one who does not know of any limitation on the officer's true authority, Goldston v Bandwidth Technology Corp., 52 AD3d 360, 859 NYS2d 651 (1st Dept 2008); Odell v 704 Broadway Condominium, 284 AD2d 52, 728 NYS2d 464 (1st Dept 2001); A & M Wallboard, Inc. v Marina Towers Associates, 169 AD2d 751, 565 NYS2d 118 (2d Dept 1991); see 150 Broadway N.Y. Associates, L.P. v Bodner, 14 AD3d 1, 784 NYS2d 63 (1st Dept 2004). The retention of corporate counsel is generally an act within the powers and duties of a corporation's chief executive officer, Goldston v Bandwidth Technology Corp., supra.

Individual officers or directors are not personally liable on contracts entered into on behalf of a corporation if they do not

purport to bind themselves individually, James T. Kelly Jr., P.E., P.C. v Schroeter, 209 AD2d 737, 618 NYS2d 146 (3d Dept 1994); Ridgeline Constructors, Inc. v Elmira Glass Technology Corp., 183 AD2d 1041, 583 NYS2d 633 (3d Dept 1992). Similarly, a member of a limited liability company is not liable for the company's contractual obligations by virtue of his or her status as member, Board of Managers of 325 Fifth Ave. Condominium v Continental Residential Holdings LLC, 149 AD3d 472, 52 NYS3d 44 (1st Dept 2017); Matias ex rel. Palma v Mondo Properties LLC, 43 AD3d 367, 841 NYS2d 279 (1st Dept 2007). However, unambiguous language in a guarantee signed by a corporate president can bind him or her personally, PNC Capital Recovery v Mechanical Parking Systems, Inc., 283 AD2d 268, 726 NYS2d 394 (1st Dept 2001). There must be clear and explicit evidence of the officer's intention to substitute or add his or her personal liability, GMS Batching, Inc. v TADCO Const. Corp., 120 AD3d 549, 992 NYS2d 264 (2d Dept 2014). Thus, where the document in question was not labeled "personal guarantee" and there was nothing in the body of the document to suggest that the signer was personally guaranteeing the loan, the defendant's signature under his title as corporate officer could indicate that he had signed only in his corporate capacity, Red-Kap Sales, Inc. v Northern Lights Energy Products, Inc., 94 AD3d 1281, 942 NYS2d 283 (3d Dept 2012); see GMS Batching, Inc. v TADCO Const. Corp., 120 AD3d 549, 992 NYS2d 264 (2d Dept 2014) (corporate officer who signs contract as agent for corporation not liable unless it clearly appears that officer intended to be personally bound); Salzman Sign Co. v Beck, 10 NY2d 63, 217 NYS2d 55, 176 NE2d 74 (1961) ("where individual responsibility is demanded the nearly universal practice is that the officer signs twice—once as an officer and again as an individual"); Stuyvesant Plaza, Inc. v Emizack LLC., 307 AD2d 640, 763 NYS2d 146 (3d Dept 2003). To be distinguished are situations in which an individual has merely added his or her corporate title while signing a document that contains language identifying the individual as a personal guarantor, Stuyvesant Plaza, Inc. v Emizack LLC, supra. In those situations, the signer will be deemed personally responsible as a matter of law, id. In determining whether the person who signed an agreement may be held liable in his or her individual capacity, it is not sufficient to look only at the signature line. What is written on the signature line must be understood in light of the entire agreement, Wormser, Kiely, Galef & Jacobs, LLP v Frumkin, 125 AD3d 516, 5 NYS3d 9 (1st Dept 2015).

For a discussion of the legal principals governing the liability of corporate owners for the contractual obligations of the corporation, see PJI 2:266.

### D. Successor Corporations

Successor corporations are subject to liability for breach of contract pursuant to the same rules that govern the liability of a successor corporation for the torts of its predecessor, Kretzmer v Firesafe Products Corp., 24 AD3d 158, 805 NYS2d 340 (1st Dept 2005); see Fitzgerald v Fahnestock & Co., Inc., 286 AD2d 573, 730 NYS2d 70 (1st Dept 2001) (de facto merger results in successor liability). Thus, a purchasing corporation will not be liable unless (a) it expressly or impliedly assumed the predecessor's liability; (b) there was a consolidation or merger of the seller and purchaser; (c) the purchaser corporation was a mere continuation of the selling corporation; or (d) the transaction was entered into fraudulently to escape such obligations, Schumacher v Richards Shear Co., Inc., 59 NY2d 239, 464 NYS2d 437, 451 NE2d 195 (1983); see Tap Holdings, LLC v Orix Finance Corp., 109 AD3d 167, 970 NYS2d 178 (1st Dept 2013) (mere continuation doctrine). The mere hiring of some of the predecessor's employees is insufficient to raise a triable issue regarding continuity of management, Kretzmer v Firesafe Products Corp., supra.

### E. Corporation by Estoppel

The doctrine of corporation by estoppel operates in cases where the defendant seeks to avoid liability by claiming that the plaintiff is not a lawful corporate entity. If the parties have had business dealings, the defendant has benefited from those business dealings and the plaintiff's corporate status is not relevant to the business dealings, the defendant may be estopped from raising the lawfulness of plaintiff's corporate status as a defense, Boslow Family Ltd. Partnership v Glickenhaus & Co., 7 NY3d 664, 827 NYS2d 94, 860 NE2d 711 (2006); see Rubenstein v Mayor, 41 AD3d 826, 839 NYS2d 170 (2d Dept 2007).

### F. Aiders and Abettors

There is no cause of action for aiding and abetting a breach of contract, Markowits v Friedman, 144 AD3d 993, 42 NYS3d

218 (2d Dept 2016); Pomerance v McGrath, 124 AD3d 481, 2 NYS3d 436 (1st Dept 2015); Purvi Enterprises, LLC v New York, 62 AD3d 508, 879 NYS2d 410 (1st Dept 2009).

## G. Securitized Parties

Where a contracting party has securitized its receivables but has retained its ownership interest in the accounts, that party continues to have standing to sue for nonpayment or late payment by the other party, American Exp. Bank FSB v Najieb, 125 AD3d 470, 4 NYS3d 6 (1st Dept 2015).

## H. Partners and Joint Venturers

Liability under a contract can arise even in the absence of privity where the defendant is in a joint venture or partnership with a signatory to the contract, Alper Restaurant, Inc. v Catamount Development Corp., 137 AD3d 1559, 29 NYS3d 604 (3d Dept 2016); see Griffith Energy, Inc. v Evans, 85 AD3d 1564, 925 NYS2d 282 (4th Dept 2011).

## I. Third Party Beneficiaries

## 1. In General

A third party may sue as a beneficiary on a contract made for its benefit, Dormitory Authority v Samson Construction Co., 30 NY3d 704, 70 NYS3d 893, 94 NE3d 456 (2018) (purported beneficiary not named in contract). However, an intent to benefit the third party must be shown, and, absent such intent, the third party is merely an incidental beneficiary with no right to enforce the particular contract, id. One who seeks to maintain an action for breach of contract as a third party beneficiary must establish that 1) there is an existing valid and binding contract between the signatories, 2) the contract was intended for the third party's benefit, and 3) the benefit to the third party is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate that party if the benefit is lost, Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173, 919 NYS2d 465, 944 NE2d 1104 (2011); Mendel v Henry Phipps Plaza West, Inc., 6 NY3d 783, 811 NYS2d 294, 844 NE2d 748 (2006); Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 464 NYS2d 712, 451 NE2d 459 (1983); see Roosevelt Islanders for Responsible Southtown Development v Roosevelt Island Operating Corp., 291 AD2d 40, 735 NYS2d 83 (1st Dept 2001) (applying Restatement 2d of Contracts, § 302(1)(a) and (b)). Additionally, it must be established that no one other than the third party can recover if the promisor breaches the contract or that the language of the contract otherwise clearly evidences an intent to permit enforcement by the third party, Dormitory Authority v Samson Construction Co., supra; Fourth Ocean Putnam Corp. v Interstate Wrecking Co., Inc., 66 NY2d 38, 495 NYS2d 1, 485 NE2d 208 (1985); Artwear, Inc. v Hughes, 202 AD2d 76, 615 NYS2d 689 (1st Dept 1994); Oursler v Women's Interart Center, Inc., 170 AD2d 407, 566 NYS2d 295 (1st Dept 1991). Courts are generally reluctant to construe an intent to benefit a third party in the absence of clear contractual language evincing such an intent, LaSalle Nat. Bank v Ernst & Young LLP, 285 AD2d 101, 729 NYS2d 671 (1st Dept 2001).

A contract provision entitled "No Third Party Beneficiaries" and stating that the agreement "is solely for the benefit of the [named party] and no other Person …. shall have any rights hereunder …" precludes third-party beneficiary claims, Banco Espirito Santo, S.A. v Concessionaria Do Rodoanel Oeste S.A., 100 AD3d 100, 951 NYS2d 19 (1st Dept 2012). Similar expressions of intent have also been given effect, Greece Cent. School Dist. v Tetra Tech Engineers, Architects & Landscape Architects, P.C., 78 AD3d 1701, 911 NYS2d 563 (4th Dept 2010) (provision stating that nothing therein "shall create a contractual relationship with or cause of action in favor of a third party"); First Keystone Consultants, Inc. v DDR Const. Services, 74 AD3d 1135, 904 NYS2d 113 (2d Dept 2010). In contrast, where an agreement provides that a contracting party will indemnify certain identified third-party beneficiaries, a boilerplate "no third-party beneficiary" clause will not preclude those identified third-party beneficiaries from seeking indemnification from the contracting party, Diamond Castle Partners IV PRC, L.P. v IAC/InterActiveCorp, 82 AD3d 421, 918 NYS2d 73 (1st Dept 2011) (disagreeing with Control Data Systems, Inc. v Computer Power Group, Ltd., 1998 WL 178775 (SDNY 1998) insofar as it is inconsistent).

The identity of a third party beneficiary need not be set forth in the contract, Internationale Nederlanden (U.S.) Capital Corp. v Bankers Trust Co., 261 AD2d 117, 689 NYS2d 455 (1st Dept 1999), or even known at the time of its execution so long as

the promisee intended to benefit a third party, Vargas v Crown Container Co., Inc., 155 AD3d 989, 65 NYS3d 567 (2d Dept 2017); MK West Street Co. v Meridien Hotels, Inc., 184 AD2d 312, 584 NYS2d 310 (1st Dept 1992); see Finch, Pruyn & Co. Inc. v M. Wilson Control Services Inc., 239 AD2d 814, 658 NYS2d 496 (3d Dept 1997). Where performance is rendered directly to the third party, it is presumed that the contract was for that party's benefit, Logan-Baldwin v L.S.M. General Contractors, Inc., 94 AD3d 1466, 942 NYS2d 718 (4th Dept 2012); see Gap, Inc. v Fisher Development, Inc., 27 AD3d 209, 810 NYS2d 456 (1st Dept 2006); Drake v Drake, 89 AD2d 207, 455 NYS2d 420 (4th Dept 1982). For that reason, courts have generally refused to dismiss breach of contract actions asserted by property owners against subcontractors who performed services on their property, Logan-Baldwin v L.S.M. General Contractors, Inc. supra.

The following are examples of cases in which third party beneficiary status was rejected: Dormitory Authority v Samson Construction Co., 30 NY3d 704, 70 NYS3d 893, 94 NE3d 456 (2018) (municipality not third party beneficiary of architectural services contract between state agency and architectural firm, where municipality was not only entity that could recover under contract and contract neither expressly named municipality as beneficiary nor authorized municipality to enforce any contractual obligations); DeLine v CitiCapital Commercial Corp., 24 AD3d 1309, 807 NYS2d 247 (4th Dept 2005) (successor corporation not in existence at time contract executed); Cole v Metropolitan Life Ins. Co., 273 AD2d 832, 708 NYS2d 789 (4th Dept 2000) (physician not third party beneficiary of insurance contract between state and medical insurer covering state employees, where, as non-participating provider, physician not entitled to receive direct benefits); Fenton v Fenton, 253 AD2d 844, 678 NYS2d 358 (2d Dept 1998) (daughter not third party beneficiary of contract between her father and caterer to provide service and food for her wedding); New York Pepsi-Cola Distributors Ass'n, Inc. v Pepsico, Inc., 240 AD2d 315, 659 NYS2d 441 (1st Dept 1997) (sublicensee not third party beneficiary of contract between licensor and direct licensee); Hirsch v Weisman, 189 AD2d 643, 592 NYS2d 337 (1st Dept 1993) (client not third party beneficiary of agreement between client's retained counsel and trial attorney, absent client's knowledge of contractual agreement). In contrast, an agreement between a trust and its administrators was held to be intended to benefit the employer members of the trust where the purpose of the trust was to provide such members with affordable workers' compensation coverage, State Workers' Compensation Bd. v Wang, 147 AD3d 104, 46 NYS3d 230 (3d Dept 2017).

## 2. Insurance Policies

A third party can enforce a policy of insurance only if it demonstrates that the parties to the insurance contract intended to insure the third party's interest, Stainless, Inc. v Employers Fire Ins. Co., 69 AD2d 27, 418 NYS2d 76 (1st Dept 1979), aff'd for reasons in AD opinion, 49 NY2d 924, 428 NYS2d 675, 406 NE2d 490 (1980); Sixty Sutton Corp. v Illinois Union Ins. Co., 34 AD3d 386, 825 NYS2d 46 (1st Dept 2006); State v Liberty Mut. Ins. Co., 23 AD3d 1084, 803 NYS2d 865 (4th Dept 2005).

While the original insured is ordinarily not considered a third party beneficiary of reinsurance policies despite the insolvency of the insurers, parties may draft reinsurance policies with specific language operating in favor of the original insured, Mercantile & General Reinsurance Co., plc. v Colonial Assur. Co., 184 AD2d 177, 591 NYS2d 1015 (1st Dept 1992), rev'd on other grounds, 82 NY2d 248, 604 NYS2d 492, 624 NE2d 629 (1993); see Matter of Liquidation of Union Indem. Ins. Co. of New York, 200 AD2d 99, 611 NYS2d 506 (1st Dept 1994), aff'd, 89 NY2d 94, 651 NYS2d 383, 674 NE2d 313 (1996).

## 3. Construction Contracts

Ordinary construction contracts that do not expressly state an intention to benefit a third party do not give third parties who contract with the promisee the right to enforce the promisee's contract with another, Port Chester Elec. Const. Co. v Atlas, 40 NY2d 652, 389 NYS2d 327, 357 NE2d 983 (1976); Board of Managers of Riverview at College Point Condominium III v Schorr Bros. Development Corp., 182 AD2d 664, 582 NYS2d 258 (2d Dept 1992). Thus, a subcontractor is not a third party beneficiary of the contract between the general contractor and the owner unless it is shown that the parties intended that their contract run to the benefit of the subcontractor, Port Chester Elec. Const. Co. v Atlas, supra; see Sky-Lift Corp. v Flour City Architectural Metals, Inc., 298 AD2d 214, 748 NYS2d 725 (1st Dept 2002); Residential Bd. of Managers of Zeckendorf Towers v Union Square-14th Street Associates, 190 AD2d 636, 594 NYS2d 161 (1st Dept 1993). On the other hand, an owner was permitted to maintain an action against a subcontractor in Logan-Baldwin v L.S.M. General Contractors, Inc., 94 AD3d 1466, 942 NYS2d 718 (4th Dept 2012). Cases adopting the view that the subcontractor's services are performed only for the benefit of the contractor, such as Schuler-Haas Elec. Corp. v Wager Const. Corp., 57 AD2d 707, 395 NYS2d 272 (4th

Dept 1977), and Sybelle Carpet and Linoleum of Southampton, Inc. v East End Collaborative, Inc., 167 AD2d 535, 562 NYS2d 205 (2d Dept 1990), are distinguishable, since they addressed situations in which the subcontractor was attempting to sue the owner under a contract between the general contractor and the owner, Logan-Baldwin v L.S.M. General Contractors, Inc., supra.

A general contractor who was to be named as an additional insured on the comprehensive general liability policy that a subcontractor was obligated to procure, is a third party beneficiary of the contract to insure, Clapper v Albany, 188 AD2d 774, 591 NYS2d 258 (3d Dept 1992). Moreover, purchasers of condominiums are third party beneficiaries of a contract between the sponsor and engineering and design professionals where the documentation including selling documents and the Offering Plan manifest the sponsor's intent to make the unit owners the intended beneficiaries, Board of Managers of Astor Terrace Condominium v Schuman, Lichtenstein, Claman & Efron, 183 AD2d 488, 583 NYS2d 398 (1st Dept 1992). Further, a condominium owner was found to be a third party beneficiary of an alteration agreement between the owner of the unit directly above its unit and the condominium's board of managers where the intent of the agreement was to impart a direct and immediate benefit to other owners and where the agreement explicitly provided that its indemnity provision applied to owners of other units in the building, Edge Management Consulting, Inc. v Blank, 25 AD3d 364, 807 NYS2d 353 (1st Dept 2006). A subsequent and remote purchaser of real property is not a third party beneficiary of a contract for engineering services between the original owner of the parcel and the engineer, Marino v Dwyer-Berry Const. Corp., 193 AD2d 654, 597 NYS2d 466 (2d Dept 1993).


**4. Utility Contracts**

Contracts between a utility company and a landlord that do not expressly undertake a duty to supply utility service to third parties, do not give commercial tenants contract rights as third party beneficiaries even where the tenants are obligated under their leases for apportioned electricity costs, Milliken & Co. v Consolidated Edison Co. of New York, Inc., 84 NY2d 469, 619 NYS2d 686, 644 NE2d 268 (1994). In Koch v Consolidated Edison Co. of New York, Inc., 62 NY2d 548, 479 NYS2d 163, 468 NE2d 1 (1984), however, Con Edison was held liable to customers of the Power Authority of the State of New York (PASNY) where Con Edison had expressly undertaken a contractual duty to supply electricity for the needs of PASNY's customers.


**IV. Performance**


**A. Conditions Precedent to the Obligation to Perform**

A condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises, IDT Corp. v Tyco Group, 13 NY3d 209, 890 NYS2d 401, 918 NE2d 913 (2009); MHR Capital Partners LP v Presstek, Inc., 12 NY3d 640, 884 NYS2d 211, 912 NE2d 43 (2009); Oppenheimer & Co., Inc. v Oppenheim, Appel, Dixon & Co., 86 NY2d 685, 636 NYS2d 734, 660 NE2d 415 (1995); Klewin Bldg. Co., Inc. v Heritage Plumbing & Heating, Inc., 42 AD3d 559, 840 NYS2d 144 (2d Dept 2007); Seaport Park Condominium v Greater New York Mut. Ins. Co., 39 AD3d 51, 828 NYS2d 381 (1st Dept 2007). An express condition precedent must be literally complied with before the claimant may recover, MHR Capital Partners LP v Presstek, Inc., supra; Transit Management, LLC v Watson Industries, Inc., 23 AD3d 1152, 803 NYS2d 860 (4th Dept 2005); Preferred Mortgage Brokers, Inc. v Byfield, 282 AD2d 589, 723 NYS2d 230 (2d Dept 2001); Sulner v G.A. Ins. Co. of New York, 224 AD2d 205, 637 NYS2d 144 (1st Dept 1996); see National Fuel Gas Distribution Corp. v Hartford Fire Ins. Co., 28 AD3d 1169, 814 NYS2d 436 (4th Dept 2006). Thus, the doctrine of substantial performance is inapplicable to a condition precedent to the formation of a sublease where the agreement specified that there would be no sublease unless and until the tenant delivered to the prospective subtenant the prime landlord's written consent to certain tenant work before a specified deadline, Oppenheimer & Co., Inc. v Oppenheim, Appel, Dixon & Co., supra.

Whether a condition precedent exists under the terms of a contract is a matter of law for the court to decide, Mullany v Munchkin Enterprises, Ltd., 69 AD3d 1271, 893 NYS2d 714 (3d Dept 2010). A particular term in an agreement may be a promise or a condition depending on whether it manifests an intent to act or refrain from acting in a particular way (a promise) or refers to an event not certain to occur but which must occur or be excused before performance is due (a

condition), Merritt Hill Vineyards Inc. v Windy Heights Vineyard, Inc., 61 NY2d 106, 472 NYS2d 592, 460 NE2d 1077 (1984); see Jacob & Youngs v Kent, 230 NY 239, 129 NE 889 (1921); Facilities Development Corp. v Nautilus Const. Corp., 156 AD2d 911, 550 NYS2d 127 (3d Dept 1989). In other words, to make a provision in a contract a condition precedent it must appear from the contract itself that the parties intended the provision to operate as such, Torres v D'Alesso, 80 AD3d 46, 910 NYS2d 1 (1st Dept 2010). It must clearly appear from the contract itself that the parties intended a provision to operate as a condition precedent, Kass v Kass, 235 AD2d 150, 663 NYS2d 581 (2d Dept 1997), aff'd, 91 NY2d 554, 673 NYS2d 350, 696 NE2d 174 (1998); Tyndall v Tyndall, 144 AD3d 1015, 42 NYS3d 250 (2d Dept 2016); Torres v D'Alesso, supra; Ashkenazi v Kent South Associates, LLC, 51 AD3d 611, 857 NYS2d 693 (2d Dept 2008); Lui v Park Ridge at Terryville Ass'n, Inc., 196 AD2d 579, 601 NYS2d 496 (2d Dept 1993) (contract must); see Squire McBeasley, Inc. v 36th Str, LLC, 93 AD3d 1123, 941 NYS2d 328 (3d Dept 2012) (law does not favor construction that creates ambiguity).

The party seeking to enforce a contractual obligation generally has the burden of proof with respect to a condition precedent, Curtis Properties Corp. v Greif Companies, 212 AD2d 259, 628 NYS2d 628 (1st Dept 1995). The occurrence of a condition precedent in a contract must be proved by the party relying upon it, but only to the extent that it has been denied "specifically and with particularity" in the pleadings of the opposing party, CPLR 3015(a); 1199 Housing Corp. v International Fidelity Ins. Co., 14 AD3d 383, 788 NYS2d 88 (1st Dept 2005); see also Igbara Realty Corp. v New York Property Ins. Underwriting Ass'n, 63 NY2d 201, 481 NYS2d 60, 470 NE2d 858 (1984). However, if plaintiff alleges the particulars of its performance and the answer merely denies such allegation, plaintiff must prove the performance or occurrence even though not specifically denied with particularity, see Allis-Chalmers Mfg. Co. v Malan Const. Corp., 30 NY2d 225, 331 NYS2d 636, 282 NE2d 600 (1972).

Parol evidence may be admissible to prove a condition precedent to the legal effectiveness of a contract if the condition is not contradictory to or at variance with the express terms of the contract, Hicks v Bush, 10 NY2d 488, 225 NYS2d 34, 180 NE2d 425 (1962); see Bank of Suffolk County v Kite, 49 NY2d 827, 427 NYS2d 782, 404 NE2d 1323 (1980); Tambe Elec., Inc. v Home Depot U.S.A., Inc., 49 AD3d 1161, 856 NYS2d 373 (4th Dept 2008). In such cases, the purpose of the parol evidence is not to vary the agreement, but rather to establish that the agreement never became legally effective, Coffey v E.Nfrastructure Technologies, Inc., 96 AD3d 1139, 946 NYS2d 295 (3d Dept 2012); see Libasci v Singares, 128 AD3d 1239, 9 NYS3d 715 (3d Dept 2015) (parol evidence admissible to show that there was no meeting of minds).

A party to a contract may not frustrate its performance by bringing about the failure of a condition precedent, A.H.A. General Const., Inc. v New York City Housing Authority, 92 NY2d 20, 677 NYS2d 9, 699 NE2d 368 (1998); Rochester Community Individual Practice Ass'n, Inc. v Finger Lakes Health Ins. Co., Inc., 281 AD2d 977, 722 NYS2d 663 (4th Dept 2001); Creighton v Milbauer, 191 AD2d 162, 594 NYS2d 185 (1st Dept 1993); see RSB Bedford Associates, LLC v Ricky's Williamsburg, Inc., 91 AD3d 16, 933 NYS2d 3 (1st Dept 2011) (whether non-repudiating party was ready, willing and able to perform irrelevant where repudiating party frustrated non-repudiating party's ability to perform).

Clear and unambiguous notice and reporting requirements in a construction agreement operate as conditions precedent, Fahs Rolston Paving Corp. v Chemung, 43 AD3d 1192, 841 NYS2d 404 (3d Dept 2007), and are not deemed waived by allegations of prior practice with respect to other agreements, A.H.A. General Const., Inc. v New York City Housing Authority, 92 NY2d 20, 677 NYS2d 9, 699 NE2d 368 (1998), or allegations of conversations about concerns over delays, Kingsley Arms, Inc. v Sano Rubin Const. Co., Inc., 16 AD3d 813, 791 NYS2d 196 (3d Dept 2005); see Three Bros. Roofing Contractors, Inc. v New York Housing Authority, 269 AD2d 523, 703 NYS2d 237 (2d Dept 2000). However, where the contract does not explicitly require strict compliance with notice and documentation requirements, nor contain a provision prohibiting estoppel or waiver, the defendant's actual knowledge of the claim may establish a waiver of the notice and reporting requirements, G. De Vincentis & Son Const., Inc. v Oneonta, 304 AD2d 1006, 759 NYS2d 216 (3d Dept 2003). Further, in the context of a transaction involving mortgage-backed securities, a notice of nonconforming mortgages was unnecessary where the defendant itself had discovered the defect, U.S. Bank Nat. Ass'n v GreenPoint Mortg. Funding, Inc., 147 AD3d 79, 45 NYS3d 11 (1st Dept 2016). Modifications in cases involving private contracts may serve to modify or eliminate contract provisions requiring written notice, Barsotti's, Inc. v Consolidated Edison Co. of New York, Inc., 254 AD2d 211, 680 NYS2d 88 (1st Dept 1998). For a discussion of oral modifications and the Statute of Frauds, see discussion infra.

Compliance with a contract provision in a transaction involving mortgage-backed securities that requires a notice of breach as a means of triggering the defendant's opportunity to cure constitutes a condition precedent to bringing a breach of contract

claim, ACE Securities Corp. v DB Structured Products, Inc., 25 NY3d 581, 15 NYS3d 716, 36 NE3d 623 (2015). A notice of contractual breach that is provided after an action on the breach is commenced by filing a summons with notice is not sufficient to trigger the defendant's obligation to cure, since it does not provide sufficient opportunity for such cure, U.S. Bank Nat. Ass'n v GreenPoint Mortg. Funding, Inc., 147 AD3d 79, 45 NYS3d 11 (1st Dept 2016).

Absent a clear expression to the contrary, a contract provision that payment is not due the subcontractor until the owner has paid the general contractor is to be construed as fixing a time for payment, not as establishing a condition precedent for payment, Schuler-Haas Elec. Co. v Aetna Cas. & Sur. Co., 40 NY2d 883, 389 NYS2d 348, 357 NE2d 1003 (1976); see North Cent. Mechanical, Inc. v Hunt Const. Group, Inc., 43 AD3d 1396, 843 NYS2d 894 (4th Dept 2007); Otis Elevator Co. v George A. Fuller Co., 172 AD2d 732, 569 NYS2d 118 (2d Dept 1991); Crown Plastering Corp. v Elite Associates, Inc., 166 AD2d 495, 560 NYS2d 694 (2d Dept 1990). Such a provision does not indefinitely suspend a subcontractor's right to payment upon the failure of an owner to pay the general contractor and does not violate public policy, West-Fair Elec. Contractors v Aetna Cas. & Sur. Co., 87 NY2d 148, 638 NYS2d 394, 661 NE2d 967 (1995). A pay-when-paid provision that forces the subcontractor to assume the risk that the owner will fail to pay the general contractor is void and unenforceable as contrary to public policy as set forth in Lien Law § 34, West-Fair Elec. Contractors v Aetna Cas. & Sur. Co., supra; J & K Plumbing & Heating Co. v William H. Lane, Inc., 13 AD3d 856, 786 NYS2d 253 (3d Dept 2004); American Bldg. Supply Corp. v Avalon Properties, Inc., 8 AD3d 515, 779 NYS2d 517 (2d Dept 2004). However, in a building project on land owned by the Oneida Indian Nation, a contract provision expressly providing that payment to the contractor is a condition precedent to the contractor's obligation to pay the subcontractor, the provision will be enforced because the subcontractor does not have rights under the Lien Law, Cives Corp. v Hunt Const. Group, Inc., 91 AD3d 1178, 937 NYS2d 426 (3d Dept 2012). A contract that makes the general contractor merely the owner's agent for the purpose of making payment is contrary to public policy because the owner's default would result in no payment to the subcontractor, Blandford Land Clearing Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa., 260 AD2d 86, 698 NYS2d 237 (1st Dept 1999).

Where a real estate contract states that it is "subject to" or "contingent upon" the approval of each party's attorney within a specified period and no further limitations on approval appear in the contract, this language means that no vested rights are created by the contract before the contingency period expires and that an attorney for either party may timely disapprove the contract for any reason or no stated reason, Moran v Erk, 11 NY3d 452, 872 NYS2d 696, 901 NE2d 187 (2008). However, the First Department has held that the rule permitting parol evidence to prove the existence of an oral side agreement creating a condition precedent is not applicable to fully executed contracts for the sale of real estate containing broad merger clauses, particularly where the merger clause specifies that neither party has relied on any statement not set forth in the written agreement, Torres v D'Alesso, 80 AD3d 46, 910 NYS2d 1 (1st Dept 2010). The Torres court noted its disagreement with the contrary Second Department holding in Procopis v G. P. P. Restaurants, Inc., 43 AD2d 974, 352 NYS2d 230 (2d Dept 1974), and further noted that its decision was not inconsistent with the First Department decision in Mack-Lowe v Picault-Cadet, 33 AD3d 504, 823 NYS2d 55 (1st Dept 2006), because the issue was not directly argued in that case.

Parties may enter into a binding contract under which the obligations of the parties are conditioned on the negotiation of future agreements, IDT Corp. v Tyco Group, S.A.R.L., 23 NY3d 497, 991 NYS2d 574, 15 NE3d 329 (2014). In such a case, the parties are obliged to negotiate in good faith, id. But that obligation can come to an end without a breach by either party, id.

## B. Performance Excused

### 1. Waiver

A party to a contract may show that performance has been waived, Bowen v Horgan, 259 NY 267, 181 NE 567 (1932); see Saperstein v Mechanics' & Farmers' Savings Bank of Albany, 228 NY 257, 126 NE 708 (1920); or prevented, Wagner v Derecktor, 306 NY 386, 118 NE2d 570 (1954); Cameron-Hawn Realty Co. v Albany, 207 NY 377, 101 NE 162 (1913); Lambert v Schiller, 156 AD3d 1285, 68 NYS3d 195 (3d Dept 2017) (acceptance of partial, varying performance); HGCD Retail Services, LLC v 44-45 Broadway Realty Co., 37 AD3d 43, 826 NYS2d 190 (1st Dept 2006). Moreover, formal tender of performance is not required where, by act or word, the other party has shown that, if made, such performance would not be accepted, Strasbourger v Leerburger, 233 NY 55, 134 NE 834 (1922).

## 2. Impossibility

Impossibility excuses a party's performance only when the destruction of the subject matter of the contract or of the means of performance makes performance objectively impossible, Kel Kim Corp. v Central Markets, Inc., 70 NY2d 900, 524 NYS2d 384, 519 NE2d 295 (1987); Kolodin v Valenti, 115 AD3d 197, 979 NYS2d 587 (1st Dept 2014); Warner v Kaplan, 71 AD3d 1, 892 NYS2d 311 (1st Dept 2009); Ahlstrom Machinery Inc. v Associated Airfreight Inc., 251 AD2d 852, 675 NYS2d 161 (3d Dept 1998). Thus, economic inability to perform contractual obligations, including insolvency and bankruptcy, is not a valid basis for excusing nonperformance, 407 East 61st Garage, Inc. v Savoy Fifth Ave. Corp., 23 NY2d 275, 296 NYS2d 338, 244 NE2d 37 (1968); Urban Archaeology Ltd. v 207 E. 57th Street LLC, 68 AD3d 562, 891 NYS2d 63 (1st Dept 2009); DiScipio v Sullivan, 30 AD3d 660, 816 NYS2d 576 (3d Dept 2006). Similarly, changes in aesthetic vision do not render it impractical or impossible to perform an agreement to place an inscription on a public monument, Reed Foundation, Inc. v Franklin D. Roosevelt Four Freedoms Park, LLC, 108 AD3d 1, 964 NYS2d 152 (1st Dept 2013).

Where performance becomes impossible because of action taken by the government, performance is excused, Metpath Inc. v Birmingham Fire Ins. Co. of Pennsylvania, 86 AD2d 407, 449 NYS2d 986 (1st Dept 1982). Performance is not excused when circumstances make it impossible, unless the impossibility results from an unanticipated event that could not have been foreseen or guarded against in the contract, Kel Kim Corp. v Central Markets, Inc., 70 NY2d 900, 524 NYS2d 384, 519 NE2d 295 (1987); RW Holdings, LLC v Mayer, 131 AD3d 1228, 17 NYS3d 171 (2d Dept 2015); Warner v Kaplan, 71 AD3d 1, 892 NYS2d 311 (1st Dept 2009); Thompson v McQueeney, 56 AD3d 1254, 868 NYS2d 443 (4th Dept 2008); Lagarenne v Ingber, 273 AD2d 735, 710 NYS2d 425 (3d Dept 2000); see Kolodin v Valenti, 115 AD3d 197, 979 NYS2d 587 (1st Dept 2014). The intervening act must be unforeseeable even if it is an action of government or the passage of legislation, RW Holdings, LLC v Mayer, supra.

## 3. Frustration of Purpose

A party may be excused for failure to perform when the fundamental purpose of the contract is frustrated by events beyond the contracting parties' control, Kel Kim Corp. v Central Markets, Inc., 70 NY2d 900, 524 NYS2d 384, 519 NE2d 295 (1987). "[T]he frustrated purpose must be so completely the basis of the contract that, as both parties understood, without it, the transaction would have made little sense," Jack Kelly Partners LLC v Zegelstein, 140 AD3d 79, 33 NYS3d 7 (1st Dept 2016); Crown It Services, Inc. v Koval-Olsen, 11 AD3d 263, 782 NYS2d 708 (1st Dept 2004); see PPF Safeguard, LLC v BCR Safeguard Holding, LLC, 85 AD3d 506, 924 NYS2d 391 (1st Dept 2011). The doctrine of frustration of purpose is not available where the event that prevented performance was foreseeable and provision could have been made for its occurrence, Warner v Kaplan, 71 AD3d 1, 892 NYS2d 311 (1st Dept 2009); Rebell v Trask, 220 AD2d 594, 632 NYS2d 624 (2d Dept 1995). However, frustration of a contract may result from a judicial interpretation that prevents the contract from being performed, see Arons v Charpentier, 36 AD3d 636, 828 NYS2d 482 (2d Dept 2007).

## 4. Force Majeure

A contractual force majeure clause is a clause that excuses nonperformance due to circumstances beyond the control of the parties, Kel Kim Corp. v Central Markets, Inc., 70 NY2d 900, 524 NYS2d 384, 519 NE2d 295 (1987). A force majeure clause is to be narrowly construed and, generally, only if the clause specifically includes the event that actually prevents a party's performance will that party be excused, id; Reade v Stoneybrook Realty, LLC, 63 AD3d 433, 882 NYS2d 8 (1st Dept 2009); see Urban Archaeology Ltd. v 207 E. 57th Street LLC, 68 AD3d 562, 891 NYS2d 63 (1st Dept 2009).

## 5. Performance Prevented by a Party

It is the general rule that a party to a contract cannot rely on the failure of another to perform when that party has frustrated or prevented the performance, see MHR Capital Partners LP v Presstek, Inc., 12 NY3d 640, 884 NYS2d 211, 912 NE2d 43 (2009); ADC Orange, Inc. v Coyote Acres, Inc., 7 NY3d 484, 824 NYS2d 192, 857 NE2d 513 (2006); Kooleraire Service & Installation Corp. v Board of Ed. of City of New York, 28 NY2d 101, 320 NYS2d 46, 268 NE2d 782 (1971); HGCD Retail Services, LLC v 44–45 Broadway Realty Co., 37 AD3d 43, 826 NYS2d 190 (1st Dept 2006).

## C. Time for Performance

Where the date for completion of a construction project is not stated in the contract, the law implies a reasonable time determined based on the subject matter of the contract, the situation of the parties, their intent, and the circumstances surrounding performance, Teramo & Co., Inc. v O'Brien-Sheipe Funeral Home, Inc., 283 AD2d 635, 725 NYS2d 87 (2d Dept 2001). Whether performance has been delayed beyond a reasonable time is a jury question, Lake Steel Erection, Inc. v Egan, 61 AD2d 1125, 403 NYS2d 387 (4th Dept 1978).

# V. Breach

## A. Breach of Contract Distinguished from Tort

### 1. In General

A breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated and the legal duty springs from circumstances extraneous to, and not constituting elements of, the contract, Dormitory Authority v Samson Construction Co., 30 NY3d 704, 70 NYS3d 893, 94 NE3d 456 (2018); Sommer v Federal Signal Corp., 79 NY2d 540, 583 NYS2d 957, 593 NE2d 1365 (1992); Clark-Fitzpatrick, Inc. v Long Island R. Co., 70 NY2d 382, 521 NYS2d 653, 516 NE2d 190 (1987); D'Ambrosio v Engel, 292 AD2d 564, 741 NYS2d 42 (2d Dept 2002); Non-Linear Trading Co., Inc. v Braddis Associates, Inc., 243 AD2d 107, 675 NYS2d 5 (1st Dept 1998); see Gordon v Teramo & Company, Inc., 308 AD2d 432, 764 NYS2d 144 (2d Dept 2003) (allegation that work was performed in less than skillful and workmanlike manner states cause of action for breach of contract, not negligence); Saint Patrick's Home for the Aged and Infirm v Laticrete Intern., Inc., 267 AD2d 166, 700 NYS2d 28 (1st Dept 1999) (applying principle to construction contract). The focus in distinguishing between breach of contract and tort is on whether a noncontractual duty was violated, Trustees of Columbia University in City of New York v Gwathmey Siegel and Associates Architects, 192 AD2d 151, 601 NYS2d 116 (1st Dept 1993); Apple Records, Inc. v Capitol Records, Inc., 137 AD2d 50, 529 NYS2d 279 (1st Dept 1988) (summarizing noncontractual duties giving rise to tort liability); see Rich v New York Cent. & H.R.R. Co., 87 NY 382 (1882). To ascertain whether an independent legal duty in tort exists, the court must examine the nature of the services performed, whether the defendant performed a service affected with a significant public interest, whether the failure to perform the service competently can have catastrophic consequences, the nature of the injury, how the injury occurred and the harm it caused, see Dormitory Authority v Samson Construction Co., supra; Sommer v Federal Signal Corp., supra. Where the plaintiff is essentially seeking enforcement of the contractual bargain, the action should proceed under a breach-of-contract theory, Dormitory Authority v Samson Construction Co., supra; Sommer v Federal Signal Corp., supra. Thus, where the damages alleged were clearly within the contemplation of the contract, merely charging a breach of a duty of due care does not, without more, transform a simple breach of contract into a tort claim, Dormitory Authority v Samson Construction Co., supra; Clark-Fitzpatrick, Inc. v Long Island R. Co., supra.

The First Department holds that, in determining whether a contract to provide services gives rise to an independent duty of care, the courts should consider as one of the "most significant elements" the nature of the harm that could result from negligent performance, Verizon New York, Inc. v Optical Communications Group, Inc., 91 AD3d 176, 936 NYS2d 86 (1st Dept 2011). Under that approach, tort liability arises only where catastrophic consequences flow from a party's failure to perform its contractual obligations with due care, id (citing New York University v Continental Ins. Co., 87 NY2d 308, 639 NYS2d 283, 662 NE2d 763 (1995)). The fact that the public may be negatively affected by negligent performance is not alone sufficient, Verizon New York, Inc. v Optical Communications Group, Inc., supra.

In Sommer v Federal Signal Corp., 79 NY2d 540, 583 NYS2d 957, 593 NE2d 1365 (1992), which involved an action between a skyscraper owner and its retained fire alarm company, the Court of Appeals found a tort duty independent of the contract in light of the nature of the service involved, the manner in which the injury arose, the resulting injury, the significant public interest associated with the service, and the catastrophic consequences that could result from the failure to perform carefully, see Reade v SL Green Operating Partnership, LP, 30 AD3d 189, 817 NYS2d 230 (1st Dept 2006) (tort liability existed independent of contract for landlord's alleged failure to protect building's sprinkler system from freezing in violation of statutory duty imposed by Multiple Dwelling Law § 78); Trustees of Columbia University in City of New York v

Gwathmey Siegel and Associates Architects, 192 AD2d 151, 601 NYS2d 116 (1st Dept 1993) (tort duty existed independent of contract for architectural services involving facade construction for tall building in heavily trafficked public area of college campus). In contrast, a health insurer did not owe a tort duty to perform its contractual obligations to its insureds with reasonable care because the contracts of insurance did not create a relationship for which a duty to the plaintiff was owed separate from the contractual obligations, Logan v Empire Blue Cross and Blue Shield, 275 AD2d 187, 714 NYS2d 119 (2d Dept 2000). Likewise, because its services did not implicate the public interest, a company that contracted to monitor a bank's burglar alarm system had no tort duty separate and apart from the obligations arising from the contract, Abacus Federal Savings Bank v ADT Sec. Services, Inc., 18 NY3d 675, 944 NYS2d 443, 967 NE2d 666 (2012); see Dormitory Authority v Samson Construction Co., 30 NY3d 704, 70 NYS3d 893, 94 NE3d 456 (2018) (tort claim was duplicative of breach of contract claim where damages sought in tort were within contemplation of contracting parties; plaintiff alleged no injury in tort that was not encompassed by breach of contract claim).

For a detailed analysis of whether or not a breach of contract can ever give rise to an action for fraud, see PJI 3:20.

Even where tort liability is available, recovery in negligence is unavailable for purely economic loss, see Verizon New York, Inc. v Optical Communications Group, Inc., 91 AD3d 176, 936 NYS2d 86 (1st Dept 2011). This rule reflects the principle that damages arising from the failure of the bargained-for consideration to meet the expectations of the parties are recoverable in contract, not tort, regardless of whether the claim is based on product nonperformance or negligent performance of services, id. The economic-loss rule does not distinguish between the liability of product manufacturers and product installers for damages relating to the expectations of contracting parties, id. For a further discussion of the principle that plaintiffs may not recover for purely economic loss in tort, see PJI 4:20.

## 2. Liability to Third Parties

A breach of a contractual obligation will give rise to tort liability to injured third parties only in limited circumstances, see Espinal v Melville Snow Contractors, Inc., 98 NY2d 136, 746 NYS2d 120, 773 NE2d 485 (2002); Palka v Servicemaster Management Services Corp., 83 NY2d 579, 611 NYS2d 817, 634 NE2d 189 (1994); Eaves Brooks Costume Co., Inc. v Y.B.H. Realty Corp., 76 NY2d 220, 557 NYS2d 286, 556 NE2d 1093 (1990).

There are three situations in which a party to a contract to render services may be liable in tort to third parties, Espinal v Melville Snow Contractors, Inc., 98 NY2d 136, 746 NYS2d 120, 773 NE2d 485 (2002); see Rahim v Sottile Sec. Co., 32 AD3d 77, 817 NYS2d 33 (1st Dept 2006). The first is where the contracting party, in failing to exercise reasonable care, "launches a force or instrument of harm" or, in other words, "[e]xacerbat[es] or creat[es] a dangerous condition," Espinal v Melville Snow Contractors, Inc., supra; see H.R. Moch Co. v Rensselaer Water Co., 247 NY 160, 159 NE 896 (1928); Belmer v HHM Associates, Inc., 101 AD3d 526, 957 NYS2d 16 (1st Dept 2012) (jury entitled to find that contractor created dangerous condition by leaving hole in road it had contracted to improve). The second is where the plaintiff detrimentally relies on the continued performance of the contracting party's duties, see Eaves Brooks Costume Co., Inc. v Y.B.H. Realty Corp., 76 NY2d 220, 557 NYS2d 286, 556 NE2d 1093 (1990). The third is where the contracting party has entirely displaced the other party's duty to safely maintain the premises, see Palka v Servicemaster Management Services Corp., 83 NY2d 579, 611 NYS2d 817, 634 NE2d 189 (1994). In those situations, the nexus between the defendant's contractual obligation and the non-contracting plaintiff's injury must be direct and demonstrable, not incidental or merely collateral, Palka v Servicemaster Management Services Corp., supra. Applying these principles in Espinal v Melville Snow Contractors, Inc., supra, the Court held that a snow removal company should not be held liable in tort to a third party who was injured as a result of a fall on the premises. Similarly, a security guard company that contracted with a retail store to provide service did not owe a duty to protect a store employee from an assault by a trespasser in the store since the employee was not an intended third-party beneficiary under the contract and none of the exceptions in Espinal were applicable, Rahim v Sottile Sec. Co., supra. For a further discussion of a tort duty arising from a contractual relationship, see PJI 2:12, Comment.

## B. Anticipatory Repudiation

## 1. In General

An anticipatory breach of contract occurs where a promisor, before the time fixed in the contract for performance has arrived, repudiates a contractual duty, Princes Point LLC v Muss Development L.L.C., 30 NY3d 127, 65 NYS3d 89, 87 NE3d 121 (2017). An anticipatory breach may take the form either of (1) a statement by the obligor to the obligee indicating that the obligor will commit a breach that would give the obligee a claim for damages for total breach or (2) a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach, Princes Point LLC v Muss Development L.L.C., supra (citing PJI); Norcon Power Partners, L.P. v Niagara Mohawk Power Corp., 92 NY2d 458, 682 NYS2d 664, 705 NE2d 656 (1998); see Union Ins. Co. of Philadelphia v Central Trust Co. of New York, 157 NY 633, 52 NE 671 (1899); Gardiner Intern., Inc. v J.W. Townsend & Associates, Inc., 13 AD3d 246, 788 NYS2d 312 (1st Dept 2004); Computer Possibilities Unlimited, Inc. v Mobil Oil Corp., 301 AD2d 70, 747 NYS2d 468 (1st Dept 2002).

In order to establish a claim of anticipatory repudiation based on a refusal to perform, the refusal must be clear and unqualified and must be a refusal to perform with respect to the entire contract, Highbridge Development BR, LLC v Diamond Development, LLC, 67 AD3d 1112, 888 NYS2d 654 (3d Dept 2009). Bringing an action for a declaratory judgment regarding the rights and obligations of a contract does not constitute an anticipatory repudiation because such an action merely seeks to define the rights and obligations of the parties, Princes Point LLC v Muss Development L.L.C., 30 NY3d 127, 65 NYS3d 89, 87 NE3d 121 (2017). Similarly, seeking judicial approval to avoid a performance obligation does not, standing alone, constitute an anticipatory repudiation of the contract; that a party seeks such relief does not necessarily establish that the party will not perform its contractual obligations absent judicial approval, Princes Point LLC v Muss Development L.L.C., supra (action seeking rescission, reformation or both).

A wrongful repudiation of the contract by one party before the time for performance entitles the nonrepudiating party to choose between two options: (1) treat the termination as an anticipatory breach and immediately claim damages for the breach, or (2) ignore the anticipatory breach, continue to perform the agreement and await the repudiating party's response, Strasbourger v Leerburger, 233 NY 55, 134 NE 834 (1922); Smith v Tenshore Realty, Ltd., 31 AD3d 741, 820 NYS2d 292 (2d Dept 2006); Velazquez v Equity LLC, 28 AD3d 473, 814 NYS2d 182 (2d Dept 2006); American Capital Access Service Corp. v Muessel, 28 AD3d 395, 814 NYS2d 139 (1st Dept 2006); see Princes Point LLC v Muss Development L.L.C., 30 NY3d 127, 65 NYS3d 89, 87 NE3d 121 (2017); American List Corp. v U.S. News and World Report, Inc., 75 NY2d 38, 550 NYS2d 590, 549 NE2d 1161 (1989); Tenavision, Inc. v Neuman, 45 NY2d 145, 408 NYS2d 36, 379 NE2d 1166 (1978); Long Island R. Co. v Northville Industries Corp., 41 NY2d 455, 393 NYS2d 925, 362 NE2d 558 (1977); Syracuse Orthopedic Specialists, P.C. v Hootnick, 42 AD3d 890, 839 NYS2d 897 (4th Dept 2007); Albany Medical College v Lobel, 296 AD2d 701, 745 NYS2d 250 (3d Dept 2002). Where one party repudiates a contract and the nonbreaching party does not treat the contract as terminated but instead affirms the contract, the nonbreaching party remains obligated to perform under the contract, see Computer Possibilities Unlimited, Inc. v Mobil Oil Corp., 301 AD2d 70, 747 NYS2d 468 (1st Dept 2002). The election to affirm the contract presupposes knowledge of the repudiation, id. When a party believes that the contract has been breached, that party may give timely notice to the other party and then continue its own performance, Syracuse Orthopedic Specialists, P.C. v Hootnick, supra; Albany Medical College v Lobel, supra. Although a party in that position does not waive the right to sue for breach, it does surrender the right to terminate later based on the breach, Syracuse Orthopedic Specialists, P.C. v Hootnick, supra; Albany Medical College v Lobel, supra; see New York Tel. Co. v Jamestown Tel. Corporation, 282 NY 365, 26 NE2d 295 (1940).

The doctrine of anticipatory repudiation is applicable to bilateral contracts that contemplate some future performance by the non-breaching party, American List Corp. v U.S. News and World Report, Inc., 75 NY2d 38, 550 NYS2d 590, 549 NE2d 1161 (1989); Gardiner Intern., Inc. v J.W. Townsend & Associates, Inc., 13 AD3d 246, 788 NYS2d 312 (1st Dept 2004) (doctrine applies to partnership agreements); see UCC § 2-610 (sale of goods). In cases of anticipatory breach, the non-repudiating party need not tender performance, Gjonaj v Sines, 69 AD3d 1188, 896 NYS2d 176 (3d Dept 2010). The doctrine relieves the nonrepudiating party of its obligation of future performance and entitles that party to recover the present value of its damages resulting from the repudiating party's breach, American List Corp. v U.S. News & World Report, Inc., supra; Marks v Smith, 65 AD3d 911, 885 NYS2d 463 (1st Dept 2009); Computer Possibilities Unlimited, Inc. v Mobil Oil Corp., 301 AD2d 70, 747 NYS2d 468 (1st Dept 2002). However, the non-repudiating party ordinarily must show that it was ready, willing and able to perform, regardless of whether that party is seeking specific performance or money damages, Pesa v Yoma Development Group, Inc., 18 NY3d 527, 942 NYS2d 1, 965 NE2d 228 (2012); see Yu Ling Hu v Zapas, 108 AD3d 621, 969 NYS2d 491 (2d Dept 2013); see also RSB Bedford Associates, LLC v Ricky's Williamsburg, Inc., 91 AD3d 16, 933 NYS2d 3 (1st Dept 2011) (whether non-repudiating party was ready, willing and able to perform irrelevant where contract provided for contingency that non-repudiating party might not be ready, willing and able to perform, and contract

was repudiated before condition arose). Where the seller is seeking to retain the buyer's down payment, the seller's obligation to prove readiness, willingness and ability to perform is excused if the inability to perform stems from the failure to obtain contractually-required approvals, at least in cases where the non-repudiating seller made a significant effort to obtain the approvals before the repudiation occurred, Princes Point LLC v Muss Development L.L.C., 138 AD3d 112, 24 NYS3d 292 (1st Dept 2016). The obligation to prove readiness, willingness and ability to perform may be excused where it would impose on the non-repudiating party the "perhaps impossible burden of showing what its financial condition would have been for many years to come," id. Thus, in American List Corp. v U.S. News and World Report, Inc., supra, the Court of Appeals held that the obligation to prove the ability to perform in the future was excused where the non-repudiating party, a mailing list supplier, had promised to supply mailing lists to the repudiating party over a ten-year-period. To the extent that the holding in American List Corp. has been interpreted to excuse the obligation to prove the ability to perform when the non-repudiating party is seeking monetary relief rather than specific performance, see Karo v Paine, 55 AD3d 679, 865 NYS2d 654 (2d Dept 2008); G.G.F. Properties, LLC v Yu Mi Hong, 284 AD2d 427, 726 NYS2d 454 (2d Dept 2001); Ehrenpreis v Klein, 260 AD2d 532, 688 NYS2d 239 (2d Dept 1999); 150/160 Associates v Mojo-Stumer Architects, Inc., P.C., 174 AD2d 658, 571 NYS2d 520 (2d Dept 1991), the Court of Appeals expressly rejected that interpretation in Pesa v Yoma Development Group, Inc., supra.

An anticipatory repudiation can be grounded upon a finding that the other party has attempted to avoid its obligations by advancing an untenable interpretation of the contract, IBM Credit Financing Corp. v Mazda Motor Mfg. (USA) Corp., 92 NY2d 989, 684 NYS2d 162, 706 NE2d 1186 (1998); O'Connor v Sleasman, 37 AD3d 954, 830 NYS2d 377 (3d Dept 2007), or has communicated its intent to perform only upon the satisfaction of extra-contractual conditions, SPI Communications, Inc. v WTZA-TV Associates Ltd. Partnership, 229 AD2d 644, 644 NYS2d 788 (3d Dept 1996); see Created Gemstones, Inc. v Union Carbide Corp., 47 NY2d 250, 417 NYS2d 905, 391 NE2d 987 (1979).

With regard to contracts involving the sale of goods, pursuant to UCC § 2-610, an aggrieved party may wait a commercially reasonable time for performance or immediately deem the contract breached, QK Healthcare, Inc. v InSource, Inc., 108 AD3d 56, 965 NYS2d 133 (2d Dept 2013). If the aggrieved party chooses the former option, the statute of limitations does not begin to run immediately, QK Healthcare, Inc. v InSource, Inc., supra. Rather, it is measured from the expiration of a reasonable time for performance, an event that depends on the facts and circumstances on the particular case, id. In contrast, where the contract provides a specific time for performance, the limitations period begins to run from the day fixed for performance, id.

The UCC also provides that, where one party to a contract has reasonable grounds to believe that the other party will commit a breach by non-performance, that party may demand adequate assurance of performance, UCC § 2-609. That doctrine has been extended to long-term commercial contracts, at least in cases between corporate entities that are complex and "not reasonably susceptible of all security features being anticipated, bargained for and incorporated in the original contract," Norcon Power Partners, L.P. v Niagara Mohawk Power Corp., 92 NY2d 458, 682 NYS2d 664, 705 NE2d 656 (1998). The Court of Appeals, however, has declined to adopt a sweeping rule applying the doctrine to all contractual relationships, Norcon Power Partners, L.P. v Niagara Mohawk Power Corp., supra, and, in Bank of New York v River Terrace Associates, LLC, 23 AD3d 308, 804 NYS2d 728 (1st Dept 2005), the court refused to apply the doctrine to a long-term construction loan agreement, see Peng v Willets Point Asphalt Corp., 81 AD3d 618, 915 NYS2d 878 (2d Dept 2011) (declining to apply doctrine to contract for sale of real property).

## 2. Contracts for the Sale and Lease of Real Property

Where a buyer commits an anticipatory breach of a real property sale contract by repudiating the obligation to purchase, the seller is relieved of any duty to tender performance or wait for the time of performance to arrive before suing or agreeing to sell the property to someone else, Bucciero v Li, 191 AD2d 887, 594 NYS2d 876 (3d Dept 1993); see Belle Harbor Washington Hotel, Inc. v Jefferson Omega Corp., 17 AD3d 612, 795 NYS2d 597 (2d Dept 2005) (seller relieved from performing remaining obligations where buyer unilaterally repudiated). Where the buyer's conduct constitutes an anticipatory breach of a real property sale, the seller is entitled to retain the down payment as liquidated damages pursuant to the contract of sale, Princes Point LLC v Muss Development L.L.C., 138 AD3d 112, 24 NYS3d 292 (1st Dept 2016), rev'd on other grounds, 30 NY3d 127, 65 NYS3d 89, 87 NE3d 121 (2017); Warner v Kaplan, 71 AD3d 1, 892 NYS2d 311 (1st Dept 2009); Zullo v Varley, 57 AD3d 536, 868 NYS2d 290 (2d Dept 2008); Hegner v Reed, 2 AD3d 683, 770 NYS2d 87 (2d Dept 2003) (buyers' failure to tender performance and provide seller reasonable time to deliver premises in vacant and "broom clean"

condition bars them from recovering deposit); Vitolo v O'Connor, 223 AD2d 762, 636 NYS2d 163 (3d Dept 1996) (seller entitled to retain entire down payment where parties dealt at arm's length and there was no evidence of overreaching); Klein v Opert, 218 AD2d 784, 631 NYS2d 70 (2d Dept 1995) (buyer's knowing failure to provide reasonable time for seller to obtain necessary certificates and permits entitled seller to retain down payment together with interest from date of anticipatory breach). In an appropriate case, the seller may also obtain benefit-of-the-bargain damages, White v Farrell, 20 NY3d 487, 964 NYS2d 467, 987 NE2d 244 (2013) (seller may obtain benefit-of-the bargain damages measured by difference between contract price and fair market value at time of breach).

Where a seller has repudiated a real estate contract, the buyer seeking either specific performance or damages must show that it was ready, willing and able to complete the transaction, Pesa v Yoma Development Group, Inc., 18 NY3d 527, 942 NYS2d 1, 965 NE2d 228 (2012) (rejecting Karo v Paine, 55 AD3d 679, 865 NYS2d 654 (2d Dept 2008), and Ehrenpreis v Klein, 260 AD3d 532, 688 NYS2d 239 (2d Dept 1999), and adopting as "correct" Scull v Sicoli, 247 AD2d 852, 668 NYS2d 827 (4th Dept 1998), and Madison Investments, Inc. v Cohoes Associates, 176 AD2d 1021, 574 NYS2d 980 (3d Dept 1991)). However, such a showing need not be made where the buyer is merely seeking return of the down payment, Princes Point LLC v Muss Development L.L.C., 138 AD3d 112, 24 NYS3d 292 (1st Dept 2016), rev'd on other grounds, 30 NY3d 127, 65 NYS3d 89, 87 NE3d 121 (2017).

A landlord cannot recover for future rent in the absence of an acceleration clause, Beaumont Offset Corp. v Zito, 256 AD2d 372, 681 NYS2d 561 (2d Dept 1998); see Long Island R. Co. v Northville Industries Corp., 41 NY2d 455, 393 NYS2d 925, 362 NE2d 558 (1977); see also Runfola v Cavagnaro, 78 AD3d 1035, 910 NYS2d 910 (2d Dept 2010) (absent acceleration clause in lease, lease guarantor not liable for unaccrued rent).

The doctrine of anticipatory breach can be applied to leases that impose mutually interdependent obligations on the parties, Pitcher v Benderson-Wainberg Associates II, Ltd. Partnership, 277 AD2d 586, 715 NYS2d 104 (3d Dept 2000) (doctrine applicable to lease requiring landlord to repair structural components of building and maintain common areas and requiring tenant to operate the business for which premises had been leased).


### 3. Other Contracts

Courts have been reluctant to find that an insurer's improper disclaimer constitutes a "repudiation" as opposed to a "run-of-the-mill breach." It is only where the insurer disclaims its intention or duty to shape its conduct in accordance with the terms of the insurance contract that courts have found the act to constitute a repudiation, Seward Park Housing Corp. v Greater New York Mut. Ins. Co., 43 AD3d 23, 836 NYS2d 99 (1st Dept 2007).

There is no cause of action for anticipatory breach of a contract to make a testamentary provision, since beneficiaries enjoy only expectancy interests and not vested legal rights, Brown v Brown, 12 AD3d 176, 785 NYS2d 417 (1st Dept 2004); see Blackmon v Estate of Battcock, 78 NY2d 735, 579 NYS2d 642, 587 NE2d 280 (1991); Matter of Campione, 58 AD3d 1032, 872 NYS2d 210 (3d Dept 2009).

Where the plaintiff claims damages based on an anticipatory repudiation by defendant, the following charge should be given. Where there is a dispute as to whether the parties had a contract or what the contractual obligations were, PJI 4:1 should be charged:


### PJI 4:1.2 Contracts—Anticipatory Repudiation—Damages [Supplemental Instruction]

As you have heard, the plaintiff AB claims that (he, she it) is entitled to recover damages resulting from the defendant CD's breach of (his, her, its) contractual duties because, before the time that CD was required to [*state defendant's contractually promised performance, such as*: provide the agreed-upon services, transfer the property], CD [*state words or actions that plaintiff alleges constituted an anticipatory breach*].

A party to a contract may breach the contract, even before that party was supposed to perform its obligations, if the party clearly and unconditionally indicates through words or actions or both that (he, she, it) will not or, as a result of (his, her, its) voluntary actions, cannot do what (he, she, it) was required to do under the contract. In that situation, the breach is called an

anticipatory repudiation of the contract. Where the time for a party to perform (his, her, its) contract obligations has not yet occurred, that party's words or actions may be considered an anticipatory repudiation of the contract only if they clearly and unconditionally indicate an intention not to do what (he, she, it) was required to do under the contract, or an inability to perform those requirements due to the party's voluntary actions.

AB has the burden of proving, by a preponderance of the evidence, (1) that CD repudiated the contract in advance by clearly and unconditionally indicating, through words or actions or both, that CD would not or, as a result of (his, her, its) voluntary actions, could not do what (he, she, it) was required to do under the contract, (2) that AB was ready, willing and able to do what (he, she, it) was required to do under the contract; and (3) that AB sustained damages because of CD's repudiation of the contract.

If you decide (1) that CD [*state words or actions that plaintiff alleges constituted an anticipatory breach*], (2) that CD's (words, actions) clearly and unconditionally indicated that CD would not or, as a result of (his, her, its) voluntary actions, could not do what (he, she, it) was required to do under the contract, (3) that AB was ready, willing and able to perform (his, her, its) obligations under the contract, and (4) that AB sustained damages because of CD's repudiation of the contract, you will find for AB [*state where appropriate*: on (his, her, its) breach of contract claim] and you will go on to consider the amount of AB's damages. If you decide (1) that CD did not [*state words or actions that plaintiff alleges constituted an anticipatory breach*], or (2) that CD's (words, actions) did not clearly or unconditionally indicate that CD would not or, as a result of (his, her, its) voluntary actions, could not perform (his, her, its) obligations under the contract, or (3) that AB was not ready, willing and able to perform (his, her, its) obligations under the contract, or (4) that AB did not sustain damages because of CD's repudiation of the contract, you will find for CD [*state where appropriate*: on AB's breach of contract claim] [*state where appropriate*: and you will report to the court].

Where a party claims that its obligation to perform under its contract is excused because of the other party's anticipatory repudiation, the following charge should be given in conjunction with PJI 4:1:

## PJI 4:1.3 Contracts—Anticipatory Repudiation—Relief from Obligation to Perform [Supplemental Instruction]

As you have heard, the plaintiff AB claims that the defendant CD breached the contract with AB. If you decide that CD breached its contract with AB, you must go on to consider whether CD's breach should be excused because of AB's anticipatory repudiation of the contract. CD claims that (he, she it) was not required to perform (his, her, its) obligations under the contract because, before the time that CD was required to [*state defendant's contractually promised performance, such as*: provide the agreed-upon services, transfer the property], AB [*state words or action that defendant alleges constituted an anticipatory breach*].

A party to a contract is not required to perform (his, her, its) obligations under the contract if the other party clearly and unconditionally indicates, through words or actions or both, that (he, she, it) will not or, as a result of (his, her, its) voluntary actions, cannot do what (he, she, it) was required to do under the contract. In that situation, the breach is called an anticipatory repudiation of the contract. Where the time for a party to perform its contract obligations has not yet occurred, that party's words or actions may be considered an anticipatory repudiation of the contract only if they clearly and unconditionally indicate an intention not to do what (he, she, it) was required to do under the contract, or an inability to perform those requirements due to the party's voluntary actions.

To excuse (his, her, its) failure to perform (his, her, its) obligations under the contract to AB, CD has the burden of proving, by a preponderance of the evidence, (1) that AB repudiated the contract in advance by clearly and unconditionally indicating, through words or actions or both, that (he, she, it) would not or, as a result of (his, her, its) voluntary actions, could not do what AB was required to do under the contract, and (2) that CD was ready, willing and able to perform (his, her, its) obligations under the contract.

If you decide (1) that AB [*state words or actions that defendant alleges constituted an anticipatory breach*], and (2) that AB's (words, actions) clearly and unconditionally indicated that AB would not or, as a result of (his, her, its) voluntary actions, could not do what (he, she, it) was required to do under the contract, and (3) that CD was ready, willing and able to perform (his, her, its) obligations under the contract, you will find for CD [*state where appropriate*: on AB's breach of contract claim]. If you decide (1) that AB did not [*state words or actions that defendant alleges constituted an anticipatory*

breach], or (2) that AB's (words, actions) did not clearly or unconditionally indicate that AB would not or, as a result of (his, her, its) voluntary actions, could not do what (he, she, it) was required to do under the contract, or (3) that CD was not ready, willing and able to perform (his, her, its) obligations under the contract], you will find for AB and you will go on to consider AB's damages for CD's breach of the contract.

## VI. Enforcement

### A. Contract Construction

#### 1. In General

A fundamental tenet of contract law is that agreements are construed in accordance with the intent of the parties and the best evidence of the parties' intent is what they express in their written contract, Marin v Constitution Realty, LLC, 28 NY3d 666, 49 NYS3d 39, 71 NE3d 530 (2017); Schron v Troutman Sanders LLP, 20 NY3d 430, 963 NYS2d 613, 986 NE2d 430 (2013); Goldman v White Plains Center for Nursing Care, LLC, 11 NY3d 173, 867 NYS2d 27, 896 NE2d 662 (2008); see Hamburg v New York University School of Medicine, 155 AD3d 66, 62 NYS3d 26 (1st Dept 2017) (NYCHRL). In searching for the probable intent of the parties, the "fair and reasonable" meaning of the words controls, Sutton v East River Sav. Bank, 55 NY2d 550, 450 NYS2d 460, 435 NE2d 1075 (1982); Matter of Estate of Shatraw, 66 AD3d 1293, 887 NYS2d 722 (3d Dept 2009). When the terms of the contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, Goldman v White Plains Center for Nursing Care, LLC, supra; Greenfield v Philles Records, Inc., 98 NY2d 562, 750 NYS2d 565, 780 NE2d 166 (2002); see Goldstein v AccuScan, Inc., 2 NY3d 811, 782 NYS2d 50, 815 NE2d 657 (2004); Signature Realty, Inc. v Tallman, 2 NY3d 810, 781 NYS2d 259, 814 NE2d 429 (2004); see also Future Sales, Inc. v Fairfield Mall Ltd. Partnership, 175 AD2d 483, 572 NYS2d 528 (3d Dept 1991) (court should construe contract with due consideration to execution, circumstances and purpose and give the agreement fair and reasonable interpretation); Frederick v Clark, 150 AD2d 981, 541 NYS2d 660 (3d Dept 1989) (same). A complete, clear and unambiguous agreement must be enforced according to the plain meaning of its terms, Quadrant Structured Products Co., Ltd. v Vertin, 23 NY3d 549, 992 NYS2d 687, 16 NE3d 1165 (2014); Kolbe v Tibbetts, 22 NY3d 344, 980 NYS2d 903, 3 NE3d 1151 (2013); see Skanska USA Building Inc. v Atlantic Yards B2 Owner, LLC, 31 NY3d 1002, 74 NYS3d 805, 98 NE3d 720 (2018); Global Reinsurance Corporation of America v Century Indemnity Company, 30 NY3d 508, 69 NYS3d 207, 91 NE3d 1186 (2017); Nomura Home Equity Loan, Inc., Series 2006-FM2, by HSBC Bank USA, National Association v Nomura Credit & Capital, Inc., 30 NY3d 572, 69 NYS3d 520, 92 NE3d 743 (2017); Schron v Troutman Sanders LLP, supra, without reference to extrinsic materials outside the four corners of the document, Goldman v White Plains Center for Nursing Care, LLC, supra; see W.W.W. Associates, Inc. v Giancontieri, 77 NY2d 157, 565 NYS2d 440, 566 NE2d 639 (1990). In general, consent judgments are contracts and the rules of construction applicable to contracts apply, Banos v Rhea, 25 NY3d 266, 11 NYS3d 515, 33 NE3d 471 (2015).

It has been held that punctuation may not by itself create ambiguity, although it may be used as a guide to resolve an ambiguity, Banco Espirito Santo, S.A. v Concessionaria Do Rodoanel Oeste S.A., 100 AD3d 100, 951 NYS2d 19 (1st Dept 2012). Further, mistakes in grammar, spelling or punctuation should not be permitted to alter, contravene or vitiate the manifest intent of the parties as gleaned from the language employed, id.

In interpreting a contract, primary attention must be given to the purpose of the parties in making the contract, Greenfield v Philles Records, Inc., 98 NY2d 562, 750 NYS2d 565, 780 NE2d 166 (2002); Matter of Herzog, 301 NY 127, 93 NE2d 336 (1950); Madison Ave. Leasehold, LLC v Madison Bentley Associates LLC, 30 AD3d 1, 811 NYS2d 47 (1st Dept 2006), aff'd, 8 NY3d 59, 828 NYS2d 254, 861 NE2d 69 (2006) (in interpreting commercial parties' guaranty agreement, court should be guided by "the reasonable expectations of the parties and the business purpose to be served by their contract"), aff'd, 8 NY3d 59, 828 NYS2d 254, 861 NE2d 69; see Evans v Famous Music Corp., 1 NY3d 452, 775 NYS2d 757, 807 NE2d 869 (2004) (focus is ascertaining intention of parties at time they entered into contract); Rockwood v Vicarious Visions, Inc., 44 AD3d 1229, 843 NYS2d 867 (3d Dept 2007) (interpreting the term "employment" to give purpose to agreement). When the parties' purpose is ascertained, it takes precedence over all other canons of construction, Evans v Famous Music Corp., supra. However, a party's mere assertion that contract language has a particular meaning to him or her is not sufficient to raise a triable question of fact where the language is otherwise clear, unequivocal and understandable in

the context of the agreement as a whole, Vesta Capital Management LLC v Chatterjee Group, 78 AD3d 411, 910 NYS2d 64 (1st Dept 2010).

## 2. Ambiguous Contracts

When the meaning of a contract is plain and clear, it is entitled to be enforced according to its terms, Vintage, LLC v Laws Const. Corp., 13 NY3d 847, 892 NYS2d 286, 920 NE2d 342 (2009); Samuel v Druckman & Sinel, LLP, 12 NY3d 205, 879 NYS2d 10, 906 NE2d 1042 (2009); Beal Sav. Bank v Sommer, 8 NY3d 318, 834 NYS2d 44, 865 NE2d 1210 (2007); Vermont Teddy Bear Co., Inc. v 538 Madison Realty Co., 1 NY3d 470, 775 NYS2d 765, 807 NE2d 876 (2004); R/S Associates v New York Job Development Authority, 98 NY2d 29, 744 NYS2d 358, 771 NE2d 240 (2002); see Cortlandt Street Recovery Corp. v Bonderman, 31 NY3d 30, 73 NYS3d 95, 96 NE3d 191 (2018); Littleton Const. Ltd. v Huber Const., Inc., 27 NY3d 1081, 35 NYS3d 681, 55 NE3d 441 (2016); JFK Holding Co. LLC v New York, 21 NY3d 722, 977 NYS2d 716, 999 NE2d 1161 (2013) (plain language of lease enforced regardless of whether one party subjected to a hardship as a result of that enforcement, and should not be subverted by straining to find an ambiguity, Uribe v Merchants Bank of New York, 91 NY2d 336, 670 NYS2d 393, 693 NE2d 740 (1998); see Goldman v Metropolitan Life Ins. Co., 5 NY3d 561, 807 NYS2d 583, 841 NE2d 742 (2005); Star City Sportswear, Inc. v Yasuda Fire & Marine Ins. Co. of America, 1 AD3d 58, 765 NYS2d 854 (1st Dept 2003), aff'd, 2 NY3d 789, 781 NYS2d 255, 814 NE2d 425 (2004). This rule has special import in the context of real property transactions, where commercial certainty is a paramount concern and the contract has been negotiated by sophisticated business people at arm's length, Riverside South Planning Corp. v CRP/Extell Riverside, L.P., 13 NY3d 398, 892 NYS2d 303, 920 NE2d 359 (2009); TAG 380, LLC v ComMet 380, Inc., 10 NY3d 507, 860 NYS2d 433, 890 NE2d 195 (2008); South Road Associates, LLC v Intern. Business Machines Corp., 4 NY3d 272, 793 NYS2d 835, 826 NE2d 806 (2005); see Skanska USA Building Inc. v Atlantic Yards B2 Owner, LLC, 31 NY3d 1002, 74 NYS3d 805, 98 NE3d 720 (2018) (construction management agreement). When a contract for the sale of real property contains a clause specifically setting forth the buyer's remedies if the seller is unable to satisfy a stated condition, the buyer is limited to the remedies specifically provided in the contract, Gindi v Intertrade Internationale Ltd., 50 AD3d 575, 856 NYS2d 104 (1st Dept 2008); Arker Companies v State Urban Development Corp., 47 AD3d 739, 849 NYS2d 660 (2d Dept 2008); Mehlman v 592-600 Union Ave. Corp., 46 AD3d 338, 847 NYS2d 547 (1st Dept 2007); 101123 LLC v Solis Realty LLC, 23 AD3d 107, 801 NYS2d 31 (1st Dept 2005).

A contract is unambiguous if, on its face, it is reasonably susceptible of only one meaning, Selective Ins. Co. of America v Rensselaer, 26 NY3d 649, 27 NYS3d 92, 47 NE3d 458 (2016) (contract unambiguous where language has definite and precise meaning unattended by danger of misconception and concerning which there is no reasonable basis for difference of opinion); White v Continental Cas. Co., 9 NY3d 264, 848 NYS2d 603, 878 NE2d 1019 (2007); Greenfield v Philles Records, Inc., 98 NY2d 562, 750 NYS2d 565, 780 NE2d 166 (2002); Geothermal Energy Corp. v Caithness Corp., 34 AD3d 420, 825 NYS2d 485 (2d Dept 2006); see Global Reinsurance Corporation of America v Century Indemnity Company, 30 NY3d 508, 69 NYS3d 207, 91 NE3d 1186 (2017). Conversely, a contract is ambiguous if the agreement on its face is reasonably susceptible of more than one reasonable interpretation, Ellington v EMI Music, Inc., 24 NY3d 239, 997 NYS2d 339, 21 NE3d 1000 (2014); Brad H. v New York, 17 NY3d 180, 928 NYS2d 221, 951 NE2d 743 (2011); Angelino v Freedus, 69 AD3d 1203, 893 NYS2d 668 (3d Dept 2010); see Kolbe v Tibbetts, 22 NY3d 344, 980 NYS2d 903, 3 NE3d 1151 (2013); Pearson v Parkside Ltd. Liability Co., 44 AD3d 833, 843 NYS2d 442 (2d Dept 2007); Geothermal Energy Corp. v Caithness Corp., supra. However, terms in an agreement are not ambiguous merely because the parties interpret them differently, CT Inv. Management Co., LLC v Chartis Specialty Ins. Co., 130 AD3d 1, 9 NYS3d 220 (1st Dept 2015). Whether the contract is ambiguous is determined by examining the entire contract and considering the relation of the parties and the circumstances under which the contract was executed, with the wording to be considered in the light of the obligation as a whole and the intention of the parties as manifested thereby, Kass v Kass, 91 NY2d 554, 673 NYS2d 350, 696 NE2d 174 (1998); see Global Reinsurance Corporation of America v Century Indemnity Company, supra; William C. Atwater & Co. v Panama R. Co., 246 NY 519, 159 NE 418 (1927); Hamburg v New York University School of Medicine, 155 AD3d 66, 62 NYS3d 26 (1st Dept 2017) (NYCHRL). An agreement may appear clear on its face yet contain a latent ambiguity "by reason of the ambiguous or obscure state of extrinsic circumstances to which the words of the instrument refer," Teig v Suffolk Oral Surgery Associates, 2 AD3d 836, 769 NYS2d 599 (2d Dept 2003). However, extrinsic evidence cannot be used to create an ambiguity but only to resolve one, Triple Diamond Cafe, Inc. v Those Certain Underwriters at Lloyd's London, 124 AD3d 763, 3 NYS3d 46 (2d Dept 2015). Moreover, an ambiguity does not arise from mere silence, Nissho Iwai Europe PLC v Korea First Bank, 99 NY2d 115, 752 NYS2d 259, 782 NE2d 55 (2002), or from an omission or a mistake in a contract, Reiss v Financial Performance Corp., 97 NY2d 195, 738 NYS2d 658, 764 NE2d 958 (2001); Gladstein v Martorella, 71 AD3d 427, 896

NYS2d 329 (1st Dept 2010). Where an agreement contains a precise description of the consideration, the addition of the commonplace recital "other good and valuable consideration" does not give rise to an ambiguity about the agreed-upon consideration, Schron v Troutman Sanders LLP, 20 NY3d 430, 963 NYS2d 613, 986 NE2d 430 (2013).

Ambiguity as to the meaning of the terms and the intent of the parties may raise a jury question, but the threshold decision on whether a writing is ambiguous is the exclusive province of the court, Innophos, Inc. v Rhodia, S.A., 10 NY3d 25, 852 NYS2d 820, 882 NE2d 389 (2008); Bailey v Fish & Neave, 8 NY3d 523, 837 NYS2d 600, 868 NE2d 956 (2007); South Road Associates, LLC v Intern. Business Machines Corp., 4 NY3d 272, 793 NYS2d 835, 826 NE2d 806 (2005); Wallace v 600 Partners Co., 86 NY2d 543, 634 NYS2d 669, 658 NE2d 715 (1995); W.W.W. Associates, Inc. v Giancontieri, 77 NY2d 157, 565 NYS2d 440, 566 NE2d 639 (1990); Hartford Acc. & Indem. Co. v Wesolowski, 33 NY2d 169, 350 NYS2d 895, 305 NE2d 907 (1973); see Solartech Renewables, LLC v Vitti, 156 AD3d 995, 66 NYS3d 704 (3d Dept 2017). Extrinsic and parol evidence may not be considered unless it is determined that the document itself is ambiguous, Consedine v Portville Cent. School Dist., 12 NY3d 286, 879 NYS2d 806, 907 NE2d 684 (2009); South Road Associates, LLC v International Business Machines Corp., supra; W.W.W. Associates, Inc. v Giancontieri, supra; see Brad H. v New York, 17 NY3d 180, 928 NYS2d 221, 951 NE2d 743 (2011); Graev v Graev, 11 NY3d 262, 869 NYS2d 866, 898 NE2d 909 (2008); Madison Ave. Leasehold, LLC v Madison Bentley Associates LLC, 8 NY3d 59, 828 NYS2d 254, 861 NE2d 69 (2006); Amusement Business Underwriters, a Div. of Bingham & Bingham, Inc. v American Intern. Group, Inc., 66 NY2d 878, 498 NYS2d 760, 489 NE2d 729 (1985) (agreement ambiguous); Solartech Renewables, LLC v Vitti, supra; Hart v Kinney Drugs, Inc., 67 AD3d 1154, 888 NYS2d 297 (3d Dept 2009) (omission as to material issue may create ambiguity); Weston v Cornell University, 56 AD3d 1074, 868 NYS2d 364 (3d Dept 2008) (agreement ambiguous); NFL Enterprises LLC v Comcast Cable Communications, LLC, 51 AD3d 52, 851 NYS2d 551 (1st Dept 2008) (same). Extrinsic evidence may not be used to create an ambiguity, Brad H. v New York, supra. Where no extrinsic evidence of the parties' intent is offered, the construction of an ambiguous contract is a question of law for the court, Sutton v East River Sav. Bank, 55 NY2d 550, 450 NYS2d 460, 435 NE2d 1075 (1982); Hartford Acc. & Indem. Co. v Wesolowski, supra; Hamburg v American Ref-Fuel Co. of Niagara, L.P., 284 AD2d 85, 727 NYS2d 843 (4th Dept 2001).

In cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it and favorably to a party who had no voice in the selection of its language, 67 Wall St. Co. v Franklin Nat. Bank, 37 NY2d 245, 371 NYS2d 915, 333 NE2d 184 (1975); see Lai Ling Cheng v Modansky Leasing Co., Inc., 73 NY2d 454, 541 NYS2d 742, 539 NE2d 570 (1989); Pedersen v Royce, 38 AD3d 1090, 831 NYS2d 607 (3d Dept 2007); Coliseum Towers Associates v Nassau, 2 AD3d 562, 769 NYS2d 293 (2d Dept 2003); Croman v Wacholder, 2 AD3d 140, 769 NYS2d 219 (1st Dept 2003). An inquiry into the commercial reasonableness of the agreement is permitted only where the contract is ambiguous, Fundamental Long Term Care Holdings, LLC v Cammeby's Funding LLC, 20 NY3d 438, 962 NYS2d 583, 985 NE2d 893 (2013).

Under the maxim *expressio unius est exclusio alterius*, if parties to an ambiguous contract omit terms—particularly, terms that are readily found in other, similar contracts—the inescapable conclusion is that the parties intended the omission, Quadrant Structured Products Co., Ltd. v Vertin, 23 NY3d 549, 992 NYS2d 687, 16 NE3d 1165 (2014).

Where an agreement is ambiguous and extrinsic evidence is introduced to aid in construction, both sworn affidavits by both original parties to the contract and those parties' conduct after the contract was formed are significant evidence of the parties' intent, Wolfson v Faraci Lange, LLP, 103 AD3d 1272, 959 NYS2d 792 (4th Dept 2013); T.L.C. West, LLC v Fashion Outlets of Niagara, LLC, 60 AD3d 1422, 875 NYS2d 367 (4th Dept 2009); Waverly Corp. v New York, 48 AD3d 261, 851 NYS2d 176 (1st Dept 2008); Federal Ins. Co. v Americas Ins. Co., 258 AD2d 39, 691 NYS2d 508 (1st Dept 1999). Extrinsic evidence that is admissible to explain an ambiguous portion of a contract cannot be used to contradict the unambiguous contract provisions, P&B Capital Group, LLC v RAB Performance Recoveries, LLC, 128 AD3d 1534, 9 NYS3d 515 (4th Dept 2015).

Additional cases permitting the use of extrinsic evidence to explain ambiguous agreements include: J.P. Morgan Inv. Management Inc. v AmCash Group, LLC, 106 AD3d 559, 966 NYS2d 23 (1st Dept 2013) (definite evidence of industry custom and usage establishes, as a matter of law, meaning of undefined term); Dorel Steel Erection Corp. v Seaboard Surety Co., 291 AD2d 309, 738 NYS2d 52 (1st Dept 2002) (industry standards); Roemer and Featherstonhaugh P.C. v Featherstonhaugh, 274 AD2d 630, 710 NYS2d 190 (3d Dept 2000); Policastro v La Grange, 193 AD2d 950, 597 NYS2d 794 (3d Dept 1993); Show Car Speed Shop, Inc. v U.S. Fidelity and Guar. Co., 192 AD2d 1063, 596 NYS2d 608 (4th Dept 1993). As to contracts involving the sale of goods, see UCC § 2-208 (course of performance or practical construction).

### 3. Interpreting Different Parts of a Contract

All parts of a contract must be read in harmony to determine its meaning, Bombay Realty Corp. v Magna Carta, Inc., 100 NY2d 124, 760 NYS2d 734, 790 NE2d 1163 (2003); see Nomura Home Equity Loan, Inc., Series 2006-FM2, by HSBC Bank USA, National Association v Nomura Credit & Capital, Inc., 30 NY3d 572, 69 NYS3d 520, 92 NE3d 743 (2017) (contract must be read as harmonious and integrated whole); Hamburg v New York University School of Medicine, 155 AD3d 66, 62 NYS3d 26 (1st Dept 2017) (NYCHRL); Archer v Skokan, 70 AD3d 877, 897 NYS2d 127 (2d Dept 2010) ("interpretation of a mortgage, like any contract," requires "fair consideration of all its terms and provisions"). Thus, words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties manifested thereby, Cortlandt Street Recovery Corp. v Bonderman, 31 NY3d 30, 73 NYS3d 95, 96 NE3d 191 (2018); see Waverly Corp. v New York, 48 AD3d 261, 851 NYS2d 176 (1st Dept 2008) (contract should be read as a whole with consideration of its various clauses in context); Long Island Lighting Co. v Allianz Underwriters Ins. Co., 301 AD2d 23, 749 NYS2d 488 (1st Dept 2002) (each provision of insurance policy must be read in context of entire agreement to determine parties' intent). The court should construe the contract so as to give full meaning and effect to all of its material provisions, Beal Sav. Bank v Sommer, 8 NY3d 318, 834 NYS2d 44, 865 NE2d 1210 (2007); see Cortlandt St. Recovery Corp. v Bonderman, supra; Nomura Home Equity Loan, Inc., Series 2006-FM2, by HSBC Bank USA, National Association v Nomura Credit & Capital, Inc., supra. Where there is an inconsistency between a general provision and a specific provision, the specific provision controls, Muzak Corp. v Hotel Taft Corp., 1 NY2d 42, 150 NYS2d 171, 133 NE2d 688 (1956); Warshof v Rochester Community Sav. Bank, 286 AD2d 920, 730 NYS2d 634 (4th Dept 2001); Aguirre v New York, 214 AD2d 692, 625 NYS2d 597 (2d Dept 1995); see Nomura Home Equity Loan, Inc., Series 2006-FM2, by HSBC Bank USA, National Association v Nomura Credit & Capital, Inc., supra (specific provision will not be set aside in favor of catchall clause). A "notwithstanding anything to the contrary" provision controls over any contrary language in a contract, Graytwig Inc. v Dryden Mut. Ins. Co., 149 AD3d 1424, 53 NYS3d 395 (3d Dept 2017); see Warberg Opportunistic Trading Fund, L.P. v GeoResources, Inc., 112 AD3d 78, 973 NYS2d 187 (1st Dept 2013).

The contract should be read as a whole and every part should be interpreted with reference to the whole, Global Reinsurance Corporation of America v Century Indemnity Company, 30 NY3d 508, 69 NYS3d 207, 91 NE3d 1186 (2017); see Nomura Home Equity Loan, Inc., Series 2006-FM2, by HSBC Bank USA, National Association v Nomura Credit & Capital, Inc., 30 NY3d 572, 69 NYS3d 520, 92 NE3d 743 (2017). The court must ensure that excessive emphasis is not placed upon particular words or phrases, Bailey v Fish & Neave, 8 NY3d 523, 837 NYS2d 600, 868 NE2d 956 (2007); South Road Associates, LLC v Intern. Business Machines Corp., 4 NY3d 272, 793 NYS2d 835, 826 NE2d 806 (2005); Westmoreland Coal Co. v Entech, Inc., 100 NY2d 352, 763 NYS2d 525, 794 NE2d 667 (2003) (meaning of contract may be distorted where undue force is given to single words or phrases).

The use of different terms in the same agreement strongly implies that the words are to be accorded different meanings, NFL Enterprises LLC v Comcast Cable Communications, LLC, 51 AD3d 52, 851 NYS2d 551 (1st Dept 2008). When certain language is omitted from a provision in a contract but placed in other provisions, it must be assumed that the omission was intentional, U.S. Fidelity & Guar. Co. v Annunziata, 67 NY2d 229, 501 NYS2d 790, 492 NE2d 1206 (1986); Sterling Investor Services, Inc. v 1155 Nobo Associates, LLC, 30 AD3d 579, 818 NYS2d 513 (2d Dept 2006).

An interpretation of a contract that would leave one of its clauses without meaning or effect should be avoided, Two Guys from Harrison-N.Y., Inc. v S.F.R. Realty Associates, 63 NY2d 396, 482 NYS2d 465, 472 NE2d 315 (1984); Amaranth LLC v J.P. Morgan Chase & Co., 71 AD3d 40, 888 NYS2d 489 (1st Dept 2009); Nautilus Ins. Co. v Matthew David Events, Ltd., 69 AD3d 457, 893 NYS2d 529 (1st Dept 2010); McCabe v Witteveen, 34 AD3d 652, 825 NYS2d 499 (2d Dept 2006); see Nomura Home Equity Loan, Inc., Series 2006-FM2, by HSBC Bank USA, National Association v Nomura Credit & Capital, Inc., 30 NY3d 572, 69 NYS3d 520, 92 NE3d 743 (2017); Excess Ins. Co. Ltd. v Factory Mut. Ins., 3 NY3d 577, 789 NYS2d 461, 822 NE2d 768 (2004); Travelers Cas. and Sur. Co. v Certain Underwriters at Lloyd's of London, 96 NY2d 583, 734 NYS2d 531, 760 NE2d 319 (2001); Perlbinder v Board of Managers of 411 East 53rd Street Condominium, 65 AD3d 985, 886 NYS2d 378 (1st Dept 2009); RM 14 FK Corp. v Bank One Trust Co., N.A., 37 AD3d 272, 831 NYS2d 120 (1st Dept 2007); Polar Intern. Brokerage Corp. v Richman, 32 AD3d 717, 820 NYS2d 584 (1st Dept 2006). Also to be avoided are interpretations that would render a contract illusory when it is clear that the parties intended to be bound, Zurakov v Register.Com, Inc., 304 AD2d 176, 760 NYS2d 13 (1st Dept 2003), or would negate another provision, Bombay Realty Corp. v Magna Carta, Inc., 100 NY2d 124, 760 NYS2d 734, 790 NE2d 1163 (2003).

Where two seemingly conflicting contractual provisions can be reasonably reconciled, the court is required to do so and to give both effect, Long Island Lighting Co. v Allianz Underwriters Ins. Co., 301 AD2d 23, 749 NYS2d 488 (1st Dept 2002); see Hamburg v New York University School of Medicine, 155 AD3d 66, 62 NYS3d 26 (1st Dept 2017) (NYCHRL). Moreover, where a contract employs contradictory language, the specific provisions control over the general provisions, Herr v Herr, 97 AD3d 961, 949 NYS2d 786 (3d Dept 2012); Green Harbour Homeowners' Ass'n, Inc. v G.H. Development and Const., Inc., 14 AD3d 963, 789 NYS2d 319 (3d Dept 2005). The Court of Appeals has specifically declined to endorse "the first clause governs" view where there are conflicting provisions in the contract, Israel v Chabra, 12 NY3d 158, 878 NYS2d 646, 906 NE2d 374 (2009).

Where a handwritten or typewritten provision of a contract conflicts with the language of a preprinted form document, the handwritten or typewritten provision is controlling because it is presumed to express the most recent intentions of the parties, Kratzenstein v Western Assur. Co. of Toronto, 116 NY 54, 22 NE 221 (1889); Dazzo v Kilcullen, 56 AD3d 415, 866 NYS2d 747 (2d Dept 2008); Home Federal Sav. Bank v Sayegh, 250 AD2d 646, 671 NYS2d 698 (2d Dept 1998).

## 4. Separate and Related Contracts

Ordinarily, contracts remain separate unless their history and subject matter show them to be unified, Ripley v International Rys. of Central America, 8 NY2d 430, 209 NYS2d 289, 171 NE2d 443 (1960); Suffolk v Long Island Power Authority, 100 AD3d 944, 954 NYS2d 619 (2d Dept 2012); see Primex Intern. Corp. v Wal-Mart Stores, Inc., 89 NY2d 594, 657 NYS2d 385, 679 NE2d 624 (1997). The primary standard is the intent manifested, viewed in light of the surrounding circumstances, G.K. Alan Assoc., Inc. v Lazzari, 44 AD3d 95, 840 NYS2d 378 (2d Dept 2007), aff'd, 10 NY3d 941, 862 NYS2d 855, 893 NE2d 133 (2008); Suffolk v Long Island Power Authority, supra; Davimos v Halle, 60 AD3d 576, 877 NYS2d 20 (1st Dept 2009); Elite Promotional Marketing, Inc. v Stumacher, 8 AD3d 525, 779 NYS2d 528 (2d Dept 2004); Nancy Neale Enterprises, Inc. v Eventful Enterprises, Inc., 260 AD2d 453, 688 NYS2d 207 (2d Dept 1999). In the absence of anything indicating a contrary intent, contemporaneous instruments between the same parties relating to the same subject matter are to be read together and interpreted as forming part of one and the same transaction, Applehead Pictures LLC v Perelman, 80 AD3d 181, 913 NYS2d 165 (1st Dept 2010); Gulf Ins. Co. v Transatlantic Reinsurance Co., 69 AD3d 71, 886 NYS2d 133 (1st Dept 2009); Davimos v Halle, supra; see Solartech Renewables, LLC v Vitti, 156 AD3d 995, 66 NYS3d 704 (3d Dept 2017). This principle did not apply, however, to agreements executed the same day, but not contemporaneously where the agreements demonstrate contrary intents, Matter of Oak Hill Capital Partners, L.P. v Cuti, 148 AD3d 504, 49 NYS3d 413 (1st Dept 2017). Moreover, separate written agreements involving different parties, serving different purposes and not referring to each other should not be regarded as interdependent or combined to form a unitary whole, Applehead Pictures LLC v Perelman, supra. Absent clear indication to the contrary, contracts manifesting separate assents to be bound are generally presumed to be separable, id; National Union Fire Ins. Co. of Pittsburgh v Clairmont, 231 AD2d 239, 662 NYS2d 110 (1st Dept 1997). Moreover, agreements are treated as separate where they are not inextricably intertwined and where the breach of one would not undo the obligations imposed by the other, Fundamental Long Term Care Holdings, LLC v Cammeby's Funding LLC, 20 NY3d 438, 962 NYS2d 583, 985 NE2d 893 (2013).

## 5. Interpreting Words and Phrases

Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties manifested thereby, Kolbe v Tibbetts, 22 NY3d 344, 980 NYS2d 903, 3 NE3d 1151 (2013); Hamburg v New York University School of Medicine, 155 AD3d 66, 62 NYS3d 26 (1st Dept 2017) (NYCHRL). The words in a contract are ordinarily applied according to their plain and ordinary meaning, see Jade Realty LLC v Citigroup Commercial Mortg. Trust 2005-EMG, 20 NY3d 881, 957 NYS2d 280, 980 NE2d 945 (2012); see White v Continental Cas. Co., 9 NY3d 264, 848 NYS2d 603, 878 NE2d 1019 (2007). This principle has even greater force in the context of real property transactions where commercial certainty is paramount, Vermont Teddy Bear Co., Inc. v 538 Madison Realty Co., 1 NY3d 470, 775 NYS2d 765, 807 NE2d 876 (2004); Wallace v 600 Partners Co., 86 NY2d 543, 634 NYS2d 669, 658 NE2d 715 (1995), as well as where the contract was negotiated by experienced, counseled business people, Global Reinsurance Corporation of America v Century Indemnity Company, 30 NY3d 508, 69 NYS3d 207, 91 NE3d 1186 (2017); see Skanska USA Building Inc. v Atlantic Yards B2 Owner, LLC, 31 NY3d 1002, 74 NYS3d 805, 98 NE3d 720 (2018). However, in the limited instances where literal interpretation would result in an absurdity or render the contract unenforceable in whole or in

part, courts transpose, reject, or supply words to make the meaning of the contract more reasonable or to carry out the intention of the parties, Wallace v 600 Partners Co., supra; Ross v Sherman, 95 AD3d 1100, 944 NYS2d 620 (2d Dept 2012); Meyer v Stout, 79 AD3d 1666, 914 NYS2d 834 (4th Dept 2010); 1414 APF, LLC v Deer Stags, Inc., 39 AD3d 329, 834 NYS2d 133 (1st Dept 2007); see 82–90 Broadway Realty Corp. v New York Supermarket, Inc., 154 AD3d 797, 62 NYS3d 186 (2d Dept 2017). The same principle is applied where a proposed construction of a contract would give one party an unfair and unreasonable advantage over the other or would place one party at the mercy of the other, Luver Plumbing and Heating, Inc. v Mo's Plumbing and Heating, 144 AD3d 587, 43 NYS3d 267 (1st Dept 2016). Such an approach to contract interpretation may be used even where there is no viable claim for reformation, Wallace v 600 Partners Co., supra; Hickman v Saunders, 228 AD2d 559, 645 NYS2d 49 (2d Dept 1996); see 82–90 Broadway Realty Corp. v New York Supermarket, Inc., supra; Ross v Sherman, supra; Meyer v Stout, supra. This principle does not apply where the contract terms, as written, are merely novel or unconventional, Jade Realty LLC v Citigroup Commercial Mortg. Trust 2005-EMG, supra; see Wallace v 600 Partners Co., supra.

When interpreting a business contract, the tests to be applied are common speech and the reasonable expectation and purpose of the ordinary business person in the factual context in which terms of art and understanding are used, often also keyed to the level of business sophistication and acumen of the particular parties, Uribe v Merchants Bank of New York, 91 NY2d 336, 670 NYS2d 393, 693 NE2d 740 (1998); Baughman v Merchants Mut. Ins. Co., 87 NY2d 589, 640 NYS2d 857, 663 NE2d 898 (1996); Michaels v Buffalo, 85 NY2d 754, 628 NYS2d 253, 651 NE2d 1272 (1995); see Beardslee v Inflection Energy, LLC, 25 NY3d 150, 8 NYS3d 618, 31 NE3d 80 (2015); BP Air Conditioning Corp. v One Beacon Ins. Group, 8 NY3d 708, 840 NYS2d 302, 871 NE2d 1128 (2007); Bombay Realty Corp. v Magna Carta, Inc., 100 NY2d 124, 760 NYS2d 734, 790 NE2d 1163 (2003); Album Realty Corp. v American Home Assur. Co., 80 NY2d 1008, 592 NYS2d 657, 607 NE2d 804 (1992); Greater New York Mut. Ins. Co. v Mutual Marine Office, Inc., 3 AD3d 44, 769 NYS2d 234 (1st Dept 2003).

A court may not by construction add or excise terms, nor may it distort the meaning of the terms used and thereby make a new contract for the parties under the guise of interpreting the writing, Skanska USA Building Inc. v Atlantic Yards B2 Owner, LLC, 31 NY3d 1002, 74 NYS3d 805, 98 NE3d 720 (2018); Nomura Home Equity Loan, Inc., Series 2006-FM2, by HSBC Bank USA, National Association v Nomura Credit & Capital, Inc., 30 NY3d 572, 69 NYS3d 520, 92 NE3d 743 (2017); Bailey v Fish & Neave, 8 NY3d 523, 837 NYS2d 600, 868 NE2d 956 (2007); Reiss v Financial Performance Corp., 97 NY2d 195, 738 NYS2d 658, 764 NE2d 958 (2001); Bazin v Walsam 240 Owner, LLC, 72 AD3d 190, 894 NYS2d 411 (1st Dept 2010); NFL Enterprises LLC v Comcast Cable Communications, LLC, 51 AD3d 52, 851 NYS2d 551 (1st Dept 2008); Stevens & Thompson Paper Co., Inc. v Niagara Mohawk Power Corp., 49 AD3d 1011, 853 NYS2d 423 (3d Dept 2008). Technical words should be interpreted as usually understood by persons in the profession or business to which they relate and must be taken in the technical sense, unless the context of the instrument or applicable usage or surrounding circumstances clearly indicate a different meaning, Nau v Vulcan Rail & Construction Co., 286 NY 188, 36 NE2d 106 (1941); William T. Bell & Associates, LLP v Pyramid Brokerage Company, Inc., 281 AD2d 943, 721 NYS2d 893 (4th Dept 2001); Estate of Hatch by Ruzow v Nyco Minerals Inc., 245 AD2d 746, 666 NYS2d 296 (3d Dept 1997); see J.P. Morgan Inv. Management Inc. v AmCash Group, LLC, 106 AD3d 559, 966 NYS2d 23 (1st Dept 2013) (extrinsic evidence may establish meaning of term as matter of law where parties were aware of established term's meaning or its usage in business to which transaction relates is so notorious that persons of ordinary prudence would be aware of it and there is no question that parties intended to follow rather than depart from industry custom).

A recital paragraph in a document is not determinative of the rights and obligations of the parties to the agreement, Andersen ex rel. Andersen, Weinroth & Co., L.P. v Weinroth, 48 AD3d 121, 849 NYS2d 210 (1st Dept 2007); see Solid Waste Institute, Inc. v Sanitary Disposal, Inc., 120 AD2d 915, 502 NYS2d 835 (3d Dept 1986) (heading and preamble). However, a recital may provide assistance in construing the agreement, Frenchman & Sweet, Inc. v Philco Discount Corp., 21 AD2d 180, 249 NYS2d 611 (4th Dept 1964).

**6. Particular Words and Phrases**

Absent explicit language demonstrating the parties' intent to bind future affiliates of the contracting parties, the term "affiliates" includes only those affiliates in existence at the time that the contract was executed, Ellington v EMI Music, Inc., 24 NY3d 239, 997 NYS2d 339, 21 NE3d 1000 (2014).

In construing the meaning of the word "registration" in the context of acquiring the use of a domain name on the Internet, the

custom and usage of the word in that context is more relevant than the dictionary definition of the word, Zurakov v Register.Com, Inc., 304 AD2d 176, 760 NYS2d 13 (1st Dept 2003).

A provision in an indemnification agreement requiring the indemnitor to defend and hold the indemnitee harmless for environmental losses that arise out of or relate to any environmental remedial, investigatory or monitoring action that the indemnitee was "required to take under or in connection with any Environmental Law" applies to losses sustained in connection with a "potentially responsible person" (PRP) letter sent to the indemnitee demanding either a consent order or payment, Remet Corp. v Pyne, 26 NY3d 58, 19 NYS3d 796, 41 NE3d 760 (2015). Although the PRP letter in Remet Corp. v Estate of Pyne had language indicating that the indemnitee's response was "voluntary," it was sufficiently coercive and adversarial as to "require" action, since it threatened litigation and imminent adverse legal and financial consequences for a failure to act, id.

## B. Waiver

A waiver of a contractual provision requires the knowing, voluntary and intentional abandonment of a known right, Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Management, L.P., 7 NY3d 96, 817 NYS2d 606, 850 NE2d 653 (2006), which, but for the waiver, would have been enforceable, General Motors Acceptance Corp. v Clifton-Fine Cent. School Dist., 85 NY2d 232, 623 NYS2d 821, 647 NE2d 1329 (1995); AXA Global Risks U.S. Ins. Co. v Sweet Associates, Inc., 302 AD2d 844, 755 NYS2d 759 (3d Dept 2003).

A waiver may be accomplished by affirmative conduct or by failing to act so as to evince an intent not to claim a purported advantage, Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Management, L.P., 7 NY3d 96, 817 NYS2d 606, 850 NE2d 653 (2006); General Motors Acceptance Corp. v Clifton-Fine Cent. School Dist., 85 NY2d 232, 623 NYS2d 821, 647 NE2d 1329 (1995); see 159 MP Corp. v Redbridge Bedford, LLC, 160 AD3d 176, 71 NYS3d 87 (2d Dept 2018); Lambert v Schiller, 156 AD3d 1285, 68 NYS3d 195 (3d Dept 2017); Tatko v Sheldon Slate Products Co., Inc., 2 AD3d 1030, 769 NYS2d 626 (3d Dept 2003). The principles governing waiver are designed to prevent the waiving party from lulling the other party into a belief that strict compliance with a contractual duty will not be required in the future, Kamco Supply Corp. v On the Right Track, LLC, 149 AD3d 275, 49 NYS3d 721 (2d Dept 2017). A waiver should not be lightly presumed and must be based on a clear manifestation of intent to relinquish a contractual protection, Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Management, L.P., supra; Gilbert Frank Corp. v Federal Ins. Co., 70 NY2d 966, 525 NYS2d 793, 520 NE2d 512 (1988); 159 MP Corp. v Redbridge Bedford, LLC, 160 AD3d 176, 71 NYS3d 87 (2d Dept 2018). The mere fact that one party to a contract undertook voluntary efforts to assist the other does not render an explicit non-waiver clause inoperative where the record evinces no intent to waive rights, Marosu Realty Corp. v Community Preservation Corp., 26 AD3d 74, 808 NYS2d 628 (1st Dept 2005). Likewise, a party's reluctance to terminate a contract for a breach and its attempt to encourage the breaching party to meet its contractual obligations are not necessarily construed as a waiver, Kamco Supply Corp. v On the Right Track, LLC, supra. The existence of an intent to forgo a contractual right is generally a question of fact, Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Management, L.P., supra; see Schreiber v K-Sea Transp. Corp., 9 NY3d 331, 849 NYS2d 194, 879 NE2d 733 (2007); Jefpaul Garage Corp. v Presbyterian Hosp. in City of New York, 61 NY2d 442, 474 NYS2d 458, 462 NE2d 1176 (1984). The existence of a nonwaiver clause does not in and of itself preclude waiver of a contract clause, Stassa v Stassa, 123 AD3d 804, 999 NYS2d 116 (2d Dept 2014); Kenyon & Kenyon v Logany, LLC, 33 AD3d 538, 823 NYS2d 72 (1st Dept 2006); see Kamco Supply Corp. v On the Right Track, LLC, supra.

The waiver analysis is particularly complex when the contract provides for repeated occasions for performance over the course of months or years, Kamco Supply Corp. v On the Right Track, LLC, 149 AD3d 275, 49 NYS3d 721 (2d Dept 2017); see NYUCC § 2-208; see also id § 2-209. Although the election-of-remedies doctrine is directly related to the concept of waiver, a waiver that is deemed to apply prospectively to executory obligations has a broader effect than an "election of remedies," which represents a choice to forgo treating a past material breach as a justification for disaffirming the contract, Kamco Supply Corp. v On the Right Track, LLC, supra. Thus, a party's election to continue the contract despite the other party's failure to meet contractual minimum purchase requirements might have operated as a waiver of the past breaches but not necessarily of similar future breaches, id. Nevertheless, where the aggrieved party continues to accept shortfalls in the other party's performance, a "tipping point" may be reached where the aggrieved party's conduct will be deemed inconsistent with an intent to enforce the requirement and will be treated as a waiver, id.

To the extent it is executory, a waiver can be withdrawn provided the party whose performance has been waived is given

notice of the withdrawal and a reasonable time after notice within which to perform, Nassau Trust Co. v Montrose Concrete Products Corp., 56 NY2d 175, 451 NYS2d 663, 436 NE2d 1265 (1982); Kamco Supply Corp. v On the Right Track, LLC, 149 AD3d 275, 49 NYS3d 721 (2d Dept 2017); Stassa v Stassa, 123 AD3d 804, 999 NYS2d 116 (2d Dept 2014) (executory waiver effectively withdrawn upon filing of summons and complaint); Springside Land Co., LLC v Board of Managers of Springside Condominium I, 56 AD3d 654, 869 NYS2d 101 (2d Dept 2008); Hempstead v Freeport, 15 AD3d 567, 790 NYS2d 518 (2d Dept 2005); see Madison Ave. Leasehold, LLC v Madison Bentley Associates LLC, 8 NY3d 59, 828 NYS2d 254, 861 NE2d 69 (2006). However, a waiver could not be retracted shortly before a party's performance was due where the other party had repeatedly waived a contractual requirement in the past, Kamco Supply Corp. v On the Right Track, LLC, supra.

## C. Equitable Estoppel

Equitable estoppel "is imposed by law in the interest of fairness to prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought," Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Management, L.P., 7 NY3d 96, 817 NYS2d 606, 850 NE2d 653 (2006), quoting Nassau Trust Co. v Montrose Concrete Products Corp., 56 NY2d 175, 451 NYS2d 663, 436 NE2d 1265 (1982). Under the doctrine of equitable estoppel, a defendant is estopped from pleading a statute of limitations defense if the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action, Ross v Louise Wise Services, Inc., 8 NY3d 478, 836 NYS2d 509, 868 NE2d 189 (2007); see Pulver v Dougherty, 58 AD3d 978, 871 NYS2d 495 (3d Dept 2009) (equitable estoppel not available where plaintiffs knew relevant facts before expiration of statute of limitations and there was no wrongdoing by defendant that caused plaintiffs to delay bringing suit). Equitable estoppel is invoked to prohibit a party from engaging in certain conduct and cannot be the basis for the recovery of damages, Clifford R. Gray, Inc. v LeChase Const. Services, LLC, 31 AD3d 983, 819 NYS2d 182 (3d Dept 2006). A successor in interest, such as a landlord, is not necessarily subject to an equitable estoppel that is valid against his or her predecessor, unless the successor takes the interest with full knowledge of the facts creating the estoppel, Clearview Apartment Associates, LP v Ocasio, 17 Misc3d 23, 844 NYS2d 558 (AppT 2007).

The doctrine of equitable estoppel generally may not be applied as a basis for enforcing government contracts that violate express statutory provisions, Granada Bldgs., Inc. v Kingston, 58 NY2d 705, 458 NYS2d 906, 444 NE2d 1325 (1982), or contracts that violate agency regulations, New Surfside Nursing Home, LLC v Daines, 103 AD3d 637, 958 NYS2d 782 (2d Dept 2013), aff'd, 22 NY3d 1080, 981 NYS2d 665, 4 NE3d 966 (2014), or municipal contracts that were not adopted in compliance with the statutory requirements for legislative or executive branch approval, Seif v Long Beach, 286 NY 382, 36 NE2d 630 (1941); JFK Holding Co., LLC v New York, 68 AD3d 477, 891 NYS2d 32 (1st Dept 2009); Kerlikowske v Buffalo, 305 AD2d 997, 758 NYS2d 739 (4th Dept 2003). While such contracts may become valid if subsequently ratified, see JRP Old Riverhead Ltd. v Southampton, 44 AD3d 905, 844 NYS2d 132 (2d Dept 2007), the municipality's mere acceptance of the benefits of the contract made without the necessary authority does not estop the municipality from challenging the contract's validity, Seif v Long Beach, supra.

## D. Statute of Frauds

### 1. In General

The statute of frauds is designed to protect the parties and preserve the integrity of contractual agreements, William J. Jenack Estate Appraisers and Auctioneers, Inc. v Rabizadeh, 22 NY3d 470, 982 NYS2d 813, 5 NE3d 976 (2013). It is meant to guard against the peril of perjury; to prevent the enforcement of unfounded fraudulent claims, id. However, the statute of frauds was not enacted to afford persons a means of evading just obligations; nor was it intended to supply a cloak of immunity to hedging litigants lacking integrity; nor was it adopted to enable defendants to interpose the statute as a bar to a contract fairly, and admittedly, made, id.

To satisfy the statute of frauds, a writing must identify the parties, describe the subject matter, state all the essential terms of the agreement and be signed by the party to be charged, Durso v Baisch, 37 AD3d 646, 830 NYS2d 327 (2d Dept 2007);

Urgo v Patel, 297 AD2d 376, 746 NYS2d 733 (2d Dept 2002); see Mullany v Munchkin Enterprises, Ltd., 69 AD3d 1271, 893 NYS2d 714 (3d Dept 2010). An email that contains printed or typed names and indicates agreement on all of the material terms can constitute a writing sufficient to satisfy the statute, Solartech Renewables, LLC v Vitti, 156 AD3d 995, 66 NYS3d 704 (3d Dept 2017); Newmark & Co. Real Estate Inc. v 2615 East 17 Street Realty LLC, 80 AD3d 476, 914 NYS2d 162 (1st Dept 2011); Naldi v Grunberg, 80 AD3d 1, 908 NYS2d 639 (1st Dept 2010); Williamson v Delsener, 59 AD3d 291, 874 NYS2d 41 (1st Dept 2009); Stevens v Publicis, S.A., 50 AD3d 253, 854 NYS2d 690 (1st Dept 2008); see Forcelli v Gelco Corp., 109 AD3d 244, 972 NYS2d 570 (2d Dept 2013) (same rule applies to settlement agreement governed by CPLR 2104). That principle applies to the requirements of General Obligations Law (GOL) § 5-701(a)(1) as well as to the requirements of GOL § 5-703, Naldi v Grunberg, supra. The party-signature requirement also can be satisfied by the signature of the party's "lawful agent," but only if the agent has written authority to bind that party, GOL § 5-703(1); Leist v Tugendhaft, 64 AD3d 687, 882 NYS2d 521 (2d Dept 2009); Bowling v Pedzik, 302 AD2d 343, 754 NYS2d 653 (2d Dept 2003). The statute-of-frauds defense is personal and cannot be raised by a stranger to the agreement, Backus v Lyme Adirondack Timberlands II, LLC, 96 AD3d 1248, 947 NYS2d 639 (3d Dept 2012).

The statute of frauds does not require that the memorandum evidencing the agreement be a single document, William J. Jenack Estate Appraisers and Auctioneers, Inc. v Rabizadeh, 22 NY3d 470, 982 NYS2d 813, 5 NE3d 976 (2013); Crabtree v Elizabeth Arden Sales Corporation, 305 NY 48, 110 NE2d 551 (1953). The required memorandum may be pieced together out of separate writings that are connected with each other either expressly or "by the internal evidence of subject matter and occasion," Crabtree v Elizabeth Arden Sales Corporation, supra; see William J. Jenack Estate Appraisers and Auctioneers, Inc. v Rabizadeh, supra. The statute of frauds will be satisfied either if all of the separate writings are signed by the party to be charged or if one or more of the writings is signed and the unsigned and signed writings, on their faces, clearly refer to the same subject matter or transaction and there is corroborative evidence of the acquiescence of the party to be charged, Crabtree v Elizabeth Arden Sales Corporation, supra; see William J. Jenack Estate Appraisers and Auctioneers, Inc. v Rabizadeh, supra. Where various writings are relied upon, all of the essential terms of the contract must be set out in the various writings and the writing establishing the contractual relationship must be signed by the party to be charged, Crabtree v Elizabeth Arden Sales Corporation, supra; see William J. Jenack Estate Appraisers and Auctioneers, Inc. v Rabizadeh, supra.

An acceptance and endorsement of a check by the party to be charged may suffice to satisfy the statute of frauds where the terms of the agreement appear on the face of the check, see Manyon v Graser, 66 AD2d 1012, 411 NYS2d 746 (4th Dept 1978).

## 2. Types of Agreements Subject to the Statute of Frauds

The statute of frauds applies only to certain kinds of agreements. Thus, a contract may be valid even if it is not signed by the party to be charged if there is objective evidence establishing the parties' intent to be bound and its subject matter does not implicate a statute imposing a requirement of a signed writing, Flores v Lower East Side Service Center, Inc., 4 NY3d 363, 795 NYS2d 491, 828 NE2d 593 (2005); see Priceless Custom Homes, Inc. v O'Neill, 104 AD3d 664, 960 NYS2d 455 (2d Dept 2013). The following discussion concerns the kinds of agreements to which the statute of fraud applies.

### a. Agreements Not to Be Performed Within One Year or Before the End of a Lifetime

General Obligations Law § 5-701(a)(1) provides that an agreement that is not in writing and subscribed by the party to be charged will not be enforced if, by its terms, it is not to be performed within one year from its making or is not to be completed before the end of a lifetime. This statute of frauds rule has been interpreted to encompass only those contracts that, by their terms, have absolutely no possibility in fact and law of full performance within one year, Sheehy v Clifford Chance Rogers & Wells LLP, 3 NY3d 554, 789 NYS2d 456, 822 NE2d 763 (2004); D & N Boening, Inc. v Kirsch Beverages, Inc., 63 NY2d 449, 483 NYS2d 164, 472 NE2d 992 (1984); Gural v Drasner, 114 AD3d 25, 977 NYS2d 218 (1st Dept 2013); Foster v Kovner, 44 AD3d 23, 840 NYS2d 328 (1st Dept 2007). As long as an agreement may be fairly and reasonably interpreted to be capable of performance within a year, the statute of frauds will not be a bar to enforcement however unexpected, unlikely or even improbable performance within a year may be, Cron v Hargro Fabrics, Inc., 91 NY2d 362, 670 NYS2d 973, 694 NE2d 56 (1998); Stevens v Perrigo, 122 AD3d 1430, 997 NYS2d 209 (4th Dept 2014). An oral agreement with methods of acceleration that would advance the period of fulfillment to less than a year was deemed enforceable,

Financial Structures Ltd. v UBS AG, 77 AD3d 417, 909 NYS2d 45 (1st Dept 2010), but an oral agreement that could be terminated in a year only by unwinding and cancelling the transaction was held unenforceable, Galopy Corp. Intern. N.V. v Deutsche Bank, A.G., 150 AD3d 416, 51 NYS3d 400 (1st Dept 2017).

The doctrine of part performance is not applicable to agreements governed by GOL § 5-701(a)(1), Castellotti v Free, 138 AD3d 198, 27 NYS3d 507 (1st Dept 2016); Gural v Drasner, 114 AD3d 25, 977 NYS2d 218 (1st Dept 2013); American Tower Asset Sub, LLC v Buffalo-Lake Erie Wireless Systems Co., LLC, 104 AD3d 1212, 961 NYS2d 667 (4th Dept 2013) (holding that James v Western New York Computing Systems, Inc., 273 AD2d 853, 710 NYS2d 740 (4th Dept 2000), and Binkowski v Hartford Acc. and Indem. Co., 60 AD3d 1473, 876 NYS2d 295 (4th Dept 2009), are not to be followed). Moreover, the part-performance doctrine cannot be applied where an agreement contains some provisions that are governed by GOL § 5-703 but those provisions are contained within a larger agreement that is governed by 5-701(a) and the provisions governed by GOL § 5-703 are not severable, Castellotti v Free, supra.

A service contract of indefinite duration, in which one party agrees to procure customers or accounts or orders on behalf of a second party, is not by its terms performable within one year since performance is dependent, not upon the will of the parties to the contract, but upon that of a third party, Zupan v Blumberg, 2 NY2d 547, 161 NYS2d 428, 141 NE2d 819 (1957); Gersten-Hillman Agency, Inc. v Heyman, 68 AD3d 1284, 892 NYS2d 209 (3d Dept 2009); Tamara Brokerage, Inc. v Andreoli, 24 AD3d 536, 806 NYS2d 237 (2d Dept 2005) (oral agreement to share commissions on renewal policies unenforceable); Apostolos v R.D.T. Brokerage Corp., 159 AD2d 62, 559 NYS2d 295 (1st Dept 1990) (same).

### 1. Employment Agreements

With respect to employment contracts, an oral employment agreement for a period of one year to commence at a time subsequent to the making of the agreement is unenforceable under the statute of frauds, Geller v Reuben Gittelman Hebrew Day School, 34 AD3d 730, 826 NYS2d 103 (2d Dept 2006). However, when the employment relationship is terminable within one year and the measure of compensation has become fixed and earned during the same period, the obligation to calculate such compensation after the passage of a year, standing alone, will not bring the contract within the one year proscription of the statute of frauds, Cron v Hargro Fabrics, Inc., 91 NY2d 362, 670 NYS2d 973, 694 NE2d 56 (1998); Air Masters, Inc. v Bob Mims Heating and Air Conditioning Service, Inc., 300 AD2d 513, 752 NYS2d 388 (2d Dept 2002). Where an employment agreement provided that it could be terminated only pursuant to certain contingencies and the occurrence of those contingencies would frustrate the purpose of the contract, the agreement could not be performed within one year and was subject to the statute of frauds, Solomon v Urban Dental Management, Inc., 39 AD3d 529, 834 NYS2d 222 (2d Dept 2007).

Plaintiff's claim that there was an oral agreement to make him a partner was barred by the statute of frauds because the claimed agreement called for performance of indefinite duration and was terminable within one year only by its breach, D'Esposito v Gusrae, Kaplan & Bruno PLLC, 44 AD3d 512, 844 NYS2d 214 (1st Dept 2007).

### 2. Joint Ventures and Partnerships

An oral agreement to create a joint venture is not subject to the statute of frauds, Foster v Kovner, 44 AD3d 23, 840 NYS2d 328 (1st Dept 2007); F.S. Intertrade Office Products, Inc. v Babina, 199 AD2d 95, 605 NYS2d 57 (1st Dept 1993). Neither is an oral partnership agreement, Foster v Kovner, supra; Prince v O'Brien, 234 AD2d 12, 650 NYS2d 157 (1st Dept 1996). That is because, absent any definite term of duration, an oral agreement to form a joint venture or a partnership for an indefinite period creates a joint venture or partnership that is terminable at will, Moses v Savedoff, 96 AD3d 466, 947 NYS2d 419 (1st Dept 2012); Foster v Kovner, supra.

However, an alleged oral joint venture was unenforceable where it was not to be performed within one year, the parties did not perform any acts typical of a joint venture, nor were any of the acts performed by the parties unequivocally referable to the alleged joint venture, Chow v Anew XCVIII, Inc., 30 AD3d 253, 819 NYS2d 493 (1st Dept 2006).

### 3. Construction Contracts

Construction contracts are subject to the statute of frauds, GOL § 5-701(a)(1). Where there is a factual issue of whether the parties agreed to an oral contract with a one-year warranty to run from the completion of construction, the jury must be instructed to determine whether the parties agreed to the warranty, in which event a writing was required, J.R. Loftus, Inc. v White, 85 NY2d 874, 626 NYS2d 52, 649 NE2d 1196 (1995).

### b. Contracts for the Sale of Goods

In general, contracts for the sale of goods are governed by Article 2 of the Uniform Commercial Code (UCC). Under the UCC, contracts for the sale of goods of $500 or more are not enforceable "unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker," UCC § 2-201(1); see KSW Mechanical Contractors, Inc. v Eco-Care Corp., 259 AD2d 671, 686 NYS2d 868 (2d Dept 1999). However, under certain circumstances, no writing is required for goods specially manufactured for the buyer and not suitable for sale to others, UCC § 2-201(3)(a). Unsalability must be based on the characteristics of special manufacture, rather than on such tests as lost market opportunities or a seller's unrelated inability to dispose of the goods, Arthur Blum Signs, Inc. v Transportation Displays Inc., 273 AD2d 46, 709 NYS2d 49 (1st Dept 2000).

Sales at public auctions are subject to the statute of frauds. A bid at such auction may satisfy the statute of frauds where there exists a writing signed by the party against whom enforcement is sought to be charged, see UCC 2-201, or a memorandum in satisfaction of GOL § 5-701(a)(6), William J. Jenack Estate Appraisers and Auctioneers, Inc. v Rabizadeh, 22 NY3d 470, 982 NYS2d 813, 5 NE3d 976 (2013). GOL § 5-701(a)(6) requires a memorandum entered by the auctioneer in the sale book that specifies the nature and price of the property sold, the price and terms of the sale, the name of the purchaser and the name of the person on whose account the sale was made. An absentee bid form containing the bidder's name, number and signature and evincing the agreement with the auctioneer's terms may be considered in conjunction with "clerking sheets" indicating the number of the successful bidder to comprise a writing satisfying the requirements of GOL § 5-701(6), William J. Jenack Estate Appraisers and Auctioneers, Inc. v Rabizadeh, supra. Since an auctioneer serves as a consignor's agent, a writing specifying the auctioneer may satisfy the requirement of a memorandum noting the name of the person on whose account the sale was made, id.

### c. Agreements to Answer for the Debt of Another

"[A] special promise to answer for the debt, default or miscarriage of another person" is subject to the statute of frauds, GOL § 5-701(a)(2); Matter of Thompson, 30 AD3d 154, 816 NYS2d 441 (1st Dept 2006). However, where the parties intend that the promisor is to become primarily liable on the debt, such a promise need not be in writing if it is supported by new and beneficial consideration to the promisor, Martin Roofing, Inc. v Goldstein, 60 NY2d 262, 469 NYS2d 595, 457 NE2d 700 (1983); Concordia General Contracting v Peltz, 11 AD3d 502, 782 NYS2d 848 (2d Dept 2004); Pyramid Champlain Co. v R.P. Brosseau & Co., 267 AD2d 539, 699 NYS2d 516 (3d Dept 1999); see CDJ Builders Corp. v Hudson Group Const. Corp., 67 AD3d 720, 889 NYS2d 64 (2d Dept 2009). To fit within this exception, the new consideration must be both tangible and directly beneficial to the promisor, Carey & Associates v Ernst, 27 AD3d 261, 810 NYS2d 475 (1st Dept 2006). The proponent of the oral agreement has the burden of producing evidence showing both new consideration and intent that the promisor become primarily liable, id.

### d. Agreements to Pay Compensation for Finding and Negotiating Certain Business Opportunities

The statute of frauds applies to contracts to pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting or leasing of any real estate or interest therein, or of a business opportunity, business, its good will, inventory, fixtures or an interest therein, including a majority of the voting stock in a corporation and including the creation of a partnership interest, GOL § 5-701(a)(10); see Snyder v Bronfman, 13 NY3d 504, 893 NYS2d 800, 921 NE2d 567 (2009); Stephen Pevner, Inc. v Ensler, 309 AD3d 722, 766 NYS2d 183 (1st Dept 2003). However, the statute does not apply to contracts to pay compensation to an auctioneer, an attorney at law, or a duly licensed real estate broker or real estate salesperson, GOL § 5-701(a)(10); Posson v Przestrzelski, 111 AD3d 1235, 976 NYS2d 298 (3d Dept 2013) (real estate broker or salesperson); Sutter v Lane, 61 AD3d 1310, 878 NYS2d 471 (3d Dept 2009) (real estate broker or salesperson). The doctrine of part performance does not apply to claims governed by GOL § 5-701(a), Kelly v P & G Ventures 1, LLC,

148 AD3d 1002, 50 NYS3d 163 (2d Dept 2017).

*e. Leases and Contracts for the Sale of Real Property*

Land contracts, and leases for more than one year, are subject to the statute of frauds, GOL §§ 5-703(1) and (2); see Solartech Renewables, LLC v Vitti, 156 AD3d 995, 66 NYS3d 704 (3d Dept 2017). The statute applies to the sale of stock by a corporation where the sole asset is an interest in real estate, Yenom Corp. v 155 Wooster Street, Inc., 33 AD3d 67, 818 NYS2d 210 (1st Dept 2006); Bergman v Krausz, 19 AD3d 186, 796 NYS2d 360 (1st Dept 2005); Pritsker v Kazan, 132 AD2d 507, 518 NYS2d 143 (1st Dept 1987); but see Castellotti v Free, 138 AD3d 198, 27 NYS3d 507 (1st Dept 2016) (promise to transfer 50% of entity that is general partner of entity that owns real property not within GOL § 5-703, which governs conveyance of real property).Or the sale of stock in a cooperative apartment building, Rosner v 80 CPW Apartments Corp., 73 AD2d 39, 424 NYS2d 723 (1st Dept 1980); see Panetta v Kelly, 17 AD3d 163, 792 NYS2d 455 (1st Dept 2005). Although contracts for the conveyance of real property must be in writing, the statute of frauds does not preclude oral cancellations of such contracts unless otherwise expressly prohibited by the contract, Dolansky v Frisillo, 92 AD3d 1286, 939 NYS2d 210 (4th Dept 2012). The exercise of an option to renew a lease is not subject to the statute of frauds, Genrich v Holiday Lady Fitness Center, Inc., 216 AD2d 897, 629 NYS2d 352 (4th Dept 1995), although the execution of a contract that creates the option, being a conditional contract for a future conveyance of land, is subject to the statute, Kaplan v Lippman, 75 NY2d 320, 552 NYS2d 903, 552 NE2d 151 (1990).

A contract for the sale or long term lease of property must be signed by the party against whom enforcement of the contract is sought, Kaplan v Lippman, 75 NY2d 320, 552 NYS2d 903, 552 NE2d 151 (1990); Leist v Tugendhaft, 64 AD3d 687, 882 NYS2d 521 (2d Dept 2009); Stettine v DeAngelis, 259 AD2d 539, 686 NYS2d 470 (2d Dept 1999), and must identify the parties to the transaction, see Atai v Dogwood Realty of N.Y., Inc., 24 AD3d 695, 807 NYS2d 615 (2d Dept 2005). The absence of a signature by the party seeking to enforce the agreement has no legal significance, Kaplan v Lippman, supra; Vista Properties, LLC v Rockland Ear, Nose & Throat Associates, P.C., 60 AD3d 846, 875 NYS2d 248 (2d Dept 2009).

Pursuant to the Electronic Signatures and Records Act, Technology Law §§ 302 and 304, unless specifically provided otherwise by law, an electronic signature may be used in lieu of a signature affixed by hand. An electronic signature is defined as "an electronic sound, symbol or process, attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the record." Solartech Renewables, LLC v Vitti, 156 AD3d 995, 66 NYS3d 704 (3d Dept 2017). However, under the statute, an electronic signature is only valid on an email, not on any document attached to an email that could have been physically signed. Id.

A writing that sets forth all of the essential terms of a proposed land transfer satisfies the statute of frauds, Mor v Fastow, 32 AD3d 419, 819 NYS2d 560 (2d Dept 2006). Similarly, the statute of frauds may be satisfied by a document reciting the terms of a mortgage to be given, even where the type of substitute financing is not specified, Wacks v King, 260 AD2d 985, 689 NYS2d 298 (3d Dept 1999). To satisfy the statute of frauds, notations on a check are insufficient unless they describe the property with certainty as well as the interest to be conveyed, Conway v Maher, 185 AD2d 570, 586 NYS2d 660 (3d Dept 1992) (court found insufficient memo on check stating "full warranty deed/44 acres, Maher, Delmar NY"); H. Rothvoss & Sons, Inc. v Estate of Neer, 139 AD2d 37, 530 NYS2d 331 (3d Dept 1988) ("land on Rte 22" "down payment" found insufficient; but see Manyon v Graser, 66 AD2d 1012, 411 NYS2d 746 (4th Dept 1978) (court opined that check with memo describing purchase of "nine foot strip, Fair Haven" would have been sufficient if check had been endorsed by seller). However, the notations on the check must identify the property with the degree of certainty sufficient to satisfy the statute of frauds as well as the nature of the interest in the property to be conveyed, Conway v Maher, 185 AD2d 570, 586 NYS2d 660 (3d Dept 1992); H. Rothvoss & Sons, Inc. v Estate of Neer, 139 AD2d 37, 530 NYS2d 331 (3d Dept 1988).

The writing must describe the property involved with such definiteness and exactness as will permit it to be identified with reasonable certainty, Allegro v Youells, 67 AD3d 1081, 889 NYS2d 263 (3d Dept 2009); Regan v Real Source Charities, Inc., 45 AD3d 1156, 846 NYS2d 447 (3d Dept 2007). However, the description need not be as detailed and exact as a description in a deed would be, Del Pozo v Impressive Homes, Inc., 95 AD3d 1268, 945 NYS2d 368 (2d Dept 2012). Once the test for describing the property is met, parol evidence is admissible to enable the court to identify precisely the property to which the contract relates, Frank v Katz, 145 AD2d 597, 536 NYS2d 135 (2d Dept 1988).

A binder agreement for the sale of real property satisfies the statute of frauds and is subject to specific performance where the

agreement identifies the parties and the subject property, recites all essential terms of a complete agreement and those customarily encountered in a real estate transaction, and is signed by the party to be charged, Rahimzadeh v M.A.C. Associates, 304 AD2d 636, 758 NYS2d 159 (2d Dept 2003); see Ross v Wu, 27 AD3d 237, 811 NYS2d 26 (1st Dept 2006) (memorandum insufficient for failure to identify seller); see also Suchin v Frederick, 30 AD3d 503, 817 NYS2d 351 (2d Dept 2006) (fully executed basement construction rider sufficient). However, even if the binder contains all of the essential terms of the proposed real estate transaction, a binder that is explicitly made subject to a formal contract is unenforceable, Sabetfard v Smith, 306 AD2d 265, 760 NYS2d 525 (2d Dept 2003); but see Garnot v LaDue, 45 AD3d 1080, 845 NYS2d 555 (3d Dept 2007) (mere fact that parties to memorandum anticipated execution of more formal contract does not necessarily impair memorandum's enforceability); Atai v Dogwood Realty of N.Y., Inc., 24 AD3d 695, 807 NYS2d 615 (2d Dept 2005) (same); see also Post Hill, LLC v E. Tetz & Sons, Inc., 122 AD3d 1126, 997 NYS2d 525 (3d Dept 2014) (effectiveness of auction documents that include all essential terms of agreement not impaired merely because parties anticipated execution of more formal agreement, but writings insufficient to satisfy statute of frauds where they did not identify selling party).

An oral joint venture agreement that involves interests in real property is not void under the statute of frauds, as the underlying interest in the joint venture is considered personalty, Sutter v Lane, 61 AD3d 1310, 878 NYS2d 471 (3d Dept 2009); Hydro Investors, Inc. v Trafalgar Power, Inc., 6 AD3d 882, 775 NYS2d 402 (3d Dept 2004); see Pisciotto v Dries, 306 AD2d 262, 760 NYS2d 526 (2d Dept 2003).

### f. Agreement to Make Testamentary Dispositions

An agreement to make a testamentary disposition of any kind must be in writing and signed by the party to be charged, EPTL 13-2.1(a)(2); see Hauck v Lombardo, 99 AD3d 861, 952 NYS2d 614 (2d Dept 2012) (nursing care).

### g. Oral Modifications

Modifications to contracts are governed by the statute of frauds. GOL § 15-301(1) provides that an agreement containing a provision that it cannot be modified orally cannot be changed by an executory agreement unless such agreement is in writing and signed by the party against whom enforcement of the change is sought, Bridge Street Enterprises v Pastino's Italian Grill, Inc., 43 AD3d 1306, 842 NYS2d 810 (4th Dept 2007); Marcella & Co., Inc. v Avon Products, Inc., 282 AD2d 718, 724 NYS2d 192 (2d Dept 2001); Rochester Community Individual Practice Ass'n, Inc. v Finger Lakes Health Ins. Co., Inc., 281 AD2d 977, 722 NYS2d 663 (4th Dept 2001); see Environmental Products & Services Inc. v Consolidated Rail Corp., 285 AD2d 700, 728 NYS2d 256 (3d Dept 2001); SAA-A, Inc. v Morgan Stanley Dean Witter & Co., 281 AD2d 201, 721 NYS2d 640 (1st Dept 2001). However, a provision that a contract may only be "changed" by a signed writing does not prohibit oral cancellations or terminations, Dolansky v Frisillo, 92 AD3d 1286, 939 NYS2d 210 (4th Dept 2012), or oral directions to perform extra work, Penava Mechanical Corp. v Afgo Mechanical Services, Inc., 71 AD3d 493, 896 NYS2d 349 (1st Dept 2010); Tridee Associates, Inc. v New York City School Const. Authority, 292 AD2d 444, 739 NYS2d 179 (2d Dept 2002); Barsotti's, Inc. v Consolidated Edison Co. of New York, Inc., 254 AD2d 211, 680 NYS2d 88 (1st Dept 1998); see Mel-Stu Const. Corp. v Melwood Const. Corp., 131 AD2d 823, 517 NYS2d 87 (2d Dept 1987). For a discussion of the legislative history of GOL § 15-301(1), see Israel v Chabra, 12 NY3d 158, 878 NYS2d 646, 906 NE2d 374 (2009).

Waiver, part performance and estoppel constitute exceptions to GOL § 15-301(1), see Eujoy Realty Corp. v Van Wagner Communications, LLC, 22 NY3d 413, 981 NYS2d 326, 4 NE3d 336 (2013); Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc. v Aegis Group PLC, 93 NY2d 229, 689 NYS2d 674, 711 NE2d 953 (1999); Rose v Spa Realty Associates, 42 NY2d 338, 397 NYS2d 922, 366 NE2d 1279 (1977), provided that the partial performance or the acts taken in detrimental reliance are "unequivocally referable" to the new, oral agreement, Eujoy Realty Corp. v Van Wagner Communications, LLC, supra; Rose v Spa Realty Associates, supra; Phoenix Corp. v U.W. Marx, Inc., 64 AD3d 967, 881 NYS2d 714 (3d Dept 2009); B. Reitman Blacktop, Inc. v Missirlian, 52 AD3d 752, 860 NYS2d 211 (2d Dept 2008); Healy v Williams, 30 AD3d 466, 818 NYS2d 121 (2d Dept 2006); Richardson & Lucas, Inc. v New York Athletic Club of City of New York, 304 AD2d 462, 758 NYS2d 321 (1st Dept 2003); see Scher v Stendhal Gallery, Inc., 117 AD3d 146, 983 NYS2d 219 (1st Dept 2014). An oral modification that has been fully performed by a party is enforceable, J & R Landscaping, Inc. v Damianos, 1 AD3d 563, 769 NYS2d 52 (2d Dept 2003); T&N West Galla Pizzeria, Inc. v CF White Plains Associates, 185 AD2d 270, 586 NYS2d 266 (2d Dept 1992). With respect to the application of the doctrine of equitable estoppel, when the parties dispute whether an oral agreement has been formed, the conduct of the party advocating for the oral agreement is determinative,

although the conduct of both parties may be relevant, Eujoy Realty Corp. v Van Wagner Communications, LLC, supra.

### 3. Avoiding the Statute of Frauds

#### a. Part Performance of Agreements to Convey or Lease Real Property

A party may invoke the doctrine of part performance to preclude the statute of frauds defense in an action involving an agreement to convey or lease real property, Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc. v Aegis Group PLC, 93 NY2d 229, 689 NYS2d 674, 711 NE2d 953 (1999); Woolley v Stewart, 222 NY 347, 118 NE 847 (1918); McKinley v Hessen, 202 NY 24, 95 NE 32 (1911); see GOL § 5-703(4); but see Castellotti v Free, 138 AD3d 198, 27 NYS3d 507 (1st Dept 2016) (part-performance doctrine inapplicable where agreement contains provisions governed by GOL § 5-703 but those provisions are not severable from larger agreement that is governed by 5-701(a)). However, the doctrine of part performance may be invoked to preclude the statute of frauds defense only in an action for specific performance of a contract and may not be invoked in an action seeking only money damages, Zito v Suffolk, 106 AD3d 814, 964 NYS2d 644 (2d Dept 2013); Sparks Associates, LLC v North Hills Holding Co. II, LLC, 94 AD3d 864, 941 NYS2d 695 (2d Dept 2012); Stainless Broadcasting Co. v Clear Channel Broadcasting Licenses, L.P., 58 AD3d 1010, 871 NYS2d 468 (3d Dept 2009); GOL 5-703(4); see Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc. v Aegis Group PLC, supra. The part performance exception to GOL described above does not constitute a defense to GOL § 5-701, Kelly v P & G Ventures 1, LLC, 148 AD3d 1002, 50 NYS3d 163 (2d Dept 2017); American Tower Asset Sub, LLC v Buffalo-Lake Erie Wireless Systems Co., LLC, 104 AD3d 1212, 961 NYS2d 667 (4th Dept 2013), only to GOL § 5-703 (real estate), Stephen Pevner, Inc. v Ensler, 309 AD2d 722, 766 NYS2d 183 (1st Dept 2003); Valentino v Davis, 270 AD2d 635, 703 NYS2d 609 (3d Dept 2000); see Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc. v Aegis Group PLC, supra. Merger clauses in leases and the parol evidence rule preclude reliance on the doctrine of part performance, Clark Const. Corp. v BLF Realty Holding Co., 28 AD3d 367, 814 NYS2d 63 (1st Dept 2006).

The "performance" on which the claim of part performance rests must be that of the person seeking to enforce the contract, Post Hill, LLC v E. Tetz & Sons, Inc., 122 AD3d 1126, 997 NYS2d 525 (3d Dept 2014); Clark Const. Corp. v BLF Realty Holding Co., 28 AD3d 367, 814 NYS2d 63 (1st Dept 2006), although the conduct of both parties may be considered in determining whether an oral contract was, in fact, made, McKinley v Hessen, 202 NY 24, 95 NE 32 (1911).

A party claiming part performance must plead detrimental reliance and must establish that the performance was unequivocally referable to the agreement, Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc. v Aegis Group PLC, 93 NY2d 229, 689 NYS2d 674, 711 NE2d 953 (1999); Walter v Hoffman, 267 NY 365, 196 NE 291 (1935); Burns v McCormick, 233 NY 230, 135 NE 273 (1922); see Woolley v Stewart, 222 NY 347, 118 NE 847 (1918); Yenom Corp. v 155 Wooster Street, Inc., 33 AD3d 67, 818 NYS2d 210 (1st Dept 2006). To be "unequivocally referable" to the agreement, the actions must be unintelligible or at least extraordinary, explainable only with reference to the oral agreement, Anostario v Vicinanzo, 59 NY2d 662, 463 NYS2d 409, 450 NE2d 215 (1983); Post Hill, LLC v E. Tetz & Sons, Inc., 122 AD3d 1126, 997 NYS2d 525 (3d Dept 2014) (plaintiff seller's going forward with online auction not unequivocally referable to consummated agreement with defendant); Pinkava v Yurkiw, 64 AD3d 690, 882 NYS2d 687 (2d Dept 2009); Luft v Luft, 52 AD3d 479, 859 NYS2d 694 (2d Dept 2008); Lowinger v Lowinger, 287 AD2d 39, 733 NYS2d 33 (1st Dept 2001) (conversion to Judaism motivated by multiple reasons); Carey & Associates v Ernst, 27 AD3d 261, 810 NYS2d 475 (1st Dept 2006) (law firm's continued representation not unequivocally referable to oral promise by son to pay father's legal bills); Panetta v Kelly, 17 AD3d 163, 792 NYS2d 455 (1st Dept 2005). Inaction may also satisfy part performance when the above-mentioned elements are met, Messner Vetere Berger McNamee Schmetterer Euro RSCG, Inc. v Aegis Group PLC, supra.

Partial payment of the purchase price does not, in and of itself, constitute partial performance of the contract unless accompanied by other acts, such as "possession, or possession and improvements," Bordeau v Oakley, 185 AD3d 417, 585 NYS2d 623 (3d Dept 1992). Moreover, partial payment does not establish mutual assent where the parties contemplate a formal, binding, written contract that is never executed, H. Rothvoss & Sons, Inc. v Estate of Neer, 139 AD2d 37, 530 NYS2d 331 (3d Dept 1988).

*b. Equitable Estoppel*

In some situations, the doctrine of equitable estoppel may be invoked to defeat a defense based on the statute of frauds. Equitable estoppel may be used where necessary to prevent unconscionable injury and loss to one who has relied on the promise of another, American Bartenders School, Inc. v 105 Madison Co., 59 NY2d 716, 463 NYS2d 424, 450 NE2d 230 (1983); Stainless Broadcasting Co. v Clear Channel Broadcasting Licenses, L.P., 58 AD3d 1010, 871 NYS2d 468 (3d Dept 2009). However, equitable estoppel is not available to plaintiffs who cannot demonstrate that they justifiably relied on defendants' conduct or oral promises, American Bartenders School v 105 Madison Co., supra; Stainless Broadcasting Co. v Clear Channel Broadcasting Licenses, L.P., supra.

*c. Admission By Party to be Charged*

Where a party has admitted the essential terms and actual existence of an alleged oral contract, the statute of frauds may not be invoked as a defense, Morris Cohon & Co. v Russell, 23 NY2d 569, 297 NYS2d 947, 245 NE2d 712 (1969); Bitner v Rutherford, 105 AD3d 1156, 963 NYS2d 426 (3d Dept 2013); Concordia General Contracting v Peltz, 11 AD3d 502, 782 NYS2d 848 (2d Dept 2004) (defendant admitted terms of oral agreement and amount of obligation in court); Dzek v Desco Vitroglaze of Schenectady Inc., 285 AD2d 926, 727 NYS2d 814 (3d Dept 2001) (contract terms expressly admitted in tape recorded conversation). However, an admission as to some but not all material terms is insufficient, Camhi v Tedesco Realty, LLC, 105 AD3d 795, 962 NYS2d 660 (2d Dept 2013); Williams v Lynch, 245 AD2d 715, 666 NYS2d 749 (3d Dept 1997).

# E. Parol Evidence Rule

When parties set down their agreement in a clear complete document, their writing should be enforced according to its terms and evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing, Golden Gate Yacht Club v Societe Nautique De Geneve, 12 NY3d 248, 879 NYS2d 363, 907 NE2d 276 (2009); W.W.W. Associates, Inc. v Giancontieri, 77 NY2d 157, 565 NYS2d 440, 566 NE2d 639 (1990); Johnson v Stanfield Capital Partners, LLC, 68 AD3d 628, 891 NYS2d 383 (1st Dept 2009); Plattsburgh v Borner, 38 AD3d 1047, 831 NYS2d 579 (3d Dept 2007); see Jackson & Wheeler, Inc. v Pleasantville, 56 AD3d 723, 869 NYS2d 122 (2d Dept 2008) (parol evidence not admissible to create an ambiguity in a lease that is complete and clear and unambiguous on its face). Similarly, evidence of what may have been orally agreed by the parties prior to the execution of an integrated written document cannot be used to vary the terms of the writing, Braten v Bankers Trust Co., 60 NY2d 155, 468 NYS2d 861, 456 NE2d 802 (1983); Matter of Estate of Costantino, 31 AD3d 1097, 818 NYS2d 394 (4th Dept 2006); Ahava Dairy Products Corp. v Trident Leasing Corp., 1 AD3d 546, 768 NYS2d 229 (2d Dept 2003), nor may terms of an unambiguous written contract be varied by evidence of a contemporaneous oral agreement, DePasquale v Estate of DePasquale, 44 AD3d 606, 843 NYS2d 357 (2d Dept 2007).

Where there is a conflict between an express provision in a written contract and an alleged oral agreement, the oral agreement is unenforceable, Shah v Micro Connections, Inc., 286 AD2d 433, 729 NYS2d 497 (2d Dept 2001). Similarly, where an agreement contains a merger clause that evinces the parties' intent that the agreement is to be considered a completely integrated writing, extrinsic evidence that adds to or varies the agreement's terms should be precluded, Schron v Troutman Sanders LLP, 20 NY3d 430, 963 NYS2d 613, 986 NE2d 430 (2013); see Jarecki v Shung Moo Louie, 95 NY2d 665, 722 NYS2d 784, 745 NE2d 1006 (2001); Simone v Homecheck Real Estate Services, Inc., 42 AD3d 518, 840 NYS2d 398 (2d Dept 2007); New York City Health and Hospitals Corp. v St. Barnabas Hosp., 10 AD3d 489, 782 NYS2d 12 (1st Dept 2004); see also Primex Intern. Corp. v Wal-Mart Stores, Inc., 89 NY2d 594, 657 NYS2d 385, 679 NE2d 624 (1997).

A recital paragraph in a document does not prevent the introduction of parol evidence to determine the parties' intent, Andersen ex rel. Andersen, Weinroth & Co., L.P. v Weinroth, 48 AD3d 121, 849 NYS2d 210 (1st Dept 2007). Where a party to a claimed contract asserts lack of consideration as a defense, parol evidence is admissible to show that an apparently valid obligation in writing was given without consideration to support it, Ehrlich v American Moninger Greenhouse Mfg. Corp., 26 NY2d 255, 309 NYS2d 341, 257 NE2d 890 (1970). In Ehrlich, the Court of Appeals elaborated that a party's "recitation of receipt of consideration is a mere admission of fact" that "may be explained or disputed by parol evidence."

Parol evidence may be admissible to prove a condition precedent to the legal effectiveness of a contract if the condition is not

contradictory to, or at variance with, the express terms of the contract, Hicks v Bush, 10 NY2d 488, 225 NYS2d 34, 180 NE2d 425 (1962); Mack-Lowe v Picault-Cadet, 33 AD3d 504, 823 NYS2d 55 (1st Dept 2006); see Bank of Suffolk County v Kite, 49 NY2d 827, 427 NYS2d 782, 404 NE2d 1323 (1980); Tambe Elec., Inc. v Home Depot U.S.A., Inc., 49 AD3d 1161, 856 NYS2d 373 (4th Dept 2008); Libasci v Singares, 128 AD3d 1239, 9 NYS3d 715 (3d Dept 2015) (parol evidence admissible to show that there was no meeting of minds or consideration where plaintiff signed agreement that contemplated refinancing of premises but then refused to permit such refinancing). However, that principle is predicated on proof of the parties' intention that the entire contract was to be a nullity and does not apply to a claim that the parties intended only that certain provisions of the contract were not to be enforced, Bersani v General Acc. Fire & Life Assur. Corp., Ltd., 36 NY2d 457, 369 NYS2d 108, 330 NE2d 68 (1975); Cole v Macklowe, 40 AD3d 396, 836 NYS2d 568 (1st Dept 2007). Some courts have applied the principle that parol evidence may be used to prove that the contract never came into existence because of the failure of a condition precedent even where the parties' written agreement contained a merger clause, Mack-Lowe v Picault-Cadet, supra; Tropical Leasing, Inc. v Fiermonte Chevrolet, Inc., 80 AD2d 467, 439 NYS2d 566 (4th Dept 1981); Procopis v G. P. P. Restaurants, Inc., 43 AD2d 974, 352 NYS2d 230 (2d Dept 1974); but see Torres v D'Alesso, 80 AD3d 46, 910 NYS2d 1 (1st Dept 2010) (questioning proposition). However, the First Department has concluded that the rule permitting claims of oral conditions precedent where the condition is not contradictory to, or at variance with, the contract's express terms is inapplicable to contracts for the sale of real property, Torres v D'Alesso, supra (declining to follow Second Department's decision in Procopis v G. P. P. Restaurants, Inc., supra).

Parol evidence may be used to prove the lost, destroyed portion of a contract, Carlson v American Intern. Group, Inc., 30 NY3d 288, 67 NYS3d 100, 89 NE3d 490 (2017).

## F. Illegal Contracts

### 1. In General

An illegal contract will not be enforced, Carmine v Murphy, 285 NY 413, 35 NE2d 19 (1941); Melius v Breslin, 46 AD3d 524, 846 NYS2d 645 (2d Dept 2007); Bonilla v Rotter, 36 AD3d 534, 829 NYS2d 52 (1st Dept 2007); Sabia v Mattituck Inlet Marina and Shipyard, Inc., 24 AD3d 178, 805 NYS2d 346 (1st Dept 2005); Parpal Restaurant, Inc. v Robert Martin Co., 258 AD2d 572, 685 NYS2d 481 (2d Dept 1999) (sublease created for purpose of improper tax avoidance); Scotto v Mei, 219 AD2d 181, 642 NYS2d 863 (1st Dept 1996); Little Princess Truck Rentals, Inc. v Pergament Distributors, Inc., 143 AD2d 179, 531 NYS2d 812 (2d Dept 1988) (interstate trucking contract deemed illegal by ICC). Contracts, although legal in their inducement and capable of being performed in a legal manner, which have nonetheless been performed in an illegal manner, also will not be enforced, McConnell v Commonwealth Pictures Corp., 7 NY2d 465, 199 NYS2d 483, 166 NE2d 494 (1960); Alpha Interiors, Inc. v Tulger Const. Corp., 101 AD3d 660, 956 NYS2d 67 (2d Dept 2012); Prote Contracting Co., Inc. v Board of Educ. of the City of New York, 230 AD2d 32, 657 NYS2d 158 (1st Dept 1997); see FCI Group, Inc. v New York, 54 AD3d 171, 862 NYS2d 352 (1st Dept 2008) (contractor whose employee attempted to bribe city supervisory inspector not permitted to recover for balance due under construction contract where contract contained a forfeiture provision applicable to such unethical conduct). However, such forfeiture will occur only if there is a direct connection between the illegal transaction and the obligation sued upon, McConnell v Commonwealth Pictures Corp., supra; Alpha Interiors, Inc. v Tulger Const. Corp., supra. Further, the illegal performance must take the form of commercial bribery or similar conduct in which the illegality is central to or a dominant part of plaintiff's whole course of conduct in the performance of the contract, McConnell v Commonwealth Pictures Corp., supra; Alpha Interiors, Inc. v Tulger Const. Corp., supra (kickback scheme occurring repeatedly during performance of subcontract).

Public policy may also be a factor in determining the enforceability of contracts, New York v 17 Vista Associates, 84 NY2d 299, 618 NYS2d 249, 642 NE2d 606 (1994) (contract whereby city agreed to provide developer expedited and favorable determination in exchange for payment into city housing trust void as against public policy); Drucker v Mauro, 30 AD3d 37, 814 NYS2d 43 (1st Dept 2006) (lease that sought to avoid requirements of Rent Stabilization Law void as matter of public policy); see Szerdahelyi v Harris, 67 NY2d 42, 499 NYS2d 650, 490 NE2d 517 (1986) (usurious loan); McConnell v Commonwealth Pictures Corp., 7 NY2d 465, 199 NYS2d 483, 166 NE2d 494 (1960); R.A.C. Group, Inc. v Board of Educ. of City of New York, 21 AD3d 243, 799 NYS2d 559 (2d Dept 2005); Abright v Shapiro, 214 AD2d 496, 626 NYS2d 73 (1st Dept 1995) (rent control violations); see also 159 MP Corp. v Redbridge Bedford, LLC, 160 AD3d 176, 71 NYS3d 87 (2d Dept 2018) (waiver by tenant of right to seek declaratory and Yellowstone relief). Public policy does not require invalidation

of an agreement whose purpose was to postpone a party's acquisition of a gift until after the party's pending matrimonial action was concluded, Castellotti v Free, 138 AD3d 198, 27 NYS3d 507 (1st Dept 2016). Where a statute specifically provides for a private right of action, there may be recovery even though the plaintiff knew the transaction was illegal, Diversified Group Inc. v Sahn, 259 AD2d 47, 696 NYS2d 133 (1st Dept 1999) (applying "anti-scalping law," Arts & Cultural Affairs Law §§ 25.01 et seq.). Agreements providing for the evasion of tax payments are not per se unenforceable unless the taxing statute so provides, Murray Walter, Inc. v Sarkisian Bros., Inc., 107 AD3d 173, 486 NYS2d 396 (3d Dept 1985).

Where the statute that renders the transaction illegal contains a time limitation on the right to assert the illegality, the defense of illegality must be raised within the time period, Carter Financial Corp. v Atlantic Medical Management, LLC, 262 AD2d 178, 691 NYS2d 529 (1st Dept 1999). A defense of illegality on the ground that the contract violates public policy is not waived by a failure to affirmatively plead it in the answer, Spiegel v 1065 Park Ave. Corp., 305 AD2d 204, 759 NYS2d 461 (1st Dept 2003).

Where an agreement consists in part of an unlawful objective and in part of lawful objectives, a court may sever the illegal aspects of the agreement and enforce the legal ones, so long as the illegal aspects are incidental to the legal aspects and are not the main objective of the agreement, Lanza v Carbone, 130 AD3d 689, 13 NYS3d 472 (2d Dept 2015); Mark Hotel LLC v Madison Seventy-Seventh LLC, 61 AD3d 140, 872 NYS2d 111 (1st Dept 2009). However, where the main objective of an agreement is illegal, courts will not sever and enforce incidental legal clauses, Georgia Properties, Inc. v Dalsimer, 39 AD3d 332, 835 NYS2d 41 (1st Dept 2007). Whether a contract is severable is generally a question of the parties' intent, to be determined from the language of the contract viewed in light of the circumstances at the time of execution, Lanza v Carbone, supra. A contract containing both lawful and unlawful objectives may be severed and the legal components enforced to avoid unjust enrichment, Paulus v Kuchler, 214 AD2d 608, 625 NYS2d 81 (2d Dept 1995); Lanza v Carbone, supra (courts particularly ready to sever illegal components and enforce only legal ones where injured party less culpable and other party would be unjustly enriched); McCall v Frampton, 81 AD2d 607, 438 NYS2d 11 (2d Dept 1981); see Village Taxi Corp. v Beltre, 91 AD3d 92, 933 NYS2d 694 (2d Dept 2011); Lopez v 121 St. Nicholas Ave. H.D.F.C., 28 AD3d 429, 814 NYS2d 174 (2d Dept 2006). The test is the degree to which the illegality infects and destroys the agreement, McCall v Frampton, supra.

Where contracts that violate statutory provisions are merely malum prohibitum, the general rule that illegal contracts will not be enforced does not always apply, Benjamin v Koeppel, 85 NY2d 549, 626 NYS2d 982, 650 NE2d 829 (1995); Lloyd Capital Corp. v Pat Henchar, Inc., 80 NY2d 124, 589 NYS2d 396, 603 NE2d 246 (1992); see Glassman v ProHealth Ambulatory Surgery Center, Inc., 14 NY3d 898, 904 NYS2d 342, 930 NE2d 263 (2010); Trilegiant Corp. v Orbitz, LLC, 125 AD3d 504, 5 NYS3d 366 (1st Dept 2015). If the statute does not specifically provide that its violation will render a contract unenforceable, and the denial of relief is wholly out of proportion to the requirements of public policy or appropriate individual punishment, the right to recover will not be denied, Benjamin v Koeppel, supra; Lloyd Capital Corp. v Pat Henchar, Inc., supra; Simaee v Levi, 22 AD3d 559, 802 NYS2d 493 (2d Dept 2005); John E. Rosasco Creameries v Cohen, 276 NY 274, 11 NE2d 908 (1937); Joe O'Brien Investigations Inc. v Zorn, 263 AD2d 812, 694 NYS2d 216 (3d Dept 1999). A judicial refusal to enforce a contract is especially inappropriate where there are regulatory sanctions and statutory penalties in place to redress violations of the law, Glassman v ProHealth Ambulatory Surgery Center, Inc., supra; Lloyd Capital Corp. v Pat Henchar, Inc., supra. Forfeitures by operation of law are disfavored, particularly where a defaulting party seeks to raise illegality as a ground for personal gain rather than a shield for the public good, Lloyd Capital Corp. v Pat Henchar, Inc., supra; see Simaee v Levi, supra.

## 2. Contracts Violating Licensing Requirements

Contracts requiring conduct that violates licensing ordinances may be held unenforceable where the licensing rules exist for the public's protection rather than for revenue raising purposes, Village Taxi Corp. v Beltre, 91 AD3d 92, 933 NYS2d 694 (2d Dept 2011); see Galbreath-Ruffin Corp. v 40th & 3rd Corp., 19 NY2d 354, 280 NYS2d 126, 227 NE2d 30 (1967). Thus, that part of an asset-purchase agreement that involved the transfer of taxicab licenses without approval of the licensing agency, in contravention of local law, was unenforceable in light of the purposes of the regulatory scheme, which included protecting public safety, Village Taxi Corp. v Beltre, supra. The illegality of the agreement in that instance required dismissal of both the cause of action for breach of contract and the causes of action for fraudulent inducement, id. As to the enforceability of a contract involving an out-of-state unlicensed promoter, see Quartey v AB Stars Productions, S.A., 260

AD2d 39, 697 NYS2d 280 (1st Dept 1999).

N.Y.C. Admin. Code § 20-387(a) forbids the soliciting, canvassing, selling, obtaining or performing of a home improvement contract by a person who is not licensed to do so. An unlicensed contractor cannot recover for services rendered either pursuant to a contract or on a theory of quantum meruit, Wildenstein v 5H & Co, Inc., 97 AD3d 488, 950 NYS2d 3 (1st Dept 2012); Intrepid Elec. Contracting Co., Inc. v Serure, 34 AD3d 430, 824 NYS2d 351 (2d Dept 2006). However, an owner cannot recoup funds that were already paid to the unlicensed contractor, since the law generally requires that the parties be left as they are, Wildenstein v 5H & Co, Inc., supra. This principle does not preclude the owner from seeking restitution for payments previously made for incomplete or defective work, id; O'Malley v Campione, 70 AD3d 595, 896 NYS2d 49 (1st Dept 2010).

In cases brought against consumers, CPLR 3015(e) requires plaintiffs to plead that they are duly licensed and to provide their licensing details where the cause of action arises from plaintiff's conduct of a business that is required by State or local law to be licensed by certain enumerated licensing authorities.

### 3. Contracts Violating Usury Laws

A usurious contract is void and relieves the party challenging the contract of the obligation to repay principal and interest thereon, Bouffard v Befese, LLC, 111 AD3d 866, 976 NYS2d 510 (2d Dept 2013); Oliveto Holdings, Inc. v Rattenni, 110 AD3d 969, 973 NYS2d 321 (2d Dept 2013); Abir v Malky, Inc., 59 AD3d 646, 873 NYS2d 350 (2d Dept 2009). An agreement is usurious under civil law when it imposes an annual interest rate in excess of 16 percent, GOL § 5-501(1); Banking Law § 14-a(1); Blue Wolf Capital Fund II, L.P. v American Stevedoring Inc., 105 AD3d 178, 961 NYS2d 86 (1st Dept 2013); O'Donovan v Galinski, 62 AD3d 769, 878 NYS2d 443 (2d Dept 2009); Abir v Malky, Inc., supra, and is usurious under criminal law when it imposes an annual interest rate in excess of 25 percent, Penal Law §§ 190.40, 190.42; Blue Wolf Capital Fund II, L.P. v American Stevedoring Inc., supra; Abir v Malky, Inc., supra. Where the loan is for less than a year, the interest rate is annualized for purposes of determining whether the loan is usurious, Bakhash v Winston, 134 AD3d 468, 19 NYS3d 887 (1st Dept 2015).

The laws regulating the maximum rate of interest that may be charged do not apply to any loan or forbearance in the amount of or more than $2,500,000, AJW Partners LLC v Itronics Inc., 68 AD3d 567, 892 NYS2d 46 (1st Dept 2009); Shasho v Pruco Life Ins. Co. of New Jersey, 67 AD3d 663, 888 NYS2d 557 (2d Dept 2009). The civil usury law, GOL § 5-501, does not apply to a loan or forbearance in the amount of $250,000 or more, unless the loan or forbearance is secured primarily by an interest in real property improved by a one- or two-family residence, GOL § 5-501(6)(a). The statute does not require that the residence be owner-occupied, and the nature of the loan or forbearance (i.e., commercial or personal) is irrelevant, Oliveto Holdings, Inc. v Rattenni, 110 AD3d 969, 973 NYS2d 321 (2d Dept 2013). GOL § 5-501 also does not apply to agreements to pay an annual interest rate in excess of 18% on unpaid balances following a default by the debtor, since such agreements do not entail a loan or forbearance, Salamone v Russo, 129 AD3d 879, 15 NYS3d 344 (2d Dept 2015); Salamone v Cohen, 129 AD3d 877, 12 NYS3d 180 (2d Dept 2015).

Corporations generally cannot interpose the defense of usury under the civil law, although they may do so under the Penal Law, GOL § 5-521(1), (3); Pepin v Jani, 101 AD3d 694, 955 NYS2d 371 (2d Dept 2012); AJW Partners LLC v Itronics Inc., 68 AD3d 567, 892 NYS2d 46 (1st Dept 2009); see GOL § 5-501(6); Blue Wolf Capital Fund II, L.P. v American Stevedoring Inc., 105 AD3d 178, 961 NYS2d 86 (1st Dept 2013) (with some exceptions, corporations may assert criminal usury as defense where loan more than $250,000 and less than $2,500,000). The same is true of individual guarantors of loans to corporations, Schneider v Phelps, 41 NY2d 238, 391 NYS2d 568, 359 NE2d 1361 (1977); Pepin v Jani, supra; Tower Funding, Ltd. v David Berry Realty, Inc., 302 AD2d 513, 755 NYS2d 413 (2d Dept 2003). However, where a corporate form has been used to conceal a usurious loan made for personal rather than corporate purposes, the defense of usury may be interposed, Schneider v Phelps, supra; Tower Funding, Ltd. v David Berry Realty, supra. Although usury is ordinarily invoked as an affirmative defense to an action seeking repayment of a loan, it is also available as a defense to a borrower in a foreclosure action, Blue Wolf Capital Fund II, L.P. v American Stevedoring Inc., supra.

To successfully raise the defense of usury, a debtor must allege and prove, by clear and convincing evidence, that plaintiff charged interest in violation of a usury statute and did so with the intent to take interest in excess of the legal rate, Freitas v Geddes Sav. and Loan Ass'n, 63 NY2d 254, 481 NYS2d 665, 471 NE2d 437 (1984); Oliveto Holdings, Inc. v Rattenni, 110

AD3d 969, 973 NYS2d 321 (2d Dept 2013); Blue Wolf Capital Fund II, L.P. v American Stevedoring Inc., 105 AD3d 178, 961 NYS2d 86 (1st Dept 2013); see Giventer v Arnow, 37 NY2d 305, 372 NYS2d 63, 333 NE2d 366 (1975); Salamone v Russo, 129 AD3d 879, 15 NYS3d 344 (2d Dept 2015); Salamone v Cohen, 129 AD3d 877, 12 NYS3d 180 (2d Dept 2015).

In determining whether a transaction is usurious, the law looks not to its form, but its substance, or real character, and the court must apply the traditional method for calculating the effective interest rate as set forth in Band Realty Co. v North Brewster, Inc., 37 NY2d 460, 373 NYS2d 97, 335 NE2d 316 (1975), Oliveto Holdings, Inc. v Rattenni, 110 AD3d 969, 973 NYS2d 321 (2d Dept 2013); see Bouffard v Befese, LLC, 111 AD3d 866, 976 NYS2d 510 (2d Dept 2013). Under that method, there is no usury as long as all payments on account of interest do not aggregate a sum greater than the aggregate of interest that would lawfully have been earned had the debt continued to the earliest maturity date, Band Realty Co. v North Brewster, Inc., supra; Canal v Munassar, 144 AD3d 1663, 41 NYS3d 828 (4th Dept 2016). Interest on the whole amount of the principal to be paid at maturity, not exceeding the legal rate, may be taken in advance, Band Realty Co. v North Brewster, Inc., supra; Canal v Munassar, supra; Martell v Drake, 124 AD3d 1200, 2 NYS3d 288 (3d Dept 2015).

To constitute usury, it must appear that the real purpose of the transaction was, on the one side, to lend money at usurious interest reserved in some form by the contract and, on the other side, to borrow upon the usurious terms, Bouffard v Befese, LLC, 111 AD3d 866, 976 NYS2d 510 (2d Dept 2013). It has been held that a provision in a note that the interest rate "in no event" will exceed the rate permitted by law does not render the note non-usurious, Bakhash v Winston, 134 AD3d 468, 19 NYS3d 887 (1st Dept 2015).

Whether a transaction constitutes a cover for usury is usually a question of fact, see Bouffard v Befese, LLC, 111 AD3d 866, 976 NYS2d 510 (2d Dept 2013); Abir v Malky, Inc., 59 AD3d 646, 873 NYS2d 350 (2d Dept 2009). However, if usury can be gleaned from the face of the instrument, such intent will be implied and usury will be found as a matter of law, Blue Wolf Capital Fund II, L.P. v American Stevedoring Inc., 105 AD3d 178, 961 NYS2d 86 (1st Dept 2013). Although at trial a party claiming usury has the burden of establishing it by clear and convincing evidence, in the context of a summary judgment motion, the burden is on the other party to establish, prima facie, that the transaction was not usurious, Abir v Malky, Inc., supra.

Federal law preempts state usury laws that would otherwise apply to the interest charged pursuant to credit card agreements for credit cards issued by national banks, FDIC-insured banks and federal savings associations, as well as where the credit receivables are assigned to an insured or regulated bank or its subsidiary, Citibank (South Dakota), N.A. v Martin, 11 Misc3d 219, 807 NYS2d 284 (NY City Civ Ct 2005); ALBANK, FSB v Foland, 177 Misc2d 569, 676 NYS2d 461 (NY City Ct 1998). The federal Depository Institutions Deregulation and Monetary Control Act of 1980 preempts state usury laws with respect to any loan that was secured by a first lien on residential real property, was made after March 31, 1980, and meets the definition (with certain qualifications) of a federally-related mortgage loan, JPMorgan Chase Bank, N.A. v Malarkey, 65 AD3d 718, 884 NYS2d 787 (3d Dept 2009); see 12 USC § 1735f-7a. The New York usury law is also preempted by the federal Small Business Investment Act, 15 USC § 687(i)(3), unless New York opts out of the federal statutory scheme, Medallion Financial Corp. v Weingarten, 132 AD3d 596, 19 NYS3d 509 (1st Dept 2015).

### 4. Contracts Involving Employment of Undocumented Workers

A contract of employment between an undocumented alien worker and an employer is not illegal and therefore may be enforceable where neither the contract at issue nor the work performed by the worker was illegal, Balbuena v IDR Realty LLC, 6 NY3d 338, 812 NYS2d 416, 845 NE2d 1246 (2006); Jara v Strong Steel Door, Inc., 58 AD3d 600, 871 NYS2d 363 (2d Dept 2009); see New York Hosp. Medical Center of Queens v Microtech Contracting Corp., 22 NY3d 501, 982 NYS2d 830, 5 NE3d 993 (2014) (employer's rights under Workers' Compensation Law not extinguished merely because its injured employee is an undocumented alien).

### 5. Contracts Involving Sexual and Marital Relations

An agreement for financial support in exchange for illicit sexual relations is violative of public policy and unenforceable, Anonymous v Anonymous, 293 AD2d 406, 740 NYS2d 341 (1st Dept 2002); see Pizzo v Goor, 50 AD3d 586, 857 NYS2d 526 (1st Dept 2008), as is a claim that defendant falsely promised to support plaintiff if she would have his child and give up

her career, Jennings v Hurt, 160 AD2d 576, 554 NYS2d 220 (1st Dept 1990). Likewise, a written agreement by a married man to purchase an apartment for his female companion in return for "love and affection" is unenforceable for lack of consideration and as contrary to public policy, Rose v Elias, 177 AD2d 415, 576 NYS2d 257 (1st Dept 1991); see Anonymous v Anonymous, supra. However, the courts will enforce an express contract between cohabiting unmarried individuals relating to payment for domestic or "housewifely" services, Morone v Morone, 50 NY2d 481, 429 NYS2d 592, 413 NE2d 1154 (1980), as long as the agreement is not based or dependent on illicit sexual relations, Potter v Davie, 275 AD2d 961, 713 NYS2d 627 (4th Dept 2000). Such express contracts may be enforced even if they are not in writing, Morone v Morone, supra. Similarly, the courts will enforce an oral agreement between an unmarried couple pursuant to which one party quit working full-time, thereby ceasing to earn money toward her own retirement plan, to stay home to care for the parties' children, in exchange for a certain share of the other party's retirement accounts, Dee v Rakower, 112 AD3d 204, 976 NYS2d 470 (2d Dept 2013). In contrast, claimed implied agreements involving domestic services are not enforceable because it is not reasonable to infer an agreement to pay for such services when the parties' relationship makes it natural that the services were rendered gratuitously, id.

A stipulation that requires a party to seek dissolution of a marriage or provides for the procurement of grounds for divorce is void as against public policy, Charap v Willett, 84 AD3d 1003, 925 NYS2d 94 (2d Dept 2011); Reid v McLeary, 271 AD2d 668, 706 NYS2d 179 (2d Dept 2000); Paulus v Kuchler, 214 AD2d 608, 625 NYS2d 81 (2d Dept 1995); see GOL § 5-311.

### 6. Contracts Violating the Rule Against Perpetuities

The rule against perpetuities, which is now embodied in EPTL § 9-1.1, prohibits devises and conveyances of estates in real property that postpone vesting of title more than "twenty-one years after one or more lives in being at the creation of the estate and any period of gestation involved." A thorough discussion of the rule against perpetuities, which arises most often in the context of trusts and wills, is beyond the scope of this Comment on contracts. It should be noted, however, that the rule does not apply to options to renew leases that are exercisable only during the lease's term, Bleecker Street Tenants Corp. v Bleeker Jones LLC, 16 NY3d 272, 920 NYS2d 291, 945 NE2d 484 (2011). The rule against perpetuities also does not apply to options to purchase real property that originate in leases and are not exercisable after lease expiration, id; Symphony Space, Inc. v Pergola Properties, Inc., 88 NY2d 466, 646 NYS2d 641, 669 NE2d 799 (1996), or purchase agreements that inure to the benefit of the parties' successors and assigns and do not specify closing dates but do provide that "time is of the essence," Kaiser-Haidri v Battery Place Green, LLC, 85 AD3d 730, 925 NYS2d 557 (2d Dept 2011).

The rule against perpetuities does apply to all non-lease-based options to purchase real property, regardless of whether the property is commercial or noncommercial in nature, Symphony Space, Inc. v Pergola Properties, Inc., 88 NY2d 466, 646 NYS2d 641, 669 NE2d 799 (1996); see Bleecker Street Tenants Corp. v Bleeker Jones LLC, 16 NY3d 272, 920 NYS2d 291, 945 NE2d 484 (2011).

### 7. Non-compete Clauses in Contracts Involving Personal Services

#### a. Employment Contracts

In New York, there is a "general judicial disfavor" of anticompetitive covenants in employment contracts that prohibit employees from working for competitors or engaging in competitive business activities after leaving their jobs, American Broadcasting Companies, Inc. v Wolf, 52 NY2d 394, 438 NYS2d 482, 420 NE2d 363 (1981); see Reed, Roberts Associates, Inc. v Strauman, 40 NY2d 303, 386 NYS2d 677, 353 NE2d 590 (1976). This disfavor is fueled by considerations of public policy militating against "sanctioning the loss of a man's livelihood," Reed, Roberts Associates, Inc v Strauman, supra. Covenants not to compete are strictly construed because of this disfavor, Brown & Brown, Inc. v Johnson, 25 NY3d 364, 12 NYS3d 606, 34 NE3d 357 (2015). The policy "favors the free exchange of goods and services through established market mechanisms," American Broadcasting Companies, Inc. v Wolf, supra.

An employment agreement not to compete will be enforced only if it (1) is no greater in time or area than is necessary to protect the legitimate interest of the employer, (2) does not impose undue hardship on the employee, and (3) does not injure the public, Brown & Brown, Inc. v Johnson, 25 NY3d 364, 12 NYS3d 606, 34 NE3d 357 (2015); BDO Seidman v Hirshberg,

93 NY2d 382, 690 NYS2d 854, 712 NE2d 1220 (1999); D & W Diesel, Inc. v McIntosh, 307 AD2d 750, 762 NYS2d 851 (4th Dept 2003). Similarly, an employer must have a legitimate business interest in restricting an employee's right to solicit former co-workers, Fewer v GFI Group Inc., 124 AD3d 457, 2 NYS3d 428 (1st Dept 2015). The employer must prove all three prongs of this test before the burden shifts, Brown & Brown, Inc, v Johnson, supra.

Where a non-compete provision is overbroad in that it is more restrictive than is necessary to protect the employer's legitimate interests, the court may grant partial enforcement, BDO Seidman v Hirshberg, 93 NY2d 382, 690 NYS2d 854, 712 NE2d 1220 (1999). If the employer demonstrates an absence of overreaching, coercive use of dominant bargaining power, or other anti-competitive misconduct, but has in good faith sought to protect a legitimate business interest, consistent with reasonable standards of fair dealing, partial enforcement may be justified, Brown & Brown, Inc. v Johnson, 25 NY3d 364, 12 NYS3d 606, 34 NE3d 357 (2015); BDO Seidman v Hirshberg, supra. Factors weighing against partial enforcement are the imposition of the covenant in connection with hiring or continued employment, the existence of coercion or a general plan of the employer to forestall competition, and the employer's knowledge that the covenant was overly broad, Brown & Brown, Inc. v Johnson, 115 AD3d 162, 980 NYS2d 631 (4th Dept 2014), rev'd on other grounds, 25 NY3d 364, 12 NYS3d 606, 34 NE3d 357 (2015). Where the employee had already left her prior job, the non-compete covenant was not presented to her until her first day of work at the new job, and she was required to sign as a condition of employment, partial enforceability depended on such factors as whether the employee understood the agreement, whether the employer discussed or explained it to her, what the nature of the discussion was, whether she was required to sign it the same day it was presented, whether she could have sought the advice of counsel and whether she had an opportunity to negotiate it, Brown & Brown, Inc. v Johnson, 25 NY3d 364, 12 NYS3d 606, 34 NE3d 357 (2015).

### i. Protectible Employer Interests

In BDO Seidman v Hirshberg, 93 NY2d 382, 690 NYS2d 854, 712 NE2d 1220 (1999), the Court of Appeals identified employer interests entitled to protection against (1) misappropriation of trade secrets or confidential client lists, (2) competition by a former employee whose services are in some sense "unique" or "extraordinary," and (3) situations in which the departing employee can be said to have appropriated good will properly belonging to the employer. "Confidential information" is information that cannot be readily ascertained and is not publicly available, Leo Silfen, Inc. v Cream, 29 NY2d 387, 328 NYS2d 423, 278 NE2d 636 (1972); Buhler v Michael P. Maloney Consulting, Inc., 299 AD2d 190, 749 NYS2d 867 (1st Dept 2002). A former employee who uses information that remained in his or her casual memory after employment is not engaging in improper misappropriation of confidential information, Leo Silfen, Inc. v Cream, supra; see Natural Organics, Inc. v Kirkendall, 52 AD3d 488, 860 NYS2d 142 (2d Dept 2008). Moreover, the identity of a company's contact person is ordinarily not "secret" and therefore does not constitute confidential information, Reed, Roberts Associates, Inc. v Strauman, 40 NY2d 303, 386 NYS2d 677, 353 NE2d 590 (1976).

A trade secret is a "formula, pattern, device or compilation of information" that gives a party "an opportunity to obtain an advantage over the competitors who do not know or use it," Ashland Management Inc. v Janien, 82 NY2d 395, 604 NYS2d 912, 624 NE2d 1007 (1993); E.J. Brooks Company v Cambridge Security Seals, 31 NY3d 441 (2018). The following factors are considered in determining whether information qualifies as a "trade secret": (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others, id; see Restatement of Torts § 757 comment b; Manculich v Dependable Auto Sales and Service, Inc., 39 AD3d 1070, 833 NYS2d 767 (3d Dept 2007) (discoverability of commercially useful information over Internet defeats claim of trade secrets). Conclusory allegations are insufficient to establish the existence of a trade secret, Business Networks of New York, Inc. v Complete Network Solutions Inc., 265 AD2d 194, 696 NYS2d 433 (1st Dept 1999).

An employer's good will or customer loyalty is a protectable interest if it was created through the overall efforts and expenditures of the employer, BDO Seidman v Hirshberg, 93 NY2d 382, 690 NYS2d 854, 712 NE2d 1220 (1999); Gundermann & Gundermann Ins. v Brassill, 46 AD3d 615, 853 NYS2d 82 (2d Dept 2007). However, that principle does not apply to the extent that the customers in question were brought to the employer's firm by the employee or otherwise had a pre-existing relationship with the employee, BDO Seidman v. Hirshberg, supra.

### ii. Geographical and Temporal Restrictions

A non-compete agreement must be reasonably limited in both time and geographic reach, BDO Seidman v Hirshberg, 93 NY2d 382, 690 NYS2d 854, 712 NE2d 1220 (1999); Meghan Beard, Inc. v Fadina, 82 AD3d 591, 919 NYS2d 156 (1st Dept 2011); Natural Organics, Inc. v Kirkendall, 52 AD3d 488, 860 NYS2d 142 (2d Dept 2008). Where a temporal or geographical restriction is overly broad, the court may enforce it on a more limited basis, BDO Seidman v. Hirshberg, supra; Willis of New York, Inc. v DeFelice, 299 AD2d 240, 750 NYS2d 39 (1st Dept 2002); Trans-Continental Credit & Collection Corp. v Foti, 270 AD2d 250, 704 NYS2d 106 (2d Dept 2000). The temporal and geographical reasonableness of a particular restraint depends on all of the facts and circumstances, including the nature of the employee's work, the employee's role in the employer's business and the scope of the restriction, see Willis of New York, Inc. v DeFelice, supra (two-year restraint on high-level employee's soliciting business from former customers held reasonable); Washington Square Institute for Psychotherapy and Mental Health, Inc. v Speciner, 259 AD2d 368, 687 NYS2d 69 (1st Dept 1999) (one-year restriction on psychotherapist treating patients introduced by plaintiff held reasonable).

### iii. Employee Choice Doctrine

Although noncompete clauses in employment contracts are not favored, the Court of Appeals has recognized an exception to this general principle where the remedy for the employee's noncompliance is the loss of postemployment benefits, Morris v Schroder Capital Management Intern., 7 NY3d 616, 825 NYS2d 697, 859 NE2d 503 (2006); Post v Merrill Lynch, Pierce, Fenner & Smith, Inc., 48 NY2d 84, 421 NYS2d 847, 397 NE2d 358 (1979). The rule, which is known as the "employee choice" doctrine, rests on the premise that there is no unreasonable restraint on the employee's liberty to earn a living if the employee is given the choice of preserving his or her rights under the contract by refraining from competition or risking forfeiture of such rights by exercising his or her right to compete, Morris v Schroder Capital Management Intern., supra; see Kristt v Whelan, 4 AD2d 195, 199, 164 NYS2d 239 (1st Dept 1957), aff'd, 5 NY2d 807, 181 NYS2d 205, 155 NE2d 116 (1958). The doctrine applies only in cases involving monetary, rather than injunctive, relief, Morris v Schroder Capital Management Intern., supra.

Where the "employee choice" doctrine applies, a restrictive covenant in an employment agreement will be enforced without regard to its reasonableness if the employee has left his or her job voluntarily, Morris v Schroder Capital Management Intern., 7 NY3d 616, 825 NYS2d 697, 859 NE2d 503 (2006). However, an essential element of the doctrine's application is the employer's willingness to continue the employee's employment, Morris v Schroder Capital Management Intern., supra; Post v Merrill Lynch, Pierce, Fenner & Smith, Inc., 48 NY2d 84, 421 NYS2d 847, 397 NE2d 358 (1979). Where the employer terminates the employment relationship without cause, that action necessarily destroys the mutuality of obligation on which the covenant rests, as well as the employer's ability to impose a forfeiture, Post v Merrill Lynch, Pierce, Fenner & Smith, Inc., supra; see Morris v Schroder Capital Management Intern., supra; Brown & Brown, Inc. v Johnson, 115 AD3d 162, 980 NYS2d 631 (4th Dept 2014). Employment may be deemed to have been terminated without cause where a "constructive discharge" occurred, Morris v Schroder Capital Management Intern., supra; Robinson v Kingston Hosp., 55 AD3d 1121, 866 NYS2d 387 (3d Dept 2008). A "constructive discharge" may be found where the employer deliberately made the employee's working conditions so intolerable that the employee was forced to resign, Morris v Schroder Capital Management Intern., supra. In Morris, the Court of Appeals adopted the test that is used by federal courts in employment discrimination cases for determining whether a "constructive discharge" has occurred.

### b. Clauses Restricting Competition Among Professionals

In determining whether to enforce non-compete agreements between professionals, the courts have given greater weight to the interests of the employer in restricting competition within a confined geographical area, Gelder Medical Group v Webber, 41 NY2d 680, 394 NYS2d 867, 363 NE2d 573 (1977); Karpinski v Ingrasci, 28 NY2d 45, 320 NYS2d 1, 268 NE2d 751 (1971); Rifkinson-Mann v Kasoff, 226 AD2d 517, 641 NYS2d 102 (2d Dept 1996); Novendstern v Mount Kisco Medical Group, 177 AD2d 623, 576 NYS2d 329 (2d Dept 1991); see BDO Seidman v Hirshberg, 93 NY2d 382, 690 NYS2d 854, 712 NE2d 1220 (1999); but see Goodman v New York Oncology Hematology, P.C., 101 AD3d 1524, 957 NYS2d 449 (3d Dept 2012) (noting that several states other than New York invalidate all non-compete agreements involving physicians because of the potential negative effect on patients). Thus, the Court of Appeals has enforced total restraints on competition within limited geographical areas, Gelder Medical Group v Webber, 41 NY2d 680, 394 NYS2d 867, 363 NE2d 573 (1977) (five

years within 30 miles of village); Karpinski v Ingrasci, 28 NY2d 45, 320 NYS2d 1, 268 NE2d 751 (1971) (permanent restraint in upstate five-county area). The rationale for the different treatment of agreements among members of the learned professions is that they provide "unique or extraordinary" services, Reed, Roberts Associates, Inc. v Strauman, 40 NY2d 303, 386 NYS2d 677, 353 NE2d 590 (1976). This rationale was not applicable to a restrictive covenant in an accountant's employment agreement with a national accounting firm, where the restriction extended to the entirety of a major metropolitan area, the employee's value consisted of his ability to attract clients rather than his uniqueness or ability to provide extraordinary services and the parties were not in competition within a narrow group of service providers in a rural geographical market, BDO Seidman v Hirshberg, supra.

The more liberal analysis that has generally been applied to restraints on competition among professionals is not applied to restrictive covenants in law firm partnership agreements, Denburg v Parker Chapin Flattau & Klimpl, 82 NY2d 375, 604 NYS2d 900, 624 NE2d 995 (1993); Cohen v Lord, Day & Lord, 75 NY2d 95, 551 NYS2d 157, 550 NE2d 410 (1989). The unique analysis that is applied to such restraints is mandated by the Rules of Professional Conduct, see 22 NYCRR § 1200.00; Cohen v Lord, Day & Lord, supra. Agreements that impose financial sanctions on withdrawing partners have been held unenforceable where the agreement would have the effect of penalizing actual or potential competition by the withdrawing partner, Denburg v Parker Chapin Flattau & Klimpl, supra; Cohen v Lord, Day & Lord, supra; Judge v Bartlett, Pontiff, Stewart & Rhodes, P.C., 197 AD2d 148, 610 NYS2d 412 (3d Dept 1994). However, a provision reducing a retiring partner's post-retirement supplemental payments based on his or her earned income from any source was not necessarily violative of the public policies underlying the rules of professional conduct, Hackett v Milbank, Tweed, Hadley & McCloy, 86 NY2d 146, 630 NYS2d 274, 654 NE2d 95 (1995).

### *c. Clauses Restricting Competition Following Sale of a Business*

Where there has been a sale of a business involving the transfer of the good will of a going concern, the courts will generally enforce an incidental covenant by the seller not to compete with the buyer after the sale, Purchasing Associates, Inc. v Weitz, 13 NY2d 267, 246 NYS2d 600, 196 NE2d 245 (1963); Sager Spuck Statewide Supply Co. Inc. v Meyer, 273 AD2d 745, 710 NYS2d 429 (3d Dept 2000). The enforceability of such an agreement depends on the reasonableness of its duration and scope, Purchasing Associates, Inc. v Weitz, supra; Mammolito v McHugh, 8 AD3d 537, 779 NYS2d 533 (2d Dept 2004); Sager Spuck Statewide Supply Co. v Meyer, supra; Slomin's Inc. v Gray, 176 AD2d 934, 575 NYS2d 545 (2d Dept 1991); Shearson Lehman Bros. Holdings, Inc. v Schmertzler, 116 AD2d 216, 500 NYS2d 512 (1st Dept 1986); see Mohawk Maintenance Co., Inc. v Kessler, 52 NY2d 276, 437 NYS2d 646, 419 NE2d 324 (1981); see also Bessemer Trust Co., N.A. v Branin, 16 NY3d 549, 925 NYS2d 371, 949 NE2d 462 (2011) (recognizing implied covenant to refrain from soliciting former customers after sale of good will of business).

### 8. Contracts Violating Champerty Laws

Contracts that violate Judiciary Law § 489, which codifies the common-law rule against champerty, are unenforceable, Justinian Capital SPC v WestLB AG, 28 NY3d 160, 43 NYS3d 218, 65 NE3d 1253 (2016). "Champerty" means purchasing or taking an assignment for the primary purpose of bringing lawsuit, id; Moses v McDivitt, 88 NY 62 (1882); Universal Inv. Advisory SA v Bakrie Telecom PTE, Ltd., 154 AD3d 171, 62 NYS3d 1 (1st Dept 2017). Under the judicially prescribed test, a purchase or assignment is not champertous if the purchasers' intent to bring a suit is merely incidental or contingent, Justinian Capital SPC v WestLB AG, supra; Moses v McDivitt, supra.

Conduct that would otherwise be champertous is not violative of the Judiciary Law if it falls within the safe harbor provided by Judiciary Law § 489(2), which exempts the purchase or assignment of notes or securities with an aggregate purchase price of at least $500,000. "Purchase price" as used in the statute does not mean either the face value of the note or security or the amount of the actual payment made, Justinian Capital SPC v WestLB AG, 28 NY3d 160, 43 NYS3d 218, 65 NE3d 1253 (2016). Rather, it means a binding and bona fide obligation to pay $500,000 or more for notes or other securities, which is satisfied by actual payment of at least $500,000 or the transfer of financial value worth at least $500,000 in exchange for the notes or other securities, id.

For a discussion of the history and purpose of the rule against champerty, see Justinian Capital SPC v WestLB AG, 28 NY3d 160, 43 NYS3d 218, 65 NE3d 1253 (2016).

### G. Statute of Limitations

#### 1. In General

The statute of limitations for an action asserting breach of contract is six years, CPLR 213(2); see Clearmont Property, LLC v Eisner, 58 AD3d 1052, 872 NYS2d 725 (3d Dept 2009). In general, a breach of contract cause of action accrues at the time of the breach, ACE Securities Corp. v DB Structured Products, Inc., 25 NY3d 581, 15 NYS3d 716, 36 NE3d 623 (2015); Ely-Cruikshank Co., Inc. v Bank of Montreal, 81 NY2d 399, 599 NYS2d 501, 615 NE2d 985 (1993); Guild v Hopkins, 271 App Div 234, 63 NYS2d 522 (1st Dept 1946), aff'd, 297 NY 477, 74 NE2d 183 (1947); New York v Cotroneo & Marino's United Elec. Co., Inc., 269 AD2d 154, 703 NYS2d 79 (1st Dept 2000); see Lieberthal v Agency Ins. Brokers Inc., 216 AD2d 816, 628 NYS2d 885 (3d Dept 1995) (cause of action alleging broker's breach of contractual duty to procure full and adequate insurance accrues at time of issuance of policy), even though there may be no damages until later, Ely-Cruikshank Co. v Bank of Montreal, supra. Since nominal damages are always available in breach of contract actions, Kronos, Inc. v AVX Corp., 81 NY2d 90, 595 NYS2d 931, 612 NE2d 289 (1993); see Connaughton v Chipotle Mexican Grill, Inc., 29 NY3d 137, 53 NYS3d 598, 75 NE3d 1159 (2017), all of the elements necessary to maintain the claim are present at the time of the breach, Ely-Cruikshank Co. v Bank of Montreal, supra. Knowledge of the occurrence of the wrong on the part of the plaintiff is not necessary to start the six year statute of limitations running, Ace Securities Corp. v DB Structured Products, Inc., supra (New York does not apply "discovery" rule to statutes of limitations in contract actions); Ely-Cruikshank Co. v Bank of Montreal, supra; Varga v Credit-Suisse, 5 AD2d 289, 171 NYS2d 674 (1st Dept 1958), aff'd, 5 NY2d 865, 182 NYS2d 17, 155 NE2d 865 (1958); Allard v Allard, 145 AD3d 1254, 43 NYS3d 580 (3d Dept 2016).

Parties to a contract cannot agree in advance to extend the time for bringing an action, but may agree to limit the period of time in which an action must be commenced to a shorter time than that provided by the applicable statute of limitations, see John J. Kassner & Co., Inc. v New York, 46 NY2d 544, 415 NYS2d 785, 389 NE2d 99 (1979); Rini v Kenn-Schl, LLC, 64 AD3d 988, 881 NYS2d 725 (3d Dept 2009), provided that the contract is not one of adhesion or the product of overreaching or that the altered period is not unreasonably short, see Executive Plaza, LLC v Peerless Ins. Co., 22 NY3d 511, 982 NYS2d 826, 5 NE3d 989 (2014); John J. Kassner & Co., Inc. v New York, supra; Certified Fence Corp. v Felix Industries, Inc., 260 AD2d 338, 687 NYS2d 682 (2d Dept 1999). The parties may also provide for a different date of accrual, as long as there was no fraud, duress or misrepresentation, Putrelo Const. Co. v Marcy, 105 AD3d 1406, 964 NYS2d 812 (4th Dept 2013). An accrual date provided by the parties in their contract is unenforceable if it renders the limitations period unreasonable, Executive Plaza, LLC v Peerless Ins. Co., supra, or postpones the time for bringing the action beyond the statutory limitations period, Deutsche Bank Nat. Trust Co. v Flagstar Capital Markets Corp., 143 AD3d 15, 36 NYS3d 135 (1st Dept 2016). While the courts will enforce a contract provision creating a separate and distinct obligation with a separate accrual date, ACE Securities Corp. v DB Structured Products, Inc., 25 NY3d 581, 15 NYS3d 716, 36 NE3d 623 (2015); Bulova Watch Co., Inc. v Celotex Corp., 46 NY2d 606, 415 NYS2d 817, 389 NE2d 130 (1979), that principle does not apply where the parties have attempted to extend the time of accrual for a promise that is not independent and is derived from the promise that was allegedly breached, Deutsche Bank Nat. Trust Co. v Flagstar Capital Markets Corp., supra. Ultimately, the period of time within which an action must be brought should be fair and reasonable, in view of the circumstances of each particular case, id. The circumstances, not the time, must be the determining factor, id.

Where a contract provides for continuing performance, each breach begins the running of the statute of limitations anew, Sirico v F.G.G. Productions, Inc., 71 AD3d 429, 896 NYS2d 61 (1st Dept 2010) (duty to pay royalties recurring obligation; claim accrued with each breach by producer); Beller v William Penn Life Ins. Co. of New York, 8 AD3d 310, 778 NYS2d 82 (2d Dept 2004) (insurer's obligation to consider specified factors, such as improvements in mortality, before raising life insurance rates constituted continuing duty); Stalis v Sugar Creek Stores, Inc., 295 AD2d 939, 744 NYS2d 586 (4th Dept 2002) (contractual obligation to assure code compliance was continuing duty; new cause of action accrued each day obligation breached); 1050 Tenants Corp. v Lapidus, 289 AD2d 145, 735 NYS2d 47 (1st Dept 2001); see Ballen v Potter, 251 NY 224, 167 NE 424 (1929); Whitney v Perry, 208 AD2d 1025, 617 NYS2d 395 (3d Dept 1994).

Where there has been an anticipatory breach, the plaintiff may treat the entire contract as breached and sue immediately or wait until the time set for performance has expired, see Rachmani Corp. v 9 East 96th Street Apartment Corp., 211 AD2d 262, 629 NYS2d 382 (1st Dept 1995). Thus, a cause of action brought within six years of the time when performance was

due will not be time-barred under the statute of limitations even though more than six years has passed since the defendant unambiguously and unequivocally indicated an intention not to perform, see id.

A cause of action for payment of a sum of money owed pursuant to a contract accrues when the plaintiff has the legal right to demand payment, Gould v Decolator, 121 AD3d 845, 994 NYS2d 368 (2d Dept 2014). When the right to a final payment under the contract is subject to a condition precedent, the obligation to pay arises and the cause of action accrues when the condition has been fulfilled, Hahn Automotive Warehouse, Inc. v American Zurich Ins. Co., 18 NY3d 765, 944 NYS2d 742, 967 NE2d 1187 (2012); John J. Kassner & Co., Inc. v New York, 46 NY2d 544, 415 NYS2d 785, 389 NE2d 99 (1979); Bombardier Transp. (Holdings) USA, Inc. v Telephonics Corp., 14 AD3d 358, 788 NYS2d 80 (1st Dept 2005).

Although a claim may be time barred, it may be asserted as a defense, as where an action for liquidated delay damages was properly dismissed as untimely but was permitted as a setoff against any payments that would otherwise be due the contractor had there been no delay, New York v Cotroneo & Marino's United Elec. Co., Inc., 269 AD2d 154, 703 NYS2d 79 (1st Dept 2000).

CPLR 202, which governs causes of action brought by a nonresident that accrue outside of New York State, requires New York courts to borrow the statute of limitations of the foreign jurisdiction where the nonresident's cause of action accrues if the limitation period is shorter than that of New York, Global Financial Corp. v Triarc Corp., 93 NY2d 525, 693 NYS2d 479, 715 NE2d 482 (1999); see Portfolio Recovery Associates, LLC v King, 14 NY3d 410, 901 NYS2d 575, 927 NE2d 1059 (2010); Education Resources Institute, Inc. v Piazza, 17 AD3d 513, 794 NYS2d 65 (2d Dept 2005). Under CPLR 202, causes of action for contract and quantum meruit accrue at the time and in the place of the injury and when an alleged injury is purely economic the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss, Global Financial Corp. v Triarc Corp., supra; see Portfolio Recovery Associates, LLC v King, supra.

## 2. Tolling and Postponement of Accrual

A time-limitation period in a contract action may be tolled by payment of a portion of an admitted debt, made and accepted as such, accompanied by circumstances amounting to an absolute and unqualified acknowledgment by the debtor of more being due, where a promise to pay the remainder may be inferred, Lew Morris Demolition Co., Inc. v Board of Ed. of City of New York, 40 NY2d 516, 387 NYS2d 409, 355 NE2d 369 (1976); Business Loan Center v Wagner, 31 AD3d 1122, 818 NYS2d 406 (4th Dept 2006); Education Resources Institute, Inc. v Piazza, 17 AD3d 513, 794 NYS2d 65 (2d Dept 2005). A written acknowledgment signed by the party to be charged also starts the statute of limitations to run anew, Hui v East Broadway Mall, Inc., 4 NY3d 790, 795 NYS2d 157, 828 NE2d 73 (2005); Fleet Nat. Bank v Laquidara, Inc., 290 AD2d 930, 736 NYS2d 813 (3d Dept 2002); see Hakim v Hakim, 99 AD3d 498, 953 NYS2d 1 (1st Dept 2012); Lynford v Williams, 34 AD3d 761, 826 NYS2d 335 (2d Dept 2006); GOL § 17-101. To constitute an acknowledgement of a debt, the writing must recognize an existing debt and contain nothing inconsistent with an intention on the part of the debtor to pay it, Paonessa v C & L Builder/Developer, Inc., 50 AD3d 1334, 856 NYS2d 276 (3d Dept 2008); Knoll v Datek Securities Corp., 2 AD3d 594, 769 NYS2d 581 (2d Dept 2003). GOL § 17-101 does not affect the common-law rule that part payment of a debt otherwise barred by the Statute of Limitations will be effective to restart the time limit for bringing an action if made under circumstances from which a promise to honor the obligation may be inferred, Roth v Michelson, 55 NY2d 278, 449 NYS2d 159, 434 NE2d 228 (1982).

## 3. Particular Contracts

### a. Contracts for Payment of a Sum of Money

The statute of limitations for an action to recover on a promissory note is six years, CPLR 213(2). Where the claim is for payment of a sum of money allegedly owed pursuant to a contract, the cause of action accrues when the claimant possesses a legal right to demand payment, not when demand is actually made, Hahn Automotive Warehouse, Inc. v American Zurich Ins. Co., 18 NY3d 765, 944 NYS2d 742, 967 NE2d 1187 (2012); Kyer v Ravena Coeymans-Selkirk Cent. School Dist., 144 AD3d 1260, 41 NYS3d 584 (3d Dept 2016). The cause of action to recover on a note payable on demand accrues at the time of its execution, Sce v Ach, 56 AD3d 457, 867 NYS2d 140 (2d Dept 2008). However, with respect to a note payable in

installments, a separate cause of action accrues for each installment payment on the date that the installment payment becomes due and is defaulted upon, unless the debt is accelerated, id.

### b. Construction Contracts

The statute of limitations on a cause of action for breach of a construction contract begins to run upon completion of the actual physical work, Cabrini Medical Center v Desina, 64 NY2d 1059, 489 NYS2d 872, 479 NE2d 217 (1985); Rite Aid of New York, Inc. v R.A. Real Estate, Inc., 40 AD3d 474, 837 NYS2d 48 (1st Dept 2007); Mastropieri v Solmar Const. Co., Inc., 159 AD2d 698, 553 NYS2d 187 (2d Dept 1990). This is so even though incidental matters relating to the project remain open, see Phillips Const. Co., Inc. v New York, 61 NY2d 949, 475 NYS2d 244, 463 NE2d 585 (1984); State v Lundin, 60 NY2d 987, 471 NYS2d 261, 459 NE2d 486 (1983); Trustees of Columbia University in Trustees of Columbia University in City of New York v Gwathmey Siegel and Associates Architects, 167 AD2d 6, 574 NYS2d 668 (1st Dept 1991) (occupancy of premises under construction not determinative of substantial completion). Inconsequential repairs and delays in issuing final payment are insufficient to extend the accrual date of the cause of action, Glens Falls v Crandell Associates Architects, 170 AD2d 866, 566 NYS2d 689 (3d Dept 1991). Construction may be substantially complete even though there remains incidental or cosmetic work that could be completed in a few hours on a single day, New York Central Mut. Fire Ins. Co. v Glider Oil Co., Inc., 90 AD3d 1638, 936 NYS2d 815 (4th Dept 2011). The statute begins to run upon substantial completion of construction even where the cause of action rests on damage to personal rather than real property, City School Dist. of City of Newburgh v Hugh Stubbins & Associates, Inc., 85 NY2d 535, 626 NYS2d 741, 650 NE2d 399 (1995).

A cause of action against an architect for breach of contract to design and oversee construction accrues on the date the final certificate of occupancy is issued, Board of Managers of Yardarm Beach Condominium v Vector Yardarm Corp., 172 AD2d 303, 568 NYS2d 391 (1st Dept 1991), unless the contract provides for an alternate date, Matter of Oriskany Cent. School Dist. (Edmund J. Booth Architects, A.I.A.), 206 AD2d 896, 615 NYS2d 160 (4th Dept 1994), aff'd, 85 NY2d 995, 630 NYS2d 960, 654 NE2d 1208 (1995). However, where the owner controls the issuance of the certificate, the statute of limitations accrues upon completion, State v Lundin, 60 NY2d 987, 471 NYS2d 261, 459 NE2d 486 (1983) (final certificate of payment). An owner's claim against a design professional accrues when the designer completes its performance of significant duties under the contract, Sendar Development Co., LLC v CMA Design Studio P.C., 68 AD3d 500, 890 NYS2d 534 (1st Dept 2009); Parsons Brinckerhoff Quade & Douglas, Inc. v Energypro Const. Partners, 271 AD2d 233, 707 NYS2d 30 (1st Dept 2000).

### c. Contracts Involving Professional Services

In malpractice actions against lawyers, accountants, architects and other non-medical professionals, a three-year statute of limitations governs regardless of whether the underlying theory is based in contract or tort, CPLR 214(6); Matter of R.M. Kliment & Frances Halsband, Architects (McKinsey & Co., Inc.), 3 NY3d 538, 788 NYS2d 648, 821 NE2d 952 (2004). The same rule applies even where a party's ordinary professional obligations have been incorporated as express terms of the agreement, Matter of R.M. Kliment & Frances Halsband, Architects (McKinsey & Co., Inc.), supra (architect's obligation to comply with building codes). CPLR 214(6) does not apply to individuals who are not considered professionals within the meaning of the statute, Chase Scientific Research, Inc. v NIA Group, Inc., 96 NY2d 20, 725 NYS2d 592, 749 NE2d 161 (2001) (insurance agents and brokers); Pike v New York Life Ins. Co., 72 AD3d 1043, 901 NYS2d 76 (2d Dept 2010); Parker v Leonard, 24 AD3d 1255, 807 NYS2d 774 (4th Dept 2005) (aircraft mechanics). CPLR 214(6) was enacted to overrule Santulli v Englert, Reilly & McHugh, P.C., 78 NY2d 700, 579 NYS2d 324, 586 NE2d 1014 (1992), which applied the six year statute of limitations period for breach of contract claims for legal malpractice.

### d. Contracts Implied in Law (Quantum Meruit Causes of Action)

The statute of limitations governing causes of action for quantum meruit based on a contract implied in law is six years, CPLR 213(2); Erdheim v Gelfman, 303 AD2d 714, 757 NYS2d 320 (2d Dept 2003). Such a cause of action accrues on the date that the last services were completed, Petracca v Petracca, 305 AD2d 566, 760 NYS2d 513 (2d Dept 2003) (abrogated on other grounds by, Butler v Catinella, 58 AD3d 145, 868 NYS2d 101 (2d Dept 2008)); Stewart v Stuart, 262 AD2d 396, 690 NYS2d 745 (2d Dept 1999). For a charge and comment on quantum meruit claims, see PJI 4:2.1.

### e. Contracts with Governmental Entities

Notice of claim against a public authority must be filed within three months after accrual of the claim, Public Authorities Law § 1744(2)(i). The timely filing of a notice of claim is a condition precedent to the commencement of the action, C.S.A. Contracting Corp. v New York City School Const. Authority, 5 NY3d 189, 800 NYS2d 123, 833 NE2d 266 (2005); Koren-DiResta Const. Co., Inc. v New York City School Const. Authority, 293 AD2d 189, 740 NYS2d 56 (1st Dept 2002); Popular Const., Inc. v New York City School Const. Authority, 268 AD2d 467, 702 NYS2d 341 (2d Dept 2000). A contractor's claim accrues when its damages are ascertainable, C.S.A. Contracting Corp. v New York City School Const. Authority, supra; Tom L. La Mere & Associates, Inc. v City of Syracuse Bd. of Educ., 48 AD3d 1050, 851 NYS2d 752 (4th Dept 2008). Although this is a fact-specific determination, the general rule is that damages are ascertainable once the work is substantially completed or a detailed invoice of the work performed is submitted, C.S.A. Contracting Corp. v New York City School Const. Authority, supra; D & L Associates, Inc. v New York City School Const. Authority, 69 AD3d 435, 894 NYS2d 14 (1st Dept 2010).

Actions against the Port Authority must be commenced within one year of accrual, McKinney's Unconsolidated Laws § 7107. Under the statutory scheme, compliance with the limitations period is a condition precedent to the maintenance of the action and, thus, the tolling provisions of CPLR 205(a) have no effect, Yonkers Contracting Co., Inc. v Port Authority Trans-Hudson Corp., 93 NY2d 375, 690 NYS2d 512, 712 NE2d 678 (1999).

The statute of limitations for asserting a contract claim based on construction of a public educational facility is one year, Education Law § 3813(2-b); Public Authorities Law § 1744(2); see D & L Associates, Inc. v New York City School Const. Authority, 69 AD3d 435, 894 NYS2d 14 (1st Dept 2010). In cases involving construction claims against a board of education or a public authority for additional work, a distinction must be made between accrual for purposes of the statute of limitations and accrual for purposes of notice of claim, Koren-DiResta Const. Co., Inc. v New York City School Const. Authority, 293 AD2d 189, 740 NYS2d 56 (1st Dept 2002); Henry Boeckmann, Jr. & Associates, Inc. v Board of Educ., Hempstead Union Free School Dist. No. 1, 207 AD2d 773, 616 NYS2d 395 (2d Dept 1994). The statute of limitations in such cases begins to run from the time of the breach, Fapco Landscaping, Inc. v Valhalla Union Free School Dist., 61 AD3d 922, 877 NYS2d 448 (2d Dept 2009); Kingsley Arms, Inc. v Copake-Taconic Hills Cent. School Dist., 9 AD3d 696, 780 NYS2d 805 (3d Dept 2004); Albany Specialties, Inc. v Shenendehowa Central School Dist., 307 AD2d 514, 763 NYS2d 128 (3d Dept 2003), i.e., from the time when the plaintiff should have viewed the claim as having been rejected, Arnell Const. Corp. v North Tarrytown, 100 AD2d 562, 473 NYS2d 489 (2d Dept 1984), aff'd, 64 NY2d 916, 488 NYS2d 379, 477 NE2d 620 (1985); Mainline Elec. Corp. v East Quogue Union Free School Dist., 46 AD3d 859, 849 NYS2d 92 (2d Dept 2007); Mahopac Cent. School Dist. v Piazza Bros., Inc., 29 AD3d 699, 815 NYS2d 168 (2d Dept 2006); Spoleta Const. and Development Corp. v Board of Educ. of Byron-Bergen Cent. School Dist., 221 AD2d 927, 634 NYS2d 300 (4th Dept 1995). In contrast, for purposes of the notice of claim requirement of Education Law § 3813, the claim accrues as of the date payment for the amount claimed was denied or where payment was neglected for 30 days, Conmas, Inc. v Tully Cent. School Dist., 43 AD3d 614, 841 NYS2d 182 (3d Dept 2007); Lenz Hardware, Inc. v Board of Educ., 24 AD3d 1278, 809 NYS2d 310 (4th Dept 2005).

Although Education Law § 3813(2-a) permits a claimant to file a late notice of claim, an application under this provision must be made within the one-year period of limitations for such claims, Consolidated Const. Group, LLC v Bethpage Union Free School Dist., 39 AD3d 792, 835 NYS2d 630 (2d Dept 2007); see Education Law § 3813(2-b). For purposes of Public Authorities Law § 1744(2), the claim accrues when a contractor's damages are ascertainable, which is when the work is substantially completed or a detailed invoice of the work performed is submitted, C.S.A. Contracting Corp. v New York City School Const. Authority, 5 NY3d 189, 800 NYS2d 123, 833 NE2d 266 (2005); see Koren-DiResta Const. Co., Inc. v New York City School Const. Authority, 293 AD2d 189, 740 NYS2d 56 (1st Dept 2002) (notice of claim timely when contract required that public authority first certify completion of work). For purposes of the notice of claim requirement, it does not matter whether the contract has yet been breached; thus, plaintiff's claims may be barred before plaintiff even knows that there is a claim, Koren-DiResta Const. Co., Inc. v New York City School Const. Authority, supra.

The notice of claim requirements of Education Law § 3813(1) are not waived for contract disputes already in litigation, Varsity Transit, Inc. v Board of Educ. of City of New York, 5 NY3d 532, 806 NYS2d 457, 840 NE2d 569 (2005). Thus, new notices of claim must be filed during litigation in order to recover for underpayments postdating those set forth in the original

notice of claim, id.

Pursuant to Court of Claims Act § 10(4), a claim against the State for breach of contract must be filed within six months after the accrual of the claim unless a notice of intention is filed within that time, in which event the claim must be filed within two years of accrual. Under the statute, a claim accrues when damages become ascertainable, Waters of Saratoga Springs, Inc. v State, 116 AD2d 875, 498 NYS2d 196 (3d Dept 1986), aff'd, 68 NY2d 777, 506 NYS2d 673, 498 NE2d 146 (1986); Inter-Power of New York, Inc. v State, 230 AD2d 405, 657 NYS2d 490 (3d Dept 1997); Greenspan Bros. v State, 122 AD2d 249, 505 NYS2d 173 (2d Dept 1986).

General Municipal Law § 103 establishes competitive bidding requirements. The substance of a claim under the statute involves both common-law breach-of-contract and fraud principles, Poughkeepsie v Espie, 41 AD3d 701, 840 NYS2d 600 (2d Dept 2007). As there is no limitations period set out in either the statute or the case law, the six-year catch-all limitations period in CPLR 213 governs, Poughkeepsie v Espie, supra.

Pursuant to Town Law § 65(3), a cause of action against a town arising out of a contract dispute must be commenced within eighteen months of accrual, Micro-Link, LLC v Amherst, 73 AD3d 1426, 900 NYS2d 578 (4th Dept 2010); Quail Summit, Inc. v Canandaigua, 19 AD3d 1026, 797 NYS2d 676 (4th Dept 2005); Schacker Real Estate Corp. v Babylon, 278 AD2d 221, 717 NYS2d 286 (2d Dept 2000). Where the action seeks to compel payment for work, labor and services rendered under a contract, the cause of action accrues when the claim is actually or constructively rejected, Micro-Link, LLC v Amherst, supra; Nassau v Westchester Fire Ins. Co., 281 AD2d 803, 722 NYS2d 298 (3d Dept 2001). The statute also requires the filing of a written verified claim with the town clerk within six months of accrual of the cause of action, Town Law § 65(3); see Micro-Link, LLC v Amherst, supra. The claim accrues when the plaintiff should have viewed the claim as actually or constructively rejected, Nassau v Westchester Fire Ins. Co., supra; Trison Contracting, Inc. v Huntington, 227 AD2d 397, 642 NYS2d 53 (2d Dept 1996). When the action arises out of an agreement for payment in lieu of taxes, the claim accrues when the property is assessed as non-exempt, Quail Summit, Inc. v Canandaigua, supra.

In cases involving claims against a village, a cause of action for breach of contract must be commenced within eighteen months after the cause of action accrued, CPLR 9802. A cause of action involving the wrongful issuance of a building permit accrues when the permit is issued and such issuance does not constitute a continuing wrong, Greco v Freeport, 223 AD2d 674, 637 NYS2d 191 (2d Dept 1996); Solow v Liebman, 202 AD2d 493, 609 NYS2d 58 (2d Dept 1994).

### f. Surety Bonds

State Finance Law § 137 protects the rights of persons furnishing labor or materials to contractors or subcontractors on a public improvement project to receive payment by requiring the posting of a payment bond, Quantum Corporate Funding, Ltd. v Westway Industries, Inc., 4 NY3d 211, 791 NYS2d 876, 825 NE2d 117 (2005); Specialty Products & Insulation Co. v St. Paul Fire & Marine Ins. Co., 99 NY2d 459, 758 NYS2d 255, 788 NE2d 604 (2003). The statute permits suit to be brought by subcontractors' assignees against the bond sureties, Quantum Corporate Funding, Ltd. v Westway Industries, Inc., supra. An action against a surety on a public improvement construction bond must be commenced within one year of the date on which final payment under the claimant's subcontract became due, State Finance Law § 137(4)(b); A.C. Legnetto Const., Inc. v Hartford Fire Ins. Co., 92 NY2d 275, 680 NYS2d 45, 702 NE2d 830 (1998), unless the payment bond itself contains an accrual date more favorable to the plaintiff, American Bldg. Contractors Associates, Inc. v Mica & Wood Creations, LLC, 23 AD3d 322, 804 NYS2d 109 (2d Dept 2005). Pursuant to State Finance Law § 137(3), laborers and material suppliers who work for a subcontractor rather than directly for the contractor are permitted to assert claims under the payment bond, but only if they provide written notice to the contractor within 120 days from the date on which the last of the labor was performed or the last of the materials was furnished. This statutory notice period is measured from the date of final delivery of materials for which the claim is made rather than from the date of each delivery to the project, Specialty Products & Insulation Co. v St. Paul Fire & Marine Ins. Co., supra.

An action on a standard subcontract performance bond (AIA Document No. 311) must be commenced within two years from the date on which final payment under the contract is due, Walter Concrete Const. Corp. v Lederle Laboratories, 99 NY2d 603, 758 NYS2d 260, 788 NE2d 609 (2003). Unlike the more specific AIA-312 bond which requires pre-default notification to the contractor and surety by the owner, the AIA-311 bond contains no explicit provision requiring a notice of default as a condition precedent to any legal action on the bond, id. In actions brought by a subcontractor to recover on a labor and

material bond, the statute of limitations begins to run when a subcontractor who has directly contracted with the general contractor has demanded final payment and ninety days have passed since the subcontractor ceased work on the project, Windsor Metal Fabrications, Ltd. v General Acc. Ins. Co. of America, 94 NY2d 124, 700 NYS2d 90, 722 NE2d 58 (1999). This time frame may not be extended or overridden by any provisions of the subcontract, id. However, the parties may by explicit provision in the bond expand the period in which to commence an action, see A.C. Legnetto Const., Inc. v Hartford Fire Ins. Co., 92 NY2d 275, 680 NYS2d 45, 702 NE2d 830 (1998); Swing Staging, Inc. v Hartford Fire Ins. Co., 269 AD2d 193, 703 NYS2d 99 (1st Dept 2000). The accrual date is often a question of fact, requiring a consideration of such factors as the date of the last invoice, the date the defaulting subcontractor abandoned the work site and the date of the subcontractor's default in returning the equipment, Swing Staging, Inc. v Hartford Fire Ins. Co., supra.

### g. Insurance Contracts

The parties to an insurance contract may agree that a cause of action against the insurer will accrue upon the occurrence of a specified event, see Medical Facilities, Inc. v Pryke, 62 NY2d 716, 476 NYS2d 532, 465 NE2d 39 (1984); Niagara Frontier Transp. Authority v Encon Underwriting Agency, Inc., 185 AD2d 642, 586 NYS2d 53 (4th Dept 1992). In the absence of such a policy provision, the statute of limitations in an action for breach of an insurance contract begins to run when the contract is breached, Medical Facilities, Inc. v Pryke, supra; see Lobello v New York Cent. Mut. Fire Ins. Co., 152 AD3d 1206, 58 NYS3d 842 (4th Dept 2017); Niagara Frontier Transp. Authority v Encon Underwriting Agency, Inc., supra (statute begins to run when insurer denies liability under the contract); see also Block v Teachers Ins., Annuity Ass'n of America, 286 AD2d 298, 731 NYS2d 138 (1st Dept 2001) (statute begins to run upon denial of insured's request for reconsideration of claim under group disability policy).

In the Fourth Department, where a casualty insurance policy provides that an action on the policy must be commenced within a certain period of time after the "date of loss," the limitations period begins to run upon the insurer's breach of the policy, not on the date of the event insured against, see Lobello v New York Cent. Mut. Fire Ins. Co., 152 AD3d 1206, 58 NYS3d 842 (4th Dept 2017) (disavowing Klawiter v CGU/OneBeacon Ins. Group, 27 AD3d 1155, 810 NYS2d 756 (4th Dept 2006). If a casualty insurance policy requires an action on the policy to be commenced within a certain period of time after the "inception of loss," the limitations period begins to run on the date of the event insured against, Lobello v New York Cent. Mut. Fire Ins. Co., supra; see Proc v Home Ins. Co., 17 NY2d 239, 270 NYS2d 412, 217 NE2d 136 (1966). The First Department appears to follow the Fourth Department's approach, see Margulies v Quaker City Fire & Marine Ins. Co., 276 App Div 695, 97 NYS2d 100 (1st Dept 1950) (where policy provides that suit must be brought within a designated period after "loss or damage" occurs, that period is computed not from time of occurrence of physical loss, casualty or event insured against, but from time that liability accrues under provisions of policy); see also Morgan Guar. Trust Co. of New York v Aetna Cas. and Sur. Co., 199 AD2d 72, 604 NYS2d 952 (1st Dept 1993). However, in the Second Department, the phrases "date of loss" and "inception of loss" have been construed to refer to the date of the event insured against, and a cause of action for breach of a casualty insurance policy using one of those phrases therefore accrues on the date of that event, see Roberts v New York Property Ins. Underwriting Ass'n, 253 AD2d 807, 677 NYS2d 621 (2d Dept 1998); Costello v Allstate Ins. Co., 230 AD2d 763, 646 NYS2d 695 (2d Dept 1996); see also D'Angelo v Allstate Ins. Co., 126 AD3d 931, 6 NYS3d 135 (2d Dept 2015).

In cases of unauthorized insurers, an insurance broker has a continuing duty throughout the life of the policy to apprise the insured of any adverse changes in the carrier's financial capability, see New York Health & Racquet Club, Inc. v NIA/Kornreich Ltd. Liability Co., 290 AD2d 348, 736 NYS2d 369 (1st Dept 2002) (duty does not extend beyond policy's expiration). In such a case, the statute of limitations does not commence to run until the expiration of the policy, Central General Hosp. v Bramex Ltd., 174 AD2d 556, 570 NYS2d 670 (2d Dept 1991).

### h. Miscellaneous Agreements

A cause of action for breach of a nondisclosure agreement accrues on the date that the protected information was disclosed, and it does not continuously accrue upon subsequent disclosures, Dolgoff Holophase, Inc. v E.I. Du Pont de Nemours & Co., 212 AD2d 661, 622 NYS2d 769 (2d Dept 1995).

A contract for the sale of a cooperative apartment is in reality a sale of securities in a cooperative corporation and therefore

governed by the four-year statute of limitations contained in UCC § 2-725(1), McLeod v Cowles, 215 AD2d 460, 626 NYS2d 831 (2d Dept 1995).

Where a settlement agreement is a modification of the parties' original contract for the sale of goods, the four-year limitations period in UCC § 2-725(1) applies, Wuhu Import & Export Corp. v Capstone Capital, LLC, 39 AD3d 314, 834 NYS2d 129 (1st Dept 2007).

A cause of action based upon a contract of indemnification accrues on the date payment is made by the party seeking indemnity, Bay Ridge Air Rights, Inc. v State, 44 NY2d 49, 404 NYS2d 73, 375 NE2d 29 (1978); Travelers Indem. Co. v LLJV Development Corp., 227 AD2d 151, 643 NYS2d 520 (1st Dept 1996).

Under Domestic Relations Law § 250, which supersedes the holding in Bloomfield v Bloomfield, 97 NY2d 188, 738 NYS2d 650, 764 NE2d 950 (2001), the three-year statute of limitations for commencing a proceeding or claiming a defense "that arises from" a prenuptial agreement or an agreement made during marriage but before commencement of a divorce action is tolled until either process is served in a matrimonial action or proceeding or one of the parties to the agreement dies.

A breach of contract action is not the proper vehicle for asserting a claim that a private association has failed to fulfill obligations imposed by its internal rules, Ullum v American Kennel Club, 134 AD3d 416, 21 NYS3d 210 (1st Dept 2015); Caso v New York State Public High School Athletic Ass'n, Inc., 78 AD2d 41, 434 NYS2d 60 (4th Dept 1980) (article 78 proceeding).

## VII. Specific Contract Provisions

### A. Unconditional Termination Provisions

Contract clauses permitting unconditional termination are enforceable, New York Tel. Co. v Jamestown Tel. Corporation, 282 NY 365, 26 NE2d 295 (1940); Ying-Qi Yang v Shew-Foo Chin, 42 AD3d 320, 839 NYS2d 90 (1st Dept 2007); Red Apple Child Development Center v Community School Districts Two, 303 AD2d 156, 756 NYS2d 527 (1st Dept 2003). Where a contract contains an unconditional termination clause, a party has an absolute unqualified right to terminate the contract without court inquiry into whether the termination was activated by an ulterior motive, Watermelons Plus, Inc. v New York City Dept. of Educ., 76 AD3d 973, 908 NYS2d 80 (2d Dept 2010); A.J. Temple Marble & Tile, Inc. v Long Island R.R., 256 AD2d 526, 682 NYS2d 422 (2d Dept 1998); Big Apple Car, Inc. v New York, 204 AD2d 109, 611 NYS2d 533 (1st Dept 1994).

### B. Time of the Essence Clauses

In general, time is impliedly essential where the subject of the sale has a fluctuating value, where the object of the contract is a commercial enterprise or where delay in completion would cause serious loss to one of the parties, Reddy v Ratnam, 95 AD3d 982, 943 NYS2d 623 (2d Dept 2012); Lusker v Tannen, 90 AD2d 118, 456 NYS2d 354 (1st Dept 1982). In a contract for the sale of real property, however, time is not assumed to be of the essence unless the parties specifically so provide, ADC Orange, Inc. v Coyote Acres, Inc., 7 NY3d 484, 824 NYS2d 192, 857 NE2d 513 (2006); Lambert v Schiller, 156 AD3d 1285, 68 NYS3d 195 (3d Dept 2017); Weintraub v Stankovic, 43 AD3d 543, 840 NYS2d 487 (3d Dept 2007); Whitney v Perry, 208 AD2d 1025, 617 NYS2d 395 (3d Dept 1994). Where no time is expressed in a real estate contract for the performance of conditions, there is an implied duty to perform within a reasonable time, Lambert v Schiller, supra; Manzi Homes, Inc. v Mooney, 29 AD3d 748, 816 NYS2d 130 (2d Dept 2006).

In determining what constitutes a reasonable time for performance, all of the facts and circumstances should be considered, including the nature and object of the contract, the previous conduct of the parties, the presence or absence of good faith, the experience of the parties and the possibility of prejudice or hardship to either one, as well as the specific number of days provided for performance, Zev v Merman, 73 NY2d 781, 536 NYS2d 739, 533 NE2d 669 (1988); Bossert v Fratalone, 28 AD3d 852, 813 NYS2d 791 (3d Dept 2006) (the situation of the parties, their intentions, what was contemplated at time contract was entered into, and how much time a person of ordinary diligence and prudence would need under the

circumstances). The issue of reasonableness is usually a question of fact, Bossert v Fratalone, supra.

Where the contract explicitly provides that time is of the essence, a party's failure to perform on that date constitutes a material breach entitling the other party to rescind the contract, New Colony Homes, Inc. v Long Island Property Group, LLC, 21 AD3d 1072, 803 NYS2d 615 (2d Dept 2005); see Rufeh v Schwartz, 50 AD3d 1000, 858 NYS2d 192 (2d Dept 2008); Town House Stock LLC v Coby Housing Corp., 49 AD3d 456, 855 NYS2d 55 (1st Dept 2008). A contractual provision requiring payment no later than a certain date does not establish that time is of the essence, ADC Orange, Inc. v Coyote Acres, Inc., 7 NY3d 484, 824 NYS2d 192, 857 NE2d 513 (2006).

Where a party seeks to make time of the essence unilaterally, that party must provide reasonable and sufficient notice to the other party that: a) is clear, distinct and unequivocal; b) fixes a reasonable time within which to perform; and c) informs the other party that nonperformance by the designated date will constitute a default, Zev v Merman, 134 AD2d 555, 521 NYS2d 455 (2d Dept 1987), aff'd, 73 NY2d 781, 536 NYS2d 739, 533 NE2d 669 (1988) (party need not state specifically that time is of the essence, as long as notice specifies date on which to close and warns that failure to close on that date will result in default); see Lambert v Schiller, 156 AD3d 1285, 68 NYS3d 195 (3d Dept 2017); Nehmadi v Davis, 63 AD3d 1125, 882 NYS2d 250 (2d Dept 2009) (time-of-the-essence letter not effective where it did not inform buyer that he risked default by not appearing at the closing); Iannucci v 70 Washington Partners, LLC, 51 AD3d 869, 858 NYS2d 322 (2d Dept 2008) (time-of-the-essence letter that does not give purchaser sufficient time to perform is a nullity); see also Miller v Almquist, 241 AD2d 181, 671 NYS2d 746 (1st Dept 1998) (unreasonable to hold buyer to date unilaterally imposed by seller where only one adjournment of closing date had been sought and where previous date had been selected by buyer). Notice can be effected by a letter from one of the party's attorneys, Stefanelli v Vitale, 223 AD2d 361, 636 NYS2d 50 (1st Dept 1996).

A time-of-the-essence letter delivered before the contractual performance date is premature and ineffective, Highbridge Development BR, LLC v Diamond Development, LLC, 67 AD3d 1112, 888 NYS2d 654 (3d Dept 2009). Furthermore, where the contract does not state that time is of the essence, one party may not unilaterally, before the date specified in the contract for the closing, declare that time is now of the essence and refuse to close on a date other than the date set forth in the contract, Weintraub v Stankovic, 43 AD3d 543, 840 NYS2d 487 (3d Dept 2007); Baltic v Rossi, 289 AD2d 430, 735 NYS2d 148 (2d Dept 2001). Even after time has been made of the essence, a party's right to timely performance may still be waived, Allen v Kowalewski, 239 AD2d 879, 659 NYS2d 670 (4th Dept 1997); Stefanelli v Vitale, 223 AD2d 361, 636 NYS2d 50 (1st Dept 1996).

## C. Marital Agreements and Divorce Settlements

### 1. Prenuptial Agreements

Prenuptial agreements are contracts, Rubin v Rubin, 275 AD2d 404, 712 NYS2d 626 (2d Dept 2000), and are accorded the same presumption of legality as any other contract, Van Kipnis v Van Kipnis, 11 NY3d 573, 872 NYS2d 426, 900 NE2d 977 (2008); Bloomfield v Bloomfield, 97 NY2d 188, 738 NYS2d 650, 764 NE2d 950 (2001); Strong v Dubin, 48 AD3d 232, 851 NYS2d 428 (1st Dept 2008); Stawski v Stawski, 43 AD3d 776, 843 NYS2d 544 (1st Dept 2007). Such agreements are construed in accord with the parties' intent, which is generally gleaned from the writing, Herr v Herr, 97 AD3d 961, 949 NYS2d 786 (3d Dept 2012). As long as the agreement is fair on its face, it will be enforced according to its terms, absent proof of fraud, duress, overreaching or unconscionability, id. A prenuptial agreement will not be set aside as unconscionable simply because a party relinquished more than the law would have provided, id. However, in some circumstances, prenuptial agreements have been subjected to limitations and scrutiny beyond that afforded contracts in general, see Bibeau v Sudick, 122 AD3d 652, 996 NYS2d 635 (2d Dept 2014) (prenuptial agreement may be invalidated for fraud, duress or other inequitable conduct); Kessler v Kessler, 33 AD3d 42, 818 NYS2d 571 (2d Dept 2006)(under circumstances, including great disparity between financial wealth of parties, provision in prenuptial agreement waiving right to seek attorneys' fees unenforceable). The enforceability of a provision in a prenuptial agreement in which both spouses waive the right to seek attorney's fees should be determined by the trial court on a case-by-case basis after the competing interests and relevant facts and circumstances are weighed, Gentile v Gentile, 127 AD3d 1135, 7 NYS3d 525 (2d Dept 2015); see Kessler v Kessler, supra.

To be enforceable in a matrimonial action, a prenuptial agreement must be in writing, subscribed by both parties and

acknowledged or proven "in the manner required to entitle a deed to be recorded," Domestic Relations Law § 236(B)(3); see Galetta v Galetta, 21 NY3d 186, 969 NYS2d 826, 991 NE2d 684 (2013); Matisoff v Dobi, 90 NY2d 127, 659 NYS2d 209, 681 NE2d 376 (1997); Matter of Koegel, 160 AD3d 11, 70 NYS3d 540 (2d Dept 2018). The acknowledgment requirement serves the important purposes of (1) proving the identity of the signer, (2) authenticating the signature and (3) imposing on the signer a measure of deliberation, Galetta v Galetta, supra. A prenuptial agreement that is not properly acknowledged will not be enforced in a matrimonial action even when the parties admit that the signatures are authentic and that the agreement was not tainted by fraud or duress, id; Matisoff v Dobi, supra; but see Matter of Koegel, supra.

To satisfy the acknowledgment requirement, the party signing the document must orally acknowledge before a notary or an authorized officer that he or she in fact signed the document, Galetta v Galetta, 21 NY3d 186, 969 NYS2d 826, 991 NE2d 684 (2013) (citing Real Property Law § 292). The notary or authorized officer must either know or have satisfactory evidence that the signer is the person who is described in and who executed the document, Galetta v Galetta, supra (citing Real Property Law § 303). Finally, the notary or authorized official must execute a written certificate containing the information required by Real Property Law § 303, Galetta v Galetta, supra (citing Real Property Law § 306). The certificate may take the form of either an endorsement on the document itself or a separate paper attached to the document, Galetta v Galetta, supra (citing Real Property Law § 306). The proper verbiage for an acknowledgment is now set forth in Real Property Law § 309-a. While an acknowledgment is not invalid for failure to recite the precise language in that statute, Weinstein v Weinstein, 36 AD3d 797, 830 NYS2d 179 (2d Dept 2007), a certificate that fails to include all of the required information is not in "substantial compliance" and is insufficient on its face to establish that the prenuptial agreement was properly acknowledged, Galetta v Galetta, supra; but see Matter of Koegel, supra.

The complete absence of an acknowledgment cannot be cured through subsequent submissions, Galetta v Galetta, 21 NY3d 186, 969 NYS2d 826, 991 NE2d 684 (2013). In Galetta, the Court of Appeals left open the question whether a contemporaneous acknowledgment that was merely technically defective can be cured by a sufficient statement submitted by the notary at the time that enforcement is sought. However, the Galetta Court held that it is not sufficient for the notary to attempt to cure the omission of a contemporaneous statement containing the information required by Real Property Law § 303 by submitting a subsequent statement that it was his or her "custom and practice" "to ask and confirm" the identity of the signer without at least describing the protocol that he or she repeatedly and invariably used; see Matter of Koegel, 160 AD3d 11, 70 NYS3d 540 (2d Dept 2018).

The Domestic Relations Law contemplates two basic types of prenuptial agreements that may affect the equitable distribution of property, Van Kipnis v Van Kipnis, 11 NY3d 573, 872 NYS2d 426, 900 NE2d 977 (2008). First, parties may expressly waive or opt out of the statutory scheme governing equitable distribution, id. Second, parties may adopt a "separation of estates" scheme in which they specifically designate as separate property assets that would ordinarily be defined as marital property subject to equitable distribution under Domestic Relations Law § 236(B)(5), Van Kipnis v Van Kipnis, supra. In either case, the intent of the parties must be clearly evidenced by the writing, Van Kipnis v Van Kipnis, supra; Tietjen v Tietjen, 48 AD3d 789, 853 NYS2d 118 (2d Dept 2008).

As a general rule, a party who seeks to sustain a prenuptial agreement has no special evidentiary burden, Matter of Barabash, 84 AD3d 1363, 924 NYS2d 544 (2d Dept 2011). A party attacking the validity of a prenuptial agreement has the burden of coming forward with evidence showing fraud, Stawski v Stawski, 43 AD3d 776, 843 NYS2d 544 (1st Dept 2007); see Matter of Fizzinoglia, 26 NY3d 1031, 22 NYS3d 151, 43 NE3d 361 (2015) (prima facie showing not made where [a] agreement omitted statement of parties' assets and liabilities; [b] plaintiff admitted awareness of omission at time of execution and stated that decedent's finances did not matter to her; and [3] there was no proof of misrepresentation or concealment). Fraud will not be presumed and must be shown by evidence of overreaching, such as the concealment of facts, misrepresentation or some other form of deception, id. However, a spouse contesting a prenuptial agreement may shift the burden on the issue of fraud or overreaching to the party seeking to sustain the agreement by establishing a fact-based, particularized inequality, Matter of Barabash, supra. The fact that the contesting spouse did not have independent counsel when the agreement was executed is not, without more, sufficient to shift the burden, id. The facts that plaintiff's attorney was recommended by defendant's counsel, that defendant paid plaintiff's attorney's fee, that plaintiff believed that the imminent wedding would be canceled if she did not agree are also not sufficient to vitiate a prenuptial agreement on grounds of duress, Barocas v Barocas, 94 AD3d 551, 942 NYS2d 491 (1st Dept 2012). However, a question of fact was presented as to the enforceability of prenuptial agreement where defendant was not represented by counsel in the preparation and execution of the agreement, the agreement was presented to defendant on a "take it or leave it" basis and the preprinted financial forms executed by the

parties did not demonstrate that they expected to enter into a prenuptial agreement, Bibeau v Sudick, 122 AD3d 652, 996 NYS2d 635 (2d Dept 2014).

Under Domestic Relations Law § 250, which supersedes the holding in Bloomfield v Bloomfield, 97 NY2d 188, 738 NYS2d 650, 764 NE2d 950 (2001), the statute of limitations for commencing a proceeding or claiming a defense "that arises from" a prenuptial agreement or an agreement made during marriage but before commencement of a divorce action is tolled until either process is served in a matrimonial action or proceeding or one of the parties to the agreement dies.

## 2. Separation Agreements

Separation agreements involve contractual obligations governed by ordinary contract principles, Gray v Pashkow, 79 NY2d 930, 582 NYS2d 985, 591 NE2d 1171 (1992); see Burn v Burn, 101 AD3d 488, 956 NYS2d 19 (1st Dept 2012) (provision expressly or impliedly continuing spousal support even after payee's remarriage enforceable, notwithstanding contrary rule set forth in Domestic Relations Law § 248); Hoskins v Skojec, 265 AD2d 706, 696 NYS2d 303 (3d Dept 1999) (although veteran's disability benefits may not be awarded as spousal maintenance, courts will enforce a voluntary contractual agreement to divide those benefits). The provisions in a separation agreement regarding personal property and other monetary obligations may be enforced in a contract action for damages, even though the agreement could not be enforced in a matrimonial action as an "opting out" agreement because it is not acknowledged as required by Domestic Relations Law § 236(B)(3). Singer v Singer, 261 AD3d 531, 690 NYS2d 621 (2d Dept 1999). Although marital settlement agreements are judicially favored and are not to be easily set aside, Christian v Christian, 42 NY2d 63, 396 NYS2d 817, 365 NE2d 849 (1977), they are subject to reformation or rescission in exceptional situations, including those based on mutual mistake by the parties, Simkin v Blank, 19 NY3d 46, 945 NYS2d 222, 968 NE2d 459 (2012).

When the separation agreement does not provide adequate support for the parties' minor children, the agreement is voidable and the court may remedy the inadequacy, Pecora v Cerillo, 207 AD2d 215, 621 NYS2d 363 (2d Dept 1995); see Brink v Brink, 55 AD3d 601, 867 NYS2d 94 (2d Dept 2008). Likewise, a separation agreement as to child custody is not binding on the court, see Friederwitzer v Friederwitzer, 55 NY2d 89, 447 NYS2d 893, 432 NE2d 765 (1982). Further, a separation agreement may be set aside based on evidence of one party's overreaching, fraud or duress or where the bargain was so inequitable that no reasonable and competent person would have consented to it, Christian v Christian, 42 NY2d 63, 396 NYS2d 817, 365 NE2d 849 (1977); Marin-Brown v Brown, 79 AD3d 1302, 912 NYS2d 755 (3d Dept 2010). To rescind a separation agreement on the ground of overreaching, a party must demonstrate both overreaching and unfairness, Kerr v Kerr, 8 AD3d 626, 779 NYS2d 246 (2d Dept 2004). Although the court may examine both the agreement's terms and the surrounding circumstances to determine whether overreaching occurred, the general rule is that if the agreement is fair no further inquiry will be made, id. While the fact that a spouse was not represented by counsel is not alone sufficient to find overreaching, it is a significant consideration, id. Where a party claims that the agreement was a product of duress resulting from threats, the party must show that he or she was deprived of the ability to act in furtherance of his or her own interests or the ability to exercise his or her own free will, Mesiti v Mongiello, 84 AD3d 1547, 924 NYS2d 175 (3d Dept 2011).

A party who has accepted benefits under a separation agreement for a considerable period is deemed to have ratified the agreement and has thereby relinquished the right to challenge it for duress, coercion or fraud, Kessler v Kessler, 89 AD3d 687, 931 NYS2d 702 (2d Dept 2011) (party who accepted benefits for 29 years ratified separation agreement and relinquished claim of duress and fraud); Morad v Morad, 27 AD3d 626, 812 NYS2d 126 (2d Dept 2006) (three-year delay in challenging separation agreement precluded party from claiming duress); see Beutel v Beutel, 55 NY2d 957, 449 NYS2d 180, 434 NE2d 249 (1982) (plaintiff could not rescind separation agreement on basis of incapacity where she accepted benefits for two years and made no claim that incapacity continued during that period). In contrast, when a party received virtually no benefits from the agreement, he or she "cannot be said to have ratified it," Pippis v Pippis, 69 AD3d 824, 892 NYS2d 771 (2d Dept 2010); see Arrow v Arrow, 133 AD2d 960, 520 NYS2d 468 (3d Dept 1987).

## 3. Stipulations Settling Divorce Actions

While separation agreements are ordinarily negotiated and executed before commencement of any matrimonial action, settlement stipulations are, by definition, negotiated and executed after a matrimonial action has been commenced. Like a separation agreement, a stipulation settling a divorce action is a contract, see Rainbow v Swisher, 72 NY2d 106, 531 NYS2d

775, 527 NE2d 258 (1988); Kojovic v Goldman, 35 AD3d 65, 823 NYS2d 35 (1st Dept 2006), subject to principles of contract interpretation, Lacorazza v Lacorazza, 47 AD3d 897, 851 NYS2d 231 (2d Dept 2008); Ferrara v Ferrara, 42 AD3d 426, 839 NYS2d 789 (2d Dept 2007); Clark v Clark, 33 AD3d 836, 827 NYS2d 159 (2d Dept 2006). While courts favor stipulations of settlement and will not set them aside lightly, they are held to a higher standard of equity and may be set aside on grounds that would not suffice to set aside other contracts, since they involve fiduciary relationships and "the sanctity of the marital relationship," Kavanagh v Kavanagh, 2 AD3d 688, 768 NYS2d 622 (2d Dept 2003). The Third and Fourth Departments have held that Domestic Relations Law § 236(B)(3) applies to oral stipulations entered on the record, Lischynsky v Lischynsky, 95 AD2d 111, 466 NYS2d 815 (3d Dept 1983); Giambattista v Giambattista, 89 AD2d 1057, 454 NYS2d 762 (4th Dept 1982). Thus, in those Departments, stipulations must be in writing, subscribed by the parties and acknowledged as required for recordation of a deed, Domestic Relations Law § 236(B)(3), Tomei v Tomei, 39 AD3d 1149, 834 NYS2d 781 (4th Dept 2007); Harbour v Harbour, 243 AD2d 947, 664 NYS2d 135 (3d Dept 1997); Lischynsky v Lischynsky, supra (3d Dept); Giambattista v Giambattista, supra (4th Dept); see Birr v Birr, 70 AD3d 1221, 895 NYS2d 252 (3d Dept 2010). The First and Second Departments, in contrast, do not regard Domestic Relations Law § 236(B)(3) as the exclusive format for agreements settling property disputes in matrimonial actions and hold that oral stipulations entered on the record in compliance with CPLR 2104, including stipulations settling the terms of separation agreements and those embodying "opting out" agreements as to equitable distribution, are valid and enforceable, Rubenfeld v Rubenfeld, 279 AD2d 153, 720 NYS2d 29 (1st Dept 2001); Nordgren v Nordgren, 264 AD2d 828, 695 NYS2d 588 (2d Dept 1999); Sanders v Copley, 151 AD2d 350, 543 NYS2d 67 (1st Dept 1989); Harrington v Harrington, 103 AD2d 356, 479 NYS2d 1000 (2d Dept 1984).

A stipulation of settlement that is incorporated but not merged into a judgment of divorce retains the character of an independent contract, Rosenberger v Rosenberger, 63 AD3d 898, 882 NYS2d 426 (2d Dept 2009), and survives as a basis for suit, Driscoll v Driscoll, 45 AD3d 723, 847 NYS2d 106 (2d Dept 2007). However, where there is a conflict between a settlement agreement and the decree in a later divorce judgment from which no appeal was taken nor modification sought, the divorce judgment governs, Weinschneider v Weinschneider, 50 AD3d 1128, 857 NYS2d 613 (2d Dept 2008). Moreover, a settlement agreement that has been incorporated and not merged in a judgment may not be challenged by motion on the ground that there was no meeting of the minds on an essential term; instead, such a challenge may only be made in the context of an appeal from the judgment or a plenary action, Alton v Alton, 83 AD3d 972, 922 NYS2d 438 (2d Dept 2011). Where the settlement agreement addresses the award of attorney's fees, the provisions in the agreement rather than statutory provisions are controlling, Berns v Halberstam, 46 AD3d 808, 848 NYS2d 323 (2d Dept 2007).

A party may not challenge the validity of a settlement agreement based on a claim that he or she undervalued assets that were disclosed by the former spouse and known at the time, Sweeney v Sweeney, 71 AD3d 989, 898 NYS2d 560 (2d Dept 2010); Kojovic v Goldman, 35 AD3d 65, 823 NYS2d 35 (1st Dept 2006); see Simkin v Blank, 19 NY3d 46, 945 NYS2d 222, 968 NE2d 459 (2012) (no mutual mistake); DiSalvo v Graff, 227 AD2d 298, 642 NYS2d 883 (1st Dept 1996) (represented plaintiff acknowledged independent investigation of assets and waived further disclosure). However, a stipulation of settlement in a divorce action may be set aside where a former spouse has concealed assets and the stipulation of settlement is the product of fraudulent inducement, Kojovic v Goldman, supra; Chapin v Chapin, 12 AD3d 550, 786 NYS2d 65 (2d Dept 2004); see Etzion v Etzion, 62 AD3d 646, 880 NYS2d 79 (2d Dept 2009). A stipulation of settlement also may be set aside where the agreement is so one-sided that "'no person in his or her senses and not under delusion would make it on one hand and no honest and fair person would accept it on the other,'" Kojovic v Goldman, supra (quoting Christian v Christian, 42 NY2d 63, 396 NYS2d 817, 365 NE2d 849 (1977)); see Libert v Libert, 78 AD3d 790, 911 NYS2d 133 (2d Dept 2010) (agreement resulting in award of substantially all marital assets to one party while burdening other party with substantially all marital obligations is patently unconscionable).

In cases involving agreements defining parents' child support obligations, there is a presumption that the agreement reflects what the parties believed to be a fair and equitable division of the financial burdens of rearing a child, Keller-Goldman v Goldman, 149 AD3d 422, 52 NYS3d 17 (1st Dept 2017). However, a settlement agreement that does not provide adequate support for the parties' minor children violates public policy and is not binding on the court, Keller-Goldman v Goldman, supra; Priolo v Priolo, 211 AD2d 627, 621 NYS2d 367 (2d Dept 1995). In some situations, it is appropriate for a court to look beyond the plain language chosen by the parties to ensure the fairness of child support provisions, Keller-Goldman v Goldman, supra; see Thomas B. v Lydia D., 69 AD3d 24, 886 NYS2d 22 (1st Dept 2009) (relying on case law defining "emancipation" despite unambiguous contract provision defining that term).

To rescind a separation agreement on the ground of overreaching, a party must demonstrate both overreaching and unfairness, Jon v Jon, 123 AD3d 979, 1 NYS3d 151 (2d Dept 2014). Although the court may examine both the agreement's terms and the surrounding circumstances to determine whether overreaching occurred, the general rule is that if the agreement is fair no further inquiry will be made, id. Actual fraud need not be shown if the agreement is manifestly unfair to a spouse because of the other's overreaching in its execution, Jon v Jon, supra. A settlement agreement is not unconscionable and will not be set aside simply because it entitles a spouse to more than the law would have provided or constitutes a bad bargain, Cheruvu v Cheruvu, 59 AD3d 876, 874 NYS2d 296 (3d Dept 2009), or because, in retrospect, some of its provisions were improvident or one-sided, Etzion v Etzion, 62 AD3d 646, 880 NYS2d 79 (2d Dept 2009); Schultz v Schultz, 58 AD3d 616, 871 NYS2d 636 (2d Dept 2009) ("postnuptial agreement"). A stipulation of settlement may not be set aside on the ground that a party was not represented by independent counsel when the stipulation was executed, especially where the objecting party knew that the adverse party had benefited from consultations with counsel, the objecting party was informed of the right to retain counsel and the parties' mediator, who drafted the agreement, repeatedly urged the retention of counsel, Ricca v Ricca, 57 AD3d 868, 870 NYS2d 419 (2d Dept 2008); see Bishopp v Bishopp, 104 AD3d 1121, 962 NYS2d 503 (3d Dept 2013). However, the fact that a spouse was not represented by counsel is a significant consideration, Jon v Jon, supra; Kavanagh v Kavanagh, 2 AD3d 688, 768 NYS2d 622 (2d Dept 2003).

Assets constituting the proceeds of fraud committed against a third person can constitute "marital property" under Domestic Relations Law § 236 and may therefore be transferred as part of an agreement settling a marital action, as long as the spouse receiving the transfer was innocent and unaware of the fraud, Commodity Futures Trading Com'n v Walsh, 17 NY3d 162, 927 NYS2d 821, 951 NE2d 369 (2011). Under those circumstances, the party who was defrauded has no claim against the innocent spouse under the Debtor and Creditor Law, unless the matrimonial settlement was collusive and designed to conceal stolen money from the rightful owner or the innocent spouse did not give fair consideration for the property, id. Fair consideration may be found even where part or all of the marital estate that the innocent spouse relinquished consisted of fraud proceeds, since marital settlements often involve waivers of numerous other rights, id.

An intent by the parties to divide their assets on a 50-50 basis will not be inferred absent language evincing such an intent, Simkin v Blank, 19 NY3d 46, 945 NYS2d 222, 968 NE2d 459 (2012).

A stipulation of settlement that provides for child support must conform to the requirements of the Child Support Standards Act, Domestic Relations Law (DRL) § 240(1-b), Young v Young, 142 AD3d 612, 36 NYS3d 507 (2d Dept 2016). Thus, a child support provision that did not contain the recitals required by DRL § 240(1-b)(h) was held invalid and unenforceable, Young v Young, supra.

## D. Municipal Contracts

Municipal contracts, to be valid, must comply with specific statutory requirements, Granada Bldgs., Inc. v Kingston, 58 NY2d 705, 458 NYS2d 906, 444 NE2d 1325 (1982); JFK Holding Co., LLC v New York, 68 AD3d 477, 891 NYS2d 32 (1st Dept 2009); H & R Project Associates, Inc. v Syracuse, 289 AD2d 967, 737 NYS2d 712 (4th Dept 2001); Oneonta v Oneonta, 191 AD2d 891, 594 NYS2d 838 (3d Dept 1993). A municipal contract that fails to comply with local law is invalid and unenforceable and cannot give rise to recovery on a theory of implied contract, Seif v Long Beach, 286 NY 382, 36 NE2d 630 (1941); Infrastructure Management Systems, LLC v Nassau, 2 AD3d 784, 770 NYS2d 119 (2d Dept 2003). Thus, a contract that was not authorized by a formal resolution of the Town Board and was not executed by the Town Supervisor is not a valid contract under Town Law § 64(6), Verifacts Group, Inc. v Babylon, 267 AD2d 379, 700 NYS2d 75 (2d Dept 1999). However, State Finance Law § 112(2), which makes ineffective any contract in excess of certain statutory limits without prior approval by the Comptroller, does not apply to an expenditure by the State Insurance Fund for counsel fees incurred in the defense of one of its insureds, since that obligation is one mandated by the terms of the policy of insurance it issued, Royal Ins. Co. of America v Commissioners of State Ins. Fund, 289 AD2d 807, 734 NYS2d 676 (3d Dept 2001).

A government entity may ratify a contract executed in its name by a person without authority if the contract is one that the entity was authorized to make, Seif v Long Beach, 286 NY 382, 36 NE2d 630 (1941); Elia v Highland Cent. School Dist., 78 AD3d 1265, 909 NYS2d 836 (3d Dept 2010). Such ratification may even be made by conduct, including the municipality's making payments pursuant to the contract under circumstances that are inconsistent with a supposition other than an intent to adopt the contract obligations, Elia v Highland Cent. School Dist., supra. However, a municipality's making payments according to an existing practice or policy was not deemed a ratification where it was not shown that the payments were

grounded in the contract, id. A government entity does not ratify a contract executed by a person without authority by including an undifferentiated lump-sum item in its annual adopted budget, id, or by merely accepting the contract's benefits, Seif v Long Beach, supra.

The doctrine of equitable estoppel does not apply to a municipality when it is acting in a governmental capacity and is carrying out its statutory duties, Van Kleeck v Hammond, 25 AD3d 941, 811 NYS2d 452 (3d Dept 2006); see Pless v Royalton, 81 NY2d 1047, 601 NYS2d 455, 619 NE2d 392 (1993). Thus, absent legislation, municipal bodies may not contractually bind successors in areas relating to governance, Karedes v Colella, 100 NY2d 45, 760 NYS2d 84, 790 NE2d 257 (2003). However, when the municipal board is acting in a proprietary fashion, the contract is binding, id; Karedes v Endicott, 297 AD2d 413, 746 NYS2d 96 (3d Dept 2002). Contracts that are entered into in bad faith by outgoing municipal boards for the sole purpose of binding members of incoming boards are not enforceable, see Hendrickson v New York, 160 NY 144, 54 NE 680 (1899); Karedes v Endicott, supra. Likewise, acceptance of services performed under an unauthorized contract does not estop a municipality from asserting the invalidity of the contract nor does misfeasance by the contracting agency waive the failure to properly register the contract with the Comptroller, Garrison Protective Services, Inc. v Office of Comptroller of City of New York, 92 NY2d 732, 685 NYS2d 921, 708 NE2d 994 (1999) ("illegal but equitable" claim remitted). Nevertheless, where plaintiff was misled by the defendant as to the requirement of public approval of an otherwise private contract, the plaintiff was permitted to recover damages for breach, Cointech, Inc. v Masaryk Towers Corp., 7 AD3d 376, 777 NYS2d 76 (1st Dept 2004).

General Municipal Law § 109-b requires that every installment purchase contract with a municipality contain a clause that deems the contract to be "executory only to the extent of monies appropriated and available for the purpose of the contract …." Executory clauses are enforceable only when it is established that funds were not available in the course of ordinary budgetary procedures, see Rochester Fund Municipals v Amsterdam Municipal Leasing Corp., 296 AD2d 785, 746 NYS2d 512 (3d Dept 2002); see also Starling Realty Corporation v State, 286 NY 272, 36 NE2d 201 (1941). A municipality may possess sufficient funds to satisfy a particular obligation, but if the expenditure would be improvident such funds are not deemed available, Rochester Fund Municipals v Amsterdam Municipal Leasing Corp., supra. However, any unavailability of funds must not have been the result of an improper act or omission by the municipality inasmuch as it is bound by the same rules of honesty and justice as individuals when contracting, id.

Generally, a bidder has a binding and enforceable contract with a municipality when its bid is accepted, Xavier Contracting, LLC v Rye, 29 AD3d 687, 815 NYS2d 638 (2d Dept 2006); Roosevelt & Cross, Inc. v Albany, 72 AD2d 855, 421 NYS2d 682 (3d Dept 1979); see Municipal Consultants & Publishers, Inc. v Ramapo, 47 NY2d 144, 417 NYS2d 218, 390 NE2d 1143 (1979) (contract enforceable where all terms had been negotiated and agreed upon even without signature of town supervisor where town board authorized signature). A person challenging the validity of an award of a public contract for failing to comply with competitive bidding requirements must demonstrate actual impropriety, unfair dealing or some other violation of statutory requirements, Acme Bus Corp. v Board of Educ. of Roosevelt Union Free School Dist., 91 NY2d 51, 666 NYS2d 996, 689 NE2d 890 (1997). A municipal agency's finding that a general contractor has defaulted on its performance under the contract will not bind the general contractor and foreclose a plenary action, unless the agency is endowed with contractual or statutory authority to render a quasi-judicial, final and binding determination, Abiele Contracting, Inc. v New York City School Const. Authority, 91 NY2d 1, 666 NYS2d 970, 689 NE2d 864 (1997). Clear contractual prohibitions against oral modification contained in public works contracts are generally enforceable, Charles T. Driscoll Masonry Restoration Co., Inc. v Ulster, 40 AD3d 1289, 836 NYS2d 362 (3d Dept 2007); Greater Johnstown School Dist. v Frontier Ins. Co. Inc., 252 AD2d 615, 675 NYS2d 212 (3d Dept 1998); see Huff Enterprises, Inc. v Triborough Bridge and Tunnel Authority, 191 AD2d 314, 595 NYS2d 178 (1st Dept 1993).

The notice and reporting provisions of a municipal contract constitute a condition precedent which must be complied with before the commencement of an action for breach of contract and may be avoided only if the municipality acted in a manner that precluded the other party from complying, A.H.A. General Const., Inc. v New York City Housing Authority, 92 NY2d 20, 677 NYS2d 9, 699 NE2d 368 (1998); Marcor Remediation, Inc. v Broome, 46 AD3d 1066, 847 NYS2d 702 (3d Dept 2007).

As to the public trust doctrine, which precludes dedicated parkland from being converted to a non-park purpose for an extended period of time absent the approval of the Legislature, see Union Square Park Community Coalition, Inc. v New York City Dept. of Parks and Recreation, 22 NY3d 648, 985 NYS2d 422, 8 NE3d 797 (2014) (license granted by

municipality to allow operation of restaurant in dedicated park not violation of public trust doctrine).

### E. Automatic Renewal Clauses

Some contracts involving ongoing services or other ongoing obligations provide for automatic renewal unless one of the parties gives the other advance notice of an intent not to renew. GOL § 5-901 provides that such automatic renewal clauses in leases for personal property are ineffective unless the lessor draws the lessee's attention to the clause by written notice that is served personally or by mail between fifteen and thirty days before action by the lessee is required. GOL § 5-903(2) contains essentially the same provision for automatic renewal clauses in contracts for service to or maintenance or repair of real or personal property, see Healthcare I.Q., LLC v Tsai Chung Chao, 118 AD3d 98, 986 NYS2d 42 (1st Dept 2014). Where a renewal clause is not duly brought to the attention of a party entitled to the protections of GOL § 5-901 or § 5-903, the contract does not automatically renew, and the party has the right to cancel the contract at any time after the expiration of its initial term, see Healthcare I.Q., LLC v Tsai Chung Chao, supra. Notably, the notice required to be given under GOL § 5-903(2) must be served personally or by certified mail, while GOL § 5-901 requires service personally or by ordinary mail. The Court of Appeals has left open the question whether, in addition to providing a defense to a breach of contract claim, these statutes give rise to an implied private right of action, Ovitz v Bloomberg L.P., 18 NY3d 753, 944 NYS2d 725, 967 NE2d 1170 (2012).

General Obligations Law § 5-903 is remedial in nature and therefore construed broadly, Healthcare I.Q., LLC v Tsai Chung Chao, 118 AD3d 98, 986 NYS2d 42 (1st Dept 2014); NYDIC/Westchester Mobile MRI Associates, L.P. v Lawrence Hosp., 242 AD2d 686, 662 NYS2d 593 (2d Dept 1997); Peerless Towel Supply Co. v Triton Press, Inc., 3 AD2d 249, 160 NYS2d 163 (1st Dept 1957). The statute does not require that the person for whom the services were provided own the "personal property," Healthcare I.Q., LLC v Tsai Chung Chao, supra. "Personal property" has been interpreted to include intellectual property as well as tangible personal property, Ovitz v Bloomberg L.P., 77 AD3d 515, 909 NYS2d 710 (1st Dept 2010), aff'd 18 NY3d 753, 944 NYS2d 725, 967 NE2d 1170 (2012) (terminal, software and other equipment to access real-time financial information services); Healthcare I.Q., LLC v Tsai Chung Chao, supra (billing and medical records of physician's practice); NYDIC/Westchester Mobile MRI Associates, L.P. v Lawrence Hosp., supra (mobile magnetic resonance image systems); Mount Vernon Amusement Co. v Georgian Restaurant Corp., 30 AD2d 823, 292 NYS2d 567 (2d Dept 1968) (cigarette vending machines). Section 5-903 does not apply to services that are merely of a consulting, analytical or administrative nature, see Healthcare I.Q.,LLC v Tsai Chung Chao, supra; Donald Rubin, Inc. v Schwartz, 160 AD2d 53, 559 NYS2d 307 (1st Dept 1990).

### F. Contracts Involving Not-for-Profit Entities

Contracts involving not-for-profit-entities are subject to judicial oversight of a type not afforded ordinary contracts, 64th Associates, L.L.C. v Manhattan Eye, Ear & Throat Hosp., 2 NY3d 585, 780 NYS2d 746, 813 NE2d 887 (2004); see Not-for-Profit Corporation Law (N-PCL) §§ 102(5), 204, 508, 515. For example, before a not-for-profit corporation can sell its assets, the Supreme Court must assess whether the consideration and the terms of the transaction are fair and reasonable to the corporation and whether the purposes of the corporation or the interests of its members will be promoted, 64th Associates, L.L.C. v Manhattan Eye, Ear & Throat Hosp., supra; N-PCL § 511(d). These requirements apply not only to the sale of assets but also to the contract as a whole, including termination payment clauses and reimbursement provisions, 64th Associates, L.L.C. v Manhattan Eye, Ear & Throat Hosp., supra.

### G. Divisible Contracts

A contract is divisible where by its terms, performance of each party is divided into two or more parts, the number of parts due from each party is the same and the performance of each part by one party is the agreed exchange for a corresponding part by the other party, First Sav. & Loan Ass'n of Jersey City, N. J. v American Home Assur. Co., 29 NY2d 297, 327 NYS2d 609, 277 NE2d 638 (1971); see Garcia v Government Employees Ins. Co., 151 AD3d 1020, 58 NYS3d 428 (2d Dept 2017), aff'd, 30 NY3d 1033, 69 NYS3d 206, 91 NE3d 1185 (2017). Whether a contract is divisible is a question of intention, to be determined from the language used by the parties, viewed in light of the circumstances existing at the time the contract was made, Christian v Christian, 42 NY2d 63, 396 NYS2d 817, 365 NE2d 849 (1977); F & K Supply Inc. v Willowbrook

Development Co., 288 AD2d 713, 732 NYS2d 734 (3d Dept 2001); see Garcia v Government Employees Ins. Co., supra. Where the parties contemplate fulfillment of the entire contract, the contract is treated as indivisible, Barden & Robeson Corp. v Timmerman, 116 AD2d 814, 497 NYS2d 196 (3d Dept 1986).

Cases finding contracts to be divisible include Express Home Care Agency, Inc. v VIP Health Services, Inc., 275 AD2d 759, 713 NYS2d 549 (2d Dept 2000) (contract to provide qualified home health workers divisible so that plaintiff's entitlement to compensation for services performed by qualified aides not defeated because plaintiff also furnished some aides who were not qualified); Scavenger, Inc. v GT Interactive Software, Inc., 273 AD2d 60, 708 NYS2d 405 (1st Dept 2000) (contract containing separate production and payment schedules for each of four CD-ROM games plaintiff was to deliver to defendant was divisible).

## H. Powers of Attorney

GOL § 5-1501 et seq., which governs powers of attorney, was substantially revised effective 2009 and September 12, 2010.

A power of attorney that is coupled with an interest or has been given in exchange for valuable consideration is irrevocable, Frankel v J.P. Morgan Chase & Co., 76 AD3d 664, 907 NYS2d 281 (2d Dept 2010). A power is "coupled with an interest" when the agent has an estate or interest of his or her own in the thing or matter underlying the power, id. Such an "interest" does not arise from a grant to the agent of the power to collect debts on behalf of the principal and to take the agent's fee from the proceeds, id.

A power of attorney given by an incompetent person prior to formal adjudication is not void, but only voidable and may be ratified and approved by the incompetent person upon recovering his or her competency or by a person duly authorized to act on behalf of the incompetent, Bankers Trust Co. of Albany, N. A. v Martin, 51 AD2d 411, 381 NYS2d 1001 (3d Dept 1976); see Ortelere v Teachers' Retirement Bd. of City of New York, 25 NY2d 196, 303 NYS2d 362, 250 NE2d 460 (1969); Verstandig v Schlaffer, 296 NY 62, 70 NE2d 15 (1946); Finch v Goldstein, 245 NY 300, 157 NE 146 (1927); Blinn v Schwarz, 177 NY 252, 69 NE 542 (1904). When parties have capacity to contract and what contracts are void are subjects beyond the scope of this work, see Mental Hygiene Law § 81.29(d); Restatement, Second, Contracts §§ 12-16, Chapter 8.

## I. Contracts for the Sale of Real Property

### 1. In General

Generally, the obligations and provisions of a contract for the sale of land are merged in the deed and, as a result, are extinguished upon the closing of title, Novelty Crystal Corp. v PSA Institutional Partners, L.P., 49 AD3d 113, 850 NYS2d 497 (2d Dept 2008). However, this rule does not apply where there is a clear intent evidenced by the parties that a particular provision of the contract of sale shall survive the delivery of the deed, Cerand v Burstein, 72 AD3d 1262, 897 NYS2d 789 (3d Dept 2010), or where there exists a collateral undertaking, Novelty Crystal Corp. v PSA Institutional Partners, L.P., supra; Davis v Weg, 104 AD2d 617, 479 NYS2d 553 (2d Dept 1984). A collateral undertaking is a contractual commitment that is not connected with the title, possession, or quantity of land, Novelty Crystal Corp. v PSA Institutional Partners, L.P., supra; Alexy v Salvador, 217 AD2d 877, 630 NYS2d 133 (3d Dept 1995). An agreement by the seller to leave the premises vacant and clean is not collateral and extinguishes upon the closing of title, unless the contract provides otherwise, Novelty Crystal Corp. v PSA Institutional Partners, L.P., supra.

Absent a contract provision to the contrary, a buyer of real property assumes the risk of a change in the law between contract execution and closing that affects the value or utility of the property, Latipac Corp. v BMH Realty LLC, 93 AD3d 115, 938 NYS2d 30 (1st Dept 2012); see Urbis Realty Co. v Globe Realty Co., 235 NY 194, 139 NE 238 (1923). Thus, where a law was enacted between the execution of the contract and the closing limiting the landlords' right to select new tenants after the expiration of leases, the contract buyer was not entitled to a return of its down payment, Urbis Realty Co. v Globe Realty Co., supra. Similarly, the buyer of an apartment building was not entitled to the return of its down payment due to a change in the law between contract execution and closing that potentially resulted in the re-regulation of apartments previously believed to be rentable at fair market value, Latipac Corp. v BMH Realty LLC, supra.

## 2. Mortgage Contingency Clauses

Contracts for the sale of real property often include clauses that condition the purchaser's obligation to perform upon the securing of a mortgage commitment and permit cancellation by the purchaser if a mortgage commitment cannot be obtained. The purchaser is required, however, to make a diligent, prompt, and truthful application to a bona fide lending institution, Big Apple Meat Market, Inc. v Frankel, 276 AD2d 657, 714 NYS2d 333 (2d Dept 2000); see Companion v Touchstone, 222 AD2d 1087, 635 NYS2d 842 (4th Dept 1995), aff'd, 88 NY2d 1043, 651 NYS2d 399, 674 NE2d 329 (1996) (buyer acted in good faith as matter of law where banker told him that property qualified for lesser amount than was specified in contract; formal application would have been futile); Buxton v Streany, 68 AD3d 1036, 892 NYS2d 165 (2d Dept 2009) (plaintiffs entitled to return of down payment after submitting proof that, despite diligent, timely, and good-faith efforts, they were unable to secure mortgage loan in amount set forth in mortgage contingency clause); Zellner v Tarnell, 65 AD3d 1335, 885 NYS2d 745 (2d Dept 2009) (proposed lender's letter including condition not wholly within purchasers' control not a mortgage commitment letter; therefore, purchasers were entitled to return of down payment); Hoft v Frenkel, 52 AD3d 779, 860 NYS2d 209 (2d Dept 2008) (defendant entitled to return of down payment where her good faith efforts to obtain mortgage commitment within period specified were unsuccessful due to her lack of qualifications); Markovitz v Kachian, 28 AD3d 358, 814 NYS2d 60 (1st Dept 2006) (purchaser entitled to return of down payment where lender bank, within period for seeking commitment, denied mortgage application because property would not support loan debt and other carrying costs, not because amount sought greater than amount specified in contingency clause); Cone v Daus, 120 AD2d 788, 501 NYS2d 523 (3d Dept 1986) (mortgage contingency clause satisfied by purchaser acting in good faith and exerting genuine effort to secure mortgage financing). Whether the purchaser has met this obligation may raise a question of fact, Big Apple Meat Market, Inc. v Frankel, supra. A purchaser who has not been able to obtain a mortgage commitment must provide written notice to the seller within a reasonable time unless the mortgage contingency clause includes a specific time for such notice, id.

A buyer breaches a mortgage contingency clause by applying for a mortgage loan greater than the one required under the express terms of the contract, HSM Real Estate, Inc. v Dragon, 94 AD3d 702, 941 NYS2d 512 (2d Dept 2012). When a mortgage commitment letter is revoked by the lender after the contingency period, the contractual provision concerning failure to obtain an initial mortgage commitment is not applicable and the question becomes whether the lender's revocation was attributable to any bad faith on the part of the purchaser, Blair v O'Donnell, 85 AD3d 954, 925 NYS2d 639 (2d Dept 2011); Anderson v Meador, 56 AD3d 1030, 869 NYS2d 233 (3d Dept 2008).

## 3. The Merger Doctrine

Under the merger doctrine applicable in real estate transactions, the terms of the deed, once delivered, are controlling and claims arising out of the contract of sale are ordinarily barred, TIAA Global Investments, LLC v One Astoria Square LLC, 127 AD3d 75, 7 NYS3d 1 (1st Dept 2015); Ka Foon Lo v Curis, 29 AD3d 525, 815 NYS2d 131 (2d Dept 2006). The only exception to this rule is applied when the parties to the contract clearly intended that a particular provision survive delivery of the deed, TIAA Global Investments, LLC v One Astoria Square LLC, supra; Ka Foon Lo v Curtis, supra. Neither the Court of Appeals nor the Appellate Divisions have adopted a second exception for claims based on latent conditions, TIAA Global Investments, LLC v One Astoria Square LLC, supra. However, it is established that the merger doctrine does not apply to fraud claims, TIAA Global Investments, LLC v One Astoria Square LLC, supra; see West 90th Owners Corp. v Schlechter, 137 AD2d 456, 525 NYS2d 33 (1st Dept 1988).

## 4. "As Is" Clauses

An "as is" clause in a contract to sell real property will ordinarily bar a claim for breach of contract arising from the condition of the property, TIAA Global Investments, LLC v One Astoria Square LLC, 127 AD3d 75, 7 NYS3d 1 (1st Dept 2015). However, such clauses will not bar claims addressed to representations intended to survive the closing rather than to claims based on the conditions of the building, id.

**J. Leases**

Leases are distinguishable from other arrangements dealing with property rights in that they transfer "absolute control and possession" of property at an agreed-upon rental, Union Square Park Community Coalition, Inc. v New York City Dept. of Parks and Recreation, 22 NY3d 648, 985 NYS2d 422, 8 NE3d 797 (2014); Feder v Caliguira, 8 NY2d 400, 208 NYS2d 970, 171 NE2d 316 (1960); Matter of Conners v Colonie, 108 AD3d 837, 968 NYS2d 717 (3d Dept 2013). The same rules of construction applicable to contracts generally apply in the interpretation of leases, George Backer Management Corp. v Acme Quilting Co., Inc., 46 NY2d 211, 413 NYS2d 135, 385 NE2d 1062 (1978); Madison Ave. Leasehold, LLC v Madison Bentley Associates LLC, 30 AD3d 1, 811 NYS2d 47 (1st Dept 2006), aff'd, 8 NY3d 59, 828 NYS2d 254, 861 NE2d 69 (2006); Horwitz v 1025 Fifth Ave. Inc., 34 AD3d 248, 825 NYS2d 5 (1st Dept 2006); State v Robin Operating Corp., 3 AD3d 757, 773 NYS2d 131 (3d Dept 2004); see Introduction, II.A. Mutual Assent, supra. To be enforceable as a lease, all of the essential terms must be agreed upon, including the area to be leased, the duration of the lease, and the rent to be paid, Calkins Corporate Park, LLC v Eye Physicians and Surgeons of Western New York, P.L.L.C., 56 AD3d 1122, 868 NYS2d 427 (4th Dept 2008). In interpreting the provisions of a lease, the court should refrain from rewriting the lease under the guise of construction, should not construe the language of the lease in such a way as would distort its meaning, and should not construe the language in a manner that would render one or more of its provisions meaningless, J.W. Mays, Inc. v Snyder Fulton Street, LLC, 69 AD3d 572, 893 NYS2d 162 (2d Dept 2010); 45-02 Food Corp. v 45-02 43rd Realty LLC, 37 AD3d 522, 830 NYS2d 304 (2d Dept 2007); Poughkeepsie Sav. Bank, FSB v G.M.S.Y. Associates, 238 AD2d 327, 656 NYS2d 917 (2d Dept 1997).

Where a lease has been modified, the lease and its modification must be construed as one contract in order to carry out the parties' intent, 350 East 30th Parking, Ltd. v Board of Managers of 350 Condominium, 280 AD2d 284, 720 NYS2d 128 (1st Dept 2001).

An oral modification of a lease containing a clause requiring any modification to be in writing is not effective, absent partial performance unequivocally referable to the claimed modification, Eujoy Realty Corp. v Van Wagner Communications, LLC, 22 NY3d 413, 981 NYS2d 326, 4 NE3d 336 (2013); Rose v Spa Realty Associates, 42 NY2d 338, 397 NYS2d 922, 366 NE2d 1279 (1977); Aris Industries, Inc. v 1411 Trizechahn-Swig, LLC, 294 AD2d 107, 744 NYS2d 362 (1st Dept 2002); Joseph P. Day Realty Corp. v Jeffrey Lawrence Associates, Inc., 270 AD2d 140, 704 NYS2d 587 (1st Dept 2000); see GOL § 15-301(1). Principles of equitable estoppel may permit the enforcement of an oral modification, but only when the conduct giving rise to the estoppel is incompatible with the written agreement, Eujoy Realty Corp. v Van Wagner Communications, LLC, supra; Rose v Spa Realty Associates, supra; Joseph P. Day Realty Corp. v Jeffrey Lawrence Associates, Inc., supra. Thus, where the lease precluded oral modifications, neither a tenant's payment of rent (which it was obligated to pay under the lease) nor the landlord's retention of the security deposit (which it had the right to hold) supported the tenant's claim that an alleged oral modification permitting the tenant to vacate the premises prior to the expiration of the lease should be enforced, Joseph P. Day Realty Corp. v Jeffrey Lawrence Associates, supra. With respect to the application of the doctrine of equitable estoppel, when the parties dispute whether an oral agreement has been formed, the conduct of the party advocating for the oral agreement is determinative, although the conduct of both parties may be relevant, Eujoy Realty Corp. v Van Wagner Communications, LLC, supra.

An agreement to pay rent on a certain date is generally a material term of a lease, Madison Ave. Leasehold, LLC v Madison Bentley Associates LLC, 8 NY3d 59, 828 NYS2d 254, 861 NE2d 69 (2006); Fifty States Management Corp. v Pioneer Auto Parks, Inc., 46 NY2d 573, 415 NYS2d 800, 389 NE2d 113 (1979). However, breach of the certain-date provision may be curable if the lease provides for notice of default by the landlord, Madison Ave. Leasehold, LLC v Madison Bentley Associates, supra. When a lease sets a due date for rent, that date is the date on which the tenant's debt accrues, Eujoy Realty Corp. v Van Wagner Communications, LLC, 22 NY3d 413, 981 NYS2d 326, 4 NE3d 336 (2013).

Rent escalation clauses are common in commercial leases and have been approved and enforced according to their terms, Accurate Copy Service of America, Inc. v Fisk Bldg. Associates L.L.C., 72 AD3d 456, 899 NYS2d 157 (1st Dept 2010); Meyers Parking System, Inc. v 475 Park Ave. So. Co., 186 AD2d 92, 588 NYS2d 32 (1st Dept 1992). A lease escalation clause that required the tenant to pay additional rent when real estate taxes exceeded real estate taxes in the base year did not entitle the landlord to collect additional rent where taxes were exempted or abated, Eighty Eight Bleecker Co., LLC v 88 Bleecker Street Owners, Inc., 34 AD3d 244, 824 NYS2d 237 (1st Dept 2006); Ran First Associates v 363 East 76th Street Corp., 297 AD2d 506, 747 NYS2d 13 (1st Dept 2002).

## Licenses

A license is a revocable privilege given to one, without interest in the lands of another, to do one or more acts of a temporary nature upon such lands, Union Square Park Community Coalition, Inc. v New York City Dept. of Parks and Recreation, 22 NY3d 648, 985 NYS2d 422, 8 NE3d 797 (2014). That a writing refers to itself as a license or lease is not determinative; rather, the true nature of the transaction must be gleaned from the rights and obligations set forth therein, id. A broad termination clause reserving to the grantor the right to cancel whenever it decides in good faith to do so is strongly indicative of a license as opposed to a lease, id.

## Oil and Gas Leases

The construction and interpretation of oil and gas leases is guided by basic principles of contract law, Beardslee v Inflection Energy, LLC, 25 NY3d 150, 8 NYS3d 618, 31 NE3d 80 (2015). However, the analysis should take into account that oil and gas leases stand on an entirely different basis from any other leasehold agreements, since they are made in the context of a highly technical industry that employs distinct terminology used by those in the business, id. Accordingly, an agreement for the production of oil and gas must be construed with reference to both the intention of the parties and the known practices within the industry, id.

Oil and gas leases often contain "habendum" clauses, which typically establish a definite or primary term in which the lessee is permitted to develop the property, with an option for an indefinite secondary term permitting the lessee to reap the long-term value and return on the money spent developing the property during the primary term, Beardslee v Inflection Energy, LLC, 25 NY3d 150, 8 NYS3d 618, 31 NE3d 80 (2015). In Beardslee v Inflection Energy, LLC, supra, the Court of Appeals considered the effect on the habendum clause of a force majeure clause in an oil and gas lease providing that "[i]f and when drilling … [is] delayed or interrupted … as a result of some order, rule, regulation, requisition or necessity of the government, or as the result of any other cause whatsoever beyond the control of Lessee, the time of such delay or interruption shall not be counted against Lessee, anything in this lease to the contrary notwithstanding." Since the force majeure clause did not refer to the habendum clause and the habendum clause did not incorporate the force majeure clause by reference or contain any language expressly subjecting it to other lease terms, the force majeure clause did not modify the primary term of the habendum clause and, therefore, did not extend the lease, id.

## K. Partnership Agreements

The principles governing the interpretation of contracts are generally applicable to partnership agreements, Bailey v Fish & Neave, 8 NY3d 523, 837 NYS2d 600, 868 NE2d 956 (2007). Partners may fix their partnership rights and duties by agreement, id; Lanier v Bowdoin, 282 NY 32, 24 NE2d 732 (1939). In the absence of prohibitory provisions of the statutes or rules of the common law relating to partnerships or considerations of public policy, the partners of either a general or limited partnership, as between themselves, may include in the partnership articles any agreement they wish concerning sharing of profits and losses, priorities of distribution on winding up of the partnership affairs and other matters, Bailey v Fish & Neave, supra (quoting Lanier v Bowdoin, supra); see Lai v Gartlan, 46 AD3d 237, 845 NYS2d 30 (1st Dept 2007). If a partnership agreement is complete as between the partners, the agreement controls, Bailey v Fish & Neave, supra. Partnership Law § 40(8) contains default provisions to be used in the absence of an agreement between partners on the same subject matter. However, Partnership Law § 40(8) cannot be used to make a different contract from that which the parties intended or to override the agreement which the parties, in fact, made, Bailey v Fish & Neave, supra; Levy v Leavitt, 257 NY 461, 178 NE 758 (1931).

In determining whether the parties entered into an oral partnership agreement, the courts consider the intent of the parties, whether the parties shared joint control in the management of the business, whether the parties shared profits and losses and whether capital contributions were made, Moses v Savedoff, 96 AD3d 466, 947 NYS2d 419 (1st Dept 2012). An essential ingredient of a partnership agreement is an agreement among the principals to share losses as well as profits, id; Chanler v Roberts, 200 AD2d 489, 606 NYS2d 649 (1st Dept 1994).

## L. Releases

A valid release constitutes a complete bar to an action on a claim which is the subject of the release, Centro Empresarial Cempresa S.A. v America Movil, S.A.B. de C.V., 17 NY3d 269, 929 NYS2d 3, 952 NE2d 995 (2011); Littman v Magee, 54 AD3d 14, 860 NYS2d 24 (1st Dept 2008); Global Minerals and Metals Corp. v Holme, 35 AD3d 93, 824 NYS2d 210 (1st Dept 2006); see Hack v United Capital Corp., 247 AD2d 300, 669 NYS2d 280 (1st Dept 1998). Releases are governed by principles of contract law, Abdulla v Gross, 124 AD3d 1255, 998 NYS2d 549 (4th Dept 2015); Goode v Drew Bldg. Supply, Inc., 266 AD2d 925, 697 NYS2d 417 (4th Dept 1999); Zilinskas v Westinghouse Elec. Corp., 248 AD2d 777, 669 NYS2d 703 (3d Dept 1998); Stone v National Bank and Trust Co., 188 AD2d 865, 591 NYS2d 609 (3d Dept 1992). It is for the court to determine in the first instance whether language in a release is ambiguous, Metz v Metz, 175 AD2d 938, 572 NYS2d 813 (3d Dept 1991); see Rubycz-Boyar v Mondragon, 15 AD3d 811, 790 NYS2d 266 (3d Dept 2005); Goldberg v Manufacturers Life Ins. Co., 242 AD2d 175, 672 NYS2d 39 (1st Dept 1998). Where there is an ambiguity regarding the scope of a release, parol evidence is admissible to determine the intent of the parties, Krysty v Royalton, 19 AD3d 1086, 796 NYS2d 489 (4th Dept 2005); Doldan v Fenner, 309 AD2d 1274, 765 NYS2d 401 (4th Dept 2003); NAB Const. Corp. v New York, 276 AD2d 388, 714 NYS2d 279 (1st Dept 2000). In construing a general release, it is appropriate to look at the controversy being settled and the purpose for which the release was executed, Cahill v Regan, 5 NY2d 292, 184 NYS2d 348, 157 NE2d 505 (1959); Broyhill Furniture Industries, Inc. v Hudson Furniture Galleries, LLC, 61 AD3d 554, 877 NYS2d 72 (1st Dept 2009); Eaton Elec., Inc. v Dormitory Authority of New York, 48 AD3d 619, 852 NYS2d 363 (2d Dept 2008); Bugel v WPS Niagara Properties, Inc., 19 AD3d 1081, 797 NYS2d 232 (4th Dept 2005), Zilinskas v Westinghouse Elec. Corp., supra; Jochnowitz v Russell Sage College, 136 AD2d 822, 523 NYS2d 656 (3d Dept 1988). However, extrinsic evidence may not be considered by the court in construing an unambiguous release, Bernard v Sayegh, 104 AD3d 600, 961 NYS2d 444 (1st Dept 2013).

A release may not be read to cover matters that the parties did not desire or intend to dispose of, Cahill v Regan, 5 NY2d 292, 184 NYS2d 348, 157 NE2d 505 (1959); Spears v Spears Fence, Inc., 60 AD3d 752, 875 NYS2d 166 (2d Dept 2009); Lexington Ins. Co. v Combustion Engineering, Inc., 264 AD2d 319, 693 NYS2d 146 (1st Dept 1999); Mergler v Crystal Properties Associates, Ltd., 179 AD2d 177, 583 NYS2d 229 (1st Dept 1992); see Mangini v McClurg, 24 NY2d 556, 301 NYS2d 508, 249 NE2d 386 (1969). However, it is not a prerequisite to the enforceability of a release that the releasor be subjectively aware of the precise claim he or she is releasing, Liling v Segal, 220 AD2d 724, 633 NYS2d 199 (2d Dept 1995). If from the recitals therein it appears that the release is to be limited to only particular claims, demands, or obligations, then the release will be operative as to those matters only, Rotondi v Drewes, 31 AD3d 734, 819 NYS2d 779 (2d Dept 2006). Furthermore, if a release contains specific recitals as to the claims being released yet also contains an omnibus clause that "all claims and demands whatsoever" are being discharged, the general words of a release are limited by recital of the particular claim, Maxwell Partners, L.L.C. v Building Studio, LLP, 32 AD3d 321, 820 NYS2d 253 (1st Dept 2006); Herman v Malamed, 110 AD2d 575, 487 NYS2d 791 (1st Dept 1985); see Abdulla v Gross, 124 AD3d 1255, 998 NYS2d 549 (4th Dept 2015).

A release may encompass unknown claims, including unknown fraud claims, if the parties so intend and the agreement is fairly and knowingly made, Centro Empresarial Cempresa S.A. v America Movil, S.A.B. de C.V., 17 NY3d 269, 929 NYS2d 3, 952 NE2d 995 (2011); see Desiderio v Geico General Ins. Co., 107 AD3d 662, 967 NYS2d 392 (2d Dept 2013). Thus, where the release language is broad and encompasses all "manner of actions," whether "past, present or future, actual or contingent," the release was held to encompass fraud claims unknown at the time of the release, Centro Empresarial Cempresa S.A. v America Movil, S.A.B. de C.V., supra; see Long v O'Neill, 126 AD3d 404, 5 NYS3d 42 (1st Dept 2015). On the other hand, where it cannot be determined whether a release was intended to cover the complaint allegations, a motion to dismiss the complaint on the basis of the release must be denied, Desiderio v Geico General Ins. Co., supra.

In the context of agreements releasing claims for personal injury, a sharp distinction is drawn between unknown injuries and mistakes as to the consequences of known injuries, Ford v Phillips, 121 AD3d 1232, 994 NYS2d 688 (3d Dept 2014). A release will not bar a claim if the parties mistakenly believed that a particular injury did not exist at the time the release was executed; in contrast, a release will bar a claim where there was a mistake pertaining to the future course or sequelae of a known injury, id.

Where a party has released fraud claims, the release may be successfully challenged for fraud in its inducement only where the fraud is separate from the subject of the release, Centro Empresarial Cempresa S.A. v America Movil, S.A.B. de C.V., 17 NY3d 269, 929 NYS2d 3, 952 NE2d 995 (2011); Arfa v Zamir, 17 NY3d 737, 929 NYS2d 11, 952 NE2d 1003 (2011). A claim by plaintiffs that they sold their interest in a company and released defendants from claims arising from false information about the company provided by defendants failed because plaintiffs did not allege that the release itself was

induced by fraud beyond that contemplated by the release, Centro Empresarial Cempresa S.A. v America Movil, S.A.B. de C.V., supra.

Releases bar suits on causes of action arising on or prior to the date of their execution but do not bar subsequent claims unless they are specifically embraced within the release or fall within the fair import of its terms, Rubycz-Boyar v Mondragon, 15 AD3d 811, 790 NYS2d 266 (3d Dept 2005) (medical malpractice complaint dismissed based on general release executed by parties, both physicians, in connection with termination of their business relationship); Murray-Gardner Management, Inc. v Iroquois Gas Transmission System, L.P., 229 AD2d 852, 646 NYS2d 418 (3d Dept 1996).

A general release will not insulate a tortfeasor from allegations of breach of fiduciary duty, where defendant did not fully disclose alleged wrongdoing or a conflict of interest, Littman v Magee, 54 AD3d 14, 860 NYS2d 24 (1st Dept 2008); H.W. Collections, Inc. v Kolber, 256 AD2d 240, 682 NYS2d 189 (1st Dept 1998). Further, there may be circumstances where a fiduciary's obligation to disclose could operate as a written representation that no material facts are undisclosed and thereby relieve the fiduciary's principal of the duty to investigate further, Centro Empresarial Cempresa S.A. v America Movil, S.A.B. de C.V., 17 NY3d 269, 929 NYS2d 3, 952 NE2d 995 (2011). However, where the fiduciary relationship is no longer one of complete trust, a sophisticated principal may release its fiduciary from claims against it as long as the principal understands that the fiduciary is acting in its own interest and the release is knowingly executed, id (rejecting Littman v Magee, supra, and H.W. Collections, Inc. v Kolber, supra, to extent they suggest otherwise); Arfa v Zamir, 17 NY3d 737, 929 NYS2d 11, 952 NE2d 1003 (2011); see Pappas v Tzolis, 20 NY3d 228, 958 NYS2d 656, 982 NE2d 576 (2012). The test, in essence, is whether, given the nature of the parties' relationship at the time of the release, the principal is aware of information about the fiduciary that would make reliance on the fiduciary unreasonable, Pappas v. Tzolis, supra

A release may be set aside on the traditional bases of fraudulent inducement, fraudulent concealment, misrepresentation, mutual mistake, illegality, or duress, Centro Empresarial Cempresa S.A. v America Movil, S.A.B. de C.V., 17 NY3d 269, 929 NYS2d 3, 952 NE2d 995 (2011); see Foundry Capital Sarl v International Value Advisers, LLC, 96 AD3d 620, 947 NYS2d 98 (1st Dept 2012) (duress claim negated by plaintiff's acceptance of commission); Philips South Beach, LLC v ZC Specialty Ins. Co., 55 AD3d 493, 867 NYS2d 386 (1st Dept 2008) (duress not established where there was "vigorous negotiation" and no evidence of unequal bargaining power between the parties); Littman v Magee, 54 AD3d 14, 860 NYS2d 24 (1st Dept 2008); Young v Williams, 47 AD3d 1084, 850 NYS2d 262 (3d Dept 2008); Global Minerals and Metals Corp. v Holme, 35 AD3d 93, 824 NYS2d 210 (1st Dept 2006). It may be voided on the basis of fraud in the inducement, even when resulting from prolonged negotiations by represented parties, Lobel v Maimonides Medical Center, 39 AD3d 275, 835 NYS2d 28 (1st Dept 2007). A party seeking to void a written release on grounds of duress must demonstrate threats of an unlawful act by one party that compel performance by the other party of an act that that party had a legal right to abstain from performing, Nelson v Lattner Enterprises of N.Y., 108 AD3d 970, 969 NYS2d 614 (3d Dept 2013). This requirement was not satisfied where the claimed "duress" that induced plaintiff to sign a second release consisted of a statement to plaintiff indicating that she was already bound by her earlier, allegedly coerced, agreement, id.

The doctrine of ratification applies to releases, Allen v Riese Organization, Inc., 106 AD3d 514, 965 NYS2d 437 (1st Dept 2013). Thus, a party who accepts benefits under the terms of a release maybe deemed to have ratified the agreement and may not thereafter seek to avoid its effects on grounds of duress in the execution, Napolitano v New York, 12 AD3d 194, 783 NYS2d 584 (1st Dept 2004); Khalid v Scagnelli, 290 AD2d 352, 736 NYS2d 374 (1st Dept 2002).

Although a defendant has the initial burden of establishing that it has been released, a signed release shifts the burden to plaintiff to show that there was fraud, duress or some other circumstance that would void the release, Centro Empresarial Cempresa S.A. v America Movil, S.A.B. de C.V., 17 NY3d 269, 929 NYS2d 3, 952 NE2d 995 (2011). Where fraud in the inducement is asserted, plaintiff must establish all of the basic elements of fraud, i.e., misrepresentation of a material fact, knowledge by defendant of the falsity, justifiable reliance by plaintiff and resulting injury, id. Absent fraud, mutual mistake, or duress, a party who signs a release is bound by its terms, even where that party claims not to have read or understood the release and even where the party claims to have been misled as to its meaning, see Kavoukian v Kaletta, 294 AD2d 646, 742 NYS2d 157 (3d Dept 2002); Morby v Di Siena Associates LPA, 291 AD2d 604, 737 NYS2d 678 (3d Dept 2002); Blog v Battery Park City Authority, 234 AD2d 99, 650 NYS2d 713 (1st Dept 1996).

A party who signs a release cannot avoid its terms by arguing that the party signed it because it represented the only means of assuring receipt of compensation due or that the party did not read the document or fully comprehend its significance, Collins

v E-Magine, LLC, 291 AD2d 350, 739 NYS2d 15 (1st Dept 2002). A minor is not bound by a pre-occurrence release executed by his or her parent, Alexander v Kendall Cent. School Dist., 221 AD2d 898, 634 NYS2d 318 (4th Dept 1995); Santangelo v New York, 66 AD2d 880, 411 NYS2d 666 (2d Dept 1978).

Releases that merely operate as receipts do not constitute waivers, West End Interiors, Ltd. v Aim Const. & Contracting Corp., 286 AD2d 250, 729 NYS2d 112 (1st Dept 2001); see Global Precast, Inc. v Stonewall Contracting Corp., 78 AD3d 432, 911 NYS2d 292 (1st Dept 2010); Orange Steel Erectors, Inc. v Newburgh Steel Products, Inc., 225 AD2d 1010, 640 NYS2d 283 (3d Dept 1996). Where a waiver form purports to acknowledge that no further payments are owed, but the parties' conduct indicates otherwise, as where the party continues to make payments, the instrument will not be construed as a release, E-J Elec. Installation Co. v Brooklyn Historical Soc., 43 AD3d 642, 841 NYS2d 294 (1st Dept 2007); West End Interiors, Ltd. v Aim Const. & Contracting Corp., supra.

## M. Stipulations of Settlement

Under CPLR 2104, a stipulation of settlement is not enforceable unless it is made in open court, reduced to a court order and entered, or contained in a writing subscribed by the parties or their attorneys, Starr v Rogers, 44 AD3d 646, 843 NYS2d 371 (2d Dept 2007); see Velazquez v St. Barnabas Hosp., 13 NY3d 894, 895 NYS2d 286, 922 NE2d 872 (2009). However, a stipulation of settlement, entered into in open court on the record, is enforceable as a contract, Linsalato v Giuttari, 59 AD3d 682, 874 NYS2d 212 (2d Dept 2009); Vider v Vider, 46 AD3d 673, 846 NYS2d 666 (2d Dept 2007). Although CPLR 2104 refers to open court stipulations made by "counsel," a party may enter into a binding stipulation in open court without counsel if he or she knowingly decides to proceed pro se, Fulginiti v Fulginiti, 127 AD3d 1382, 4 NYS3d 780 (3d Dept 2015). Stipulations of settlement, like releases, are subject to the principles of contract interpretation, Brad H. v New York, 17 NY3d 180, 928 NYS2d 221, 951 NE2d 743 (2011); McCoy v Feinman, 99 NY2d 295, 755 NYS2d 693, 785 NE2d 714 (2002); Rainbow v Swisher, 72 NY2d 106, 531 NYS2d 775, 527 NE2d 258 (1988); Grand Manor Health Related Facility, Inc. v Hamilton Equities Inc., 65 AD3d 445, 885 NYS2d 255 (1st Dept 2009); Aivaliotis v Continental Broker-Dealer Corp., 30 AD3d 446, 817 NYS2d 365 (2d Dept 2006) (so-ordered stipulation); Carney v Carozza, 16 AD3d 867, 792 NYS2d 642 (3d Dept 2005) (settlement not a mere agreement to agree where handwritten document contained essential terms); see 1029 Sixth, LLC v Riniv Corp., 9 AD3d 142, 777 NYS2d 122 (1st Dept 2004) (stipulation of settlement of commercial holdover proceeding strictly enforced according to its terms). Special considerations apply to certain stipulations of settlement in matrimonial actions, see Comment, supra.

Stipulations of settlement are judicially favored and may not be lightly set aside, IDT Corp. v Tyco Group, 13 NY3d 209, 890 NYS2d 401, 918 NE2d 913 (2009); Hallock v State, 64 NY2d 224, 485 NYS2d 510, 474 NE2d 1178 (1984); Will of Kanter, 209 AD2d 365, 618 NYS2d 794 (1st Dept 1994). Strict enforcement of stipulations of settlement serves the interest of efficient dispute resolution, and is essential to the management of court calendars and the integrity of the litigation process, IDT Corp. v Tyco Group, supra; Hotel Cameron, Inc. v Purcell, 35 AD3d 153, 827 NYS2d 13 (1st Dept 2006). As with all contracts, there is a covenant of good faith and fair dealing implied in stipulations of settlement, Ochal v Television Technology Corp., 26 AD3d 575, 809 NYS2d 604 (3d Dept 2006). A stipulation of settlement made in open court by an attorney with apparent may bind the client even when it exceeds the attorney's actual authority, Hallock v State, 64 NY2d 224, 485 NYS2d 510, 474 NE2d 1178 (1984); Ochal v Television Technology Corp., supra.

An out-of-court settlement agreement between parties or their attorneys relating to any matter in an action is not binding upon a party unless it is in a writing subscribed by the parties or their attorneys, Bonnette v Long Island College Hosp., 3 NY3d 281, 785 NYS2d 738, 819 NE2d 206 (2004); Williams v Bushman, 70 AD3d 679, 894 NYS2d 94 (2d Dept 2010); Estate of Amendola v Kendzia, 48 AD3d 1173, 850 NYS2d 777 (4th Dept 2008); Eastman v Steinhoff, 48 AD3d 738, 852 NYS2d 396 (2d Dept 2008). Moreover, a settlement agreement reached out of court does not bind a client who rejected and never signed requisite releases and stipulation of settlement, Katzen v Twin Pines Fuel Corp., 16 AD3d 133, 790 NYS2d 447 (1st Dept 2005). Acceptance of an out-of-court settlement offer must be communicated to the party offering the settlement, Gyabaah v Rivlab Transp. Corp., 22 NY3d 1018, 981 NYS2d 349, 4 NE3d 359 (2013) (action not settled because release and hold harmless agreement never delivered to defendant, nor was acceptance of settlement offer otherwise communicated to defendant or its carrier).

The terms of the settlement must be adequately described in a signed writing, Bonnette v Long Island College Hosp., 3 NY3d 281, 785 NYS2d 738, 819 NE2d 206 (2004); George W. & Dacie Clements Agr. Research Institute, Inc. v Green, 130 AD3d

1422, 13 NYS3d 710 (3d Dept 2015); see Eastman v Steinhoff, 48 AD3d 738, 852 NYS2d 396 (2d Dept 2008); Palmo v Straub, 45 AD3d 1090, 845 NYS2d 549 (3d Dept 2007). An exchange of correspondence between counsel may constitute a binding stipulation pursuant to CPLR 2104, Wronka v GEM Community Management, 49 AD3d 869, 854 NYS2d 474 (2d Dept 2008) (material terms set forth in letter from counsel for one party and confirmed in reply from counsel for other party); Gaglia v Nash, 8 AD3d 992, 778 NYS2d 595 (4th Dept 2004) (after plaintiff's attorney sent letter setting forth terms of settlement, subsequent letters by defendant's counsel acknowledging settlement satisfied the requirement of a "subscribed writing" even though defendant's counsel never countersigned the letter sent by plaintiff's attorney). Further, an email message that contains all material terms of a settlement agreement and a manifestation of mutual accord may satisfy the requirements of CPLR 2104 if the party to be charged or that party's agent purposefully typed his or her name under circumstances manifesting an intent that the name be treated as a signature, Forcelli v Gelco Corp., 109 AD3d 244, 972 NYS2d 570 (2d Dept 2013); see Williamson v Delsener, 59 AD3d 291, 874 NYS2d 41 (1st Dept 2009).

A stipulation of settlement made in open court may be set aside only upon a showing of good cause, including fraud, collusion, mistake, or contravening public policy, McCoy v Feinman, 99 NY2d 295, 755 NYS2d 693, 785 NE2d 714 (2002); Matter of Willie L.C., 65 AD3d 683, 884 NYS2d 468 (2d Dept 2009), or lack of actual or apparent authority on the part of the attorney who agreed to it, Hallock v State, 64 NY2d 224, 485 NYS2d 510, 474 NE2d 1178 (1984).

A party seeking to vacate a stipulation should do so with reasonable promptness under the circumstances, Charlop v A.O. Smith Water Products, 64 AD3d 486, 884 NYS2d 1 (1st Dept 2009); see Structured Asset Sales Group LLC v Freeman, 45 AD3d 327, 844 NYS2d 699 (1st Dept 2007). A party may be deemed to have ratified a stipulation by accepting benefits under the agreement for an extended period, Weissman v Weissman, 42 AD3d 448, 839 NYS2d 798 (2d Dept 2007).

To set aside a stipulation of settlement made in open court on the ground of mutual mistake, a party must demonstrate that the mistake existed at the time the stipulation was entered into and that it was so substantial that the stipulation failed to represent a true meeting of the parties' minds, Eldridge v Shaw, 99 AD3d 1224, 952 NYS2d 360 (4th Dept 2012); Etzion v Etzion, 62 AD3d 646, 880 NYS2d 79 (2d Dept 2009); Hannigan v Hannigan, 50 AD3d 957, 857 NYS2d 201 (2d Dept 2008); see Cordova v Cordova, 63 AD3d 982, 883 NYS2d 237 (2d Dept 2009). Extrinsic evidence may not be considered when the intent of the parties may be gleaned from the stipulation itself, Eldridge v Shaw, supra. Where the parties lacked the requisite meeting of the minds when they entered into an oral stipulation, the appropriate remedy is rescission of the stipulation and restoration of the parties to their pre-stipulation positions, Walker v Walker, 67 AD3d 1373, 888 NYS2d 823 (4th Dept 2009).

A high-low agreement is a conditional settlement, Cunha v Shapiro, 42 AD3d 95, 837 NYS2d 160 (2d Dept 2007). The condition of the agreement is that the verdict fall outside the range of the high-low agreement. When this occurs, the condition is triggered and the "high" or the "low" becomes binding upon the parties as a settlement, Cunha v Shapiro, supra; see Vargas v Marquis, 65 AD3d 1332, 885 NYS2d 747 (2d Dept 2009). When entered into between a plaintiff and a defendant in a single-defendant trial, the high-low agreement affords the parties a means of tempering the significant risks associated with proceeding to trial, Matter of Eighth Judicial Dist. Asbestos Litigation, 8 NY3d 717, 840 NYS2d 546, 872 NE2d 232 (2007). In a multi-defendant litigation, however, a high-low agreement between a plaintiff and fewer than all of the defendants has the potential of prejudicing the rights of the non-agreeing defendants if all parties are not apprised of the agreement's existence, id. Thus, when a plaintiff and a defendant enter into a high-low agreement in a multi-defendant action that requires the agreeing defendant to remain a party to the litigation, the parties must disclose the existence of that agreement and its terms to the court and the non-agreeing defendants, id.


### N. Limitations on Liability and Sole Remedy Clauses

A limitation on liability provision in a contract represents the parties' agreement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed, and courts should honor such liability limitations, Metropolitan Life Ins. Co. v Noble Lowndes Intern., Inc., 84 NY2d 430, 618 NYS2d 882, 643 NE2d 504 (1994); see Nomura Home Equity Loan, Inc., Series 2006-FM2, by HSBC Bank USA, National Association v Nomura Credit & Capital, Inc., 30 NY3d 572, 69 NYS3d 520, 92 NE3d 743 (2017). Contractual limitations on liability are generally enforceable, Uribe v Merchants Bank of New York, 91 NY2d 336, 670 NYS2d 393, 693 NE2d 740 (1998); Obremski v Image Bank, Inc., 30 AD3d 1141, 816 NYS2d 448 (1st Dept 2006). A clear contractual provision limiting damages is enforceable absent a special relationship between the parties, a statutory prohibition, or an overriding public policy, Johnston v MGM Emerald

Enterprises, Inc., 69 AD3d 674, 893 NYS2d 176 (2d Dept 2010); Mancuso v Rubin, 52 AD3d 580, 861 NYS2d 79 (2d Dept 2008); Schietinger v Tauscher Cronacher Professional Engineers, P.C., 40 AD3d 954, 838 NYS2d 95 (2d Dept 2007).

A party may not contract to avoid liability for grossly negligent conduct or conduct evincing a reckless disregard for the other contracting party, Sommer v Federal Signal Corp., 79 NY2d 540, 583 NYS2d 957, 593 NE2d 1365 (1992); Berenger v 261 West LLC, 93 AD3d 175, 940 NYS2d 4 (1st Dept 2012); Golden Stone Trading, Inc. v Wayne Electro Systems, Inc., 67 AD3d 731, 889 NYS2d 72 (2d Dept 2009), or to avoid liability for its own bad faith or for intentional or willful misconduct or gross negligence, Banc of America Securities LLC v Solow Bldg. Co. II, L.L.C., 47 AD3d 239, 847 NYS2d 49 (1st Dept 2007); see Diplomat Properties, L.P. v Komar Five Associates, LLC, 72 AD3d 596, 899 NYS2d 237 (1st Dept 2010); see also PJI 2:10A. Absent language to the contrary, a limitation of liability clause does not apply to misrepresentations made to induce a party to enter into an agreement, Sear-Brown Group v Jay Builders, Inc., 244 AD2d 966, 665 NYS2d 162 (4th Dept 1997). A damage limitation clause cannot limit the damages recoverable by a purchaser where the seller tortiously interfered with the purchaser's ability to perform, BGW Development Corp. v Mount Kisco Lodge No. 1552 of Benev. and Protective Order of Elks of the United States of America, Inc., 247 AD2d 565, 669 NYS2d 56 (2d Dept 1998); see Naso v Haque, 289 AD3d 309, 734 NYS2d 214 (2d Dept 2001) (where seller's inability to convey marketable title was self-created, contractual remedy limitation clause did not prevent purchaser from seeking specific performance).

Contract terms providing for a "sole remedy" are sufficiently clear to establish that no other remedy was contemplated by the parties at the time the contract was formed, for purposes of that portion of the transaction, especially when entered into at arm's length by sophisticated contracting parties, Nomura Home Equity Loan, Inc., Series 2006-FM2, by HSBC Bank USA, National Association v Nomura Credit & Capital, Inc., 30 NY3d 572, 69 NYS3d 520, 92 NE3d 743 (2017); see J. D'Addario & Co., Inc. v Embassy Industries, Inc., 20 NY3d 113, 957 NYS2d 275, 980 NE2d 940 (2012).

## O. Agreements to Purchase Insurance or Name Promisee as Additional Insured

A party's promise to procure insurance to protect from a specified amount of liability may satisfy its obligation by obtaining insurance with a self-insured retention or deductible, but the promisor must pay any costs the promisee incurs, including defense costs, Inner City Redevelopment Corp. v Thyssenkrupp Elevator Corp., 128 AD3d 425, 8 NYS3d 314 (1st Dept 2015); see Hoverson v Herbert Const. Co., Inc., 283 AD2d 237, 725 NYS2d 320 (1st Dept 2001).

A cause of action for breach of contract may be maintained where a promisor has failed to name the promisee as an additional insured. In such a case, the promisee seeking summary judgment need only show that the promisor failed to comply with a contractual provision that required the naming of the promisee as an additional insured, Keelan v Sivan, 234 AD2d 516, 651 NYS2d 178 (2d Dept 1996); see Kinney v G.W. Lisk Co., Inc., 76 NY2d 215, 557 NYS2d 283, 556 NE2d 1090 (1990). If such a showing is made, the promisor is liable for the resulting damages, including the liability of the promisee to an injured plaintiff, Kinney v G.W. Lisk Co., Inc., supra; Kennelty v Darlind Const., Inc., 260 AD2d 443, 688 NYS2d 584 (2d Dept 1999), as well as the costs incurred in defending against the plaintiff's action, Amoco Oil Co. v Gino Lucadamo & Sons, Inc., 260 AD2d 516, 688 NYS2d 632 (2d Dept 1999); Darowski v High Meadow Co-op. No. 1, 239 AD2d 541, 657 NYS2d 457 (2d Dept 1997).

A provision in a construction contract cannot be interpreted as requiring the procurement of additional insured coverage unless such a requirement is expressly and specifically stated, Empire Ins. Co. v Insurance Corp. of New York, 40 AD3d 686, 836 NYS2d 228 (2d Dept 2007); Trapani v 10 Arial Way Associates, 301 AD2d 644, 755 NYS2d 396 (2d Dept 2003); see Strauss Painting, Inc. v Mt. Hawley Ins. Co., 24 NY3d 578, 2 NYS3d 390, 26 NE3d 218 (2014). Contract language that merely requires the purchase of insurance does not by itself obligate the promisor to name another contracting party as an additional insured, QBE Ins. Corp. v Adjo Contracting Corp., 121 AD3d 1064, 997 NYS2d 425 (2d Dept 2014). Where a party contractually obligated to procure insurance fails to advise the additional insured of the coverage obtained so that the additional insured can submit a timely claim to the insurer, the obligor may be liable for breach of the covenant of good faith and fair dealing, HRH Construction Corp. v Forest Elec. Corp., 299 AD2d 282, 750 NYS2d 74 (1st Dept 2002). Where the promisee has purchased insurance covering the risk, the measure of damages is the premiums paid, any out-of-pocket costs incurred incidental to the policy, and any increase in future premiums it may incur resulting from the liability claim, Lima v NAB Const. Corp., 59 AD3d 395, 873 NYS2d 141 (2d Dept 2009); Netjets, Inc. v Signature Flight Support, Inc., 43 AD3d 1016, 844 NYS2d 331 (2d Dept 2007). Where a tenant has failed to comply with a lease provision requiring it to obtain insurance, the landlord is not required to exercise its option under the lease to procure its own insurance and bill the tenant

for the cost as "additional rent," 166 Enterprises Corp. v I G Second Generation Partners, L.P., 81 AD3d 154, 917 NYS2d 143 (1st Dept 2011).

An agreement to purchase insurance differs from an agreement to indemnify and therefore does not violate GOL § 5-322.1, which prohibits provisions in construction contracts purporting to hold the promisee harmless for injuries caused by its own negligence, Kinney v G.W. Lisk Co., Inc., 76 NY2d 215, 557 NYS2d 283, 556 NE2d 1090 (1990); Keelan v Sivan, 234 AD2d 516, 651 NYS2d 178 (2d Dept 1996). While the indemnification agreement prohibited by GOL § 5-322.1 relieves the promisee of liability for its own faulty conduct, an agreement to procure insurance for the promisee anticipates the promisee's responsibility for its own negligence, Kinney v G.W. Lisk Co., supra; see Comment to PJI 2:275. Because an insurance procurement clause is independent of an indemnification provision, a final determination of liability for failure to obtain the promised insurance need not await a factual determination as to whose negligence caused the plaintiff's injuries, Kennelty v Darlind Const., Inc., 260 AD2d 443, 688 NYS2d 584 (2d Dept 1999). A certificate of insurance, which expressly states that it is a matter of information only and confers no rights upon the certificate holder, is insufficient, by itself, to establish that the promisor purchased the required insurance, id.

Lease provisions that obligate a tenant to procure insurance and name the landlord as an additional insured are generally valid and enforceable, Inchaustegui v 666 5th Ave. Ltd. Partnership, 96 NY2d 111, 725 NYS2d 627, 749 NE2d 196 (2001); Kel Kim Corp. v Central Markets, Inc., 70 NY2d 900, 524 NYS2d 384, 519 NE2d 295 (1987). However, a landlord may not circumvent GOL § 5-321, which prohibits lease provisions exempting a lessor from liability for its own negligence by placing on the tenant the burden of procuring insurance covering the landlord's acts of negligence causing damage to the tenant, Port Authority of New York and New Jersey v Evergreen Intern. Aviation, Inc., 275 AD2d 358, 712 NYS2d 587 (2d Dept 2000); Graphic Arts Supply, Inc. v Raynor, 91 AD2d 827, 458 NYS2d 115 (4th Dept 1982). Nevertheless, in a lease between sophisticated parties negotiating at arm's length, an agreement to allocate between themselves the risk of liability to third parties through the employment of insurance is enforceable because under such circumstances the landlord is not exempting itself from liability to the victim for its own negligence but is instead allocating the risk of liability to third parties with the tenant, affording protection to the public, Great Northern Ins. Co. v Interior Const. Corp., 7 NY3d 412, 823 NYS2d 765, 857 NE2d 60 (2006); Hogeland v Sibley, Lindsay & Curr Co., 42 NY2d 153, 397 NYS2d 602, 366 NE2d 263 (1977); Castano v Zee-Jay Realty Co., 55 AD3d 770, 866 NYS2d 700 (2d Dept 2008). GOL § 5-321 does not render unenforceable a waiver clause that shields a landlord from liability for business losses by requiring the tenant to procure business interruption insurance, Duane Reade v 405 Lexington, L.L.C., 22 AD3d 108, 800 NYS2d 664 (1st Dept 2005).

Where a tenant fails to procure insurance required under the lease, an uninsured landlord without knowledge of that failure is entitled to recover from the tenant the full amount of the loss sustained, not exceeding the amount of the contractually required insurance, Marconi Wireless Telegraph Co. of America v Universal Transp. Co., 194 App Div 272, 185 NYS 65 (1st Dept 1920), aff'd, 233 NY 581, 135 NE 926 (1922); see Inchaustegui v 666 5th Ave. Ltd. Partnership, 96 NY2d 111, 725 NYS2d 627, 749 NE2d 196 (2001). Where the landlord has procured its own insurance covering the risk, the landlord's damages are limited to its out-of-pocket expenses including the premiums and any additional costs it incurred such as deductibles, co-payments and increased future premiums, Inchaustegui v 666 5th Ave. Ltd. Partnership, supra; Mercado v 1710 Realty Associates, 289 AD2d 207, 733 NYS2d 715 (2d Dept 2001). The collateral source rule does not apply. Unlike tort damages, contract damages are limited to the actual economic injury caused by the breach, Inchaustegui v 666 5th Ave. Ltd. Partnership, supra.

**P. Assignment Agreements**

No particular words are necessary to effect an assignment, Leon v Martinez, 84 NY2d 83, 614 NYS2d 972, 638 NE2d 511 (1994). The only requirement is a perfected transaction between the assignor and the assignee intended to vest in the assignee a present right in the things assigned, id; Condren, Walker & Co., Inc. v Portnoy, 48 AD3d 331, 856 NYS2d 42 (1st Dept 2008). An assignment may ordinarily be made by oral communication and does not need to be supported by consideration, Crystal Clear Development, LLC v Devon Architects of New York, P.C., 127 AD3d 911, 7 NYS3d 361 (2d Dept 2015).

An assignee stands in the shoes of its assignor, subject to all of the equities and burdens attached to the acquired property, Madison Liquidity Investors 119, LLC v Griffith, 57 AD3d 438, 869 NYS2d 496 (1st Dept 2008); Condren, Walker & Co., Inc. v Portnoy, supra; see East Acupuncture, P.C. v Allstate Ins. Co., 61 AD3d 202, 873 NYS2d 335 (2d Dept 2009) (applying insurance tolling provisions contained in 11 NYCRR 65-3.9(c) applicable to insurance assignees). An assignment

may relate to a future right, provided that the right is adequately identified, Leon v Martinez, 84 NY2d 83, 614 NYS2d 972, 638 NE2d 511 (1994); Sterling Nat. Bank v Polyseal Packaging Corp., 104 AD3d 466, 961 NYS2d 109 (1st Dept 2013). An assignee of rights under a bilateral contract is not obligated to perform the duties imposed by the contract unless he or she expressly assumes those duties, Ivory Development, LLC v Roe, 135 AD3d 1216, 25 NYS3d 686 (3d Dept 2016).

A cause of action such as a claim for breach of contract or breach of fiduciary duty is assignable, Najjar Group, LLC v West 56th Hotel LLC, 106 AD3d 640, 965 NYS2d 720 (1st Dept 2013). Fraud and other tort claims are also freely assignable, Commonwealth of Pennsylvania Public School Employees' Retirement System v Morgan Stanley & Co., Inc., 25 NY3d 543, 14 NYS3d 313, 35 NE3d 481 (2015). However, when the right to assert a fraud or other tort claim is related to a contract or note, the right is not automatically transferred with the assignment of the contract or note, id. To effect an assignment of the tort cause of action, there must be some language evincing an intent to make such an assignment, id. Absent a valid assignment of a fraud claim, only the assignor has standing to assert it, since the assignor was the party to whom the misrepresentations were made and who had a right to rely on them, id. Notably, the facts that the assignment of the underlying contract or note was unqualified and that the assignor assumed that the assignment would include fraud claims related to the contract or note are insufficient to effect a transfer of the fraud claims, at least where there is no evidence that such a transfer was discussed or negotiated by the parties at the time of the assignment, id.

Whether a non-assignment clause renders a subsequent assignment void or a breach of a personal covenant not to assign depends on the expressed intent of the parties, Allhusen v Caristo Const. Corporation, 303 NY 446, 103 NE2d 891 (1952); Singer Asset Finance Co., L.L.C. v Bachus, 294 AD2d 818, 741 NYS2d 618 (4th Dept 2002) (assignment of structured settlement is not assignment of account prohibited under former UCC § 9-318); C.U. Annuity Service Corp. v Young, 281 AD2d 292, 722 NYS2d 236 (1st Dept 2001). Where the provision makes clear that the assignor lacked the power to make the assignment, it is not necessary that the provision also state the effect of any assignment, since declaring the assignment void effectuates the contractual agreement, Singer Asset Finance Co., L.L.C. v Bachus, supra; C.U. Annuity Service Corp. v Young, supra (non-assignment clause in structured settlement renders subsequent assignment void).

While personal service contracts are not assignable, a covenant not to compete is, Eisner Computer Solutions, LLC v Gluckstern, 293 AD2d 289, 741 NYS2d 511 (1st Dept 2002). The fact that a contract is silent about its assignability does not mean it is unassignable, id.

Where a contractor assigns its rights under a contract to a surety, the contractor is no longer the real party in interest with respect to claims against the owner, James McKinney & Son, Inc. v Lake Placid 1980 Olympic Games, Inc., 61 NY2d 836, 473 NYS2d 960, 462 NE2d 137 (1984); International Fidelity Ins. Co. v Quenzer Elec. Systems, Inc., 132 AD3d 811, 18 NYS3d 645 (2d Dept 2015).

With respect to the assignments of both structured judgments and structured settlements, approval by the court is necessary, GOL § 5-1701, et seq.


## Q. Contracts of Guarantee

A guarantee is an agreement to pay a debt owed by another that creates a secondary liability and thus is collateral to the contractual obligation, Midland Steel Warehouse Corp. v Godinger Silver Art Ltd., 276 AD2d 341, 714 NYS2d 466 (1st Dept 2000); Shire Realty Corp. v Schorr, 55 AD2d 356, 390 NYS2d 622 (2d Dept 1977); see Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v Navarro, 25 NY3d 485, 15 NYS3d 277, 36 NE3d 80 (2015). Where a guaranty is drawn in broad language, as where it guarantees the payment of all sums due under the terms of a promissory note, the guarantor is liable, upon the obligor's default, to the same extent as the obligor, Desiderio v Devani, 24 AD3d 495, 806 NYS2d 240 (2d Dept 2005) (guarantor liable for attorney's fees and costs pursuant to terms of promissory note). A guarantor's liability may also exceed the scope of the principal's liability, Royal Equities Operating, LLC v Rubin, 150 AD3d 617, 56 NYS3d 283 (1st Dept 2017); Hyman v Golio, 134 AD3d 992, 24 NYS3d 84 (2d Dept 2015); International Plaza Associates, L.P. v Lacher, 104 AD3d 578, 961 NYS2d 427 (1st Dept 2013); see Raven Elevator Corp. v Finkelstein, 223 AD2d 378, 636 NYS2d 292 (1st Dept 1996). A guaranty is interpreted in the strictest manner, White Rose Food v Saleh, 99 NY2d 589, 758 NYS2d 253, 788 NE2d 602 (2003); Lo-Ho LLC v Batista, 62 AD3d 558, 881 NYS2d 33 (1st Dept 2009); Arlona Ltd. Partnership v The 8th of January Corp., 50 AD3d 933, 857 NYS2d 208 (2d Dept 2008); Davimos v Halle, 35 AD3d 270, 826 NYS2d 61 (1st Dept 2006).

A guarantor is not liable until there is a default by the principal obligor, General Phoenix Corporation v Cabot, 300 NY 87, 89 NE2d 238 (1949); Madison Ave. Leasehold, LLC v Madison Bentley Associates LLC, 30 AD3d 1, 811 NYS2d 47 (1st Dept 2006), aff'd, 8 NY3d 59, 828 NYS2d 254, 861 NE2d 69 (2006); see Overseas Private Investment Corp. v Kim, 69 AD3d 1185, 895 NYS2d 217 (3d Dept 2010). However, an action against a guarantor of payment (as opposed to a guarantor of collection) brought before all efforts to collect from the principal obligor have failed is not premature, General Phoenix Corporation v Cabot, supra. A claim against a guarantor for breach of the guarantee falls with the rejection of the breach-of-contract claim against the principal obligor, Ashwood Capital, Inc. v OTG Management, Inc., 99 AD3d 1, 948 NYS2d 292 (1st Dept 2012). If a continuing guaranty contains an expiration date and does not express a contrary intention, the guarantor is liable for obligations that are triggered prior to such expiration date, Louis Dreyfus Energy Corp. v MG Refining and Marketing, Inc., 2 NY3d 495, 780 NYS2d 110, 812 NE2d 936 (2004).

Ordinarily, a guarantor remains liable for the unrecovered amount despite the discharge of the principal's obligation in bankruptcy, Union Trust Co. of Rochester v Willsea, 275 NY 164, 9 NE2d 820 (1937); Culver v Parsons, 7 AD3d 931, 777 NYS2d 536 (3d Dept 2004); First Nat. Bank of Highland v Burley, 162 AD2d 910, 558 NYS2d 250 (3d Dept 1990). In contrast, in cases of guarantees of rent payments where the tenant defaults, the landlord may not recover rent from the guarantor after the issuance of a warrant of eviction, which terminates the landlord-tenant relationship, Centre Great Neck, LLC v Rite Aid Corp., 292 AD2d 484, 739 NYS2d 420 (2d Dept 2002) (distinguishing rent from liquidated damages). A guarantor who is sued alone by the creditor may not assert an independent cause of action existing in favor of the principal as a defense or counterclaim, but may assert a partial or full failure of consideration in the transaction between the principal obligor and the creditor, Walcutt v Clevite Corp., 13 NY2d 48, 241 NYS2d 834, 191 NE2d 894 (1963); Culver v Parsons, supra. However, failure of consideration is not a defense when the guarantee is unconditional and contains a waiver of defenses, Plaza Tower LLC v Ruth's Hospitality Group, Inc., supra; Harrison Court Associates v 220 Westchester Ave. Associates, 203 AD2d 244, 609 NYS2d 653 (2d Dept 1994). A guarantor may assert the defense of fraud in the inducement of the principal's contract once the principal seeks rescission based upon allegations of fraud, as the claims are not inconsistent, Taylor & Jennings, Inc. v Bellino Bros. Const. Co., Inc., 57 AD2d 42, 393 NYS2d 203 (3d Dept 1977); see Culver v Parsons, supra.

One who provides a bond to guarantee performance of another's contractual obligation is not, by implication, a party to the underlying transaction and does not, without more, subject itself to claims or defenses otherwise available against the principal obligee, National Union Fire Ins. Co. of Pittsburgh, Pa. v Robert Christopher Associates, 257 AD2d 1, 691 NYS2d 35 (1st Dept 1999) (defendant's fraud claims against sponsor of real estate partnership not available as a defense against guarantee of defendant's promissory notes in guarantor's suit for indemnification).

A guarantor who has paid more than his or her proportionate share of a common liability is entitled to contribution from any co-guarantors, Kristiansen v Kristiansen, 280 AD2d 584, 720 NYS2d 553 (2d Dept 2001). However, an inequality of benefits among co-obligors may defeat equality of contribution among them, Leo v Levi, 304 AD2d 621, 759 NYS2d 94 (2d Dept 2003). Further, a party who signs a guarantee as a mere accommodation to another, while liable to the principal, may not be held liable to the party accommodated, Kristiansen v Kristiansen, supra; see NY UCC § 3-415.

The creditor and the principal debtor may not alter the guarantor's obligation without the guarantor's consent, White Rose Food v Saleh, 99 NY2d 589, 758 NYS2d 253, 788 NE2d 602 (2003); Bier Pension Plan Trust v Estate of Schneierson, 74 NY2d 312, 546 NYS2d 824, 545 NE2d 1212 (1989); Lo-Ho LLC v Batista, 62 AD3d 558, 881 NYS2d 33 (1st Dept 2009); see Corless v Leonardo II, 298 AD2d 693, 748 NYS2d 620 (3d Dept 2002) (corporation's confession of judgment on debt did not alter obligation guaranteed by defendants and therefore did not bar creditor from recovering against individual guarantors); see also Oppenheimer AMT-Free Municipals v ACA Financial Guar. Corp., 110 AD3d 280, 971 NYS2d 95 (1st Dept 2013) (defense that guarantor's obligation was altered may not be invoked by bond insurer to avoid paying for risk it undertook to insure); Boulevard Mall, L.L.C. v Knight, 300 AD2d 1017, 755 NYS2d 133 (4th Dept 2002) (guarantor not relieved of his obligations when guaranty expressly allows for changes in terms of the guaranty and waives notice as to those changes). Nor may the parties make any alteration to the contract to which the guarantee applies that indirectly operates to modify the extent of the guarantee, see Midland Steel Warehouse Corp. v Godinger Silver Art Ltd., 276 AD2d 341, 714 NYS2d 466 (1st Dept 2000). If they do so, the guarantee's obligation is discharged, id. An extension of time constitutes a modification, requiring the consent of the guarantor, White Rose Food v Saleh, supra. However, a decision to treat a note with a specified due date as a demand note does not require the consent of the guarantors, where the note expressly

authorized its conversion to a demand note, Pomaro v Quality Sheet Metal, Inc., 295 AD2d 416, 743 NYS2d 556 (2d Dept 2002).

Where a guarantee is absolute and unconditional and not dischargeable or affected by any circumstance that may constitute a legal or equitable discharge, a counterclaim that is not inextricably intertwined with or inseparable from the claim on the guarantee cannot serve as a setoff, European American Bank v Surgical Consultants, P.C., 308 AD2d 419, 764 NYS2d 693 (1st Dept 2003); Banco Do Estado De Sao Paulo, S.A. v Mendes Jr. Intern. Co., 249 AD2d 137, 672 NYS2d 28 (1st Dept 1998).

Guarantees that contain language obligating the guarantor to payment without recourse to any defenses or counterclaims, i.e., guarantees that are absolute and unconditional, *i.e.*, without recourse to any defenses or counterclaims, are consistently upheld by the courts, Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v Navarro, 25 NY3d 485, 15 NYS3d 277, 36 NE3d 80 (2015); Citibank, N.A. v Plapinger, 66 NY2d 90, 495 NYS2d 309, 485 NE2d 974 (1985); Chemical Bank v Sepler, 60 NY2d 289, 469 NYS2d 609, 457 NE2d 714 (1983); Federal Deposit Ins. Corp. v Schwartz, 78 AD2d 867, 432 NYS2d 899 (2d Dept 1980), aff'd, 55 NY2d 702, 447 NYS2d 136, 431 NE2d 621 (1981); Hyman v Golio, 134 AD3d 992, 24 NYS3d 84 (2d Dept 2015); see Greene v Chalifoux, 127 AD3d 1316, 6 NYS3d 763 (3d Dept 2015) (guarantor may expressly waive rights and defenses that principal could assert). While a guarantee may obligate the guarantor to make payment without recourse to defenses afforded the principal, they cannot waive the defenses of the principal on the principal's behalf, Greene v Chalifoux, supra. Where a guarantee is absolute and unconditional, the guarantor is precluded from invoking the primary obligor's defenses to the underlying debt, American Trading Co., Inc. v Fish, 42 NY2d 20, 396 NYS2d 617, 364 NE2d 1309 (1977) (statute of limitations); Plaza Tower LLC v Ruth's Hospitality Group, Inc., 126 AD3d 579, 3 NYS3d 584 (1st Dept 2015) (overcharge); Gannett Co., Inc. v Tesler, 177 AD2d 353, 577 NYS2d 248 (1st Dept 1991) (discharge and release). Such guarantees also preclude defenses that would otherwise belong to the guarantor alone, such as fraudulent inducement in the execution of the guarantee, Citibank, N.A. v Plapinger, supra, and collusion in the creation of the guarantor's obligation, Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v Navarro, supra (alleged collusion in obtaining default judgment; court found collusion defense "meritless"). However, it should be noted that in Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v Navarro, supra, Court of Appeals stated that Canterbury Realty and Equipment Corp. v Poughkeepsie Sav. Bank, 135 AD2d 102, 524 NYS2d 531 (3d Dept 1988), held that an unconditional and absolute guarantee does not foreclose a guarantor from claiming that a creditor's wrongful post-execution conduct triggered the event that accelerated or caused the guarantor's liability.

### R. Performance/Surety Bonds

A performance bond is a bond that guarantees against breach of contract, Cataract Disposal, Inc. v Town Bd. of Newfane, 53 NY2d 266, 440 NYS2d 913, 423 NE2d 390 (1981) (cash deposit and suitable indemnification agreement satisfied requirement of obtaining performance bond), and does not necessarily require the involvement of a third party surety. The purpose of a performance bond is to ensure that a contract will be completed consistent with its terms, id; U.W. Marx, Inc. v Mountbatten Sur. Co., Inc., 3 AD3d 688, 770 NYS2d 777 (3d Dept 2004). A surety bond attaches to the principal contract and must be construed in conjunction with it, id; Carrols Equities Corp. v Villnave, 57 AD2d 1044, 395 NYS2d 800 (4th Dept 1977). A surety bond is to be interpreted liberally, with all ambiguities resolved in favor of the beneficiary, Rich v North American Specialty Ins. Co., 26 AD3d 237, 809 NYS2d 68 (1st Dept 2006) (non-resident entitled to recover on game of chance surety bond).

Where the obligee on a surety bond materially alters the terms of the underlying contract and thereby increases the risks imposed on the surety, the surety may be discharged, Mount Vernon City School Dist. v Nova Cas. Co., 19 NY3d 28, 945 NYS2d 202, 968 NE2d 439 (2012). Examples of such material alterations are making premature payments or overpayments and acts that modify the duties of the principal or extend the time for the principal's performance, id. Early New York cases held that the surety is discharged by any alteration, regardless of whether it was material or operated to the surety's detriment, Page v Krekey, 137 NY 307, 33 NE 311 (1893). However, that principle has not been extended to compensated sureties in the context of construction contracts, Mount Vernon City School Dist. v Nova Cas. Co., supra. In those situations, the surety is not discharged unless it shows that it has been so prejudiced by the obligee's act that its obligation is impaired, id.

A surety may become subrogated to the rights of the beneficiaries of a trust created pursuant to Article 3-A of the Lien Law and may challenge wrongful diversions, RLI Ins. Co. v New York State Dept. of Labor, 97 NY2d 256, 740 NYS2d 272, 766

NE2d 934 (2002). However, the right of subrogation is not available to a surety that has not performed by funding completion of the construction work after the principal's default as required by the performance bond, Mount Vernon City School Dist. v Nova Cas. Co., 19 NY3d 28, 945 NYS2d 202, 968 NE2d 439 (2012).

## S. Attorneys' Fees Agreements

Under the general rule, attorneys' fees and disbursements are incidents of litigation and the prevailing party may not collect them from the losing party unless an award is authorized by agreement between the parties or by statute or court rule, Hooper Associates, Ltd. v AGS Computers, Inc., 74 NY2d 487, 549 NYS2d 365, 548 NE2d 903 (1989); A.G. Ship Maintenance Corp. v Lezak, 69 NY2d 1, 511 NYS2d 216, 503 NE2d 681 (1986); see Mount Vernon City School Dist. v Nova Cas. Co., 19 NY3d 28, 945 NYS2d 202, 968 NE2d 439 (2012). In general, the courts have held that a "prevailing" or "successful" party is one in whose favor a net judgment was entered or one who prevailed with respect to the central relief sought, Wiederhorn v Merkin, 98 AD3d 859, 952 NYS2d 478 (1st Dept 2012).

A provision in an agreement allowing the recovery of attorneys' fees as incidents of litigation must be unmistakably clear, Hooper Associates, Ltd. v AGS Computers, Inc., supra, and should be strictly construed, GMS Batching, Inc. v TADCO Const. Corp., 120 AD3d 549, 992 NYS2d 264 (2d Dept 2014); 214 Wall Street Associates, LLC v Medical Arts-Huntington Realty, 99 AD3d 988, 953 NYS2d 124 (2d Dept 2012); Horwitz v 1025 Fifth Ave. Inc., 34 AD3d 248, 825 NYS2d 5 (1st Dept 2006); see Gottlieb v Such, 293 AD2d 267, 740 NYS2d 44 (1st Dept 2002). Thus, even where the parties' agreement provides for recovery of litigation expenses, including attorneys' fees, the prevailing party's post-trial expenses, including costs incurred in correcting the trial abstract, entering judgment, enforcing the judgment and making the initial fee motion are not recoverable absent contractual language clearly permitting such recovery, 214 Wall Street Associates, LLC v Medical Arts-Huntington Realty, supra.

An agreement was deemed sufficiently specific to permit an award of attorneys' fees in arbitration where the agreement contained an express provision for an award of attorneys' fees in the event that petitioner prevailed in "any litigation between the parties" and further provided for arbitration at a specific arbitral forum pursuant to the forum's rules, where those rules permitted the arbitrator to award attorneys' fees, Matter of New York Merchants Protective Co., Inc. v RW Adart Poly, 108 AD3d 554, 968 NYS2d 552 (2d Dept 2013).

"Fee on fee" claims are not precluded in all cases, but a contractual authorization to recover such fees must be unmistakably clear, 546-552 West 146th Street LLC v Arfa, 99 AD3d 117, 950 NYS2d 24 (1st Dept 2012). Thus, a clause in a limited liability company's operating agreement that provided for the indemnification of each manager "from and against all claims and demands to the maximum extent permitted under the [New York Limited Liability Law § 420]" did not permit recovery of "fees on fees" even though the cited statute permits limited liability companies to indemnify managers "against any and all claims and demands whatsoever," 546-552 West 146th Street LLC v Arfa, supra (indicating disagreement with Delaware law to the extent it is inconsistent).

Where a contract provides for an award of attorneys' fees, there is no right to a jury trial on the reasonableness of such fees, Paramount Communications Inc. v Horsehead Industries, Inc., 287 AD2d 345, 731 NYS2d 433 (1st Dept 2001) (distinguishing actions by attorney against client).

## T. Escrow Agreements

In general, escrow agreements provide for the subject matter and delivery of funds to a depositary, conditioned on the performance of some act or occurrence of some event, and relinquishment by the grantor or depositor, Mortgage Electronic Registration Systems, Inc. v Maniscalco, 46 AD3d 1279, 848 NYS2d 766 (3d Dept 2007); Rock Oak Estates v Katahdin Corp., 280 AD2d 960, 721 NYS2d 208 (4th Dept 2001); Lennar Northeast Partners Ltd. Partnership v Gifaldi, 258 AD2d 240, 695 NYS2d 448 (4th Dept 1999). The mere use of the word escrow does not suffice to create an escrow agreement, Farago v Burke, 262 NY 229, 186 NE 683 (1933); Lennar Northeast Partners Ltd. Partnership v Gifaldi, supra. No escrow account was established where an account was created by a purchaser and its lender to benefit the lender and secure its interest in a loan, Rock Oak Estates v Katahdin Corp., supra.

## U. Indemnification Agreements

A contract to provide indemnity to a party for its own negligence must evince an unmistakable intent to indemnify, Great Northern Ins. Co. v Interior Const. Corp., 7 NY3d 412, 823 NYS2d 765, 857 NE2d 60 (2006); Levine v Shell Oil Co., 28 NY2d 205, 321 NYS2d 81, 269 NE2d 799 (1971). The ability of certain entities to obtain indemnity for their own negligence is circumscribed by statute, § 5-322 (caterers and catering establishments), § 5-322.1 (owners and contractors), § 5-323 (building service and maintenance contractors), § 5-324 (architects, engineers an surveyor), § 5-325 (garages and parking lots), § 5-326 (pools, gymnasiums, places of public amusement or recreation), UCC § 7-204 (warehouses). For a discussion of the application of GOL § 5-321, see Great Northern Ins. Co. v Interior Const. Corp., 7 NY3d 412, 823 NYS2d 765, 857 NE2d 60 (2006). For a discussion of the application of GOL § 5-322.1, see Comment to PJI 2:275; see also Comment to PJI 4:93.

Where an agreement provides that a contracting party will indemnify certain identified third-party beneficiaries, a boilerplate "no third-party beneficiary" clause will not preclude identified third-party beneficiaries from seeking indemnification from the contracting party, Diamond Castle Partners IV PRC, L.P. v IAC/InterActiveCorp, 82 AD3d 421, 918 NYS2d 73 (1st Dept 2011) (disagreeing with Control Data Systems, Inc. v Computer Power Group, Ltd., 1998 WL 178775 (SDNY 1998) insofar as it is inconsistent).

Where a surety agreement requires the insured party to indemnify the surety for all payments made in good faith "under the belief that it is or was liable" for the amount paid, the surety is entitled to indemnification so long as it acted in good faith and the amount paid was reasonable, Maryland Casualty Co. v Grace, 292 NY 194, 54 NE2d 362 (1944); North American Specialty Ins. Co. v Schuler, 291 AD2d 924, 737 NYS2d 741 (4th Dept 2002); Peerless Ins. Co. v Talia Const. Co., Inc., 272 AD2d 919, 708 NYS2d 223 (4th Dept 2000). This rule applies regardless of whether the principal was actually in default or was liable under its contract with the obligee, Lee v T.F. DeMilo Corp., 29 AD3d 867, 815 NYS2d 700 (2d Dept 2006); Frontier Ins. Co. v Renewal Arts Contracting Corp., 12 AD3d 891, 784 NYS2d 698 (3d Dept 2004).

## V. Letters of Credit

Letters of credit are commercial instruments that provide a seller or lender with a guaranteed means of payment from a creditworthy third party in lieu of relying solely on the financial status of a buyer or borrower, Nissho Iwai Europe PLC v Korea First Bank, 99 NY2d 115, 752 NYS2d 259, 782 NE2d 55 (2002); see BasicNet S.p.A. v CFP Services Ltd., 127 AD3d 157, 4 NYS3d 27 (1st Dept 2015); UCC art 5. A "commercial" letter of credit substitutes as the primary means of credit whereas a "standby" letter of credit is used secondarily after the beneficiary fails to obtain payment from the applicant, Nissho Iwai Europe PLC v Korea First Bank, supra. A commercial letter of credit transaction involves three separate contractual relationships and undertakings: first, the underlying contract for the purchase and sale of goods between the customer and the beneficiary; second, the agreement between the issuer, customarily a bank but frequently some other institution or person, and its customer in which the issuer typically agrees to issue the letter of credit in return for its customer's promise to reimburse it for any payments made under the credit plus a commission; and third, the letter of credit itself which is an engagement by the bank or other issuer that it will honor drafts or other demands for payment presented by the beneficiary or a transferee beneficiary upon compliance with the terms and conditions specified in the credit, First Commercial Bank v Gotham Originals, Inc., 64 NY2d 287, 486 NYS2d 715, 475 NE2d 1255 (1985). Letters of credit must be strictly construed and performed in compliance with their stated terms, Nissho Iwai Europe PLC v Korea First Bank, 99 NY2d 115, 752 NYS2d 259, 782 NE2d 55 (2002); J.P. Doumak, Inc. v Westgate Financial Corp., 4 AD3d 62, 776 NYS2d 1 (1st Dept 2004). In order to recover on its claim that the issuer wrongfully refused to honor a request to draw down on a letter of credit, the beneficiary must prove that it strictly complied with the terms of the letter of credit, BasicNet S.p.A. v CFP Services Ltd., supra; see United Commodities-Greece v Fidelity Intern. Bank, 64 NY2d 449, 489 NYS2d 31, 478 NE2d 172 (1985). The requirements in letters of credit must be explicit, and all ambiguities are construed against the issuer, BasicNet S.p.A. v CFP Services Ltd., supra. However, the strict compliance standard does not require that the documents presented by the beneficiary be exact in every respect, Ladenburg Thalmann & Co., Inc. v Signature Bank, 128 AD3d 36, 6 NYS3d 33 (1st Dept 2015); BasicNet S.p.A. v CFP Services Ltd., 127 AD3d 157, 4 NYS3d 27 (1st Dept 2015). Non-meaningful discrepancies that do not create a risk of misleading the bank to its detriment are not inconsistent with the rule of strict compliance, Ladenburg Thalmann & Co. v Signature Bank, supra; BasicNet S.p.A. v CFP Services Ltd., supra.

Where a letter of credit is fairly susceptible of two constructions, one of which makes it fair, customary and one which

prudent persons would naturally enter into, while the other makes it inequitable, the former interpretation must be preferred to the latter, and a construction rendering the contract possible of performance will be preferred to one which renders its performance impossible or meaningless, BasicNet S.p.A. v CFP Services Ltd., 127 AD3d 157, 4 NYS3d 27 (1st Dept 2015). To make an issuing bank's payment obligation conditional, the parties must clearly and explicitly set forth that requirement on the face of the letter of credit, Nissho Iwai Europe PLC v Korea First Bank, supra.

Because letters of credit depend upon the certainty of payment to the beneficiary, the issuer's obligation is independent of the rights and liabilities of the parties to the underlying contract; payment must be made irrespective of any allegations of breach of warranty or nonconformity, Nissho Iwai Europe PLC v Korea First Bank, 99 NY2d 115, 752 NYS2d 259, 782 NE2d 55 (2002); First Commercial Bank v Gotham Originals, Inc., 64 NY2d 287, 486 NYS2d 715, 475 NE2d 1255 (1985); BasicNet S.p.A. v CFP Services Ltd., 120 AD3d 97, 988 NYS2d 593 (1st Dept 2014); Banco Nacional De Mexico, S.A. v Societe Generale, 34 AD3d 124, 820 NYS2d 588 (1st Dept 2006); see Blonder & Co., Inc. v Citibank, N.A., 28 AD3d 180, 808 NYS2d 214 (1st Dept 2006) (issuer not required to resolve disputes or questions of fact concerning underlying transaction). UCC 5-109(a) provides a fraud exception under which an issuing bank may refuse to honor documents that appear on their face strictly to comply with the terms and conditions of the letter of credit but are forged or materially fraudulent, or if honor of the presentation would facilitate a material fraud by the beneficiary on the issuer or applicant. However, because the smooth operation of international commerce requires that requests for payment under letters of credit not be routinely obstructed by pre-payment litigation, the fraud exception is a narrow one that is only available on a showing of intentional fraud, BasicNet S.p.A. v CFP Services Ltd., 127 AD3d 157, 4 NYS3d 27 (1st Dept 2015).

Under UCC § 5-116(a), the parties may choose the law to govern the letter of credit, and the law chosen need not bear any relation to the transaction, Banco Nacional De Mexico, S.A. v Societe Generale, 34 AD3d 124, 820 NYS2d 588 (1st Dept 2006).


## W. Options

Option agreements are contracts subject to basic contract interpretation principles, Schron v Troutman Sanders LLP, 20 NY3d 430, 963 NYS2d 613, 986 NE2d 430 (2013). An option contract is an agreement to hold an offer open; it confers upon the optionee, for consideration paid, the right to purchase at a later date, Jarecki v Shung Moo Louie, 95 NY2d 665, 722 NYS2d 784, 745 NE2d 1006 (2001); Kaplan v Lippman, 75 NY2d 320, 552 NYS2d 903, 552 NE2d 151 (1990); see IPE Asset Management, LLC v Fairview Block and Supply Corp., 123 AD3d 883, 999 NYS2d 465 (2d Dept 2014). The offer is irrevocable during the bargained-for option period, see Kotcher v Edelblute, 250 NY 178, 164 NE 897 (1928); Broadwall America, Inc. v Bram Will-El LLC, 32 AD3d 748, 821 NYS2d 190 (1st Dept 2006); see Schron v Troutman Sanders LLP, supra (noting that GOL § 5-1109 has been held applicable to option contacts). Once an optionee gives notice of intent to exercise the option in accordance with the agreement, the unilateral option agreement ripens into a fully enforceable bilateral contract, Jarecki v Shung Moo Louie, 95 NY2d 665, 722 NYS2d 784, 745 NE2d 1006 (2001). That bilateral contract terminates upon the execution of a written contract of sale containing a merger clause, id.

The general rule with respect to an option contract is that the provisions of the contract must be complied with strictly, in the manner and within the time specified, IPE Asset Management, LLC v Fairview Block and Supply Corp., 123 AD3d 883, 999 NYS2d 465 (2d Dept 2014); Kendall v Kendall, 44 AD3d 827, 843 NYS2d 679 (2d Dept 2007); Richmond v Miele, 30 AD3d 575, 817 NYS2d 157 (2d Dept 2006); see LaPonte v Dunn, 17 AD3d 539, 793 NYS2d 493 (2d Dept 2005); Urban Archaeology Ltd. v Dencorp Investments, Inc., 12 AD3d 96, 783 NYS2d 330 (1st Dept 2004). Commencement of litigation over the terms of an option contract does not extend the time to exercise the option, Broadwall America, Inc. v Bram Will-El LLC, 32 AD3d 748, 821 NYS2d 190 (1st Dept 2006).


## X. Right of First Refusal

A right of first refusal, also called a preemptive right, is a right to receive an offer. The grantor's failure or refusal to extend to the holder the opportunity to exercise the right at the specified price before selling the property to another constitutes a breach, Cipriano v Glen Cove Lodge No. 1458, 1 NY3d 53, 769 NYS2d 168, 801 NE2d 388 (2003); see New York Tile Wholesale Corp. v Thomas Fatato Realty Corp., 13 AD3d 425, 787 NYS2d 341 (2d Dept 2004); LIN Broadcasting Corp. v Metromedia, Inc., 74 NY2d 54, 544 NYS2d 316, 542 NE2d 629 (1989); see also Metropolitan Transp. Authority v Bruken

Realty Corp., 67 NY2d 156, 501 NYS2d 306, 492 NE2d 379 (1986); McCormick v Bechtol, 68 AD3d 1376, 891 NYS2d 188 (3d Dept 2009).

The right of first refusal is contingent upon the existence of a valid outstanding contract with a third party, Lin Broadcasting Corp. v Metromedia, Inc., 139 AD2d 124, 531 NYS2d 316 (1st Dept 1988), aff'd, 74 NY2d 54, 544 NYS2d 316, 542 NE2d 629 (1989); Benjamin v Madison Medical Bldg. Condominium Bd. of Managers, 66 AD3d 510, 887 NYS2d 55 (1st Dept 2009), and contemplates a willing seller, Huntington Nat. Bank v Cornelius, 80 AD3d 245, 914 NYS2d 327 (3d Dept 2010). Thus, where the grantor of the right of first refusal withdraws from the contract with the third party before the right holder exercises its right of first refusal, the right holder cannot compel the grantor to comply with the right holder's offer, Lin Broadcasting Corp. v Metromedia, Inc., supra.

Where the contractual right of first refusal was to arise when defendant "offer[ed the property] for sale," the right was not triggered by a judicial foreclosure sale, Huntington Nat. Bank v Cornelius, 80 AD3d 245, 914 NYS2d 327 (3d Dept 2010). The grantor may enter into a contract with a third party for the sale of the subject property, so long as the contract provides that the passage of title is contingent upon a waiver by the holder of the right of first refusal, Cipriano v Glen Cove Lodge No. 1458, 1 NY3d 53, 769 NYS2d 168, 801 NE2d 388 (2003).

A right of first refusal, unlike an option, does not give its holder the power to compel an unwilling owner to sell; it merely requires the owner to first offer the property to the right holder so that the holder may meet a third party offer or buy the property at some other price set by a previously stipulated method, LIN Broadcasting Corp. v Metromedia, Inc., 74 NY2d 54, 544 NYS2d 316, 542 NE2d 629 (1989); M & A Motors, Inc. v Disco Realty, Inc., 24 AD3d 519, 806 NYS2d 244 (2d Dept 2005); see Tuminno v Waite, 110 AD3d 1456, 972 NYS2d 775 (4th Dept 2013). A right of first refusal is triggered where a portion of the property is to be sold, Whiteface Resort Holdings, LLC v McCutchen, 52 AD3d 1106, 860 NYS2d 308 (3d Dept 2008); New York Tile Wholesale Corp. v Thomas Fatato Realty Corp., 13 AD3d 425, 787 NYS2d 341 (2d Dept 2004), although an owner cannot defeat the right by subdividing the property, CR Best Road, LLC v Camps Mogen Avraham, Heller, Sternberg, Inc., 103 AD3d 1075, 960 NYS2d 545 (3d Dept 2013), or offering the property for sale only as part of a larger parcel, CR Best Road, LLC v Camps Mogen Avraham, Heller, Sternberg, Inc., supra; Whiteface Resort Holdings, LLC v McCutchen, supra; South Amherst, Ltd. v H.B. Singer, LLC, 13 AD3d 515, 786 NYS2d 573 (2d Dept 2004). The commencement of a partition action does not trigger a right of first refusal, although the right may arise if a partition sale is directed, see Tuminno v Waite, supra.

Unlike an option, a right of first refusal is not irrevocable and is extinguished when the contract with the third party expires or is abandoned, LIN Broadcasting Corp. v Metromedia, Inc., 74 NY2d 54, 544 NYS2d 316, 542 NE2d 629 (1989); Yudell Trust I v API Westchester Associates, 227 AD2d 471, 643 NYS2d 161 (2d Dept 1996). However, where the right is exercised before the third party contract expires, a binding contract is created which is not affected by the subsequent expiration of the third party contract, Yudell Trust I v API Westchester Associates, supra.

As to a "last right of refusal," see Jeremy's Ale House Also, Inc. v Joselyn Luchnick Irrevocable Trust, 22 AD3d 6, 798 NYS2d 416 (1st Dept 2005).


## Y. Account Stated

An account stated is an agreement between parties to an account based upon prior transactions between them with respect to the correctness of the account items and balance due, Ryan Graphics, Inc. v Bailin, 39 AD3d 249, 833 NYS2d 448 (1st Dept 2007). An account stated assumes the existence of some indebtedness between the parties or an express agreement to treat a statement of debt as an account stated, Gurney, Becker & Bourne, Inc. v Benderson Development Co., Inc., 47 NY2d 995, 420 NYS2d 212, 394 NE2d 282 (1979); Ross v Sherman, 57 AD3d 758, 870 NYS2d 383 (2d Dept 2008); Simplex Grinnell v Ultimate Realty, LLC, 38 AD3d 600, 832 NYS2d 244 (2d Dept 2007). A cause of action alleging an account stated cannot be used as a means of collecting under a disputed contract, Sabre Intern. Sec., Ltd. v Vulcan Capital Management, Inc., 95 AD3d 434, 944 NYS2d 36 (1st Dept 2012); Simplex Grinnell v Ultimate Realty, LLC, supra. An account stated claim may be maintained even where it rests on an invoice that is not itemized, ERE LLP v Spanierman Gallery, LLC, 94 AD3d 492, 942 NYS2d 472 (1st Dept 2012), or where an attorney has failed to comply with an attorney's letter of engagement, Jaffe Ross & Light, LLP v Mann, 121 AD3d 480, 994 NYS2d 587 (1st Dept 2014); 22 NYCRR 1215.1.

An agreement on an account stated may be implied where the defendant has retained bills without objecting to them within a reasonable time or makes partial payment on the account, Citibank (South Dakota), N.A. v Brown-Serulovic, 97 AD3d 522, 948 NYS2d 331 (2d Dept 2012); American Exp. Centurion Bank v Cutler, 81 AD3d 761, 916 NYS2d 622 (2d Dept 2011); see Darby & Darby, P.C. v VSI Intern., Inc., 95 NY2d 308, 716 NYS2d 378, 739 NE2d 744 (2000) (bald self-serving allegation that defendant orally protested invoices insufficient to defeat motion for summary judgment on account-stated claim); Mintz & Gold LLP v Daibes, 125 AD3d 488, 4 NYS3d 170 (1st Dept 2015) (same; belated protest occurring only after action commenced also insufficient); but see Boies, Schiller & Flexner LLP v Modell, 129 AD3d 533, 11 NYS3d 60 (1st Dept 2015) (question of fact as to whether account stated established where evidence of defendant's oral objections sufficiently detailed). However, payment of only a small portion of a large debt (e.g., $300 of a $19,000 debt) will not suffice, Citibank (South Dakota), N.A. v Brown-Serulovic, supra. Moreover, there are instances where accounts will be rendered without reasonable expectation that they will be scrutinized before they are accepted, and, in those instances, mere silence and failure to object cannot be construed as an agreement on the correctness of the accounts, Corr v Hoffman, 256 NY 254, 176 NE 383 (1931) (fiduciary relationship); see Schwerzmann & Wise, P.C. v Hounsfield, 126 AD3d 1483, 6 NYS3d 884 (4th Dept 2015). An account stated claim may not be used as a means of collecting under a disputed contract, Aquatic Pool & Spa Services, Inc. v WN Weaver Street, LLC, 129 AD3d 872, 13 NYS3d 120 (2d Dept 2015). The existence of unfulfilled contractual conditions precedent to defendant's payment obligation negates any inference of an implied agreement, precluding the existence of an account stated, Sabre Intern. Sec., Ltd. v Vulcan Capital Management, Inc., 95 AD3d 434, 944 NYS2d 36 (1st Dept 2012). Thus, issues of fact on whether the parties had a binding oral contract and whether there was an agreement on a contingent fee arrangement may preclude summary judgment on an account-stated theory, id.

The statute of limitations for an action based on an account stated is six years, Stewart v Stuart, 262 AD2d 396, 690 NYS2d 745 (2d Dept 1999); see CPLR 213(2). The time for commencing the action begins to run when final services have been rendered, id; see Kyer v Ravena Coeymans-Selkirk Cent. School Dist., 144 AD3d 1260, 41 NYS3d 584 (3d Dept 2016) (account stated cause of action accrues on date of last transaction in account); Elie Intern., Inc. v Macy's West Inc., 106 AD3d 442, 965 NYS2d 52 (1st Dept 2013) (same).

## Z. Implied Covenant of Good Faith and Fair Dealing

Within every contract is an implied covenant of good faith and fair dealing, 511 West 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 746 NYS2d 131, 773 NE2d 496 (2002); Dalton v Educational Testing Service, 87 NY2d 384, 639 NYS2d 977, 663 NE2d 289 (1995); Lonner v Simon Property Group, Inc., 57 AD3d 100, 866 NYS2d 239 (2d Dept 2008); see Van Valkenburgh, Nooger & Neville, Inc. v Hayden Pub. Co., 30 NY2d 34, 330 NYS2d 329, 281 NE2d 142 (1972); see Rowe v Great Atlantic & Pac. Tea Co., Inc., 46 NY2d 62, 412 NYS2d 827, 385 NE2d 566 (1978). The implied covenant embraces a pledge that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, 511 West 232nd Owners Corp. v Jennifer Realty Co., supra; 6243 Jericho Realty Corp. v AutoZone, Inc., 71 AD3d 983, 898 NYS2d 171 (2d Dept 2010); see Moran v Erk, 11 NY3d 452, 872 NYS2d 696, 901 NE2d 187 (2008); Ahmed Elkoulily, M.D., P.C. v New York State Catholic Healthplan, Inc., 153 AD3d 768, 61 NYS3d 83 (2d Dept 2017). A breach of the covenant is a breach of the agreement or contract itself, Boscorale Operating, LLC. v Nautica Apparel, Inc., 298 AD2d 330, 749 NYS2d 233 (1st Dept 2002). A merger clause does not prevent a court from inferring a covenant of good faith and fair dealing, SNS Bank, N.V. v Citibank, N.A., 7 AD3d 352, 777 NYS2d 62 (1st Dept 2004).

The covenant encompasses any promises that a reasonable person in the position of the promisee would be justified in understanding were included, 511 West 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 746 NYS2d 131, 773 NE2d 496 (2002); Ochal v Television Technology Corp., 26 AD3d 575, 809 NYS2d 604 (3d Dept 2006). However, the obligations imposed by an implied covenant of good faith and fair dealing are limited to obligations in aid and furtherance of the explicit terms of the parties' agreement, Trump on Ocean, LLC v State, 79 AD3d 1325, 913 NYS2d 792 (3d Dept 2010). The covenant cannot be construed so broadly as to nullify the express terms of a contract, or to create independent contractual rights, Phoenix Capital Investments LLC v Ellington Management Group, L.L.C., 51 AD3d 549, 859 NYS2d 46 (1st Dept 2008); 767 Third Ave. LLC v Greble & Finger, LLP, 8 AD3d 75, 778 NYS2d 157 (1st Dept 2004); SNS Bank, N.V. v Citibank, N.A., 7 AD3d 352, 777 NYS2d 62 (1st Dept 2004); Fesseha v TD Waterhouse Investor Services, Inc., 305 AD2d 268, 761 NYS2d 22 (1st Dept 2003); see Transit Funding Associates, LLC v Capital One EquipmentFinance Corp., 149 AD3d 23, 48 NYS3d 110 (1st Dept 2017). A claim for breach of the duty of good faith cannot be used as a substitute for a non-sustainable breach of contract claim, Skillgames, LLC v Brody, 1 AD3d 247, 767 NYS2d 418 (1st Dept 2003); see Vista

Food Exchange, Inc. v BenefitMall, 138 AD3d 535, 31 NYS3d 9 (1st Dept 2016). However, where the contract permits a party to terminate in its "sole discretion" and "for any reason," the implied covenant of good faith and fair dealing does not negate the discretionary right provided by that provision, Transit Funding Associates, LLC v Capital One EquipmentFinance Corp., supra; ELBT Realty, LLC v Mineola Garden City Co., Ltd., 144 AD3d 1083, 42 NYS3d 304 (2d Dept 2016). Even where a party acts out of an intent to put the other party out of business, the implied covenant of good faith and fair dealing cannot support a cause of action against that party if the action taken was permitted by the express terms of the contract, Transit Funding Associates, LLC v Capital One Equipment Finance Corp., supra.

The covenant of good faith and fair dealing is breached when a party acts in a manner that deprives the other party of the benefits of the agreement, 511 West 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 746 NYS2d 131, 773 NE2d 496 (2002); Ahmed Elkoulily, M.D., P.C. v New York State Catholic Healthplan, Inc., 153 AD3d 768, 61 NYS3d 83 (2d Dept 2017); Sorenson v Bridge Capital Corp., 52 AD3d 265, 861 NYS2d 280 (1st Dept 2008); Aventine Inv. Management, Inc. v Canadian Imperial Bank of Commerce, 265 AD2d 513, 697 NYS2d 128 (2d Dept 1999). Where the contract contemplates the exercise of discretion, the implied covenant includes a promise not to act arbitrarily, irrationally or in bad faith in exercising that discretion, Dalton v Educational Testing Service, 87 NY2d 384, 639 NYS2d 977, 663 NE2d 289 (1995); Ahmed Elkoulily, M.D., P.C. v New York State Catholic Healthplan, Inc., supra; Peacock v Herald Square Loft Corp., 67 AD3d 442, 889 NYS2d 22 (1st Dept 2009); Goldman v Simon Property Group, Inc., 58 AD3d 208, 869 NYS2d 125 (2d Dept 2008); Hirsch v Food Resources, Inc., 24 AD3d 293, 808 NYS2d 618 (1st Dept 2005) (covenant breached by exercise of discretion that frustrates basic purpose of agreement and deprives plaintiffs of its benefits); Richbell Information Services, Inc. v Jupiter Partners, L.P., 309 AD2d 288, 765 NYS2d 575 (1st Dept 2003).

A cause of action for breach of the implied covenant requires a contractual obligation between plaintiff and defendant, Duration Mun. Fund, L.P. v J.P. Morgan Securities, Inc., 77 AD3d 474, 908 NYS2d 684 (1st Dept 2010). However, a claim for damages for breach of the implied covenant of good faith and fair dealing may not be maintained where the claimed breach is "intrinsically tied to the damages allegedly resulting from a breach of the contract," Deer Park Enterprises, LLC v Ail Systems, Inc., 57 AD3d 711, 870 NYS2d 89 (2d Dept 2008); Canstar v J.A. Jones Const. Co., 212 AD2d 452, 622 NYS2d 730 (1st Dept 1995). Nonetheless, there are cases where claims for breach of contract and breach of the implied covenant may both be pleaded, Sims v First Consumers Nat. Bank, 303 AD2d 288, 758 NYS2d 284 (1st Dept 2003); see Richmond Shop Smart, Inc. v Kenbar Development Center, LLC, 32 AD3d 423, 820 NYS2d 124 (2d Dept 2006).

To establish a breach of the implied covenant, plaintiff must allege facts that tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff, Aventine Inv. Management, Inc. v Canadian Imperial Bank of Commerce, 265 AD2d 513, 697 NYS2d 128 (2d Dept 1999); see Jaffe v Paramount Communications Inc., 222 AD2d 17, 644 NYS2d 43 (1st Dept 1996). For some examples, see 511 West 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 746 NYS2d 131, 773 NE2d 496 (2002) (cooperative conversion sponsor rejected offers from prospective buyers and allowed its offering plan to lapse, despite offering plan contemplating sale of sufficient number of shares to create viable cooperative); Ahmed Elkoulily, M.D., P.C. v New York State Catholic Healthplan, Inc., 153 AD3d 768, 61 NYS3d 83 (2d Dept 2017) (insurer terminated agreement with health care services provider without justification and by fabricating information to try to justify termination, depriving provider of revenue under agreement); HRH Construction Corp. v Forest Elec. Corp., 299 AD2d 282, 750 NYS2d 74 (1st Dept 2002) (failure by party contractually obligated to procure insurance to advise additional insured of coverage obtained so that additional insured could submit timely claim to the insurer); Zuckerwise v Sorceron Inc., 289 AD2d 114, 735 NYS2d 100 (1st Dept 2001) (consultant terminated without cause, depriving her of her sole compensation, i.e., right to purchase shares exercisable in installments tied to specific events); Chemical Bank v Stahl, 272 AD2d 1, 712 NYS2d 452 (1st Dept 2000) (landlord interfered with tenant's ability to meet lease obligation to make repairs); Tapps of Nassau Supermarkets, Inc. v Linden Blvd., L.P., 269 AD3d 306, 704 NYS2d 27 (1st Dept 2000) (sublessor's willful actions causing expiration of its own tenancy, depriving subtenant of its right of occupancy). For an example of a case in which the implied covenant was not breached, see Promo-Pro Ltd. v Lehrer McGovern Bovis, Inc., 306 AD3d 221, 761 NYS2d 655 (1st Dept 2003) (public entity that engaged contractor for construction project not required to safeguard construction manager's right to contractual indemnification from entity).

The Airline Deregulation Act (49 USC § 41701, et seq.) pre-empts a state law claim for breach of the implied covenant of good faith and fair dealing by an air passenger against an air carrier if the claim would have the effect of enlarging the contractual obligations that the parties voluntarily adopted, Northwest, Inc. v Ginsberg, 134 SCt 1422 (2014).

## AA. Arbitration Agreements

### 1. Agreements Governed by the Federal Arbitration Act

The Federal Arbitration Act (FAA), 9 USC §§ 1-16, governs arbitration provisions "in any maritime transaction or a contract evidencing a transaction involving commerce", 9 USC § 1, and preempts some state law on arbitration agreements. The FAA applies broadly to situations in which the particular economic activity covered by the contract in fact involves interstate commerce, Allied-Bruce Terminix Companies, Inc. v Dobson, 513 US 265, 115 SCt 834 (1995); Cusimano v Schnurr, 26 NY3d 391, 23 NYS3d 137, 44 NE3d 212 (2015). There is no exception to this principle for intra-family transactions involving ownership of passive entities, Cusimano v Schnurr, supra.

Under the FAA, arbitration clauses contained in contracts are valid, irrevocable and enforceable except upon such grounds as exist at law or in equity for the revocation of any contract. The FAA preempts state law on the subject of the enforceability of arbitration agreements, Fletcher v Kidder, Peabody & Co., Inc., 81 NY2d 623, 601 NYS2d 686, 619 NE2d 998 (1993); Hayes v County Bank, 26 AD3d 465, 811 NYS2d 741 (2d Dept 2006); see 9 USC § 2; see also Schreiber v K-Sea Transp. Corp., 9 NY3d 331, 849 NYS2d 194, 879 NE2d 733 (2007) (agreement to arbitrate Jones Act claim signed by seaman after injury is within FAA's coverage). As a matter of federal substantive law, arbitration provisions are severable from the remainder of the contract, Buckeye Check Cashing, Inc. v Cardegna, 546 US 440, 126 SCt 1204 (2006); Prima Paint Corp. v Flood & Conklin Mfg. Co., 388 US 395, 87 SCt 1801 (1967). The federal substantive rules apply in state as well as federal courts, Buckeye Check Cashing, Inc. v Cardegna, supra. Thus, the FAA preempts state rules regarding the unconscionability of class arbitration waivers in consumer contracts, AT&T Mobility LLC v Concepcion, 563 US 333, 131 SCt 1740, 179 LEd 2d 742 (2011). However, the state's procedural rules are not preempted by the FAA, Hayes v County Bank, supra. The McCarran-Ferguson Act, 15 U.S.C. § 1012(b), which exempts certain state insurance laws from federal preemption, does not preclude application of the FAA where arbitration under the FAA would not "invalidate, impair or supersede" the state law, Monarch Consulting, Inc. v National Union Fire Ins. Co. of Pittsburgh, PA, 26 NY3d 659, 27 NYS3d 97, 47 NE3d 463 (2016).

### 2. Agreements Governed by New York Law

New York has a long and strong public policy favoring arbitration, People ex rel. Cuomo v Coventry First LLC, 13 NY3d 108, 886 NYS2d 671, 915 NE2d 616 (2009); Smith Barney Shearson Inc. v Sacharow, 91 NY2d 39, 666 NYS2d 990, 689 NE2d 884 (1997). Arbitration is a creature of contract and it has long been the policy of New York to interfere as little as possible with the freedom of consenting parties in structuring their arbitration relationships, Brady v Williams Capital Group, L.P., 14 NY3d 459, 902 NYS2d 1, 928 NE2d 383 (2010); Credit Suisse First Boston Corp. v Pitofsky, 4 NY3d 149, 791 NYS2d 489, 824 NE2d 929 (2005). The strong public policy favoring the enforcement of an arbitration agreement, however, may collide with other strong public policies against precluding a party from enforcing his or her statutory rights in an arbitral forum, Brady v Williams Capital Group, L.P., 14 NY3d 459, 902 NYS2d 1, 928 NE2d 383 (2010); see Green Tree Financial Corp.-Alabama v Randolph, 531 US 79, 121 SCt 513 (2000); see Gilmer v Interstate/Johnson Lane Corp., 500 US 20, 111 SCt 1647 (1991). In Brady v Williams Capital Group, L.P., supra, where the issue was arbitration fee sharing, the Court of Appeals held that the issue of a litigant's financial ability is to be resolved on a case-by-case basis and should involve, at a minimum, consideration of the following questions: 1) whether the litigant can pay the arbitration fees and costs; 2) what is the expected cost differential between arbitration and litigation in court; and 3) whether the cost differential is so substantial as to deter the bringing of claims in the arbitral forum.

The obligation to arbitrate depends upon the terms of the arbitration agreement, People ex rel. Cuomo v Coventry First LLC, 13 NY3d 108, 886 NYS2d 671, 915 NE2d 616 (2009). Whether there is a clear, unequivocal and extant agreement to arbitrate is for the court and not the arbitrator to determine, Brady v Williams Capital Group, L.P., 14 NY3d 459, 902 NYS2d 1, 928 NE2d 383 (2010); Fiveco, Inc. v Haber, 11 NY3d 140, 863 NYS2d 391, 893 NE2d 807 (2008); Primex Intern. Corp. v Wal-Mart Stores, Inc., 89 NY2d 594, 657 NYS2d 385, 679 NE2d 624 (1997). However, the court's role is limited to the interpretation and enforcement of the agreement's terms and does not include the rewriting of their contract or the imposition of additional terms, Salvano v Merrill Lynch, Pierce, Fenner & Smith, Inc., 85 NY2d 173, 623 NYS2d 790, 647 NE2d 1298 (1995). A provision in an arbitration agreement requiring that "any controversy … shall be settled by arbitration" in accordance with the rules of the tribunal commits the issues of arbitrability and the timeliness of the claim to the arbitrators,

Smith Barney Shearson Inc. v Sacharow, 91 NY2d 39, 666 NYS2d 990, 689 NE2d 884 (1997); Life Receivables Trust v Goshawk Syndicate 102 at Lloyd's, 66 AD3d 495, 888 NYS2d 458 (1st Dept 2009), aff'd, 14 NY3d 850, 901 NYS2d 133, 927 NE2d 553 (2010).

A court will not require a party to submit to arbitration unless there is evidence of that party's unequivocal intent to arbitrate the relevant dispute and the dispute falls clearly within that class of claims which the parties agreed to refer to arbitration, Brady v Williams Capital Group, L.P., 64 AD3d 127, 878 NYS2d 693 (1st Dept 2009), mod, 14 NY3d 459, 902 NYS2d 1, 928 NE2d 383 (2010); Eiseman Levine Lehrhaupt & Kakoyiannis, P.C. v Torino Jewelers, Ltd., 44 AD3d 581, 844 NYS2d 242 (1st Dept 2007); see Edelman v Poster, 72 AD3d 182, 894 NYS2d 398 (1st Dept 2010); Katz v Alpert, 68 AD3d 640, 891 NYS2d 386 (1st Dept 2009); Shah v Monpat Const., Inc., 65 AD3d 541, 884 NYS2d 116 (2d Dept 2009). Whether a party who would otherwise have had a right to a jury trial knowingly and freely waived that right by entering into an agreement to arbitrate may be a question of fact for the court to decide, Schreiber v K-Sea Transp. Corp., 9 NY3d 331, 849 NYS2d 194, 879 NE2d 733 (2007). The party challenging the enforceability of the arbitration agreement has the burden of proving that the agreement is not valid, id. If an agreement to arbitrate is incorporated by reference, the reference must clearly show an intent to arbitrate, Wonder Works Const. Corp. v R.C. Dolner, Inc., 73 AD3d 511, 901 NYS2d 30 (1st Dept 2010); General Railway Signal Corp. v L.K. Comstock & Co., Inc., 254 AD2d 759, 678 NYS2d 208 (4th Dept 1998).

A broad arbitration provision is separable from the substantive provisions of the contract, Markowits v Friedman, 144 AD3d 993, 42 NYS3d 218 (2d Dept 2016); Anderson Street Realty Corp. v New Rochelle Revitalization, LLC, 78 AD3d 972, 913 NYS2d 114 (2d Dept 2010). Thus, an agreement to arbitrate may be valid even if the substantive provisions were induced by fraud, Markowits v Friedman, supra; Anderson Street Realty Corp. v New Rochelle Revitalization, LLC, supra. A party's claim of fraud affects the validity of an arbitration clause only when the fraud relates to the arbitration clause itself or was part of a grand scheme that permeated the entire contract, Markowits v Friedman, supra; Anderson Street Realty Corp. v New Rochelle Revitalization, LLC, supra. To demonstrate that the contract was permeated with fraud, it must be shown that the agreement was not the result of arms' length negotiation or that the arbitration clause was inserted into the contract to accomplish a fraudulent scheme, Markowits v Friedman, supra; Anderson Street Realty Corp. v New Rochelle Revitalization, LLC, supra.

An arbitration agreement is enforceable even when unsigned where the evidence establishes the parties' clear, explicit and unequivocal agreement to arbitrate, God's Battalion of Prayer Pentecostal Church, Inc. v Miele Associates, LLP, 6 NY3d 371, 812 NYS2d 435, 845 NE2d 1265 (2006); Crawford v Merrill Lynch, Pierce, Fenner & Smith, Inc., 35 NY2d 291, 361 NYS2d 140, 319 NE2d 408 (1974). Further, the obligation to arbitrate need not be mutual, and it is permissible to afford the remedy of arbitration to only one party to an agreement, Sablosky v Edward S. Gordon Co., Inc., 73 NY2d 133, 538 NYS2d 513, 535 NE2d 643 (1989); 1210 Colvin Ave., Inc. v Tops Markets, LLC, 30 AD3d 995, 816 NYS2d 639 (4th Dept 2006).

Generally, nonsignatories are not subject to arbitration agreements. However, under the direct benefits theory of estoppel, a nonsignatory may be compelled to arbitrate where the nonsignatory knowingly exploits the benefits of an agreement containing an arbitration clause, and receives benefits flowing directly from the agreement, Belzberg v Verus Investments Holdings Inc., 21 NY3d 626, 977 NYS2d 685, 999 NE2d 1130 (2013); see HRH Const. LLC v Metropolitan Transp. Authority, 33 AD3d 568, 823 NYS2d 140 (1st Dept 2006). Where the benefits are merely indirect, i.e., the nonsignatory exploits the contractual relation of the parties but not the agreement itself, a nonsignatory cannot be compelled to arbitrate a claim, Belzberg v Verus Investments Holdings Inc., supra. The guiding principle in distinguishing direct from indirect benefits is whether the benefit gained by the nonsignatory is one that can be traced directly to the agreement containing the arbitration clause, id. However, application of this principle to situations in which neither party to the proposed arbitration was a signatory is dubious, Oxbow Calcining USA Inc. v American Indus. Partners, 96 AD3d 646, 948 NYS2d 24 (1st Dept 2012). Even if estoppel could theoretically be applied in that situation, the party seeking to compel arbitration would have to demonstrate that its adversary's claim relies on the terms of the agreement containing the arbitration provision, id.

Where there was an arbitration agreement between the defendant and its alleged victims but the Attorney General of New York did not join the agreement, the Attorney General is not bound by the agreement and may pursue "victim-specific judicial relief" against the defendant in an enforcement action, People ex rel. Cuomo v Coventry First LLC, 13 NY3d 108, 886 NYS2d 671, 915 NE2d 616 (2009).

The general rule under New York law is that, absent a clear manifestation of contrary intent, it is presumed that the parties

intended that the arbitration forum for dispute resolution provided in an agreement will survive termination of the agreement as to subsequent disputes arising under the agreement, regardless of whether cessation of the agreement resulted from the expiration of its term, exercise of a unilateral termination option, or breach, Primex Intern. Corp. v Wal-Mart Stores, Inc., 89 NY2d 594, 657 NYS2d 385, 679 NE2d 624 (1997); Excel Group, Inc. v New York City Transit Authority, 28 AD3d 708, 814 NYS2d 220 (2d Dept 2006). Where some of a group of claims are covered by an arbitration agreement, all of the claims have been asserted in court and the claims subject to arbitration are inextricably bound to the claims that are not subject to arbitration, it is appropriate to litigate the entire group in court, Steigerwald v Dean Witter Reynolds, Inc., 84 AD2d 905, 446 NYS2d 648 (4th Dept 1981), aff'd, 56 NY2d 621, 450 NYS2d 482, 435 NE2d 1097 (1982); Garthon Business Inc. v Stein, 138 AD3d 587, 31 NYS3d 19 (1st Dept 2016). However, even where the parties' conduct subsequent to the expiration of their agreement may be construed to imply an agreement to extend the expired agreement's provisions, such conduct may not, absent a clearly expressed intention to renew the arbitration provision, bind a party to arbitration, Dash & Sons, Inc. v Tops Markets, LLC, 30 AD3d 998, 817 NYS2d 465 (4th Dept 2006); Donnkenny Apparel, Inc. v Lee, 291 AD2d 224, 736 NYS2d 862 (1st Dept 2002).

A party served with a proper demand for arbitration must apply to stay the arbitration within 20 days after service of the demand or it will "be precluded from objecting that a valid agreement was not made or has not been complied with" or that the proceeding is time-barred, CPLR 7503(c); Fiveco, Inc. v Haber, 11 NY3d 140, 863 NYS2d 391, 893 NE2d 807 (2008); but see MetLife Auto & Home v Zampino, 65 AD3d 1151, 886 NYS2d 697 (2d Dept 2009) (declining to enforce 20-day period based upon insured's failure to disclose to insurer settlement reached with tortfeasor, which violated Supplemental Uninsured/Underinsured Motorist endorsement). However, an untimely application to stay arbitration may be made where its basis is that the parties never agreed to arbitrate at all, Fiveco, Inc. v Haber, supra; Matarasso v Continental Cas. Co., 56 NY2d 264, 451 NYS2d 703, 436 NE2d 1305 (1982).

The right to arbitrate, like any contractual right, may be waived, Cusimano v Schnurr, 26 NY3d 391, 23 NYS3d 137, 44 NE3d 212 (2015); Sherrill v Grayco Builders, Inc., 64 NY2d 261, 486 NYS2d 159, 475 NE2d 772 (1985). A party waives its right to arbitrate when it engages in litigation activity clearly inconsistent with its later claim that the parties were obligated to settle their differences by arbitration, Cusimano v Schnurr, supra; Flores v Lower East Side Service Center, Inc., 4 NY3d 363, 795 NYS2d 491, 828 NE2d 593 (2005); Zimmerman v Cohen, 236 NY 15, 139 NE 764 (1923); see Stark v Molod Spitz DeSantis & Stark, P.C., 9 NY3d 59, 845 NYS2d 217, 876 NE2d 903 (2007); Digitronics Inventioneering Corp. v Jameson, 52 AD3d 1099, 860 NYS2d 303 (3d Dept 2008). A party who commences an action generally is assumed to have waived any right to arbitration, De Sapio v Kohlmeyer, 35 NY2d 402, 362 NYS2d 843, 321 NE2d 770 (1974). With respect to the defendant, in the absence of unreasonable delay, so long as the defendant's actions are consistent with an assertion of the right to arbitrate, there is no waiver, Allied Bldg. Inspectors Intern. Union of Operating Engineers, Local Union No. 211, AFL-CIO v Office of Labor Relations of City of New York, 45 NY2d 735, 408 NYS2d 476, 380 NE2d 303 (1978); De Sapio v Kohlmeyer, supra; Estate of Castellone v JP Morgan Chase Bank, N.A., 60 AD3d 621, 875 NYS2d 130 (2d Dept 2009). However, where urgent need to preserve the status quo requires some immediate action that cannot await arbitration proceedings, a defendant's resort to the courts will not result in a waiver of arbitration, Stark v Molod Spitz DeSantis & Stark, P.C., supra. For cases holding that the defendant's litigation conduct did not waive its right to arbitration, see id (defendant's response to plaintiff's order to show cause demonstrated urgent need justifying resort to courts); Haupt v Rose, 265 NY 108, 191 NE 853 (1934) (defendant entered into stipulation to extend time to answer or make motions); Byrnes v Castaldi, 72 AD3d 718, 898 NYS2d 640 (2d Dept 2010) (defendant interposed affirmative defense based upon arbitration clause); Flynn v Labor Ready, Inc., 6 AD3d 492, 775 NYS2d 357 (2d Dept 2004) (defendant filed motion to dismiss complaint and to deny class action certification). For cases holding that the defendant's litigation conduct waived its right to arbitration, see De Sapio v Kohlmeyer, supra (defendant interposed cross claim and deposed plaintiff); Digitronics Inventioneering Corp. v Jameson, supra (plaintiff waived right to arbitration by commencing lawsuit and actively participating in lawsuit for three years before seeking arbitration).

An arbitration award rendered pursuant to a private agreement may be vacated only pursuant to the terms of CPLR 7511. That provision specifies that an award may be vacated where there has been corruption, fraud, or misconduct in procuring the award, the arbitrator exceeded his or her power, or there was a failure to follow procedures set out in CPLR 7511, Henneberry v ING Capital Advisors, LLC, 10 NY3d 278, 857 NYS2d 3, 886 NE2d 764 (2008); Bernstein Family Ltd. Partnership v Sovereign Partners, L.P., 66 AD3d 1, 883 NYS2d 201 (1st Dept 2009) (mootness not a ground for vacating an arbitration award under CPLR 7511). An excess of power occurs only where the arbitrator's award violates a strong public policy, is irrational, or clearly exceeds a specifically enumerated limitation on the arbitrator's power, New York City Transit

Authority v Transport Workers' Union of America, Local 100, AFL-CIO, 6 NY3d 332, 812 NYS2d 413, 845 NE2d 1243 (2005); see McIver-Morgan, Inc. v Dal Piaz, 108 AD3d 47, 964 NYS2d 515 (1st Dept 2013) (discussing public policy ground), aff'd, 22 NY3d 1104, 982 NYS2d 439, 5 NE3d 586 (2014). There was no misconduct where the arbitrator made, then ultimately corrected, a burden of proof ruling while presiding over the hearing, Henneberry v ING Capital Advisors, LLC, supra.

General Business Law § 399-c(2) voids binding arbitration clauses in any written contract for the sale or purchase of consumer goods to which a consumer is a party. It also provides that the inclusion of such a clause in the contract shall not impair the enforceability of any other provision in the contract, § 399-c(2)(b). A house built for consumers to be used as their residence is covered by the statute, which defines consumer goods as "goods, wares, paid merchandise or services purchased or paid for by a consumer, the intended use or benefit of which is intended for the personal, family, or household purposes of such consumer," § 399-c(2)(b); Byrnes v Castaldi, 72 AD3d 718, 898 NYS2d 640 (2d Dept 2010); Ragucci v Professional Const. Services, 25 AD3d 43, 803 NYS2d 139 (2d Dept 2005).

## BB. Forum Selection Clauses

Forum selection clauses contained in contracts are generally valid and enforceable, Bernstein v Wysoki, 77 AD3d 241, 907 NYS2d 49 (2d Dept 2010); Stravalle v Land Cargo, Inc., 39 AD3d 735, 835 NYS2d 606 (2d Dept 2007); see Boss v American Express Financial Advisors, Inc., 6 NY3d 242, 811 NYS2d 620, 844 NE2d 1142 (2006) (forum selection clauses are enforced because they provide certainty and predictability). Such clauses may be enforced through a timely motion for a dismissal, Landmark Ventures, Inc. v Birger, 147 AD3d 497, 48 NYS3d 315 (1st Dept 2017). A request for dismissal based on a contractual forum selection clause should be made through a motion to dismiss pursuant to CPLR 3211(a)(1), Landmark Ventures, Inc. v Birger, supra; Lischinskaya v Carnival Corp., 56 AD3d 116, 865 NYS2d 334 (2d Dept 2008). The parties to a contract may also agree to have their disputes resolved in a particular venue within the jurisdiction of the New York courts. Such contractual venue provisions are enforced through timely motions for a change of venue under Article 5 of the CPLR, see CPLR 511(a); Puleo v Shore View Center for Rehabilitation and Health Care, 132 AD3d 651, 17 NYS3d 501 (2d Dept 2015); Casale v Sheepshead Nursing & Rehabilitation Center, 131 AD3d 436, 13 NYS3d 904 (2d Dept 2015); Medina ex rel. Valentin v Gold Crest Care Center, Inc., 117 AD3d 633, 988 NYS2d 578 (1st Dept 2014). Forum selection clauses affect only the jurisdiction in which disputes are to be litigated; they do not determine which jurisdiction's law is to govern the dispute, Landmark Ventures, Inc. v Birger, supra. Absent contractual language to the contrary, a forum selection clause will be applied to counterclaims as well as a party's claims, Carlyle CIM Agent, L.L.C. v Trey Resources I, LLC, 148 AD3d 562, 50 NYS3d 326 (1st Dept 2017).

Forum selection clauses are enforced unless they are shown by the challenging party to be unreasonable, unjust, in contravention of public policy, invalid due to fraud or overreaching or it is shown that a trial in the selected forum would be so gravely difficult that the challenging party would, for all practical purposes, be deprived of its day in court, Bernstein v Wysoki, 77 AD3d 241, 907 NYS2d 49 (2d Dept 2010). A provision selecting Delaware as the "exclusive" forum was deemed unreasonable where none of the parties was located in or had any connection to Delaware, the agreement was not executed in Delaware and performance was not to take place in Delaware, U.S. Merchandise, Inc. v L & R Distributors, Inc., 122 AD3d 613, 996 NYS2d 83 (2d Dept 2014). In such circumstances, the required "strong showing" that the forum selection clause should be set aside has been made, U.S. Merchandise, Inc. v L & R Distributors, Inc., supra; see Horton v Concerns of Police Survivors, Inc., 62 AD3d 836, 878 NYS2d 793 (2d Dept 2009).

In most situations, forum selection clauses are binding only on the individuals and entities who are parties to the contract, Hluch v Ski Windham Operating Corp., 85 AD3d 861, 925 NYS2d 200 (2d Dept 2011); Bernstein v Wysoki, 77 AD3d 241, 907 NYS2d 49 (2d Dept 2010). However, there are three exceptions to this rule. First, an entity that is a third party beneficiary of the contract may enforce the contract's forum selection clause, Hluch v Ski Windham Operating Corp., supra; Bernstein v Wysoki, supra. Second, entities that are parties to a "global transaction" but are not signatories to a specific agreement within that transaction may benefit from that agreement's forum selection provision if the other documents comprising the "global transaction" were executed at the same time, by the same parties and for the same purpose, Hluch v Ski Windham Operating Corp., supra; Bernstein v Wysoki, supra. Finally, a nonparty that is closely related to one of the signatories can enforce the forum selection clause if it was sufficiently close to the signatory that enforcement of the clause is foreseeable by virtue of the relationship, see Universal Inv. Advisory SA v Bakrie Telecom PTE, Ltd., 154 AD3d 171, 62 NYS3d 1 (1st Dept 2017) (clause enforced against nonparty); Hluch v Ski Windham Operating Corp., supra; Bernstein v

Wysoki, supra. What constitutes a sufficiently close relationship was discussed in Tate & Lyle Ingredients Americas, Inc. v Whitefox Technologies USA, Inc., 98 AD3d 401, 949 NYS2d 375 (1st Dept 2012), in which the court stated that an important consideration is whether the nonparty's enforcement of the forum selection clause is foreseeable by virtue of the relationship between the nonparty and the party sought to be bound, see Universal Inv. Advisory SA v Bakrie Telecom PTE, Ltd, supra; Freeford Ltd. v Pendleton, 53 AD3d 32, 857 NYS2d 62 (1st Dept 2008). That test is satisfied where a parent company's involvement in the transaction was "far more" than that of merely approving the contract, Tate & Lyle Ingredients Americas, Inc. v Whitefox Technologies USA, Inc., supra.

A forum selection clause in a lease remains enforceable even after the termination of the lease, Getty Properties Corp. v Getty Petroleum Marketing Inc., 106 AD3d 429, 966 NYS2d 1 (1st Dept 2013). A forum selection clause that expressly applied to the "legal relationship established by the" parties' agreement was held applicable to a dispute based on the fiduciary duty arising out of that relationship, Garthon Business Inc. v Stein, 138 AD3d 587, 31 NYS3d 19 (1st Dept 2016).

GOL § 5-1402(1) provides for the maintenance of actions in New York by or against nonresidents and foreign corporations where the action involves a transaction for at least $1 million and arises from contract that includes provisions selecting New York as forum for disputes, consenting to personal jurisdiction in New York and designating New York law as controlling. The purpose of the statute is to enhance New York's status as a major financial and commercial center and to avoid uncertainty about contracting parties' ability to effectively to submit to the jurisdiction of the New York courts, Carlyle CIM Agent, L.L.C. v Trey Resources I, LLC, 148 AD3d 562, 50 NYS3d 326 (1st Dept 2017). Under the statute, a New York court may not decline jurisdiction even if the only nexus between the State and the dispute is the contract provisions, id.

## CC. Clauses Consenting to Personal Jurisdiction

Contractual agreements consenting to the exercise of personal jurisdiction by a particular state's courts are enforceable, National Equipment Rental, Limited v Szukhent, 375 US 311, 84 SCt 411 (1964); Creative Resources, Inc. v Rumbellow, 244 AD2d 383, 664 NYS2d 86 (2d Dept 1997); Marcus A. Heyman, Inc., v B.E. Cole Co., 242 App Div 362, 275 NYS 23 (1st Dept 1934). Where a party has consented to submit to the jurisdiction of a court, that party is precluded from raising forum non conveniens as a ground for dismissal, Honeywell Intern. Inc. v ARC Energy Services, Inc., 152 AD3d 444, 55 NYS3d 658 (1st Dept 2017).

## DD. Choice of Law Clauses

New York courts will generally enforce the parties' contractual choice of law, Welsbach Elec. Corp. v MasTec North America, Inc., 7 NY3d 624, 825 NYS2d 692, 859 NE2d 498 (2006); Millennium Falcon Corp. v WRD Sales, Inc., 46 AD3d 862, 848 NYS2d 707 (2d Dept 2007). However, New York courts may decline to enforce choice-of-law provisions if the chosen law does not bear a reasonable relationship to the parties or the transaction or the chosen law violates some fundamental principle of justice, prevalent conception of good morals or deep-rooted tradition, Brown & Brown, Inc. v Johnson, 25 NY3d 364, 12 NYS3d 606, 34 NE3d 357 (2015); Frankel v Citicorp Ins. Services, Inc., 80 AD3d 280, 913 NYS2d 254 (2d Dept 2010); see Welsbach Elec. Corp. v MasTec North America, Inc., supra; Cooney v Osgood Machinery, Inc., 81 NY2d 66, 78, 595 NYS2d 919, 612 NE2d 277 (1993); Loucks v Standard Oil Co. of New York, 224 NY 99, 120 NE 198 (1918). A party seeking to invoke the latter principle must carry the heavy burden of proving that the application of the chosen law would be offensive to a fundamental public policy of New York, Brown & Brown, Inc. v Johnson, supra. In Brown & Brown, Inc. v. Johnson, supra, the Court of Appeals declined to apply a choice-of-law clause where the burden-of-proof and contract interpretation rules of the chosen state's law (i.e., Florida) reflected employer-friendly policies that were contrary to New York's policies, id.

GOL § 5-1401(1) modifies the general rule by providing that the parties to a contract "arising out of a transaction covering in the aggregate not less than two hundred fifty thousand dollars" may agree that New York law will govern their rights "whether or not such contact, agreement or undertaking bears a reasonable relation to this state," see GOL § 5-1402(1) (providing for maintenance of actions by or against nonresidents and foreign corporations in New York courts where action involves transaction for at least $1 million, the parties consent to personal jurisdiction in New York, the action arises from contract that includes provisions selecting New York as forum for disputes and designating New York law as controlling). Where GOL § 5-1401(1) is applicable, New York courts are ordinarily required to apply New York law without regard to

New York's common-law choice-of-law rules, even though the parties' contract choice-of-law provision does not expressly exclude those rules, IRB-Brasil Resseguros, S.A. v Inepar Investments, S.A., 20 NY3d 310, 958 NYS2d 689, 982 NE2d 609 (2012). This principle has been extended to contracts not governed by GOL § 5-1401(1), Ministers and Missionaries Ben. Bd. v Snow, 26 NY3d 466, 25 NYS3d 21, 45 NE3d 917 (2015) (choice-of-law provision designating New York law overrides choice-of-law provisions of EPTL 3-5.1[b][2], which codifies common-law choice-of-law rule).

New York courts generally apply contractual choice-of-law clauses only to substantive issues, Ministers and Missionaries Ben. Bd. v Snow, 26 NY3d 466, 25 NYS3d 21, 45 NE3d 917 (2015); Education Resources Institute, Inc. v Piazza, 17 AD3d 513, 794 NYS2d 65 (2d Dept 2005); see Sears, Roebuck & Co. v Enco Associates, Inc., 43 NY2d 389, 401 NYS2d 767, 372 NE2d 555 (1977); Melcher v Apollo Medical Fund Management L.L.C., 25 AD3d 482, 808 NYS2d 207 (1st Dept 2006). The law of the forum normally determines whether a given question is one of substance or procedure, Tanges v Heidelberg North America, Inc., 93 NY2d 48, 687 NYS2d 604, 710 NE2d 250 (1999). It should be noted that a contractual selection of forum does not determine which jurisdiction's law should apply, Landmark Ventures, Inc. v Birger, 147 AD3d 497, 48 NYS3d 315 (1st Dept 2017).

## EE. Jury Waiver Clauses

Contractual provisions waiving the right to a jury trial are generally enforceable, Uribe v Merchants Bank of New York, 227 AD2d 141, 642 NYS2d 23 (1st Dept 1996); Barclays Bank of New York, N.A. v Heady Elec. Co., Inc., 174 AD2d 963, 571 NYS2d 650 (3d Dept 1991); Fordham University v Manufacturers Hanover Trust Co., 145 AD2d 332, 534 NYS2d 993 (1st Dept 1988). The right to a jury trial may even be waived in an instrument other than the agreement upon which the action is founded, Barclays Bank of New York, N.A. v Heady Elec. Co., supra; Franklin Nat. Bank of Long Island v Capobianco, 25 AD2d 445, 266 NYS2d 961 (2d Dept 1966). However, jury waiver provisions are inapplicable to claims of fraudulent inducement that challenge the validity of the entire underlying agreement, J.P. Morgan Securities Inc. v Ader, 127 AD3d 506, 9 NYS3d 181 (1st Dept 2015); Wells Fargo Bank, Nat. Ass'n v Stargate Films, Inc., 18 AD3d 264, 795 NYS2d 18 (1st Dept 2005). This principle applies wherever the allegations of fraudulent inducement, if proved, would void the agreement, including the jury waiver clause, J.P. Morgan Securities Inc. v Ader, supra. Even where a party alleging fraudulent inducement elects to bring an action for damages rather than seeking rescission of a contract, the party is not necessarily precluded from challenging the validity of the contract for purposes of avoiding the jury waiver clause, J.P. Morgan Securities Inc. v Ader, supra; but see Kimi Jewelers, Inc. v Advance Burglar Alarm Systems, Inc., 161 AD2d 273, 555 NYS2d 51 (1st Dept 1990).

## FF. Novation

"A novation can be raised as a defense to an action on an existing agreement where a new agreement extinguishes any obligations arising from the existing agreement. 'A novation has four elements, each of which must be present to demonstrate a novation: (1) a previously valid obligation; (2) agreement of all parties to a new contract; (3) extinguishment of the old contract; and (4) a valid new contract… . However, if a party breaches an existing contract, there can be no novation because the first element is negated.'" Lambert v Schiller, 156 AD3d 1285, 68 NYS3d 195 (3d Dept 2017).

## GG. Indentures

An indenture is a written agreement that bestows legal title of securities in a single trustee to protect the interests of individual investors who may be numerous or unknown to each other, Cortlandt Street Recovery Corp. v Bonderman, 31 NY3d 30, 73 NYS3d 95, 96 NE3d 191 (2018); Quadrant Structured Products Co., Ltd. v Vertin, 23 NY3d 549, 992 NYS2d 687, 16 NE3d 1165 (2014); NMC Residual Ownership L.L.C. v U.S. Bank Nat. Ass'n, 153 AD3d 284, 60 NYS3d 110 (1st Dept 2017). Unlike an ordinary trustee, who owes common law duties beyond those in a trust agreement, an indenture trustee is more a stakeholder whose duties and obligations are exclusively defined by the terms of the indenture, Cortlandt Street Recovery Corp. v Bonderman, supra; NMC Residual Ownership L.L.C. v U.S. Bank Nat. Ass'n, supra; see Quadrant Structured Products Co., Ltd. v Vertin, supra.

## VIII. Statutory Consumer Protections

The "plain English" law, GOL § 5-702, requires that residential leases or contracts of sale of goods or services for personal, family or household purposes must be: "1. Written in a clear and coherent manner using words with common and everyday meanings; 2. Appropriately divided and captioned by its various sections." The statute does not apply to agreements involving amounts in excess of $50,000. Violation of the statute does not make the agreement void or voidable, nor does a violation constitute a defense to a suit seeking to enforce the agreement or to a suit based on a breach of the agreement. Violation of the statute does open the creditor, seller or lessor who violates the statute to a claim for any actual damages sustained plus $50. "The total class action penalty against any such creditor, seller or lessor shall not exceed" $10,000, GOL § 5-702(a). The good faith of the creditor, seller or lessor is a defense only to a suit seeking to impose penalties, id § 5-702(a)(2).

CPLR 4544 requires that contracts for consumer transactions and residential leases be "clear and legible" and meet specified type size rules. Contracts not satisfying the statutory requirements may not be received in evidence in any trial, hearing or proceeding on behalf of the party who prepared the contract. "Consumer transaction" is defined as "a transaction wherein the money, property or service which is the subject of the transaction is primarily for personal, family or household purposes." The statute's coverage should not be extended beyond its express terms, Drelich v Kenlyn Homes, Inc., 86 AD2d 648, 446 NYS2d 408 (2d Dept 1982) (requirements inapplicable to contract for construction and sale of one-family dwelling). Provisions purporting to waive the requirements of CPLR 4544 are ineffective.

---

Westlaw. © 2018 Unified Court System.

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.