# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| **MIDAMERICA C2L INC., et al.**, | ) |
| | ) |
| Plaintiffs/Counterclaim Defendants, | ) |
| | ) |
| v. | ) Case No. 6:17-CV-171-Orl-40-LRH |
| | ) |
| **SIEMENS ENERGY, INC.**, | ) |
| | ) |
| Defendant/Counter-Claimant. | ) |

### PLAINTIFFS/COUNTERCLAIM DEFENDANTS' RESPONSE IN OPPOSITION TO SIEMENS ENERGY, INC.'S MOTION FOR RECONSIDERATION OF ORDER DENYING IN PART SIEMENS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

Plaintiffs/Counterclaim Defendants Secure Energy, Inc. and MidAmerica C2L, Inc., ("Secure") by and through counsel, submit their response in opposition to Defendant/Counter-Claimant Siemens Energy, Inc.'s ("Siemens'") Motion for Reconsideration of Order Denying in Part Siemens' Summary Judgment and Memorandum of Law in Support (Doc. 217). In support hereof, Secure states to the Court as follows:

The evidence in this case precludes the entry of summary judgment in Siemens' favor on its counterclaim against Secure for breach of contract because Siemens cannot meet all the elements necessary to prove that Secure breached a contract with Siemens. Siemens' argument, that it is entitled to summary judgment on its counterclaim because Secure cannot prove it was ready, willing and able to perform its obligations under the 2012 License and Service Agreement (the "2012 LSA"), is flawed and misplaced. It ignores the one thing about which the parties and the Court agree in this case: that triable issues of material fact exist around the counterclaim such that no reasonable court can say they are uncontroverted (Doc. 208 p. 13; Doc. 149 p. 20 n.18).[1]

---

[1] "Whether or not [Siemens'] repudiation occurred is a triable issue."

Siemens' assertion that Secure cannot show that it was ready, willing and able to perform its obligations under the 2012 LSA has nothing to do with Siemens' entitlement to summary judgment on its counterclaim. To recover, Siemens must prove all the elements necessary to demonstrate that Secure breached the 2012 LSA. Those four elements, under New York law, are: (1) that Siemens had a contract with Secure requiring that Siemens provide coal gasification Technology, including Engineering Services, Improvements, Technical Field Assistance and training; (2) that Siemens did what it was required to do pursuant to that contract; (3) that Secure breached the contract by not doing what they were required to do under the contract; and (4) that Siemens sustained damages as a result of Secure's breach (N.Y. Pattern Jury Instructions - Civil 4:1 (Dec. 2018 update)). The first element, existence of a contract between the parties, is met by the existence of the 2012 LSA, is undisputed (Doc. 218 § IX ¶ 7). However, as Secure sets forth herein, Siemens is unable to present uncontroverted material facts to satisfy the second element, that it performed all its obligations under the 2012 LSA, by a preponderance of the evidence. Therefore, based upon the substantial, uncontroverted evidence before the Court, Siemens cannot demonstrate it is entitled to summary judgment on its counterclaim.

## APPLICABLE LEGAL STANDARDS

There is no Federal Rule of Civil Procedure providing authority for Siemens' Motion for Reconsideration (Doc. 217). When evaluating a motion to reconsider, a court should proceed cautiously, realizing that in the interests of finality and conservation of scarce judicial resources, reconsideration of a previous order is an extraordinary remedy to be employed sparingly. *McGuire v. Ryland Grp., Inc.*, 497 F.Supp.2d 1356, 1358 (M.D. Fla. 2007). This Court has recognized three grounds justifying reconsideration of an order: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or

