# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| SIEMENS ENERGY, INC., | ) |
|     Plaintiff, | ) |
| v. | )    Case No. 6:17-CV-171-Orl-40-LRH |
| MIDAMERICA C2L INC., et al., | ) |
|     Defendants. | ) |

## DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(a)

Defendants Secure Energy, Inc. and MidAmericaC2L, Inc. (collectively "Secure") through counsel, hereby move for Judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a), and state as follows in support of their motion:

### Background

The remaining claim in this action is Plaintiff Siemens Energy, Inc.'s ("Siemens") claim that it is entitled to payment of a termination fee pursuant to a 2012 License and Service Agreement between the parties (the "2012 License Agreement") (JTX001). The 2012 License Agreement was the final in a series of written contract between the parties related to Secure's purchase from Siemens of approximately $40 million of fuel gasification Equipment and Technology (as defined in the contracts) for Secure's purpose in the development of a fuel gasification plant utilizing, in part, the Siemens Equipment and Technology.

The 2012 License Agreement had the purpose of granting Secure license rights with respect to the Siemens Equipment and Technology so that it could be implemented in the gasification plant. It also granted Secure two additional benefits to ensure that Secure had

1

Siemens' technical and engineering support throughout the duration of the development of the plant.  First, the 2012 License Agreement ensured that Secure had access to Siemens' engineers and technicians for purposes of what was described as "technical field assistance" ("TFA") as the gasification plant was developed, in order that Secure was adequately supported in development of its project.  Second, the agreement required Siemens to notify Secure of certain modifications or Improvements (as defined in the contracts) to the Equipment and Technology.[1]

The Court previously denied Siemens' Motion for Summary Judgment with respect to this claim (originally filed as a Counterclaim).  In part, the Court reasoned that there were facts remaining in dispute that precluded summary judgment as related to whether or not Siemens repudiated the 2012 License Agreement when it advised Secure that it would, and then did, close its gasification business.

Legal Standard

Rule 50(a)(1) provides:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion a motion for judgment as a matter of law on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

The entry of judgment as a matter of law is proper where no legally sufficient evidentiary basis exists for a reasonable jury to find for that party on that issue.  *Showan v. Pressdee*, 922, F.3d 1211, 1221 (11th Cir. 2019).

---

[1] This Court previously ruled that this particular contractual term was irrelevant to the question being adjudicated at trial.  Defendants respectfully reserve their right to challenge that ruling on appeal.

The issues being tried in this matter are two-fold: First, did Defendants breach the 2012 Licensing Agreement? Second, did Siemens anticipatorily repudiate the 2012 Licensing Agreement before any alleged breach. Pursuant to the parties' agreement, this dispute is governed by New York law. [JTX001, section 22.8]. Under New York law, the legal elements for breach of contract are: (1) the existence of a contract; (2) plaintiff's performance under the contract; (3) defendant's breach of the contract; and (4) resulting damages. *Palmetto Partners, LP v. AJW Qualified Partners, LLC*, 83 A.D.3d 804 (N.Y. 2011). And, under New York law, an anticipatory repudiation of a contract occurs where a promisor, before the time fixed in the contract for performance has arrived, repudiates a contractual duty. See *Princes Point, LLC v. Muss Development, LLC*, 30 N.Y.3d 127 (N.Y. 2017). An anticipatory breach may take the form of a statement or a voluntary affirmative act. *Id*. Based on the evidence adduced at trial, Defendants are entitled to judgment as a matter of law both as to breach of contract and repudiation.

## ARGUMENT

**I.      Secure is entitled to judgment as a matter of law resulting from Siemens' repudiation of the 2012 License Agreement**.

The 2012 License and Service Agreement required Siemens to provide continuing support to Secure as its gasification project proceeded, and Siemens was unable to fulfill that obligation because it shuttered its gasification division. Siemens notified Secure of its decision to close the division prior to Siemens' full performance under the contract and also prior to the time that Siemens invoiced Secure for the fee that it now seeks (JTX026).

