**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

SIEMENS ENERGY, INC.,

     Plaintiff,

                                   Case No.: 6:17-cv-171-Orl-40LRH

v.

                                   **Dispositive Motion**

MIDAMERICA C2L INC.,

     Defendant.

---

**DEFENDANT MIDAMERICA C2L INC.'S RENEWED MOTION**
**FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(b), ALTERNATIVE**
**RULE 59 MOTION FOR A NEW TRIAL, AND MEMORANDUM IN SUPPORT**

Defendant MidAmericaC2L, Inc. ("C2L") hereby submits its Renewed Motion for

Judgment as a Matter of Law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure,

Alternative Motion for a New Trial pursuant to Rule 59, and Memorandum in Support.

C2L is entitled to judgment as a matter of law because the evidence at trial established

that Siemens Energy, Inc. ("Siemens") breached and repudiated the parties' 2012 License and

Service Agreement.  As a result, C2L was excused from performing and thus did not itself

breach the 2012 License and Service Agreement.  Alternatively, C2L is entitled to a new trial

for six reasons:  First, it was error to exclude evidence of Siemens' own failure to perform

under the 2012 License and Service Agreement.  Second, the jury was erroneously instructed

that ready, willing, and able is a requirement for the affirmative defense of repudiation, and

the Court correspondingly erred in permitting evidence of C2L's financial condition.  Third,

C2L was improperly excluded from introducing evidence regarding the cause of its inability

to obtain funding for the coal gasification project, including through testimony of Dr. Herbert M. Kosstrin and Mr. Keith Clauss.  Fourth, in violation of Fed. R. Evid. 403, Siemens was permitted to introduce prejudicial evidence concerning a decades-old administrative enforcement action against C2L's co-founder and CEO.  Fifth, the Court erred in permitting Siemens to introduce evidence regarding C2L's relationship with Arc Financial, including the settlement of debt.  Sixth, the Court erred in declining to instruct the jury on waiver.

## BACKGROUND

Following a series of pretrial rulings, including the denial of Secure Energy, Inc. ("Secure Energy") and C2L's motions for leave to conform the pleadings to the evidence via a second amended complaint (Docs. 137, 154, 213), the exclusion of Secure Energy and C2L's expert (Doc. 188), entry of summary judgment in favor of Siemens on all of Secure Energy and C2L's claims (Docs. 203, 205, 208, 209), and *in limine* rulings limiting the theories C2L could present to the jury (Doc. 237), this case proceeded to trial on the sole issue of now-Plaintiff Siemens' counterclaim (*see* Doc. 263).  The counterclaim, pled against C2L, alleges that Siemens is entitled to payment of a termination fee pursuant to the parties' 2012 License and Service Agreement.  (Doc. 75 at 18-21; *see* Docs. 288-1 and 288-2 (JTX001)).  The 2012 License and Service Agreement was the final in a series of written contracts between the parties related to C2L's purchase from Siemens of approximately $43 million of fuel gasification Equipment and Technology (as defined in the contracts).  (*See* Doc. 277 (Tr. Vol. V) at 65:4–8; DTX10 (Ledger of Secure Energy Payments to Siemens)).  The purpose of that purchase was for C2L to develop a fuel gasification plant utilizing, in part, the Siemens Equipment and Technology.  (Doc. 272 (Tr. Vol. IV) at 95:15–17).

The 2012 License and Service Agreement granted C2L rights to the Siemens Equipment and Technology so that they could be implemented in the gasification plant. (Doc. 288-1 at 4 (JTX001 p. 3:11–12)). It also granted C2L additional benefits to ensure that C2L had Siemens' support throughout the duration of the project. (Doc. 288-2 at 20–31 (JTX001 App'x 9)). First, the 2012 License and Service Agreement ensured that C2L had access to Siemens' engineers and technicians for "technical field assistance" as the gasification plant was developed, to ensure C2L was adequately supported in the development of its project. (*Id.*). Second, the agreement required Siemens to notify C2L of certain modifications or Improvements (as defined therein) to the Equipment and Technology. (Doc. 288-1 at 6 (JTX001 p. 5:39–45); Doc. 288-1 at 4 (JTX 001 p. 3:36–39) (defining "BEDP" to include "any changes thereto . . . to be used by C2L to develop a detailed engineering design for the Line")). Third, the agreement required Siemens to provide performance guarantees. (Doc. 288-1 at 5 (JTX001 p. 4:13); Doc. 288-2 at 12–19 (JTX001 App'x 7)).

Trial commenced on March 2, 2020. During the course of trial, and as a result of the pretrial rulings, C2L was prevented from introducing critical theories and evidence to the jury. This included the theory that C2L was excused from performing because of Siemens' own failure to perform—namely, failure to notify C2L of certain modifications or Improvements to the Equipment and Technology, including failure to provide C2L an updated Basic Engineering Design Package ("BEDP"). (*See* Doc. 288-1 at 4 (JTX 001 at p. 3:36–39)). C2L was also precluded from introducing testimony from its proffered expert, Dr. Herbert M. Kosstrin, regarding the cause of C2L's inability to obtain financing, and testimony from Mr. Keith Clauss, regarding how the lack of an updated BEDP prevented C2L from obtaining a

final guaranteed maximum engineering, procurement, and construction ("EPC") contract. These witnesses were excluded despite Siemens being permitted to present a case to the jury built largely upon a theme of C2L's alleged deteriorating financial condition. The Court unfairly tied C2L's hands behind its back by allowing Siemens to pursue that theory while prohibiting C2L from rebutting it with material, relevant evidence. And while preventing C2L from defending itself with clearly probative facts and witnesses, the Court permitted Siemens to introduce inflammatory and unduly prejudicial evidence regarding a decades-old Securities and Exchange Commission enforcement action against C2L's co-founder.

