UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| SIEMENS ENERGY, INC., a Delaware corporation | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 6:17-cv-171-Orl-40LRH ) |
| MIDAMERICA C2L INCORPORATED, a Nevada corporation, | ) ) ) |
| Defendant. | ) ) ) ) ) |

### SIEMENS ENERGY, INC.'S RESPONSE TO MIDAMERICA C2L, INCORPORATED'S MEMORANDUM IN OPPOSITION TO AMENDED PROPOSED BILL OF COSTS

Plaintiff Siemens Energy, Inc. ("Siemens"), by and through its undersigned counsel, hereby submits its Response to Defendant MidAmerica C2L, Incorporated's ("C2L") Memorandum in Opposition to the Amended Proposed Bill of Costs [DN 304], pursuant to Federal Rule of Civil Procedure 54, 28 USC § 1920 and this Court's May 19, 2020 Order [DN 309].[1]

### STATEMENT OF RELEVANT FACTS

On July 18, 2016, C2L and its parent company, Secure Energy, Inc. ("Secure"), filed a Complaint against Siemens in the Circuit Court of the 20th Judicial Circuit, St. Clair County, Illinois. Siemens removed the Complaint to Federal Court on August 26, 2016 and the case was

---

[1] Siemens initially filed a proposed bill of costs, as well as a verified motion for taxation of costs and memorandum in support. (DNs 295, 296.) The Court denied the motion without prejudice under Local Rule 3.01(g) and because the motion was not required pursuant to Federal Rule of Civil Procedure 54. (DN 297.) Siemens thereafter amended its proposed bill of costs (DN 301) and C2L filed its "Memorandum in Opposition to Siemens Energy, Inc.'s Amended Proposed Bill of Costs" (DN 304). On May 19, 2020, the Court issued an Order construing C2L's "Memorandum in Opposition" as a motion and permitting Siemens to file a response before "addressing the merits of [C2L's] contentions." (DN 309.)

transferred to this Court on February 9, 2017. (*See* DNs 1, 33, 35-36.) C2L and Secure subsequently filed an Amended Complaint on April 21, 2017 alleging the following: Count I – Breach of Contract; Count II – Breach of Warranty of Fitness for Particular Purpose; Count III – Fraudulent Misrepresentation (Siemens' Support of Project); Count IV – Fraudulent Misrepresentation (Failure to Disclose Defects in Technology); Count V – Rescission (Fraud); and Count VI – Rescission (Failure of Consideration). (DN 63.) On October 13, 2017, Siemens filed its Answer to the Amended Complaint, as well as its Counterclaim against C2L for breach of contract. (DN 75.)

On July 29, 2019, after granting summary judgment in Siemens' favor, the Court dismissed Counts II, IV, V, and VI of Secure and C2L's Amended Complaint and entered Judgment in favor of Siemens and against Secure and C2L on Counts II, IV, V, and VI of Secure and C2L's Amended Complaint. (DNs 203, 205.) On October 16, 2019, after further granting summary judgment in Siemens' favor, the Court dismissed Count I (*i.e.*, the only remaining count[2]) of Secure and C2L's Amended Complaint and entered Judgment in favor of Siemens on Count I of Secure and C2L's Amended Complaint. (DNs 208, 209.) On February 25, 2020, the Court directed the Clerk of the Court to terminate Secure and C2L as plaintiffs and Siemens as defendant in the case style, and noted that only Siemens' Counterclaim remained in the case. (DN 242.)

A jury trial on Siemens' Counterclaim commenced on March 2, 2020. Upon completion of the presentation of evidence, the jury entered a verdict in favor of Siemens in the amount of Thirteen Million Two Hundred Thousand Three Hundred Ninety-Five and 50/100 Dollars ($13,200,395.50) on March 4, 2020. (DN 287.) On March 10, 2020, the Court entered an Order directing the Clerk to enter Judgment for Siemens for the verdict amount plus pre-judgment

---

[2] C2L and Secure had previously voluntarily dismissed Count III. (*See* DN 72.)

interest. (DN 293.) In turn, the Clerk entered a final Judgment for Siemens in the amount of Seventeen Million Seven Hundred Seventy-Six Thousand Seven Hundred Seventy-Three and 90/100 Dollars ($17,776,773.90) on March 11, 2020. (DN 294.)

