UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| MIDAMERICA C2L INCORPORATED, a Nevada corporation; and SECURE ENERGY, INC., a Nevada corporation, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) No.: **6:17-CV-00171-PGB-LHP** |
| v. | )<br>) **Dispositive Motion** |
| SIEMENS ENERGY, INC., a Delaware corporation, | )<br>)<br>) |
| Defendant. | )<br>)<br>) |

**SIEMENS ENERGY, INC.'S REPLY BRIEF IN SUPPORT OF RENEWED MOTION FOR SUMMARY JUDGMENT**

No one knows the history of this case more than this Court. As such, it will be readily apparent that, from beginning to end, Secure's Opposition tells a fabricated story divorced from the pleadings, undisputed facts, and applicable law. In the operative First Amended Complaint ("FAC"), the only fraud allegations Secure pled with requisite particularity relate to the parties' 2012 LSA and assert Siemens Energy: (1) knew of four alleged defects between "[b]etween October 31, 2010 and July 18, 2012"; and (2) failed to disclose them at a meeting in October 2012. Docket Number ("DN") 63 ¶¶50, 67-68. This lawsuit is, moreover, limited to those allegations. This Court previously ruled Secure could not amend its FAC to add new allegations or theories. DN 137; DN 154; DN 213. The Eleventh Circuit affirmed those rulings. DN 336 at Apx. B, p. 36-40. Each of Secure's non-pleaded assertions is thus irrelevant. By the same token, Secure's pleaded claims cannot survive summary judgment for the reasons Siemens Energy's motion provides.

### A.     Secure's Breach of Implied Warranty Claim (Count II) Fails

The parties' warranty disclaimer in the 2012 LSA is dispositive of Count II and Secure's efforts to avoid it on grounds of unconscionability are meritless. The disclaimer is in all capital letters, and Secure's Opposition confirms other essential facts showing the disclaimer is not one to "which no man in his senses and not under delusion" would agree. *Ng v. HSBC Mortg. Corp.*, Case No. 07-CV-5434 (RRM)(VVP), 2011 U.S. Dist. LEXIS 88549, (E.D.N.Y. Aug. 10, 2011) at *26.

Secure argues, with much hyperbole but without support, that Siemens Energy "put Secure under pressure to sign the 2012 LSA" and preyed on Secure's "lack of bargaining power, essentially forcing [Secure] into a room with no escape with the only option being

to sign the 2012 LSA," and that Secure lacked meaningful choice in 2012. DN 337 at 19-20, n.17. But as this Court knows, the undisputed evidence establishes *Secure*—not Siemens Energy—was the impetus for the 2010 and 2012 contracts because it needed a new license agreement to extend payment deadlines, restructure license terms, or change geographic restrictions. Secure admitted as much in responses to requests for admission.[1] DN 149-22 at 5, 7; *see* DN 149-4 at 73; DN 149-7 at 63–65; DN 149-5 at 11. Nor does Secure dispute that it had legal counsel and a technical advisor, or that it chose between multiple well-known suppliers before contracting with Siemens Energy in 2007. DN 149-22 at 6; DN 337 at 5. The 2012 LSA disclaimer also is the *same one* which Secure had agreed to *twice* before – in the 2010 LSA and 2007 ESA – simply carried forward to the 2012 LSA. *Compare* DN 149-5 at 34 & 68, DN 149-3 at 28. Each agreement also bound Siemens Energy to performance guarantees and testing, disclosure, repair, and replacement terms for Secure's benefit. *See, e.g.,* DN 149-5 at 11 *through* DN 149-7 at 62. Simply put, Secure's hyperbole about the 2012 LSA cannot be credited because the record refutes it.

On the actual record, and contrary to Secure's assertion, unconscionability most certainly can be decided on summary judgment. A trial is necessary only "[w]here there is doubt . . . as to whether a contract is fraught with elements of unconscionability"—but not where, as here, "the significant facts germane to the unconscionability issue are essentially undisputed." *Simar Holding Corp. v. GSC*, 87 A.D.3d 688, 690 (2011), citing *Scott v*

---

[1] Secure's principal also conceded, and its 2011 shareholder meeting minutes describe, that Secure considered it a "major accomplishment" to obtain Siemens Energy's agreement to extend performance guarantees and payment deadlines (later memorialized in the 2012 LSA). DN 149-2 at 379:19-380:15. Its Financial Statements also explain that the 2012 LSA was to extend guarantees and its payment deadlines. DN 149-5 at 5. The contracts themselves confirm their principal differences relate to payment deadline and license extensions to accommodate Secure's evolving plans.

