UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**MIDAMERICA C2L INCORPORATED and SECURE ENERGY, INC.,**

    **Plaintiffs,**

v.                Case No:  6:17-cv-171-PGB-LHP

**SIEMENS ENERGY, INC.,**

    **Defendant.**

              /

## ORDER

   This cause is before the Court on Siemens Energy, Inc.'s ("**Siemens**") Renewed Motion for Summary Judgment. (Doc. 336 (the "**Motion**")). Plaintiffs MidAmerica C2L Inc. and Secure Energy Inc. (collectively "**Secure**") submitted a Response in Opposition (Doc. 337), and Siemens Energy, Inc. replied. (Doc. 338). Upon due consideration, the Motion is granted.

**I.  BACKGROUND**

   This lawsuit arises from a contract dispute between Plaintiffs, Secure Energy, Inc. and its subsidiary MidAmerica C2L, Inc., and Defendant Siemens. (Doc. 63, ¶¶ 5–8). On December 24, 2007, Secure and Siemens executed a contract (the "**2007 Contract**") requiring Siemens to sell certain equipment to Secure for use at a coal gasification plant located in Decatur, Illinois, where Secure planned to operate an industrial facility for the conversion of coal into natural gas. (*Id*. ¶¶

5, 8). Secure paid Siemens approximately $40 million for the equipment. (*Id.* ¶ 10). On March 31, 2010, Secure and Siemens executed a contract ("**2010 Completion Agreement**") stating that both parties had fulfilled their obligations to each other under the 2007 Contract. (*Id.* ¶ 11). On the same day, Secure and Siemens entered into a License and Service Agreement ("**2010 License Agreement**") through which Siemens granted Secure a license to use certain of its patented technologies for the development, construction, and operation of the Decatur, Illinois, coal gasification plant. (*Id.* ¶ 12).

On July 18, 2012, the 2010 License Agreement was terminated by mutual agreement, and, on the same day, MidAmerica C2L Inc. and Siemens entered into a new License and Service Agreement ("**2012 License Agreement**") in which Siemens granted MidAmerica C2L Inc. a license to use certain of its technologies for a coal gasification plant in West Paducah, Kentucky, where MidAmerica C2L Inc. would convert coal into methanol.[1] (*Id.* ¶ 16). In both the 2010 and 2012 License Agreements, Siemens agreed to provide technology, engineering services, technical field assistance, training, and performance guarantees relating to the Equipment conveyed in the 2007 Contract in exchange for a license fee. (*Id.* ¶¶ 12–13, 16–17).

---

[1] Secure's attempt to operate a coal gasification plant in Decatur, Illinois, did not come to fruition, and in July 2012, Secure's focus turned to the operation of a plant in West Paducah, Kentucky, to convert coal into methanol. (Doc. 63, ¶ 16). Plaintiff also tried to employ coal gasification to manufacture gasoline and fertilizer. (*Id.* ¶ 17). The Kentucky plant never materialized. (*Id.* ¶¶ 20–24).

2

On February 2, 2016, Siemens informed Secure that Siemens would be closing the fuel gasification division of its business. (Doc. 169, p. 20, ¶ 8). On February 11, 2016, Secure demanded rescission of the 2007 Contract and return of all monies paid by Secure under the 2007 Contract. (Doc. 149-7, pp. 66–69; Doc. 169, p. 20, ¶ 9). In response, on February 17, 2016, Siemens informed Secure that Siemens will not violate any contractual obligation by its strategic exit from the coal gasification business. (Doc. 149-7, pp. 70–71; Doc. 169, p. 20, ¶ 10). The parties met on March 2, 2016. (Doc. 169, p. 20, ¶ 11). Then, on March 18, 2019, Siemens offered to extend deadlines for completion of its performance tests as defined by the 2012 License Agreement from December 31, 2015, to December 31, 2021, if Plaintiffs paid the full remaining balance of the fee required under the 2012 License Agreement on or before July 1, 2016. (Doc. 149-7, pp. 72–73; Doc. 169, p. 20, ¶ 12). Plaintiffs rejected Siemens' offer on March 31, 2016. (Doc. 149-7, p. 74; Doc. 149-8, pp. 2–3; Doc. 169, p. 20, ¶ 13). On April 14, 2016, Siemens revoked its offer and demanded payment of a termination fee under the 2012 License Agreement. (Doc. 149-8, pp. 4–6). On April 19, 2019, Siemens invoiced MidAmerica C2L Inc. for the termination fee. (Doc. 169, p. 20, ¶ 15). In May 2018, Siemens closed its coal gasification division. (*Id.* ¶ 16).