manifest injustice. *True v. Comm'r of the I.R.S.*, 108 F.Supp.2d 1361, 1365 (M.D. Fla. 2000). This Court will not reconsider a previous ruling when a party's motion fails to raise new issues and, instead, only relitigates what has already been found lacking. *Lamar Adver. Of Mobile, Inc. v. City of Lakeland*, 189 F.R.D. 480, 489 (M.D. Fla. 1999). The decision to alter or amend judgment is committed to the sound discretion of the district judge and will not be overturned on appeal absent an abuse of discretion. *Am. Home Assurance Co. v. Glenn Estess & Assoc., Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985). Siemens' motion fails to identify any of the three grounds justifying reconsideration of the Court's Order (Doc. 208) denying Siemens' Motion for Summary Judgment on its counterclaim, and fails to raise new issues. Because Siemens' Motion for Reconsideration (Doc. 217) fails to meet the criteria for reconsideration, it should be denied.

Upon a motion for a summary judgment it is no part of the [trial] court's function to decide issues of fact, but solely to determine whether there is an issue of fact to be tried." *Tobelman v. Mo.-Kan. Pipe Line Co.*, 130 F.2d 1016, 1018 (3d Cir. 1942). "The weighing of evidence and the consideration of the credibility thereof are issues of fact to be determined by the jury at trial." *Natarajan v. Paul Revere Life Ins. Co.*, 720 F.Supp.2d 1321, 1326 (M.D. Fla. 2010), citing *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1299 (11th Cir. 1983). It is well established that "[t]he district court's function, in a summary judgment proceeding, is not to resolve factual issues but to determine whether there exists a genuine issue of material fact. In making its determination, the court may not weigh conflicting [evidence] to resolve disputed fact issues." *Farbwerke Hoeschst A.G. v. M/V "Don Nicky,"* 589 F.2d 795, 798 (5th Cir. 1979) (internal citation omitted). "If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *St. Charles Foods, Inc. v. America's Favorite Chicken Co.*, 198 F.3d 815, 819 (11th Cir. 1999). "If a

reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Shipman v. CP Sanibel, LLC*, No. 2:18-cv-139, 2019 WL 2301599, at *1 (M.D. Fla. May 30, 2019), quoting *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1315 (11th Cir. 2007).

## EVIDENCE OF SIEMENS' BREACHES

*SIEMENS' FAILURE TO PROVIDE IMPROVEMENTS*

Siemens failed to perform its obligations under the 2012 LSA by failing to provide Secure with necessary Improvements to the entrained flow coal gasification Equipment and Technology Secure purchased from Siemens. Section 5.1 of the 2012 LSA states as follows: "During the term of this License and Service Agreement, Siemens shall inform [Secure] of any Improvements to the Technology which are developed or acquired and released for commercial application by Siemens." (Pl. Ex. 1 p. 12). Siemens has also acknowledged that it had the obligation to inform Secure about relevant Improvements in the Technology (Pl. Ex. 50 p. 2). The uncontroverted evidence includes, but is not limited to, clear admissions by Siemens that it never provided to Secure any Improvements Siemens made to the Technology as required by the 2012 LSA (Pl. Ex. 1 p. 12; Pl. Ex. 50 p. 2; Rüsseler 30(b)(6) Dep. pp. 53:2-:17, 67:2-69:24; Scott Aff. ¶¶ 12-16). It turns out there were at least 28, and as many as 41, Improvements to the SFG-500MWth gasifiers, released for commercial application, that Siemens determined it was going to incorporate into future projects (Ex. 36 pp. 1-7; Ex. 68 pp. 5-9; Ex. 69 pp. 1-8; Ex. 69-1 pp. 2-6). It is also uncontroverted that Siemens never provided Secure with the change to its SFG-500 entrained flow coal gasification Technology that it considered mandatory, a change to the coal dust feeding system by constant pressure instead of differential pressure, as originally designed

4

(Ex. 36 p. 3; Ex. 68 p. 7; Ex. 69 p. 3; Ex. 69-1 p. 4). Siemens acknowledged this change is absolutely necessary for Secure to build and successfully operate its facility (Hannemann Dep. pp. 354:18-357:6; Rüsseler 30(b)(6) Dep. pp. 134:10-138:16).