The record is clear that Siemens' continuing support obligations under the 2012 License Agreement were to be performed exclusively by Siemens Fuel Gasification Technology ("SFGT"), a division of Siemens AG in Germany. The plaintiff, Siemens Energy, Inc. had no

capacity to provide these services, and as a result, delegated them to SFGT by virtue of two Cooperation Agreements (JTX018 and JTX027) between Siemens entities. The testimony in this case has been clear that Siemens Energy had no ability to perform the necessary engineering services for Secure and relied completely on its counterparts in Germany, and specifically at a SFGT facility in Freiberg, Germany, to do so. Plaintiff was merely a sales and marketing division and SFGT provided the required technical and engineering services.

It is undisputed by the parties that on February 2, 2016, and before Siemens invoiced Secure, SFGT employee Rolf Ruesseler notified Secure president Jack Kenny in a telephone conversation that Siemens had decided to terminate its gasification business. As Mr. Kenny testified, during the phone call, Mr. Ruesseler indicated that Siemens could no longer support Secure's project. Mr. Ruesseler's testimony confirmed that Mr. Kenny's understanding of the news was that Siemens was not going to support the project, as Mr. Ruesseler testified that Mr. Kenny asked him why Secure should pay if it would not be supported by Siemens. It is undisputed, moreover, that Siemens did not invoice Secure until April 19, 2016. (JTX026). Thus, by February 2, 2016—months before they sent any invoice requesting payment—Siemens had made it clear that it could not perform its obligations under the contract.

Worse yet, Ruesseler's call to Kenny was not even a timely communication of this decision. Siemens' witnesses testified that the company had decided to close its gasification in May, 2015. Siemens made that decision voluntarily. As communicated by Siemens Energy employee Harry Morehead internally to other Siemens' employees in July 2015 (but not to Secure), Mr. Morehead had been advised of the closure of the division and he was aware that SFGT employees were already leaving the division (DTX097). Mr. Morehead further anticipated that the division would be "shut down" as early as September of 2015. Mr.

Morehead's email detailing this information expressed concern that another Siemens' customer, the Texas Clean Energy Project, would find out, but not Secure. Then, as Mr. Ruesseler testified, he proceeded to inform numerous other customers—many of whom never purchased equipment or even entered into a licensing agreement—throughout 2015. At the end of July, 2015—as Siemens was in the process of informing *other* customers about its decision—Mr. Kenny e-mailed Siemens to inform them of potential developments in the project. It is undisputed that, at that time, Siemens had decided to close its gasification business and had begun informing customers of that decision, and it is undisputed that Mr. Schuld responded to Mr. Kenny's e-mail. (JTX017). Yet, neither he nor Mr. Russeler nor anyone else at Siemens bothered to inform Secure of the decision at that time—or any other time until *Mr. Kenny* requested a discussion in February 2016. Had Siemens been transparent with Secure, as it apparently was with more favored customers, its repudiation would have been apparent to Secure as early as May 2015. And, had Siemens extended the common courtesy of informing Secure of the developments during the e-mail exchange in July and August (JTX017), its repudiation would have been clear even earlier.

The record also demonstrates that, throughout 2015 (after Siemens had decided to close its gasification business), Secure continued to seek financing to support its project and thus pay the licensing fee at Financial Close, as specified in the contract. Indeed, the very purpose of Mr. Kenny reaching out to Siemens in July 2015 was to inform Siemens of Secure's continuing efforts to bring its plant to fruition. As both parties' witnesses testified at trial, the parties' clear course of conduct throughout their relationship was to extend payment dates—and not invoice for the licensing fees—in order to accommodate Secure's continuing efforts to obtain financing. This also benefitted Siemens as it attempted to have its Equipment and Technology incorporated

into a plant in the United States. The 2012 License Agreement did not require payment until Siemens requested payment through a written invoice. (JTX001, section 3.2.1). And Siemens did not invoice Secure until April 2016, well after repudiation occurred.