Following three days of testimony and the close of evidence, C2L moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). (Docs. 275, 283). The Court denied C2L's motion and submitted the case to the jury. (Docs. 276, 284). The jury returned a verdict for Siemens, finding that C2L breached the 2012 License and Service Agreement. (Doc. 287). Based on the jury's findings the Court entered judgment in favor of Siemens. (Docs. 293, 294). Through this motion, C2L now moves for judgment as a matter of law—notwithstanding the verdict—and, in the alternative, for a new trial.

**I.      C2L Is Entitled To Judgment As A Matter Of Law Under Fed. R. Civ. P. 50(b).**

Following a jury verdict, a party may renew a motion for judgment as a matter of law ("JMOL") made previously under Federal Rule of Civil Procedure 50(a). Fed. R. Civ. P. 50(b); *Johnston v. Borders*, No. 15-cv-936, 2019 WL 8105895, at *1 (M.D. Fla. June 28, 2019). The standard for obtaining relief remains the same. *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007); 9B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2537 (3d ed. 2019). That is, entry of judgment as a matter of law is appropriate

where "no legally sufficient evidentiary basis exists for a reasonable jury to find for [the opposing] party on that issue." *Showan v. Pressdee*, 922 F.3d 1211, 1221 (11th Cir. 2019). Notwithstanding the verdict, C2L is entitled to judgment in its favor because Siemens repudiated the contract and because C2L did not breach the contract.

### A.   C2L is Entitled to Judgment as a Matter of Law Because Siemens Breached and Repudiated the 2012 License and Service Agreement.

The evidence establishes that Siemens anticipatorily repudiated the 2012 License and Service Agreement through its voluntary decision to close its gasification division despite its contractual obligation to provide C2L with continuing engineering support for its project, including notice of Improvements to the Equipment and Technology.

Under New York law, which governs the parties' contract, (Doc. 288-1 at 32 (JTX001 p. 31, § 22.8)), "[a]n anticipatory breach of contract by a promisor is a repudiation of [a] contractual duty before the time fixed in the contract for . . . performance has arrived." *Princes Point LLC v. Muss Dev. L.L.C.*, 87 N.E.3d 121, 124 (N.Y. 2017) (quoting 10-54 Corbin on Contracts § 54.1 (2017)).   The anticipatory breach—also known as an anticipatory repudiation—can be either a statement indicating the promisor will not perform or "a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach." *Princes Point LLC*, 87 N.E.3d at 124.   The statement of repudiation must be "positive and unequivocal." *Id.*  Further, "a wrongful repudiation of the contract by one party before the time for performance entitles the nonrepudiating party to immediately claim damages for a total breach." *Id.* at 125 (quoting *American List Corp. v. U.S. News & World Report, Inc.*, 549 N.E.2d 1161, 1165 (N.Y. 1989)).

The 2012 License and Service Agreement required Siemens to provide C2L with continuing engineering support as its gasification project proceeded. (Doc. 288-2 at 20–31 (JTX001 App'x 9)). The record is clear that Siemens' continuing support obligations under the 2012 License and Service Agreement were to be performed exclusively by Siemens' gasification business, Siemens Fuel Gasification Technology ("SFGT"), a division of Siemens AG in Germany. Plaintiff Siemens Energy, Inc. had no capacity to provide these services, and as a result, delegated the services to SFGT through two Cooperation Agreements (Doc. 288-17 (JTX018); Doc. 288-23 (JTX027)). Siemens recognized that SFGT's engineering support could be necessary until the end of 2021. (Doc. 288-9 (JTX008)).

It is undisputed that on February 2, 2016, SFGT employee Mr. Rolf Ruesseler notified C2L's President and CEO Mr. Jack Kenny via telephone that Siemens decided to exit from the gasification business. (Doc 277 (Tr. Vol. V) at 48:21–22; 49:1–14). The decision to close the division responsible for providing C2L with continuing engineering support clearly made Siemens unable to perform under the 2012 License and Service Agreement. (Doc. 277 (Tr. Vol. V) at 51:11–52:28; Doc. 288-8 (JTX007)). As Mr. Kenny testified, during the phone call, Mr. Ruesseler indicated that Siemens could no longer support C2L's project. (Doc. 277 (Tr. Vol. V) at 49:1–14; *see also* Doc. 272 (Tr. Vol. IV) at 55:18–19 (Testimony of R. Ruesseler) ("And then [Mr. Kenny] said, 'Again, you are not supporting my project. Why would I pay you anything?'")). It is likewise undisputed that Siemens did not invoice C2L until April 19, 2016, (Doc. 222 at 4; Doc. 288-22 (JTX026); Doc. 290-3 (DTX60)), more than two months after C2L rescinded the 2012 License and Service Agreement, (Doc. 288-8 at 2 (JTX007)). Worse yet, as fully explained below, Siemens neglected to tell C2L of its decision to close its

gasification division until February 2016, despite making that decision as early as May 2015. (Doc. 272 (Tr. Vol IV) (Testimony of G. Schuld) at 6:15–20; Doc. 290-2 at 1 (DTX53) (Feb. 5, 2016 email from G. Schuld to J. Crew) ("Your organization [Summit Power] has known since May 2015 that Siemens intended to exit the [fuel gasification] business.")).

Siemens' voluntary decision to close its gasification division made it impossible for Siemens to provide continuous engineering services and to notify C2L of Improvements as required under the 2012 License and Service Agreement.  By making that decision and belatedly informing C2L, Siemens wrongfully repudiated the contract.  Thus, C2L is entitled to judgment as a matter of law.  (*See* Doc. 275 at 6 (listing findings supported by record)).

> ### B.      C2L is Entitled to Judgment as a Matter of Law Because C2L Did Not Breach the Contract.

Following Siemens' repudiation of the 2012 License and Service Agreement, C2L had no obligation to perform and thus, did not breach the 2012 License and Service Agreement. Under New York law, an anticipatory breach relieves the non-repudiating party of its obligation of future performance.  *Pesa v. Yoma Dev. Grp., Inc.*, 965 N.E.2d 228, 230 (N.Y. 2012).  Further, "a wrongful repudiation of the contract by one party before the time for performance entitles the nonrepudiating party to immediately claim damages for a total breach." *Princes Point, LLC*, 87 N.E.3d at 125 (quoting American *List*, 549 N.E.2d at 1165).