Because Siemens prevailed on each of Secure and C2L's Claims against Siemens and on its Counterclaim against C2L, Siemens is the prevailing party in this action pursuant to Federal Rule of Civil Procedure 54.

## ARGUMENTS AND AUTHORITIES

As the prevailing party, Siemens is entitled to recover its taxable costs as a matter of right. *See* 28 U.S.C. §1920; Fed. R. Civ. P. 54. Pursuant to Federal Rule of Civil Procedure 54 and Local Rule 4.18 in the Middle District of Florida, a prevailing party has fourteen (14) days from entry of Judgment to submit to the Court a proposed bill of costs.[3] Siemens incurred costs of $110,282.56 in this action that are taxable under 28 U.S.C. § 1920.[4] These taxable costs are delineated in Siemens' Amended Bill of Costs. (DN 301.)

In support of its Amended Bill of Costs, and the particularly itemized claims and invoices therein, Siemens states as follows:

I. <u>Fees for printed or electronically recorded transcripts necessarily obtained for use in the case</u>

    A.    <u>Deposition Fees</u>

Siemens seeks to recover the cost associated with the following depositions:

---

[3] Siemens filed its original Bill of Costs on March 25, 2020 and its Amended Bill of Costs on April 8, 2020. (DNs 295, 301.)

[4] Although there is authority that would permit Siemens to recover *pro hac vice* fees, in the interest of narrowing the issues in dispute, Siemens has agreed to drop those amounts – totaling $1,500.00 – from its Amended Bill of Costs. *See, e.g.*, *Doe v. Jenner*, No. 2:18-cv-683-FTM-29MRM, 2019 WL 4051964, at *3 (M.D. Fla. Aug. 28, 2019); *Ford Motor Credit Co., LLC v. Delosh*, No. 8:09-cv-2124-T-23MAP, 2010 WL 1837794, at *3 (M.D. Fla. Apr. 16, 2010), *report and recommendation adopted*, No. 8:09-cv-2124-T-23EAJ, 2010 WL 1837789 (M.D. Fla. May 3, 2010).

| Date       | Deponent                                    |
|------------|---------------------------------------------|
| 2018-07-10 | Harry Morehead (Day 1)                      |
| 2018-07-11 | Harry Morehead (Day 2)                      |
| 2018-07-26 | Jack Kenny (Day 1)                          |
| 2018-07-27 | Jack Kenny (Day 2)                          |
| 2018-08-29 | Guido Schuld (Day 1)                        |
| 2018-08-30 | Guido Schuld (Day 2)                        |
| 2018-10-17 | Rolf Ruesseler (Day 1)                      |
| 2018-10-18 | Rolf Ruesseler (Day 2)                      |
| 2018-11-06 | Mark Confer                                 |
| 2018-11-07 | Wolfgang Streer                             |
| 2018-11-08 | Harry Morehead (Day 3)                      |
| 2018-12-11 | Frank Hannemann (Day 1)                     |
| 2018-12-12 | Frank Hannemann (Day 2)                     |
| 2018-12-19 | Lars Scott                                  |
| 2019-01-18 | Herbert Kosstrin                            |
| 2019-01-23 | Rolf Ruesseler, Siemens' 30(b)(6) (Day 1)   |
| 2019-01-24 | Rolf Ruesseler, Siemens' 30(b)(6) (Day 2)   |
| 2019-01-29 | Jack Kenny, Secure/C2L 30(b)(6) (Day 1)     |
| 2019-01-30 | Jack Kenny, Secure/C2L 30(b)(6) (Day 2)     |
| 2019-02-01 | Stephen Jenkins                             |
| 2019-02-04 | Nancy Smith                                 |
| 2019-02-07 | John Williams                               |

The invoices attached to the Amended Bill of Costs show the amounts incurred for deposition costs. C2L "agrees that the portion of these fees derived solely from the manual stenography deposition transcripts are taxable," but C2L "asserts that all of the other fees are prohibited in the Eleventh Circuit." (DN 304 at 7-8.) C2L is wrong on the other fees; as set forth below, they are taxable.