*Palermo*, 233 AD2d 869, 870 (App.Div. 1996) (on summary judgment, conspicuous provision not unconscionable where party had commercial experience and meaningful choice); *Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*, 95 A.D.2d 5, 20-21 (App.Div. 1983) ("In cases involving transactions of a commercial nature, courts have rarely found unconscionability"; on summary judgment, no unconscionability; commercial plaintiff had notice of provision and choices of providers, and contract had terms for repair/replacement of defective parts); *Ng*, 2011 U.S. Dist. LEXIS 88549, at *24 (rejecting conclusory allegations of "high pressure" tactics and unequal bargaining power, finding no unconscionability on summary judgment).[2]

      **B.**     **Secure's Fraud Claims (Counts IV and V) Fail**

Secure's parade of meritless arguments continues with respect to its fraud claims.

**1. The independent tort doctrine bars Secure's fraud claims.** Secure's Opposition does not refute the factual analysis or undisputed record evidence showing why its fraud claims are barred. It argues instead that the independent tort doctrine does not apply as a matter of law because Secure purportedly pled fraudulent inducement. DN 337 at 17-18. Secure is wrong for two reasons. First, it did **not** plead fraudulent inducement. The only allegation in the FAC that meets Rule 9(b)'s requirement of specifically stating *when*, *where* and *by whom* the alleged misrepresentations or omissions occurred, alleges

---

[2] Secure's cases are easily distinguished. In *M&T Mortg. Corp. v. Miller*, 323 F.Supp.2d 405 (E.D.N.Y. 2004), a mortgage company preyed on consumers, forcing them into predatory sales and lending agreements and steering them to use corrupt attorneys. In *Industralease Automated & Scientific Equipment Corp. v. R.M.E. Enterprises, Inc.*, 58 A.D.2d 482, 488, 490 (App.Div. 1977), a manufacturer created an "atmosphere of haste and pressure", requiring a picnic grove company to sign a new lease eliminating warranties in a prior lease before delivering the leased incinerators just before picnic season. None of that is reflected on this record. Secure's reliance on these cases is another flight of fancy. Secure's attempt to tie in fraud theories fares no better; unpled fraud allegations are not in the case and Secure's fraud claims fail, as set forth below.

3

Mr. Ruessler of Siemens Energy fraudulently omitted information in *October 2012* at a meeting with Secure's potential contractor, SK. DN 63 at ¶¶50, 68. That alleged omission thus occurred three months *after* execution of the July 2012 LSA and it *cannot* possibly have induced the contract. With no answer for this analysis, Secure again tries to *re-write* its claims based on inadmissible **unpled** purported representations and omissions, none of which can defeat summary judgment. DN 337 at 3, 6-8, 12-14, 17.[3] Rather, Secure is bound by the allegations it made, its efforts to amend its pleadings on the fly are improper, and there is no claim for fraudulent inducement possible. *See Dooley Mack Constructors, Inc. v. M & I Marshall Ilsley Bank*, Case No.: 8:08-cv-2195-T-33MAP, 2010 WL 2035139, at *6 (M.D. Fla. May 21, 2010) (no inducement where claim not pled with particularity).

Second, apart from the Rule 9(b) analysis, the independent tort doctrine *does* bar Secure's fraud claims. DN 336 at 14-18. Secure's authority, *HTP, Ltd. v. Lineas Aereas Costarricenses*, 685 So. 2d 1238, 1239 (Fla. 1996), manifestly does not establish a *per se* rule that *all* fraudulent inducement claims are independent torts. *Hotels of Key Largo v. Rhi Hotels,* 694 So.2d 74, 76-77 (Fla.Dist.Ct.App. 1997) (analyzing *HTP*, stating "simply applying the label of 'fraudulent inducement' to a cause of action will not suffice to subvert