Plaintiffs maintain that Siemens learned of material design defects in the equipment sold to Secure at some time between October 31, 2010, and September 2011 "based on the experience of a plant in China that used identical" equipment. (Doc. 63, ¶ 14). Plaintiffs allege six Counts against Siemens: Breach of Contract

3

(Count I); Breach of Warranty of Fitness for Particular Purpose (Count II); Fraudulent Misrepresentation – Siemens' Support of Project (Count III); Fraudulent Misrepresentation – Failure to Disclose Defects in Technology (Count IV); Rescission – Fraud (Count V); and Rescission – Failure of Consideration (Count VI). (*Id.* ¶¶ 25–92). Siemens counter-sued Plaintiffs for breach of contract arising from Plaintiffs' failure to render payment for the License and Service Agreement as required. (Doc. 75, pp. 20–21).

The Court granted in part Siemens's motion for summary judgment, (Docs. 203, 208), the parties proceeded to trial on Siemens's breach of contract counterclaim, and the jury returned a verdict for Siemens. (Doc. 287). The Eleventh Circuit affirmed the district court's entry of summary judgment for Siemens, the denial of Secure's belated motion for leave to amend the complaint,[2] and the ruling on the motions in limine. (Doc. 315). About a year later, the Eleventh Circuit applied a prudential forfeiture rule announced in *United States v. Campbell*, 26 F.4th 860 (11th Cir. 2022), and found it could not consider the alternative grounds for summary judgment not raised on appeal. (Doc. 319, p. 30). Accordingly, the Eleventh Circuit reversed its earlier affirmance of summary judgment as to Counts II, IV, V, and VI.[3] (*Id.* at 32).

---

[2] Secure sought leave to file a second amended complaint more than two years after the deadline for amending pleadings and after the parties briefed summary judgment. (Doc. 212). The Court denied the motion, and the operative complaint is the First Amended Complaint (the "**FAC**") at Docket Number 63. (Doc. 213). Secure may not expand its theory of the case beyond what it pleaded in the FAC.

[3] Secure incorrectly contends the Eleventh Circuit remanded Counts II, IV, V, and VI after "realizing its error" in originally finding Secure had voluntarily dismissed its claim for

4

## II. LEGAL STANDARD

A court may only "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(A). The party moving for summary judgment must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. FED. R. CIV. P. 56(C)(1)(A). "The court need consider only the cited materials." FED. R. CIV. P. 56(C)(3).[4]

"The burden then shifts to the non-moving party, who must go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). "The court need consider only the cited materials" when resolving a motion for summary judgment. FED. R. CIV. P. 56(C)(3); *see also HRCC, Ltd. v. Hard Rock Café Int'l (USA), Inc.*, 703 F. App'x 814, 816–17 (11th Cir. 2017) (per curiam) (holding that a

---

fraudulent inducement" of the 2007 Contract. (Doc. 337, pp. 8–9). While the Eleventh Circuit erred in making this finding, Siemens is correct that the error was immaterial because Secure "waived any such claim in the 2010 Completion Agreement." (Doc. 336, p. 10, n.7). Moreover, Secure is incorrect that the Circuit Court vacated its earlier opinion because it was "replete with misstatements of the record." (Doc. 337, p. 8).