Siemens, through the testimony of its corporate representative designee, Rolf Rüsseler, also claims it would have changed the loosening elements in Secure's feeder vessels (Rüsseler 30(b)(6) Dep. pp. 146:2-147:6; Pl. Ex. 36-1 p. 2). This change would be to improve the lifetime of the components by having them made from different materials than those shipped to Secure (*Id*. at 148:1-:7). Mr. Rüsseler stated that he would have recommended that Secure change its loosening elements in the manner described in Plaintiffs' Exhibit 36-1 (*Id*. at 150:15-:23). However, Siemens never mentioned this change to Secure and there is no evidence in the record to suggest otherwise. This is yet another undisputed material fact demonstrating that Siemens breached Section 5 of the 2012 LSA by failing to advise Secure of all relevant Improvements to Siemens' Equipment and Technology. These changes would have required an update to Secure's BEDP and Process Engineering Design Package ("PDP") but neither the change to the Equipment nor to the BEDP and PDP were addressed with Secure. Mr. Rüsseler also acknowledged that Secure would experience a problem with too much dust (particulate matter) in the syngas exiting its gasifiers, but expressed no concern for Siemens because they "would have the license [fee] completely in the house before the topic 'increased dust accumulation' would become visible," and the solution would be for Siemens to "engineer the new gas purification at our expense, that is, we should then form a provision that reduces the EBIT of the license agreement." (Pl. Ex. 116 p. 2; Rüsseler 30(b)(6) Dep. p. 56:1-:5).

The uncontroverted evidence demonstrates that Siemens failed to inform Secure of and provide it with any relevant Improvements to its entrained-flow coal gasification Equipment and

Technology, in accordance with Section 5.0 of the 2012 LSA (Pl. Ex. 1 p. 12). This includes those issues addressed above. As of November 22, 2012, Siemens acknowledged its obligation to inform Secure of relevant Improvements in the gasification Technology (Pl. Ex. 50). Yet, neither in late October 2012, nor at any other time, did Messrs. Rüsseler and Morehead discuss product modifications during a telephone conversation with Lars Scott (Pl. Ex. 51). Never, during the entirety of its business relationship with Secure did Siemens inform Secure of any of the specific Equipment and Technology Improvements developed and released for commercial application (*see, e.g.*, Rüsseler 30(b)(6) Dep. pp. 53:2-:17, 67:2-69:24).

There is also evidence demonstrating Siemens did not have access to many of the Improvements, and thus were unable to fulfill the requirements of the 2012 LSA. Secure's gasifiers are identical to the 5 SFG-500 megawatt thermal ("MWth") gasifiers first placed into operation at the NCPP plant in China (Pl. Ex. 22 p. 3). Siemens used the NCPP design for Secure's gasifiers, without modifications (Ex. 22 p. 6; Rüsseler Dep. pp. 84:20-85:6). However, Siemens' joint venture partner at NCPP made some 88 modifications to the Siemens entrained flow coal gasification Equipment and Technology (Pl. Ex. 45-1, p. 6). Siemens is unaware of all the changes its Chinese joint venture partner made to the coal gasification Equipment and Technology at NCPP (Pl. Ex. 69-2 p. 5; Rüsseler Dep. p. 282:18-:24). These changes that Siemens is not aware of were made to address issues in three major areas: "fluctuations in coal feed and consequently syngas output; higher-than-expected dust content in the syngas; and trips caused by faulty instrument signals within the feed system" (Pl. Ex. 69-2 p. 5). Siemens is therefore unable to provide them to Plaintiffs as required under the 2012 LSA. The uncontroverted evidence before this Court demonstrates that Siemens breached the agreement by

failing to fulfill the requirements of Section 5.1 of the 2012 LSA, and as a result, is not entitled to judgment as a matter of law on its counterclaim.