Based on the evidence in the record, Secure is thus entitled to judgment as a matter of law that Siemens repudiated the 2012 License Agreement. The evidence in the record supports the following inescapable findings: (1) Siemens, in May 2015, made the decision to terminate its fuel gasification business and shut down SFGT and its Freiberg, Germany facility; (2) SFGT and the employees at Freiberg were those who were contractually charged with providing ongoing engineering support to Secure; (3) Siemens recognized SFGT's engineering support could be necessary until the end of 2021, or more than six years after Siemens decided to close the division (JTX008); (4) Siemens' employee Rolf Ruesseler advised Secure in 2016 that Siemens was terminating the gasification business; (5) Mr. Kenny understood Mr. Ruesseler's message to indicate that Siemens could no longer support Secure's project and Mr. Ruesseler did not dispel that impression, and (6) Siemens ultimately closed the gasification division in 2018. These findings, in conjunction with each other and in context, make clear that Siemens repudiated the 2012 License Agreement by advising Secure that its division providing engineering support for the Secure project would be closed, rendering Siemens' full performance impossible under the circumstances.

## II.    Secure did not breach the 2012 Licensing Agreement.

Moreover, the evidence is clear that Secure did not breach the 2012 License Agreement. As an initial matter, once Siemens repudiated the contract, Secure was under no continuing obligation to perform its obligations under the agreement. *American List Corp. v. U.S. News and World Report, Inc.*, 75 N.Y.2d 38, 44 (1989). At the latest, Siemens' repudiation occurred on

6

February 2, 2016, during the telephone call between Mr. Russeler and Mr. Kenny. It is undisputed that Siemens had not invoiced Secure for payment of the termination fee at that time. (JTX026). And the contract is clear that, regardless of when a payment is due, payment is not required until a written invoice is issued. (JTX001, section 3.2.1).

Moreover, even if payment was required on December 31, 2015 (which it was not), the record indicates that the acts constituting repudiation occurred much earlier, in 2015. As Siemens' own witnesses testified, by May 2015, Siemens had decided to close its gasification business. By July 2015, "a number of employees ha[d] left or will be leaving soon." (DTX097). On August 4, 2015, internal e-mails from Siemens indicated that "Siemens has decided to *discontinue all activities* related to the coal gasification business." (DTX097) (emphasis added). That e-mail exchange included Mr. Schuld, as well as Mr. Ruesseler and Mr. Morehead. Yet, only *two days later* when Mr. Schuld responded to Mr. Kenny's July 30, 2015, e-mail seeking to discuss potential developments, neither he nor Mr. Ruesseler mentioned anything about that decision. Had they been forthright in their response—as they apparently were with others who they were actively courting for additional business—then the repudiation would have been clear long before December 31, 2015.

Moreover, there is no evidence in the record that Siemens was providing servicing and technical field assistance to any of its other customers at the time of repudiation—whether the repudiation date is May 2015 or February 2016. Despite cataloging their conversations with other customers and potential customers throughout 2015 and 2016, Siemens' witnesses did not testify that they were *actually* providing the conduct required of them under the License Agreement to those other projects. In fact, when pressed on the topic, Mr. Ruesseler indicated that one customer refused to contract for technical field assistance—perhaps because it had no

confidence that Siemens could actually perform on that promise. Indeed, the record reflects that other potential contracts that Siemens was pursuing at the time that it decided to shutter is gasification business never came to be.

Simply put, once Siemens could no longer perform under the contract, Secure was no longer required to perform its obligations. Under long settled New York precedent, anticipatory breach "relieves the nonrepudiating party of its obligation of future performance." *American List Corp. v. U.S. News and World Report, Inc.*, 75 N.Y.2d 38, 44 (1989). In those circumstances, "[t]he nonrepudiating party need not, … tender performance nor prove its ability to perform the contract in the future." *Id.* Thus, any suggestion by Siemens that Secure was not financially able to pay the licensing fee or termination fee at the time of repudiation is immaterial. Any contrary rule would do "violence to the settled principles of the doctrine of anticipatory breach because it would require the nonrepudiating party to prove its ability to perform in the future, despite the fact the doctrine is intended to operate to *relieve the nonrepudiating party from that very performance.*" *Id.* at 44-45 (emphasis added).[2] That is precisely what happened here.