> ### 1.      C2L was not required to prove it was ready, willing, and able to perform under the 2012 License and Service Agreement.

At trial, Siemens argued, and the Court agreed, that in order to claim repudiation, C2L was required to prove that it was ready, willing, and able to perform its obligations under the contract.  However, New York law does not impose such an obligation in a case like this.  The

New York Court of Appeals in *American List Corp. v. U.S. News & World Report, Inc.*, held

that when a contract is repudiated, the non-repudiating party "need not . . . tender performance

*nor prove its ability to perform the contract in the future*." 549 N.E.2d 1161, 1165 (N.Y. 1989)

(emphasis added). The New York Court of Appeals later upheld *American List* in *Pesa v.*

*Yoma Dev. Group, Inc.*, where the court explained that a party claiming repudiation in a real

estate transaction is required to prove it is ready, willing, and able to perform, but a party under

a long-term service contract is not required to prove its ability to perform in the future. 965

N.E.2d at 230–31 (citing *American List*, 549 N.E.2d at 1165). The court reasoned that this

would impose a "perhaps impossible burden of showing what [the party's] financial condition

would have been for many years to come." *Pesa*, 965 N.E.2d at 231.

Here, the 2012 License and Service Agreement imposes long-term obligations on both

parties, unlike the real estate contract at issue in *Pesa*, where the buyers only needed to show

they were ready, willing, and able to close if the seller had proceeded to a closing as the contract

required. *Pesa*, 965 N.E.2d at 231. Because it would be nearly impossible for C2L to prove

what its financial condition would be like for years to come, C2L had no obligation to prove it

was ready, willing, and able to perform the contract.

Likewise, in the context of an affirmative defense, where C2L seeks neither specific

performance nor damages, it has no obligation to demonstrate that it was ready, willing, and

able to perform. *See Pesa,* 965 N.E.2d at 231 ("It is axiomatic that *damages* for breach of

contract are not recoverable where they were not actually caused by the breach . . .") (emphasis

added). Moreover, even if it otherwise had such an obligation, under New York law the

obligation is excused where the opposing party's anticipatory breach impeded the ability to

demonstrate the financial capability of performing. *See Ferchaw v. Troxel*, 112 A.D.3d 1310, 1312 (NY App. Div. 2013) (finding plaintiffs were not required to prove they were ready, willing, and able to perform where defendant refused to allow plaintiff to obtain an appraisal of the property at issue which was necessary to obtain financing).

By repudiating the contract, Siemens deprived C2L of the ability to obtain financing for the project.  C2L could not build its plant and use the Siemens gasifiers it purchased without Siemens' (1) performance guarantees, (2) continuing engineering support, and (3) notice of Improvements.  Without these (contractually-obligated) components, no project finance firm would offer funding.  Thus, when Siemens decided to close its gasification division, it made it impossible for C2L to move forward with its project and obtain the necessary financing.

Siemens' voluntary decision to close its gasification division while being contractually obligated to provide performance guarantees, ongoing support, and notice of Improvements was a clear anticipatory repudiation of the 2012 License and Service Agreement.  Because Siemens repudiated the contract, C2L is entitled to judgment as a matter of law.

### 2. Siemens repudiated before C2L was required to perform.

As explained above, a wrongful repudiation excuses the nonrepudiating party of all future performance and gives the nonrepudiating party the immediate right to sue for breach of contract.  *See Pesa*, 965 N.E.2d at 230; *Princes Point, LLC*, 87 N.E.3d at 125.  The 2012 Licensing and Service Agreement did not require C2L to pay the termination fee until it received an invoice.  And Siemens repudiated the contract months before sending any invoice and after C2L rescinded the contract.  Therefore, Siemens did not request performance from C2L until *after* the repudiation had occurred.

At the absolute latest, Siemens repudiated the contract on February 2, 2016, when Mr. Ruesseler contacted Mr. Kenny and explained that Siemens was closing its gasification division. (Doc 277 (Tr. Vol. V) at 48:21–22; 49:1–14; 288-8 at 2 (JTX007)). Yet, it is undisputed that Siemens did not invoice C2L until April 19, 2016, more than two months after Siemens repudiated the contract, (Doc. 222 at 4; Doc. 288-22 (JTX026)), and C2L rescinded the contract (Doc. 288-8 at 2 (JTX007)). The 2012 License and Service Agreement is clear that—regardless of when a payment is due—C2L is not required to make a payment until Siemens issues a written invoice. (Doc. 288-1 at 10 (JTX001 p. 9, § 3.2.1); *see also* Doc. 272 (Tr. Vol. IV) at 55:20–25). And the parties' clear course of conduct throughout their relationship was to extend payment dates—and not invoice for licensing fees. (*See* Doc. 268 (Tr. Vol. II) at 37–38:15–1; Doc. 272 (Tr. Vol. IV) at 21:3–24; Doc. 277 (Tr. Vol. V) at 104:3–105:20; Doc. 288-1 at 10 (JTX001 at 9:21–23) (stating that payment "shall be due and paid by C2L to Siemens upon Financial Close, but in no event later than February 28, 2013 *unless otherwise agreed by the Parties*") (emphasis added)). This accommodated C2L's continuing efforts to obtain financing and benefitted Siemens as it attempted to have its Equipment and Technology incorporated into a plant in the United States.[1] Thus, C2L's performance was already excused at the time Siemens issued the invoice because of Siemens' repudiation and C2L's rescission. Therefore, C2L did not breach the contract.

---

[1] *See* Doc. 272 (Tr. Vol. IV) at 15:20–16:17; Doc. 277 (Tr. Vol. V) at 103:16–104:8. By way of further detail, the only plant in the world with Siemens Equipment and Technology was the NCPP plant in China. (Doc. 161-11 at 3 (DTX46)). C2L purchased (and paid for) identical gasifiers, (Doc. 146-20 at 4 (DTX22)), and C2L's project would be the first in the United States, providing Siemens a reference plant.