    1.    <u>Video Fees</u>

C2L first takes issue with the fees related to the videotaping of the depositions. This challenge fails. The Eleventh Circuit has held that the taxation of video depositions is allowable under 28 U.S.C. § 1920 where the depositions were noticed for videotaping and the non-prevailing party did not object at the time. *See Morrison v. Reichhold Chemicals, Inc.*, 97 F.3d 460, 464-465 (11th Cir. 1996); *U.S. E.E.O.C. v. W&O, Inc.,* 213 F.3d 600, 620 (11th Cir. 2000); *see also Joseph*

*v. Nichell's Caribbean Cuisine, Inc.,* 950 F. Supp. 2d 1254, 1258 (S.D. Fla. 2013) ("[a] deposition taken within the proper bounds of discovery will normally be deemed to be 'necessarily obtained for use in the case' and its costs will be taxed unless the opposing party interposes a specific objection that the deposition was improperly taken or unduly prolonged.") .

As C2L acknowledges, "[t]he general rule in the Eleventh Circuit is that 'when a party notices a deposition to be recorded by nonstenographic means, or by both stenographic and nonstenographic means, and no objection is raised at that time by the other party to the method of recordation, . . . it is appropriate under § 1920 to award the costs of conduction the deposition in the manner noticed.'" (DN 304 at 8 (quoting *Morrison*).)  At the threshold, it was Secure/C2L that noticed over half of the depositions (15 of 22)—all of which included video.  Secure/C2L cannot now complain that those depositions were videotaped.  For the seven remaining depositions noticed by Siemens, each was noticed for videotaping and Secure/C2L did not object.  Therefore, under the well-established Eleventh Circuit precedent, the videotaping costs are taxable and that should end the inquiry.

C2L also takes issue with the fact that no witnesses were called by video at trial, claiming this is further evidence videotaping was not necessary.  At the threshold, the Court prefers that parties do not call adverse witnesses who are present at trial by videotape—Judge Byron explained as much to counsel during the final pre-trial conference.  (DN 238 at 5 ["It's customary in the Middle District for the standing order to be that if the party is present, including party opponent, then you ask the questions of them live rather than play the deposition"]; *see also* DN 209 in *Blitz Telecom Consulting, LLC v. Peerless Network, Inc.,* Case No. 6:14-cv-307-Orl-40GJK.) Moreover, C2L is casting this issue through an improper lens—the case that was eventually tried was different in scope than the case that was discovered because of Siemens' pre-trial victories

that disposed of all of Secure/C2L's affirmative claims. Indeed, when these depositions were taken, all of Secure/C2L's affirmative claims against Siemens were still at issue.[5] The fact that the eventual trial was later slimmed down because Siemens prevailed in excluding Secure/C2L's expert and defeated all of Secure/C2L's affirmative claims on summary judgment does not obviate the need—when the depositions were taken—to videotape them for potential use at a trial of all claims.

Therefore, the depositions are deemed "necessarily obtained" and the cost associated with their videotaping are taxable.

### 2. Other Deposition Fees

C2L also takes issue with a number of other deposition fees, including fees for court reporter appearances, real-time transcription, rough copies and expediting. But these fees are all part of the bundle that the court reporting services included in their deposition packages; the fact that certain court reporter service specifically delineate various fees does not mean those fees were not necessary for use in the case. For example, TSG Reporting separates the "appearance fee" for the reporter's time from the fee for the transcript—but, logically, the transcript could not have possibly been prepared if the reporter did not appear for the deposition. The reporter's appearance was necessary. Real-time transcription was also necessary in view of the complex and highly technical subject matter (*e.g.*, gasification technology), as well as for some witnesses for which there were translators. And the rough copies and expediting was necessary for the briefing of the numerous pre-trial motions. All of these fees, which are outlined in the invoices attached to the

---

[5] In order for jurors to be able to exercise their prerogative in ascertaining the veracity and credibility of the witnesses, it was important to videotape the testimony of the witnesses rather than rely on a cold transcript, as the majority of the witnesses were outside the subpoena power of the Court.

Amended Bill of Cost, are related to the "necessary" depositions and are thus taxable. *See Morrison*, 97 F.3d at 464-465; *E.E.O.C.,* 213 F.3d at 620.

B.      Transcripts of Trial

During the course of the trial, Siemens (and C2L) purchased daily rough or "real-time" transcripts from the official reporter. Siemens used these transcripts for its trial preparations, including to prepare for cross-examination of witnesses and for closing argument. Siemens also used the transcripts to identify representations C2L's counsel made in opening statement and specific testimony given by C2L's witness, for the purpose of addressing, debunking and emphasizing these representations and statements during closing argument. Further, Siemens used the daily transcripts to make certain that none of C2L's representations and testimony were misstated during closing, and to identify documents for use as exhibits in closing that would underscore the fallacy of C2L's affirmative defense.