---

[3] For example, Secure did not plead that Siemens Energy (1) misrepresented its "operating experience", (2) represented that NCPP operations were "operating ahead of schedule" and "exceeding expectations" while omitting alleged facts; or (3) "cut corners" or "fabricated information about" gasifiers. *Id*. at 6, 7, 13-14.  Nor did Secure plead facts regarding the March 5, 2012 presentation to which it cites. *Id*. at 8, 14, citing DN 146-19. That presentation, moreover, was directed ***to SK***; Secure was not invited to the meeting, did not have the presentation, and could not possibly have relied on it. DN 164-13 ¶15, Exs. 11-12. Secure is not permitted to amend its claims as this Court and the Eleventh Circuit have conclusively determined. DNs 133, 133-1, 135, 137, 154, 204, 212, 212-1, 213, 336 at Apx. B, p. 36-40. Siemens Energy objects to the numerous unpled accusations and unsupported statements in Secure's Opposition, which cannot create a triable issue. There are too many to address here—and there is no need to do so for purposes of deciding this motion. For a point-by-point rebuttal and objections, please see DN 163 at 5-18, DN 230 at 8-11.  Although not needed to dispose of Secure's claims, Siemens Energy also objects to Secure's reliance on irrelevant, unreliable NCPP evidence to prove alleged defects. *See* DN 336 at Apx. B, p. 23-27; DN 188.

the sound policy rationales underlying the economic loss doctrine."); *Force v. ITT Hartford Life & Annuity Ins. Co.*, 4 F.Supp.2d 843, 852 (D.Minn. 1998) ("Florida courts have not adopted a *per se* rule regarding whether the economic loss rule applies to claims of fraudulent inducement; rather, such a determination depends on the specifics of each case").[4] Instead, *HTP*, and cases decided after it, recognize fraudulent inducement claims are barred where, as here, the alleged fraud is interwoven with contractual duties and performance breaches. An unbroken line of authority so provides.[5] *See HTP*, 685 So. 2d at 1239-1240, citing *Huron Tool and Eng'g Co. v. Precision Co. v. Precision Consulting Services, Inc.*, 209 Mich. App. 365 (Mich. Ct. App. 1995); *Hotels,* 694 So.2d at 76-77 (fraudulent inducement claims not independent and are barred because "alleged misrepresentation concerns the heart of the parties' agreement"); *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1316 (11th Cir. 2007) (citing *Hotels*; inducement claim fails; plaintiff "complains about nothing more than that [defendants] did not fulfill their promises under the contract – exactly the basis for a breach of contract claim"); *HTC Leleu Family Trust v. Piper Aircraft, Inc.*, Case No. 1:12-cv-21118-KMM, 2012 U.S. Dist. LEXIS 149498, at *11 (S.D.Fla. Oct. 17, 2012) (same; fraud allegations related to whether defendant "breached the agreement by providing a defective Aircraft"); *Island Travel & Tours, Ltd., Co. v. MYR Indep., Inc.*, 300 So.3d 1236, 1239 (Fla.Dist.Ct.App. 2020) ("The only properly alleged misrepresentation simply has to do with [the plaintiff's] failure to perform"); *Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d

---

[4] The economic loss doctrine is related to the independent tort doctrine, which is applied outside the products liability context. *Regan v. Bank of Am., N.A.*, 2023 U.S.Dist.LEXIS 173505, at *19 (S.D.Fla. Sep. 27, 2023).
[5] Thus, Secure's assertion that Siemens Energy and the Eleventh Circuit incorrectly considered *contractual* duties when analyzing Secure's fraud claims under the independent tort doctrine is wrong. DN 337 at 14, n.9.

5

1197, 1222-23 (11th Cir. 2018) (quoting *Thompkins*, *Hotels*; inducement theory barred where "interwoven and indistinct from the heart of the contractual agreement").

Once again, there also is no dispute that Secure's fraud claims *are* interwoven with contractual duties and performance breaches.[6] Secure itself has argued that the parties' contracts imposed on Siemens Energy an "ongoing duty to disclose to Plaintiffs the existence of material defects in the technology and equipment, including a duty to disclose modifications made" based on, and to keep them informed of, the NCPP project. DN 161 at 17; DN 146 at fn. 3 ("Siemens had a continuing 'duty to speak' in advising Secure with respect to defects and modifications to the gasification technology, namely those learned from the Chinese project", citing 2012 LSA); DN 218 at 5 ("Siemens breached the 2012 [LSA] by failing to inform[, and making] statements and omissions" regarding technology improvements). By Secure's own admissions, the alleged fraud—failure to disclose defects—amounts to an alleged failure to perform and is barred.[7] *See* DN 336 at 14-18.