[4] "The Court notes that it is not the responsibility of the court to search the record to determine whether a motion for summary judgment should be granted or to find reasons why a properly supported motion should be denied." *Kaazar Cap. Partners Ltd. v. Bactrac Techs., LLC*, No. 17-CV-2721-AT, 2019 WL 2147578, at *8 n.12 (N.D. Ga. Mar. 14, 2019); *see, e.g., Impreglon, Inc. v. Newco Enters., Inc.*, 508 F. Supp. 2d 1222, 1241 n.16 (N.D. Ga. 2007) ("[I]t is not the Court's duty to comb the record in an attempt to find reasons to grant [a] Motion for Summary Judgment."); *Tomasini v. Mount Sinai Med. Ctr. of Fla., Inc.*, 315 F. Supp. 2d 1252, 1260 n.11 (S.D. Fla. 2004).

district court does not err by limiting its review to the evidence cited by the parties in their summary judgment briefs).[5]

An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine dispute of material fact exists, the Court must read the evidence and draw all factual inferences therefrom in the light most favorable to the non-moving party and must resolve any reasonable doubts in the non-movant's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). That said, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1162 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)). Ultimately, summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

### A. Count II: Breach of Warranty of Fitness for Particular Purpose

The elements for breach of implied warranty of fitness for a particular purpose are: (1) the seller, at the time of contracting, has reason to know the

---

[5] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

particular purpose for which the goods are required, (2) the seller has reason to know that the buyer is relying on the seller's skill and judgment to select suitable goods for the specified purpose, and (3) the buyer did in fact rely on that skill or judgment. *Simmons v. Washing Equip. Techs.*, 51 A.D.3d 1390, 1391 (N.Y. App. Div. 2008); FLA. STAT. § 672.315. That said, a written disclaimer of a warranty of fitness for purpose precludes a party from relying on a representation that is specifically disclaimed in the agreement. *See Dallas Aero., Inc. v. CIS Air Corp.*, 352 F.2d 775, 785 (2d Cir. 2003); *see also, e.g.*, *Maltz v. Union Carbide Chems. & Plastics Co.*, 992 F. Supp. 286, 304 (S.D.N.Y. 1998) (explaining that implied warranty of fitness for a particular purpose claims fail as a matter of law if the purchase agreement specifically disclaims them).

Here, the parties agreed to a disclaimer of the implied warranty of fitness for purpose in Section 7.12 of the 2012 Licensing Agreement:

> THE WARRANTIES AND GUARANTEES PROVIDED ARE IN LIEU OF ALL OTHER WARRANTIES AND GUARANTEES, WHETHER STATUTORY, EXPRESSED OR IMPLIED, INCLUDING ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PURPOSE, AND ALL WARRANTIES ARISING FROM COURSE OF DEALING OR USAGE OF TRADE.

(Doc. 149–5, p. 68). As Siemens correctly notes, the same disclaimer is found in the 2007 Contract and 2010 Licensing Agreement. (Doc. 149–3, p. 28; Doc. 149–5, p. 34). Siemens argues the disclaimer precludes Secure from prevailing on a breach of implied warranty claim. (Doc. 336, p. 12).

7

Secure does not contest that the disclaimer was adequately clear and conspicuous.[6] Secure argues, however, that the 2012 License Agreement waiver provision is unconscionable. (Doc. 337, p. 17). "To declare a contract clause unconscionable, New York courts typically require 'a showing that a contract is *both* procedurally and substantively unconscionable when made.'" *Catalano v. MarineMax*, 590 F.Supp.3d 487, 503 (E.D.N.Y. 2012) (citing *Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F.Supp.2d 194, 200 (E.D.N.Y. 2010)).