The uncontroverted evidence before the Court demonstrates that Siemens did not intend to provide upgrades and Improvements to Secure, as shown when, on December 16, 2012, Mr. Rüsseler wrote that, although Siemens was contractually obligated to offer Improvements to the customer, it should make the price and schedule "so unattractive that MidAmerica cannot draw this option," and that "incorporating the NCPP Lessons Learned would tie up resources" Siemens could use to generate new hardware orders (Pl. Ex. 116 p. 1; Rüsseler 30(b)(6) Dep. pp. 53:2-54:15, 70:8-:11). Even though Siemens had a contractual obligation to notify Secure of the Improvements to the gasification system, it never did so. It is a question of fact to be determined by a jury whether or not Siemens failed to provide Secure with Improvements, as required under Section 5 of the 2012 LSA. By March 7, 2013, Siemens acknowledged its SFG-500 MWth entrained flow coal gasification Technology was not completely mature as of execution of the NCPP plant, and that the contributions of the Chinese helped improve the reliability and availability of the Siemens Technology (Pl. Ex. 46 p. 2). The Chinese were not willing to share their know-how from operations free of charge (*Id*. at 3; Hannemann Dep. p. 310:9-:17) and they never did.

### *SIEMENS' FAILURE TO UPDATE SECURE'S BEDP*

Siemens' employees also acknowledged that Secure's BEDP and PDP needed to be updated (Pl. Ex. 75 p. 3; Pl. Ex. 110 p. 1), with at least one even going so far as to say that it needed to be scrapped and re-done (Pl. Ex. 110 p. 1). Siemens' BEDP and PDP sold to Secure were flawed and Secure was waiting on Siemens to provide an updated BEDP and PDP in order to obtain an EPC contract from SK Engineering and Construction, USA ("SK"). The BEDP is

7

the basic engineering documentation necessary for an EPC contractor to do the detailed-design, procurement and construction of a gasification plant like Secure's (Hannemann Dep. pp. 82:24-83:12).

Internal communications to Mr. Rüsseler (dated October 18, 2012) reflected that Secure essentially needed a new BEDP and that Secure's heat and mass balances had to be revised (Pl. Ex. 75 p. 3). Mr. Rüsseler informed Torsten Bergt, Siemens' Project Engineer for the Secure Project, that "the message to Jack and Lars is, forget everything you've got from Siemens, scrap the equipment, we'll start all over again" (Pl. Ex. 78 p. 1). The Court appears to not be persuaded by the implication of this e-mail, determining in its Daubert ruling (Doc. 188) that it is insignificant. However, for Secure, which needed an updated BEDP to obtain financing, this was crucial. At the very least, it is a disputed material fact that should be decided by a jury.

Siemens never informed Secure of the fact that any of its Equipment or Technology had to be scrapped or replaced in any way. In addition, Mr. Bergt's prior e-mail to Mr. Rüsseler, also in Plaintiffs' Exhibit 78, more explicitly identifies the obsolescence of the SIS control system at that date. Mr. Bergt wrote that, "the programming would have to be completely revised and the hardware I see the problem that this is not compatible with the current software and would probably have to be replaced!" (*Id*. at 1-2). Shortly thereafter, on October 31, 2012, Secure and Siemens met with several of Secure's engineering firms and others in Washington, D.C., in an attempt to address the status of technology developments and Improvements and to schedule questions from the EPC contractor, SK, which would have allowed them to provide a firm EPC price and prepare for a project kickoff and restart of the various technology licensors upon securing project equity (Pl. Ex. 75; Rüsseler 30(b)(6) Dep. 73:15-:23). It is clear Siemens was aware, prior to the October 31, 2012, meeting that Secure's entrained flow coal gasification

8

Equipment and Technology needed to be updated and/or replaced. Mr. Rüsseler's cynical solution, expressed to his colleagues, was to make a change order so costly it that it would discourage Secure from opting to take it (Pl. Ex. 116 p. 1; Rüsseler 30(b)(6) Dep. p. 70:8-:11). Unsurprisingly, Siemens never provided the change order and Secure was never informed regarding Siemens' assessment of the SIS control system.