---

[2]  In addition, as noted above, Secure respectfully reserves for appeal its argument that Secure was excused from performing because Siemens had itself already failed to perform on the contract when it did not inform Secure of necessary improvements. The "Improvements" clause of the 2012 License and Service Agreement required that Secure be notified of developments known to Siemens with respect to the gasification Equipment and Technology, in order that Secure would have the option of evaluating those Improvements and incorporating them into its gasification plant (JTX0001, section 5.1). This was a condition of the agreement that was imposed upon Siemens to perform. The Court's order in limine excluded evidence on this point from trial. But the complete record of the case is clear that the gasification Equipment and Technology is not a "plug and play" good. There is also ample support in the record that Siemens had sold it to only one other customer and that there were multiple and substantial "lessons learned" with respect to the Equipment and Technology in a sector that Siemens lacked long-term experience, and ultimately a sector from which Siemens withdrew. Yet, Siemens never fully advised Secure with respect to the Improvements to the Siemens' components of the gasification plant. To the contrary, and while excluded from trial, there is ample evidence in the summary judgment record, both by Siemens' own documentation and Siemens' own deposition testimony, that Siemens was aware of Improvements that would be necessary to incorporate in

WHEREFORE, for all of the foregoing reasons, Defendants Secure Energy, Inc. and MidAmericaC2L, Inc. pray that the Court enter judgment as a matter of law in their favor and against Plaintiff, for Defendants' costs and attorneys' fees incurred herein, and for any other and further relief the Court deems just and proper.

DANNA McKITRICK, P.C.

Date: March 4, 2020	BY:	/s/ Robert L. Devereux
Robert L. Devereux, admitted pro hac vice
Jeffrey R. Schmitt, admitted pro hac vice
7701 Forsyth Blvd., Suite 800
St. Louis, Missouri 63105-3907
Telephone: (314) 726-1000
Facsimile: (314) 725-6592
E-Mail: rdevereux@dmfirm.com
           jschmitt@dmfirm.com

and

Walter A. Ketcham, Jr.
Florida Bar No. 156630
Grower, Ketcham, Eide, Telan & Meltz, P.A.
901 N. Lake Destiny Rd., Suite 450
Maitland, Florida 32751
Telephone: (407) 423-9545
Facsimile: (407) 425-7104
E-Mail: waketcham@growerketcham.com

Michael H. McGinley, admitted pro hac vice
DECHERT LLP
2929 Arch Street
Philadelphia, Pennsylvania 19104-2808
Phone: (215) 994-4000
Fax: (215) 994-2222
E-Mail: michael.mcginley@dechert.com

**ATTORNEYS FOR DEFENDANTS**

---

Secure's project. Secure thus respectfully reserves its rights to raise this issue on appeal, if necessary.

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that, on the 4th day of March, 2020 a true and accurate copy of the foregoing was served by hand delivery to the following:

| | |
|---|---|
| **Jonah D. Mitchell**<br>E-Mail: jmitchell@reedsmith.com<br>**Adaline J. Hilgard**<br>Email: ahilgard@reedsmith.com<br>**Christopher J. Pulido**<br>E-Mail: cpulido@reedsmith.com<br>Reed Smith, LLP<br>101 Second Street, Suite 1800<br>San Francisco, CA  94105-3659 | **P. Alexander Quimby**<br>E-Mail: aquimby@bakerlaw.com<br>**Robert W. Thielhelm**<br>E-Mail: rthielhelm@bakerlaw.com<br>Baker & Hostetler, LLP<br>2300 SunTrust Center<br>200 South Orange Avenue<br>Post Office Box 112<br>Orlando, FL  32802 |

**ATTORNEYS FOR PLAINTIFF**

**SIEMENS ENERGY, INC.**

                                                              /s/ Robert L. Devereux