Even if Siemens is correct (which it is not) that payment was required on December 31, 2015, the record indicates that Siemens made the decision to repudiate the contract much earlier that year.  In fact, despite having every opportunity to inform C2L of its decision, SFGT did not decide to reveal its closure to C2L until *Mr. Kenny* requested a discussion in February 2016, after hearing rumors of the closure.  (Doc. 272 (Tr. Vol. IV) at 116:1–5).

In July 2015, Siemens employee Harry Morehead emailed other Siemens employees, explaining that he was advised Siemens was closing the gasification division and was aware that SFGT employees were already leaving the division.   (Doc 290-7 (DTX097)).   Mr. Morehead anticipated that the division would be "shut down" as early as September 2015 and expressed concern that Siemens decided to inform another customer, the Texas Clean Energy Project, but not C2L.  (*Id*.)  Further, Mr. Ruesseler testified that throughout 2015 he informed numerous other customers or potential customers of the closure—many of whom had never purchased equipment or even entered into a licensing agreement.  (Doc. 272 (Tr. Vol. IV) at 44:20–45:15).  Yet, throughout that period, Mr. Ruesseler and every other Siemens employee kept C2L entirely in the dark.

Also during July 2015—as Siemens was informing *other* customers of its decision— Mr. Kenny emailed Siemens to inform it of potential developments with C2L's project.  Mr. Guido Schuld, the CEO of Siemens' gasification division, responded to the email stating that Siemens was willing to support C2L's continued efforts to finance the project—without ever informing C2L of the company's decision to close its gasification division.  (Doc. 288-16 (JXT017)).  A few days later, on August 4, 2015, Mr. Schuld was copied on an email that contained a draft of a letter to Siemens' customers stating that "Siemens has decided to

discontinue *all activities related to the gasification business*." (Doc. 290-7 at 1 (DTX97)) (emphasis added). Mr. Ruesseler was also copied on the emails and likewise failed to inform C2L of Siemens' decision. (Doc. 288-16 (JTX017)). The record is thus clear that Siemens intentionally concealed its decision to close its gasification division from C2L, despite being contractually required to support C2L's project and despite informing a number of other companies that had never purchased equipment or entered into a contractual agreement with Siemens. Had Siemens been forthcoming with C2L, as it apparently was with other customers (and even non-customers), C2L would have been aware of Siemens' repudiation well before the supposed December 31, 2015 due date. Siemens, fully aware that it was repudiating the 2012 License and Service Agreement, was trying to run the clock out.

Simply put, once Siemens could no longer perform under the contract, C2L was no longer required to perform its obligations. Under long-settled New York precedent, an anticipatory breach "relieves the nonrepudiating party of its obligation of future performance." *American List*, 549 N.E.2d at 1165; *Pesa*, 965 N.E.2d at 230. In those circumstances, "[t]he nonrepudiating party need not . . . tender performance nor prove its ability to perform the contract in the future." *American List*, 549 N.E.2d at 1165. Any suggestion by Siemens that C2L was not financially able to pay the termination fee is immaterial and the product of Siemens' own misconduct. And it is undisputed that Siemens did not invoice C2L for the licensing fee until two months after the repudiation and rescission, when C2L's performance was already excused. Thus, C2L did not breach the contract.

WHEREFORE, for all of the foregoing reasons, Defendant MidAmerica C2L, Inc. prays that the Court vacate its prior judgment (Docs. 293, 294), enter judgment as a matter of

law in its favor and against Plaintiff, for Defendant's costs and attorneys' fees incurred herein, and for any other and further relief the Court deems just and proper. [2]

## II.    In The Alternative, C2L Is Entitled To A New Trial Under Fed. R. Civ. P. 59.

Federal Rule of Civil Procedure 59 provides that, following a jury trial, the court may order a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59 (1)(A).  These reasons include a verdict that is against the weight of the evidence, where "the court erred in admitting or excluding evidence or instructing the jury on the law, or other circumstances resulted in a patently unfair trial." *Mt. Hawley Ins. Co. v. Tactic Sec. Enf't, Inc.*, No. 16-cv-1425, 2018 WL 3496092, at *2 (M.D. Fla. July 20, 2018) (citing Fed. R. Civ. P. 59; *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).  A new trial may be granted "even though there may be substantial evidence" which precludes the entry of judgment as a matter of law.  *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016).  And unlike under Rule 50, the court "is free to weigh the evidence" in considering whether a new trial is warranted.  *Id.*  "[W]hen independently weighing the evidence, the trial court is to view not only that evidence favoring the jury verdict but evidence in favor of the moving party as well."  *Id.*

A new trial is warranted here for six independent reasons:  ***First***, it was error to exclude evidence of Siemens' own failure to perform under the 2012 License and Service Agreement. ***Second***, the jury was erroneously instructed that ready, willing, and able is a requirement for

---

[2] In addition, C2L reserves for appeal its argument that it is entitled to judgment as a matter of law because it was excused from performing based upon Siemens having itself failed to perform under the 2012 License and Service Agreement.  (*See* Doc. 275 at 8 n.2).  Siemens did not inform C2L of necessary Improvements, despite acknowledging that obligation, and based upon its own profit motives.  *See* Section II.A., *infra* (citing Doc. 161-21 (DTX116)).

the affirmative defense of repudiation, and the Court correspondingly erred in permitting evidence regarding C2L's financial condition, including the history and background of project funding.  **Third**, C2L was improperly excluded from introducing evidence of the reason for its inability to obtain funding for its coal gasification project, including through testimony of Dr. Kosstrin and Mr. Clauss.  **Fourth**, in violation of Fed. R. Evid. 403, Siemens was permitted to introduce evidence concerning a decades-old administrative enforcement action against C2L's co-founder and CEO.  **Fifth**, the Court erred in permitting Siemens to introduce evidence regarding C2L's relationship with Arc Financial, including the settlement of debt.  And, **sixth**, the Court erred in declining to instruct the jury on waiver.  These errors, together and separately, resulted in a patently unfair trial and warrant relief under Rule 59.