C2L cites *Maris Distributing Co. v. Anheuser-Busch, Inc.* for the proposition that the cost of trial transcripts is generally not taxable as a matter of course, but fails to acknowledge that *Maris* also held that it is within the trial court's discretion to determine whether the transcripts were "necessarily obtained for use in the case." (DN 304 at 11 (citing *Maris*, 302 F.3d 1207, 1225-26 (11th Cir. 2002).) Indeed, the Eleventh Circuit in *Maris* affirmed the district court's exercise of its discretion to tax costs of daily trial transcripts. *Id.* Similarly here, under the circumstances of this case—where Siemens utilized the transcripts in the formulation of its cross-examination and its closing arguments—it is within the discretion of this Court to grant the cost of the trial transcripts.

C2L's additional argument that the trial was completed in three days and did not include any expert testimony is a red herring. (DN 304 at 11-12.) Indeed, C2L itself ordered daily transcripts, contradicting its argument and further evidencing the necessity.

Moreover, the trial transcripts were used by both Siemens and C2L in post-trial motion practice. (DNs 298, 303.) And it should be noted that Secure/C2L has filed an appeal, which will likely further necessitate the use of the trial transcripts and further justify a finding of "necessity" for the trial transcripts. *See e.g. Majeske v. City of Chicago*, 218 F.3d 816, 825 (7th Cir. 2000) (considering use of transcripts for post-trial briefs as part of the "necessity" analysis); *see also Cadle v. Geico General Ins. Co.*, 2015 WL 4352048 at *6 (M.D. Fla. July 2015) (awarding cost of trial transcripts because they were necessary for responding to post-trial motions); *Denton v. DaimlerChrysler Corp.*, 645 F.Supp.2d 1215, 1228 (N.D. Ga. 2009) (same).

The daily trial transcripts were "necessarily obtained" and, therefore, taxable.

II. <u>Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case</u>

    A.    <u>Copy Costs for Exhibits and Exhibit Labels</u>

28 U.S.C. § 1920(4) provides for taxation of costs that are "fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." As the prevailing party, it is Siemens' burden to "provide sufficient detail and documentation regarding the requested costs so the opposing party may challenge the costs and the court may conduct a meaningful review of the costs." *Blitz Telecom Consulting, LLC v. Peerless Network, Inc.,* Case No. 6:14-cv-307-Orl-40GJK, 2016 WL 7325544, at *2 (M.D. Fla. Aug. 31, 2016). Here, Siemens has submitted detailed invoices for outside copy charges from DigiSource Discovery Solutions, Altep, and Epiq eDiscovery Solutions related to this category of taxable costs.

C2L argues that "Siemens made absolutely no attempt to demonstrate how any of these copies were necessary for trial as opposed to simply convenient for Siemens' counsel." (DN 304 at 13.) C2L's argument is wrong and misguided. To start, all of these copying costs were

necessary to comply with the local rules and the direct order from this Court as to how to present exhibits at trial. (L.R. 3.07; DN 69.) Moreover, C2L again improperly attempts to narrow the inquiry to the case that was tried, but C2L ignores that the case was originally prepared for trial in Spring 2019. At that point, all of Secure/C2L's claims against Siemens were still at issue, and the parties' joint pre-trial statement identified over a dozen witnesses and hundreds of exhibits on each side. The fact that the eventual trial was later narrowed because Siemens defeated all of Secure/C2L's affirmative claims is of no moment and does not obviate the need in the Spring of 2019—when Siemens was preparing for trial on all claims—to incur these costs. Therefore, these exhibit costs are taxable.

B.   Costs of E-Discovery

Recognizing that this case would be document intensive—especially due to Secure/C2L's extremely broad requests for documents from Siemens' parent company in Germany—the parties entered into an ESI agreement in January 2018, whereby they agreed to specific file formats for production, as well as requirements for production of metadata and searchable document formats. (*See* DNs 114, 116.) Each party acknowledged that the bulk of the document productions in this case would be in electronic form rather than paper form, and would include a large amount of data—and especially for Siemens in view of Secure/C2L's expansive document requests. This is in line with the realities of present-day litigation, as courts increasingly recognize.