**2. Secure's fraud claims are not salvageable.** Secure argues it need not establish a duty to disclose because misrepresentations and omissions are closely related. DN 337 at

---

[6] *Global Quest, LLC v. Horizon Yachts, Inc.,* 849 F.3d 1022, 1031 (11th Cir. 2017), is distinguishable because the alleged misrepresentations were about yacht condition and building standards, which the contract did not address. Moreover, *Global*, a post-*HTP* case, *supports* Siemens Energy's position by recognizing that, to survive, fraudulent inducement allegations must be "separate and distinct" from contract performance. *Id*.

[7] Secure's assertion that the Eleventh Circuit's analysis is doomed by its misstatement that Secure "voluntarily dismissed its claim for fraudulent inducement" is baseless. Secure, conspicuously, omits the Panel's full statement, which makes clear it was referring to a claim for inducement of the 2007 LSA, which Secure never pled, and that any such claim was waived. The full statement reads: "And, even if Secure was fraudulently induced ***into the original 2007 agreement***, Secure not only ***waived all fraud claims in the 2010 Contract***, but it voluntarily dismissed its claim for fraudulent inducement during the course of this litigation." DN 336 at Apx. A, p. 37 (emph. added). Also, the Panel *understood* Secure's inducement theory: It cited authority *in the context of inducement* (*Global Quest*) and observed that the alleged fraud "predated the *2012 Completion Agreement and 2012 LSA*." *Id*. at 35, 36 (emph. in original). Finally, whether or not Secure's fraud claims allege inducement, they are barred as indistinct from contract claims, as set forth above.

14.[8] Secure's authority, however, does not address, much less eliminate, the requirement that "[a] defendant's knowing concealment or non-disclosure of a material fact ***may only support an action for fraud where there is a duty to disclose***."[9] *Sokolow v. Damico,* 2019 U.S. Dist. LEXIS 220849, at *9-10 (S.D. Fla. Dec. 26, 2019) (emph. added).

Further, Secure's assertion that Siemens Energy made *representations* while *omitting* material information fails to defeat summary judgment because, again, the representations, omissions, and incidents on which Secure purports to rely were not pled and are not at issue. DN 337 at 14.[10] Secure also fails to rebut that its fraud claims are based on a promise of future action, which alone warrants summary judgment. DN 336 at 20-21.

Finally, Secure's legal remedies are not inadequate for the reasons Siemens Energy has shown. Secure's *only* response is that it is storing and cannot return large equipment but that has nothing to do with any rescission remedy *under this claim*, which seeks rescission *of the 2012 LSA*. DN 337 at 15. Secure did not purchase the equipment under the 2012 LSA; it purchased the equipment *under the 2007 ESA*. If the *2012 LSA* is rescinded, that would return to the status quo as it existed before the parties entered into 2012 LSA. *See Royal v. Parado,* 462 So.2d 849 (Fla. 1st DCA 1985). The status quo before the 2012 LSA was the 2010 LSA. Secure would be in arrears on unpaid license fees and

---

[8] Here, the alleged "duty to disclose" (DN 63 ¶¶ 48, 66) arises from *contracts*, thus triggering the independent tort doctrine; alternatively, Secure also does not demonstrate a *common law* duty to disclose. DN 336 at 19.

[9] Secure's reliance on *Woods v. On Baldwin Pond, LLC,* 634 F.App'x 296, 297 (11th Cir. 2015), which found that the defendant pled inducement based on omissions, explained that there's no "stark distinction" between misrepresentations and omissions, but did not address, or do away with, the requirement that plaintiffs must establish a duty to disclose for fraud by omission claims. *Id.* at 298.

[10] As for alleged omissions during the October 2012 meeting, the Eleventh Circuit expressly determined that Siemens Energy met its obligations: "[T]he record evidence establishes that Siemens *did* provide Secure notice of design improvements on October 31, 2012 . . . Siemens indicated that it would include the design improvements if Secure paid for the re-engineering." DN 336 at Apx. B, p. 45 (emph. in original).

there would be no impact whatsoever on its equipment storage.