"[P]rocedural unconscionability considers whether there has been a lack of meaningful choice to accept a challenged provision by evaluating a number of factors, including '(1) the size and commercial setting of the transaction; (2) whether there was a lack of meaningful choice by the party claiming unconscionability; (3) the experience and education of the party claiming unconscionability; and (4) whether there was disparity in bargaining power.'" *Id*. "[S]ubstantive unconscionability involves an analysis 'of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged.'" *Id*. "Procedural and substantive unconscionability have been described as operating on a 'sliding scale,' meaning

---

[6] The New York Uniform Commercial Code "generally permits disclaimers of warranties that are adequately clear and conspicuous." *Catalano v. MarineMax*, 590 F.Supp.3d 487, 502 (E.D.N.Y. 2012). Conspicuous is defined "in a common-sense way: it means 'so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it.'" *Id*. (quoting N.Y. U.C.C. Law § 1-201(b)(10)).

that 'the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa.'" *Id.* (citations omitted).

Siemens argues that Secure failed to plead unconscionability and is restricted to the theories advanced in the FAC. (Doc. 336, p. 12). And Secure is correct that the Court denied Siemens's motion to dismiss as to Count II, because New York law allows one to challenge a disclaimer as unconscionable. [7] (Doc. 337, p. 17 (quoting Doc. 62, p. 5)). Siemens's motion to dismiss, however, was directed to the original complaint filed in the Southern District of Illinois. (Doc. 16). The case was later — much later — transferred to the Middle District of Florida, and the undersigned denied the motion to dismiss Count II of the original complaint. (Docs. 33, 62). Thereafter, Secure filed the FAC, rendering the Court's ruling as to the original complaint moot. (Doc. 63). While Secure could have alleged unconscionability to void the disclaimer of the implied warranty of fitness for a particular purpose in the FAC, it did not do so. (*Id.* ¶¶ 29–34). Since Secure did not "claim" unconscionability, it is precluded from pursuing that theory now. [8]

Even if Secure had properly claimed unconscionability in the FAC, it failed to cite any record evidence to support the theory of unconscionability. Secure's

---

[7] The Court was correct in stating that "[w]hen a party *claims* that a contract or a clause contained therein is unconscionable, 'the parties [sic] shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.'" (Doc. 62, p. 6 (emphasis added) (citing N.Y.U.C.C. § 2-302(2))). The Court was incorrect in that Secure failed to "claim" that the contract was unconscionable. The Court should have granted Siemens's motion to dismiss. Nonetheless, the Court's Order as to the original complaint has no bearing on the FAC.

[8] Even Secure's proposed Second Amended Complaint fails to allege unconscionability as a theory to defeat the disclaimer contained in each contract. (Doc. 212-1, ¶¶ 33–34).

argument on unconscionability consists of the bald contention that "Siemens preyed on Secure's lack of bargaining power, essentially forcing them into a room with no escape with the only option being to sign the 2012 LSA." (Doc. 337, pp. 18–19). Secure supports this conclusion by citing an affidavit written by Keith Clauss, the CEO of SK Engineering and Construction, whose firm "worked with Secure" to provide "a guaranteed maximum price contract for the engineering, procurement, and construction ("EPC contract")." (Doc. 221-2, ¶¶ 1–3). Mr. Clauss was not a party to the contract, and his affidavit does not support Secure's unconscionability theory, nor does Secure articulate how Mr. Clauss advances their cause.

Siemens replies to Secure's claim by pointing to record evidence that shows Secure pressed for the 2010 and 2012 licensing agreements in an attempt to "extend payment deadlines, restructure license terms, or change geographic restrictions." (Doc. 338, p. 2 (citing Doc. 149–22, RFA Nos. 8–15, 17–20; Doc. 149–4, p. 73; Doc. 149–7, p. 63)). Siemens also argues that Secure had legal counsel and a technical advisor and chose between other suppliers before signing the 2007 contract. (Doc. 338 (citing Doc. 149–22, RFA No. 14; Doc. 337, p. 5)).