On May 14-15, 2014, Messrs. Rüsseler and Morehead exchanged e-mails regarding Lars Scott's continued efforts to learn when Siemens' updated BEDP and other information would be provided to Secure (Pl. Ex. 110). On May 14, 2014, Mr. Morehead wrote to Mr. Rüsseler conveying Scott's questions and concerns, such as "[h]e [Lars] is concerned about the $'s [sic] and how much of what they have will we be able to reuse. He noted the control system as an example" (*Id*. at 1). In response, on May 15, 2014, Mr. Rüsseler replied to Morehead that, "very little to nothing can be re-used and we would have to start from scratch" (*Id*.) Neither of Mr. Rüsseler's statements, in Secure's Exhibits 78 and 110, indicate that they are limited in scope to a single component of Equipment sold to Secure. Despite the foregoing, Mr. Rüsseler testified that Secure never requested a final BEDP from Siemens, because if Secure had, then Siemens would have given them one (Rüsseler 30(b)(6) Dep. p. 69:16-:24). Moreover, Mr. Rüsseler testified that Secure never requested information regarding the changes that would need to be made in the BEDP because he did not see that as an action item in the minutes of the October 31, 2012, meeting set forth in Secure's Exhibit 75 (*Id*. at 236:21-237:4). Mr. Rüsseler's statement is incredible, inasmuch as the intended purpose of the meeting was to discuss the Improvements from the lessons Siemens learned from the NCPP Plant. Mr. Rüsseler's denials illustrate the existence of fact disputes when weighed against the other evidence that Secure and its partners repeatedly requested an updated BEDP and PDP, and when it could be expected (Pl. Ex. 75, 78;

9

Clauss Affidavit ¶¶ 5-7, 10-13; Scott Affidavit ¶¶ 14-16; Sherman Affidavit ¶¶ 6-9). Regardless, Siemens never provided Secure with an updated BEDP and PDP (Rüsseler 30(b)(6) Dep. pp. 67:14-68:21; Clauss Affidavit ¶¶ 7, 13; Scott Affidavit ¶¶ 13, 16; Sherman Affidavit ¶¶ 8-9). These are uncontroverted material facts showing that Siemens knowingly shipped outdated, obsolete, and defective Equipment and Technology to Secure, breaching its obligations under the 2012 LSA.

### *SIEMENS' FAULTY BURNERS*

Another undisputed fact in this case is that, to this day, Siemens does not have any 500MWth coal gasification combination burner in commercial operation anywhere in the world (Hannemann Dep. pp. 344:24-345:8). Even after Siemens developed five generations of their 500MWth single combination burner for coal gasification for use at the NCPP Plant, Siemens' joint venture partner, SNCG, chose to develop and implement its own burners at NCPP which achieved superior performance to Siemens' burners (Pl. Ex. 83 p. 1; Pl. Ex. 88; Pl. Ex. 83-1). This is another indication that Secure was unable to build and operate its facility without the Improvements to the Equipment and Technology from Siemens to do so.

The undisputed facts in the record before this Court reflects that Siemens did not merely scale up the 200 MWth gasifier obtained via the Sustec acquisition when it designed the single combination burner for the SFG-500 gasifier. This is demonstrated by the fact that Siemens changed the design to employ a first of its kind top-mounted burner that integrated the main and pilot burners. Mr. Rüsseler acknowledged that "the burner was the exception" to the scale-up of the Schwarze Pumpe gasifier design concept to what became Siemens' SFG-500 gasifier (Rüsseler Dep. pp. 24:9-25:19). The 200 MWth gasifier operated at Schwarze Pumpe utilized three top-mounted main burners surrounding a central pilot burner, whereas Siemens' scaled-up