### A.   A New Trial Is Warranted Because C2L Was Prohibited From Presenting Evidence That Siemens Failed to Perform.

A new trial is warranted because the Court prevented C2L from arguing to the jury that Siemens had itself failed to perform under the contract.  (*See* Doc. 237; Doc. 238 (PTC Tr.) at 10–12).  To prevail on a breach of contract claim, a plaintiff must prove, *inter alia*, the plaintiff's own performance under the contract.  *Palmetto Partners, LP v. AJW Qualified Partners, LLC*, 83 A.D.3d 804, 806 (N.Y. App. Div. 2011).  Excluding evidence of Siemens' breach resulted in a patently unfair trial: Siemens was relieved from proving an element of its affirmative claim, and C2L was prevented from offering a meritorious defense.

Under Federal Rule of Civil Procedure 61, improperly admitted or excluded evidence is grounds for granting a new trial where the evidence affects a party's substantial rights.  Fed. R. Civ. P. 61; *see also Pillsbury Co. v. W. Carrollton Parchment Co.*, 210 F. App'x 915, 922 (11th Cir. 2006).  The inquiry focuses on "how much of an effect [] the improperly admitted

or excluded evidence [had] on the verdict." *PEAT, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004) (finding that the improper admission of a single exhibit during a complex two-week trial required a new trial).

Here, the effect of the improperly excluded evidence on the verdict cannot be overstated. Siemens failed to perform under the 2012 License and Service Agreement in numerous ways, including by failing to notify C2L of Equipment and Technology Improvements, and by failing to provide an updated Basic Engineering Design Package ("BEDP") and Process Engineering Design Package ("PDP"). Excluding that evidence permitted Siemens to argue inaccurately to the jury that it had, up until the February 2016 call, fully performed under the contract—and that the *only* basis for C2L's non-payment was the telephone call. That was not true. Accordingly, the ruling that C2L could not present evidence to rebut Siemens' inaccurate portrayal was highly prejudicial and warrants a new trial.

Under the 2012 License and Service Agreement, Siemens was required to notify C2L regarding any developments with respect to the gasification Equipment and Technology so that C2L could have the option to incorporate the Improvements. (Doc. 288-1 at 4 and 6 (JTX001 at p. 3:36–39 and p. 5:39–45); *see also* Doc. 158-18 (DTX69)). Siemens' own documents acknowledge this requirement. Indeed, Mr. Rolf Ruesseler, the director of sales and marketing for the Siemens gasification division, admitted that (1) Siemens was obligated to provide Improvements, (Doc. 161-21 at 2 (DTX116) ("In accordance with paragraph 5.1 of the license agreement, we are obliged to indicate improvements and offer them to the customer."), and that (2) Improvements existed and were necessary for the gasifiers to function, (*id.* at 3; Doc.

158-8 at 3–4 (DTX75); Doc. 158-10 at 2 (DTX110); Doc. 158-17 (DTX98); Doc. 197-37 at 3 (DTX50)).[3]

Yet, the Court excluded evidence on that critical obligation on the view that it was "not material." (Doc 238 (PTC Tr.) at 13). With respect, that ruling was both legally incorrect and highly prejudicial. Indeed, Siemens itself never argued that the Improvements clause was not a material term. (*See* Doc. 230 at 16–18). Nor could it have, given that there was a mandatory change that Siemens acknowledged was necessary in order for the gasification equipment to work. (Doc. 167-4 at 3–4 (R. Ruesseler 30(b)(6) Dep. (Jan. 23–24, 2019), pp. 134–135); Doc. 161-15 (DTX69-1)). In fact, Mr. Ruesseler admitted, *on two occasions*, that in light of the needed Improvements, the equipment needed to be scrapped and re-done. (Doc. 158-9 at 2 (DTX78) (Oct. 18, 2012 email from R. Ruesseler to T. Bergt)); (Doc. 158-10 at 2 (DTX110) (May 15, 2014 email from R. Ruesseler to H. Morehead)). The Court's ruling excluded that highly relevant evidence.[4]

Thus, aside from unfairly undermining C2L's ability to rebut Siemens' breach of contract claim—by demonstrating Siemens' own failure to perform—the Court's ruling also

---

[3] Siemens' own documents show that it decided not to offer these Improvements because an engineering fix "would tie up resources at a time [they] needed them urgently elsewhere," while only bringing in "max. 13 million euros." (Doc. 161-21 at 2 (DTX116)). Mr. Ruesseler "suggest[ed] that the price and the schedule for this change order be so unattractive that MidAmerica cannot draw this option," *id.,* and noted that Siemens would likely have received the license fee from C2L *before* C2L became aware of the increased dust accumulation defect. *Id.* at 3. Thus, Siemens made a business decision to breach the contract.

[4] The Court also stated that evidence regarding the lack of requisite updates to the BEDP or PDP was inadmissible at trial because it was not raised in the pleadings. (Doc. 238 (PTC Tr.) at 15:7–12). To the contrary, C2L pleaded as its eighth affirmative defense that Siemens materially breached the terms and conditions of the 2012 License and Service Agreement. (Doc. 80 at 5). That, too, was a faulty basis for excluding this evidence.

enabled Siemens to mislead the jury into believing that it had otherwise fully complied with the contractual terms and performed as required, when its own internal documents disprove that statement. Failure to inform C2L of the Improvements was a breach of the 2012 License and Service Agreements occurring *prior to* February 2016. Yet in closing arguments counsel for Siemens made the following argument:

> Secure Energy and MidAmerica C2L . . . want you to find that Siemens anticipatorily repudiated the contract. ***Not that Siemens breached what – its obligations prior to that, prior to this February 2, 2016, call***, but that Siemens is not going to perform in the future. ***So this case isn't about Siemens breaching the contract prior. This case is about whether or not Siemens could continue to support.***

(Doc. 279 (Tr. Vol. VI) at 8:12–22) (emphasis added). As a result, the Court's *in limine* rulings on these issues were doubly prejudicial: They precluded C2L from mounting a defense while permitting Siemens to paint an inaccurate picture of the record—thus avoiding its own burden of demonstrating performance. The Court acknowledged in denying Siemens summary judgment on its counterclaim that "[Siemens] must be able to prove every element of its own claim for breach of contract, which they have yet to do." Doc. 222 at 4. But excluding this evidence wrongfully relieved them of that burden at trial. These evidentiary rulings fatally undermined the integrity of the verdict, warranting a new trial.