Taxing e-discovery is a somewhat new area of law where courts have diverged in their approaches. *In re Aspartame Antitrust Litig.,* 817 F. Supp. 2d 608, 614 (E.D. Pa. 2011). The Eleventh Circuit has not yet weighed-in on the subject. Generally, although a court is restricted in awarding costs to the categories enumerated in § 1920, courts are free to interpret the meaning of the cast of categories listed within § 1920. *Tibble v. Edison Int'l,* 2011 WL 3759927, at *7 (C.D. Cal. Aug 22, 2011) (quoting *Taniguchi v. Kan Pacific Saipan, Ltd.,* 633 F.3d 1218, 1221 (9th Cir.

2011)). "'Once it is established that an item falls within 28 U.S.C. § 1920, the prevailing party is presumed to be entitled to recover costs, and the burden is on the losing party to show impropriety of an allowance.'" *Id.* (quoting *Cofield v. Crumpler,* 179 F.R.D. 510, 514 (E.D. Va. 1998)).

Under 28 U.S.C. § 1920(4), a prevailing party can recover "[f]ees for exemplification and the costs of making copies." The terms "exemplification" and "copying" originated in and were developed in the world of paper. *Kellogg Brown & Root Int'l v. Altanmia Commercial Mktg. Co.,* 2009 WL 1457632, at *3 (N.D. Tex. 2009). However, and ostensibly in recognition of the growing dependency on electronic discovery in federal courts, Congress amended the text of § 1920(4) in 2008 from "[a] judge or clerk of any court of the United States may tax as costs the following: ... fees for exemplifications and copies *of papers*" to "fees for exemplification and the costs of making copies of *any materials.*" *Jardin v. DATAllegro, Inc.*, 2011 WL 4835742, at *5 (S.D. Cal. 2011) (citing Judicial Administration and Technical Amendments Act of 2008, Pub. L. No. 110–496, § 6, 122 Stat. 4291, S. 3596) (emphasis added by *Jardin* court).

One area of difference between the courts relates to the cost of converting e-data from one form to another and duplication of electronic files as an exemplification cost. *Id.* at *6. The better-reasoned cases recognize the developing need for expertise in complying with the highly technical and complex ESI discovery requirements and account for technological advances in document storage and retrieval—these cases rightfully recognize that electronic scanning and imaging of paper documents is the modern-day equivalent of "exemplification and copies" of paper. *See Fast Memory Erase, LLC v. Spansion, Inc,* 2010 WL 5093945, at *5 (N.D. Tex. 2010) *report and recommendation adopted*, 2010 WL 5093944 (N.D. Tex. 2010) *aff'd sub nom. Fast Memory Erase, LLC v. Intel Corp.,* 423 Fed. Appx. 991 (Fed. Cir. 2011); *see also Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 647 F.3d 158, 171 (3rd Cir. 2012) (holding that scanning of hard

copy documents and conversion of file formats were taxable forms of "copying" under §1920(4)). On the other hand, some courts have taken a narrower approach, finding that costs for database generation and other ESI services that do not qualify as "copying" and is instead a "convenience" of counsel. *See e.g. Kellogg*, 2009 WL 1457632 (S.D. Tex. 2009).

C2L argues for the narrower (and less-logical) approach. C2L, citing an uncontrolling case from the Federal Circuit, argues that "§ 1920 includes only 'the costs of creating the *produced* duplicates,' and 'not a number of prepatory or ancillary costs commonly incurred *leading up to, in conjunction with or after duplication.*'" (DN 304 at 14 (citing *CBT Flint Partners, LLC v. Return Path, Inc.* 737 F.3d 1320, 1326 (Fed. Cir. 2013)).) But, as the Sixth Circuit stated, the limitation of ESI vendor costs to file conversion, under § 1920, is "overly restrictive." *Colosi v. Jones Lang LaSalle Americas, Inc.*, 781 F.3d 293, 295 (6th Cir. 2015) (holding that imaging of hard drives for ESI evaluation was also compensable under § 1920(4)). Courts have routinely followed the Sixth Circuit's logic and hold that the cost of copying of metadata and hard drives was taxable. *See, e.g., Split Pivot, Inc. v. Trek Bicycle Corp.*, 2015 WL 9593630, at *9 (W.D. Wis. Dec. 2015); *see also U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 807 F.3d 125, 132 (5th Cir. 2015) (affirming an award of "conversion and character recognition costs").