### C.  Secure's Rescission-Failure of Consideration Claim (Count VI) Fails

Florida law does not recognize Secure's Count VI. DN 336 at 21. To try to avoid the inevitable, Secure mischaracterizes the Eleventh Circuit's opinion to argue New York, not Florida, law applies to it (and to Count V for fraud-rescission). Here again, the record refutes Secure's contention. The parties agreed New York law applied to Secure's breach of contract and breach of implied warranty claims (Counts I and II) and Siemens Energy's counterclaim, *i.e.*, the "contract claims" referenced in the Eleventh Circuit's opinion. But they disputed which law applied to Secure's fraud and rescission claims (Counts IV-VI), arguing variously for Florida, Kentucky, Missouri, or New York law. DN 149 at 12-13, 23; DN 161 at 11; DN 146 at 13 (Secure arguing Florida law applies to 2007 contract). On the prior summary judgment, this Court applied Florida law to *all* of the fraud and rescission claims, and Secure did not appeal choice of law. The Eleventh Circuit, in both opinions, thus recognized the parties (1) did ***not*** "dispute that New York law applies to the contract claims", *i.e.*, Counts I and II and the counterclaim; and (2) ***did*** dispute "whether the law of Kentucky, Missouri, or Florida law should apply" to Secure's other claims, *i.e.*, the "non-contract" claims, Counts IV-VI. DN 336 at Apx. A, p. 27, Apx. B, p. 27-28. It then held that the parties waived choice of law, and because this Court had applied Florida law to the "non-contract" claims, Florida law applied to those claims. *Id*. It clearly was referring to Counts IV-VI because *those were the claims the parties had disputed, and on appeal, had waived, choice of law*. In its first opinion, the Eleventh Circuit also *went on to apply Florida law* to Counts IV, V, and VI. DN 336 at Apx. A, p. 34-37. In sum, the "contract" claims

8

are those to which *"the parties agree[d] New York law governs"*, and the "non-contract" claims are the fraud claims and rescission claims (which, incidentally, seek to *avoid* a contract) to which Florida law applies. There is no reason for this Court to do anything other than what it did before – apply Florida law and hold that Count VI fails.

While a proper choice of Florida law remains dispositive, Secure's argument has no factual support in any event. Its latest theory is that consideration "failed" because of "substantial and fundamental" "breaches" and "failure to perform" under the 2007 contract. DN 337 at 16. But Secure did not plead breach of contract on this theory (*see* DN 204 (no other breach theories are to be advanced)), and it is undisputed, as the Eleventh Circuit observed, that the parties *terminated*, and Secure *released and waived all claims* under, the 2007 contracts in the 2010 Completion Agreement. DN 336 at Apx. B, p. 7; DN 149-4 at 74; DN 149-2 at 281-286:1; DN 146 at 5, #27. Secure cannot rewrite history here either.

Secure also cannot show its legal remedies are inadequate because the 2007 contracts (and the 2010 and 2012 LSAs) include adequate, agreed *legal* remedies for defects and breach. Siemens Energy was obligated to meet guarantees and "Remedy the nonconformity" (defined as "*correction of warranty nonconformity or defect*"). The parties also agreed to limited liability and liquidated damages provisions. DN 149-3 at 10, 20-27, 36 [§§5.0-5.6, 15.1-3, 1.0 ("Remedy")]; DN 149-5 at 30-34, 40, 64-68; DN 149-6 at 5.[11]

Finally, Secure does not rebut that Count VI is also time-barred under Florida (and New York) law. *Rubin v. Rubin*, 275 A.D.2d 404, 405 (App.Div. 2000); CPLR 213[1]

---

[11] Secure was required to pay Siemens Energy for license fees, but that does not render the breach of contract remedies inadequate. *See Acquafredda v. Messina*, 408 So. 2d 828, 829 (Fla. Dist. Ct. App. 1982) (inability to post required bond did not make remedy inadequate).

(New York six-year bar).