As Siemens correctly observes in its reply, a trial on the issue of unconscionability — where properly plead — "is necessary only '[w]here there is doubt . . . as to whether a contract is fraught with elements of unconscionability.'" (Doc. 338, p. 2). The Court finds that Secure failed to plead unconscionability in the FAC, and even if it had preserved this theory of recovery, there is no genuine issue of material fact relating to the applicability of the disclaimer and the lack of

unconscionability.[9] Siemens is therefore entitled to judgment in its favor as to Count II.

### B. Count IV & Count V: Fraudulent Misrepresentation — Failure to Disclose Defects & Rescission — Fraud

Secure brings two fraud claims through which it seeks damages and rescission of the contract: Count IV and Count V. (Doc. 63, ¶¶ 42–79). Both causes of action are based on the theory that Siemens knew the NCPP's "identical gasifiers . . . could not function without significant mandatory changes, and NCPP substituted burners from a different manufacturer." (Doc. 337, p. 13). That is, Secure contends that Siemens had superior knowledge of the alleged material defects, had a duty to disclose the design defect to Secure, and failed to do so. (*Id.* at 13–14; Doc. 63, ¶¶ 42–79). Both claims assert that the gasifiers are defective and are simply a restatement of Secure's contract and breach of warranty claims. Still, Secure contends the independent tort doctrine does not bar its fraudulent inducement claims. (Doc. 337, pp. 15–17).

---

[9] Secure claims it is entitled to $40,298,436.00 because the equipment and technology purchased under the 2007 contract can no longer be incorporated into any gasification plant. (Doc. 63, ¶ 34). Secure further claims an additional $46,000,000.00 because it was "forced" to abandon the design and engineering of the West Paducah plant. (*Id.*). At any rate, the parties terminated the 2007 Contract and 2010 Licensing Agreement, agreed that Siemens had fulfilled its obligations under those contracts, and later entered new contracts. (Doc. 149–22, p. 4, RFA Nos. 10-13). Secure never uncrated the gasification equipment sold by Siemens and offers no evidence showing the equipment and technology could not satisfy its intended purpose. Secure admitted that it lacked the necessary funding for any iteration of its project before March 2010. (*Id.* at 3, RFA No. 9). Secure also admitted it lacked funding for any iteration of the project before July 2012. (*Id.* at 6, RFA No. 20). And Secure admitted it "never had the funding necessary for any iteration of their project." (*Id.* at 7, RFA No. 22). Aside from the conclusory allegations put forth by Secure's counsel, Secure fails to demonstrate record evidence of damages.

11

Florida's independent tort doctrine provides that a party may not recover in tort for a contract dispute unless the tort is independent of any breach of contract. *Island Travel & Tours, Ltd. v. MYR Indep., Inc.*, 300 So.3d 1236, 1239 (Fla. 3d DCA 2020). Siemens correctly argues that unless the tort "allegations are separate and distinct from defendants' performance under the contract," the independent tort doctrine prevents recovery. (Doc. 336, p. 14). *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1031 (11th Cir. 2017); *see also Brooks v. Brooks Consultants, Inc.*, 2022 U.S. Dist. LEXIS 202498, at *17 (M.D. Fla. Nov. 7, 2022) ("When the 'fraudulent inducement claims against [the defendant] arise out of alleged contractual duties alone,' the doctrine precludes those claims.'"). Here, Secure's fraud claims must arise from the contractual duties since the 2010 Completion Agreement released the parties of any claims that pre-date the agreement.

In its breach of contract claim, Secure alleges the facts below regarding Siemens knowledge and its alleged misrepresentations to induce Secure to enter the 2012 License Agreement:

> 14. On information and belief, based on the experience of a plant in China that used identical gasifiers and related gasification equipment and technology, Siemens became aware of multiple material design defects in the Siemens Equipment and Technology between October 31, 2010 and September 2011, including but not limited to:
>
> > a. The burners are improperly engineered and designed;

12

      b.      The design of the raw gas (syngas) outlet and the black water outlet is defective because the level of the black water will rise above the raw syngas outlet and prevent syngas from exiting the gasifier, greatly increasing the risk of catastrophic explosion;

      c.      The Basic Engineering Design Package (BEDP) is defective and needs to be modified to make changes to multiple components, including, but not limited to, the coal handling system, the slag handling system, piping design, valve design, the syngas cleaning system, and the black water system; and

      d.      Siemens' design of the Fuel Measurement System is defective and does not work.