500 MW gasifier utilized a single top-mounted burner (*Id*.). Siemens' single combined burners for coal gasification were not placed into commercial operation prior to their use at NCPP (Hannemann Dep. p. 170:11-:16). In fact, they were not tested (Rüsseler 30(b)(6) Dep. p. 79:20-:25) prior to delivery to NCPP (*Id*. at 160:21-:23) or sale to Secure (*Id*. at 388:23-389:16). Siemens did not test their 500MWth single combination burners for coal gasification because it would have cost too much money - 100 million Euros - to do so (*Id*.). Even today, Siemens does not have a single combined 500 MWth burner for coal gasification in commercial operation. (*Id*. at 344:17-345:5, 369:10-:13).

### *SIEMENS SHIPPED OFF-SPECIFICATION COOLING SCREENS TO SECURE*

It is beyond dispute that Siemens breached its agreements in supplying Secure with gasifiers containing cooling screens with out-of-specification pins welded inside them (Rüsseler 30(b)(6) Dep. pp. 217:25-218:11). Siemens learned during the fabrication of the equipment for NCPP[2] that the pin lengths on the cooling screens were too short (Pl. Ex. 112-3 p. 5). At that time, Siemens was also in the process of having Secure Energy's cooling screens manufactured. To remedy the problem, Siemens substituted the cooling screens with the correct size pins, intended for delivery to Secure Energy, in its delivery of equipment to NCPP and then, instead of having the cooling screens remanufactured to address this defect, Siemens' executives switched and delivered the defective cooling screens, containing pins that were too short, to Secure Energy (*Id*.; Hannemann Dep. pp. 213:22-218:23; Rüsseler 30(b)(6) Dep. pp. 75:13-:20, 77:17-2:5). No protocol or procedure exists from Siemens' process engineering demonstrating that Secure's gasifiers with the shorter pins can be used (Pl. Ex. 112-3 p. 5; Rüsseler 30(b)(6) Dep. pp. 75:17-76:8). Thus, Siemens acknowledges that what it shipped to Secure is not what Secure ordered.

---

[2] It should be noted that NCPP had the first five gasifiers of this new Siemens Equipment line, and that Secure had numbers six and seven. These seven gasifiers were the first seven ever designed and shipped by Siemens.

11

Instead, it knowingly shipped defective gasifiers to Secure and never notified Secure that it switched the specified cooling screens with defective cooling screens. Siemens' delivery of out-of-specification equipment to Secure, which they knew at the time was defective, constituted a breach of the 2012 LSA.

### *THE SIS CONTROL SYSTEM WAS OBSOLETE BEFORE SHIPPING TO SECURE*

The uncontroverted evidence in this case reflects that Siemens shipped Secure outdated SIS control system hardware. The Court's Order excluding the testimony and opinions of Plaintiffs' expert, Dr. Herbert Kosstrin (Doc. 188), incorrectly states that the control system became obsolete in the last seven years (Doc. 188 p. 17:20-:23). This invasion of the province of the jury ignores Siemens' admission contained in an e-mail dated February 3, 2010, in which Ulrike Koeckert wrote to George Lamonettin and Mr. Rüsseler that "[w]e have concerns because the hardware of the SIS (already stored in Germany) is already out of date. . ." (Pl. Ex. 109 p. 1; Rüsseler 30(b)(6) Dep. pp. 84:17-85:18, 240:21-:16). This means that the *hardware and software* of the SIS control system shipped to Secure was outdated before it even left Germany. According to the documents, Siemens was aware of the obsolescence of the SIS control system at the time and there is no credible evidence its condition could be rectified.