**B.     A New Trial Is Warranted Because it Was Improper to Instruct the Jury on Ready, Willing, and Able, and Because Siemens Was Improperly Permitted to Introduce Evidence of C2L's Failure to Obtain Financing.**

While preventing C2L from mentioning the highly relevant fact that Siemens failed to perform its obligations under the contract, the Court simultaneously allowed Siemens to harp repeatedly on C2L's inability to obtain financing for its project. But any minimal probative value that fact had to the counterclaim was far outweighed by the significant likelihood that it

-17-

would prejudice the jury and thus result in an unfair trial. Siemens' opening and closing arguments to the jury emphasized C2L's financial condition over and over and over, unfairly priming the jury to believe that C2L had breached merely by failing to obtain financing. For instance, counsel for Siemens argued in closing that the reason Siemens notified a *potential* customer—Summit Power—of the closure of Siemens' gasification division is that "Summit had $450 of funding" while "Secure and C2L, they didn't have funding. They didn't have $450 million." (Doc. 279 (Tr. Vol. VI) at 42:21–43:1). Yet, that fact alone is not in any way dispositive—and, if anything, Siemens' own breaches and repudiation were the cause of C2L's inability to obtain financing.[5] Allowing Siemens to paint C2L as a financially inept party while prohibiting C2L from countering that narrative was fundamentally unfair.

New York law does not impose a ready, willing, and able obligation in a case like this. Permitting Siemens to proceed on a theory that it does—which led to extensive discussion of C2L's financial situation—was highly prejudicial. In *American List*, the New York Court of Appeals held that when a contract is repudiated, the non-repudiating party "need not . . . tender performance nor prove its ability to perform the contract in the future." 549 N.E.2d at 1165 (N.Y. 1989). *American List* was later upheld in *Pesa v. Yoma Dev. Group, Inc.*, where the court explained that a party claiming repudiation in a real estate transaction is required to prove it is ready, willing, and able to perform, but a party under a long-term *service contract* is not

---

[5] Moreover, Siemens' own internal documents show that this statement regarding Summit Power was not true. Summit Power had lost its funding. (DTX90 at DEU_0269116 ("The U.S. Department of Energy has suspended funding and is determined to pull out of their Co-operative Agreement with Summit. Reasons: Project over budget (now at ~ USD 4 billion), 2 years behind schedule, and financing at current market conditions very unlikely. Means Summit looses [sic] ~ $ 400 Million in direct (cash) funding.")).

required to prove its ability to perform in the future.  965 N.E.2d at 231 (citing *American List*, 549 N.E.2d at 1165) (emphasis added).  The court reasoned that this would impose a "perhaps impossible burden of showing what [the party's] financial condition would have been for many years to come."  *Pesa*, 965 N.E.2d at 231.

Here, the 2012 License and *Service* Agreement imposed long-term obligations on both parties, unlike the real estate contract at issue in *Pesa* where the buyers only needed to show they were ready, willing, and able to close if the seller had proceeded to a closing as the contract required.  965 N.E.2d at 231.  Because it would be nearly impossible for C2L to prove its likely financial condition for years to come, C2L had no obligation to prove it was ready, willing, and able to perform the contract.  Siemens' repeated arguments to the contrary were prejudicial.

Likewise, in the context of an affirmative defense, where C2L seeks neither specific performance nor damages, it has no obligation to demonstrate that it was ready, willing, and able to perform.  *See Pesa,* 965 N.E.2d at 231 ("It is axiomatic that *damages* for breach of contract are not recoverable where they were not actually caused by the breach . . .") (emphasis added).  Moreover, even if it otherwise had such an obligation, under New York law the obligation is excused where the opposing party's anticipatory breach impeded the ability to demonstrate the financial capability of performing.  *See Ferchaw v. Troxel*, 112 A.D.3d 1310, 1312 (NY App. Div. 2013) (finding plaintiffs were not required to prove they were ready, willing, and able to perform where defendant refused to allow plaintiff to obtain an appraisal of the property at issue which was necessary to obtain financing).  When Siemens decided to close its gasification division, it made it impossible for C2L to move forward with its project

and obtain the necessary financing.  It was error to instruct the jury on a ready, willing, and able requirement.

And that error led to the introduction of highly prejudicial evidence of C2L's historical financial condition.  Siemens built its presentation to the jury around C2L's failure "to get their project off the ground." (Doc. 265 (Tr. Vol. I) at 82:9–10).  Throughout the trial, Siemens' put forth argument and evidence that C2L's project was "struggling," *id.* at 83:6, arguing, for example that "as the evidence will show, C2L never got even close to getting its plant up off the ground." (Doc. 265 (Tr. Vol. I) at 94:14–15).  This was improper and unfairly prejudicial.

C. **A New Trial Is Warranted Because C2L Was Excluded From Offering Testimony Regarding the Cause of C2L's Failure to Obtain Funding.**

Even if it were appropriate for Siemens to introduce evidence regarding C2L's financial condition, the Court erred in preventing C2L from countering that evidence by introducing testimony from Dr. Kosstrin and Mr. Clauss on the cause of C2L's inability to obtain financing.