For example, the District of Idaho awarded a prevailing party $4.6 Million in costs for creating a litigation database in order to comply with ESI discovery requests. *See Lockheed Martin Idaho Technologies Co. v. Lockheed Martin Advanced Environmental Systems, Inc.*, 2006 WL 2095876 (D. Idaho July 2006). In that case, the trial court considered the complexity of the case and the volume of documents that needed to be organized. *Id.* Recognizing that the creation of the database "saved immense time for counsel who otherwise would have to sift through the documents by hand," the court awarded the costs under § 1920(4).

Here, it is important to note that the creation of litigation databases, and the management of electronic documentation, saved *both* sides on their litigation expense; not just the party who created the database. That is precisely why the parties *agreed* to enter into an ESI agreement near the outset of the case that outlined specific steps each side must take to produce the electronic data in the proper format with all the proper metadata—Secure/C2L would have incurred significantly more attorneys' fees in the case if Siemens had produced all of its documentation in printouts and left Secure/C2L's counsel to sort through it.

Therefore, in the absence of binding authority from the Eleventh Circuit, Siemens requests that the Court exercise its discretion to follow the line of cases that agree the costs of its e-discovery under § 1920(4). *See Lockheed Martin, supra* (awarding costs for generation of a litigation database); *Chenault v. Dorel Industries, Inc.*, 2010 WL 3064007 at *4 (W.D. Tex. Aug. 2010) (awarding costs for generation of a database under §1 920(4) that saved the parties much more in fees and disbursements for printing under § 1920(3)); *In re Aspartame Antitrust Litig.*, 817 F. Supp. 2d 608, 615 (E.D. Pa. 2011) (awarding costs for the creation of a litigation database, storage of data, imaging hard drives, keyword searches, deduplication, data extraction and processing); *Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484, at *28 (C.D. Cal. 2015) (awarding costs for "data extraction and processing costs").

## **CONCLUSION**

Siemens, as the prevailing party, seeks an award of its taxable costs. Siemens requests that the Court exercise its discretion in interpreting what costs are taxable under § 1920, and that it amend the Judgment in this case to include an award of all costs the Court deems appropriate. The Court should enter and Order directing the Clerk to enter an Amended Judgment that includes an award of such taxable costs.

Dated:  June 2, 2020

                    Respectfully submitted,

By:   */s/ Jonah D. Mitchell*
Robert W. Thielhelm, Jr.
Florida Bar No. 889679
**Baker & Hostetler LLP**
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Telephone: 407.649.4000
Facsimile: 407.841.0168
Email: rthielhelm@bakerlaw.com

Scott D. Baker (admitted pro hac vice)
Jonah Mitchell (admitted pro hac vice)
Adaline J. Hilgard (admitted pro hac vice)
Christopher J. Pulido (admitted pro hac vice)
**Reed Smith LLP**
101 Second Street, Suite 1800
San Francisco, CA  94105-3659
Telephone: 415.543.8700
Facsimile: 415.391.8269
Email:  sbaker@reedsmith.com
Email:  jmitchell@reedsmith.com
Email: ahilgard@reedsmith.com
Email:  cpulido@reedsmith.com

*Counsel for Siemens Energy, Inc.*

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on June 2, 2020, a true and correct copy of the foregoing was submitted to the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to the following listed counsel:

Robert L. Devereux
Jeffrey R. Schmitt
**Danna McKitrick, P.C.**
7701 Forsyth Blvd., Suite 800
St Louis, MO 63105
Telephone: (314) 726-1000
Fax: (314) 725-6592
Email: rdevereux@dmfirm.com
Email: jschmitt@dmfirm.com

Michael H. McGinley
**DECHERT LLP**
2929 Arch Street
Philadelphia, Pennsylvania 19104-2808
Phone: (215) 994-4000
Fax: (215) 994-2222
E-Mail: michael.mcginley@dechert.com

Walter A. Ketcham , Jr.
**Grower, Ketcham, Eide, Telan & Meltz, PA**
901 N Lake Destiny Rd., Suite 450
PO Box 538065
Orlando, FL 32853-8065
Telephone: (407) 423-9545
Fax: (407) 425-7104
Email: enotice@growerketcham.com

      DATED:  June 2, 2020.

      */s/ Jonah D. Mitchell*
      Jonah D. Mitchell