### D.   Secure's Damages Claims Fail Because It Cannot Prove Causation

Secure also fails to meet its burden to show that its alleged harm was *proximately caused* by alleged design defects or omissions. DN 336 at 23-25. The undisputed record shows that Secure was not even aware of the alleged defects until *after* its business collapsed (and thus defects could not have *caused* the collapse). Secure speculates that a jury "can conclude that a bank would not finance a project built around equipment that needed to be 'scrapped'" and that SK "knew that the gasifiers were flawed" and "without required modifications, SK could not provide Secure with a final maximum EPC contract price." DN 337 at 19. But what these nonparties would do, or not do, and how Secure's business purportedly would be impacted, is rank speculation, nothing more. Secure needs evidence from an expert or otherwise to prove that but for the alleged design defects, SK would have offered Secure an acceptable EPC contract, Secure would have accepted it, *and* an unspecified bank would have financed Secure's massive project. But there is no such evidence, and that is no doubt because of the many obstacles—unrelated to equipment—inhibiting Secure's project and financing.[12]

The Eleventh Circuit expressly articulated why Secure's case is amenable to summary resolution and the record and briefing before this Court bears that out. Siemens Energy's motion should be granted.

---

[12] Secure's reliance on SK, Sega, and Scott declarations goes nowhere. DN 337 at 19-20. Secure ignores the undisputed fact that Siemens Energy informed Secure (in 2012 and 2014) that it could buy an updated BEDP to account for iterative improvements, provided it pay for the update (which it never did). DN 336 at Apx. B p. 45; DN 221-38 at 4 #7; DN 149-2 at 420:23-424:7, 441:22-445:13. Secure also concedes SK had US labor market concerns and the SK discussions ended when Secure *rejected* SK's proposed contract, rendering the updated BEDP moot. DN 149-2 at 327:7-330:19, 395:12-401; DN 149-9 at 328:6-333:9; DN 230 at 22-24.

Dated: October 27, 2023

        Respectfully submitted,

        BY: /s/   Jonah D. Mitchell
        Jonah D. Mitchell, *admitted pro hac vice*
        Adaline Hilgard, *admitted pro hac vice*
        101 Second Street, Suite 1800
        San Francisco, CA 94105-3659
        Phone: (415) 543-8700
        Facsimile: (415) 391-8269
        E-Mail: jmitchell@reedsmith.com
                ahilgard@reedsmith.com

        and

        Robert W. Thielhelm, Jr.
        Florida Bar No. 889679
        **BAKER & HOSTETLER, LLP**
        SunTrust Center, Suite 2300   .
        200 South Orange Avenue
        Orlando, FL 32801-3432
        Phone: (407) 649-4000
        Facsimile: (407) 841-0168
        E-Mail: rthielhelm@bakerlaw.com

        **Attorneys for Defendant & Counterclaimant Siemens Energy, Inc.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 27, 2023, a true and correct copy of the foregoing was submitted to the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to the following listed counsel:

Robert L. Devereux
**DANNA MCKITRICK, P.C.**
7701 Forsyth Blvd., Suite 800
St Louis, MO 63105
Telephone: (314) 726-1000
Fax: (314) 725-6592
Email: rdevereux@dmfirm.com

Michael H. McGinley
**DECHERT LLP**
2929 Arch Street
Philadelphia, Pennsylvania 19104-2808
Phone: (215) 994-4000
Fax: (215) 994-2222
E-Mail: michael.mcginley@dechert.com

Anthony G. Simon
Jeremiah W. Nixon
**THE SIMON LAW FIRM, P.C.**
800 Market Street, Suite 1700
St. Louis, MO 63101
Phone: (314) 241-2929
Fax: (314) 241-2029
E-Mail:  asimo@simonlawpc.com
E-Mail:  jnixon@simonlawpc.com

Walter A. Ketcham , Jr.
**GROWER, KETCHAM, EIDE, TELAN & MELTZ, PA**
901 N Lake Destiny Rd., Suite 450
PO Box 538065
Orlando, FL 32853-8065
Telephone: (407) 423-9545
Fax: (407) 425-7104
Email: enotice@growerketcham.com

A copy was also served via U.S. Mail and e-mail:

Walter A. Ketcham, Jr.
**FISHER RUSHMER, P.A.**
200 E. Robinson St.. Suite 800
Orlando, FL  32751
Email:  wketcham@fisherlawfirm.com

    DATED:  October 27, 2023.         */s/ Jonah D. Mitchell*
                                                               Jonah D. Mitchell.