19.    Based on its dealings with Siemens Energy and *Siemens' representations* concerning the Siemens Equipment and Technology, Secure Energy and MidAmerica C2L entered into contracts with third parties concerning the design, engineering, construction and operation of the above-mentioned plants, including a supply agreement with Murray Energy, whereby Murray Energy would supply coal from its New Era Mine in Galatia, Illinois for use in the plant.

24.    Plaintiffs did not become aware of the material design defects in the Siemens Equipment and Technology or the problems experienced in the Chinese plant until March of 2016.

(Doc. 63, ¶¶ 14, 19, 24, 25) (emphasis added). The same material facts related to the alleged product defects, which Secure claims were withheld by Siemens, are alleged in Counts IV and V. (*Id.* ¶¶ 42–79). As the Eleventh Circuit correctly noted in its now vacated opinion: "[b]efore the 2012 Completion Agreement and the 2012 LSA were signed, Siemens's duty to share information with Secure and to deliver

13

conforming products, arose from the parties' 2010 and 2007 agreements." (Doc. 316, p. 36; Doc 146, n.3; Doc. 218, p. 5). Thus, Secure's fraud claims, Counts IV and V, are barred by the independent tort doctrine.[10] Correspondingly, Secure's request for rescission (Count V) also fails because Secure does not argue, much less demonstrate, that legal remedies are inadequate. *Sokolow v. Damico*, 2019 U.S. Dist. LEXIS 220849, at *14 (S.D. Fla. Dec. 26, 2019).

### C.     Count VI: Rescission – Failure of Consideration

Secure contends that "[p]laintiffs have no adequate remedy at law for rescission of the 2007 Contract and all subsequent contracts arising from Secure's course of dealing with Siemens." (Doc. 337, p. 14). Secure relies on a case from New York even though this Court previously found Florida law controls all non-contract causes of action, a decision not challenged by Secure on appeal. (*Id.*). Nonetheless, Florida law does not recognize the claim of rescission based on lack of consideration. *See Webb v. Kirkland*, 899 So.2d 344, 346 (Fla. 2d DCA 2005) (quoting *Rennolds v. Rennolds*, 312 So.2d 538, 541 (Fla. 2d DCA 1975)). That said, where there is a failure of consideration, "an action for damages at law is usually considered adequate." *Id.* (quoting *Royal v. Parado*, 462 So.2d 849, 855 (Fla. 1st DCA 1985). Here the 2007, 2010, and 2012 agreements provide for agreed legal

---

[10]  Siemens argues, again correctly, that Secure fails to plead fraudulent inducement in the FAC. (Doc. 338, p. 3). Secure alleges in Count V that "Siemens' failure to disclose the discovery and existence of material design defects constitutes misrepresentations by silence and fraudulent concealment." (Doc. 63, ¶ 72). Count IV is a claim for fraudulent misrepresentation. (*Id.* ¶¶ 42—59). And, as discussed above, the alleged misrepresentations related to the gasifiers form the basis of Secure's breach of contract claim.

14

remedies for defects and breaches. Finally, Siemens argues Count VI is barred through the statute of limitations, whether one applies Florida or New York law. (Doc. 338, p. 9). Siemens is correct and Count VI fails for that added reason.

## IV. CONCLUSION

For these reasons, Siemens Energy, Inc.'s Renewed Motion for Summary Judgment (Doc. 336) is **GRANTED**. The Clerk is **DIRECTED** to enter judgment for Defendant Siemens Energy, Inc., as to Counts II, IV, V, and VI of the First Amended Complaint.

**DONE AND ORDERED** in Orlando, Florida on February 5, 2024.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

15