Although Mr. Rüsseler's assessment in his May 15, 2014, e-mail to Mr. Morehead, that Secure's "control system is outdated and should at best be sold to the scrap dealer" identifies only one component of Secure's planned facility, it is important not to ignore the remainder of the document, in which Mr. Rüsseler and Mr. Morehead discuss the control system, the gasifiers, and the BEDP sold to Secure (Pl. Ex. 110 p. 1). In response to Mr. Morehead's May 14, 2014, e-mail conveying Lars Scott's questions and concerns, such as "[h]e [Lars] is concerned about the $'s [sic] and how much of what they have will we be able to reuse. He noted the control system

as an example," Mr. Rüsseler wrote that "very little to nothing can be re-used and we would have to start from scratch" (*Id*.). On its face, Mr. Rüsseler's statement in Plaintiffs' Exhibit 110 is not limited solely to the period of time prior to the shipment of the obsolete control system sold to Secure. It is undisputed that Siemens, prior to shipping, knew the control system was outdated and never notified Secure the control system was obsolete. Siemens' employees acknowledged this, opining that it should be sold to a scrap dealer (*Id*.). The facts before this Court clearly show that Siemens knowingly shipped outdated, obsolete, and defective Equipment to Secure, which constitutes a breach of the 2012 LSA, precluding this Court from granting summary judgment in favor of Siemens on its counterclaim.

## **CONCLUSION**

The foregoing facts highlight Siemens' failure to meet all its obligations under the 2012 LSA. Because this is a requisite element of Siemens' counterclaim for breach of contract, Siemens cannot demonstrate, with uncontroverted evidence, that it is entitled to judgment on its counterclaim as a matter of law. The evidence presented regarding the foregoing creates, at least, questions of fact that must be decided by a jury. Consequently, Secure respectfully requests this Court deny Siemens' Motion for Reconsideration (Doc. 217).

Respectfully submitted,

**DANNA McKITRICK, P.C.**

Date: November 14, 2019      BY:   /s/ Robert L. Devereux
**Robert L. Devereux**, admitted pro hac vice
**Jeffrey R. Schmitt**, admitted pro hac vice
**Michael R. Cherba**, admitted pro hac vice
7701 Forsyth Blvd., Suite 800
St. Louis, Missouri 63105-3907
Telephone: (314) 726-1000
Facsimile: (314) 725-6592
E-Mail: rdevereux@dmfirm.com
          jschmitt@dmfirm.com
          mcherba@dmfirm.com

and

Walter A. Ketcham, Jr.
Florida Bar No. 156630
Grower, Ketcham, Eide, Telan & Meltz, P.A.
901 N. Lake Destiny Rd., Suite 450
Maitland, Florida 32751
Telephone: (407) 423-9545
Facsimile: (407) 425-7104
E-Mail: waketcham@growerketcham.com

**ATTORNEYS FOR PLAINTIFFS/
COUNTERCLAIM DEFENDANTS**

**CERTIFICATE OF SERVICE**

       The undersigned hereby certifies that, on the fourteenth day of November, 2019, a true and accurate copy of the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

| | |
|---|---|
| **Scott D. Baker** | **P. Alexander Quimby** |
| E-Mail: sbaker@reedsmith.com | E-Mail: aquimby@bakerlaw.com |
| **James A. Daire** | **Robert W. Thielhelm** |
| E-Mail: jdaire@reedsmith.com | E-Mail: rthielhelm@bakerlaw.com |
| **Jonah D. Mitchell** | Baker & Hostetler, LLP |
| E-Mail: jmitchell@reedsmith.com | 2300 SunTrust Center |
| **William R. Overend** | 200 South Orange Avenue |
| E-Mail: woverend@reedsmith.com | Post Office Box 112 |
| **Christopher J. Pulido** | Orlando, FL  32802 |
| E-Mail: cpulido@reedsmith.com | |
| Reed Smith, LLP | |
| 101 Second Street, Suite 1800 | |
| San Francisco, CA  94105-3659 | |

**ATTORNEYS FOR DEFENDANT/COUNTER-CLAIMANT, SIEMENS ENERGY, INC.**

                                                        /s/ Michael R. Cherba