1. **Dr. Kosstrin was improperly excluded from testifying.**

While Rule 702 of the Federal Rules of Evidence requires the district court to serve as the gatekeeper to the admission of scientific testimony,  *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 589 (1993), "[a] district court's gatekeeper role under Daubert is not intended to supplant the adversary system or the role of the jury." *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001).  Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." *Id.*

This Court's ruling to exclude Dr. Kosstrin from testifying regarding Siemens' failure to—and inability to—perform under the contract was improper under Rule 702 and resulted in

an unfair trial.  (*See* Doc. 188).  In his report, Dr. Kosstrin opined that "[C2L] needed to obtain an engineering, procurement, and construction ("EPC") contract that had a fixed price, a guaranteed schedule, and process guarantees to be able to obtain financing for the [C2L] Project."  (Doc. 158-1 at 11 (Kosstrin Rpt. at 10)).  He further explained that "[w]ithout knowledge of all the modifications to complete the BEDP and with Siemens unwilling to provide process guarantees that are in the License, [C2L] could not obtain an EPC contract and finance or build [its] project."  (*Id.* at 13 (Rpt. at 12)).  Those are critical, clearly relevant points that would have supported C2L's defense at trial.  Despite the fact that "Siemens [did] not contest the accuracy of Dr. Kosstrin's statement that [C2L] needed an EPC contract with a fixed price, guaranteed schedule, and process guarantees to obtain financing, (Doc. 188 at 19–20 (citing Doc. 158-1 at 10)), the Court granted Siemens' motion to exclude Dr. Kosstrin's opinions and testimony wholesale, (Doc. 188 at 21).  Dr. Kosstrin should have been permitted to testify on these and other topics, and his exclusion from doing so warrants a new trial.

### 2.     Mr. Clauss was improperly excluded from testifying.

Mr. Keith Clauss is a former President and CEO of SK Engineering and Construction, USA, ("SK") a firm that was negotiating for an engineering, procurement, and construction ("EPC") contract for C2L's proposed plant.  (Doc. 197-2 at ¶ 1, 3).  C2L designated Mr. Clauss as a witness, (Doc. 169-4 at 3), intending to call Mr. Clauss to testify that Siemens' failure to provide an updated BEDP prevented C2L from getting a contract for the use of the gasification equipment (Doc. 197-2 at 4 (¶11)).  But the Court excluded Mr. Clauss from testifying as well, based upon Siemens' argument that the failure to provide an updated BEDP "was not raised as a defense to the breach of licensing agreement."  (Doc 238 (PTC Tr.) at 15).  This is false.

C2L pleaded as its eighth affirmative defense that Siemens materially breached the terms and conditions of the 2012 License and Service Agreement.  (Doc. 80 at 5).  As explained above, providing an updated BEDP and PDP is a material requirement under the agreement.  (*See* Doc. 288-1 at 6 and 8 (JTX001 p. 5:39–45 and p. 7:44–48); *see also* Doc. 197-20 (Sherman Affidavit) at 3 ¶¶ 6, 7 (discussing PDP and BEDP changes together with SK's request for updated project design and scope information)).  And C2L complied with all pretrial orders and thus had a right to call Mr. Clauss to address any contested facts.  *See United States v. Stephens*, 365 F.3d 967, 980 (11th Cir. 2004) (ordering new trial where exclusion of proffered testimony could have played a fairly important role in jury's deliberations).  His wholesale exclusion was error.

> **D.     A New Trial Is Warranted Because Siemens Was Improperly Permitted to Introduce Irrelevant and Inflammatory Evidence of a Decades-Old SEC Enforcement Action.**

C2L moved *in limine* to exclude any inquiry on cross-examination of its co-founder, President and CEO, regarding his past history with the Securities and Exchange Commission. (Doc. 172 at 9–16).  After originally reserving ruling on this issue, (Doc. 238 (PTC Tr.) at 31; Doc. 239), the Court notified counsel that it would deem such a line of questioning permissible under Fed. R. Evid. 608, (Doc. 272 (Tr. Vol. IV) at 90:7–91:6).  Counsel for Siemens inquired extensively on this topic during cross examination.  (Doc. 277 (Tr. Vol. V) at 96–99).

That line of questioning was improper under Rule 608 and Rule 403.  *See Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*, 37 F.3d 1460, 1464 (11th Cir. 1994) (holding that the district court abused its discretion by failing to grant new trial after erroneously permitting testimonial evidence of forgery accusation and a 25 year-old sanction

for overreliance on partner's work that was too weakly probative to survive Rule 403 balancing test). This SEC history is decades-old and therefore "too remote for proper consideration." *United States v. Perrier*, 619 F. App'x 792, 797 (11th Cir. 2015); *see United States v. Carter,* 516 F.2d 431, 434–35 (5th Cir.1975) (holding that ten-year gap rendered extrinsic offense evidence too remote to be probative). Moreover, this SEC history bears no relationship whatsoever to the issue of Siemens' alleged contractual repudiation. And the history of the SEC's inquiry—which included numerous separate judicial rulings in Mr. Kenny's favor—demonstrates that the result was hardly clear-cut. (*See* Doc. 172 at 10–11). Accordingly, the line of questioning was improper, resulting in a patently unfair trial.

### E.    A New Trial Is Warranted Because Siemens Introduced Irrelevant and Unduly Prejudicial Evidence Regarding C2L's Relationship with and Settlement of Debt with Arc Financial.

C2L moved *in limine* to prevent Siemens from presenting evidence at trial concerning C2L's relationship with Arc Financial, including the settlement of debt. (Doc. 172 at 1–6). That evidence was plainly irrelevant and thus inadmissible.

Irrelevant evidence is inadmissible. Fed. R. Evid. 402. And "relevant evidence" is defined as evidence "ha[ving] any tendency to make a fact [that is of consequence to the determination of the action] more or less probable than it would be without the evidence." Fed. R. Evid. 401; *see also Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1068 (11th Cir. 2014). Whether Secure Energy retired the debt owed to Arc Financial, and whether Arc Financial held shares of Secure Energy and had a manager on Secure Energy's board of directors had nothing at all to do with Siemens' breach of contract claim.

Even if the evidence was somehow relevant, it was unduly prejudicial, and is likely to have confused and misled the jury.  Rule 403 requires the exclusion of evidence, even if relevant, if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  Fed. R. Evid. 403; *United States v. Knowles*, 889 F.3d 1251, 1256 (11th Cir. 2018).  "Unfair prejudice . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (internal quotations omitted).  This information was not probative of whether C2L was required to pay the termination fee.  Thus, to the jury, it simply came out of left field and gave them the likely impression that retiring that debt was somehow impermissible, which it was not.[6]  The Court thus erred when it denied C2L's motion to exclude and permitted Siemens to present the evidence at trial, over C2L's objection.  (Doc. 237; Doc. 277 (Tr. Vol. V) at 75–88, 82–83).

**F.      A New Trial Is Warranted Because A Waiver Instruction Was Not Given.**

A litigant is entitled to have the jury instructed on its theory of the case "so long as there [is] competent evidence to support the theory and the instruction is properly requested." *In re BankAtlantic Bancorp, Sec. Litig*. No. 07-61542, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011).  The Court erred in declining to instruct the jury on waiver.  C2L proposed an instruction explaining, in part, that "[c]ontractual rights may be waived if they are knowingly, voluntarily

---

[6] It appears that Siemens was also attempting to promote the notion that it was Arc Financial, not Secure Energy or C2L, that purchased the gasification equipment.  This is simply false.  The $86 Million spent in furtherance of the project was raised through the traditional capital markets structure, through issuance of notes and stock certificates.  (Doc. 272 (Tr. Vol. IV) at 97:12–13; Doc. 277 (Tr. Vol. V) at 76:12–14).  It is false and misleading to suggest that Arc purchased the gasification equipment.

and intentionally abandoned," Doc. 218-7 at 47, and that "[a] waiver may be oral or written or may arise from conduct which shows that Siemens gave up that right," *id*.  The instruction indicated that C2L could prove the affirmative defense based upon: (1) Siemens' informing C2L that the 2012 License and Service Agreement was over and that Siemens would no longer support C2L's project; (2) Siemens' failure to inform C2L of and/or provide Improvements to their gasification Equipment and Technology; (3) Siemens having provided C2L with an outdated SIS control system, (Doc. 197-49 at 2 (DTX109)); (4) Siemens switching C2L's cooling screens with the Chinese cooling screens with pins that were too short, (Doc. 197-51 at 5–6 (DTX 112-3)); and (5) Siemens having failed to update C2L's BEDP and PDP.  *Id.*  That was a proper instruction that the jury should have been given an opportunity to consider.  *See Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Management, L.P.*, 850 N.E.2d 653, 658 (N.Y. 2006).  The Court's refusal to give the instruction was error warranting a new trial.

\*        \*        \*

In addition to the above arguments regarding Siemens' counterclaim, C2L also respectfully reserves for appeal its challenge to the denial of its motions for leave to conform the pleadings to the evidence via a second amended complaint (and continued trial date), (Docs. 137, 154, 213), the exclusion of its expert on all grounds, (Doc. 188), and the entry of summary judgment in favor of Siemens and against Secure Energy and C2L on all of Secure Energy and C2L's affirmative claims, (Docs. 203, 205, 208, 209).

WHEREFORE, for all the foregoing reasons, Defendant MidAmerica C2L, Inc. prays that the Court vacate its prior judgment (Docs. 293, 294) and grant a new trial, and for any other and further relief the Court deems just and proper.

Respectfully submitted,

DATE: March 30, 2020

BY:   */s/ Michael H. McGinley*
Michael H. McGinley, admitted PHV
DECHERT LLP
2929 Arch Street
Philadelphia, Pennsylvania 19104-2808
Phone: (215) 994-4000
Fax: (215) 994-2222
E-Mail: michael.mcginley@dechert.com

*/s/ Robert L. Devereux*
Robert L. Devereux, admitted PHV
Jeffrey R. Schmitt, admitted PHV
Michael R. Cherba, admitted PHV
DANNA MCKITRICK, P.C.
7701 Forsyth Blvd., Suite 800
St. Louis, Missouri  63105-3907
Phone: (314) 726-1000
Fax: (314) 725-6592
E-Mail: rdevereux@dmfirm.com

*/s/ Walter A. Ketcham, Jr.*
Walter A. Ketcham, Jr.
Florida Bar No. 156630
GROWER, KETCHAM, EIDE,
TELAN & MELTZ, P.A.
901 North Lake Destiny Road, Suite 450
Maitland, Florida 32751
Phone: (407) 423-9545
Fax: (407) 425-7104
E-Mail: waketcham@growerketcham.com

***Attorneys for Defendant***
***MidAmerica C2L Inc.***

## **LOCAL RULE 3.01(g) CERTIFICATION**

Pursuant to Local Rule 3.01(g), undersigned counsel conferred with counsel for Siemens Energy, Inc. via telephone on March 30, 2020, regarding MidAmerica C2L's Renewed Motion for Judgment as a Matter of Law and Alternative Motion for a New Trial. Counsel indicated that Siemens opposes the Motion.

/s/ *Michael H. McGinley*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on the thirtieth day of March, 2020, a true and accurate copy of the foregoing **Defendant MidAmerica C2L Inc.'s Renewed Motion for Judgment as a Matter of Law under Rule 50(b), Alternative Rule 59 Motion for a New Trial, and Memorandum in Support; Local Rule 3.01(g) Certification** were filed electronically with the Clerk of Court and served via the CM/ECF system upon all counsel of record, including the following:

Scott D. Baker
E-Mail: sbaker@reedsmith.com
William R. Overend
E-Mail: woverend@reedsmith.com
Jonah D. Mitchell
E-Mail: jmitchell@reedsmith.com
Adaline J. Hilgard
E-Mail: ahilgard@reedsmith.com
Christopher J. Pulido
E-Mail: cpulido@reedsmith.com
REED SMITH, LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659

Robert W. Thielhelm Jr.
E-Mail: rthielhelm@bakerlaw.com
P. Alexander Quimby
E-Mail: aquimby@bakerlaw.com
Baker & Hostetler, LLP
2300 SunTrust Center
200 South Orange Avenue
Post Office Box 112
Orlando, FL 32802

*Attorneys for Plaintiff*
*Siemens Energy, Inc.*

/s/ *Michael H. McGinley*